IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS INC., *et al.*[1] | ) | Case No. 10-11255 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**APPLICATION OF DEBTORS FOR ORDER UNDER
28 U.S.C. § 156(C) AUTHORIZING AND APPROVING THE
RETENTION OF AND APPOINTING EPIQ BANKRUPTCY
SOLUTIONS, LLC AS NOTICING, CLAIMS AND BALLOTING AGENT**

Point Blank Solutions, Inc. and its affiliated chapter 11 debtors and debtors in possession (collectively, the "Debtors"), hereby submit this application (the "Application") for entry of an order pursuant to 28 U.S.C. § 156(c) and Del. Bankr. LR 2002-1(f) authorizing and approving the retention of, and appointing, Epiq Bankruptcy Solutions, LLC ("Epiq") as noticing, claims and balloting agent in these cases and, as applicable, for the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk"). In support of this Application, the Debtors rely on the Declaration of Daniel C. McElhinney (the "McElhinney Declaration"), attached hereto. In further support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

70934-001\DOCS_DE:158856.1

## Jurisdiction

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in that it is a matter concerning the administration of the Debtors' estates.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in this Application are 28 U.S.C. § 156(c) and Del. Bankr. LR 2002-1(f).

## Background

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. Point Blank Solutions Inc. ("PBSI") is a leading manufacturer and provider of bullet, fragmentation and stab resistant apparel and related ballistic accessories, which are used domestically and internationally by military, law enforcement, security and corrections personnel, as well as government agencies. Since 1998, PBSI has supplied over 80% of U.S. military soft body armor vest requirements to protect soldiers and marines around the world. PBSI and its subsidiaries Point Blank Body Armor ("PBBA") and Protective Apparel Corporation of America ("PACA") are major players in the domestic law enforcement market

with broad brand recognition and a best value reputation. The Debtors' products are sold through a variety of means, including direct sale contracts, a corporate sales force, sales agents and a network of distributors.

5. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of T. Scott Avila, Chief Restructuring Officer of the Debtors, in Support of First Day Motions* (the "Avila Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

**Requested Relief**

6. By this Application, the Debtors seek entry of an order, pursuant to 28 U.S.C. § 156(c) and Del. Bankr. LR 2002-1(f), authorizing and approving the retention of and appointing Epiq, *nunc pro tunc* to the Petition Date, as claims, noticing and balloting agent (the "Claims and Noticing Agent") for the Debtors and, as applicable, the Clerk to, among other things: (i) serve as the Court's notice agent to mail certain notices to the estates' creditors and parties-in-interest, (ii) provide computerized claims, claims objections and balloting database services, and (iii) provide expertise, consultation and assistance with claim and ballot processing and with other administrative information related to the Debtors' bankruptcy cases. The Debtors believe it is in the best interests of their estates and their creditors to appoint Epiq as agent for the Clerk.

7. Pursuant to Rules 1007(a)(1) and (d) of the Federal Rules of Bankruptcy Procedure, the Debtors' chapter 11 petitions were accompanied by a list of the thirty-five (35) largest creditors of the Debtors. Schedules of assets and liabilities, schedule of current income
3

and expenditures, statements of executory contracts and unexpired leases and statement of financial affairs (collectively, the "Schedules and Statements") were not filed with the Debtors' voluntary chapter 11 petitions. The Debtors currently intend to file their Schedules and Statements in accordance with Del. Bankr. LR 1007-1(c) unless such time period is extended, for cause, by this Court.

8. The Debtors believe that there are thousands of creditors and other parties-in-interest holding claims against the Debtors' estates who require notice of various matters, and in particular, the deadline for filing proofs of claim. Additionally, many of these parties may file proofs of claim and cast ballots with respect to a liquidating or other plan.

9. The size of the Debtors' creditor body makes it impractical for the Clerk to send notices and to maintain a claims register and tabulate ballots.

10. Pursuant to 28 U.S.C. § 156(c), the Court is empowered to utilize outside agents and facilities for such purposes, provided that the costs of these facilities and services are paid for out of the assets of the Debtors' estates. Additionally, Del. Bankr. LR 2002-1(f) requires a debtor to file a motion to retain a notice and/or claims clerk within 10 days of the petition date, in all cases with creditors in excess of 200. As discussed above, the number of creditors in these cases is expected to exceed 200.

11. Accordingly, the Debtors seek the entry of an order retaining and appointing Epiq as the agent for the Clerk and as custodian of official court records and to perform such other services as may be required by the Debtors as described below. Additionally, the Debtors seek authorization to compensate Epiq for services rendered and to reimburse Epiq

4

for expenses incurred without further order of this Court upon the Debtors' receipt of reasonably detailed statements of fees and expenses.

12. Epiq is one of the country's leading chapter 11 administrators with experience in noticing, claims processing, assisting with claims reconciliation and distribution. Epiq is well qualified to provide the Debtors with experienced noticing, claims and balloting services in connection with theses cases and has substantial experience in the matters upon which it is to be engaged. Among the large chapter 11 cases in which Epiq is or was retained, as notice, claims and/or balloting agent to debtors in this and other judicial districts, include: *In re Latham International, Inc., et al.*, Case No. 09-14490 (CSS) (Bankr. D. Del. Dec. 23, 2009); *In re AFY Holding Company, et al.*, Case No. 08-12175 (Bankr. D. Del. Sept. 23, 2008); *In re WCI Communities, Inc., et al.*, Case No. 08-11643 (Bankr. D. Del. Aug. 4, 2008); *In re Ascendia Brands, Inc., et al.*, Case No. 08-11787 (Bankr. D. Del. Aug. 5, 2008); *In re Wickes Holdings, LLC*, Case No. 08-10212 (Bankr. D. Del. Feb. 5. 2008); *In re Buffets Holdings, Inc., et al.*, Case No. 08-10141 (Bankr. D. Del. Jan. 22, 2008); *In re Aegis Mortgage Corp., et al.*, Case No. 07-11119 (Bankr. D. Del. Aug 13. 2007); *In re American Home Mortgage Holdings, Inc., et al.*, Case No. 07-11047 (Bankr. D. Del. Aug. 6, 2007); *In re Amp'd Mobile, Inc.*, Case No. 07-10739 (Bankr. D. Del. June 29, 2007); *In re Advanced Marketing Services, Inc.*, Case No. 06-11480 (Bankr. D. Del. Jan. 3, 2007); *In re Premium Papers Holdco, LLC*, Case No. 06-10269 (Bankr. D. Del. Mar. 23, 2006); *In re Birch Telecom, Inc., et al.*, Case No. 05-12237 (Bankr. D. Del. Aug. 16, 2005); as well as *Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *Stone Barn Manhattan LLC, f/k/a Steve & Barry's Manhattan LLC, et*

*al.*, Case No. 08-12579 (Bankr. S.D.N.Y. July 9, 2008); *In re Global Crossing Ltd., et al.*, No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002); *In re Worldcom, Inc., et al.*, No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002); and *In re Enron Corp., et al.*, No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002), among others.

13. By appointing Epiq as the Claims and Noticing Agent in these Chapter 11 cases, creditors of the Debtors' estates will benefit from Epiq's significant experience in acting as a Claims and Noticing Agent in other cases and the efficient and cost-effective methods that Epiq has developed in its eighteen years of operation.

## Services to Be Provided

14. Epiq, at the request of the Debtors (with respect to all of the services listed below) or the Clerk's office (with respect to c, d, and f through k, below), will provide the following services as the Claims and Noticing Agent:

    a. Prepare and serve required notices in these Chapter 11 cases, including:

        (i) notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

        (ii) notice of any auction sale hearing;

        (iii) notice of the claims bar date;

        (iv) notice of objection to claims;

        (v) notice of any hearings on a disclosure statement and confirmation of a plan of reorganization; and

        (vi) other miscellaneous notices to any entities, as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases;

b. After the mailing of a particular notice, file with the Clerk's office a certificate or affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing;

c. Maintain copies of all proofs of claim and proofs of interest filed;

d. Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest;

    (i) the name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

    (ii) the date received;

    (iii) the claim number assigned; and

    (iv) the asserted amount and classification of the claim;

e. Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules and Statements, including the creation and administration of a claims database based upon a review of the claims against the Debtors' Schedules;

f. Implement necessary security measures to ensure the completeness and integrity of the claims registers;

g. Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis; or, in the alternative, make available the claims register on-line;

h. Maintain an up-to-date mailing list for all entities that have filed a proof of claim, or proof of interest, or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office;

i. Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours;

j. Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e);

k. Provide temporary employees to process claims, as necessary;

l. Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the Court;

m. Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Debtors; and

n. Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

15. In connection with its appointment as Claims and Noticing Agent, Epiq represents, among other things, that:

a. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 cases;

b. By accepting employment in these Chapter 11 cases, Epiq waives any rights to receive compensation from the United States government;

c.  In its capacity as the Claims and Noticing Agent in these Chapter 11 cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

d.  Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 cases.

16. The Debtors respectfully submit that Epiq will be responsive to all constituencies, including without limitation the Court, the Clerk's office, the Office of the United States Trustee (the "UST"), Debtors' attorneys, official committees' attorneys and claimants themselves; that Epiq acknowledges that it will perform its duties when retained in a case regardless of payment subject to its right to seek appropriate relief from the Court to withdraw or for other redress.

17. The Debtors also respectfully submit that if these cases were to convert from Chapter 11 to Chapter 7, Epiq will perform its duties through the conversion process and shall continue its services as required; provided however, that Epiq may seek to be relieved of its duties should there be insufficient funds in such Chapter 7 cases to enable the Chapter 7 trustee to pay Epiq's fees and expenses.

18. In a case in which Epiq's services are terminated, Epiq shall perform its duties until complete transition with the Clerk's office or any successor claims/noticing agent has been accomplished; provided however, Epiq shall be entitled to its fees and expenses for such duties during the transition.

9

70934-001\DOCS_DE:158856.1

19. In connection with the reimbursement of actual, necessary expenses, it is Epiq's policy to charge its clients for direct expenses incurred in connection with providing client services. These expenses and charges include postage, long distance telephone charges, hand-delivery and other delivery charges, travel expenses, overtime meals and travel, computerized research, transcription costs, and third party photocopying charges.

### Claims Agent Agreement

20. Subject to this Court's approval, the Debtors have employed Epiq to provide the services set forth above pursuant to the terms of the Standard Services Agreement between the Debtors and Epiq (the "Agreement"). A copy of the Agreement is attached as <u>Exhibit A</u> to this Application. Epiq is a firm that specializes in providing claims management consulting and computer services. The Debtors also may use Epiq to provide the Debtors with training and consulting support necessary to enable the Debtors to effectively manage and reconcile claims, and to provide the requisite notices of the deadline for filing Proofs of Claim. In addition, the Debtors may utilize other services offered by Epiq, including, among others, (a) providing other notices that will be required as these cases progress, (b) soliciting and tabulating acceptances and/or rejections to a plan of reorganization, and (c) providing such other administrative related services that may be requested by the Debtors.

21. Epiq will be compensated in the ordinary course of business based on the services it provides at the rates set forth in the Agreement and the schedule of fees and charges attached to it, and will not be required to file interim or final applications in this case for fees or expenses paid in accordance with the Agreement.

10
70934-001\DOCS_DE:158856.1

## Basis For Relief

22. 28 U.S.C. § 156(c) provides, in relevant part, as follows:

> (c) Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate...

28 U.S.C. § 156(c).

23. Del. Bankr. LR 2002-1(f) provides, in pertinent part, as follows:

> In all cases with creditors in excess of 200, the debtor shall file such motion on the first day of the cases or within ten (10) days thereafter. The notice and/or claims clerk may be retained to do any or all of the following: (1) prepare and serve all notices required in the case; (2) maintain copies of all proofs of claim and proofs of interest filed in the case; (3) maintain the official claims register; (4) maintain an up-to-date mailing list for all entities who have filed proofs of claim and/or requests for notices in the case; (5) assist the debtors with the reconciliation and resolution of claims; and (6) mail and tabulate ballots for purposes of voting in chapter 11 cases.

Del. Bankr. LR 2002-1(f).

24. After considering its quality of performance in other cases, the Debtors concluded that Epiq was the best choice for Claims and Noticing Agent in these cases. The Debtors believe that the Agreement contemplates compensation at a level that is reasonable and appropriate for services of this nature, and is consistent with the compensation arrangement charged by Epiq in other cases in which it has been retained to perform similar services. The Debtors need to employ a claims agent with proven competence and believe that Epiq so qualifies. It is therefore respectfully submitted that approval of the Agreement is in the best interests of the Debtors, their estates and their creditors.

11

## Notice

25. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition secured lenders. Following the first day hearing in this case, this Motion will be served on (a) creditors holding the thirty-five largest unsecured claims against the Debtors on a consolidated basis, or their legal counsel (if known) and (b) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

26. No prior request for the relief sought in this Application has been made to this or any other court.

70934-001\DOCS_DE:158856.1

WHEREFORE, the Debtors request entry of an order, pursuant to 28 U.S.C. § 156(c) and Del. Bankr. LR 2002-1(f), substantially in the form attached to this Application, (i) authorizing and approving the retention and appointment of Epiq as Claims and Noticing Agent for the Clerk, (ii) authorizing and approving the retention of Epiq by the Debtors to perform such noticing, claims and other services as may be required by the Debtors in accordance with this Application, and (iii) granting such other and further relief as is just and proper.

Dated: April 14, 2010

Point Blank Solutions, Inc. et al.

By: T. Scott Avila
Title: Chief Restructuring Officer

13

70934-001\DOCS_DE:158856.1