# EXHIBIT A

## (Services Agreement)



# EPIQ

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Bankruptcy Solutions, LLC ("Epiq") and ~~~~~~~~~~~ and related debtors (collectively, the "Client"), as of March \_\_\_, 2010.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

### 1. Services.

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on Exhibit A hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of the Client. Charges for the Services will be based on the pricing schedule set forth on Exhibit B hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. The Client may request separate Services or all of the Services reflected in the Pricing Schedule.

### 2. Term.

This Agreement shall become effective on the date of its acceptance by both Epiq and the Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by the Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to the Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

### 3. Charges.

3.1 For the Services and materials furnished by Epiq under this Agreement, the Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill the Client monthly. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective

1



January 2nd of each year. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to the Client of such proposed increases.

3.3 Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 Client shall pay Epiq a retainer in the amount of $25,000 (the "Retainer"). The Retainer shall be applied in satisfaction of fees, costs and expenses incurred pursuant to this Agreement. To the extent the Client seeks relief under the Bankruptcy Code, any unapplied portion of the Retainer as of the petition date shall be applied immediately against post-petition date invoices until exhausted.

## 4. Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

## 6. Disposition of Data.

6.1 Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, Client warrants that it has full authority to deliver the Client Data to Epiq. Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2 Any Client Data, programs, storage media or other materials furnished by the Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of the Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Material or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice if its intent to dispose of such data and media.



## 7. Indemnification.

The Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED, EPIQ SHALL HAVE NO OBLIGATION OR LIABILITY TO THE CLIENT (WHETHER HEREIN, TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE TOTAL LIABILITY OF EPIQ TO THE CLIENT FOR ALL CLAIMS, LOSSES, COSTS, FINES, SETTLEMENTS, PENALTIES OR DAMAGES, INCLUDING COURT COSTS AND REASONABLE ATTORNEY'S FEES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES (COLLECTIVELY, "CLAIMS") SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE CLAIMS. TO THE EXTENT CERTAIN JURISDICTIONS GOVERNING THIS AGREEMENT LIMIT THE EXCLUSION OF DAMAGES OR LIMITATION OF LIABILITY HEREUNDER OR OTHERWISE RENDER ANY PART OF THE EXCLUSIONS OF DAMAGES OR LIMITATIONS OF LIABILITY UNENFORCEABLE, THE ABOVE EXCLUSIONS AND LIMITATIONS SHALL BE MODIFIED TO THE MAXIMUM EXTENT PERMITTED BY LAW, EVEN IF ANY REMEDY FAILS ITS ESSENTIAL PURPOSE.



### 8. Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### 9. Confidential On-Line Workspace

Upon request of the Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to the Client pursuant to this Agreement; and (b) with the consent of the Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

### 10. General

10.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

10.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

10.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.



10.6 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

10.7 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

10.8 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.9 This Agreement may be executed in counterparts, each of which shall be deemed to an original, but all of which shall constitute one and the same agreement.

10.10 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

10.11 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq</u>:

Epiq Bankruptcy Solutions, LLC
757 Third Avenue, Third Floor
New York, New York 10017
Attn: Ron Jacobs

<u>If to Client</u>:

<u>With a copy to</u>:

Laura Davis Jones, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

_/s/ Daniel C. McElhinney_

---
Name: Daniel C. McElhinney
Title: Executive Director

**[CLIENT]**

By: _/s/ Michelle Doery_

Name: Michelle Doery
Title: CFO



# EXHIBIT A

# SERVICES SCHEDULE

## CLAIMS MANAGEMENT

- Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

- Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

- Process all proof of claim/interest submitted.

- Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

- Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

  - Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
  - Date received;
  - Claim number assigned; and
  - Asserted amount and classification of the claim.

- Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

- Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

- Implement necessary security measures to ensure the completeness and integrity of the claims registers.

- Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).



➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

**SCHEDULES/STATEMENT PREPARATION**

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain of databases for maintenance and formatting of Schedules and Statement data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

**CALL CENTER**

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create of frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

**VIRTUAL DATAROOM**

Provide confidential on-line workspace to facilitate permission based and password protected simultaneous document sharing in connection with asset sale due diligence, contract and invoice review, or creation of contract repository, among other reasons.



## NOTICING

➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;
- Notice of any auction sale hearing;
- Notice of the claims bar date;
- Notice of objection to claims;
- Notice of any hearings on a disclosure statement and confirmation of a plan of reorganization; and
- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the Court, including (as needed):

- Consult company and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.
- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.
- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist the company in requesting these listings).
- Coordinate distribution of solicitation documents.

10



- Prepare a certificate of service for filing with the court.
- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.
- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.
- Establish a website for the posting of solicitation documents.
- Receive and examine all ballots and master ballots cast by voting parties. Date- and time-stamp the originals of all such ballots and master ballots upon receipt.
- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote declaration or certification for filing with the court.
- Undertake such other duties as may be requested by the Client.

## MISCELLANEOUS

- Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Debtors.

- Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

- Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

- Provide temporary employees to the Clerk's Office to process claims, as necessary.



# EXHIBIT B

# PRICING SCHEDULE

## Professional Services

| Title | Hourly Rate Range | Average Rate |
|---|---|---|
| Clerk | $40 - $60 | $50.00 |
| Case Manager (Level 1) | $125 - $175 | $142.50 |
| IT Programming Consultant | $140 - $190 | $165.00 |
| Case Manager (Level 2) | $185 - $220 | $202.50 |
| Senior Case Manager | $225 - $275 | $247.50 |
| Senior Consultant | $295 | $295 |

Note: Professional services provided by Senior Consultants in connection with public securities solicitation and tabulation will range from $360 to $415 per hour. Epiq does not include a premium/overtime charge for any of the professional services it performs. However, outside vendors utilized by Epiq may include a premium / overtime charge for work performed on a weekend, holiday or after standard business hours.

## Claims Management Services

| | |
|---|---|
| Database Maintenance | $0.10 per creditor record per month |
| Data Transfer | $0.10 per creditor record |
| Manual Claim Input | $0.35 per claim (plus hourly rates) |
| Document Storage | At Cost |
| Electronic Imaging | $0.30 per image |
| OCR[1] capture | $0.10 per image |
| CD Storage | Varies upon requirements |
| Weblink Hosting Fee | $200.00 per month |
| Website Construction | $150.00 per hour |

## Call Center Services

| | |
|---|---|
| Standard Call Center Setup | $2,500 |
| Call Center Operator | $75 per hour |
| Voice Recorded Message | $0.19 per minute |
| Support/Maintenance | $200 per month |

---

[1] OCR refers to optical character recognition, which is an enhanced form of electronic imaging.



### Virtual Data Room Services

| | |
|---|---|
| Confidential On-line Workspace | $1.30 per page per 9 months |

### Noticing Services

| | |
|---|---|
| Printing | $0.10 per image (plus envelope face) |
| Collate, fold and insert | $0.10 per piece |
| Postage/Overnight Delivery | At Cost |
| E-Mail Noticing | $0.02 per page |
| Fax Noticing | $0.20 per page |
| Claim Acknowledgement Card | $0.25 per card |
| Publication Noticing | TBD |

<u>Note:</u> Fees and costs associated with publication of a legal notice will vary depending on the size, timing and breadth of publication, as well as the periodicals selected for publication. Epiq will obtain quotes for publication upon request of the Client.

### Public Securities Balloting/Tabulation Services

**Noticing**

| | |
|---|---|
| Street Name Holders | $15,000 |
| Registered Holders | $0.50 - $0.65 per holder (Two paper notices included in the same envelope; subject to a $500 minimum) |
| Individual Parties | $1.75 - $2.25 per voting package (Subject to a $750 minimum) |
| CUSIP/ISIN Charge | $3,000 per CUSIP/ISIN |
| Tabulation | $125 per hour |
| Tabulation Set up | $1,000 for each tabulation element (e.g., each security or plan class) |
| Document Hosting Fee | $150 per month |

### Disbursement Services

| | |
|---|---|
| Check and/or Form 1099 | $1.50 each |
| Record to Transfer Agent | $0.25 each |