IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) | Case No. 10-11255 (____) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 363
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004
FOR AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE PAYMENT
OF CERTAIN PREPETITION CLAIMS OF CRITICAL TRADE VENDOR,
E.I. DUPONT DE NEMOURS AND COMPANY**

The above-captioned debtors and debtors in possession (the "Debtors") file this motion (the "Motion") for entry of an order authorizing, but not requiring, the payment of certain prepetition claims of critical trade vendor, E.I. du Pont de Nemours and Company ("DuPont"). In support of the Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtors' chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

2.   The statutory predicates for the relief requested herein are sections 105(a) and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure.

## Background

3.   On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.   No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

6.   The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of T. Scott Avila in Support of First Day Motions* (the "Avila Declaration") filed contemporaneously with this Motion and incorporated herein by reference.[2]

## Relief Requested

7.   By this Motion, the Debtors seek entry of an order authorizing them to pay, in the exercise of their business judgment and in their sole discretion, up to $700,000 of prepetition claims of DuPont (the "DuPont Payment") to ensure the uninterrupted functioning of the Debtors' manufacturing and business operations. The DuPont Payment is vital to the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Avila Declaration.

Debtors' reorganization efforts. DuPont provides Kevlar® brand fiber ("Kevlar"), a critical component of the fabric that the Debtors use in their products. As a certified supplier pursuant to the federal government's lengthy certification process, DuPont cannot be easily replaced by another vendor in a commercially reasonable manner. The Debtors believe that a failure to make the DuPont Payment may cause DuPont to terminate its provision of Kevlar to the Debtors and/or to the Debtors' weavers, likely resulting in material harm to the Debtors, their businesses and their estates.

## The DuPont Relationship

8. Point Blank Solutions, Inc. ("PBSI") is a leading manufacturer and provider of bullet, fragmentation and stab resistant apparel and related ballistic accessories, which are used domestically and internationally by military, law enforcement, security and corrections personnel, as well as government agencies. Since 1998, PBSI has supplied over 80% of U.S. military soft body armor vest requirements to protect military personnel around the world. PBSI and its debtor subsidiaries Point Blank Body Armor, Inc. ("PBBA") and Protective Apparel Corporation of America ("PACA") are major suppliers in the domestic law enforcement market with broad brand recognition and a best value reputation. The Debtors manufacture several body armor products and related accessories that are sold worldwide to a variety of customers. The Debtors' armor products and related accessories protect individuals from bodily injury and death from multiple threats, including bullets, knives, and other sharp instruments and shrapnel fragments. The Debtors design, build and sell advanced systems that safeguard users from specific threats as well. The Debtors' designs are generally either concealed under the uniform or worn as part of a tactical outer garment based on mission and operating environment.

9.  Approximately 39.1% of the Debtors' revenue is generated from the manufacturing and sale of body armor to the U.S. armed forces, which products are subject to the federal government's certification process for government contractors. The certification process is applied to each supplier that provides goods and services in connection with the performance of the contract. In the Debtors' experience, obtaining certification upon a change in suppliers takes approximately 90 - 120 days to complete.

10. As noted above, DuPont supplies the Kevlar fiber that is woven into the fabric that the Debtors use in all of their armored, soft body vests. The Kevlar fiber typically comprises from 50-100% of the total fiber that is woven into the fabric. DuPont is an approved supplier of the Debtors pursuant to the certification process and cannot be speedily replaced. The delay that changing certified suppliers would cause to the Debtors' manufacturing process would result in serious harm to the Debtors' business, as well as harm to the customers that are counting on timely delivery of armored vests.

11. The Debtors believe that DuPont asserts that it has no direct contractual obligation to the Debtors to supply their weavers and any interruption in supply would have severe consequences to the Debtors and their estates. If DuPont decided to unilaterally terminate or cease selling Kevlar to the weavers that supply the Debtors' fabric because of the unpaid prepetition debt, the Debtors' ability to produce and deliver finished goods to customers would be severely compromised. Therefore, preservation of the Debtors' business relationship with DuPont is crucial to the Debtors' ability to successfully operate in chapter 11 and, in the exceptional circumstances described herein, the Debtors request authority to make the DuPont Payment.

12. As noted above, the Debtors seek authority herein to pay DuPont up to $700,000 in prepetition debt. The debt is for prepetition supplies to the Debtors that have not been paid for. The Debtors agreed to seek this relief pursuant to a term sheet between the Debtors and DuPont, which reflected an agreed treatment of pre- and post-petition rebates and offsets and consents by DuPont regarding the assumption/assignment of certain prepetition agreements.

13. The amount that the Debtors seek authority to pay herein is equal to approximately 2% of total outstanding prepetition trade debt. The Debtors believe that failure to make the DuPont Payment would result in (i) the Debtors' inability to obtain necessary goods and materials and services for their manufacturing operations, (ii) negative severe effects on the Debtors' customers, and (iii) temporary closure of the manufacturing facilities operated by the Debtors. Any temporary closures would likely prevent the Debtors from satisfying customer orders and the Debtors would risk that their customers would look to competitors to fulfill their order.

**Proposed Terms and Conditions of the DuPont Payment**

14. The Debtors request the authority, but not the obligation, to pay DuPont up to $700,000 as determined by the Debtors in their sole discretion and in the exercise of their business judgment in order to continue receiving the vital goods from DuPont. The Debtors propose to condition the DuPont Payment on DuPont's agreement to supply yarn or fiber to the Debtors on net-30 day credit terms with an aggregate $1,000,000 credit limit net of application of any outstanding credits so long as the Debtors are not in post-petition payment default,

provided that the Debtors' rights to contest the existence of a default is fully reserved (the "Required Trade Terms").

15. To ensure that DuPont deals with the Debtors on the Required Trade Terms, the Debtors propose (a) to send a letter substantially in the form of the letter attached hereto as **Exhibit A** to DuPont (the "Critical Trade Agreement") along with a copy of the Order, and (b) that any checks used to pay DuPont contain a legend substantially in the following form:

> Acceptance of this check is subject to the Order Authorizing Payment of Prepetition Critical Vendor Claims, dated _____, 2010, Case No. 10-_____ (____) (Jointly Administered).

16. The Debtors further propose that they be authorized to reserve their rights to obtain written acknowledgment of the Required Trade Terms of DuPont before paying any prepetition amounts to DuPont, substantially in the form of **Exhibit B** attached hereto. If the Debtors request such an acknowledgment, they may rely upon a confirming memorandum setting forth the Required Trade Terms, whether received by facsimile, electronic mail, express mail, or by other customary modes of delivery. The Debtors also reserve their right to contest any invoice of DuPont under applicable non-bankruptcy law.

17. DuPont may have obtained mechanics' liens, possessory liens, or similar state law trade liens (the "Trade Liens") on the Debtors' assets with respect to pre-petition sales to the Debtors of yarn or fabric. As a further condition of receiving payment on account of its prepetition claims, the Debtors propose that DuPont must agree to take whatever action is necessary to remove any Trade Lien at DuPont's sole cost and expense. For the avoidance of doubt, nothing contained herein shall affect in any manner, or be deemed to require DuPont to

release, any lien or security interest securing either the reimbursement obligations of the Debtors under, or the subrogation rights of DuPont with respect to, (a) the Corporate Guaranty, dated as of October 29, 2009, delivered by DuPont in favor of Bank of America, N.A., as agent, with respect to the Debtors' pre-petition secured debt, or (b) any guaranty of DuPont of debtor-in-possession financing obtained by the Debtors.

18. If other than because of DuPont's assertion of a post-petition payment default by the Debtors or any of them, DuPont refuses to supply goods to the Debtors on Required Trade Terms following receipt of payment on its prepetition claim, or fails to comply with any Critical Trade Agreement entered into between DuPont and the Debtors, then the Debtors may seek authority, in their discretion and without further order of the Court, to declare that provisional payments made to DuPont on account of prepetition claims be deemed to have been in payment of then-outstanding postpetition claims of DuPont and require that DuPont immediately repay to the Debtors any payment made to it on account of its prepetition claims to the extent that the aggregate amount of such payment exceeds the post-petition obligations to DuPont then outstanding, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.

**Basis For Relief**

**A.    The Court May Rely On Its General
       Equitable Powers To Grant The Motion**

19. The Court's general equitable powers are codified in section 105(a) of the Bankruptcy Code. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy

court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984)). Under section 105(a) of the Bankruptcy Code, a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). The Debtors strongly believe that the continuation of favorable trade terms and credit are imperative to their reorganization, that the partial or full payment of the DuPont Payment is essential to assure such a result, and that the Court may exercise its equitable powers to grant the relief requested in this Motion.

B.  **The Court May Rely On The "Necessity of Payment" Doctrine To Grant The Relief Requested Herein**

20. The "necessity of payment" doctrine further supports the relief requested in this Motion. The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987); *In re Columbia Gas System, Inc.*, 171 B.R. 189 (Bankr. D. Del. 1994) (internal citations omitted). This doctrine is consistent with the paramount goal of chapter 11 -- that is, "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

21. It is not uncommon for courts in this district and other districts to authorize payments to vital suppliers and trade creditors where the payment of such claims is

essential for the continued operation of the business. *See, e.g.*, *In re Champion Enterprises, Inc., et al.*, Case No. 09-14109 (KG) (Bankr. D. Del. Nov. 17, 2009) (authorizing debtors to pay up to $5,365,000 in prepetition building materials supplier claims); *In re Hayes Lemmerz Int'l, Inc.*, Case No. 09-11655 (MFW) (Bankr. D. Del. May 13, 2009) (authorizing debtors to pay up to $2.5 million, on an interim basis, in prepetition claims of critical vendors); *In re Tousa, Inc.*, Case No. 08-10928 ((JKO) (Bankr. S.D. Fla. Jan. 31, 2008); *In re SemCrude, L.P.*, Case No. 08-11525 (BLS) (Bankr. D. Del. July 23, 2008) (authorizing debtors to pay up to $50 million in prepetition claims of critical providers, suppliers, and transporters of products and services); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Nov. 20, 2006) (authorizing debtors to pay $29 million in prepetition claims of critical vendors); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 3, 2006) (authorizing debtors to pay $52.1 million in prepetition claims of critical vendors); *In re J.L. French Auto. Castings., Inc.*, Case No. 06-10119 (MFW) (Bankr. D. Del. Mar. 6, 2006) (authorizing debtors to pay up to $10.6 million in prepetition claims of critical trade creditors); *In re Pliant Corp.*, Case No. 06-10001 (MFW) (Bankr. D. Del. Jan. 4, 2006) (authorizing debtors to pay up to $18.2 million in prepetition critical vendor claims; *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005) (authorizing debtors to continue vendor rescue program and payment of $90 million in prepetition claims of financially distressed sole source suppliers and vendors without contracts); *In re Tower Auto., Inc.*, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Mar. 14, 2005) (authorizing debtors to pay $40 million in prepetition claims of essential suppliers).

22. The relief requested herein is warranted. If DuPont discontinues its supply of Kevlar or imposes less favorable credit terms upon the Debtors, the Debtors will be forced to

(a) spend significant time and resources locating alternative vendors, (b) incur additional costs as a result of the higher priced materials charged by new vendors, and (c) cease operations resulting from delays associated with these efforts and risk losing business with current and prospective customers, including some of the Debtors' current business.

23. The relief requested in this Motion is necessary to continue the Debtors' operations by ensuring the steady and uninterrupted supply of finished and unfinished goods and other key materials and services used in the Debtors' businesses. The Debtors believe that if they are required to replace DuPont, the re- certification process applicable to the Debtors' government contracts would cause significant delays in meeting existing obligations to customers. Delay or interruption in the Debtors' ability to obtain Kevlar fabric would have a significant adverse effect on the Debtors' estates. Accordingly, under the circumstances, the Court should authorize the Debtors to make the DuPont Payment, in part or in full, as determined by the Debtors in their sole discretion and in the exercise of their business judgment.

24. Nothing in this Motion should be construed as, or be deemed to be, an assumption or rejection of an executory contract or unexpired lease between the Debtors and DuPont or any of the weavers. Further, the Debtors reserve the right to contest the amount claimed by DuPont to be in the ordinary course of business.

25. Finally, pursuant to Bankruptcy Rule 6003(b), "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described herein and as supported by the Avila Declaration, the Debtors submit that the requirements of Rule 6003 have

been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates. To implement the foregoing successfully and insure the Debtors' operations are not disrupted, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Notice

26. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; and (ii) the Debtors' prepetition and postpetition secured lenders. As the Motion is seeking "first day" relief, within forty-eight (48) hours after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

27. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other or further relief as this Court deems appropriate.

Dated: April 14, 2010

PACHULSKI STANG ZIEHL & JONES LLP

/s/ 

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: 302/652-4100
Facsimile: 302/652-4400
Email: ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jfried@pszjlaw.com
tcairns@pszjlaw.com

[Proposed] Counsel for the Debtors and Debtors in Possession