IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., *et al.*[1] | ) | Case No. 10-11255 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION FOR ORDER UNDER SECTIONS 365(a) AND 554(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO (1) REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY, AND (2) ABANDON ANY PERSONAL PROPERTY LOCATED AT SUCH PREMISE *NUNC PRO TUNC* TO THE PETITION DATE**

---

**THIS MOTION SEEKS TO REJECT CERTAIN OF THE DEBTORS' LEASES. ANY NON-DEBTOR PARTY TO A LEASE WITH THE DEBTOR SHOULD REVIEW THE ATTACHED EXHIBIT A TO DETERMINE IF THE DEBTORS ARE SEEKING TO REJECT ITS LEASE.**

---

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this Court for entry of an order authorizing the Debtors to (1) reject certain unexpired leases of nonresidential real property, more particularly described on Exhibit A hereto (the "Rejected Leases"), between the Debtors and third parties, and (2) abandon any personal property located at such premises *nunc pro tunc* to the Petition Date (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

## Jurisdiction

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334; as is venue pursuant to 28 U.S.C. §§ 1408-09. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (D), (K), (M) and (O).

2. The statutory predicates for the relief sought herein are sections 365(a) and 554(a) of title of the United States Code (the "Bankruptcy Code") and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. Point Blank Solutions Inc. ("PBSI") is a leading manufacturer and provider of bullet, fragmentation and stab resistant apparel and related ballistic accessories, which are used domestically and internationally by military, law enforcement, security and corrections personnel, as well as government agencies. Since 1998, PBSI has supplied over 80% of U.S. military soft body armor vest requirements to protect soldiers and marines around the world. PBSI and its subsidiaries Point Blank Body Armor ("PBBA") and Protective Apparel Corporation of America ("PACA") are major players in the domestic law enforcement market

with broad brand recognition and a best value reputation. The Debtors' products are sold through a variety of means, including direct sale contracts, a corporate sales force, sales agents and a network of distributors.

5.  The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of T. Scott Avila in Support of First Day Motions* (the "Avila Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

## Relief Requested

6.  The Debtors have determined that the Rejected Leases listed on Exhibit A attached hereto are unnecessary to the continued operation of their business, have no value to the estates, and should be rejected *nunc pro tunc* to the Petition Date.[2]

7.  For each Rejected lease, the Debtors considered the need for operations at the location and costs, as well as projections related to the same. In every case, the Debtors concluded that the costs to maintain offices or operations at these locations were not sufficient to justify the expenses associated with retaining the leasehold. Contemporaneously with evaluating the viability of continuing operations at these stores, the Debtors tried – in the alternative – to market these leases, and were unsuccessful in every case. Thus, in the Debtors' business judgment, the only way to eliminate the unnecessary administrative expenses associated with these leases is to reject them *nunc pro tunc* to the petition date.

---

[2] The Debtors reserve the right to seek to reject other nonresidential real property leases at a later date.

8. Based on these determinations, the Debtors have already ceased operations at the sites associated with the Rejected Leases, and have tendered each leasehold to the landlord and unequivocally informed each landlord that the Debtors had no further interest in retaining the leasehold associated with the Rejected Leases.

9. While the Debtors believe that the properties that are the subject of the Rejected Leases were left in "broom-clean" condition, they may contain various items of personal property owned by the Debtors. The Debtors believe that any personal property at these locations has inconsequential value to the estates when considered in relation to the anticipated expense of sale and any carrying costs associated therewith. The Debtors therefore seek to abandon any personal property located at the premises leased by the Debtors under the Rejected Lease as of the Motion Filing Date.

## Termination of Lease

10. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may ... reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). See also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." Stewart Title Guar. Co. v. Old Republic Nat'l Title Co., 83 F.3d 735, 741 (5th Cir. 1996) (citing In re Muerexco Petroleum, Inc., 15 F.3d 60, 62 (5th Cir. 1994)). Rejection of an executory contract is appropriate where rejection of the contract would benefit the Debtors' estates. See Sharon Steel Corp. v. National Fuel Gas Distribution Corp. (In re Sharon Steel Corp.), 872 F.2d 36, 40 (3d Cir. 1989).

11. Whether the assumption or rejection of unexpired lease would benefit the estates is a matter reserved for the Debtors' business judgment. See NLRB v. Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); In re Taylor, 913 F.2d 102, 107 (3d Cir. 1990); see also In re Federal Mogul Global, Inc., 293 B.R. 124, 126 (D. Del. 2003); In re HQ Global Holdings, 290 B.R. 507, 511 (Bankr. D. Del. 2003). This means that the Debtors' business decision should be approved unless the Court determines that the decision is the product of bad faith, whim or caprice. See In re Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001). See also Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a Debtors' decision to assume or reject an executory contract "should be granted as a matter of course"). Otherwise, if the debtors' business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. In re Federal Mogul Global, Inc., 293 B.R. 124, 126 (D. Del. 2003).

12. Here, the Debtors seek to reject the Rejected Leases in order to avoid the possibility of incurring administrative expenses related to the Rejected Leases. As previously stated, the Debtors believe that the Rejected Leases are burdensome, provide no economic value to their estates, and are unnecessary to the Debtors' reorganization. Therefore, rejection of the Rejected Leases at this time will eliminate unnecessary debts, save cash, and allow management to focus their limited resources on the operation of the Debtors' core business. For these reasons, the Debtors believe that such rejections are justified.

13.     In order to further avoid paying unnecessary administrative expenses related to the Rejected Leases, the Debtors ask that their rejection be deemed effective as of the Petition Date. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 530 (1984) (stating that rejection relates back to the petition date); In re Joseph C. Speiss Co., 145 B.R. 597, 606 (Bankr. N.D. Ill. 1992) ("a trustee's rejection of a lease should be retroactive to the date that the trustee takes affirmative steps to reject said lease"); In re Mid-Region Petroleum, Inc., 111 B.R. 968, 970-71 (Bankr. W.D. Okla. 1990) ("[r]ejection may be accomplished by an unequivocal act of the [debtor in possession]"); 1 Potato 2, Inc., 58 B.R. 752, 754-56 (Bankr. D. Minn. 1986) (debtor's letter informing lessors of intention to reject the lease constitutes effective rejection).[3] Again, this is entirely proper given the information set forth above, as the Debtors submit that their unequivocal tender of the leaseholds governed by the Rejected Leases should *a fortiori* constitute a rejection.

14.     That said, the Debtors have submitted this motion in an abundance of caution, and believe that they can satisfy the prerequisites associated with a motion to reject leases *nunc pro tunc* to the Petition Date. Specifically, rejection effective as of the Petition Date is appropriate where, as here, the Debtors: (i) vacated the locations relating to the Rejected Leases and/or notified the affected landlords that the Debtors do not intend to further occupy the locations; (ii) served notice of this Motion on the landlords on the next business day following the Petition Date; and (iii) will not withdraw any of the Rejected Leases from this Motion absent

---

[3] Although some courts have held that court approval of a motion to reject unexpired leases is a condition precedent to effective rejection for purposes of section 365(d)(3), see, e.g., In re Four Star Pizza, Inc., 135 B.R. 498, 501 (Bankr. W.D. Pa. 1992), the Debtors submit the better view is that rejection is effective when the Debtors in possession affirmatively rejects the lease by providing notice to the applicable counter-parties so that the Debtors' obligations under section 365(d)(3) end at that point. See 1 Potato, 58 B.R. at 754-56; cf. Speiss, 145 B.R. at 606.

the consent of the respective landlord. See In re Namco Cybertainment, Inc., Case No. 98-00173 (PJW) (April 15, 1998). As mentioned above, the Debtors have vacated the locations and notified the landlords of as much. Further, notice will be served on all affected parties within a day of the Petition Date and will be served on any official committee within 24 hours of its formation. Finally, by filing this Motion, the Debtors submit that they will not withdraw any of the Rejected Leases from this Motion absent consent of the respective landlord.

### Abandonment of Personal Property

15. In addition, the Debtors seek authority to abandon any owned personal property located at the premises and any personal property leased by the Debtors under the Rejected Leases located at the premises, as is, where is, and in accordance with section 554(a) of the Bankruptcy Code. Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of their estates that is burdensome to their estates or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). For the reasons stated above, the Debtors believe that the costs associated with liquidating any remaining personal property assets at the premises underlying the Rejected Leases will likely approach or exceed the value of such assets. Accordingly, the Debtors believe that the personal property at these locations has inconsequential value to their estates and should be abandoned as of the date of rejection.

### No Waiver of Debtors Rights

16. The Debtors may have claims and/or defenses against a contract counter-party arising under, or independently of, the Rejected Leases. The Debtors do not waive such claims by the filing of this Motion or the rejection of any of the Rejected Leases. In addition,

nothing herein shall be construed as a concession or evidence that any of the Rejected Leases identified herein has not expired, been terminated or otherwise currently is not in full force and effect. Rather, the Debtors expressly reserve all rights with respect thereto, including their right to seek a later determination of these issues and their right to dispute the validity, status, characterization or enforceability of any of the Rejected Leases set forth herein.

## Notice

17. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition secured lenders. Following the first day hearing in this case, this Motion will be served on: (a) creditors holding the twenty-five largest unsecured claims against the Debtors on a consolidated basis as identified in the Debtors' petitions, or their legal counsel (if known); (b) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (c) counterparties to all leases affected by the rejection. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

18. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order authorizing the Debtors to reject each of the Rejected Leases as provided herein, to abandon personal property located on the premises of the Rejected Leases and granting such other relief as is just and proper.

Dated: April 14, 2010

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ljones@pszjlaw.com
    dbertenthal@pszjlaw.com
    tcairns@pszjlaw.com
[Proposed] Counsel to Debtors and
Debtors in Possession