# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | Chapter 11 |
|---|---|---|
| In re | : | |
| | : | Case No. 10-11255 (PJW) |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | Hearing Date: June 10, 2010 at 11:00 a.m. (ET) |
| | | Objection Deadline: June 3, 2010 at 4:00 p.m. (ET) |

## MOTION OF D. DAVID COHEN FOR RELIEF FROM THE AUTOMATIC STAY

D. David Cohen ("Mr. Cohen" or "Movant") hereby moves (the "Motion") for relief form the automatic stay pursuant to Section 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") to continue a civil suit pending before the United States Court of Appeals for the Second Circuit which is the result of an appeal from the approval of a settlement agreement of a derivative action brought to vindicate the rights of the Debtor Point Blank Solutions, Inc. (the "Debtor"), and in support thereof, Mr. Cohen states as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicate for the relief requested herein is § 362(d) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

2. Movant D. David Cohen is a shareholder of the Debtor and the appellant in the case of *In re DHB, Inc.*, Case No. 08-3860-cv, an appeal from the approval of a settlement of a derivative action brought to vindicate the rights of the Debtor, which has been argued and fully

---

[1] The Debtors in these cases, along with the last four digests of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

2697400

submitted before the U.S. Court of Appeals for the Second Circuit. Movant hereby moves pursuant to section 362(d) of the Bankruptcy Code for a determination that *In re DHB* is not subject to the automatic stay or, alternatively, for an order lifting the automatic stay to permit *In re DHB* to proceed to a final determination.

3. In the fall of 2005, a number of derivative and class action lawsuits were brought in the Eastern District of New York, alleging that certain officers and directors of the Debtor (then known as DHB Industries, Inc.)—including David H. Brooks, the company's CEO, chairman of the board and principal stockholder, and Dawn Schlegel, the company's CFO—had unjustly enriched themselves and caused over $700 million in damages to the Debtor through, among other things, habitual self dealing and insider trading of company securities.

4. In the summer of 2006, the Debtor agreed to a combined settlement of the derivative and class action lawsuits with the individual defendants and the lead derivative and class action plaintiffs. The settlement, among other things, releases all claims against the individual defendants, and releases and indemnifies Mr. Brooks and Ms. Schlegel against any liability under § 304 of the Sarbanes Oxley Act of 2002 ("SOX").[2]

5. Mr. Cohen objected to the proposed settlement of the derivative action before the Eastern District of New York, arguing that the settlement's release and indemnification of Mr. Brooks and Ms. Schlegel violates § 304 of SOX and is against public policy, and that the settlement as a whole was not fair, reasonable and adequate from the perspective of the Debtor.

---

[2] SOX § 304 mandates reimbursement to a public company of incentive and equity-based compensation and trading profits in company stock earned by CEOs and CFOs of public companies that are forced to restate financial reports as a result of misconduct. The relevant release and indemnification provisions are contained in ¶¶ 1.27 and 4.7 of the settlement, attached hereto (without exhibits) as Exhibit A.

2697400　　　　　　　　　　　　　　　　　　　　2

6. On October 1, 2007, as a result of misconduct by Mr. Brooks and others, the Debtor restated its financials for 2003, 2004 and the first 9 months of 2005.

7. Three days after the Debtor restated its financial statements, the Department of Justice ("DOJ") intervened in the case of *In re DHB*, and filed objections to the proposed settlement on behalf of itself and the Securities and Exchange Commission ("SEC"), on the ground that, among other issues, the settlement undermines the enforcement of U.S. securities laws by effectively nullifying efforts by the SEC to compel Mr. Brooks to reimburse the Debtor under § 304 of SOX.

8. Complaints filed by the SEC in the United States District Court for the Southern District of Florida against Mr. Brooks and Ms. Schlegel allege fraud, insider trading and violations of the Securities and Exchange Act of 1934. The SEC complaint against Mr. Brooks seeks reimbursement to the Debtor of approximately $186 million of incentive-based compensation and trading profits under § 304 of SOX, based on the restated financial statements.[3]

9. While approval of the settlement was still pending, the U.S. Attorney for the Eastern District also filed criminal indictments against Mr. Brooks and Ms. Schlegel, alleging securities fraud, insider trading and conspiracy, based on a scheme to fraudulently manipulate the books and records of the Debtor.

10. At the final hearing on June 25, 2008, over the objections of Mr. Cohen and other objectors to the settlement of the derivative action, including the DOJ and the SEC, the District Court granted final approval of the settlement.

---

[3] Early in the proceedings, Mr. Brooks was put under house arrest and the government restrained more than $180 million of his assets. On January 15, 2009, Mr. Brooks was re-arrested and jailed after the discovery of millions of dollars of undisclosed assets and money laundering operations in Europe.

11. Mr. Cohen filed a timely appeal to the Second Circuit Court of Appeals.

12. Briefing of the issues on appeal took place before the Second Circuit between June 25, 2009 and September 10, 2009. The DOJ and the SEC submitted an *amicus* brief in support of Mr. Cohen's argument that the release and indemnification provisions of the settlement violate § 304 of SOX and public policy.[4]

13. On January 15, 2010, the Second Circuit heard oral argument from the parties, including the United States as *amicus curiae* in support of Mr. Cohen. The Court of Appeals has had the matter *sub judice* since the close of oral argument, and the parties are awaiting its decision.

14. On April 14, 2010, three months after the case of *In re DHB* was fully submitted to the Court of Appeals, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware and invoked the automatic stay of litigation by sending notice to Mr. Cohen and the Second Circuit Court of Appeals.

## RELIEF REQUESTED

15. The Court should make a determination that the appeal before the Second Circuit in the case of *In re DHB* is not subject to the automatic stay, because neither the derivative action brought to vindicate the rights of the Debtor nor the appeal from the settlement of that derivative action are claims "against the debtor."

---

[4] The opening brief submitted by Mr. Cohen is attached hereto as Exhibit B. Mr. Cohen's reply brief is attached hereto as Exhibit C.

16. Alternatively, if the Court finds that the automatic stay applies to the case of *In re DHB*, the Court should lift the automatic stay to permit *In re DHB* to proceed to a final determination.

## BASIS FOR RELIEF REQUESTED

### A. The Derivative Action is not Subject to the Automatic Stay

17. Section 362(a)(1) of the Bankruptcy Code states that the filing of a petition for bankruptcy operates as an automatic stay of any actions or proceedings "against the debtor." 11 U.S.C. § 362(a)(1).

18. Derivative actions are suits brought by shareholders of a corporation to enforce a right that the corporation has failed to assert. Fed. R. Civ. Pro. 23.1(a). The corporation has suffered the wrong alleged in such cases and will receive any recovery. *In re Touch America Holdings, Inc.*, 401 B.R. 107, 121 n.26 (D. Del. 2009); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Sup. Ct. Del. 2007). In no sense is a derivative suit an action or proceeding "against the debtor."

19. Derivative actions are useful when powerful officers who have harmed the corporation prevent it from asserting claims against them. Yet, these officers may continue to control the corporation while such actions are pending, and derivative counsel has an incentive to compromise the interests of the company in order to recoup a large fee award. *See* S. Rep. No. 109-14, at 4, 29 (2005) (noting that settlements may "simply transfer money from corporations to class counsel" and harm the supposed beneficiaries "while enriching their lawyers"). To prevent such abuses, a court must approve all such settlements. Fed. R. Civ. Pro. 23(e), 23.1(c); *see also* Class Action Fairness Act of 2005, 28 U.S.C. § 1711–15 (requiring notice to federal and state

officials prior to approval). Shareholders who appeal from the approval of such settlements are continuing to assert the rights of the corporation. Thus, an appeal from a court's approval of a derivative settlement is likewise not an action or proceeding "against the debtor."

**B.  If the Derivative Action is Subject to the Automatic Stay, the Court Should Modify the Stay to Permit the Second Circuit to Decide the Matter**

20.  In the alternative, if the Court determines that the automatic stay applies to the case of *In re DHB*, the Court should lift the automatic stay to permit *In re DHB* to proceed to a final determination. Under section 362(d)(1) of the Bankruptcy Code, courts may grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code and must be determined on a case-by-case basis. *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997); *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (D. Del. 2007); *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). The legislative history does note, however, that cause may be established by a single factor such as "lack of any connection with or interference with the pending bankruptcy case." H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 343–44 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News, 5787, 6300.

21.  The United States Bankruptcy Court for the District of Delaware applies a three-prong balancing test in determining whether "cause" exists:

> (1) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits.

*In re SCO Group, Inc.*, 395 B.R. 852, 857 (D. Del. 2007); *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (D. Del. 1992). Applying the three-prong test to the instant case, it is clear that good

cause exists to lift the automatic stay as to the case of *In re DHB* and allow the Second Circuit to determine the appeal before it.

22. No prejudice to either the bankrupt estate or the Debtor will result from continuation of the appeal. In fact, the Debtor can only benefit from such continuation. If the Second Circuit upholds the challenged release and indemnification of Mr. Brooks and Ms. Schlegel from their SOX § 304 liabilities, the Debtor's financial situation remains unchanged, but it receives clarity as to its indemnification obligations and an end to litigation. However, if the Second Circuit holds that the indemnification is illegal, the Debtor will no longer be barred from accepting and retaining up to $186 million pursuant to the SOX § 304 claim that the SEC is pursuing against Mr. Brooks.[5]

23. Likewise, the hardship to Mr. Cohen (as well as to the DOJ and the SEC) by maintenance of the stay considerably outweighs the hardship to the Debtor by lifting the stay. Since the fall of 2005, the case of *In re DHB* has worked its way through the Eastern District of New York and the Second Circuit Court of Appeals. The parties filed numerous briefs and affidavits, engaged in hearings and expended enormous amount of time, effort and attorneys fees in litigating this matter. The appeal, which is now fully submitted before the Second Circuit, will determine not only whether the Debtor will be permitted to recoup up to $186 million in ill-gotten gains by its former CEO, but whether the government will effectively be able to require reimbursement of public companies under SOX § 304 as Congress intended. The hardship to Mr. Cohen and the other shareholders, and the continued undermining of the securities laws if

---

[5] It is essentially undisputed that all of the elements of a valid SOX § 304 claim are met in the case brought by the SEC against Mr. Brooks in the Southern District of Florida: (i) the Debtor was forced to restate its financials as a result of misconduct; (ii) Mr. Brooks was CEO during that time period; and (iii) Mr. Brooks received incentive compensation and trading profits of more than $186 million during that time period.

2697400  7

this dispute is left in limbo, certainly outweighs the nonexistent hardship to the Debtor if *In re DHB* is allowed to proceed to a final determination.

24. While Mr. Cohen is not a "creditor" of the Debtor with respect to the case of *In re DHB*,[6] the third prong also supports a lifting of the automatic stay because it is likely that Mr. Cohen will prevail on the merits. The support of the DOJ and the SEC demonstrates that Mr. Cohen's appeal has substantial merit.

25. In addition to the three-prong balancing test discussed above, the Bankruptcy Court may also consider the following general policies that underlie the automatic stay:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and balance of harms.

*In re SCO Group*, 395 B.R. at 857 (quoting *In re Sonnax Indus. Inc.*, 907 F.2d 1280, 1287 (2nd Cir. 1990)). The application of these general policies also weigh heavily in favor of granting Mr. Cohen's motion to lift the automatic stay.

26. Regarding the first policy, relief would indeed result in a complete resolution of the issues in the appeal. The only issues on appeal in the case of *In re DHB* are whether the settlement violates SOX § 304 and whether the settlement was fair, reasonable and adequate

---

[6] Mr. Cohen is former general counsel of the Debtor and has asserted contract claims against the company for approximately $588,000 and other relief in a separate proceeding unrelated to *In re DHB*.

from the perspective of the Debtor. Those issues are fully submitted and awaiting resolution by the Second Circuit.

27.  With respect to the second policy, the determination of the appeal will not interfere with the bankruptcy case in any way. Lifting the stay requires the Debtor to do nothing more than await a decision by the Court of Appeals.

28.  With regard to the third policy, the other proceeding does not involve the Debtor as a fiduciary.

29.  As to the fourth policy, a tribunal with the necessary expertise has indeed been established to hear the cause of action. In fact, the appeal has already been heard and is fully submitted before the Second Circuit. The legality of indemnification of a CEO against liability under SOX § 304 is recognized to be an important issue of first impression under the securities laws.

30.  The fifth policy, whether the Debtor's insurer has assumed full responsibility for defending it, is not applicable in this case.

31.  Regarding the sixth policy, the appeal does primarily involve third parties. The shareholders of the Debtor brought an action on behalf of the company against the company's former officers and directors, who are not in bankruptcy.

32.  With respect to the seventh policy, continuing the appeal before the Second Circuit would not prejudice the interests of the Debtor's creditors. To the contrary, continuing the appeal may well result in a material increase of the Debtor's assets, potentially allowing a greater recovery to its creditors.

33. The eighth policy, whether the judgment claim arising from the other action is subject to equitable subordination, is not applicable in this case.

34. With regard to the ninth policy, Mr. Cohen's success in the appeal before the Second Circuit would not result in a judicial lien avoidable by the Debtor.

35. As to the tenth policy, the interests of judicial economy and the expeditious and economical resolution of litigation militate in favor of lifting the automatic stay. Over the course of the past five years, the parties expended enormous amount of time, effort and attorneys fees in litigating this matter, first before the Eastern District of New York and then before the Second Circuit Court of Appeals, where it is now fully submitted. The appeal alone took over a year and a half to be heard by the Second Circuit. It would be an egregious waste of judicial resources if the case had to be litigated anew before a tribunal that would be completely unfamiliar with the facts of the case and the complex legal issues involved.

36. With respect to the eleventh policy, the parties are far more than "ready for trial" in the appeal. As noted above, the appeal in the case of *In re DHB* has been briefed and argued and is fully submitted before the Second Circuit.

37. The twelfth and final policy—the impact of the stay on the parties and the balance of harms—was addressed at the outset in connection with the three-prong test that the United States Bankruptcy Court for the District of Delaware first applies to determine whether "cause" exists. In short, the balance of harms tips decidedly in favor of Mr. Cohen if the important issues before the Second Circuit are left in limbo. In contrast, the Debtor can only benefit from the continuation of the appeal, and has no legitimate reason to oppose the lifting of the automatic stay.

## CONCLUSION

For the reasons set forth above, Mr. Cohen respectfully requests that the Court make a determination that *In re DHB*, a derivative action brought to vindicate the rights of the Debtor, is not subject to the automatic stay or, alternatively, for an order lifting the automatic stay to permit *In re DHB* to proceed to a final determination.

Dated: May 17, 2010

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*

Brett D. Fallon (DE Bar No. 2480)
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899-2306
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: bfallon@morrisjames.com
emonzo@morrisjames.com

-and-

Aaron R. Cahn
Gary D. Sesser
Laura A. Reeds
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: cahn@clm.com
sesser@clm.com
reeds@clim.com

*Attorneys for D. David Cohen*