IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: 15, 2010 at 4:00 p.m.
Hearing Date: July 14, 2010 at 11:00 a.m.

### DEBTORS' APPLICATION TO RETAIN EXECUTIVE SEARCH FIRMS COLE, WARREN & LONG, INC., AND THE MERGIS GROUP PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED.R.BANKR.P. 2014(a), AND 2016

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby file this application (the "Application") for authority to retain two executive search firms: Cole, Warren & Long, Inc. ("Cole Warren"), and The Mergis Group ("Mergis"). The Debtors seek to retain these executive search firms pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As set forth in detail below, the Debtors seek to retain Cole Warren in order to locate (i) three to six senior executives, and (ii) three to six midlevel executives to be employed by the Debtors. The Debtors seek to retain Mergis in order to locate three to six lower level supervisors and/or managers to be employed by the

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

Debtors. In support of the Application, the Debtors rely on (i) the Declaration of Ronald J. Cole, attached hereto as <u>Exhibit A</u>, in support of the retention of Cole Warner, and (ii) the Declaration of Ivonne Simon, attached hereto as <u>Exhibit B</u>, in support of the retention of Mergis. In further support of this Application, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 327(a) and 328(a).

### Background

2. On April 14, 2010 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On April 26, 2010, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

3. Debtor Point Blank Solutions, Inc. ("PBSI") is a leading manufacturer and provider of bullet, fragmentation and stab resistant apparel and related

ballistic accessories, which are used domestically and internationally by military, law enforcement, security and corrections personnel, as well as government agencies. Since 1998, PBSI has supplied over 80% of U.S. military soft body armor vest requirements to protect soldiers and marines around the world. PBSI and its subsidiaries Debtor Point Blank Body Armor ("PBBA") and Debtor Protective Apparel Corporation of America ("PACA") are major players in the domestic law enforcement market with broad brand recognition and a best value reputation. The Debtors' products are sold through a variety of means, including direct sale contracts, a corporate sales force, sales agents and a network of distributors.

4. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of T. Scott Avila, Chief Restructuring Officer of the Debtors, in Support of First Day Motions [Docket No. 3]* (the "Avila Declaration") filed on the Petition Date and incorporated herein by reference.

5. In connection with their bankruptcy filings, the Debtors intend to hire three to six new senior executives, and three to six lower level supervisors and/or managers. The Debtors have, subject to approval by the Court, entered into engagements letters with (i) Cole Warren (the "Cole Warren Engagement Letter" – a copy of which is attached hereto as Exhibit C) to retain three to six new senior executives, and three to six midlevel executives, and (ii) Mergis (the "Mergis Engagement Letter" – a copy of which is attached hereto as Exhibit D) to retain three to six lower level supervisors and/or managers.

## Scope of Services To Be Provided By Cole Warren and Proposed Compensation

6. <u>Services</u>. If Cole Warren's retention is approved by the Court, Cole Warren will work with the Debtors to conduct the search and diligence process necessary for the Debtors to hire (i) three to six new senior executives, and (ii) three to six midlevel executives. In particular, Cole Warren will conduct a five-step process, as set forth in the Cole Warren Engagement Letter, whereby Cole Warren will:

### Step One

- Review the organizational and operational responsibilities of each position.
- Define the base compensation, eligible perquisites and geographical constraints.
- Develop the Position Specifications, both personal and job related.

### Step Two

- Initiate the search and identify candidates qualified for the position.
- Submit a progress report of candidates sourced to date and review the data in approximately 30 days. Additional candidates will be delivered as soon as they are developed.

### Step Three

- Conduct in-depth interviews with candidates selected by the Chief Executive Officer of Point Blank Solutions, Inc.
- Arrange for candidate interviews with the Chief Executive Officer at a convenient place and time.

### Step Four

- Thoroughly check the references of the candidates of interest and provide a written report.

### Step Five

- Assist in job offer negotiations between the client and the candidate.

- Assist in gaining acceptance of the employment offer to the candidate.
- Coordinate relocation of the family, if necessary.

7. <u>Compensation</u>. The Debtors have, subject to Court approval, agreed to compensate Cole Warren pursuant to the terms in the Cole Warren Engagement Letter and pursuant to section 328 of the Bankruptcy Code. Cole Warren's services are being provided on a contingency fee basis, pursuant to which Cole Warren would receive (i) 25% of the annual salary of each senior executive that the Debtors employ as a result of Cole Warren's services, and (ii) 15% of the annual salary of each midlevel executive that the Debtors employ as a result of Cole Warren's services. These contingency fees include all costs and expenses that Cole Warren may incur in connection with providing services to the Debtors. Moreover, Cole Warren will not be entitled to any payment for its services in the event that the Debtors do not hire any senior executives or midlevel executives, as applicable, as a result of Cole Warren's services.

8. Cole Warren has agreed to abide by the fee application process and to be compensated in accordance with sections 328 and 331 of the Bankruptcy Code. Cole Warren intends to file fee applications in these cases on an ongoing basis, after it has earned a contingency fee by the Debtors hiring of a senior executive or midlevel executive. By way of this Application, Cole Warren seeks authority to have such fee applications be scheduled at the next available omnibus hearing date, and to seek approval of the full payment of its earned contingency fee.

## Scope of Services To Be Provided By Mergis and Proposed Compensation

9. <u>Services</u>. If the retention of Mergis is approved by the Court, Mergis will work with the Debtors to conduct the search and diligence process necessary for the Debtors to hire three to six lower level supervisors and/or managers. In connection therewith, Mergis will, among other things:

- Provide feedback on the submission of a candidate's resume to the Debtors within 24 hours or an agreed timescale if this is not possible;

- Promptly schedule interviews with the Debtors' hiring/management team within 3 days of resume submission;

- Names, job titles and brief executive biographies of all hiring managers involved in the decision making process, maximizing our ability to adequately brief our candidates' prior to interview; and

- Manage the entire offer process immediately after final interview to maximize acceptance of offers.

10. <u>Compensation</u>. The Debtors have, subject to Court approval, agreed to compensate Mergis pursuant to the terms in the Mergis Engagement Letter and pursuant to section 328 of the Bankruptcy Code. Mergis' services are being provided on a contingency fee basis, pursuant to which Mergis would receive 15% of the annual salary of each lower level supervisor and/or manager that the Debtors employ as a result of Mergis' services. This contingency fee includes all costs and expenses that Mergis may incur in connection with providing services to the Debtors. Moreover, Mergis will not be entitled to any payment for its services in the event that the Debtors do not hire any lower level supervisors and/or managers as a result of Mergis' services.

11. Cole Warren has agreed to abide by the fee application process and to be compensated in accordance with sections 328 and 331 of the Bankruptcy Code. Cole Warren intends to file fee applications in these cases on an ongoing basis, after it has earned a contingency fee by the Debtors hiring of a senior executive or midlevel executive. By way of this Application, Cole Warren seeks authority to have such fee applications be scheduled at the next available omnibus hearing date, and to seek approval of the full payment of its earned contingency fee.

### Disinterestedness

12. To the best of the Debtors' knowledge, and except as otherwise disclosed herein or set forth in the Cole Declaration and/or Simon Declaration, neither Cole Warren nor Mergis hold or represent interests adverse to the Debtors or the Debtors' bankruptcy estates. In addition, both firms are a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code.

### Relief Requested

13. By this Application, the Debtors seek the entry of an order authorizing their proposed retentions of Cole Warren and Mergis as their executive search firms, *nunc pro tunc* to April 24, 2010, pursuant to sections 327(a) and 328 of the Bankruptcy Code, and the terms and conditions set forth herein and in the parties' respective engagement letters.

## Basis for Relief

14. Section 327(a) of the Bankruptcy Code states, in pertinent part, that:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorney's, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Section 328(a) of the Bankruptcy Code, in relevant part, states that:

> The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327 ... of this title ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a). The Debtors seek to retain Cole Warren and Mergis as their executive search firms pursuant to section 327(a) of the Bankruptcy Code.

15. The Debtors believe that firms' respective national recruitment practices and expertise will enable the Debtors to quickly and efficiently obtain a pool of the most qualified applicants available for the positions that need to be filled by the Debtors, and will allow the Debtors to choose those executives who can best navigate the companies toward financial success.

16. The Debtors also seek to obtain approval of the proposed contingency fees for Cole Warren's (25% of the annual salary of each senior executive,

and 15% of the annual salary of each midlevel executive, retained by the Debtors as a result of Cole Warren's services) and Mergis (15% of the annual salary of each lower level supervisor and/or manager retained by the Debtors as a result of the services provided by Mergis) pursuant to section 328 of the Bankruptcy Code. The Debtors believe that the proposed contingency fee for each executive search firm is fair and reasonable in light of: (a) industry practice (including the fee structures typically utilized by the firms and other leading, national executive search recruitment firms, which do not bill their clients on an hourly basis); (b) market rates charged for comparable services both in and out of chapter 11; (c) Cole Warren's and Mergis' extensive experience; and (d) the nature, scope and timing of the work to be performed by Cole Warren and Mergis.

17. Moreover, as noted above, both Cole Warren and Mergis have agreed to be compensated in accordance with sections 328 and 331 of the Bankruptcy Code, and have requested authority to file fee applications after they have earned their respective contingency fees, and have such fee applications scheduled for hearing at the next available omnibus hearing date, and to seek approval of the full payment of their respective earned contingency fees.

18. No previous application for the relief requested herein has been made to this or any other court.

### Notice

19. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the U.S. Trustee; (ii) the Debtors'

prepetition and postpetition secured lenders; (iii) counsel for the Committee; and (iv) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court enter the proposed form of order submitted with the Application that authorizes the Debtors retention of Warren Cole and Mergis as the Debtors' executive search firms, *nunc pro tunc* to April 24, 2010, pursuant to sections 327(a) and 328(a) upon the terms and conditions set forth in the Application and the firms' respective engagement letters.

Dated: May 26, 2010

**Point Blank Solutions Inc., et al.**

T. Scott Avila
By: T. Scott Avila
Title: Chief Restructuring Officer