IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | Re Docket No. 148 |

**REPLY TO THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' APPLICATION TO RETAIN PILLSBURY WINTHROP SHAW PITTMAN AS SPECIAL COUNSEL TO THE DEBTORS' SPECIAL COMMITTEE *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO SECTION 327(E) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014**

Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), the proposed special counsel to the special committee (the "Special Committee") of the board of directors of Point Blank Solutions, Inc. and its affiliated debtors (collectively, the "Debtors") hereby files this reply (the "Reply") to the Objection (the "Objection") of the Official Committee of Unsecured Creditors (the "Creditors' Committee") to the Application (the "Application")[2] of the Debtors seeking authority to retain Pillsbury as Special Counsel to the Special Committee in these cases. Pillsbury submit this Reply in further support of the Debtors' Application and hereby states as follows:

## Preliminary Statement

The Creditors' Committee's has adopted the completely illogical position that, in order to ameliorate potential conflicts of interest, this Court should deny representation to the Special Committee, a body organized expressly for the purpose of preventing conflicts of interest. In

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2] Unless defined specifically herein, capitalized terms bear the meanings given to them in the Application.

500559391v5

doing so, the Creditors' Committee disregards longstanding principles of Delaware corporate governance, which encourage independent committees, advised by independent advisors, in such situations. Further, the Creditors' Committee misrepresents the nature and scope of the Debtors' Special Committee in order to undercut the basic principles governing special counsel retentions under the Bankruptcy Code. The benefit and reasonableness of Pillsbury's retention are explained in the Application and evident from the facts of these cases and Delaware law. Consequently, the Objection is without moment and should be overruled. This Court should grant the Debtors' Application.

## Argument

### A. Delaware Corporate Law Encourages Independent Representation

1. Denying the Application would contradict Delaware corporate governance and, ironically, potentially create the very conflicts that the Creditors' Committee posits as grounds to deny the Application. The Creditors' Committee argues nonsensically that potential conflicts of interest militate against permitting independent counsel for the Special Committee and that the Special Committee should simply rely on the Debtors' other professionals to fill this function. These arguments are contrary to longstanding principles of Delaware law, which clearly hold that a special committee is most effective when advised by independent counsel. *See In re Gesoff v. IIC Indus., Inc.*, 902 A.2d 1130, 1146 (Del. Ch. 2006) ("As has been repeatedly held, special committee members should have access to knowledgeable and independent advisors, including legal and financial advisors."); *see also* Del. L. of Corp. and Bus. Org. § 9.35 (2010) ("In conducting its work, a special committee composed of independent directors must maintain true independence. The maintenance of independence often is assisted through the retention of

2

independent legal and financial advisors who report solely to the special committee.") (citing *Strassburger v. Earley*, 752 A.2d 557, 567 (Del. Ch. 2000)).

2. The Debtors formed the Special Committee on December 28, 2009 to safeguard against improper domination or influence of Steel Partners. The Special Committee in turn retained Pillsbury as counsel on January 7, 2010 to safeguard the independence of the Special Committee's decisions. *See* Application ¶ 8. The Special Committee has the specific mandate to consider potential financing arrangements, asset sales, and other matters in situations involving Steel Partners where certain non-independent members of the board of directors have a perceived or actual interest, thereby ensuring that the transaction will inure to the benefit of all stockholders and not just Steel Partners, one of the potential counterparties. To fulfill that function, and to prevent domination of the Debtors by Steel Partners, the Special Committee pre-bankruptcy received, and desires to continue to receive, advice from legal advisors assisting them in analyzing, and potentially vetoing or restructuring, a proposed transaction. Delaware cases specifically hold that, to be effective, a special committee must have the power to say "no," lest the purpose or function of the committee be impaired. *See Gesoff*, 902 A.2d at 1146 ("Evidently, [the special committee's] mandate should include the power to fully evaluate the transaction at issue, and, ideally, include what this court has called the 'critical power' to say 'no' to the transaction.). Part of a special committee's effectiveness in asserting such independence depends on whether it is receiving independent counsel from its advisors.

3. Moreover, Delaware courts are clear that "independent advisors," in the face of a potential bid by a person whose relationship, through affiliation or otherwise, with the company or management is such that doubt could exist as to whether decisions could be influenced by considerations extrinsic to the corporate merits, means advisors other than advisors that represent

3

the company itself. In such situations, receiving independent counsel that is not linked to the company or management preserves independent judgment and avoids even the appearance of any impropriety in the special committee's process and analysis. While company counsel nearly always are themselves disinterested and effective, independent counsel dedicated to the special committee gives an imprimatur of fairness to the special committee's decisions. *See Kahn v. Tremont Corp.*, 694 A.2d 422, 428 (Del. 1997) (stating that the burden of proving fairness "may be shifted from [management] to the [party challenging the transaction] through the use of a well functioning committee of independent directors"); William T. Allen, *Independent Directors in MBO Transactions: Are They Fact or Fantasy?*, 45 Bus. Law. 2055, 2062 (1990) (reciting the tasks of counsel to a special committee and finding that if counsel is successful, "the resulting process will be unmistakably imbued with the character of a genuine attempt to maximize advantage on behalf of the shareholders" that is "superior to later judicial review for substantive fairness"); *cf. In re Tele-Commc'ns Inc. S'holders Litig.*, No. Civ. A 16470, 2005 WL 3642727, at *10 (Del. Ch. Dec. 21, 2005) (finding that lack of independent counsel "raised questions regarding the quality and independence of the counsel and advice received").

### B. The Special Committee's Retention is Appropriate Under the Bankruptcy Code

4. It is wildly inappropriate for the Creditors' Committee merely to assert as *ipse dixit* that they have "more general issues" with the Application. This sort of formless and vague objection affords no basis on which any party can fashion a response. However, the Creditors' Committee's baseless assertions notwithstanding, the Application completely satisfies the Bankruptcy Code's requirements. As noted in the Application and herein, the Debtors merely must demonstrate that the proposed retention is in the best interests of the estates. *See* Application ¶ 12 (citing 11 U.S.C. § 327(e)).

5. The Application calls for Pillsbury to be retained to continue to assist the Special Committee in fulfilling its fiduciary duties and to safeguard against possible domination and control by an insider who also is a major creditor. *See* Application ¶¶ 8, 14. Given that this function is not only common but strongly encouraged under Delaware law and often absolutely essential, the benefit to the estates is obvious. The Creditors' Committee, in articulating the risks of conflicts, underscores the value of Pillsbury's services. A knowledgeable, independent Special Committee advised by independent counsel is the best method to prevent undue influence. Moreover, Pillsbury has indicated that it will comply with applicable guidelines and procedures for compensation and that its pecuniary retention terms are reasonable in light of the services to be provided. *See* Application ¶¶ 8-10. Consequently, the Debtors and Pillsbury have satisfied the procedural prerequisites for retention.

6. In arguing that Pillsbury's retention is improper, the Creditors' Committee completely ignores that the relationship between Pillsbury and the Special Committee predates the bankruptcy filing. This is precisely the situation for which the Bankruptcy Code permits special retentions. As noted in the Application, Pillsbury was retained to represent the Special Committee on January 7, 2010—over six months ago—to assist the Committee in reviewing transactions and assessing its fiduciary duties. *See* Application ¶¶ 4, 6. Ensuring pre-existing retentions' smooth transitions into bankruptcy is one of the principal purposes of special counsel retentions. *See* House Report No. 95-595, 95th Cong., 1st Sess. 328 (1977) (stating that special counsel retentions are to be used where "changing attorneys in the middle of the case would be detrimental"); Senate Report No. 95-989, 95th Cong., 2d Sess. 38 (1977) (same). It is for this very reason that special counsel retentions do not require disinterestedness on the part of the professional. *See In re Roberts*, 46 B.R. 815, 824 (Bankr. D. Utah 1985); *In re Elias*, No. 02-

5

41340, 2005 WL 4705220, at *5 (Bankr. D. Idaho June 10, 2005) ("Counsel is a creditor, but his interest as a creditor, as in accepting employment of a contingent fee basis . . . are the same: maximizing any potential recovery.").

7. The Debtors' Application is complete, satisfies the procedural prerequisites of the Bankruptcy Code, and adequately demonstrates the value that Pillsbury will provide to the estates. In response, despite clear guidance from Delaware courts, the Creditors' Committee offers nonsensical arguments that measures to preserve independence are improper. Retention of Pillsbury is entirely appropriate under the Code.

## Conclusion

WHEREFORE, based on the foregoing and on the points and authorities set forth in the Application, the Debtors request that the Court overrule the Objection and Grant the Motion.

Dated: July 9, 2010
New York, New York

/s/ *Richard L. Epling*
PILLSBURY WINTHROP SHAW PITTMAN LLP
Richard L. Epling (*admitted pro hac vice*)
1540 Broadway
New York, New York 10036
Tel.: (212) 858-1000
Fax: (212) 858-1500

500559391v5