IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., *et al.*,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| | ) | **Related to Docket No. 120** |
| Debtors. | ) | |

**EMERGENCY MOTION OF DEBTORS FOR APPROVAL
OF AMENDMENT TO DIP CREDIT AGREEMENT**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion"), on an emergency basis, for approval of a waiver and amendment to the DIP Credit Agreement (defined below) previously approved by the Court in these cases. As set forth in detail below, this relief is needed in connection with the Debtors' request for a waiver by the DIP Lender (defined below) of certain past events of default, arising from certain variances to the Debtors' approved budget, that have occurred under the DIP Credit Agreement. The amendment, in essence, reflects the waiver by the DIP Lender of these defaults and a corresponding amendment to the DIP Credit Agreement to establish certain milestones for an orderly sale or reorganization process. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

70934-001\DOCS_DE:162000.1

## DIP Credit Agreement

1. The Debtors are party to that certain *Debtor-In-Possession Financing Agreement* dated April 16, 2010 (the "DIP Credit Agreement"), by and among Protective Apparel Corporation of America ("PACA"), Point Blank Body Armor, Inc. ("Point Blank"), PBSS, LLC ("PBSS") and Point Blank Solutions, Inc. ("Parent" and together with PACA, Point Blank, and PBSS, collectively, the "Borrowers"), and Steel Partners II, L.P., a Delaware limited partnership (the "DIP Lender"), in the aggregate committed amount of up to $20,000,000.[2]

2. On April 16, 2010, this Court entered its interim order authorizing the Debtors to make emergency borrowings under the DIP Credit Agreement. On May 12, 2010, the Court entered its *Final Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364, Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules 2002-1 and 4001-2; (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness With Priority Over All Other Secured Indebtedness and With Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral and Providing Adequate Protection, and (4) Modifying the Automatic Stay* ("Final DIP Order").

3. Pursuant to ¶ 19(h) of the Final DIP Order, the Debtors and the DIP Lender are authorized to implement, in accordance with the terms of the DIP Financing Agreements, any non-material modifications or amendments to such agreements without approval of the Court but upon notice to the Creditors' Committee and the Office of the United States Trustee. In addition, the Debtors and the DIP Lender may enter into material

---

[2] Unless otherwise defined in this Motion, a capitalized term used herein shall have the meaning set forth in the DIP Credit Agreement.

modifications or amendments to the DIP Financing Agreements with Court approval, provided that ten (10) days prior notice of the material change(s) has been given to the Creditors' Committee and the Office of the United States Trustee.

4. Following the petition date, the Borrowers and the DIP Lender have entered into that certain *Waiver Agreement* dated as of May 4, 2010, under which the DIP Lender waived an Event of Default arising because the Borrowers' actual "Total Receipts" (labeled as such in the Approved Budget) for the period ended April 30, 2010, was less than 90% of the cumulative projected amounts for such period as set forth in the Approved Budget. The foregoing agreement did not effectuate any material changes to the DIP Credit Agreement and was entered into following notice to the Creditors' Committee and the Office of the United States Trustee.

5. Since then, the Borrowers have failed to meet certain related financial targets contained in the Approved Budget. Specifically, the Borrowers have failed to meet the required "Total Receipts," "Net Cash Flow", and "Total Disbursements" covenants for the period ended June 25 (with respect to Net Cash Flow), for the period ended July 2 (with respect to Total Receipts and Net Cash Flow), and for the period ended July 9, 2010 (with respect to Total Receipts, Net Cash Flow and Total Disbursements).

6. The Borrowers have requested that the DIP Lender waive the events of default arising under the DIP Credit Agreement as a result of the foregoing variances. The DIP Lender has agreed to waive the defaults under the terms and conditions of that certain *Waiver*

*and First Amendment to Credit Agreement* (the "DIP Amendment"). A true and correct copy of the DIP Amendment is attached to this Motion as **Exhibit A**.

### Amendment to DIP Credit Agreement

7. As noted in the DIP Amendment, the waiver provided by the DIP Lender is limited to the financial variances for each of the reporting periods listed above and "is a one-time waiver, and shall not be deemed to constitute a consent or waiver with respect to any other Events of Defaults." *See* DIP Amendment ¶ 1.

8. Under the DIP Amendment, the Debtors have agreed to amend the DIP Credit Agreement to formalize a sale or reorganization process. Specifically, the Debtors have agreed to certain milestones to solicit expressions of interest from third parties (due by August 6, 2010), execute a letter of intent (by September 15, 2010), and either file (i) a motion to approve an asset purchase agreement or (ii) a plan and disclosure statement (by September 30, 2010). As is currently the case under the terms of the DIP Credit Agreement, either of the foregoing transactions must provide for the repayment in full of amounts outstanding under the DIP Credit Agreement. *See* DIP Amendment ¶ 2.

9. The foregoing milestones have been carefully considered by the Debtors and their advisors and are consistent with the timetable crafted by the Debtors to formulate an exit strategy for the Chapter 11 cases. The Debtors' failure or inability to meet these milestones would constitute an event of default under the DIP Credit Agreement. *See* DIP Amendment ¶ 3. Barring unforeseen circumstances, the Debtors believe that the milestones are achievable.

10. Presently, the maturity date under the DIP Credit Agreement is September 30, 2010. Under the DIP Amendment, however, the DIP Lender has agreed that if the Borrowers meet the reorganization milestones then the maturity of the DIP Credit Agreement "shall be revised by the Borrower and the Lender to a mutually agreeable extension date, subject to agreement on appropriate terms and conditions and agreement on a Budget for the extended period." *See* DIP Amendment ¶ 4.

11. The effectiveness of the DIP Amendment is subject to the approval of the Court and the payment by the Debtors of an amendment fee in the amount of $25,000 (which amount may be borrowed by the Debtors under the DIP Credit Agreement). *See* DIP Amendment ¶ 5.

12. In light of the requirements of the Final DIP Order, the Debtors have filed this Motion for approval of the DIP Amendment.

## Relief Requested

13. The Debtors seek the approval of the Court for the DIP Amendment. As noted, the DIP Lender has agreed to waive certain past events of the default under the DIP Credit Agreement. In addition, the parties have agreed to amend the DIP Credit Agreement to implement an orderly sale/reorganization process on the timetable set forth in the DIP Amendment. Absent approval of the DIP Amendment, the Debtors will be in default under the DIP Credit Agreement and the DIP Lender would be permitted to exercise its remedies under the conditions specified in the agreement.

14. The Debtors have evaluated the terms and conditions of the DIP Amendment and, in the exercise of their business judgment, have determined that it is in the best interests of the estates to enter into the DIP Amendment and avoid the uncertainty and expense of uncured and outstanding events of default under the DIP Credit Agreement. In addition, the DIP Amendment formalizes a sale/reorganization process that will expedite the Debtors' potential emergence from Chapter 11. *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties.").

## Notice

15. The Debtors have served this Motion by overnight, hand delivery, or express mail on: (i) the Office of the United States Trustee, (ii) counsel for the DIP Lender, (iii) counsel for the Creditors' Committee, (iv) counsel for the Pre-Petition Agent (*i.e.,* Bank of America), (v) counsel for DuPont; and (vi) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Debtors respectfully request the entry of an order granting the Motion, authorizing the DIP Amendment as set forth herein, and granting such other and further relief as the Court deems appropriate under the circumstances of these cases.

Dated: July 22, 2010

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
   dbertenthal@pszjlaw.com
   tcairns@pszjlaw.com

Counsel for the Debtors and Debtors in Possession