# EXHIBIT A

| WAIVER AND FIRST AMENDMENT TO | |
|---|---|
| **CREDIT AGREEMENT** | **STEEL PARTNERS II, L.P.** |

Execution Date: July 19, 2010

THIS WAIVER AND FIRST AMENDMENT (this "**Amendment**") is made to the April 16, 2010 Credit Agreement (the "**DIP Credit Agreement**") by and between:

Steel Partners II, L.P. (the "**Lender**"), with an address of 590 Madison Avenue, 32nd Floor, New York, NY 10022,

and

Point Blank Solutions, Inc., Protective Apparel Corporation of America, Point Blank Body Armor, Inc., and PBSS, LLC, each as a debtor and debtor- in-possession (collectively, the "**Borrower**") under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"),

in consideration of the mutual covenants contained herein and benefits to be derived herefrom.

BACKGROUND:

The Borrower has failed to meet the required "Total Receipts," "Net Cash Flow", and "Total Disbursements" covenants contained in the DIP Credit Agreement and has been in default for the period ended June 25, 2010 (with respect to Net Cash Flow), for the period ended July 2, 2010 (with respect to Total Receipts and Net Cash Flow), and for the period ended July 9, 2010 (with respect to Total Receipts, Net Cash Flow and Total Disbursements) (the "**Existing Events of Default**"). The Borrower has requested that the Lender waive the Existing Events of Default, and the Lender is willing to do so, but only upon the terms and conditions set forth in this Amendment. In addition, the Borrower and the Lender desire to amend the DIP Credit Agreement. Accordingly, it is hereby agreed, as follows:

1. **Requested Waiver:** Subject to the Preconditions to Effectiveness set forth in Section 4, below, the Lender hereby waives the Existing Events of Default. The foregoing waiver:

   a. Shall not take effect upon the execution of this Amendment by the Lender, and only shall become effective upon satisfaction in full of each of the Preconditions to Effectiveness;

   b. Relates only to the Existing Events of Default, is a one-time waiver, and shall not be deemed to constitute a consent or waiver with respect to any other Events of Defaults, whether now existing or hereafter arising, including, without limitation, on account of the breach of the same or any other provision of the DIP Credit Agreement; and

   c. Is made in express reliance upon the terms and conditions of this Amendment, including all representations, warranties, and covenants of the Borrower set forth herein.

2. **Amendment to DIP Credit Agreement:** On or about July 8, 2010, the Borrower announced that it intended to explore all strategic alternatives, including a sale process pursuant to Section 363 of the Bankruptcy Code (the "**363 Sale Process**") and a reorganization of the Borrower's business (the "**Reorganization**"). The Borrower has advised the Lender that the Borrower has already commenced the process of soliciting interested parties, obtaining executed confidentiality agreements from them, and providing due diligence information to them. In connection with the foregoing:

a. The Borrower shall establish August 6, 2010 as the date by which letters of interest from prospective purchasers, investors, and other interested parties must be submitted to the Borrower;

b. On or before September 15, 2010, the Borrower shall have entered into a letter of intent with either (i) a prospective purchaser of all or substantially all of the Borrower's business and assets to commence the 363 Sale Process, or (ii) a strategic or financial investor confirming the Borrower's and the investor's mutual intent to implement the Reorganization;

c. On or before September 30, 2010, the Borrower shall have either (i) entered into a definitive asset purchase agreement with respect to the 363 Sale Process, designated the prospective purchaser as the so-called "stalking horse bidder", and filed the appropriate motions with the Bankruptcy Court to implement an auction and consummate the 363 Sale Process, or (ii) filed with the Bankruptcy Court its proposed plan of reorganization and disclosure statement which is supported by executed definitive investment agreements with committed funds in an amount sufficient to implement the proposed plan;

d. The 363 Sale Process generally, as well as the letter of intent and asset purchase agreement in particular, shall include the requirement that all amounts due to the Lender under the DIP Credit Agreement must be paid in full in cash at the closing on the sale. In addition, the material terms and conditions of the 363 Sale Process, including the timeline, bidding procedures and any bidding protections, break-up fee, and expense reimbursement being afforded the stalking horse bidder, shall be commercially reasonable and shall otherwise be acceptable to the Lender in its reasonable discretion. Without limiting the generality of the foregoing, the bidding procedures shall expressly provide that the Lender may participate as a bidder in the 363 Sale Process and may credit bid the indebtedness outstanding under the DIP Credit Agreement at any auction or other sale forum.

e. With respect to the Reorganization, the plan and disclosure statement shall include a provision providing for the repayment of all amounts due under the DIP Credit Agreement in full in cash on the effective date of the proposed plan.

3. **Event of Default:** The Borrower hereby expressly acknowledges and agrees that the failure of the Borrower to timely satisfy the requirements of Section 2, above shall constitute an Event of Default under the DIP Credit Agreement, it being further expressly acknowledged and agreed that **TIME IS OF THE ESSENCE**. The Borrower hereby acknowledges in this regard that this Amendment shall constitute one of the "Loan Documents" for all purposes under the DIP Credit Agreement.

4. **Conditional Extension of DIP Maturity.** So long as there then exists no Event of Default, including the fact that each of the requirements in Section 2 above have been met, then item (i) in the definition of the "Termination Date" under the DIP Credit Agreement shall be revised by the Borrower and the Lender to a mutually agreeable extension date, subject to agreement on appropriate terms and conditions and agreement on a Budget for the extended period.

5. **Preconditions to Effectiveness:** The effectiveness of the waiver granted in Section 1, above, is expressly conditioned upon the following:

    a. Receipt by the Lender of a fully executed copy of this Amendment.

    b. Entry of an Order of the Bankruptcy Court approving the terms and conditions of this Amendment. If such an Order has not been entered within fifteen (15) days after

2

submission of this Amendment for approval, then, at the option of the Lender, this Amendment shall be null and void.

    c.    Receipt by the Lender of a waiver and amendment fee in the amount of $25,000.00. The Lender is hereby authorized to make an advance under the Revolving Credit to fund that fee upon execution of this Amendment by the Borrower and the Lender.

6. **Ratification; Waiver of Claims:**

    a.    Except as provided herein, all terms and conditions of the DIP Credit Agreement and of the other Loan Documents shall remain in full force and effect. The Borrower hereby ratifies, confirms, and re-affirms all terms and provisions of the Loan Documents.

    b.    The Borrower hereby acknowledges and agrees that there is no basis nor set of facts on which any amount (or any portion thereof) owed by the Borrower under the DIP Credit Agreement could be reduced, offset, waived, or forgiven, by rescission or otherwise; nor is there any claim, counterclaim, offset, or defense (or other right, remedy, or basis having a similar effect) available to the Borrower with regard thereto; nor is there any basis on which the terms and conditions of any of the Obligations could be claimed to be other than as stated on the written instruments which evidence such Obligations.

    c.    The Borrower hereby acknowledges and agrees that it has no offsets, defenses, claims, or counterclaims against the Lender, or its officers, directors, employees, attorneys, or representatives, with respect to the Obligations, and that if the Borrower now has, or ever did have, any offsets, defenses, claims, or counterclaims against the Lender, or its officers, directors, employees, attorneys, or representatives, whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Amendment, all of them are hereby expressly **WAIVED**, and the Borrower hereby **RELEASES** the Lender and its officers, directors, employees, attorneys, and representatives from any liability therefor.

7. **Representation and Warranty:** In order to induce the Lender to enter into this Amendment, the Borrower hereby represents and warrants to the Lender that, except with respect to the Existing Events of Default, no other Event of Default exists as of this date to the best of the Borrower's knowledge, information, and belief.

8. **Miscellaneous:**

    a.    Capitalized terms used in this Amendment which are defined in the DIP Credit Agreement are used as so defined.

    b.    This Amendment may be executed in counterparts and by each party on a separate counterpart, each of which when so executed and delivered shall be an original, and all of which together shall constitute one agreement.

    c.    This Amendment expresses the entire understanding of the parties with respect to the matters contemplated hereby. No prior negotiations or discussions shall limit, modify, or otherwise affect the provisions hereof.

    d.    Any determination that any provision of this Amendment or any application hereof is invalid, illegal, or unenforceable in any respect and in any instance shall not affect the validity, legality, or enforceability of such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Amendment.

e.  The Borrower shall execute and deliver to the Lender whatever additional documents, instruments, and agreements that the Lender may require in order to give effect to, and implement the terms and conditions of this Amendment.

*[Remainder of Page Left Intentionally Blank]*

**POINT BLANK SOLUTIONS, INC.**, as Borrower

By: *[signature]*
Name: T. Scott Avila
Title: CRO

**POINT BLANK BODY ARMOR CORPORATION**, as Borrower

By: *[signature]*
Name: T. Scott Avila
Title: CRO

**PROTECTIVE APPAREL CORPORATION OF AMERICA**, as Borrower

By: *[signature]*
Name: T. Scott Avila
Title: CRO

**PBSS, LLC**, as Borrower

By: *[signature]*
Name: T. Scott Avila
Title: CRO

**STEEL PARTNERS II, L.P.**, as Lender

By: Steel Partners II GP LLC, its General Partner

By: *[signature]*
Name: JACK HOWARD
Title: PRESIDENT