IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| POINT BLANK SOLUTIONS, INC., et al., | ) Case No. 10-11255 (PJW) |
| | ) Jointly Administered |
| Debtors.[1] | ) |
| | ) Hearing Date: December 15, 2010 at 11:00 a.m. |
| | ) Objection Deadline: December 8, 2010 at 4:00 p.m. |

## LEAD PLAINTIFFS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Lead Plaintiffs, Robino Stortini Holdings, LLC, NECA-IBEW Pension Fund and George Baciu (collectively, "Lead Plaintiffs"), in the securities class action litigation entitled *In Re DHB Industries, Inc. Class Action Litigation*, No. 05-cv-4296 (JS)(ETB) (the "Class Action"), filed in the United States District Court for the Eastern District of New York (the "District Court"), on behalf of all persons or entities (the "Class") who purchased or otherwise acquired certain of the publicly traded shares of DHB Industries, Inc. ("DHB"), predecessor in interest of the debtor and debtor in possession, Point Blank Solutions, Inc. (the "Debtor" or "Point Blank"), on or after November 18, 2003 until and including November 30, 2006 (the "Class Period"), and who were damaged thereby, hereby submit this motion (the "Motion") for relief from the automatic stay pursuant to section 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") to allow the District Court to conduct further proceedings consistent with the opinion of the United States Court of Appeals for the Second Circuit (the "Second Circuit") issued on September 30, 2010. In support of this Motion, Lead Plaintiffs respectfully state as follows:

---

[1] The debtors in these chapter 11 cases are: (i) Point Blank Solutions, Inc., (ii) Point Blank Body Armor, Inc., (iii) Protective Apparel Corporation of America, and (iv) PBSS, LLC (collectively, the "Debtors").

## PRELIMINARY STATEMENT

1. Lead Plaintiffs seek relief from the automatic stay, to the extent such relief is necessary, to permit the parties to proceed before the District Court to obtain a final approval of a Stipulation and Agreement of Settlement (the "Stipulation"), as it relates to the companion Derivative Action (defined below), that was entered into by multiple parties more than four years ago. The Stipulation, which has not been terminated and remains in full force and effect subject to the recent ruling by the United States Court of Appeals for the Second Circuit (the "Second Circuit"), resolves litigation that has been before the District Court for over five years and which predates the Debtor's bankruptcy case by over 4 1/2 years. In the Class Action, the Stipulation has been approved by a final order for over a year. Lead Plaintiffs seek stay relief out of an abundance of caution in order to continue proceedings before the District Court to obtain a final order in the related Derivative Action that is consistent with the Second Circuit's recent ruling. Such an order in the Derivative Action will allow the Stipulation to reach its Effective Date (defined below) after substantial delay and will finally allow the members of the Class to be compensated for their injuries.

2. Lead Plaintiffs submit that permitting the District Court to enter a modified final judgment as to the Derivative Action will have no impact on the underlying settlement vis-à-vis the Debtors other than to improve the Debtor's position from the original judgment that was the subject of the appeal to the Second Circuit. In fact, the only consequence from the entry of a judgment in the Derivative Action consistent with the Second Circuit's ruling is to excise certain indemnification obligations of the Debtors that were stricken by the Second Circuit appeal. Such indemnification obligations have already been waived by the parties who were the only beneficiaries thereof which will clear a path for the Debtors to seek payment from certain forfeited assets by David H. Brooks ("Brooks").

3. Moreover, stay relief will have no effect on Point Blank's pending motion to reject the Stipulation. As discussed in Lead Plaintiffs' objection to the Rejection Motion (defined below), the Rejection Motion is simply an obvious and flimsy attempt to lay claim to

certain settlement funds that have been held in escrow since 2006, none of which were deposited by or ever belonged to Point Blank, and obtain a long belated "do-over" with respect to the Stipulation. Because rejection of the Stipulation, even if granted (which Lead Plaintiffs vehemently oppose), will only amount to a breach by the Debtors, the District Court can and should be allowed to proceed to enter a modified judgment that will only benefit the Debtor's estate irrespective of any decision on the Rejection Motion.

## BACKGROUND

4. Commencing on September 9, 2005, fifteen putative securities class action complaints were filed in the District Court. By Order dated January 31, 2006, the District Court consolidated the fifteen previously filed class action complaints,[2] appointed Lead Plaintiffs and directed Lead Plaintiffs to file a consolidated class action complaint within thirty (30) days. On March 20, 2006, the Class Action was consolidated and Lead Plaintiffs timely filed the consolidated class action complaint (the "Class Action Complaint")[3] against DHB and certain of its officers and directors and their related entities (including Brooks, former Chief Financial Officer Dawn M. Schlegel ("Schlegel") and former Chief Operating Officer Sandra Hatfield ("Hatfield")), alleging violations of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

5. Additionally, commencing on September 14, 2005, multiple derivative actions also were filed in the District Court on behalf of DHB against certain of DHB's officers and directors, including Brooks, Schlegel and Hatfield. The derivative actions alleged, among other things, causes of action for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. On January 31, 2006, the District Court consolidated the multiple derivative actions into the "Derivative Action."[4]

---

[2] The consolidated class action proceedings are referred to herein as the "Class Action."

[3] Due to its voluminous nature, the Class Action Complaint is not attached hereto. A copy of the Class Action Complaint will be furnished upon request or may be downloaded from the District Court's electronic docket available at http://ecf.nyed.uscourts.gov/.

[4] The complaint filed in the Derivative Action will be furnished upon request or may be downloaded from the District Court's electronic docket available at http://ecf.nyed.uscourts.gov/.

6. On July 12, 2006, Lead Plaintiffs and the defendants in the Class Action, as well as Alvin Viray, the plaintiff in the Derivative Action (the "Derivative Plaintiff"), and the defendants in the Derivative Action, entered into a Memorandum of Understanding, setting forth the mutually agreed upon terms of proposed settlements of the Actions. Thereafter, the parties finalized the terms of the settlement and on November 30, 2006, entered into the Stipulation which superseded and replaced the Memorandum of Understanding.

7. Pursuant to the Stipulation, the parties to the two Actions agreed that: (a) the Class Action would be settled in consideration of $34,900,000 in cash, plus 3,184,713 shares of DHB common stock; and (b) the Derivative Action would be settled in consideration of $300,000 to be paid as attorneys' fees and expenses to counsel for the Derivative Plaintiff, and Point Blank's adoption of certain corporate governance policies. Stipulation, ¶¶ 2.1, 2.4, 2.12. The Stipulation notes that:

> 2.1 The Class cash portion of the Settlement Fund is Thirty-Four Million Nine Hundred Thousand Dollars ($34,900,000) and the Derivative cash portion of the Settlement Fund is Three Hundred Thousand Dollars ($300,000). All but Twelve Million Eight Hundred Seventy Five Thousand Dollars ($12,875,000) of the cash portion of the Settlement Fund was deposited with the Escrow Agent on July 31, 2006 and has been and will be maintained by the Escrow Agent pursuant to the terms of the Escrow Agreement.
>
> 2.2 The remaining Twelve Million, Eight Hundred Seventy Five Thousand Dollars ($12,875,000) of the cash portion of the Settlement Fund was deposited with the Escrow Agent by the Defendants' directors' and officers' liability insurers on August 14, 2006, and has been and also will be maintained by the Escrow Agent pursuant to the terms of the Escrow Agreement.

Stipulation, ¶¶ 2.1, 2.2.

8. On December 15, 2006, the Stipulation was submitted to the District Court for preliminary approval in the Class Action. By Order dated July 3, 2007, the District Court preliminarily approved the Stipulation in the Class Action. On July 8, 2008, the District Court entered the Final Judgment and Order of Dismissal of Class Action with Prejudice (the "Class

Action Judgment") which approved the settlement embodied in the Stipulation on a final basis pending the occurrence of the effective date as defined in the Stipulation (the "Effective Date").

9. On August 1, 2008, an appeal of the Class Action Judgment was filed in the Second Circuit. That appeal was ultimately settled and dismissed by Order dated August 4, 2009. Accordingly, the Class Action Judgment is Final as that term is defined in the Stipulation and was Final at least nine months prior to the Petition Date.

10. On December 15, 2006, the Stipulation was also submitted to the District Court for approval in the Derivative Action. By separate Order dated July 3, 2007, the District Court preliminarily approved the terms of the Stipulation in the Derivative Action. On July 8, 2008, the District Court entered the Final Judgment and Order of Dismissal of Derivative Action with Prejudice (the "Derivative Action Judgment" and together with the Class Action Judgment, the "Judgments"). The Derivative Action Judgment approved the settlement embodied in the Stipulation on a final basis pending the occurrence of the Effective Date.

11. The settlement funds set forth in the Stipulation have been held in the escrow established in connection with the Stipulation (the "Escrow") since mid-2006 and have not been fully distributed. None of the settlement funds were paid by the Debtor.

A. **Appeal of the Derivative Action and the Second Circuit's Decision**

12. On August 6, 2008, D. David Cohen, a DHB shareholder and its former general counsel, filed an appeal of the Derivative Action Judgment in the Second Circuit arguing that the proposed settlement of the Derivative Action violates section 304 of the Sarbanes Oxley Act of 2002 ("SOX") and was not fair, reasonable and adequate from the perspective of Point Blank (the "Derivative Action Appeal").

13. On September 30, 2010, the Second Circuit issued an opinion (the "Opinion") in connection with the Derivative Action Appeal holding that the indemnification provision contained in paragraph 4.7 of the Stipulation (the "SOX Indemnification Provision") violates SOX § 304 and remanded the matter to the District Court.[5]

---

[5] A copy of the Opinion is attached hereto as Exhibit A.

14. Brooks and Schlegel, the only beneficiaries of the SOX Indemnification Provision, have both submitted papers to the District Court stipulating that they will proceed with the Stipulation without the SOX Indemnification Provision. *See* Lead Plaintiffs' response to the Status Report filed by the Debtor in the District Court.[6]

**B.    The Debtors' Bankruptcy Filing**

15. On April 14, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 the Bankruptcy Code.

16. On September 17, 2010 the Debtor filed its Motion for Order Under 11 U.S.C. § 365(a) Authorizing Rejection of Class and Derivative Action Settlement Agreement [Docket No. 589] (the "Rejection Motion").

17. On October 6, 2010, the Debtor filed the Supplement to Debtor Point Blank Solutions Inc.'s Motion for Order Under 11 U.S.C. § 365(a) Authorizing Rejection of Class and Derivative Action Settlement Agreement [Docket No. 655] to, among other things, notify this Court of the Opinion issued by the Second Circuit.

18. On October 28, 2010, Lead Plaintiffs filed an objection to the Rejection Motion [Docket No. 721] (the "Lead Plaintiffs' Objection to Rejection Motion"). As set forth therein, Lead Plaintiffs have no unperformed material obligations under the Stipulation that would render the Stipulation executory. Thus, Lead Plaintiffs simply await the occurrence of the Effective Date (to the extent it cannot already be deemed to have occurred) so that the Escrow can be distributed to the Class pursuant to the Final Class Action Judgment.

**JURISDICTION**

19. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief

---

[6] A copy of Lead Plaintiffs' response to the Status Report is attached hereto as Exhibit B.

sought herein are 11 U.S.C. §§ 105(a) and 362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

20. Through this Motion, Lead Plaintiffs respectfully request relief from the automatic stay, to the extent the automatic stay applies, to allow the District Court to conduct further proceedings consistent with the Opinion issued by the Second Circuit. As stated above, the Class Action Judgment is Final as that term is defined in the Stipulation and was Final at least nine months prior to the Debtor's Petition Date. Nonetheless, because the Debtor has sought to reject the Stipulation, including the Class Action Judgment, Lead Plaintiffs file this Motion out of an abundance of caution so that the Derivative Action Judgment can be revised consistent with the Second Circuit's ruling and a final order can be entered in the Derivative Action. At that point, the Stipulation's Effective Date will clearly occur and the Escrow Agent can distribute the Escrow to the Class in accordance with the terms of the Stipulation. Accordingly, the Lead Plaintiffs seeks relief from the automatic stay for the parties to proceed in the District Court as envisioned by the Second Circuit.

## BASIS FOR RELIEF

21. Pursuant to section 362(a) of the Bankruptcy Code, the filing of a petition commencing a case under the Bankruptcy Code operates as a stay, applicable to all entities, of, *inter alia*:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(1)-(3). It is Lead Plaintiffs' position that no property of the estate is implicated here and that Lead Plaintiffs are not seeking to enforce any pre-petition judgment against the Debtors' estates because there is nothing left to enforce once the Effective Date occurs. The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (quoting *St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)). As set forth in detail below, that will not occur here.

22. The automatic stay is not meant to be indefinite or absolute, and in appropriate instances, relief from the stay may be granted. *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)*, 878 F.2d 693, 697 (3d Cir. 1989); *SCO Group*, 395 B.R. at 856; *Bizarrely v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Section 362(d)(1) of the Bankruptcy Code gives this Court broad discretion to terminate, modify, annul, or condition a stay to protect the rights of the parties in interest, such as Lead Plaintiffs, for cause. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay-
>
> > (1) for cause, including lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. §362(d)(1). *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 718 (Bankr. D. Del. 1996).

23. The decision as to whether cause exists is committed to the sound discretion of the Court. *See Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). Once the movant makes an initial showing of cause, the burden of proof on a motion to lift or modify the automatic stay under section 362(d)(1) shifts to the debtor. *Rexene Prods.*, 141 B.R. at 577. *See also In re Cont'l Airlines, Inc. (Am. Airlines, Inc. v. Cont'l Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993) (once the party has established a prima facie showing of cause to lift the stay, the Court will require the party opposing the stay to meet its burden of showing why the stay should not be lifted.).

24. Section 362(d) is intended to balance the interests of the creditors and the debtor. *Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 206 (3d Cir. 1995). Except for adequate protection, cause is not defined by section 362(d)(1). *SCO Group*, 395 B.R. at 856. "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *Id.* (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 89 (3rd Cir. 1997)); *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010); *Cont'l Airlines*, 152 B.R. at 424.

25. A lack of any connection or interference with the bankruptcy case has been held to be "cause" for lifting the automatic stay. *Sonnax*, 907 F. 2d at 1285-86 (quoting S. Rep. No. 989, 95th Cong. 2d Sess. 52 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5838); *see also In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830 (Bankr. S.D.N.Y. 1990) (citing H.R. Rep. No 595, 95th Cong., 2d Sess. 343-44 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 52-53 (1978), *reprinted in 1978 U.S. Code Cong. & Admin. News 5787*, 6300).

26. Similarly, "cause" has been recognized to exist when a creditor seeks to liquidate its claim in another forum "where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated." *Cont'l Airlines*, 152 B.R. at 426.

27.  In particular, numerous courts in this and other districts have relied on section 362(d) to lift the automatic stay "if the non-bankruptcy suit involves multiple parties or is ready for trial." Lawrence P. King, C*ollier on Bankruptcy* (15th ed. 2006) at 362.07[3][a]; *see e.g., SCO Group,* 395 B.R. at 856 (cause exists "'when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial.'" (quoting Lawrence P. King, *Collier on Bankruptcy* 362.07[3][a] (15th ed. 2006))); *Rexene Prods.*, 141 B.R. at 576 (lifting automatic stay to allow ERISA class action to continue); *Innovative Office Prods., Inc. v. SpaceCo Bus. Solutions, Inc. (In re SpaceCo Bus. Solutions, Inc.),* 2007 Bankr. LEXIS 4620 (Bankr. D. Col. 2007) (lifting automatic stay to allow patent infringement action to continue); *In re Castlerock Properties,* 781 F.2d 159 (9th Cir. 1986) (affirming district court's termination of the automatic stay to allow a contract action to continue in state court); *Packerland Packer Co. v. Griffith Brokerage Co. (In re S. Kemble),* 776 F.2d 802 (9th Cir. 1985) (district court properly considered the factor of judicial economy in deciding to lift the automatic stay to allow a non-bankruptcy court damages retrial to continue); *Garland Coal & Mining Co. v. United Mine Workers of Am.,* 778 F.2d 1297 (8th Cir. 1985) (bankruptcy court erred in denying relief from the stay to allow the arbitration of a labor claim); *In re Pro Football Weekly, Inc.,* 60 B.R. 824 (N.D. Ill. 1986) (bankruptcy court abused its discretion in refusing to lift the automatic stay to allow a breach of contract action to continue); *Pursifull v. Eakin,* 814 F.2d 1501 (10th Cir. 1987) (affirming district court's lifting of the automatic stay in order for a real property dispute to continue in state court); *Sovran Bank, N.A. v. Anderson,* 743 F.2d 223 (4th Cir. 1984) (affirming ruling lifting of the automatic stay to allow a state foreclosure proceeding in a chapter 7 case).

28.  Courts have relied on the legislative history of the Bankruptcy Code in granting relief from the automatic stay to allow a pre-petition class action to proceed. *See Rexene Prods.,* 141 B.R. at 576 ("The legislative history indicates that cause may be established by a single factor such as 'a desire to permit an action to proceed in another tribunal,' or lack of any connection with or interference with the pending bankruptcy case.[] H.R. Rep. No. 95-595,

95th Cong., 1st Sess., 343-344 (1977).""). Such legislative history provides that "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297.

A. **Stay Relief Should be Granted Because There Is No Impact on the Debtors' Estates, the Debtors Will Only Benefit from the Modified Judgment and the Hardship to Lead Plaintiffs Considerably Outweighs Any Hardship to the Debtor**

29. "Most courts follow this logic and apply an equitable balancing test to determine if cause exists to lift the stay to allow pending litigation to proceed or continue in another forum." *SCO Group*, 395 B.R. at 856. This Court has developed the following three-prong balancing test to determine whether to grant relief from the stay:

1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

3. The probability of the creditor prevailing on the merits.

*SCO Group*, 395 B.R. at 857 (citing *Rexene Prods.*, 141 B.R. at 576); *accord Downey Fin.*, 428 B.R. at 609.

30. As will be discussed below, to the extent this Court determines that continued proceedings consistent with the Second Circuit's Opinion are subject to the automatic stay, Lead Plaintiffs submit that ample cause exists for this Court to lift the automatic stay to allow the District Court to conduct those proceedings and to allow entry of a modified Derivative Action Judgment. Absent such relief, Lead Plaintiffs and the Class may suffer undue prejudice.

31. On the other hand, neither the Debtors nor their bankruptcy estates will suffer any great prejudice by a continuation of the limited proceedings before the District Court.

*SCO Group*, 395 B.R. at 857-858; *accord Downey Fin.*, 428 B.R. at 609. Typically, courts consider prejudice in terms of the harm caused by forcing the debtor to focus its attention to a civil case to the detriment of the reorganization efforts. *SCO Group*, 395 B.R. at 857 (holding that a trial in a civil case will not harm the estate); *Rexene Prods.*, 141 B.R. at 577 (distraction of separate litigation will not harm estate). As discussed in Lead Plaintiffs' Objection to the Rejection Motion, the Debtors do not even have any continuing obligations under the Stipulation. Moreover, because Point Blank never objected to the approval of the Stipulation, the Debtor is not in a position to press an appeal of such approval. Rather, Point Blank and Lead Plaintiffs simply await the Effective Date of the Stipulation to occur (if it cannot be deemed to have occurred) so that the settlement funds that have been held in escrow since 2006 can be distributed to the Class in accordance with the Class Action Judgment that became final over nine months prior to the Debtor's Chapter 11 filing.

32. With respect to the modification to be made to the Derivative Action Judgment, the Second Circuit has already made a determination regarding the SOX Indemnification Provision which was the only material dispute in the Derivative Action Appeal. *See* Supplement to the Rejection Motion, ¶ 3. Brooks and Schlegel, the only two parties who would have benefited from the provision, have expressly stated that they will proceed with the Stipulation without the SOX Indemnification Provision. Because Brooks and Schlegel have waived their rights under the SOX Indemnification Provision, any changes to the Derivative Action Judgment or the Stipulation to be made in light of the Second Circuit Opinion are immaterial. Moreover, such changes will not trigger the right of any party to terminate the Stipulation and no party has taken such position.

33. To the extent that the Debtor contends that the Stipulation can or should be terminated, such an argument is based on their mistaken belief that the funds held in the Escrow are somehow available to them to satisfy their newly minted needs for cash. Point Blank is not entitled to recover the funds in the Escrow even if this Court determines that the Stipulation is executory and permits Point Blank to reject the Stipulation. As discussed in Lead

Plaintiffs' Objection to the Rejection Motion, a rejection of the Stipulation by Point Blank does not terminate the Stipulation and has no effect upon the Stipulation's continued existence. *See* Lead Plaintiffs' Obj., at ¶¶ 75-77. Rather, a rejection by Point Blank would merely free Point Blank from any perceived obligation to perform and the Stipulation would move forward as to the other parties. Rejection by the Debtor is not a basis for unwinding or terminating the Stipulation and is not an opportunity for Point Blank to receive a "do-over" on the settlement. Because Point Blank does not have any material obligations to perform whether or not it rejects the Stipulation, Lead Plaintiffs submit that cause to modify the stay exists so the District Court proceedings can continue for the benefit of the other settlement parties.

34. If the issue is whether a party can terminate the Stipulation, then stay relief as requested herein is even more appropriate because that issue would be properly raised before the District Court in the context of continued proceedings contemplated by the Second Circuit. Indeed, the District Court has already scheduled a telephonic conference on December 10, 2010 at 2:00 p.m.

35. In accordance with paragraph 4(c) of the Escrow Agreement (the "EA"), the funds in the Escrow will be released to the Settling Defendants only upon "receipt by the Escrow Agent of a written Order from the [District] Court that the [District] Court has finally disapproved the Settlement, the Stipulation of Settlement and the related documents, and all available reconsideration and appeal periods have lapsed." EA ¶ 4(c). Paragraph 4(c) of the EA would not be triggered by rejection of the Stipulation because rejection does not void or terminate the contract. Therefore, Point Blank would not be entitled to recover the funds in the Escrow upon rejection and there is no corresponding benefit to the estate in that regard.[7] Accordingly, modifying the stay as requested to allow further proceedings in the District Court is not prejudicial to Point Blank or the estate.

---

[7] Notably, none of Point Blank's cash was utilized to fund the settlement. The settlement proceeds were funded by Brooks ($22,325,000) and the Insurance Carriers ($12,875,000).

36. Conversely, the hardship that Lead Plaintiffs and the Class will suffer as a result of the stay being enforced is considerable. *The SCO Group,* 395 B.R. at 858-859; *Downey Fin.,* 428 B.R. at 609. The Class Action seeks to compensate purchasers of DHB's publicly traded securities for injuries occasioned by violations of the Securities Exchange Act of 1934 through the payment of the settlement amount and distributions to injured investors. The Class Action Judgment has been final for over a year. There is a strong public policy in favor of promptly resolving this matter, particularly in light of the extreme financial damage that many of the Class members have experienced. However, due to the pendency of the Derivative Action Appeal which related to an issue that has now been decided by the Second Circuit and rendered moot by the positions taken by Brooks and Schlegel, none of the settlement funds that have remained in the Escrow for over four years have been paid to the injured Class members. However, a clear pathway to a disbursement of those funds now exists. At this point, Lead Plaintiffs and the Class members need do nothing but await the waiver or satisfaction of the remaining condition to the Effective Date, a modified final judgment entered in the Derivative Action.

37. Absent stay relief (to the extent the stay is implicated), final judgment consistent with the Second Circuit's ruling will be delayed. The Derivative Action at best will remain in limbo. As a result, Lead Plaintiffs and the Class members will continue to be unable to obtain the benefit of the bargain they made over four years ago and will be burdened by further delay and uncompensated for their substantial injuries.

38. Clearly, in light of the Opinion by the Second Circuit, nothing should further slow down the process preventing the Class members from getting the benefit of their bargain. The settlement funds at issue are not available to the Debtor or its estate so the Debtor's bankruptcy case should not prevent the proceedings moving forward in the District Court for the limited purposes outlined by the Second Circuit. Similarly, if any party attempts to terminate the settlement, and Lead Plaintiffs submit that there is no right to do so under the Stipulation, such

an attempt should be heard and determined by the District Court which has presided over the Actions for over five years.

39. Under the circumstances of this case, the final prong of the three-prong balancing test utilized by this Court, the probability of Lead Plaintiffs' prevailing on the merits, has limited applicability. As this Court stated in *SCO Group*, "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *SCO Group*, 395 B.R. at 859; *Downey Fin.*, 428 B.R. at 610. This factor clearly favors Lead Plaintiffs because they have already been successful on the merits with respect to the Class Action. Moreover, there is a high likelihood of obtaining a modified final judgment from the District Court in the Derivative Action because the only beneficiaries of the indemnification provisions struck down by the Second Circuit have agreed to waive those rights and the District Court previously approved the Stipulation.

40. In light of the foregoing factors, Lead Plaintiffs submit that cause exists to lift the automatic stay to allow the District Court to conduct further proceedings consistent with the Opinion issued by the Second Circuit.

B. **Application of the *Sonnax* Factors Supports the Lifting of the Stay**

41. In determining whether "cause" exists, courts in this District have also considered general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay. These policies, which have been outlined by the *Sonnax* Court are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and

economical resolution of litigation; (11) whether the parties are
ready for trial in the other proceeding; and (12) impact of the stay
on the parties and the balance of harms

*SCO Group*, 395 B.R. 852 (citing and applying *Sonnax* 907 F.2d at 1287); *W.R. Grace & Co., et al.*, 2007 Bankr. LEXIS 1214, *12 (Bankr. D. Del. 2007). Consideration of the policies listed in *Sonnax*, to the extent they are applicable, also support Lead Plaintiffs' position, some of which are duplicative to the three-factor test also adopted by this Court.

42. Consideration of the applicable *Sonnax* factors which underlie the purpose of the automatic stay decidedly weigh in favor of this Court granting Plaintiffs' motion for relief under the automatic stay, especially where, as here: "the interests of judicial economy and the expeditious and economical resolution of the litigation" and "the specialized knowledge that the District Court has developed in presiding over the Lawsuit for four years." *SCO Group*, 395 B.R. at 857, 859-60.

43. As to the first *Sonnax* factor, relief would result in a complete resolution of the issues underlying reaching the Effective Date of the Stipulation. Contrary to Point Blank's misguided argument that the Stipulation would fail upon rejection, the Stipulation can only be terminated by its terms and, if rejected, will move forward as to the other parties.

44. Second, if stay relief is granted, there would be no interference with Point Blank's bankruptcy case. The Class Action and the Derivative Action are resolved and, therefore, continued proceedings with respect to the Derivative Action will have little, if any, impact on Point Blank's bankruptcy case (other, of course, then freeing Point Blank from any indemnification obligations to Brooks and Schlegel). The Stipulation has been approved on a final basis and the Derivative Action has been remanded to the District Court which previously approved the Stipulation. Little or no involvement of the Debtors' management will be needed. In fact, because the Debtors never objected to the approval of the Stipulation, the Debtors are in no position to press an appeal of such approval. As discussed above, the change to the Stipulation ordered by the Second Circuit is to the benefit of the Debtors. Therefore, the brief

continuation of the Derivative Action to allow for proceedings in connection with a modified final judgment would not interfere with this bankruptcy case. Accordingly, the second *Sonnax* factor weighs in favor of lifting the stay.

45. Third, the District Court has developed an expertise in the Actions having presided over them for over five years. Moreover, given the demands on this Court, taking on matters that are properly the province of the District Court would be extremely burdensome.

46. Fourth, the Stipulation, and the underlying Class Action and Derivative Action is a multiparty dispute and the majority of the parties are non-Debtors. As discussed above and in Lead Plaintiffs' Objection to the Rejection Motion, the Debtor has no material remaining obligations with respect to the Stipulation. Therefore, this factor weighs in favor of lifting the automatic stay.

47. Fifth, the Derivative Action will not prejudice the interests of other creditors because other creditors have no claim to the Escrow, which is not the property of the bankruptcy estate as discussed herein and in the Lead Plaintiffs' Objection to the Rejection Motion.

48. Sixth, the interests of judicial economy and the expeditious resolution of litigation weigh in Lead Plaintiffs' favor. The Class Action and Derivative Action are in post-judgment stages of litigation, with judgments already entered and, in the case of the Class Action Judgment, final. "Judicial economy dictates a prompt resolution in a single forum with the same judge who was originally assigned to the case." *Rexene Prods.*, 141 B.R. at 577 (granting motion to lift stay and allow proceeding to occur against debtor in separate civil proceeding). Also, the parties to the Actions should have the full benefit of the knowledge and efforts of the District Court in the modification of the judgment in the Derivative Action.

49. Seventh, the parties are far beyond the time when they need to be ready for trial. Rather, they are ready for the entry of a modified final judgment in the Derivative Action. Entry of final judgment will permit the Stipulation to become effective and will allow

the settlement funds held in the Escrow for four and a half years to finally be used to compensate the Class members for their injuries suffered at the hands of the defendants in the Class Action.

50. For all of the foregoing reasons, the *Sonnax* factors strongly support lifting the automatic stay to allow the limited proceedings contemplated by the Second Circuit to proceed in the District Court.

51. Lead Plaintiffs have established a prima facie case under both the three-prong test and applying the *Sonnax* factors. Consequently, the burden shifts to the Debtor to show why the stay should not be lifted. Lead Plaintiffs respectfully submit that the facts submitted in support of this Motion, which mostly relate to the procedural posture of the Stipulation and the Actions, are not disputed, and the Debtor cannot rebut Lead Plaintiffs' prima facie case.

**WHEREFORE**, Lead Plaintiffs respectfully request that this Court enter an order granting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code allowing the District Court to conduct further proceedings consistent with the Opinion issued by the Second Circuit and granting Lead Plaintiffs such other and further relief as is just and proper.

Dated: November 18, 2010  **CROSS & SIMON LLC**

By: _/s/ Kevin S. Mann_
Christopher P. Simon (Bar No. 3697)
Kevin S. Mann (Bar No. 4576)
P.O. Box 1380
913 North Market Street, 11th Floor
Wilmington, Delaware 19899-1380
(302) 777-4200 (Telephone)
(302) 777-4224 (Facsimile)

- and –

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Samuel H. Rudman, Esq.
58 South River Road, Suite 200
Melville, New York 11747
(631) 367-7100 (Telephone)
(631) 367-1173 (Facsimile)

- and –

**LABATON SUCHAROW, LLP**
Ira A. Schochet, Esq.
140 Broadway
New York, New York 10005
(212) 907-0700 (Telephone)
(212) 818-0477 (Facsimile)

*Lead Counsel to Lead Plaintiffs and the Class*