# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

Requested Deadline for Submitting Bids: December 13, 2010 at 12:00 p.m. Noon (Eastern time)
Requested Deadline for Objections to Sale Motion: December 14, 2010 at 12:00 p.m. Noon (Eastern time)
Requested Auction Date: December 15, 2010 at 10:00 a.m. (Eastern time)
Requested Hearing Date on Sale Motion: December 17, 2010 at 9:30 a.m. (Eastern time)

## DEBTORS' MOTION FOR AN ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), file

this motion (this "Sale Motion") for entry of an Order (i) approving an asset purchase agreement

and authorizing the sale of assets outside the ordinary course of business; (ii) authorizing the sale

of assets free and clear of all liens, claims, encumbrances and interests pursuant to sections

363(b), (f) and (m) of the Bankruptcy Code; (iii) authorizing the assumption and assignment of

certain executory contracts and unexpired leases; and (iv) granting related relief.

Concurrently herewith, the Debtors filed the *Motion for Order (A) Approving Bid*

*Procedures For the Sale of the Debtors' Assets; (B) Scheduling An Auction and Hearing To*

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

*Consider the Sale and Approve the Form and Manner of Notice Related Thereto;*

*(C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts,*

*Including Notice of Proposed Cure Amounts; (D) Approving Certain Expense Reimbursement*

*Provisions and Breakup Fee; and (E) Granting Other Related Relief* (the "Bid Procedures

Motion"), which seeks approval of certain sale and bidding procedures for the sale, as more

particularly set forth therein (the "Bid Procedures"). The sale, approval of which is sought by

this Sale Motion (the "Sale"), shall be to the highest or best bidder or bidders (each a "Successful

Bidder"), at the auction provided for in the Bid Procedures Motion and the Bid Procedures (the

"Auction"), to take place on the date set forth in, and in accordance with, the order to be entered

by the Court on the Bid Procedures Motion (the "Bid Procedures Order").

Notwithstanding the lengthy and extensive marketing of their assets described below, the

Debtors do not currently have a "stalking horse" bidder for their assets. The Bid Procedures

contemplate that a buyer for the Debtors' assets will be identified at a later date, either at the

auction contemplated by the Bid Procedures or, under appropriate circumstances, through the

Debtors' identification of a Stalking Horse Purchaser (as defined below). There is significant

urgency to the relief requested by this Motion given that the Debtors' existing debtor-in-

possession financing facility (the "DIP Facility") with Steel Partners II, L.P. (the "DIP Lender")

matures on December 31, 2010, and presently requires that a sale hearing be held no later than

December 16, 2010 (the Debtors have requested that the DIP Lender extend this latter date to

December 17, 2010).

In support of this Sale Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O).

2.      Venue of these proceedings and this Sale Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105, 363, 365, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Compliance With Local Rule 6004-1

4.      The following disclosures are based, to the best of the Debtors' knowledge, on the current state of affairs with respect to the proposed Sale described further below. To the extent of any material changes, the Debtors will make further disclosures to the Court at or prior to the sale hearing.

5.      *A copy of the proposed purchase agreement, or a form of such agreement substantially similar to the one the debtor reasonably believes it will execute in connection with the proposed sale:* A copy of the form of proposed asset purchase agreement (the "Agreement") is attached hereto as <u>Exhibit A</u>.

6.      *A copy of the proposed form of sale order:*  A copy of the proposed form of sale order is attached hereto as Exhibit B.

7.      *A request, if necessary, for the appointment of a consumer privacy ombudsman under Bankruptcy Code section 332:*  The Debtors do not have a published privacy policy and thus it is not necessary to seek the appointment of a consumer privacy ombudsman in connection with the Sale.

8.      Provisions to be Highlighted:

(i) *Sale to an Insider:*  The Debtors do not anticipate that the buyer will be an insider of these estates.

(ii) *Agreements with Management:*  The Debtors are not aware of any agreements between a buyer and management at this time.

(iii) *Releases:*  The buyer will have no obligations arising as part of the sale except as set forth in the agreement with such buyer.  The Debtors will be released of any further obligations arising under any assumed executory contracts or unexpired leases and certain other assumed obligations as set forth in the agreement.

(iv) *Private Sale/No Competitive Bidding:*  An auction is to occur with respect to the Sale as requested by the Bid Procedures Motion.

(v) *Closing and Other Deadlines:*  Within two (2) business days following entry of the sale order and, in any event, no later than December 27, 2010.

(vi) *Good Faith Deposit:*  In an amount determined by the Debtors, expected to be no less than the greater of 10% of the buyer's offer or $750,000.

(vii) *Interim Arrangements with Proposed Buyer*: There are no provisions for operation or management of the Debtors by any buyer prior to closing.

(viii) *Use of Proceeds*: Distribution to the DIP Lender, in part, with the remaining proceeds to be retained by the Debtors' estates.

(ix) *Tax Exemption*: No tax exemption under bankruptcy law is sought.

(x) *Record Retention*: Section 12.3 of the Agreement provides that for a period of three (3) years after the closing, the Debtors shall have reasonable access to all of the books and records relating to the assets sold to the buyer.

(xi) *Sale of Avoidance Actions*: No sale of avoidance actions is currently contemplated by the Sale.

(xii) *Requested Findings as to Successor Liability*: The transaction documents contemplate that, except as to Assumed Liabilities (as defined in the Agreement), the buyer will purchase the assets free and clear of all pre-closing liabilities under successor liability theories. *See also* Sale Order ¶ 12, 14, 18, 33.

(xiii) *Sale Free and Clear of Unexpired Leases*: The sale is to be free and clear of all liens and unassumed liabilities, including unexpired leases that do not constitute Assumed Contracts (as defined below). Sale Order ¶ 12, 14.

(xiv) *Credit Bid*: The Bid Procedures permit the DIP Lender to submit a credit bid for the assets, subject to providing additional cash consideration necessary to meet the bid requirements set forth in the Bid Procedures. The Debtors do not know of any intended credit bids for the assets, but reserve the right to seek approval of a credit bid at the sale hearing

to the extent that such credit bid qualifies under the Bid Procedures and constitutes the highest or best bid for the assets.

(xv) *Relief From Bankruptcy Rule 6004(h)*: The proposed Sale Order provides that, notwithstanding Bankruptcy Rules 6004, 6006 and 7062, the Sale Order shall be effective and enforceable immediately upon entry. Sale Order ¶ 41. The Debtors believe that relief from Bankruptcy Rule 6004(h) is appropriate to enable the proposed transaction to close before year-end as required by the DIP Facility. As set forth in this Sale Motion, the Bid Procedures Motion and the Bid Procedures Order, the Debtors are ensuring that all parties in interest will receive ample notice and opportunity to object at the sale hearing.

### Background

9.     On April 14, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10.     No request has been made for the appointment of a trustee or an examiner in this case.

11.     Two official committees have been appointed in these cases by the United States Trustee:  the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and the Official Committee of Equity Holders (the "Equity Committee," and together with the Creditors' Committee, the "Committees").

12.     The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filings, is set forth in detail in the *Declaration of T. Scott Avila in Support of First Day Motions*, previously filed in these cases and incorporated herein by reference.

13.     In order to maximize the value of the estates' assets for the benefit of all constituents, the Debtors have marketed their assets, and intend to go forward with a sale to the highest or best bidder(s). As things stand today, the Debtors must have a hearing on the sale of substantially all their assets by December 16, 2010 (the Debtors have requested that the DIP Lender extend this date to December 17, 2010), and must complete the sale process before December 31, 2010 when the DIP Facility matures.

14.     Throughout these cases and at the behest of the Committees, the Debtors have considered alternatives to a sale, including the possibility of proposing a plan. The Debtors have also played an active role in assisting the Committees in considering plan alternatives. As the Court is aware, the Equity Committee has made a proposal to the Debtors and the Creditors' Committee regarding a possible structure for a plan. In response to that proposal, both the Debtors and the Creditors' Committee have addressed certain questions and concerns to representatives of the Equity Committee with respect to the proposal received, including with respect to (i) the level of financing needed and available to fund the Debtors through a plan process (and for a period beyond in the event the plan process was unsuccessful), and (ii) the funding needed to confirm the plan. To date, the Debtors have not received responses which have satisfied those concerns. Accordingly, the Debtors presently believe that, among other

things, the Equity Committee's proposal lacks adequate pre- and post-confirmation committed financing that would be a prerequisite to completing the plan process and attaining a confirmable plan. Given that the Debtors' access to financing terminates on December 31, 2010, the Debtors have decided to proceed with the sale contemplated hereby. Nonetheless, as contemplated by the Bid Procedures, a Potential Bidder (as defined below) may submit a proposal for a chapter 11 plan relating to the Debtors and their assets and such proposal may be determined by the Debtors to constitute a Qualified Bid (as defined below).

### The Business

15.     Point Blank Solutions Inc. ("PBSI") is a leading manufacturer and provider of bullet, fragmentation and stab resistant apparel and related ballistic accessories, which are used domestically and internationally by military, law enforcement, security and corrections personnel, as well as various government agencies. PBSI and its debtor subsidiaries, Point Blank Body Armor, Inc. and Protective Apparel Corporation of America, Inc., are also major suppliers in the domestic law enforcement market with broad brand recognition.

16.     The Debtors manufacture several body armor products and related accessories that are sold worldwide to a variety of domestic and international military and law enforcement customers. The Debtors' armor products and related accessories protect individuals from bodily injury and death from multiple threats, including bullets, knives, and other sharp instruments and shrapnel fragments. The Debtors design, build and sell advanced systems that safeguard users from specific threats as well. The Debtors' products are sold through a variety

of means, including sales contracts, a corporate sales force, sales agents and a network of distributors.

17.     The Debtors currently employ, subject to fluctuations based on demand, approximately 600 full-time employees in hourly, salaried, supervisory, management, sales, administrative and manufacturing positions to perform the functions necessary to effectively and efficiently operate the Debtors' business. The Debtors maintain and conduct manufacturing and related operations in two leased manufacturing facilities in Pompano Beach, Florida (also the company's headquarters) and Jacksboro, Tennessee.

## The Sale Process

18.     The Debtors retained CRG Partners Group LLC ("CRG") prepetition as their financial advisor to advise the Debtors on restructuring and business matters, including the potential marketing and sale of assets related to the Debtors' business. Significant efforts have been undertaken by the Debtors and CRG relating to the preparation of marketing materials, creation of an electronic data room, and other marketing efforts as part of the sale process.

19.     On or about July 9, 2010, CRG sent out a teaser memorandum highlighting the Debtors' assets to approximately 2,000 financial and strategic investors and industry participants. Over sixty parties returned executed non-disclosure agreements and conducted initial due diligence. CRG created an electronic data room with key documents and company-specific information in order to streamline the due diligence process. CRG received sixteen initial indications of interest, which were subsequently narrowed to six letters of intent. To those parties submitting letters of intent, CRG provided additional, more detailed information

about the Debtors, and scheduled meetings with the Debtors' management. The Debtors, with the assistance of CRG and other professionals, subsequently engaged in negotiations with certain of the parties submitting letters of intent on the details of a sale. To date, however, the Debtors have not yet reached any definitive agreements.

20.     The Debtors have proposed Bid Procedures that will enable these estates to efficiently consummate a sale of the Debtors' assets at an auction to the highest or best bidder. The Debtors will continue to market their assets pending the outcome of the auction. The Debtors believe that such marketing of their assets over the period contemplated by the Bid Procedures, in addition to over four months of marketing activities that have taken place to date, will result in the highest or best price for the estate assets.

21.     As noted above, the DIP Facility in these cases matures on December 31, 2010. Under the DIP Facility, the Debtors are required to meet certain sale milestones, including having a sale hearing on this Motion by no later than December 16, 2010 (the Debtors have sought approval of the DIP Lender to delay this date to December 17, 2010). The DIP Lender has advised that no further continuances of the maturity date will be provided. The Debtors have no present alternative available to them to refinance the DIP Facility or to effectuate a reorganization, absent a sale of assets.

## The Terms of the Agreement

22.     The Debtors have prepared a proposed form of the Agreement for the contemplated Sale.[2]  A copy of the Agreement, without schedules, is attached hereto as <u>Exhibit</u>

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.

<u>A</u>.[3] Pursuant to the terms of the Agreement and subject to the approval of the Court, the highest or best bidder at the auction will purchase the Debtors' assets, and assume certain executory contracts and unexpired leases (the "Assumed Contracts"), subject to the payment of applicable cure obligations, if any, but otherwise free and clear of any liens, claims or encumbrances.

23.     The principal terms of the Agreement are summarized below. The description below only summarizes certain provisions of the Agreement, and the terms of the Agreement control in the event of any inconsistency. The Debtors reserve the right to waive or modify any of the following parameters for the sale prior to the sale hearing.

(a.)     <u>Purchase Price</u>. No less than $14,000,000, unless otherwise determined by the Debtors in their discretion.

(b.)     <u>Assets</u>. Substantially all assets relating to the Debtors' business of manufacturing and supplying bullet, fragmentation, and stab resistant apparel and related ballistic accessories, which are used both domestically and internationally by military, law enforcement, security and corrections personnel, as well as by governmental agencies (the "Assets").

(c.)     <u>Excluded Assets</u>. All of the Debtors' cash and cash equivalents, prepaid items, tax refunds, rebates and credits relating to the pre-closing period, certain insurance proceeds, and all preference or avoidance claims and actions of the Debtors' estates, including, without limitation, any and all rights, claims, and causes of action arising under Chapter 5 of the United States Bankruptcy Code, and all rights, claims, and causes of action of the Debtors (or

---

[3] Schedules to the Agreement will be made available to the DIP Lender, the Committees, and prospective bidders who execute a confidentiality agreement acceptable to the Debtors.

which may result in a benefit to the Debtors) asserted or which may hereafter be asserted in any of the pending litigation proceedings in which any of the Debtors is a party or a potential beneficiary. The Excluded Assets include, without limitation, any and all of the Debtors' rights, claims, and causes of action relating to: (i) the Brooks class action settlement or the rejection thereof, (ii) any proceeding against former officers and directors under applicable provisions of Sarbanes-Oxley or other securities laws, (iii) any proceeding against Toyobo, (iv) the Debtors' right, title and interest in and to certain Zylon inventory, and (v) refunds, rebates, offsets or the like relating to the Assets from the Internal Revenue Service or other taxing authorities.

(d.) <u>Assumed Liabilities</u>. All obligations from and after the closing relating to the Assets, plus obligations under the Assumed Contracts, ordinary course employee obligations and postpetition trade payables, obligations to customers for refunds, rebates, returns, discounts and the like, and any postpetition product liability or warranty claims.

(e.) <u>Employee Matters</u>. The buyer shall indemnify and hold harmless the Debtors from any liability arising under the Worker Adjustment and Retraining Notification Act, as amended, and any similar foreign, state or local law, for the buyer's failure to offer, hire, or continue to employ each of the Debtors' employees who remain employed by the Debtors as of immediately prior to the closing.

(f.) <u>Closing</u>. Within two (2) business days following entry of the sale order, and in no event later than December 27, 2010.

(g.) <u>Representations and Warranties</u>. The Agreement contains standard representations and warranties for a transaction of this nature. *See* Agreement, §§ 5 & 6.

(h.)  "AS-IS" Transaction.  Except as expressly set forth in the Agreement, the Debtors make no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assets.  Accordingly, the buyer must be prepared to accept the Assets at the closing "AS IS, "WHERE IS," and "WITH ALL FAULTS."

24.  The Debtors believe that the sale of the Assets as a going concern to the highest or best bidder determined in accordance with the Bid Procedures is far preferable to a piecemeal liquidation of the Assets.  The Debtors further believe that their marketing of the Assets with the assistance of CRG and other professionals for over four months to date, and holding an auction for such Assets, will result in the highest or best price for the Assets.

25.  The Debtors presently believe that in light of their financial situation and limited liquidity, the only viable approach presently available to these estates to maximize value is a going concern sale of the Assets.

### Relief Requested

26.  The Debtors are requesting that this Court, *inter alia*, (i) authorize the sale to the Successful Bidder(s) pursuant to such agreement(s) entered into in accordance with the Bid Procedures Order, free and clear of all liens, claims, encumbrances or other interests pursuant to sections 363(b), (f) and (m) and 365 of the Bankruptcy Code, with such liens, claims, rights, interests and encumbrances (collectively, the "Interests") to attach to the sale proceeds of the Assets with the same validity (or invalidity), priority and perfection as existed immediately prior to such sale; (ii) approve the assumption and assignment of the Assumed Contracts under

Bankruptcy Code section 365, subject to, and at the time of, closing under the Agreement; and

(iii) grant such other relief as may be necessary or appropriate.

### Basis for Relief

**B.**     **Approval of the Sale**

27.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28.     A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F. 3d 389, 395 (3rd Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F. 2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F. 2d 143 (3rd Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F. 2d 1063 (2nd Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991)). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the

proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the Property; and whether the asset is decreasing or increasing in value. 124 B.R. at 176.

29.     The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the Buyer is proceeding in good faith." *Id.*

30.     The Debtors have proposed the sale of the Assets as the only viable approach currently available to these estates and have concluded that the sale is supported by a number of sound business reasons.

31.     As noted, the DIP Facility in these cases matures on December 31, 2010. Under the DIP Facility, the Debtors are required to meet certain sale milestones, including having a sale hearing on this Motion by no later than December 16, 2010 (the Debtors have requested that the DIP Lender extend this date to December 17, 2010). The DIP Lender has advised that no further continuances of the maturity date will be provided. The Debtors have no present alternative available to them to refinance the DIP Facility or to effectuate a reorganization, absent a sale of assets.

32.     The Debtors, with the assistance of CRG, have already marketed the Assets for over four months and have proposed Bid Procedures designed to maximize the purchase price that should be realized from the sale of the Assets.

33.     The Debtors believe that, as a result of the marketing efforts that have been undertaken and that they will continue to undertake, the highest or best offer(s) obtained through the proposed Bid Procedures and Auction will provide maximum value to the Debtors under the current circumstances. Potential buyers will be served with this Sale Motion. The fairness and reasonableness of the consideration ultimately to be paid by the Successful Bidder(s) is demonstrated by the marketing efforts that the Debtors have undertaken, and will continue to undertake, followed by a fair and reasonable sale process including the Auction, and culminating in one or more proposed sales.

34.     The sale of the Assets is supported by sound business reasons and is in the best interests of the Debtors and their estates. Accordingly, the Debtors request approval under section 363(b) of the Bankruptcy Code of the Sale to the Successful Bidder(s), as set forth herein.

**The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code For a Sale Free and Clear of Liens, Claims, and Interests**

35.     Section 363(f) of the Bankruptcy Code provides:

The trustee may sell Property under subsection (b) or (c) of this section free and clear of any interest in such Property of an entity other than the estate, only if –

(1) applicable nonbankruptcy law permits sale of such Property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such Property is to be sold is greater than the aggregate value of all liens on such Property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

36.     Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F. 3d 252, 259 (3rd Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F. 3d at 258. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in Property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the Property." *Id.* at 258 (citing 3 COLLIER ON BANKRUPTCY ¶ 363.06[1]). As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F. 3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F. 3d at 258.

37.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of all the Interests, except with respect to any Interests that constitute Assumed Liabilities under the Agreement. *See Citicorp Homeowners Servs., Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Debtors submit that each Interest that is not an assumed liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to

the proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto. The Debtors accordingly request authority to convey the Assets to the Successful Bidder(s), free and clear of all Interests except for the Interests that are Assumed Liabilities under the express terms of the Agreement, with such Interests to attach to the proceeds of the Sale, with the same validity (or invalidity), priority and perfection as existed immediately prior to the Sale, subject to the terms of the Agreement and the proposed Sale Order.

38. The Debtors have served (or will serve) all purported lienholders notice of this Sale Motion, and will serve notice of any Sale Order approving the relief requested by this Sale Motion.

39. Accordingly, this Court should approve the sale of the Assets to the Successful Bidder(s) free and clear of Interests under Bankruptcy Code section 363(f), and any potential claimants should be compelled to look exclusively to the proceeds of the sale for satisfaction of their claims.

40. Further, the Debtors submit that the Sale should not expose the Successful Bidder(s) to any liability as a successor of the Debtors or these estates. *See, supra, Folger Adam*, 209 F. 3d at 258. The Successful Bidder(s) will only be assuming those obligations expressly set forth in the sale agreement.

### Good Faith Under Section 363(m) of the Bankruptcy Code; Sale Not In Violation of Section 363(n) of the Bankruptcy Code

41. Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of Property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such Property in

good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(n) of the Bankruptcy Code, among other things, provides, in turn, that a trustee may avoid a sale under such section if the sale price was controlled by an agreement among potential bidders as the sale. *See* 11 U.S.C. § 363(n). While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F. 2d 143 (3rd Cir. 1986) has held that:

> [t]he requirement that a Buyer act in good faith . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F. 2d at 147 (citations omitted).

42.     The Debtors intend to establish at the sale hearing that the Agreement with the Successful Bidder(s) was a negotiated, arm's-length transaction, in which the Successful Bidder(s) have acted in good faith, without collusion or fraud of any kind, and in compliance with the *Abbotts Dairies* standards. The Debtors expect that the Successful Bidder(s) will not be an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The evidence at the sale hearing will further establish that neither the Debtors nor the Successful Bidder(s) have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code with respect to the consummation of the sale transaction or the transfer of the Assets and the Assumed Contracts to the Successful Bidder(s).

43.    The Debtors thus request that the Court find that the Successful Bidder(s) have purchased the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code.

**B.    Authorization of Assumption and Assignment of Assumed Contracts**

44.    In order to enhance the value to the Debtors' estate, the Debtors request approval of the assumption and assignment of the executory contracts and unexpired leases identified in the attached Exhibit C (the "Assumed Contracts")[4] to the Successful Bidder(s) upon the Closing of the transactions contemplated under the Agreement and payment of the cure costs (the "Cure Costs") to be supplemented in Exhibit C hereto and set forth in separate cure notices to be provided within two (2) business days following entry of the Bid Procedures Order, which amounts, if any, are what the Debtors believe are owed to each counterparty (each a "Counterparty," and collectively, the "Counterparties") to an Assumed Contract in order to cure any defaults that exist under such contract or lease.

45.    If a contract or lease is assumed and assigned pursuant to the Court's order approving same, then unless the affected Counterparty properly files and serves an objection to the Cure Costs, the Counterparty will receive at the time of the Closing (or as soon as reasonably practicable thereafter) the Cure Costs, with payment made pursuant to the terms of the applicable Asset Purchase Agreement, or the agreement of the applicable Successful Bidder.

---

[4] The inclusion of any agreement as an Assumed Contract does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement included as an Assumed Contract.

46.     The Successful Bidder(s), on behalf of the Debtors, shall promptly pay or cause to be paid the Cure Costs with respect to the Assumed Contracts. The Successful Bidder(s) shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Contracts. The Debtors propose that the Court make its determinations concerning the Cure Costs and adequate assurance of future performance under the Assumed Contracts pursuant to section 365(b) of the Bankruptcy Code at the sale hearing or in the case of any Assumed Contracts not assumed and assigned to the Successful Bidder(s) at the sale hearing, at such other hearing to approve assumption and assignment of such Assumed Contract to the Successful Bidder(s).

47.     Except to the extent otherwise provided in the agreement(s) entered into with the Successful Bidder(s), subject to the payment of any Cure Costs, the assignee of an Assumed Contracts will not be subject to any liability to the assigned contract or lease counterparty that accrued or arose before the closing date of the sale of the Assets and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

48.     The Debtors further request that the sale order provide that the Assumed Contracts will be assigned to, and remain in full force and effect for the benefit of the applicable Successful Bidder, notwithstanding any provisions in the Assumed Contracts, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

49.     Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2). Under section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

50.     Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *In re Talco, Inc.*, 558 F. 2d 1369, 1173

(10th Cir. 1977). A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986). The assumption and assignment of the Assumed Contracts, or any of them, will be a necessary part of the proposed Sale and, as stated above, will benefit the estates of the Debtors.

51.     As set forth above with respect to Assumed Contracts to be assumed and assigned pursuant to the Sale, the Debtors will send a copy of this Sale Motion to all Counterparties to the Assumed Contracts, notifying such Counterparties of the potential assumption by the Debtors and assignment to the Successful Bidder(s) of the Assumed Contracts at the sale hearing. Exhibit C will be supplemented following entry of the Bid Procedures Order to sets forth the "cure" amounts owing on each of the Assumed Contracts, according to Debtors' books and records, plus separate cure notices will be provided to each Counterparty to an Assumed Contract.

52.     The Counterparties will have sufficient opportunity to file an objection to the proposed Cure Costs. To the extent no objection is filed with regard to a particular cure amount, such cure amount shall be binding on the applicable contract or lease counterparty. The payment of the Cure Costs will be in full and final satisfaction of all obligations to cure defaults and compensate the Counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtors determine that a particular contract is not truly executory, and does not need to be cured to transfer the Assets to the Successful Bidder.

53.     Cure Costs disputed by any Counterparties, with respect to any Assumed Contracts to be assumed and assigned to the Successful Bidder at Closing, will be resolved by the Court at the sale hearing or other hearing as set forth above.

54.     The Successful Bidder(s) are responsible for providing evidence of "adequate assurances of future performance" to the extent required in connection with the assumption and assignment of any Assumed Contracts.  The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).  If necessary, the Successful Bidder(s) shall provide evidence of its ability to provide adequate assurances to Counterparties at the sale hearing.

### Notice

55.     Concurrently with this filing, copies of this Sale Motion (which sets forth various requested dates relating to the sale) will be provided to (a) the Office of the United States Trustee; (b) counsel to the DIP Lender; (c) counsel to the Committees; (d) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; (e) all parties who assert liens with respect to the Assets; (f) all entities who executed non-

disclosure agreements with the Debtors or CRG in connection with a potential acquisition of any or all of the Assets or who otherwise have expressed to the Debtors an interest in purchasing the Assets; (g) all counterparties to Assumed Contracts; (h) the United States Attorney's office; (i) all state attorneys general in states in which the Assets are located; (j) the Internal Revenue Service; and (k) for each state in which the Assets are located, the applicable taxing authorities. Promptly following entry of the Bid Procedures Order, the Debtors will provide notice of this Sale Motion to all of the Debtors' other known creditors. The Debtors respectfully submit that such notice is sufficient, and request that the Court find that no further notice of the relief requested herein is required.

56.     In addition, within two (2) business days following entry of the Bid Procedures Order, the Debtors will provide notice of the Bid Procedures Order and the sale hearing with definitive dates once determined by the Court in the Bid Procedures Order.

57.     The Debtors submit that the notice that they have provided and intend to provide of this Sale Motion and the sale hearing is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

58.     The Debtors request, pursuant to Bankruptcy Rules 6004(g) and 6006(d), that the order approving this Sale Motion become effective immediately upon its entry.

### Conclusion

59.     The Debtors' proposed Sale of the Assets as described in this Sale Motion, including the assumption and assignment of the Assumed Contracts, is in each case supported by sound business reasons, as set forth herein. The proposed Sale is proper, necessary and serves

the best interests of the Debtors, their estates, and all parties in interest. In fact, the Debtors are currently approaching the maturity date of their existing DIP facility and have been presented with no viable alternatives to the proposed sale of their assets. The Debtors thus request that the Court approve the proposed Sale of the Assets free and clear of all interests, liens, claims, and encumbrances including successor liabilities, as requested, including, without limitation, the assumption and assignment of the Assumed Contracts, to the Successful Bidder(s).

## No Prior Request

60. No prior request for the relief sought in this Sale Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Sale Motion and authorize the Sale of the Assets to the Stalking Horse Purchaser or other Successful Bidder and approve the proposed Agreement in substantially the form attached to this Sale Motion, pursuant to the attached proposed order; (ii) approve the assumption and assignment of the Assumed Contracts in accordance with the Agreement; (iii) approve the form and manner of notice of this Sale Motion, and of the proposed Sale and assumptions and assignments; and (iv) grant such other and further relief as is just and proper.

Dated: November 23, 2010

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone:  302/652-4100
Facsimile:  302/652-4400
Email: ljones@pszjlaw.com
          dbertenthal@pszjlaw.com
          jfried@pszjlaw.com
          tcairns@pszjlaw.com

Counsel for the Debtors and Debtors in Possession