IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 10-11255 (PJW) |
| POINT BLANK SOLUTIONS INC., *et al.*[1] | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Related Docket No. 779** |

**Objection Deadline: December 8, 2010 at 4:00 p.m. (ET)**
**Hearing Date:  December 15, 2010 at 11:00 a.m. (ET)**

## DEBTOR POINT BLANK SOLUTIONS INC.'S OBJECTION TO
## LEAD PLAINTIFFS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Point Blank Solutions Inc. ("Point Blank"), a debtor and debtor in possession in the

above-captioned cases, hereby submits this objection to *Lead Plaintiffs' Motion for Relief from*

*the Automatic Stay* [Docket No. 779] (the "Motion for Relief") filed by Robino Stortini

Holdings, LLC, NECA-IBEW Pension Fund and George Baciu (collectively, "Class Plaintiffs").

For the reasons set forth herein, Point Blank requests that this Court deny the Motion for Relief.[2]

---

[1] Debtors in the above-captioned cases, along with the last four digits of each Debtor's federal tax identification number and their respective addresses, are: Point Blank Solutions Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2] Point Blank also requests that this Court deny the request for relief from the automatic stay set forth in *Dawn Schlegel's Limited Joinder in Lead Plaintiffs' Motion for Relief from the Automatic Stay* [Docket No. 880] (the "Schlegel Joinder"), for the reasons set forth herein and because the Schlegel Joinder, to the extent it seeks relief from the automatic stay, was not timely filed with respect to the December 15, 2010 hearing.

## PRELIMINARY STATEMENT

1.     The Motion for Relief is an improper attempt to force Point Blank to modify and assume a Stipulation and Agreement of Settlement (the "Stipulation") entered into by Point Blank in connection with the settlement of a Class Action and Derivative Action filed in the United States District Court for the Eastern District of New York (the "District Court").[3]  If the Motion for Relief is granted, Class Plaintiffs intend to submit a modified Stipulation to the District Court in the hopes of obtaining final approval of the settlement of the Derivative Action. The Stipulation has not yet received final approval in the Derivative Action because the United States Court of Appeals for the Second Circuit issued an opinion (the "Second Circuit Opinion") invalidating certain provisions of the Stipulation and vacating the District Court's prior approval of the Stipulation.

2.     Point Blank has not agreed to modify or assume the Stipulation, and in fact currently is seeking authorization in this Court to reject the Stipulation.  As a debtor in possession, Point Blank has exclusive authority to determine whether to reject or assume an executory contract such as the Stipulation, subject only to this Court's approval.  "The Bankruptcy Code places the option of assuming or rejecting executory contracts with the debtor, not with its business partners." *Public Service Co. of N.H. v. N.H. Elec. Coop., Inc. (In re Public Service Co. of N.H.)*, 884 F.2d 11, 15 (1st Cir. 1989).  Point Blank has determined in the exercise of its business judgment and with the support of the Official Committee of Unsecured Creditors

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Point Blank's pending *Motion for Order Under 11 U.S.C. § 365(a) Authorizing Rejection of Class and Derivative Action Settlement Agreement* [Docket No. 589] ("Rejection Motion").

(the "Creditors Committee") that rejection of the Stipulation is in the best interests of Point Blank's bankruptcy estate.[4] Rejection will complement Point Blank's efforts to recover $35,200,000 deposited in an escrow account (the "Escrowed Funds") in connection with the settlement of the Actions. Point Blank also will be entitled to assert the Derivative Action claims, potentially worth hundreds of millions of dollars, against the defendants in the Derivative Action. Assumption of the Stipulation, on the other hand, would interfere with Point Blank's efforts to recover the Escrowed Funds and could require Point Blank to release the Derivative Action claims without any monetary recovery to Point Blank. Thus, the Motion for Relief should be denied because it is an improper attempt to force Point Blank to assume the Stipulation despite Point Blank's pending Rejection Motion, and could deprive Point Blank of its potential recovery of hundreds of millions of dollars that otherwise would be available for distribution in Point Blank's bankruptcy case.

3. The Motion for Relief also should be denied because Class Plaintiffs have not established a prima facie case of cause for relief from the automatic stay. Relief from the automatic stay will greatly prejudice Point Blank and its bankruptcy estate. Class Plaintiffs, on the other hand, will not suffer any hardship as a result of enforcement of the stay. Class Plaintiffs' arguments to the contrary are incorrect for the following reasons:

a. As set forth above, relief from the automatic stay will prejudice Point Blank and its bankruptcy estate because the Motion for Relief is an attempt to force Point

---

[4] On October 28, 2010, the Creditors Committee filed the *Statement of Official Committee of Unsecured Creditors In Support of the Motion of Point Blank Solutions Inc. Pursuant to 11 U.S.C. § 365(a) for Authority to Reject Pre-Petition Agreement* [Docket No. 722] (the "Creditors Committee Statement").

Blank to modify and assume the Stipulation despite Point Blank's pending motion to reject the Stipulation. Class Plaintiffs argue that relief from the automatic stay will not prejudice Point Blank or interfere with the Rejection Motion because, according to Class Plaintiffs, Point Blank has no material unperformed obligations under the Stipulation. Point Blank and the other parties to the Stipulation, however, are required (among other obligations) to use their "best efforts" to obtain final court approval of the Stipulation in both Actions. The Motion for Relief itself demonstrates the materiality of this obligation. By seeking relief from the automatic stay to attempt to force Point Blank to modify and submit the Stipulation to the District Court for final approval, Class Plaintiffs in essence argue that the "best efforts" obligation requires Point Blank to agree to modify the Stipulation to conform to the Second Circuit Opinion. Modification of the Stipulation would require Class Plaintiffs, Point Blank and other parties to negotiate, draft, circulate and agree on the precise language of the proposed modifications, submit the proposed modifications to the District Court and advocate final approval of the modified Stipulation in the District Court. Because Class Plaintiffs seek relief from the automatic stay to enforce this "best efforts" obligation – one of the same obligations Point Blank seeks to avoid in the Rejection Motion – relief from stay would prejudice Point Blank and interfere with its bankruptcy proceedings.

        b.     Relief from the automatic stay would also prejudice Point Blank because relief, if granted, could require Point Blank to release the Derivative Action claims, potentially worth hundreds of millions of dollars, without any monetary recovery to Point Blank. As a debtor in possession, Point Blank has exclusive authority over the Derivative Action claims

and fully intends to pursue the claims against its former Chief Executive Officer David H.

Brooks ("Brooks"), its former Chief Financial Officer Dawn M. Schlegel ("Schlegel"), its former

Chief Operating Officer Sandra Hatfield ("Hatfield") and the other defendants in the Derivative

Action. *See In re Greenwood Supply Co.*, 295 B.R. 787, 794-95 (Bankr. D.S.C. 2002) (in the

event of bankruptcy, existing right to pursue a derivative action becomes property of the

bankruptcy estate and debtor in possession decides "how, when, and if the suit will proceed").

Point Blank is likely to prevail on the merits of the Derivative Action claims, because criminal

charges filed in the District Court against Brooks, Schlegel and Hatfield based upon the same

misconduct alleged in the Derivative Action resulted in Brooks' September 14, 2010 conviction

on seventeen counts including securities fraud and insider trading, Schlegel's October 23, 2007

guilty plea on charges of conspiracy to commit securities fraud and Hatfield's September 14,

2010 conviction on fourteen counts including securities fraud and insider trading.[5] Any recovery

on the Derivative Action claims, which potentially are worth hundreds of millions of dollars, will

be available for distribution in Point Blank's bankruptcy case. Relief from the automatic stay

would prejudice Point Blank and its other creditors because Class Plaintiffs seek relief from stay

to attempt to force Point Blank to settle the Derivative Action claims without any monetary

recovery to Point Blank.

        c.     Furthermore, relief from the automatic stay would allow Class

Plaintiffs to attempt to circumvent Point Blank's efforts to recover the $35,200,000 of Escrowed

---

[5] Information regarding Brooks and Hatfield's September 14, 2010 convictions and Schlegel's October 23, 2007 guilty plea was attached to the *Appendix of Exhibits to Debtor Point Blank Solutions Inc.'s Motion for Order Under 11 U.S. C. § 365(a) Authorizing Rejection of Class and Derivative Action Settlement Agreement* [Docket Nos. 592 and 593] (the "Appendix").

Funds. As set forth in the Rejection Motion and in Point Blank's *Complaint for Turnover of Property of the Estate* [Docket No. 774] (the "Turnover Complaint"), the Escrowed Funds are Point Blank's proceeds from prepetition sales of stock to Brooks and a prepetition "buy-out" of Point Blank's insurance policies, and therefore are property of Point Blank's estate. Upon successful resolution of the Turnover Complaint, the Escrowed Funds will be available for distribution in accordance with the priorities established under the Bankruptcy Code. Class Plaintiffs are not entitled to the Escrowed Funds because, as a result of the Second Circuit Opinion, the Stipulation (which governs the settlement of both the Class and Derivative Actions) has not received final approval in the Derivative Action. By seeking relief from the automatic stay to attempt to force Point Blank to modify and submit the Stipulation to the District Court for final approval, Class Plaintiffs are attempting to trigger the condition (final approval) that would have allowed Class Plaintiffs to access the Escrowed Funds. Relief from stay therefore would interfere directly with the Turnover Complaint and prejudice Point Blank's other creditors.

       d.      In contrast to the great prejudice Point Blank and its estate will suffer if relief from stay is granted, enforcement of the stay will not result in any hardship to Class Plaintiffs or other members of the class. According to Class Plaintiffs, enforcement of the automatic stay will prevent class members from obtaining "the benefit of the bargain they made over four years ago" with respect to the Class Action. Motion for Relief ¶ 37. The "bargain" Class Plaintiffs made, however, made the settlement of the Class Action and Class Plaintiffs' access to the Escrowed Funds contingent upon final approval of the settlement in the Derivative Action. With or without relief from the automatic stay, Class Plaintiffs are not entitled to the

Escrowed Funds. The Stipulation cannot receive final court approval in the Derivative Action absent either a successful appeal of the Second Circuit Opinion (which none of the parties have chosen to pursue) or Point Blank's consent to modify and assume the Stipulation (which Class Plaintiffs are not entitled to compel). In other words, the only "hardship" Class Plaintiffs will suffer is a consequence of the requirement, as negotiated and agreed to by Class Plaintiffs, that the Stipulation receive final court approval in both Actions. This "hardship" is not, however, a result of enforcement of the automatic stay and would not be remedied by relief.

   e.  Finally, according to the Motion for Relief, enforcement of the automatic stay will prejudice Class Plaintiffs because Class Plaintiffs will be "uncompensated for their substantial injuries." Motion for Relief ¶ 37. Class Plaintiffs, however, have filed claims in Point Blank's bankruptcy case based on the same purported violations of federal securities laws alleged in the Class Action. By filing such claims, Class Plaintiffs have submitted to this Court's jurisdiction and Class Plaintiffs' claims will be resolved in due course in Point Blank's bankruptcy case.

   4.  Thus, relief from the automatic stay would greatly prejudice Point Blank and its bankruptcy estate by allowing Class Plaintiffs to attempt to override Point Blank's "business judgment" decision to reject the Stipulation, by allowing Class Plaintiffs to attempt to deprive Point Blank of its potential recovery of hundreds of millions of dollars on the Derivative Action claims and by allowing Class Plaintiffs to interfere with Point Blank's recovery of the $35,200,000 of Escrowed Funds. Enforcement of the automatic stay, on the other hand, would not impose any hardship on Class Plaintiffs. In other words, the "balance of the harms" in this

case demonstrates that relief from the automatic stay is inappropriate. Therefore, Point Blank respectfully requests that the Court deny the Motion for Relief.

## BACKGROUND

5.    A description of the Class and Derivative Actions, including information regarding the Second Circuit Opinion, is set forth in the Rejection Motion and in Point Blank's *Supplement to Debtor Point Blank Solutions Inc.'s Motion for Order Under 11 U.S.C. § 365(a) Authorizing Rejection of Class and Derivative Action Settlement Agreement* [Docket No. 655] (the "Supplement"). *See* Rejection Motion ¶¶ 10-11, 15; Supplement ¶¶ 4-5.[6]

6.    As set forth in Rejection Motion, the parties entered into the Stipulation and nine other related and interdependent agreements in connection with the prepetition settlement of the Class and Derivative Actions (collectively, the "Settlement Agreement"). The background and material provisions of the Settlement Agreement, including the Stipulation, are described in detail in the Rejection Motion.[7] *See* Rejection Motion ¶¶ 12-14, 16-30.

7.    Point Blank filed the Turnover Complaint on November 16, 2010. A brief description of the Turnover Complaint is set forth in *Debtor Point Blank Solutions Inc.'s Reply in Support of Motion for Order Under 11 U.S.C. § 365(a) Authorizing Rejection of Class and Derivative Action Settlement Agreement* [Docket No. 776] (the "Reply"). *See* Reply ¶ 3. The

---

[6] Copies of the Class Action complaint and Derivative Action complaint ("Derivative Action Complaint") were attached to the Appendix. A copy of the Second Circuit Opinion was attached to the Supplement.
[7] Copies of nine of the agreements that constitute the Settlement Agreement were attached to the Appendix. A copy of the remaining agreement was filed under seal with *Debtors' Motion for Authority to File Under Seal One Exhibit to Motion for Order Under 11 U.S.C. § 365(a) Authorizing Rejection of Class and Derivative Action Settlement Agreement* [Docket No. 617].

answer to the Turnover Complaint is due on December 16, 2010, the day after the hearing on the

Rejection Motion and Motion for Relief.

## ARGUMENT

### I.    The Motion For Relief Is An Improper Attempt To Compel Point Blank To Assume A Modified Version Of The Stipulation

8.    Class Plaintiffs seek relief from the automatic stay to attempt to force

Point Blank to modify and assume the Stipulation, with the goal of submitting a modified version

of the Stipulation to the District Court for approval in the Derivative Action.[8] Point Blank has

not agreed to modify or assume the Stipulation, and in fact currently seeks authorization from

this Court to reject the Stipulation. "[T]he authority to reject an executory contract is vital to the

basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate

from burdensome obligations that can impede a successful reorganization." *In re National*

*Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S.

513, 528 (1984)). As a debtor in possession, Point Blank has exclusive authority to determine

---

[8] Although Class Plaintiffs characterize the Motion for Relief as a request for relief from the automatic stay "so that the Derivative Action Judgment can be revised consistent with" the Second Circuit Opinion, a modification of the Stipulation is the only mechanism by which this result can be achieved. *See* Motion for Relief ¶ 20. Paragraph 7.2 of the Stipulation provides that a "condition of this Stipulation is that this Stipulation and Settlement shall be approved by the Court as provided herein" and if "appellate review is sought and on such review either of the [judgments approving the settlement of the Actions] is materially modified or reversed … this Stipulation shall be canceled and terminated unless counsel to Class Plaintiffs' and Derivative Plaintiff and counsel for [Point Blank] and David H. Brooks (together with counsel for any other Defendants who is materially and adversely affected by any such change or failure)" otherwise agree in writing to proceed with the Stipulation and settlement of the Actions. The Second Circuit Opinion vacated the District Court's prior approval of the Stipulation in the Derivative Action. As a result, absent a successful appeal of the Second Circuit Opinion (which none of the parties have chosen to pursue), the Stipulation will be cancelled and terminated pursuant to paragraph 7.2 unless the parties agree in writing to modify the Stipulation to conform to the Second Circuit Opinion. Stipulation ¶ 7.2. Under the plain language of paragraph 7.2 of the Stipulation, Point Blank's consent is a prerequisite to any modification of the Stipulation regardless of whether the proposed modification materially or adversely affects Point Blank. *See* Stipulation ¶ 7.2.

whether to assume or reject the Stipulation, subject only to this Court's approval.[9] *See Sundial Asphalt Co., Inc. v. V.P.C. Investors Corp. (In re Sundial Asphalt Co., Inc.)*, 147 B.R. 72, 80 (E.D.N.Y. 1992) (trustee or debtor in possession has exclusive authority regarding rejection or assumption of executory contracts, subject to court approval."); *see also In re Penn Traffic Co.*, 524 F.3d 373, 382-83 (2d Cir. 2008) (power to make election to assume or reject executory contracts is that of debtor alone, and non-debtor cannot prevent debtor's exercise of its rights under section 365 by post-petition tender or performance of non-debtor's own contractual obligations); *In re National Gypsum Co.*, 208 F.3d at 506 (non-debtor "lacks any decision-making authority in the assumption process"); *In re Public Service Co. of N.H.*, 884 F.2d at 15 ("The Bankruptcy Code places the option of assuming or rejecting executory contracts with the debtor, not with its business partners. To disturb this mechanism would unbalance the Code's overriding policy favoring debtor reorganization and rehabilitation."); *In re Dehon, Inc.*, 352 B.R. 546, 565 n.19 (Bankr. D. Mass. 2006) ("it has long been recognized that the initial determination [regarding assumption or rejection of an executory contract] lies squarely with the trustee or debtor and this power is essential for successful reorganization").

9. The decision in *Sundial Asphalt Co., Inc.* is particularly instructive here. In that case, the bankruptcy court granted a creditor's motion for relief from the automatic stay to

---

[9] To the extent Class Plaintiffs argue that the Stipulation is not an executory contract, and therefore need not be either assumed or rejected, this argument is belied by the Motion for Relief itself. Implicit in the Motion for Relief is the notion that the "best efforts" obligation requires Point Blank to agree to modify the Stipulation to conform to the Second Circuit Opinion. Modification of the Stipulation would require Class Plaintiffs, Point Blank and other parties to negotiate, draft, circulate and agree on the precise language of the proposed modifications, submit the proposed modifications to the District Court and advocate final approval of the modified Stipulation in the District Court. Therefore, the "best efforts" obligation, as framed by Class Plaintiffs, is a material unperformed obligation under the Stipulation and further supports the conclusion that the Stipulation is an executory contract.

pursue a state court action for specific performance of a land sale contract, denied the debtor's motion to reject the same contract and ordered that the contract be assumed. *In re Sundial Asphalt Co., Inc.*, 147 B.R. at 74. The district court reversed each of the bankruptcy court's orders, stating that the "Court finds nothing in the statute or the Bankruptcy Rules providing for rejection or assumption of an executory contract by any party other than the trustee or debtor in possession, and finds no authorization for the court making such an election *sua sponte*, although whatever election is made by the trustee is subject to the court's approval." *Id.* at 80. The district court also found that there was substantial evidence to support the debtor's business judgment decision to reject the land sale contract, and that the support of the creditors' committee reinforced that conclusion. *Id.* at 84. Thus, the district court vacated the bankruptcy court's order regarding assumption of the land sale contract, restored the automatic stay with respect to the creditor, and ordered a full evidentiary hearing to determine whether rejection of the land sale contract was in the best interests of the debtor's estate. *Id.* at 85.

10.     Similarly, in this case, Point Blank seeks to exercise its exclusive authority to determine whether to assume or reject the Stipulation while Class Plaintiffs attempt to usurp that authority by requiring Point Blank to modify and assume the Stipulation. Point Blank has determined, in the exercise of its business judgment and with the support of the Creditors Committee, that rejection of the Settlement Agreement – including the Stipulation – is in the best interests of Point Blank's estate. Rejection will complement Point Blank's efforts to recover the $35,200,000 of Escrowed Funds and will allow Point Blank to assert the Derivative Action claims, potentially worth hundreds of millions of dollars, against Brooks, Schlegel, Hatfield and

the other defendants in the Derivative Action. Point Blank's recovery of the Escrowed Funds and on the Derivative Action claims will be available for distribution in Point Blank's bankruptcy case. As in *Sundial Asphalt Co., Inc.*, the Motion for Relief is an improper attempt to force Point Blank to assume the Stipulation and, if granted, would deprive Point Blank and its estate of the substantial benefits of rejection.

11. The Motion for Relief therefore should be denied, without any need to evaluate whether Class Plaintiffs have established cause for relief from stay. As set forth below, however, even if the Court evaluates the merits of the Motion for Relief, Class Plaintiffs have failed to meet their initial burden of establishing a prima facie case for relief from stay.

## II. **Class Plaintiffs Have Not Established A Prima Facie Case Of Cause For Relief From The Automatic Stay**

12. The automatic stay is one of the most fundamental protections provided to the debtor under the Bankruptcy Code. *Midlantic Nat'l Bank v. New Jersey Dept. of Envlt. Prot.*, 474 U.S. 494, 503 (1986); *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).[10] Although relief from the automatic stay may be granted "for cause" pursuant to section 362(d)(1) of the Bankruptcy Code, the party seeking relief must first establish a prima facie case that cause

---

[10] In the Motion for Relief, Class Plaintiffs suggest that the proposed modification and submission of the Stipulation to the District Court for approval in the Derivative Action does not require relief from the automatic stay because "no property of the estate is implicated here." *See* Motion for Relief ¶¶ 1, 20-21. The Motion for Relief clearly implicates property of Point Blank's bankruptcy estate, which includes the Derivative Action itself, the Escrowed Funds and the 3,184,713 new shares of stock Point Blank would be required to deliver upon final court approval of the Stipulation. *See, e.g., In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) *subsequently aff'd*, 359 F. App'x. 352 (3d Cir. 2010) (derivative action constituted property of debtor's estate); *In re Allegheny Label, Inc.*, 128 B.R. 947, 952 (Bankr. W.D. Pa. 1991) (funds placed by purchaser into escrow and distributed as commission to debtor's broker were property of debtor's estate, where funds were part of proceeds realized from sale of debtor's assets); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) (proceeds of D&O policy as a whole were property of the bankruptcy estate where proceeds available for debtor's liability exposure were not segregated from the proceeds available to the directors and officers).

exists for relief from the automatic stay. *In re RNI Wind Down Corp.*, 348 B.R. at 299; *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992). "Failure to prove a prima facie case requires denial of the requested relief." *In re RNI Wind Down Corp.*, 348 B.R. at 299; *see also In re Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause ... the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."). A prima facie case requires the movant to establish "a factual and legal right to the relief that it seeks." *In re RNI Wind Down Corp.*, 348 B.R. at 299 (quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)).

13. "Cause" is not defined under the Bankruptcy Code, but courts view it as a "flexible concept" and often conduct a "fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.*, 395 B.R. at 856. Lifting the automatic stay to allow a lawsuit pending in another court to continue is appropriate only "when no great prejudice to the bankruptcy estate would result." *In re Rexene Prods. Co.*, 141 B.R. at 576 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977)). "The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect [of] such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *In re W.R. Grace & Co.*, 2007 WL 1129170, *2 n.7 (Bankr. D, Del. Apr. 13, 2007) (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).

14.     Courts in this district use the following three-pronged balancing test to determine whether cause exists to grant relief from the automatic stay to continue litigation in another forum: (i) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (ii) whether the hardship to the non-debtor by maintenance of the stay considerably outweighs the hardship to the debtor; and (iii) whether the non-debtor has a probability of prevailing on the merits. *In re SCO Group, Inc.*, 395 B.R. at 857; *In re Rexene Prods. Co.*, 141 B.R. at 576.[11] As set forth below, Class Plaintiffs have failed to establish cause for relief from the automatic stay in this case because none of the factors courts consider in determining whether to grant relief from stay support the Motion for Relief.

### A.      Relief From The Automatic Stay Would Prejudice Point Blank And Its Bankruptcy Estate

15.     Relief from the automatic stay would greatly prejudice Point Blank and its bankruptcy estate. As discussed in Section I, *supra*, the Motion for Relief is an improper attempt to force Point Blank to modify and assume the Stipulation despite Point Blank's pending motion to reject the Stipulation. In addition to interfering with Point Blank's exclusive authority to

---

[11] Courts may also consider various other factors to determine whether to lift the automatic stay. For instance, the *Curtis* court set forth the following list of factors: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of the harms. *In re Curtis*, 40 B.R. at 799-800; *see also In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (citing *In re Curtis*, 40 B.R. at 799-800). The second and twelfth factors on this list are included in the three-pronged balancing test described above, and are discussed in Sections II.A and II.B, *infra*, respectively. The remaining factors, to the extent applicable, are discussed in Section II.D, *infra*.

assume or reject the Stipulation, relief from stay also would prejudice Point Blank and its estate by (i) allowing Class Plaintiffs to usurp Point Blank's exclusive authority to prosecute and/or settle the Derivative Action claims and (ii) allowing Class Plaintiffs to attempt to circumvent Point Blank's recovery of the Escrowed Funds.

### i. Relief From The Automatic Stay Would Interfere With Point Blank's Recovery On The Derivative Action Claims

16.     Relief from the automatic stay would prejudice Point Blank and its bankruptcy estate by allowing Class Plaintiffs to attempt to hijack Point Blank's exclusive authority as a debtor in possession to prosecute and/or settle the Derivative Action claims. As set forth above, Class Plaintiffs seek relief from the automatic stay to attempt to force Point Blank to modify and submit the Stipulation to the District Court for final approval in the Derivative Action. Final approval of the Stipulation could require Point Blank to release the Derivative Action claims against Brooks, Schlegel, Hatfield and the other defendants in the Derivative Action, without any monetary recovery to Point Blank. *See* Stipulation ¶¶ 4.1, 6.5.[12]

17.     Point Blank, however, has determined in the exercise of its business judgment and with the support of the Creditors Committee that it is in the best interests of Point Blank's estate to pursue, rather than settle, the Derivative Action claims against Brooks, Schlegel, Hatfield and the other defendants in the Derivative Action.[13] The Derivative Action claims are property of Point Blank's estate. *See In re RNI Wind Down Corp.*, 348 B.R. at 299

---

[12] Point Blank expressly reserves all rights with respect to the Derivative Action claims. Point Blank also expressly reserves all rights regarding the effect of relief from the automatic stay if the Motion for Relief is granted, whether in regard to the Derivative Action claims or otherwise.

[13] Class Plaintiffs thus are incorrect in arguing that, absent stay relief, the Derivative Action "at best will remain in limbo." Motion for Relief ¶ 37.

(derivative action constituted property of debtor's estate, and therefore automatic stay prevented non-debtor from continuing his appeal of district court's approval of settlement of derivative action). As a debtor in possession, Point Blank has exclusive authority to prosecute and/or settle the Derivative Action claims. *See id.* at 294 (upon filing of bankruptcy petition, right to prosecute derivative action claims and right to settle such claims vests exclusively to trustee); *see also Shepard v. Patel (In re Patel)*, 291 B.R. 169, 174 (Bankr. D. Ariz. 2003) (denying relief from stay to allow equity holder to seek entry of judgment in derivative action, where trustee, who had exclusive ownership and control of derivative claims, might need to oppose entry of any judgment, such processes would be expensive to estate and potentially duplicative, and trustee rather than equity holder should dictate their timing and forum); *In re Greenwood Supply Co.*, 295 B.R. 787, 794-95 (Bankr. D.S.C. 2002) (existing right to pursue derivative action becomes property of estate and debtor in possession decides "how, when, and if the suit will proceed").

18.     The Derivative Action claims are potentially worth hundreds of millions of dollars. The Derivative Action Complaint asserts causes of action for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. Derivative Action Complaint ¶ 1. As set forth in the Derivative Action Complaint, Brooks, Schlegel, Hatfield and the other defendants caused Point Blank to sustain damages in excess of hundreds of millions of dollars, as well as harm to its reputation and goodwill. Derivative Action Complaint ¶¶ 1, 46, 172. For instance, the Derivative Action Complaint alleges that:

- Certain defendants – including Brooks, Schlegel and Hatfield – engaged in an insider trading scheme in which the defendants artificially inflated Point Blank's

value and then in one month sold over ten million shares of Point Blank for more than $200,000,000. Derivative Action Complaint ¶¶ 7, 12, 50. The Derivative Action Complaint seeks to impose a constructive trust on any profits obtained through the insider trading scheme. Derivative Action Complaint ¶ 157.

- After the defendants' insider sales, Point Blank's stock "began a downward spiral" from over $20 per share to below $3 per share. Derivative Action Complaint ¶¶ 12-13, 144. The defendants' misconduct damaged Point Blank's market capitalization by over $720,000,000. Derivative Action Complaint ¶ 144.

- Brooks and his family usurped corporate opportunities and unjustly enriched themselves to the detriment of Point Blank. For instance, Brooks and his family received almost $100,000,000 in compensation and payments from related party transactions in one year, while Point Blank's net income for the same year was only approximately $30,000,000. Derivative Action Complaint ¶¶ 65, 68, 144.

- The defendants' misconduct subjected Point Blank to the Class Action and resulted in significant expenditures by Point Blank, including costs incurred in investigating and defending the Class Action and costs incurred in connection with an SEC investigation. Derivative Action Complaint ¶¶ 45, 144, 176.

- The defendants' misconduct resulted in a $60,000,000 charge to Point Blank's third quarter earnings in 2005 to account for costs incurred due to the recall and discontinued sales of certain products, which wiped out Point Blank's previously reported income for that year. Derivative Action Complaint ¶ 122, 125, 136.

19.     Point Blank is likely to prevail on the merits of the Derivative Action

claims because criminal charges filed in the District Court against Brooks, Schlegel and Hatfield

based upon the same misconduct alleged in the Derivative Action resulted in Brooks' September

14, 2010 conviction on seventeen counts including securities fraud and insider trading,

Schlegel's October 23, 2007 guilty plea on charges of conspiracy to commit securities fraud and

Hatfield's September 14, 2010 conviction on fourteen counts including securities fraud and

insider trading.  Point Blank's potential recovery of hundreds of millions of dollars on the

Derivative Action claims will be available for distribution in Point Blank's bankruptcy estate.

Class Plaintiffs seek relief from stay to attempt to force Point Blank to settle the Derivative

Action claims without any monetary recovery to Point Blank, and therefore relief would greatly

prejudice Point Blank and its bankruptcy estate.

**ii.     Relief From The Automatic Stay Would Interfere With Point Blank's Efforts To Recover The Escrowed Funds**

20.     In the Motion for Relief, Class Plaintiffs completely ignore the fact that

relief from the automatic stay would directly interfere with Point Blank's Turnover Complaint,

which Point Blank filed two days before the Motion for Relief.  Class Plaintiffs' ultimate goal in

filing the Motion for Relief is to gain access to the Escrowed Funds.  *See, e.g.*, Motion for Relief

¶ 20 (Class Plaintiffs filed the Motion for Relief "so that the Derivative Action Judgment can be

revised … a final order can be entered in the Derivative Action … and the Escrow Agent can

distribute the Escrow to the Class.").  The Motion for Relief, therefore, is in direct conflict with

the Turnover Complaint, in which Point Blank seeks to recover the $35,200,000 of Escrowed

Funds as property of Point Blank's estate.

21.     As described in detail in the Rejection Motion and the Reply, the

Escrowed Funds are property of Point Blank's estate. *See also* n.10, *supra.*  Class Plaintiffs do

not have an interest in the Escrowed Funds because the condition of the Stipulation that would

have allowed Class Plaintiffs to access the Escrowed Funds (*i.e.*, final approval in both Actions)

has not occurred, as a result of the Second Circuit Opinion. *See In re Pan Trading Corp., S.A.,*

125 B.R. 869, 879 (Bankr. S.D.N.Y. 1991) (debtor's interest in escrowed funds was property of

the estate where conditions of the escrow that would have permitted distribution to grantee were

not fulfilled).  Moreover, absent a successful appeal of the Second Circuit Opinion (which none

of the parties have chosen to pursue) or Point Blank's consent to modify and assume the

Stipulation (which Class Plaintiffs are not entitled to compel), the Stipulation cannot receive

final approval in the Derivative Action.

22.     Nonetheless, Class Plaintiffs seek to trigger the condition that would have

allowed Class Plaintiffs to access the Escrowed Funds by requesting relief from the automatic

stay to attempt to force Point Blank to modify, assume and submit the Stipulation to the District

Court for approval in the Derivative Action.  Although Class Plaintiffs' attempt to trigger the

condition of final court approval cannot succeed (*see* Sections I and II.C, *infra*), Class Plaintiffs'

effort to gain access to the Escrowed Funds nonetheless interferes directly with the Turnover

Complaint.  Point Blank's recovery of the Escrowed Funds upon successful resolution of the

Turnover Complaint will be available for distribution in accordance with the priorities

established by the Bankruptcy Code, and therefore relief from the automatic stay to allow Class

Plaintiffs to attempt to access the Escrowed Funds would prejudice Point Blank and its bankruptcy estate.

### B.    Enforcement Of The Automatic Stay Will Not Prejudice Class Plaintiffs

23.    "[T]he party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in its favor." *In re RNI Wind Down Corp.*, 348 B.R. at 299 (quotations omitted). "A creditor's mere unsupported allegation that continuance of the stay will cause it irreparable harm will not suffice." *In re Curtis*, 40 B.R. at 803. In this case, Class Plaintiffs have not established that the "balance of hardships" weighs in favor of lifting the automatic stay. In contrast to the significant prejudice Point Blank and its estate will suffer if the stay is lifted, Class Plaintiffs will not suffer any hardship as a result of enforcement of the automatic stay.

24.    According to Class Plaintiffs, enforcement of the automatic stay will prevent Class Plaintiffs from obtaining "the benefit of the bargain they made over four years ago" because the Escrowed Funds will not be available for distribution to Class Plaintiffs. Motion for Relief ¶¶ 36-37. The "bargain" Class Plaintiffs made, however, was that the settlement of the Class Action would be contingent upon the settlement of the Derivative Action and that the Escrowed Funds would not be available for distribution to Class Plaintiffs unless the Stipulation received final court approval in both Actions. *See* Stipulation ¶¶ 1.15, 1.17, 5.2, 7.1, 7.2; Escrow Agreement ¶ 4(b). The Stipulation has failed to receive final approval in the Derivative Action as a result of the Second Circuit Opinion. Moreover, absent a successful appeal of the Second Circuit Opinion (which none of the parties have chosen to pursue) or Point ·

Blank's consent to modify and assume the Stipulation (which Class Plaintiffs cannot compel), the Stipulation cannot receive final approval in the Derivative Action even if the Motion for Relief is granted. Thus, the only "hardship" Class Plaintiffs might suffer is a consequence of the requirement, as negotiated and agreed to by Class Plaintiffs, that the Stipulation receive final court approval in both Actions. Any perceived "hardship" is not, however, a result of the automatic stay and would not be remedied by relief.

25. Finally, according to the Motion for Relief, enforcement of the automatic stay will prejudice Class Plaintiffs because Class Plaintiffs will be "uncompensated for their substantial injuries." Motion for Relief ¶ 37. This is inaccurate. Class Plaintiffs, individually and on behalf of the class, have filed claims in Point Blank's bankruptcy case based on the same purported violations of federal securities laws alleged in the Class Action.[14] By filing the claims, Class Plaintiffs have submitted to this Court's exclusive jurisdiction over the allowance or disallowance of the claims. *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("by filing a claim against a bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power") (quotation omitted); *Travellers Int'l AG. v. Robinson*, 982 F.2d 96, 100 (3d Cir. 1992) (equitable jurisdiction of bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim); *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips*

---

[14] Class Plaintiffs filed Claim Nos. 458 and 482 on behalf of the class. Robino Stortini Holdings, LLC filed Claim Nos. 459 and 483. NECA-IBEW Pension Fund filed Claim Nos. 460 and 484. George Baciu filed Claim Nos. 461 and 485.

*Constructors, Inc.),* 45 F.3d 702, 707 (2d Cir. 1995) (by filing proof of claim, creditor necessarily submits to bankruptcy court's equitable jurisdiction).

26.     Class Plaintiffs' claims thus will be resolved in due course in Point Blank's bankruptcy case.[15] *See In re W.R. Grace & Co.,* 2007 WL 1129170 at *3 (moving party failed to satisfy "heavy and possibly insurmountable burden" of proving that balance of hardships tipped significantly in favor of granting relief, where moving party had filed a proof of claim in the bankruptcy case and, therefore, its claims were preserved as against debtors and would be resolved in due course in the chapter 11 cases). Therefore, especially in light of the great prejudice Point Blank and its bankruptcy estate will suffer if the Motion for Relief is granted, Class Plaintiffs have failed to demonstrate that the "balance of hardships" weighs significantly in favor of relief from stay.

**C.      Class Plaintiffs Have No Probability Of Success Even If Class Plaintiffs Are Granted Relief From The Automatic Stay**

27.     Class Plaintiffs have no probability of success even if the Motion for Relief is granted. Class Plaintiffs seek relief from stay to attempt to force Point Blank to modify, assume and submit the Stipulation to the District Court for final approval in the Derivative Action. Point Blank's consent (which has not been granted) is a prerequisite to any proposed modification of the Stipulation both pursuant to paragraph 7.2 of the Stipulation and because Point Blank, as a debtor in possession, has exclusive authority to prosecute and/or settle the Derivative Action claims. *See* Section II.A.ii, *supra.* Moreover, as discussed in detail above,

---

[15] Point Blank expressly reserves all rights with respect to the claims filed by Class Plaintiffs, including without limitation all defenses Point Blank may have to such claims.

Point Blank cannot be compelled to assume the Stipulation. *See* Section I, *supra*. Thus, absent

Point Blank's consent to modify and assume the Stipulation, there is no modified version of the

Stipulation to submit to the District Court for approval. As a result, Class Plaintiffs have no

probability of success on the merits even if relief from stay is granted.[16]

### D.    No Additional Factors Justify Relief From The Automatic Stay

28.    Class Plaintiffs discuss various additional factors courts may consider to

determine whether to lift the stay, including: (1) whether relief would result in a partial or

complete resolution of the issues; (2) whether a specialized tribunal with the necessary expertise

has been established to hear the cause of action; (3) whether the action primarily involves third

parties; (4) whether litigation in another forum would prejudice the interests of other creditors;

(5) the interests of judicial economy and the expeditious and economical resolution of litigation;

and (6) whether the parties are ready for trial in the other proceeding. Proper application of these

remaining factors in this case demonstrates that cause does not exist for relief from stay.

29.    With respect to the first and fifth additional factors, relief from the

automatic stay would not result in a complete resolution of the issues or promote the "interests of

judicial economy and the expeditious and economical resolution of litigation." As discussed

above, Class Plaintiffs cannot compel Point Blank to modify or assume the Stipulation. As a

result, even if relief from stay is granted, the issues pertaining to Point Blank's rejection of the

---

[16] In this regard, Class Plaintiffs also are incorrect in arguing that the Stipulation will "move forward as to the other parties" if relief from stay is granted. Motion for Relief ¶ 33. Absent Point Blank's consent (which has not been granted), there is no modified version of the Stipulation that can be submitted to the District Court for final approval or "move forward" as to any of the parties. Furthermore, Class Plaintiffs offer no basis for assuming that the District Court would approve a modified Stipulation over Point Blank's objection and after Point Blank had been relieved (if the Rejection Motion is granted) of its obligations to, among other things, exchange releases and deliver the stock portion of the settlement.

Settlement Agreement will be still need to be decided in this Court at or after the December 15, 2010 hearing on the Rejection Motion, the proper distribution of the Escrowed Funds will be need to be determined in connection with the Turnover Complaint, Point Blank will determine whether (and when) to assert the Derivative Action claims against Brooks and the other defendants in the Derivative Action, and the claims filed by Class Plaintiffs will be handled in due course in Point Blank's bankruptcy case.

30. With respect to the second additional factor, the District Court's experience in the Actions has little relation to the relief requested by Class Plaintiffs. Class Plaintiffs are not seeking relief from the automatic stay to litigate the claims asserted in the Actions. Instead, Class Plaintiffs seek relief from the automatic stay to submit a modified version of the Stipulation to the District Court for final approval. As discussed above, the relief requested by Class Plaintiffs bears directly upon Point Blank's rejection of the Settlement Agreement, Point Blank's efforts to recover the Escrowed Funds as property of Point Blank's estate and Point Blank's exclusive authority over the Derivative Action, which are matters properly before this Court. *See, e.g., In re SCO Group, Inc.*, 395 B.R. at 858 ("[I]t is the very essence of a bankruptcy court's jurisdiction to decide what is property of the estate."); *In re RNI Wind Down Corp.*, 348 B.R. at 293 (bankruptcy court has exclusive subject-matter jurisdiction over derivative action claims, as property of the estate, including settlement of those claims).

31. Class Plaintiffs also argue that cause exists to lift the automatic stay because the Actions are multiparty disputes and, according to Class Plaintiffs, Point Blank has no material unperformed obligations under the Stipulation. Motion for Relief ¶ 46. As described in

detail in the Rejection Motion, however, Point Blank has numerous material unperformed obligations under the Stipulation (and the remaining agreements that constitute the Settlement Agreement) including, without limitation, its obligations to exchange releases with the other parties and deliver the stock portion of the settlement upon final court approval of the Stipulation in both Actions. *See, e.g.*, Stipulation ¶¶ 2.4, 4.1, 4.5. Moreover, as discussed above, the Motion for Relief itself in essence is an attempt to enforce Point Blank's "best efforts" obligation under the Stipulation. Therefore, Class Plaintiffs are incorrect in arguing that Point Blank has no material unperformed obligations under the Stipulation.

32. As to the fourth additional factor, Class Plaintiffs argue that relief from the automatic stay will not prejudice the interests of other creditors. Motion for Relief ¶ 47. As discussed above, however, relief from the automatic stay would interfere with Point Blank's efforts to recover the Escrowed Funds and could require Point Blank to release the Derivative Action claims with no monetary recovery to Point Blank. Relief from the automatic stay would necessarily prejudice the interests of Point Blank's other creditors because Point Blank's recovery of the Escrowed Funds and Point Blank's recovery on the Derivative Action claims will be available for distribution in Point Blank's bankruptcy case.

33. Finally, Class Plaintiffs assert that the parties are "ready for entry of a modified final judgment in the Derivative Action." Motion for Relief ¶ 49. As discussed above, the parties are not ready for entry of a modified final judgment in the Derivative Action because, absent Point Blank's consent, there is no modified Stipulation to submit to the District Court for approval in the Derivative Action.

34. Class Plaintiffs thus have failed to establish a prima facie case of cause for relief from the automatic stay because neither the three-pronged balancing test nor any of the additional factors support the Motion for Relief. Moreover, to the extent the Court determines Class Plaintiffs have established a prima facie case of cause for relief from the automatic stay, Point Blank respectfully submits that it has rebutted any such prima facie case and has demonstrated that relief from the automatic stay is unwarranted.

WHEREFORE, for the reasons set forth herein, Point Blank respectfully requests that the Court deny the Motion for Relief and grant such other relief as is just and proper.

Dated: December 8, 2010

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
Curtis A. Hehn (Bar No. 4264)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
akornfeld@pszjlaw.com
chehn@pszjlaw.com
tcairns@pszjlaw.com

Counsel for Debtors and Debtors in Possession