IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | |
| POINT BLANK SOLUTIONS INC., et al.,[1] ) | Case No. 10-11255 (PJW) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

## LIMITED OBJECTION OF RODNEY MCFADDEN TO THE DEBTORS' PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Comes now, Rodney McFadden, a holder of equity interests in Point Blank Solutions, to bring to this Court's attention a discrete and limited objection that deserves close scrutiny. Specifically, certain equity holders in Class 9 would ostensibly be precluded from participating in the Rights Offering, such that those equity holders would designedly receive less than other members of the same Class in violation of Section 1123(a)(4) of the Code. Section 1123(a)(4) provides that "a plan shall - . . . (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The disparity in treatment here of some Old Equity Interests relative to others is both conspicuous and easily solved, or at least mitigated: most if not all *individual investors* holding Old Equity Interests would be *categorically disqualified* from participating in the Rights Offering for stakes in Newco, simply by virtue of the unregistered design of the Rights Offering, even as such investors' current equity stakes are

---

[1] The Debtors in the above-captioned cases, along with the last four digits of each Debtor's federal tax identification number and their respective addresses, are: Point Blank Solutions Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2' Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America *(9051)*, 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

extinguished rather than converted. This disparity in treatment of individual investors in Class 7 relative to institutional and/or well-heeled investors (such as those comprising the Backstop Group) in Class 7 is especially problematic: the Plan's design ensures that the bulk of the value available to current equity holders (whose equity shares in the Debtors are due to be extinguished and whose stakes in any proceeds ultimately flowing through the litigation trust would pale by comparison to the stakes held by Newco's equity investors) would come only via the Rights Offering for shares in Newco; yet this Rights Offering is altogether *illusory* for individual investors who would be legally disqualified from participating, *notwithstanding* that they are situated *identically* to fellow investors in terms of their equity holdings and otherwise, for no other reason that they are individuals and the offering is unregistered. This aspect of the Plan should not be confirmed.

### The Plan Violates Section 1123(a)(4) of the Bankruptcy Code Because the Rights Offering Contemplated Under the Plan Will be Available to Only Certain Members of the Same Class

Section 1129(a)(1) of the Bankruptcy Code provides that a plan cannot be confirmed unless it "complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) explains that it encompasses the requirements of sections 1122 and 1123 governing classification of claims and contents of the plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).

Section 1123(a)(4) of the Bankruptcy Code clearly provides that, unless a creditor or interest holder agrees to disfavored treatment, the treatment of each claim or equity interest in a particular class must be the same as the treatment of each other claim or equity interest in such class. 11 U.S.C. § 1123(a)(4). Section 1123(a)(4) is intended to "advance[] the policy of equality of distribution of estate property in bankruptcy law." *In re Journal Register Co.*, 407 B.R. 520, 532 (Bankr. S.D.N.Y. 2009). The "the key inquiry under § 1123(a)(4) is . . . whether [claimants] have

the same opportunity." *In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2009); *see In re Joint E. & S. Dist. Litig.*, 982 F.2d 721, 749 (2nd Cir. 1992) (The "same treatment" standard of section 1123(a)(4) does not require that all claimants within a class receive the same amount of money; as long as all claimants in the same class are given the same opportunity, section 1123(a)(4) is satisfied.). The instant case poses a situation where certain members of the class would *not* be afforded the same opportunity as other members of that same class.

The Plan contemplates a Rights Offering under which only certain holders of equity interests can participate. Specifically, the Plan provides that only an "Accredited Investor" qualifies as an Eligible Equity Holder *(See Plan at page 23)*. Conversely, and by process of elimination, all "non-accredited" equity holders would be excluded.[2] This inequality in opportunity to participate in the Rights Offering violates the mandate of section 1123(a)(4) of the Bankruptcy Code and renders the plan "structurally defective." *See In re Pac. Gas & Elec. Co.*, 273 B.R. 795, 807 (Bankr. N.D. Cal. 2002) (holding that a plan that lacks any of the seven components of section 1123 of the Bankruptcy Code is "structurally defective" because the "shall" directive of section 1123(a) has not been satisfied).

To extend the Rights Offering only to certain members of the equity class while withholding the Rights Offering to otherwise identically situated members of the same equity class, depending on whether the investor is an institution or wealthy enough to be "accredited," would effect exactly the sort of unequal and disparate treatment that Section 1123(a)(4) prohibits. The Court should not allow the

---

[2] The Plan also disqualifies certain other equity holders, specifically, "if such holder or such holder's relative (as defined in § 101(45)) has been convicted of a crime (whether misdemeanor or felony) based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Petition Date in any way relating any Debtor, or (iii) if such holder is an assignee of, or counsel to, a holder excluded in the foregoing clause (ii)." It is of course reasonable to exclude certain of these members; this limited objection does not encompass particular holders who may be barred from participation for violations of securities law, or who were involved or otherwise affiliated with someone involved in the demise of the Company that necessitated the commencement of these Chapter 11 proceedings. This objection is being pressed only to the extent that certain holders of equity interests are precluded from participation solely because they lack "Accredited Investor" status. Accordingly, the Debtor's definition of "Eligible Equity Holder" should be expanded to specifically include "non-accredited" equity interest holders who have lawfully and legitimately obtained their shares.

Debtors to discriminate against holders of equity interests because of their business structure, recent earnings, and the size of their balance sheet or any other factor on which entitlement to special exemption under Rule 501 of the SEC's Regulation D would turn.

The Debtors and/or Plan Supporters may argue that the Rights Offering would be restricted to include only accredited investors simply to avoid the administrative burden of issuing stock to small holders or the time and expense of registering the securities with the SEC. But nothing in section 1123(a)(4) permits discrimination between members of the same class for *any* reason, much less for the sake of "administrative convenience," as Judge Walrath observed just last Friday. *See In re Washington Mutual Inc., et al.*, Case No. 08-12229 (Bankr. D. Del.), Doc. No. 6528 at 97 & n.46. Moreover, any appeal to administrative convenience should be met with particular skepticism here given the lengths the Plan goes to in order to extinguish (rather than convert) Old Equity Interests, to disqualify non-accredited investors from obtaining (via the Rights Offering) new equity interests in Newco, to feed to the Backstop Group any additional shares not exercised via the Rights Offering, and to allocate disproportionately excessive stakes in the litigation trust to new equity investors in Newco as compared to old equity investors in the Debtors. Whatever might be said in defense of any of these features standing alone, the peculiar combination of them in this Plan seems both conspicuous and suspect. Certainly administrative convenience does not explain why this Plan would be so solicitous towards certain equity investors even as it systemically forecloses non-accredited equity investors from retaining any persisting equity stake. Resort to administrative convenience in defending this Plan should therefore fail as a matter of law, as a matter of fact, and as a matter of basic fairness.[3]

---

[3] A plan may provide for a "convenience" class of unsecured claims that are less than (or reduced to) a specific amount, but that class usually receives payment in full to avoid the administrative burden of calculating and paying very small amounts to creditors. 11 U.S.C. § 1122(b).

Just this past Friday, January 7, 2011, this Court handed down a ruling that is instructive for present purposes. *See In re Washington Mutual Inc., et al.*, Case No. 08-12229 (Bankr. D. Del.), Doc. No. 6528. There, Judge Walrath identified a violation of Section 1123(a)(4) that foreclosed confirmation. In the *Washington Mutual* case, the Debtors had proposed a rights offering that was to be made available exclusively to certain holders of PIERS securities who held claims in excess of a $2-million threshold while excluding all others in the same class. Judge Walrath explained that such disparate treatment was impermissible under Section 1123(a)(4), ordering that the plan be amended to allow *all* PIERS claims holders the opportunity to participate in the rights offering. *Id.* (Doc. No. 6528) at 96-100. The same reasoning and outcome should obtain here.

### The Disparate Treatment of Certain Equity Interests Results in Additional Benefits to Other Members of the Same Class at the Expense of the Disparately Treated Members

It bears noting that the equity holders who are currently barred from participation in the rights offering would receive a smaller distribution as a result of their inability to participate. Not only do certain Old Equity Interests in Class 7 receive more than other members of the same class, but the members who have the opportunity and elect to participate in the Rights Offering will enjoy additional benefits at the expense of the members who currently are barred from participation. The Plan provides that, once classes 4 and 5 have been paid in full with interest, Newco will receive the lion's share of the proceeds of the $35 million in recently rejected settlement funds that are being clawed back into the estate; likewise, Newco stands to receive the lion's share of any additional funds that the SEC's may claw back from David Brooks in its pending action against Brooks for violating SOX §304. The clawback of these funds will be split 20% to Newco and 80% to the Reserve Trust, which first distributes funds to Classes 4 & 5 until those classes are paid in full. After those classes are paid in full, the Plan provides that any remaining funds will be split 70/30 between Newco and the Reserve Trust,

which would then make distributions to classes 6 & 7, in the event that any funds remain. It is the mechanics and order of the funds splitting that gives rise to one aspect of the disparate treatment. Indeed, much of the value that comes back to the estate will inure first and disproportionately to the benefit of those who own stock in the reorganized company. Accordingly, merely holding the right to participate in this Rights Offering affords critical additional value and benefits that are unavailable to "non-accredited" Old Equity Interests.

Inability to participate in the potential profits from the operations of Newco is also of concern. When the Company emerges from bankruptcy, it will mark the first time in many years that it will operate as a going concern without the dark cloud that has hovered over it for so long. Participation in the Rights Offering affords equity holders the opportunity to finally own a piece of the business unshadowed by cloud.

Notably, the ability to participate in the Rights Offering may very well be the *only* way an Old Equity Interest Holder has any realistic hope of receiving a recovery under the Plan. This decreased recovery potential of "non accredited" Old Equity Interest Holders occurs *as a direct result of* the disproportionate percentage distribution of funds between Newco and the Recovery Trust. But this submission does not call upon the Court to second guess or alter the proposed percentages. On the contrary, the easiest way to remedy the disparity in opportunity and treatment would be to equalize the terms of the Rights Offering itself by removing the restriction that an equity holder be "accredited" in order to participate. As such, non-accredited Old Equity Interest Holders would then have the right and opportunity, albeit not the obligation, to participate on equal terms in the benefits that come with continuing equity participation.

Finally, it should be noted that certain members of the Backstop Group were uniquely well positioned, by virtue of their prior, privileged perch on the Equity Committee, to spot and pursue an opportunity to structure the Plan and Rights Offering on terms favorable to them and their peers – reposing maximum value in Newco shares accessible only via the Rights Offering, restricting artificially

the ability of certain equity investors to participate in or retain shares via the Rights Offering, and ensuring that many more shares would thus be reserved for acquisition exclusively by the Backstop Group – and to do so at the expense of those least likely to object and make themselves heard, namely individual, non-accredited investors who would learn only via the fine print and at the eleventh hour that they had been frozen out from opportunity to retain any equity stake. Whatever the intentions surrounding the terms of the Rights Offering, it is troubling that an important disparity in treatment of non-accredited Old Equity Interest Holders was so long and thoroughly buried. Whereas the Equity Committee loudly trumpeted its role in championing the interests of equity holders across the board, *see, e.g.*, Doc. No. 807 at 9, 11-12; Doc. No. 808 at 3, it dropped, within its sketch of the Plan, cryptic suggestions to the effect that only "*certain* pre-petition shareholders" and "*eligible* current equity interest holders" would in fact be admitted into the Rights Offering, *see* Doc. 807 at 3 & Term Sheet (emphases added) – suggestions that would naturally be understood as contemplating exclusion only of those equity holders whose shares were tainted by criminal or other misconduct. Only now has it come to light that, in fact, the Equity Committee, presumably in concert with the Backstop Group, contemplated that all non-accredited equity holders would be excluded simply because such holders lack institutional status or adequate wealth. Suffice it to note that any such attempt to "sweeten the deal" for the Backstop Group at the unique expense of non-accredited investors who are simultaneously *most* likely to feel the pinch of the ultimate bill and *least* likely to spot that bill is unfortunate, disconcerting, and worthy of the instant objection under Section 1123(a)(4).

## CONCLUSION

For the foregoing reasons, the Court should order the Debtors to amend the Plan so as to afford all eligible "non-accredited" equity interest holders opportunity to participate on equal terms in the Rights Offering, and also order any other or additional relief the Court deems just and proper under the circumstances.

Respectfully submitted,

Dated: Woodway, TX

January 11, 2011

Rodney D. McFadden

By: /s/ Rodney D. McFadden

7833 Fairway Rd.

Woodway, TX 76712

Telephone: (979) 324-4363

Email: rdmcfadden@gmail.com

# CERTIFICATE OF SERVICE

I, Rodney McFadden, hereby certify that on the 11th day of January, 2011, I served the Limited Objection of Rodney McFadden to the Debtor's Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, upon the following parties in the manner listed below:

/s/ Rodney McFadden
RODNEY McFADDEN

## EMAIL

Laura Davis Jones, Esq.
Pachulske Stang Ziehl & Jones, LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Email: ljones@pszjlaw.com

Jane Leamy Esq.
Office of the United States Trustee
844 King Street, Ste. 2207
Wilmington, DE 19801
Email: jane.m.leamy@usdoj.gov

David B. Stratton, Esq.
James C. Carignan, Esq.
Pepper Hamilton LLP
Hercules Plaza, Ste. 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801-1709
Email: carignanj@pepperlaw.com
Email: Strattond@pepperlaw.com

David P. Simonds, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Ste. 2400
Los Angeles, CA 90067-3010
Email: dsimonds@akingump.com

Michael P. Cooley, Esq.
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Ste. 4100
Dallas, Texas 75201-4675
Email: mcooley@akingump.com

Neil B. Glassman
Charlene D. Davis
Colin R. Robinson
Justin R. Alberto
222 Delaware Avenue, Ste. 900
Wilmington, DE 19899
Email: nglassman@bayardlaw.com
cdavis@bayardlaw.com
crobinson@bayardlaw.com
jalberto@bayardlaw.com

Joseph T. Moldovan
909 Third Avenue
New York, New York 10022
Email: jmoldovan@morrisoncohen.com
mdallago@morrisoncohen.com

Kurt F. Gwynne, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801
Email: kgwynne@reedsmith.com

Edward J. Estrada, Esq.
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, New York 10022
Email: eestrada@reedsmith.com

Frederick B. Rosner, Esq.
The Rosner Law Group LLC
824 Market Street, Ste. 810
Wilmington, DE 19801
Email: frosner@team-rosner.com

**FACSIMILE**

George S. Canellos
Regional Director
Securities & Exchange Commission
New York Regional Office
3 World Financial Center, Ste. 400
New York, NY 10281-1022
Facsimile: 212-336-1348

Robert M. Hirsh, Esq.
Heike M. Vogel, Esq.
Arent Fox LLP
1675 Broadway
New York, New York 10019
Facsimile: 212-484-3990

Susan Sherrill, Esq.
Securities & Exchange Commission
Office of General Counsel-Bankruptcy
100 F. Street, N.E.
Washington, DC 20549
Facsimile: 404-842-5755

Michael R. Dal Lago
Morrison Cohen LLP
909 Third Avenue
New York, New York 10022
Facsimile: 212-735-8708