_____
|   | ) |   |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
_____ )

**SHAREHOLDER OBJECTION TO THE DEBTOR'S DISCLOSURE STATEMENT**

Comes now, Rodney McFadden, a holder of Equity Interests in Point Blank Solutions who hereby objects to the Debtor's Disclosure Statement Describing the Joint Chapter 11 Plan of Reorganization [docket #1007] filed by Point Blank Solutions, Inc., et al.  In support of my Objection, I respectfully represent as follows:

**INTRODUCTION**

The Disclosure Statement should not be approved because it does not adequately describe the circumstances surrounding <u>and</u> legal justification for the disparate treatment of certain Holders of Old Equity Interests within Class 7 who are not "Accredited Investors." Nor does it define the term "Accredited Investors" or even provide meaningful guidance as to the term's basic contours and import.  The Disclosure Statement also does not illuminate the range or timing of potential distributions to Holders of Class 6 (Class Action Claims) and Class 7 Old Equity Interests who are not "Accredited Investors" under the proposed Plan of Reorganization.

---

[1] The Debtors in the above-captioned cases, along with the last four digits of each Debtor's federal tax identification number and their respective addresses, are: Point Blank Solutions Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2' Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America *(9051),* 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

Absent further disclosure and explanation, the Disclosure Statement fails to meet the requirements of 11 U.S.C. § 1125(a) because it does not contain adequate information; therefore, it should not be approved.

## PRELIMINARY STATEMENT

On January 11, 2011, I caused my Limited Objection to the Debtor's Plan of Reorganization to be filed in this proceeding [Docket # 1016]. Within my Objection I maintained that the Plan violates §1123(a)(4) of the Bankruptcy Code because the Rights Offering contemplated under the Plan will be restricted to "Accredited Investors," thereby artificially and unnecessarily creating disparate treatment of non-accredited Old Equity Interest Holders within Class 7 based solely on a Holder's annual income or the size of his or her balance sheet. I further explained how this disparate treatment of certain Old Equity Interest Holders results in additional benefits to other members of the same class at the expense of the disparately treated members.

In order to avoid undue duplication, I have not repeated each and every one of those same arguments in this objection to the Debtor's Disclosure Statement and instead respectfully incorporate them by reference. *See* Doc. No. 1016. Suffice it to state that, for the same reasons that the Debtor's Plan violates §1123(a)(4) of the Bankruptcy Code so as to preclude confirmation as set out in my Limited Objection, the Disclosure Statement correspondingly fails muster.

The Disclosure Statement is further defective, however, in its own material omissions. These omissions relate to the treatment of holders of Class 6 and 7 and their recoveries; as will be explained, the information omitted is essential to enable Holders of Interests in these classes to determine whether to vote to accept or reject the Plan.

Notably, at the time of the submission of this Objection, the Debtors have yet to release the financial exhibits that must accompany the Plan and Disclosure Statement. I respectfully reserve the right to further amend this Objection if the release of those heretofore unfiled exhibits is further delayed such that a reasonable investor is effectively deprived of opportunity to make an informed judgment about the plan under 11 U.S.C. § 1125(a)(1). Needless to say, the timely release of these financial exhibits is imperative: the exhibits are critical in order for an investor to make a bottom-line assessment of the Plan with respect to the relative value of the recoveries they may receive under the Plan; only thus might an investor reach an informed decision as to (1) whether to accept or reject the plan and (2) whether or not to participate in the Rights Offering for the prescribed price and terms.

**THE DEBTOR'S DISCLOSURE STATEMENT DOES NOT ADEQUATELY DESCRIBE THE CIRCUMSTANCES SURROUNDING AND LEGAL JUSTIFICATION FOR THE DISPARATE TREATMENT OF CERTAIN HOLDERS OF OLD EQUITY INTERESTS WITHIN CLASS 7 WHO ARE NOT "ACCREDITED INVESTORS"**

Adequate information is defined under 11 U.S.C. § 1125(a)(1) as being:

"information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . ."

The Disclosure Statement must also "contain simple and clear language delineating the consequences of the proposed plan . . . and the possible [Bankruptcy] Code alternatives so that [parties] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

Under § 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" before the debtor may solicit acceptance of a plan of reorganization. *11 U.S.C. §1125(b)*. Because the Debtor's Disclosure Statement fails to include adequate information, it is impossible for Class 6 Claims and Class 7 Interest Holders to make an informed judgment whether to accept or reject the Debtor's Plan.

This Disclosure Statement is inadequate at the threshold because it does not even purport to define the term "Accredited Investor" or even explain its import for the benefit of the numerous individual investors who stand – very likely unbeknownst to them – to be disqualified from the Rights Offering. That omission is especially glaring because the term is so well and clearly defined under securities law, specifically Rule 501 of Regulation D, and by the Securities Exchange Commission itself on its website. *See* http://www.sec.gov/answers/accred.htm. Without attributing any intent to conspicuous omission of the definition or any hint of its contours from the Disclosure Statement, the obvious and predictable effect of the omission is to deny non-accredited investors holding equity in the Debtor of meaningful notice that they are effectively being disqualified from retaining any persisting equity interest. The omission is especially glaring and problematic given the value that reposes specifically in the Rights Offering (from which non-accredited investors stand to be disqualified) by virtue of the Plan's specific structure and terms. *See* Doc. No. 1011 at 4-7. Assuming the exclusion of non-accredited investors might ultimately be approved by this Court, notwithstanding my Limited Objection, the import and contours of that exclusion surely would need to be forthrightly and clearly disclosed.

Likewise, the reasoning and justification behind the exclusion of non-accredited investors would need to be disclosed. Despite the fact that the Debtor's Plan and Disclosure Statement

state that participation in the Rights Offering will be limited to "Accredited Investors," the Disclosure Statement itself fails to adequately disclose **why** the Rights Offering is open only to "Accredited Investors." Giving the Plan and its proponents every benefit of the doubt and assuming there is some reason why the exclusion of "non-accredited" members of Class 7, while apparently violating §1123(a)(4) of the Bankruptcy Code, is nonetheless a necessary, unavoidable and/or unobjectionable feature of the Plan, interested equity holders should be told that reason *why*.

Accordingly, I respectfully ask that the Court direct the Debtors to disclose all of the reasons why the Plan does not afford a "non-accredited" investor the opportunity to participate in the Rights Offering.

It is most unfortunate that non-accredited Old Equity Interest Holders are discovering only now that they will not be permitted to participate in the proposed Rights Offering. This is an unsettling revelation, especially considering that the Equity Committee had a large role in crafting the Plan and Plan Support Agreement and that the Equity Committee has a fiduciary duty to look after the interests of all of its constituents, not just the financially advantaged constituents who have attained "Accredited Investor" status.

For the avoidance of doubt, I do not seek to impugn the current members of the Equity Committee or any other Interested Party for that matter. I fully recognize that the disparate treatment issue may have simply been an oversight, one easily rectified. To the extent that the disparity in treatment may be well considered and justified, however, the Disclosure Statement would need to properly account for it, spelling out in plain terms both the disparity in treatment

and also the perceived warrant for it.  For the reasons explained, this Disclosure Statement does not.

## THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION REGARDING THE RANGE OF POTENTIAL RECOVERIES TO HOLDERS OF CLASS 6 CLAIMS AND CLASS 7 INTERESTS

Under § 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" before the debtor may solicit acceptance of a plan of reorganization. 11 U.S.C. § 1125(b). Although 1125(b) does also state that "The Court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets," courts have held that the precise requirements of a disclosure statement depend on the circumstances of each case, including the need for "investor protection." *E.g. Kirk v. Texaco, Inc.*, 82 B.R. 678, 683 (S.D.N.Y. 1988) (quoting H.R. Rep. No. 95-595, at 408-09 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6365).

In the instant case, there are at least three separate and distinct evaluations that must be conducted by a holder of a claim or interest in order to determine whether to vote for the Plan and whether to participate in the Rights Offering[2]. Those evaluations include: (1) the value of the reorganized Debtors without consideration of the impact of the Recovery Trust; (2) the amount, timing and ultimate value of any distribution to a claim or interest holder from the Recovery Trust as a member of their respective class (limited to Classes, 4,5,6 & 7); and (3) the amount, timing and ultimate value of any distribution to a Claim or Interest Holder from the Recovery Trust as a holder of an equity interest in the reorganized Debtors.

---

[2] Obviously this assumes an interest holder is not artificially precluded from participation in the Rights Offering, as is the case for Class 7 "Non-Accredited" Old Equity Interest Holders. In that case, there is but one source of value, the distribution, if any, from the Recovery Trust that is attributable to the Holder's Class 7 Interest ,entitling the Holder to one share in the Recovery Trust for each share of Old Equity Interest in Parent.  In such an instance, some projection of the prospects for the Recovery Trust, or at least of the aggregate stakeholders and tiers laying respective claim to the Recovery Trust, would obviously be paramount.

One piece of the puzzle that may provide significant value to a holder of a claim or interest is the value of the reorganized business. This will be of particular interest to Holders of Allowed Claims or Interests when deciding whether to participate in the Rights Offering. The financial exhibits, when filed, will be the central means of determining the value of the reorganized Debtor in the hands of a particular Interest holder who elects (if the election is available) to participate in the Rights Offering.

As the matter is not yet ripe for such a determination, this Objection does not call upon the court to second guess the percentage allocation of distributions from the Recovery Trust or the validity in the calculation of the number of shares distributed to classes 6 or 7 Interest Holders. However, the lack of any disclosure regarding the range within which the total number of Recovery Trust shares that will be issued to Class 6 Claims and Class 7 Interests might fall renders problematic the calculation of the value of distributions, if any, that may be made to Class 6 Claims and Class 7 Interest Holders.

It may be that it is impossible, at this point, for the Debtors to know, with any degree of certainty, the total number of Recovery Trust shares to be issued to Classes 6 and 7. Even so, it should not be beyond the Debtor's ability to estimate a range of possible total shares that may be issued, both in the aggregate and to each class separately. Knowing the range of possible outcomes will allow a Claim or Interest Holder to determine the denominator of the "per share" calculation of value of the Recovery Trust. It is not unreasonable to request that the Debtors make such disclosure and I therefore respectfully ask that the Court direct the Debtors to make this disclosure, to the best of their ability.

Disclosure of this information is critical to Interest Holders because the distributions from the Recovery Trust, if any, are the **only** source of value for a Class 6 Claim Holder under the Plan. Additionally, under the current Plan construct, the Recovery Trust is the **<u>only</u>** source of value and distribution for a Class 7 Old Equity Interest holder who is not an "Accredited Investor" and who otherwise does not participate in the Rights Offering. The calculation of the value of any distribution made from the Recovery Trust to holders of Class 6 Claims and Class 7 Interests requires an understanding of both the numerator and denominator in the equation. The numerator is comprised of any cash or other property that remains in the Recovery Trust after Classes 4 & 5 have been paid in full with interest. Thus, it is imperative that the Debtor's also disclose the possible range of distributions, high, median and low, that may flow thru to classes 6 & 7 in order for a Holder of such Claims or Interests to be able to reasonably estimate the value of such distributions and to determine whether such Holder will vote for the Debtor's Plan.

I respectfully ask that the Court require the Debtors to disclose the estimated timeframe, high, median and low, within which a Holder of Class 6 Claims and Class 7 Interests may receive their distributions, if any. This discussion should specifically include the timeframe within which the Debtors estimate all pending litigation or court proceedings may be completed and reduced to a non-appealable judgment or settlement, especially as to those proceedings that are potential sources of cash inflows for the Recovery Trust. An interest holder must have a reasonable estimate of this range in order to know how many years to discount back any expected cash flows, if any, from the Recovery Trust.

## CONCLUSION

As more fully discussed above, the Plan contains significant and material omissions concerning the treatment of Class 6 Claims and Class 7 Old Equity Interests that must be

addressed before the Debtor's Disclosure Statement can be approved. Otherwise, these fatal deficiencies make it impossible for Holders of Class 6 Claims and Class 7 Interests to make an informed determination on whether to accept or reject the Debtor's Plan.

For the foregoing reasons, I respectfully ask that the Court direct the Debtors to amend the Disclosure Statement so as to afford all Class 6 Claims and Class 7 Old Equity Interests the opportunity to have adequate information in order to make an informed determination on whether to accept or reject the Debtor's Plan, and also order any other or additional relief the Court deems just and proper under the circumstances.

Respectfully submitted,

Dated: Woodway, TX

January 21, 2011

Rodney D. McFadden

By: /s/ Rodney D. McFadden

7833 Fairway Rd.

Woodway, TX 76712

Telephone: (979) 324-4363

Email:rdmcfadden@gmail.com

## CERTIFICATE OF SERVICE

I, Rodney McFadden, hereby certify that on the 21st day of January, 2011, I served the Shareholder Objection to the Debtor's Disclosure Statement Pursuant to Chapter 11 of the United States Bankruptcy Code, upon the parties in the attached service list:

_/s/ Rodney McFadden_____
RODNEY McFADDEN

<u>Counsel for the Debtors</u>
Laura Davis Jones, Esq.
Timothy Cairns, Esq.
Pachulske Stang Ziehl & Jones, LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
      and
David M. Bertenthal, Esq.
Joshua M. Fried, Esq.
Pachulski Stang Ziehl &Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111

<u>Counsel for the Creditors' Committee</u>
Frederick B. Rosner, Esq.
Brian L. Arban, Esq.
Messana Rosner & Stem, LLP
1000 N. West Street, Ste. 1200
Wilmington, DE 19801
      and
Robert M. Hirsh, Esq.
George Angelich, Esq.
Arent Fox LLP
1675 Broadway
New York, New York 10019

<u>Counsel for the Equity Committee</u>
Joseph T. Moldovan
Morrison Cohen LLP
909 Third Avenue
New York, New York 10022
     and
Neil B. Glassman
Bayard, P.A.
222 Delaware Avenue, Ste. 900
Wilmington, DE 19899

<u>Counsel to Privet Opportunity Fund I, LLC and Privet Fund Management LLC</u>
Edward J. Estrada, Esq.
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, New York 10022
     and
Kurt F. Gwynne, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

Counsel to Prescott Group Capital Management
Richard Palacio, Esq.
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

Counsel to Lonestar Capital Management, LLC
David B. Stratton, Esq.
Pepper Hamilton LLP
Hercules Plaza, Ste. 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801-1709
        and
David P. Simonds, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Ste. 2400
Los Angeles, CA 90067-3010
        and
Michael P. Cooley, Esq.
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Ste. 4100
Dallas, Texas 75201-4675

United States Trustee
844 King Street, Ste. 2207
Lock box #35
Wilmington, DE 19801