IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS INC., *et al.*[1] | ) | Case No. 10-11255 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**Response Deadline: March 3, 2011 at 4:00 p.m. (prevailing Eastern time)**
**Hearing Date: March 10, 2011 at 3:00 p.m. (prevailing Eastern time)**

**DEBTORS' (I) OBJECTION TO THE CLAIMS FILED BY WAYNE KOLBECK
FOR (A) $3 BILLION ON ACCOUNT OF THE DEBTORS' ALLEGED VIOLATIONS
OF THE FALSE CLAIMS ACT, COMMON LAW FRAUD, MISTAKE, UNJUST
ENRICHMENT AND BREACH OF CONTRACT [CLAIM NO. 462]; AND
(B) $743,785.30 ON ACCOUNT OF THE DEBTORS' WRONGFUL TERMINATION
OF KOLBECK IN PURSUING POSSIBLE FALSE CLAIMS ACT VIOLATIONS, AND
(II) REQUEST FOR ATTORNEYS FEES AND EXPENSES TO BE AWARDED AGAINST
KOLBECK PURSUANT TO SECTION 3730(D)(4) OF THE FALSE CLAIMS ACT**

The above-captioned debtors and debtors in possession (the "Debtors") object (the

"Objection") to the allowance of the $3 billion "whistle blower claim" and $734,785.30

"retaliatory firing claim" filed against Point Blank Solutions, Inc. ("Point Blank") by its former

employee – Wayne B. Kolbeck ("Kolbeck"). Kolbeck was Point Blank's Director of Quality

Assurance and Engineering, until Point Blank terminated him for cause, due to his multiple,

uncontrollable outbursts in front of vendors, clients and board members. Kolbeck's claims are

based upon alleged violations of the False Claim Act (defined below) by Point Blank in

connection with all of Point Blank's solicitations, contracts and delivery orders to the

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

Department of Defense between 1998 and 2008 consisting of over 2.5 million bullet proof vests and component parts thereto. The United States, which is the real party in interest in all False Claim Act actions, decided not to intervene in the action filed by Kolbeck because (according to Kolbeck), the issues in the case were "not material."

The Debtors object to the allowance of Kolbeck's claims for four reasons.

First, there is no factual basis for Kolbeck's alleged $3 billion claim. The United States apprised Kolbeck of this in connection with its decision not to intervene in Kolbeck's case because the issues were "not material." The United States did not include any of Kolbeck's alleged claims in the False Claims Act complaint that the United States filed against the Debtors (described below). The Debtors submit that the *de facto* rejection of Kolbeck's claims speaks volumes. If the United States would have viewed Kolbeck's claims as having merit, the United States would presumably have (a) taken over everything by intervening, or (b) would have included Kolbeck's claims in its complaint filed on October 7, 2010. The United States did neither. Rather, the United States advised Kolbeck that his claims were "not material." Kolbeck's response to the United States was to accuse the United States of taking part in a cover-up. That response demonstrates the rationality – or lack thereof – of Kolbeck's $3 billion claim.

Second, Kolbeck's $3 billion claim should be disallowed because Kolbeck has not asserted a proper claim under the False Claims Act. A party filing a claim under the False Claims Act must comply with Rule 9(b) of the Federal Rules of Civil Procedure, and plead allegedly fraudulent acts with specificity. Although Kolbeck alleged over 2.5 million violations of the False Claim Act, he has not for a single transaction: (i) specified the exact statements that were allegedly fraudulent; (ii) identified the party making the fraudulent statements; (iii) stated

where and when the statements were made; and (iv) explained why the statements were false for the transaction in question. Kolbeck's general allegation that every transaction involving bullet proof vests and components thereof between 1998 and 2008 violated the False Claims Act fails to meet the Rule 9(b) pleadings standard.

Third, even if there was a factual basis for Kolbeck's alleged claim (which there is not), the penalty component of the claim (which is $2 billion) would be subordinated. *See In re Bicoastal Corp.*, 134 B.R. 50 (Bankr. M.D. Fla. 1991) (government not allowed to treble its allowed claim pursuant to the False Claims Act).

Finally, there is no basis for Kolbeck's alleged retaliatory firing claim for $743,785.30 for two reasons. First, Kolbeck's alleged claims against the Debtors for the violation of the False Claim Act are without merit. Second, Kolbeck was not terminated for filing a False Claims Act complaint against the Debtors. He was terminated for cause due to multiple, uncontrollable outbursts that he had in front of vendors, clients and board members. The retaliatory firing claim is no more rational than the False Claim Act claim. Moreover, no portion of the alleged retaliatory firing complaint is entitled to priority, as asserted by Kolbeck. None of the priority sections under section 507 of the Bankruptcy Code are applicable to Kolbeck's situation, and Kolbeck did not even identify which priority claim provision of the Bankruptcy Code he was relying upon.

In addition to objecting to Kolbeck's claims, the Debtors request that the Court award the Debtors their attorneys fees and expenses pursuant to section 3730(d)(4) of the False Claims Act. Kolbeck's alleged claims are frivolous and vexatious. The Debtors' legitimate creditors should not have to pay the attorneys' fees and expenses that will be incurred in

opposing Kolbeck's meritless claims. In support of the Objection, the Debtors respectfully states as follows:

## Jurisdiction

1.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334(b). Venue is proper under 28 U.S.C. § 1408. This is a core matter under 28 U.S.C. § 157(b)(2).

2.    The statutory predicates for the relief requested herein are sections 105(a), and 502(b)(1), and 726(a)(1) and (4) of title 11 of the United States Code (the "Bankruptcy Code"), and sections 3729 – 3733 of title 31 (the "False Claims Act"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), incorporated into Bankruptcy Rule 7009.

## Background

3.    Prior to his termination, Kolbeck was the Director of Quality Assurance and Engineering for Debtor Point Blank Solutions, Inc. ("Point Blank").

4.    On November 13, 2008, Kolbeck filed a complaint commencing that certain action entitled *United States Ex Rel. Wayne B. Kolbeck vs. Point Blank Solutions, Inc. (f/k/a DHB Industries, Inc.), Point Blank Body Armor, Inc., David H. Brooks, Sandra L. Hatfield, and Larry Ellis*, Case No. 1:08cv1187-TSE/IDD (the "Whistleblower Action") in the United States District Court for the Eastern District of Virginia (the "District Court").[2] On June 3, 2009, Kolbeck filed an amended complaint [Docket No. 8] (the "Amended Complaint") against Point

---

[2] Although Debtors Point Blank and PBBA were both named as defendants in the Amended Complaint, Kolbeck only filed claims in the bankruptcy cases against Point Blank.

Blank, Point Blank Body Armor, Inc. ("PBBA"), David H. Brooks ("Brooks"), Sandra L. Hatfield ("Hatfield"), and Larry Ellis ("Ellis"). A copy of the Amended Complaint is attached hereto as Exhibit A.

5.    Pursuant to the Amended Complaint, Kolbeck alleges that Point Blank, PBBA, Brooks, Hatfield, and Ellis (collectively, the "Defendants") defrauded the United States by making false representations in connection with bullet proof vests and component parts thereof that were being manufactured by Point Blank and sold to the United States military.

6.    According to Kolbeck, false representations were made in connection with all of Point Blank's solicitations, contracts and delivery orders from the Department of Defense between 1998 and 2008 on account of over 2.5 million bullet proof vests and component parts for which Point Blank was paid over $1 billion. Amended Complaint, ¶ 34.

7.    Due to these alleged acts and violations, Kolbeck seeks the entry of a judgment against the Defendants for: (1) violation section 3729(a)(1) of the False Claims Act for knowingly presenting or causing to be presented false or fraudulent claim to the United States for payment; (2) violation of section 3729(a)(2) of the False Claims Act for knowingly making or causing to be made false statements in order to get a false claim paid by the United States; (3) common law fraud; (4) mistake; (5) unjust enrichment; and (6) breach of contract. Amended Complaint, Counts One – Six.

8.    On April 3, 2009, Point Blank terminated Kolbeck's employment for cause. A copy of the termination letter (the "Termination Letter") is attached hereto as Exhibit B.

9. On December 18, 2009, the United States filed its notice of intention [Docket No. 12] (the "Notice of Intention") to not intervene in the Whistleblower Action. A copy of the Notice of Intention is attached hereto as Exhibit C.

10. On April 2, 2010, the District Court entered an order [Docket No. 24] (the "Extension Order") extending the time period for Kolbeck to serve the Amended Complaint and a summons upon the Defendants to July 6, 2010.[3] A copy of the Extension Order is attached hereto as Exhibit D.

11. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 14, 2010. On April 21, 2010, Kolbeck filed a suggestion of bankruptcy [Docket No. 26] (the "Suggestion of Bankruptcy") in the Whistleblower Action. Due to the Debtors' bankruptcy filing, the Amended Complaint and summons have never been served on Point Blank and PBBA.

12. On August 13, 2010, Kolbeck filed claim number 462 (the "Whistle Blower Claim"). A copy of the Whistle Blower Claim is attached hereto as Exhibit E. The Whistle Blower Claim consists of a two page proof of claim form that seeks allowance of a $3 billion general unsecured claim. The alleged basis for the claim is the Amended Complaint, a copy of which was attached to the proof of claim form.

13. On August 13, 2010, Kolbeck also filed claim number 452 (the "Retaliatory Firing Claim"). A copy of the Retaliatory Firing Claim is attached hereto as Exhibit F. The Retaliatory Firing Claim consists of a two page proof of claim form that seeks the

---

[3] Under the False Claims Act, a complaint filed by a private person is not served on the defendant until the court so orders. False Claims Act, § 3730(b)(2).

allowance of a $743,785.30 unsecured priority claim. (Although Kolbeck listed the entire amount of the claim as being entitled to priority, he did not specify the provision of section 507(a) under which the claim would be entitled to priority.) As the basis for the claim, the proof of claim form references an Exhibit A thereto, which explains that Kolbeck's claim is based upon retaliatory firing, due to his activity as a whistle blower, and states that Kolbeck is entitled to double back pay as provided for by statute ($278,172.70), future wages over the next four years of $98,178.65 per year ($392,714.60), Social Security loss ($62,898) and attorney's fees to date ($10,000). In addition, Exhibit A to the Retaliatory Firing Claim also has four exhibits attached to it, which consist of: (1) Exhibit 1 – an email dated October 26, 2008 from Kolbeck to Defendant Ellis; (2) Exhibit 2 – a copy of the Termination Letter; (3) Exhibit 3 – a draft complaint against PBBA for damages on account of the alleged retaliatory firing; and (4) a copy of the original complaint filed in the Whistler Blower Action.

14.     Subsequent to the Debtors' bankruptcy filings, Kolbeck's counsel moved to withdraw from the Whistle Blower Action. In response thereto, the District Court gave Kolbeck time in which to find replacement counsel before dismissing the case.

15.     On September 27, 2010, Kolbeck filed a letter (the September 27 Correspondence") with the District Court [Docket No. 48] in response to the potential dismissal of the Whistle Blower Action. A copy of the September 27 Correspondence is attached hereto as Exhibit G. Therein, Kolbeck, among other things, states that "[t]he DOJ … declined to intervene due to representations by the DOD Acquisition personnel that the issues in the case are 'not material.'"(emphasis added). In addition, Kolbeck accused the Government of covering up

fraud. ("As a whistleblower, I am frustrated that the Government would choose to cover up this fraud rather than honestly and thoroughly investigate my claim...").[4]

16.     On October 8, 2010, the District Court entered an order [Docket No. 51] (the "Dismissal Order") granting Kolbeck's motion to voluntarily dismiss Defendants Brooks, Hatfield and Ellis from the Whistle Blower Action.[5]

### The Government's Investigations and Actions Against the Defendants

17.     Defendants Point Blank, Brooks and Hatfield have been the subject of extensive investigation and, in certain cases, litigation by the United States.

18.     SEC Actions. Point Blank is the subject of an investigation by the Securities Exchange Commission (the "SEC") and the United States Attorney's Office for the Eastern District of New York into alleged violations of federal securities laws stemming from accounting irregularities and disclosure issues from 2003 through 2005. In addition, the SEC filed a complaint in the United States District Court for the Southern District of Florida for injunction and other relief against Defendant Brooks in that certain action entitled *Securities and Exchange Commission v. David H. Brooks*, Case No. 07-61526 and against Hatfield in *Securities and Exchange Commission v. Dawn M. Schlegel and Sandra Hatfield*, Civil Action No. 06-61251.

---

[4] Kolbeck's counsel subsequently withdrew the motion to withdraw, and the District Court did not dismiss the case.

[5] Pursuant to the Order, the District Court also (i) directed Kolbeck to file a brief addressing the question of whether the case should be stayed in light of the pending bankruptcy cases, and (ii) authorized the Government, if it wished, to file a responsive brief thereto. Both Kolbeck and the Government filed briefs. The District Court has not yet ruled on the matter.

19.     The Criminal Actions.  In 2007, the United States Attorney's Office for the Eastern District of New York indicted Defendants Brooks and Hatfield on charges of securities fraud, conspiracy, mail and wire fraud, insider trading, and obstruction of justice.  On September 14, 2010, Defendant Brooks was convicted of:  conspiracy to commit securities fraud; securities fraud; conspiracy to commit mail and wire fraud; mail fraud; wire fraud; six counts of insider trading; conspiracy to obstruct justice; obstruction of justice; and material misstatements to auditors.  On September 14, 2010, Defendant  Hatfield was convicted of:  conspiracy to commit securities fraud; securities fraud; conspiracy to commit mail and wire fraud; three counts of insider trading; conspiracy to obstruct justice; and obstruction of justice.

20.     The Government's False Claims Act Claims.  On October 7, 2010, the United States filed its own False Claims Act case against the Debtors in the United States District Court for the District of Columbia in that certain action entitled *United States of America v. Point Blank Solutions, Inc., Point Blank Body Armor, Inc., and Protective Apparel Corporation of America*, Case No. 10-cv-0716-RWR (the "US FCA Action").  A copy of the US FCA Action is attached hereto as Exhibit H.  The US FCA Action was filed after the United States concluded its industry-wide investigation into the use of Zylon, a fabric manufactured by Toyobo Co. Ltd. and Toyobo America and used within some ballistic-resistant vests.  Similar actions have been filed by the Untied States against other companies or manufacturers using Zylon in their products.  These related cases, to date, consist of: *United States v. Second Chance Body Armor, Inc., et al.* (D.D.C. No. 04-0280); *United States v. Toyobo Co. Ltd., et al.* (D.D.C. No. 07-1144 RWR); *United States v. Honeywell Int'l., Inc.* (D.D.C,. No. 08-961 (RWR); and *United States v. First Choice Armor & Equipment, Inc., et al.* (D.D.C. No. 09-01458 RWR).

Additionally, the United States has entered into settlement agreements with other companies and manufacturers using Zylon in their products. These related matters, to date, consist of: Lincoln Fabrics, Ltd., Hexcel Corp., Armor Holdings Products, LLC, and Protective Products International, Inc.

21.     Pursuant to the US FCA Action, the United States seeks damages under the False Claim Act against Point Blank in connection with the purchase of approximately 16,688 Zylon vests. In addition, the United States had filed a claim against Debtor Point Blank Body Armor, Inc., and asserts a civil penalty of not less than $5,000 and not more than $10,000 for each false claim or false statement and damages for breach of contract, payment by mistake and unjust enrichment. None of the claims asserted by Kolbeck in the Whistle Blower Action are included in or relate to the US FCA Action or in the above-noted claim filed by the United States.

### Objection to Claims / Request for Attorneys' Fees and Expenses

22.     The Debtors object to the allowance of the Whistle Blower Claim. As a threshold matter, the claim should be disallowed because Kolbeck failed to plead a valid claim under the False Claim Act pursuant to Rule 9(b) of the Federal Rules. As set forth in detail below, Kolbeck did not for any of the 2.5 million vests allegedly at issue: (i) specify the fraudulent statement being made to the Government; (ii) identify the party making the statement; (iii) state where and when the statements were made; and (iv) explain why the statements were fraudulent. Moreover, as communicated by the United States to Kolbeck, the Whistle Blower Claim does not contain issues that are "material." Finally, and rather tellingly, the United States did not assert any of the claims raised by Kolbeck in the US FCA Action.

23.     The Debtors object to the allowance of the Retaliatory Firing Claim. Kolbeck was not terminated for filing the Whistle Blower Action.  In fact, at the time of his April 3, 2009 termination, Kolbeck had not even served the Whistle Blower Action on the Debtors. Kolbeck was fired for the repeated multiple, uncontrollable outbursts that he had in front of vendors, clients and board members.  These outbursts were damaging to the Debtors, and provided cause for Kolbeck's termination.  Additionally, Kolbeck's claim is not entitled to priority under section 507 of the Bankruptcy Code.

24.     Third, even if there was a factual basis for Kolbeck's alleged claim (which there is not), the penalty component of the claim (which is $2 billion) should be subordinated.

25.     Finally, the Debtors request the allowance of attorneys' fees and expenses against Kolbeck pursuant to section 3730(d)(4) of the False Claims Act.  Kolbeck's ongoing prosecution of the Whistle Blower Claim is clearly frivolous and vexatious.  Kolbeck has not even plead a proper violation of the False Claim Act, despite having filed an Amended Complaint in the Whistle Blower Action and having been represented by two separate law firms. Moreover, the United States told Kolbeck that the issues raised in the Amended Complaint were not "material."  Given these circumstances, there is no basis for Kolbeck's decision to prosecute the Whistle Blower Claim.  The Debtors legitimate creditors should not have to pay for the cost of disallowing Kolbeck's frivolous and vexatious claims.

### Basis For Relief

26.     Section 502(b)(1) of the Bankruptcy Code provides in relevant part that:

[T]he court, after notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date

of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor or property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured ...

*11 U.S.C. § 502(b)(1).* Under the statute, "a claim against a debtor's estate is allowable ... only to the extent that such claim is enforceable under any agreement or applicable law (generally state law)[.]" *L.T. Ruth Coal Co., Inc. v. Big Sandy Coal and Coke Co., Inc. (In re L.T. Ruth Coal Co., Inc.)*, 66 B.R. 753, 766 (Bankr. E.D. Kenn 1986). "Claims that are unenforceable against the debtor or against property of the debtor under any agreement ... are simply not allowable for purposes of a right to share in a distribution of the debtor's assets. *5 Collier on Bankruptcy (15th Ed. Rev'd) ¶ 502.03[2][B][iii].*

## I.    **The Whistle Blower Claim is Without Merit and Should be Disallowed.**

27.    Kolbeck's $3 billion Whistle Blower Claim is without merit and should be disallowed. The Whistle Blower Claim consists solely of the general allegations set forth in the Amended Complaint. There is no evidence attached to the Whistle Blower Claim that actually supports or substantiates any of the claims set forth in the Amended Complaint.

28.    The United States – which is the true party in interest in all whistle blower actions –has (i) indicted and convicted Brooks and Hatfield, (ii) conducted an SEC investigation of Point Blank, (iii) commenced its own False Claims Act action against Point Blank (and filed proofs of claim based thereon) based upon unrelated allegations, and (iv) filed multiple claims against the Debtors in these cases. Through these actions, the United States has proven its ability to prosecute claims against the Debtors and the Debtors' former officers by all means available.

The United States decided (i) not to intervene in the Whistle Blower Action, and (ii) not to include similar claims in the US FCA Action. In addition, the United States told Kobeck that the issues in his Whistle Blower Action were "not material." The United States' actions demonstrate that the Whistle Blower Claim lacks merit.

**II      The Whistle Blower Claim Should Be Disallowed Because Kolbeck Has Not Alleged Facts in the Amended Complaint <u>Sufficient to Support a Claim Under the False Claims Act</u>.**

      29.      Under bankruptcy law, "[t]he burden of proof for claims brought in the bankruptcy court under 11 U.S.C. § 502(a) rests on different parties at different times." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). As stated by the Third Circuit:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "prima facie" valid... The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie case. It is often said that the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

Id. at 173 - 74 "The burden of persuasion is always on the claimant." *Id.*

      30.      In this case, the Whistle Blower Claim should be disallowed because – as a threshold matter – Kolbeck has not alleged facts in the Amended Complaint sufficient to support a claim under the False Claim Act. This is so because claims under the False Claims Act a complaint must be plead with particularity pursuant to Rule 9(b) of the Federal Rules. *See United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998); *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476 – 77 (2d Cir. 1995) (Because

"[i]t is self-evident that the FCA is an anti-fraud statute" and therefore "claims brought under the FCA fall within the express scope of Rule 9(b)[.]")

31.     Rule 9(b) of the Federal Rules requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "This heightened pleading standard requires plaintiffs to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Stated differently, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of ... fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002).

32.     In order for a plaintiff to establish a *prima facie* claim under section 3729(a)(1) of the False Claim Act (known as the false claims prong of the FCA), the plaintiff must show that:  (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent. *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, (3d Cir. 2004). To establish a prima facie claim under section 3729(a)(2) of the False Claim Act (known as the false statement prong of the FCA), the relator must show that "the defendant made or used (or caused someone else to make or use) a false record in order to cause the false claim to be actually paid or approved." *Id.*

33.     In order to satisfy the Federal Rule 9(b) pleading standard for a claim

under section 3729 of the False Claim Act, a complaint must:

> (1) specify the statements that the plaintiff contends were fraudulent;
>
> (2) identify the speaker;
>
> (3) state where and when the statements were made; and
>
> (4) explain why the statements were fraudulent.

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  As noted by the First

Circuit:

> In a case [alleging FCA violations], details concerning the dates of the claims, the
> content of the forms or bills submitted, their identification numbers, the amount of
> money charged to the government, the particular goods or services for which the
> government was billed, the individuals involved in the billing, and the length of
> time between the alleged fraudulent practices and the submission of claims based
> on those practices are the types of information that may help a relator to state his
> or her claim with particularity.

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 233 (1st Cir. 2004).

34.     Accordingly, under Rule 9(b), plaintiffs must identify with particularity

the precise claims submitted to the government that are alleged to be false or fraudulent.  *United

States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432, 439-40 (3d Cir. 2004) (concluding that

plaintiff's failure to present evidence of the actual submission of a single false claim to Medicaid

is fatal to the *qui tam* action); *United States ex rel. Clausen v. Lab Corp. of Am., Inc.*, 290 F.3d

1301, 1311 (11th Cir. 2002) (affirming dismissal of complaint for failure to comply with Rule

9(b) where relator failed to identify any specific claims  that were submitted to the government).

*United States ex res. Schumann v. Continental Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008)

("To plead a false claim successfully under this section, a plaintiff must state the factual basis for

the fraudulent claim with particularity and cannot rely on speculation or conclusional allegations.")

35.     Here, Kolbeck has failed to allege facts under Federal Rule 9(b) in the Amended Complaint necessary to establish a violation of sections 3729(a)(1) and (2) of the False Claims Act.  Pursuant to the Amended Complaint, Kolbeck has alleged over 2.5 million transactions pursuant to which the Defendants allegedly made false claims in violation of sections 3729(a)(1) and (2).  Kolbeck has not, however:  (i) specified the exact statements in the transactions that were fraudulent; (ii) identified the party making the fraudulent statements; (iii) stated where and when the statements were made; and (iv) explained why each of the statements was false for each of the transactions in question.  None of this required specificity is present in the Amended Complaint.  Instead, the Amended Complaint relies upon general allegations of fraud that are allegedly applicable to every transaction that the Debtors had with the Department of Justice over a ten year period on account of over 2.5 million bullet proof vests and the component parts thereto that.  Such broad and general allegations do not satisfy the mandatory pleading requirements under Federal Rule 9(b), and therefore do not give rise to a valid claim under section 502 of the Bankruptcy Code.  Since Kolbeck failed to allege facts sufficient to support the Whistle Blower Claim, his proof of claim is not *prima facie* valid, and the Whistle Blower Claim should be disallowed.

36.     Accordingly, the Whistle Blower Claim should be disallowed and expunged from the claims register.

## III. If Kolbeck Had a Valid Claim (Which He Does Not), the $2 Billion Penalty Component of the Claim Should be Subordinated

37.    For all of the reasons noted above, Kolbeck does not have a valid claim against Point Blank. However, assuming for the sake of argument that Kolbeck did, the penalty portion of such claim (i.e. the trebling of damages under section 3729(a)(1) of the False Claims Act) would be subject to subordination. *See* 11 U.S.C. § 726(a)(1) and (a)(4); *See In re Bicoastal Corp.*, 134 B.R. 50 (Bankr. M.D. Fla. 1991).

38.    In *Bicoastal*, the Court was called upon to estimate the amount of the claim of the United States on account of the debtor's violation of the False Claims Act. After estimating the amount of the claim, the Court specifically noted that the treble damages portion of the claim sought by the United States would not be allowed because it was a penalty. *Id.* The Court explained that:

> Although Chapter 11 of the Bankruptcy Code makes no provision for the allowance claims based on a fine, penalty, or punitive damages, these are dealt with under § 726(a)(4) of the Bankruptcy Code. Section 726(a)(4) of the Bankruptcy Code provides in pertinent part that claims for fines, penalties and punitive damages are to be severed into two parts: the portion of the claim which constitutes an actual pecuniary loss and that portion of the claim which constitutes a penalty for wrongdoing. The portion of the claim which is based on a penalty is then subordinated to the portion based on actual pecuniary loss. It is clear that even though Chapter 11 of the Bankruptcy Code does not specifically provide for the treatment of claims based on a fine, penalty, or punitive damages, the Code has traditionally not favored such claims.

*Id.* The Court further explained that "[t]his approach has been justified on the basis that an allowance of a claim based on penalty punishes innocent parties, i.e., the entire body of creditors, and not the actual wrongdoer who deserves the punishment and the entity which the Statute intended to deter and to punish." *Id.* (citing *In re A.H. Robins Co.*, 89 B.R. 555 (Bankr. E.D. Va.

1988); *In re GAC*, 6 B.R. 981 (S.D.Fla. 1980) *aff'd* 681 F.2d 1295 (11th Cir. 1982). Thus, the Court denied the United States' request to treble the amount of its claim under the False Claims Act.

      39.    If Kolbeck's alleged claim was found to have a valid claim, then, as in *Bicoastal*, the Court should disallow Kolbeck's request to treble such amount under the False Claims Act, because such trebling would impermissible punish the Debtors' other creditors.

## IV.    The Retaliatory Firing Claim Should be Disallowed Because Kolbeck was Terminated for Cause

      40.    Kolbeck was not terminated as a result of his filing the Whistle Blower Action. Kolbeck, instead, was terminated by the Debtors due to his ongoing multiple emotional outbursts in front of vendors, clients and board members.

      41.    The history of Kolbeck's outbursts are set forth in the Termination Letter attached hereto as Exhibit B. Kolbeck was terminated for cause because, as set forth in the Termination Letter, Kolbeck had an emotional outburst during a meeting between the Debtors and certain officials from the prison industry that provides services to the Debtors. Kolbeck's outburst caused the Debtors considerable concern. As a result of Kolbeck's behavior, the Debtors' management invited the prison industry officials back to offer an official apology. This caused considerable embarrassment for the Debtors. In August, 2008, Kolbeck had another uncontrollable outburst while members of the new board of directors were touring the Deerfield Facility. This event caused one of the members on the tour to comment on Kolbeck's unprofessionalism. On March 25, 2009, E. Pearson, the Vice President of Standards and Compliance for Point Blank, spoke with Kolbeck and instructed him not to become agitated or

irate. Two days later, on March 27, 2009, in the presence of visiting customers from PM Soldier Survivability and the Defense Contracting Management Agency, Kolbeck again displayed personal traits that were discourteous, disruptive and irresponsible. Kolbeck was terminated on April 3, 2009, as a result of his above-noted actions.

42.     Kolbeck does not have a valid cause of action against the Debtors on account of his termination for cause as a result of his above-noted actions. Kolbeck does not have a valid claim against the Debtors for retaliatory firing under the False Claims Act because he was terminated for cause. This is especially so given that Kolbeck had not even served the Complaint upon the Debtors as of the time of his termination. Kolbeck's attempt to use the False Claims Act to manufacture a retaliatory firing claim to harass the Debtors should not be allowed, especially in light of the fact that Kolbeck has not even stated a claim pursuant to Federal Rule 9(b) under the False Claims Act.

43.     In addition, the Debtors note that no part of Kolbeck's alleged $743,785.30 Retaliatory Firing Claim is entitled to priority under section 507(a). Although Kolbeck failed to specify which provision of section 507(a) of the Bankruptcy Code would entitle his Retaliatory Firing Claim to priority, the only provisions that could apply on their face are sections 507(a)(4) for unpaid wages, salary and commissions earned within 180 days of the Petition Date, or 507(a)(5) for contributions to an employee benefit plan arising from services rendered within 180 days of the Petition Date. Since Kolbeck was terminated more than a year before the Petition Date, he cannot satisfy the 180 day requirement in sections 507(a)(4) and (5) of the Bankruptcy Code. Therefore, no part of the Retaliatory Firing Claim (assuming for the sake of argument that it was valid) is entitled to priority treatment.

44. Accordingly, the Retaliatory Firing Claim should be disallowed.

**V.    The Debtors Should be Awarded Attorneys' Fees and Expenses Against Kolbeck Under Section 3730(d)(4) of the False Claims Act Because Kolbeck's Prosecution of the Whistle Blower Claim Was Clearly Frivolous and Vexatious**

45.    The False Claims Act recognizes the potential for abuse under the act, and therefore includes a provision that allows for defendants to be awarded attorneys' fees and expenses under certain circumstances in cases where the government chooses not to intervene. Section 3730(d)(4) of the False Claims Act states that:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

False Claims Act, § 3730(d)(4).

46.    Here, on December 18, 2009, the United States filed its Notice of Intention to not intervene, and told Kolbeck that it was not intervening because the issues in his alleged claim were "not material." Despite the United States' assessment, Kolbeck continued to prosecute the Whistle Blower Action in the District Court, and filed the Whistle Blower Claim and the Retaliatory Firing Claim in the Debtors' bankruptcy cases. Both claims are without merit and should be disallowed for the reasons set forth above.

47.    If Kolbeck's claims are disallowed, then the Debtors' request that the Court award the Debtors' attorneys' fees and expenses against Kolbeck pursuant to section 3730(d)(4) of the False Claims Act.

48.    "A claim is frivolous if it has no arguable support in existing law or any reasonably based suggestion for its extension." *Farguson v. MBank Houston, N.A.*, 808 F.2d

358, 359 (5th Cir. 1986). "A claim is vexatious when the plaintiff brings the action for an

improper purpose, such as to annoy or harass the defendant." *Pfingston v. Ronan Eng'g Co.*, 284

F.3d 999, 1006 (9th Cir. 2002). Either ground is independently sufficient to support an award of

attorneys' fees under section 3730(D)(4) of the False Claims Act. *United States ex rel., Mikes v.*

*Straus*, 274 F.3d 687, 704-05 (2d Cir. 2001). "Under the proper circumstances, a single defect

may merit a ruling on frivolousness or vexatiousness." *United States v. ex rel., Bain v. Georgia*

*Gulf Corp.*, 208 Fed.Appx. 280, 2006 WL 3093637 *3 (C.A.5 (LA)). C.f. *Martel v. Maxxam*

*Inc.*, 211 F.3d 594 (5th Cir. 2000) (upholding ruling that suit was frivolous solely on basis that

plaintiff knew he was not the original source of information).

     49.     Here, Kolbeck's ongoing prosecution of the Whistle Blower Claim and the

Retaliatory Firing Claim are frivolous and vexatious. Kolbeck does not even properly state a

single claim for a violation of the False Claims Act under Federal Rule 9(b) for any of the

alleged 2.5 million violations that are supposed to have occurred between 1998 and 2008.

Moreover, the United States itself told Kolbeck that the issues in his claim were "not material."

Since the Whistle Blower Claim has no arguable support in existing law, or any reasonably based

suggestion for its extension, and does not concern issues that are "material" – Kolbeck's ongoing

prosecution of the Whistle Blower Claim – and the Retaliatory Firing Claim that is predicated

upon the Whistle Blower Claim – are frivolous and vexatious. Moreover, the treble damages

portion of the claim is subject to subordination under the Bankruptcy Code. *See In re Bicoastal*,

134 B.R. 50 (Bankr. M.D. Fla. 1991) (government not allowed to treble its allowed claim

pursuant to the False Claims Act).

50.     Accordingly, the Court should award the Debtors' attorneys' fees and expenses against Kolbeck under section 3730(d)(4) of the False Claims Act so that the Debtors' other creditors are not forced to pay for the disallowance of Kolbeck's improper claims.

### Reservation of Rights by the Debtors

51.     The Debtors reserve the right to object to the Whistle Blower Claim and the Retaliatory Firing Claim in the future on any additional ground (including the subordination or disallowance of any damages claims that constitute penalties), and to amend, modify, and/or supplement this Objection. This Objection does not serve as a waiver of any claims that the Debtors may have against Kolbeck. This Objection does not constitute an admission, affirmation or statement of liability or any potential liability with respect to the Debtors.

### Notice

52.     Notice of the Objection has been served upon: (i) Kolbeck and his counsel in the Whistle Blower Action; (ii) all parties filing requests for service under Bankruptcy Rule 2002, which includes the United States District Attorney for the District of Delaware; (iii) Peter S. Hyun, Esquire, who is the Assistant United States Attorney who has most recently appeared in the Whistle Blower Action; (iv) counsel to (a) Prescott Group Capital Management, LLC, (b) Privet Opportunity Fund I, LLC, and (c) PB Funding, LLC; (v) counsel to the Official Committee of Unsecured Creditors; and (vi) counsel to the Official Committee of Equity Security Holders.

## Compliance With Local Rule 3007-1

53.     The Debtors, by and through their counsel, state that, to the best of their knowledge, the Objection complies with Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully requests that the Court enter an order

(i) disallowing the Whistle Blower Claim, (ii) disallowing the Retaliatory Firing Claim, and

(iii) awarding the Debtors attorneys' fees and expenses against Kolbeck pursuant to section

3730(d)(4) of the False Claims Act as set forth in the Objection.

Dated: January 25, 2011        PACHULSKI STANG ZIEHL & JONES LLP

                                Laura Davis Jones (Bar No. 2436)
                                Alan J. Kornfeld (CA Bar No. 130063)
                                David Bertenthal (CA Bar No. 167624)
                                Curtis A. Hehn (Bar No. 4264)
                                Timothy P. Cairns (Bar No. 4228)
                                919 North Market Street, 17th Floor
                                P.O. Box 8705
                                Wilmington, Delaware 19899-8705 (Courier 19801)
                                Telephone: (302) 652-4100
                                Facsimile: (302) 652-4400

                                Email: ljones@pszjlaw.com
                                        akornfeld@pszjlaw.com
                                        dbertenthal@pszjlaw.com
                                        chehn@pszjlaw.com
                                        tcairns@pszjlaw.com

                                Counsel to the Debtors