IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Requested Objection Deadline: February 8, 2011 at 4:00 p.m. (prevailing Eastern Time)
Requested Hearing Date: February 14, 2011 at 2:00 p.m. (prevailing Eastern Time)

**MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (B) SCHEDULING A HEARING TO CONFIRM THE JOINT CHAPTER 11 PLAN OF REORGANIZATION; (C) ESTABLISHING DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; (D) APPROVING FORM OF BALLOTS, VOTING DEADLINE AND SOLICITATION PROCEDURES; (E) APPROVING SUBSCRIPTION FORM FOR PURPOSES OF THE RIGHTS OFFERING AND RELATED PROCEDURES IN CONNECTION THEREWITH; AND (F) APPROVING FORM AND MANNER OF NOTICE**

The above-captioned debtors and debtors in possession (the "Debtors") hereby move the Court (the "Motion") for the entry of an order (a) approving the adequacy of the Disclosure Statement (as defined below); (b) scheduling a hearing to confirm the *Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1006] (as the same may be amended from time to time, the "Plan");[2] (c) establishing the deadline for filing objections to confirmation of the Plan; (d) approving the form of ballots, voting deadline, and solicitation procedures; (e) approving subscription form for purposes of the rights offering and related procedures in connection therewith; and (f) approving the form and manner of

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

confirmation notice related thereto. In support of this Motion, the Debtors respectfully state as follows:

## I.
## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue for these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are §§ 105(a), 1125 and 1126 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 3017, 3018 and 3020, and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").[3]

## II.
## BACKGROUND

4.      On April 14, 2010 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to §§ 1107(a) and 1108. No trustee, has been appointed in the Debtors' Chapter 11 Cases. On April 26, 2010, the Office of the United States Trustee formed the Official Committee of Unsecured Creditors (the "Creditors' Committee") and appointed five initial members thereto. On July 27, 2010, the Office of the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") and appointed seven initial members thereto.

---

[3] Unless otherwise stated herein, section (§) references are to the Bankruptcy Code.

5.     On May 14, 2010, the Debtors filed their schedules of assets and liabilities and, on October 12, 2010, the Debtors filed certain amendments thereto (as amended, the "Schedules").

6.     The Bankruptcy Court entered an order on June 10, 2010 [Docket No. 237] establishing August 13, 2010 as the deadline for filing proofs of claim for any Claims against the Debtors that arose before the Petition Date (including WARN Act Claims, but excluding the Claims of governmental entities), and October 12, 2010 as the deadline for filing Proofs of Claim for any Claims against the Debtors of governmental entities. A schedule of the filed Proofs of Claim is maintained by Epiq Bankruptcy Solutions, LLC, the Debtors' noticing and claims agent (the "Claims Agent").

7.     On August 11, 2010, the Debtors filed a motion [Docket No. 454] seeking to extend by 120 days, pursuant to §§ 1121(b) and (c)(3), the period during which the Debtors have the exclusive right to file a Chapter 11 plan (the "Exclusive Filing Period") and the period during which the Debtors have the exclusive right to solicit acceptances of a Chapter 11 plan (the "Exclusive Solicitation Period," together with the Exclusive Filing Period, the "Exclusive Periods"). On September 20, 2010, the Bankruptcy Court entered an order [Docket No. 597] extending the Exclusive Filing Period through and including October 12, 2010 and extending the Exclusive Solicitation Period through and including December 10, 2010. On October 8, 2010, the Debtors filed a motion [Docket No. 662] requesting a further extension of the Exclusive Periods.

8.     While that second motion was pending, the Debtors, the two statutory committees and certain other parties entered into that certain Plan Support Agreement, dated as of December 10, 2010 (the "Plan Support Agreement"), pursuant to which the parties thereto committed to

jointly support confirmation of a plan of reorganization based on the terms set forth in the term sheet that accompanies the Plan Support Agreement. That term sheet formed the basis for the Plan as negotiated among the parties to the Plan Support Agreement.

9.      On December 15, 2010, the Bankruptcy Court entered an order approving a joint stipulation between the Debtors, the Equity Committee and the Creditors Committee further extending the Exclusive Filing Period to February 9, 2011 and the Exclusive Solicitation Period to April 11, 2011, with such exclusivity to be shared by the Debtors, the Creditors' Committee and the Equity Committee (the "Exclusivity Stipulation") [Docket No. 927]. The Exclusivity Stipulation also provided that nothing therein would modify or alter the obligations of the Debtors, Creditors' Committee and Equity Committee with respect to their respective obligations under the Plan Support Agreement.

10.     On January 11, 2011, the Debtors filed the Plan and a *Disclosure Statement Describing Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1007] (the "Disclosure Statement"). On January 11, 2011, the Debtors served notice of the hearing on the Disclosure Statement upon all of the Debtors' creditors and equity security holders identified on the creditor matrix and list of equity security holders for these cases.

11.     The Debtors have requested a hearing to consider the relief sought in this Motion for February 14, 2011 at 2:00 pm prevailing Eastern Time, which is the same date and time as the hearing to consider approval of the adequacy of the Disclosure Statement for solicitation to creditors and equity security holders.

**III.**
**RELIEF REQUESTED**

12.     By this Motion, the Debtors request that this Court enter an order (the "Solicitation Order") (a) approving the adequacy of the Disclosure Statement; (b) scheduling a

hearing to confirm the Plan; (c) establishing the deadline for filing objections to confirmation of the Plan; (d) approving the form of ballots, voting deadline, summary of Disclosure Statement, and solicitation procedures; (e) approving the form of Subscription Form and the Rights Offering Procedures to be employed in connection with the Rights Offering contemplated under the Plan;[4] and (f) approving the form and manner of the confirmation notice related thereto.

# IV.
# ARGUMENT

## A.    The Disclosure Statement Should Be Approved.

13.    Section 1125 requires that disclosure statements be approved by the bankruptcy court as containing "adequate information" prior to a debtor's commencement of solicitation of acceptances or rejections to its plan. 11 U.S.C. § 1125(b). "Adequate information" is defined in the Bankruptcy Code as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

14.    The Disclosure Statement in this case is the product of extensive review and analysis of the Plan. The Disclosure Statement contains "adequate information," including,

---

[4] The Equity Committee has not approved the proposed Rights Offering Procedures and Subscription Form. The Plan Sponsors are attempting to address the Equity Committee's concerns and will supplement the Motion to reflect any changes agreed to by the Plan Sponsors and the Equity Committee.

without limitation, a description of the following: (a) the Debtors' business operations, corporate structure and management; (b) the Debtors' financing and significant indebtedness; (c) the circumstances leading to the commencement of the Chapter 11 Cases; (d) the filing of the Chapter 11 Cases and a description of the "First Day Motions" and other relief sought at the inception of the Chapter 11 Cases; (e) certain events that have occurred in these Chapter 11 Cases; (f) the Debtors' marketing process and the Plan Support Agreement; (g) an overview of the Plan; (h) the classification and treatment of claims and equity interests under the Plan; (i) the provisions governing distributions under the Plan; (j) the means for the implementation of the Plan, including the Rights Offering and the establishment of the Recovery Trust; (k) the treatment of executory contracts and unexpired leases under the Plan; (l) the procedures for the resolution of disputed, contingent and unliquidated claims under the Plan; (m) confirmation and effectiveness of the Plan; and (n) related voting and confirmation procedures.

15.     The information contained in the Disclosure Statement constitutes the pertinent information necessary for holders of claims to make an informed decision about whether to vote to accept or reject the Plan.

16.     The Debtors submit that the Disclosure Statement contains adequate information as defined by the Bankruptcy Code and interpreted in relevant case law. Therefore, the Debtors request that the Court enter an order approving the adequacy of the Disclosure Statement and authorizing its solicitation pursuant to the procedures set forth herein.

**B.      A Confirmation Hearing and Plan Objection Deadline Should Be Set.**

17.     The Debtors request that the Court schedule a hearing to consider confirmation of the Plan (the "Confirmation Hearing") pursuant to § 1128 and Bankruptcy Rule 3017(c) on March 29, 2011, or as soon thereafter as the Court's schedule permits.

18.     Once set, with the approval of the Court, the Confirmation Hearing may be continued from time to time by announcing such continuance in open court or otherwise without further notice to parties in interest.

19.     Further, the Debtors request that this Court establish March 21, 2011, at 4:00 p.m., as the deadline for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline").

20.     The Debtors request that the Court require that all objections to the Plan be filed with the Court on or before the Plan Objection Deadline and served in a manner so that they are actually received on or before the Plan Objection Deadline by the following parties (collectively, the "Notice Parties"):

| **Counsel to Debtors:** | **Counsel to Creditors Committee:** |
|---|---|
| Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>Wilmington, DE 19899<br>Attn: Laura Davis Jones, Esq.<br>    Timothy P. Cairns, Esq.<br><br>- and -<br><br>Pachulski Stang Ziehl & Jones LLP<br>150 California Street, 15th Floor<br>San Francisco, CA 94111<br>Attn: David M. Bertenthal, Esq.<br>    Joshua M. Fried, Esq. | Arent Fox LLP<br>1675 Broadway<br>New York, NY 10019<br>Attn: Robert M. Hirsh, Esq.<br>    George Angelich, Esq.<br><br>-and-<br><br>The Rosner Law Group LLC<br>824 Market Street, Suite 810<br>Wilmington, DE 19801<br>Attn: Brian L. Arban, Esq. |
| **Counsel to Equity Committee:** | **Counsel to Privet Opportunity Fund I, LLC:** |
| Morrison Cohen LLP<br>909 Third Avenue<br>New York, NY 10022<br>Attn: Michael R. Dal Lago, Esq.<br><br>-and-<br><br>Bayard, P.A.<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19899<br>Attn: Neil B. Glassman, Esq. | Reed Smith LLP<br>599 Lexington Avenue, 22nd Floor<br>New York, NY 10022<br>Attn: Edward J. Estrada, Esq.<br><br>-and-<br><br>Reed Smith LLP<br>1201 Market Street, Suite 1500<br>Wilmington, DE 19801<br>Attn: Kurt F. Gwynne, Esq. |
| **Counsel to Prescott Group Capital Management:** | **United States Trustee:** |
| Ashby & Geddes<br>500 Delaware Avenue<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Attn: Ricardo Palacio, Esq. | Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>844 N. King Street, Suite 2207<br>Lock Box 35<br>Wilmington, DE 19801<br>Attn: Jane M. Leamy, Esq. |
| **Counsel to Lonestar Capital Management, LLC:** | |
| Pepper Hamilton LLP<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Attn: David B. Stratton, Esq.<br><br>-and-<br><br>Akin Gump Strauss Hauer & Feld LLP<br>2029 Century Park East, Suite 2400<br>Los Angeles, CA 90067<br>Attn: David P. Simonds, Esq.<br><br>-and-<br><br>Akin Gump Strauss Hauer & Feld LLP<br>1700 Pacific Avenue, Suite 4100<br>Dallas, TX 75201-4675<br>Attn: Michael P. Cooley, Esq. | |

21.     The Debtors further request that (a) the Court only consider timely filed and served written objections to the Plan; (b) the Court require all objections to (i) conform to the Bankruptcy Rules, the Local Rules and any orders of the Court in these Chapter 11 Cases, (ii) state with particularity the legal and factual grounds for such objection, (iii) provide, where applicable, the specific text that the objecting party believes to be appropriate to insert into the Plan, and (iv) describe the nature and amount of the objector's Claim or Interest; and (c) objections not timely filed and served in accordance with the procedures of this Motion be overruled.

22.     The Debtors request permission to be allowed to file a brief in support of confirmation of the Plan, and, with regard to any timely-filed objection(s), an omnibus reply, on or before March 25, 2011. This will allow the Debtors to advise the Court of any objections that they have been able to resolve, and to frame in writing the issues, if any, that remain to be resolved at the Confirmation Hearing, thereby reducing the amount of time that will be needed for oral argument.

**C.     Solicitation Procedures Should Be Approved.**

23.     To conduct an effective solicitation of acceptances or rejections of the Plan that is consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and due process, the Debtors seek approval of the following solicitation procedures (the "Solicitation Procedures"). To the extent that circumstances arise that require a modification of the Solicitation Procedures, the Debtors reserve the right to supplement or amend such Solicitation Procedures.

*1.     Voting Record Date.*

24.     Bankruptcy Rule 3017(d) provides that, for purposes of voting on a plan of reorganization under the Bankruptcy Code, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) provides that "an equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and hearing." Fed. R. Bankr. P. 3018(a).

25.     Notwithstanding the foregoing, in order to provide sufficient time to prepare for solicitation (particularly with respect to securities held through intermediaries), the Debtors propose that the Court establish the date that is the first day of the hearing to consider the adequacy of the Disclosure Statement as the record date for purposes of determining which Creditors and Old Equity Holders (as defined below) are entitled to vote on the Plan (the "Voting Record Date").

### *2.     Voting Deadline.*

26.     The Debtors request that the Court enter an order (a) setting March 21, 2011, at 4:00 p.m. prevailing Eastern Time (the "Voting Deadline"), as the deadline for casting a Ballot (as defined below) to accept or reject the Plan, which date will provide creditors with at least twenty-eight (28) days to vote following service of the Solicitation Package (as defined below) and (b) requiring that all Ballots accepting or rejecting the Plan be received by the Claims Agent on the Voting Deadline at the following addresses, as specified on each holders' Ballot (except in the case of Ballots to be returned to a Nominee, as further described below):

**If by first class mail or USPS Express Mail:**

**Point Blank Solutions Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5014
New York, NY 10150-5014**

**If by overnight courier or hand delivery:**

**Point Blank Solutions Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd floor
New York, NY 10017**

27.     The Debtors or the Court may extend the period during which votes will be accepted by the Debtors, in which case the Voting Deadline shall mean the last time and date to which such solicitation is extended.

### 3.   *Forms of Ballots and Master Ballots.*

28.     All votes to accept or reject the Plan must be cast by using the appropriate ballot ("Ballot").  Except with respect to Ballots for Interests held through intermediaries, the Debtors will prepare customized Ballots for those Classes of Claims and Interests under the Plan that are entitled to vote to accept or reject the Plan in accordance with Bankruptcy Rule 3018(c).  The Ballots (substantially in the form attached hereto as **Exhibit A**) will be distributed to all Creditors and holders of Interests who are entitled to vote on the Plan.

29.     Under the Plan, holders of Class 7 Old Equity Interests (the "Old Equity Holders") are Impaired and entitled to vote on the Plan.  Certain Old Equity Holders may have legal title to their Old Equity Interests held by a nominee or third party financial institution for the benefit of shareholders (collectively, the "Nominees").  The Debtors shall distribute to each Nominee (i) a master ballot substantially in the form attached hereto as **Exhibit A** ("Master Ballot") and (ii) Ballots for the Old Equity Holders holding Old Equity Interests through such Nominee ("Beneficial Ballots").

30. By this Motion, the Debtors seek approval of the forms of Ballots and Master Ballot, and voting instructions thereto, described above, in substantially the form attached hereto as **Exhibit A**, for submission to Creditors and Old Equity Holders.

31. In addition, the Debtors seek authority to distribute Ballots, Master Ballots (as appropriate), and other solicitation materials to the following Impaired Classes entitled to vote to accept or reject the Plan:

- Class 1 – Other Priority Claims;

- Class 3 – Miscellaneous Secured Claims;

- Class 4 – General Unsecured Claims;

- Class 5 – Subordinated Unsecured Claims;

- Class 6 – Class Action Claims; and

- Class 7 – Old Equity Interests (Master Ballots and Beneficial Ballots).

32. Under the Plan, Class 2 (DIP Claims) is Unimpaired and deemed to accept the Plan and, accordingly, is not entitled to vote. Class 8 (Other Subordinated Claims and Interests) and Class 9 (Unexercised Options) are each deemed to reject the Plan and are likewise not entitled to vote to accept or reject the Plan. Accordingly, the Debtors request that the Court order that no Ballots be sent to the holders of Claims or Interests in Classes 2, 8 and 9 (collectively, the "Non-Voting Classes").

### 4. *Solicitation Package for Voting Classes.*

33. Bankruptcy Rule 3017(d) provides that the following materials must be provided to holders of claims and interests for purposes of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization: "(1) the plan or a court-approved summary of the plan, (2) the disclosure statement approved by the court, (3) notice of the time within which acceptances or rejections of the plan may be filed, and (4) any other

information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion." *See* Fed. R. Bank. P. 3017(d).

34.     In accordance with Bankruptcy Rule 3017(d), the Debtors propose that, within five (5) business days after entry of the Solicitation Order, the following materials be distributed to (i) all known holders of Claims or Interests in Classes 1, 3, 4, 5, 6 and 7 as of the Voting Record Date who are entitled to vote on the Plan, (ii) the U.S. Trustee, and (iii) the Securities and Exchange Commission (the "Solicitation Package"):

   a.     Letter of Support from the Creditors' Committee;

   b.     the Plan;

   c.     the Disclosure Statement;[5]

   d.     the appropriate Ballot or Master Ballot and voting instructions;

   e.     the Confirmation Hearing Notice (as defined below);

   f.     the Notice of Voting Status (as defined below);

   g.     any supplemental solicitation materials filed with the Court;

   h.     a pre-addressed return envelope; and

   i.     with respect to Classes 4 and 7, the Subscription Form and accompanying instructions.

35.     In addition to transmitting the Solicitation Package to Creditors and Old Equity Holders entitled to vote on the Plan, the Claims Agent will post copies of the Plan and the Disclosure Statement on its website at http://dm.epiq11.com/PBS. The Confirmation Hearing Notice also provides that the Debtors will send, at no cost to the requesting party, copies of the Plan and Disclosure Statement either electronically, in paper format or by CD-ROM at the direction of the requesting party.

---

[5] The Debtors at their discretion are authorized to distribute the Disclosure Statement and Plan, and all exhibits thereto, on CD-ROM; provided that any party receiving the CD-ROM may request hard copies of the Disclosure Statement, together with the Plan and other exhibits annexed thereto, without charge, from the Claims Agent.

36.     The proposed Solicitation Package satisfies the requirements of Bankruptcy Rule 3017(d) with respect to the transmission of solicitation materials to Creditors and Old Equity Holders entitled to vote on the Plan. The Debtors believe that transmittal of the Solicitation Package, in addition to the publication of the Plan and Disclosure Statement on the Claims Agent's website and transmission of copies of the Plan and the Disclosure Statement upon request of any party in interest, provides Creditors and Old Equity Holders with adequate information to make an informed decision to accept or reject the Plan and satisfies the solicitation requirements under Bankruptcy Rule 3017(d).

### 5. *Non-Voting Status for Unimpaired Class 2.*

37.     Class 2 is deemed to accept the Plan because members of Class 2 are Unimpaired under the terms of the Plan. Therefore, pursuant to § 1126(f), members of Class 2 are not entitled to vote on the Plan. In addition, Bankruptcy Rule 3017(d) provides:

> If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).

38.     Accordingly, the Debtors propose to send only (i) the Plan, (ii) the Disclosure Statement, (iv) the Confirmation Hearing Notice, and (v) the Notice of Non-Voting Status (as defined below) to members of Class 2. As discussed below, the Notice of Non-Voting Status informs members of Class 2 that their Class is Unimpaired and is not entitled to vote on the Plan.

### 6. *Non-Voting Status for Classes 8 and 9.*

39.     Class 8 (Other Subordinated Claims and Interests) and Class 9 (Unexercised Options) are deemed to reject the Plan because members of those Classes are Impaired and will not receive any distributions on account of their respective Claims and Interests under the Plan. Therefore, pursuant to § 1126(g), members of Classes 8 and 9 are not entitled to vote on the Plan. Because members of Classes 8 and 9 will not receive any property under the Plan on account of their respective Claims and Interests, the Debtors propose to send only (i) the Confirmation Hearing Notice and (ii) the Notice of Non-Voting Status to members of Classes 8 and 9. The Notice of Non-Voting Status informs members of Classes 8 and 9 that those Classes are Impaired, are not entitled to vote on the Plan, and also provides information on how they may obtain copies of the Disclosure Statement and Plan.

### 7. *Solicitation of Beneficial Holders of Equity Securities.*

40.     Bankruptcy Rule 3017(e) provides:

> At the hearing pursuant to subdivision (a) of this rule, the court shall consider the procedures for transmitting the documents and information required by subdivision (d) of this rule to beneficial holders of stock, bonds, debentures, notes and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate.

Fed. R. Bank. P. 3017(d). Under the Plan, Old Equity Holders are Impaired and entitled to vote on the Plan. Certain Old Equity Holders may have legal title to their Old Equity Interests held by Nominees. For Old Equity Holders holding their Old Equity Interests through Nominees (the "Beneficial Owners"), the Debtors shall distribute, or cause to be distributed, a reasonably sufficient number of Solicitation Packages, including Beneficial Ballots, to Nominees for distribution to the Beneficial Owners of the Old Equity Interests for whom such Nominee acts and that service of the Solicitation Packages on the Nominee shall constitute adequate

transmission of the Solicitation Package to the affected Old Equity Holder pursuant to Bankruptcy Rule 3017(d) and (e). Upon written request with supporting documentation, the Debtors shall reimburse each Nominee for its reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages in accordance with New York Stock Exchange guidelines.

41.     Each Nominee is required to (i) forward the Solicitation Packages to Beneficial Owners, (ii) receive returned Beneficial Ballots from the Beneficial Owners, (iii) tabulate the results according to the instructions set forth in the Master Ballot, return such results in a Master Ballot by the Voting Deadline, and (iv) retain the underlying Beneficial Ballots received from the Beneficial Owners for inspection for a period of one (1) year following the Voting Deadline.

**8.     *The Confirmation Hearing Notice; the Notice of Voting Status; and the Notice of Non-Voting Status.***

42.     The Debtors request approval of the notice substantially in the form attached hereto as **Exhibit B** (the "Confirmation Hearing Notice"). The Confirmation Hearing Notice (a) describes the location and time of the Confirmation Hearing, (b) informs parties in interest how to obtain a copy of the Plan and Disclosure Statement, (c) gives notice of the Plan Objection Deadline, (d) provides notice of other dates and deadlines applicable to Creditors and Interest holders under the Plan, (e) describes the requirements for the form of objections to the Plan, (f) gives notice of the Voting Record Date and Voting Deadline, and (g) contains a prominent disclosure of the injunctive provisions of the Plan. The Debtors submit that the Confirmation Hearing Notice complies with the notice requirements of Bankruptcy Rules 2002(b) and 2002(c)(3). The Debtors propose to serve the Confirmation Hearing Notice within five (5) business days after entry of the Solicitation Order on (i) the U.S. Trustee, (ii) counsel to the

Creditors' Committee, (iv) counsel to the Equity Committee, (iv) counsel to Lonestar Capital Management, LLC, (v) counsel to Prescott Group Capital Management, (vi) counsel to Privet Opportunity Fund I, LLC and Privet Fund Management LLC, (vii) the Securities and Exchange Commission, (viii) all creditors on the list of creditors and equity security holders maintained by the Claims Agent in these Chapter 11 Cases, and (ix) those parties who requested notice pursuant to Bankruptcy Rule 2002.

43. The Debtors also request approval of the notice of voting status (the "Notice of Voting Status") attached hereto as **Exhibit C**. The Notice of Voting Status states that members of Classes 1, 3, 4, 5, 6 and 7 are Impaired and are therefore entitled to vote on the Plan. The Notice of Voting Status will be included in the Solicitation Packages to be delivered to members of Classes 1, 3, 4, 5, 6 and 7.

44. The Debtors also request approval of the two notices of non-voting status (each, a "Notice of Non-Voting Status") attached hereto as **Exhibit D**. There are two different forms of Notice of Non-Voting Status. First, the Notice of Non-Voting Status to be delivered to all Class 2 Creditors states that members of Class 2 are not entitled to vote on the Plan because they are Unimpaired and therefore deemed to accept the Plan. Second, the Notice of Non-Voting Status to be delivered to all Creditors and Interest holders in Classes 8 and 9 states that members of Classes 8 and 9 are not entitled to vote on the Plan because they are Impaired, will receive no distributions under the Plan, and therefore are deemed to reject the Plan.

45. Consistent with § 1126 and Bankruptcy Rule 3017(d), Solicitation Packages will not be distributed to members of the Non-Voting Classes (*i.e.*, Classes 2, 8 and 9). Instead, the Debtors will send members of Class 2 (i) the Confirmation Hearing Notice, (ii) the Plan, (iii) the Disclosure Statement, and (iv) the Notice of Non-Voting Status and will mail members of

Classes 8 and 9 the Confirmation Hearing Notice and the Notice of Non-Voting Status only. The Confirmation Hearing Notice includes instructions on how to obtain copies of the Solicitation Package, if so desired.

46.     The Debtors submit that they have shown good cause for implementing the proposed notice, service and Solicitation Procedures set forth herein.

### 9. Creditors' Committee Letter of Support.

47.     The Solicitation Packages to be delivered to the Voting Classes will include a letter from the Creditors' Committee, substantially in the form of **Exhibit E** hereto, indicating that the Creditors' Committee supports the Plan and recommending that members of the Voting Classes vote to accept the Plan.

### 10. Returned Solicitation Packages or Confirmation Hearing Notice.

48.     The Debtors anticipate that some of the Solicitation Packages or Confirmation Hearing Notices may be returned by the United States Postal Service as undeliverable. The Debtors seek the Court's approval for a departure from the strict notice rule so as to excuse the Debtors from re-mailing Solicitation Packages or Confirmation Hearing Notice, as the case may be, to those entities whose addresses differ from the addresses in the claims register or the Debtors' records as of the Voting Record Date. If a creditor changes its mailing address after the Petition Date, the burden is on the creditor, not the Debtors, to advise the Claims Agent of the new address.

### D.     Publication Notice.

49.     In addition to the foregoing, the Debtors request the authority, but not the obligation, to publish the Confirmation Hearing Notice once in the National Edition of the *USA Today* within five (5) business days after entry of the Solicitation Order and to pay the costs of such publication.

50.     By way of this Motion, the Debtors request approval of the publication of the Confirmation Hearing Notice substantially in the form attached hereto as Exhibit B in the event that the Debtors choose to publish the Confirmation Hearing Notice.

E.     **Tabulation Procedures.**

51.     Section 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purposes of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

52.     The Debtors request that, in tabulating votes, the following rules be used and each holder of a Claim or Interest within a class of Claims or Interest shall only be entitled to vote to accept or reject the Plan in the amount of such Claim or Interest as is held as of the Voting Record Date.

> **For the avoidance of doubt, the following Voting Procedures are not applicable to the determination of any Eligible Holder's Rights, if any, to participate in the Rights Offering, including the calculation of any Creditor's Rights Participation Amount. Refer to Section 6.3 of the Plan and the Rights Offering Procedures described below for more information on the determination of an Eligible Holder's Claim or Interest for purposes of participating in the Rights Offering.**

53.     With respect to Claims, and solely for the purpose of voting on the Plan:

a.     If an objection has not been filed to a Claim, the amount of such Claim for voting purposes shall be the non-contingent, liquidated and undisputed Claim amount contained on a timely filed Proof of Claim or, if no timely filed Proof of Claim was filed, the non-contingent, liquidated and undisputed amount of such Claim listed in the Schedules;

b. If a Claim for which a Proof of Claim has been timely filed is wholly contingent, unliquidated or disputed, undetermined or unknown in amount, such claim shall be temporarily allowed in the amount of $1.00 for voting purposes only, and not for purposes of allowance or distribution;

c. If a Claim is partially liquidated and partially unliquidated, such Claim shall be allowed for voting purposes only in the liquidated amount;

d. If an objection to a timely filed Claim is filed, such Claim shall be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection;

e. Proofs of Claim filed for $0.00 are not entitled to vote;

f. Notwithstanding anything to the contrary contained herein, any Creditor who has filed or purchased one or more duplicate Claims within the same Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

g. If a Claim is the subject of an amended Proof of Claim, the originally filed Proof of Claim shall be deemed superseded by the later filed amended Proof of Claim, regardless of whether or not the Debtors have objected to such Claim, and only the amended Proof of Claim shall be used for the purpose of determining voting eligibility in accordance with the provisions herein;

h. For purposes of the numerosity requirement of § 1126(c), separate Claims held by a single Creditor in a particular Class shall be aggregated as if such Creditor held one Claim against the Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

i. If a Claim has been Disallowed by agreement of the applicable Creditor or order of the Court at any time before the Voting Deadline, such Claim shall also be Disallowed for voting purposes;

j. If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution; and

54. With respect to Old Equity Interests, and solely for the purpose of voting on the Plan:

a. Votes cast by Beneficial Owners through a Nominee will be applied against the positions held by such entities in the applicable securities as of the Voting Record Date, as evidenced by the record and depository listings. Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Ballots, will not be counted in excess of the Record Amount of such securities held by such Nominee.

b. To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Ballots, the Claims Agent will make a reasonable attempt to reconcile discrepancies with the Nominees.

c. To the extent that overvotes on a Master Ballot or pre-validated Beneficial Ballots are not reconcilable prior to the preparation of the vote certification, the Claims Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Ballots that contained the overvote, but only to the extent of the Nominee's position in the applicable security.

d. A single Nominee may complete and deliver to the Claims Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest properly completed Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot.

55. Creditors seeking temporary allowance of their Claims for voting purposes must serve on the Notice Parties and file with the Court a motion seeking temporary allowance for voting purposes. Any such motion , with evidence in support thereof, must be filed no later than such date that will enable a hearing thereon to be held on or prior to the Voting Deadline. It shall be the responsibility of each Creditor filing such a motion to schedule a hearing thereon to occur at or prior to the Voting Deadline.

56. In addition, the Debtors request that the following general voting procedures and standard assumptions be used in tabulating Ballots and Master Ballots:

a.   Except to the extent the Debtors otherwise determine, or as permitted by the Court, Ballots and Master Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.   Claims and Old Equity Interests shall not be split for purposes of voting; thus, each Creditor and Old Equity Holder shall be deemed to have voted the full amount of its Claim or Old Equity Interest either to accept or reject the Plan;

c.   Any executed Ballot or Master Ballot which does not indicate an acceptance or rejection shall not be counted;

d.   Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

e.   Votes cast pursuant to a Ballot or Master Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

f.   Parties holding Claims or Interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

g.   The method of delivery of Ballots and Master Ballots to be sent to the Claims Agent is at the election and risk of each holder of a Claim or Interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot or Master Ballot is actually received by the Claims Agent;

h.   Delivery of the original, executed Ballot or Master Ballot to the Claims Agent on or before the Voting Deadline is required. Delivery of a Ballot or Master Ballot by facsimile, email or any other electronic means will not be accepted;

i.   No Ballot or Master Ballot sent to the Debtors, or the Debtors' financial or legal advisors, shall be accepted or counted;

j.   The Debtors expressly reserve the right, subject to the consent of the Plan Proponents, to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtors make material changes in the terms of the Plan the Debtors will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

k.    If multiple Ballots or Master Ballots are received from or on behalf of an individual holder of a Claim or Interest with respect to the same Claims or Interests prior to the Voting Deadline, the last properly completed Ballot or Master Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot or Master Ballot;

l.    If a Ballot or Master Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence satisfactory to the Debtors to so act in such capacity;

m.    The Debtors, in their sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot or Master Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtors may, in their sole discretion, reject such defective Ballot or Master Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

n.    Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots or Master Ballots will be determined by the Debtors, in their sole discretion, which determination shall be final and binding;

o.    If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such Claim or Interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

p.    Any holder of an Impaired Claim or Interest who has delivered a valid Ballot or Master Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

q.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots or Master Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots or Master Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

r.    Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots or Master Ballots, nor will any of them incur any liability for failure to provide such notification;

s.     No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots or Master Ballots to accept the Plan;

t.     The Ballot or Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

u.     The Ballot or Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim or Interest.

## V.
## THE RIGHTS OFFERING

### A.    Rights Offering Procedures

57.    The offering (the "Rights Offering") of Rights to Eligible Creditors in Class 4 and Eligible Equity Holders in Class 7 in accordance with the procedures set forth herein and in the proposed order is an integral part of the Plan. In connection with the Rights Offering, Eligible Holders will receive nontransferable, noncertificated rights to subscribe for shares of New Common Stock, par value $.01 per share, in Reorganized Parent at a Subscription Price of $5.00 per share. Attached as **Exhibit F** hereto is a summary of the terms upon which Eligible Holders will be allowed to participate in the Rights Offering. The summary is qualified in all respects by reference to the Plan (as the same will be amended prior to the Disclosure Statement Hearing) and the Subscription Forms and related instructions.[6]

58.    The Debtors propose to conduct the Rights Offering pursuant to the procedures (collectively, the "Rights Offering Procedures") set forth in this Motion (including Exhibit F hereto). The Rights Offering Procedures will also be reflected in an amended Plan to be filed prior to the Disclosure Statement Hearing. The aggregate amount of the Rights Offering ("Rights Offering Amount") will equal (a) $8,656,500, or (b) in the event an Exit Facility is

---

[6] As a result of continued negotiations between the Backstop Purchasers and the other Plan Proponents, certain modifications have been made to the Equity Rights Offering and the allocation of New Common Stock between the Equity Rights Offering and the Subscription Shares. Those modifications, which are discussed herein and reflected in the attached Subscription Forms, will be reflected in a revised Plan and Disclosure Statement to be filed prior to the Disclosure Statement Hearing.

unavailable, or cannot be obtained in an amount, or on terms and conditions, that are acceptable to the Backstop Purchasers, then the Backstop Purchasers in their sole discretion may increase the Rights Offering Amount up to a maximum total amount of $14,427,500 (the "Rights Offering Maximum").

59. The Debtors propose that the record date for purposes of distributing Rights to Eligible Creditors in Class 4 and Eligible Equity Holders in Class 7 be the same date as the Voting Record Date (the "Subscription Record Date").

60. The Rights Offering will commence on the date that Subscription Forms are mailed out (such date, the "Subscription Commencement Date") and will expire thirty days after the Subscription Commencement Date (the "Subscription Expiration Date").

61. Within five (5) Business Days following entry of the Solicitation Order, the Debtors will cause the Subscription Agent[7] to distribute to each Eligible Creditor and Eligible Equity Holder (or such Eligible Equity Holder's Nominee), a package containing a copy of the Solicitation Order informing them of the court-ordered Subscription Record Date, Subscription Commencement Date and Subscription Expiration Date and the applicable Subscription Form, substantially in the form of **Exhibit G** hereto, to (i) holders of Class 4 General Unsecured Claims, (ii) registered holders of Class 7 Old Equity Interests, and (iii) Nominees for distribution to the beneficial holders of the Class 7 Old Equity Interests. As set forth in the Plan, the Rights Offering Participation Amount for a holder of a Class 4 General Unsecured Claim is limited to, *inter alia*, the liquidated amount of the Claim. Any Eligible Creditor that has filed a Claim in an unliquidated or undetermined amount shall hold a Rights Participation Amount of $0.00, unless otherwise ordered by the Bankruptcy Court.

---

[7] Epiq Bankruptcy Solutions, LLC, the Notice and Claims Agent, shall serve as Subscription Agent unless otherwise agreed by the Debtors and the Required Backstop Purchasers.

62.     The Eligible Holders will not be obligated to exercise their Rights, but in order to properly exercise the Rights, an Eligible Holder must (a) return a duly completed Subscription Form to the Subscription Agent, which form must be received by the Subscription Agent on or prior to 5:00 p.m. (prevailing Eastern time) on the Subscription Expiration Date.  On the Subscription Form, the Eligible Holder shall, among other things, (i) confirm that such Eligible Holder is an "accredited investor" within the meaning of Regulation D of the Securities Act, (ii) indicate whether such Eligible Holder is an Eligible Equity Holder or an Eligible Creditor, as applicable, (iii) if such Eligible Holder based on beneficial ownership of Class 7 Old Equity Interests, the number of shares held as of the Subscription Record Date must be certified by such holder's Nominee, (iv) if such Eligible Holder is an Eligible Equity Holder, indicate the number of Equity Rights it is exercising, and (v) if such Eligible Holder is an Eligible Creditor, indicate the number of Creditor Rights it is exercising.

63.     In addition, on or prior to 5:00 p.m. (prevailing Eastern time) on the Subscription Expiration Date, the Eligible Holder shall pay in Cash, by wire transfer in immediately available funds, an amount equal to the full Subscription Price in respect of the number of shares of New Common Stock issuable pursuant to the exercise of such Eligible Holder's Rights (including, in the case of Eligible Equity Holders, oversubscription rights) assuming the Backstop Purchasers would elect to increase the Rights Offering Amount to the Rights Offering Maximum (the "Rights Exercise Payment").  If the Subscription Agent for any reason does not receive from a given Eligible Holder both a timely and duly completed Subscription Form and timely payment of such Eligible Holder's Rights Exercise Payment, such Eligible Holder shall be deemed to have relinquished and irrevocably waived its right to participate in the Rights Offering; *provided* that, the Rights Exercise Payment of any DIP Lender or its affiliate (in its capacity as a holder of

Allowed Class 7 Old Equity Interests or Allowed Class 4 General Unsecured Claims, as the case may be) may, at the election of such DIP Lender and its affiliate, be reduced by or credited against any outstanding DIP Claims that the Company owes to such DIP Lender under the DIP Loan Agreement.

64. The payments received by the Subscription Agent in connection with the Rights Offering shall be deposited and held by the Subscription Agent in a trust account or similarly segregated account or accounts separate and apart from the Subscription Agent's general operating funds and any other funds subject to any lien or similar encumbrance and which segregated account or accounts shall be maintained for the purpose of holding such money for administration of the Rights Offering until the Effective Date. The Subscription Agent shall not use such funds for any other purpose prior to such date and shall not encumber or permit such funds to be encumbered with any lien or encumbrance. Each Eligible Holder intending to participate in the Rights Offering must affirmatively elect to exercise all of its respective Rights and make proper payment for the New Common Stock on or prior to 5:00 p.m. (prevailing Eastern time) on the Subscription Expiration Date. The exercise of Rights by an Exercising Holder shall be irrevocable.

65. To the extent an Exercising Holder is ultimately awarded fewer shares of New Common Stock than those for which such Eligible Holder subscribed, the Subscription Agent shall return to such Exercising Holder Cash (without any interest thereon) in immediately available funds in an amount equal to the product of (i) the Subscription Purchase Price and (ii) the difference between the number of shares of New Common Stock for which such Exercising Holder subscribed and the actual number of shares of New Common Stock issued to such Exercising Holder under the Rights Offering. In the event the Rights Offering fails to close,

the Subscription Agent shall return to the Exercising Holders all Cash paid in connection with the exercise of Rights pursuant to the Rights Offering.

66.     If an objection to a timely filed Claim is filed, such Claim shall be disallowed for purposes of participation in the Rights Offering only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection. Creditors seeking temporary allowance of their Claims for purposes of participating in the Rights Offering must serve on the Notice Parties and file with the Court a motion seeking temporary allowance for purposes of participating in the Rights Offering. Any such motion, with evidence in support thereof, must be filed no later than such date that will enable a hearing thereon to be held on or prior to the Subscription Expiration Date. It shall be the responsibility of each Creditor filing such a motion to schedule a hearing thereon to occur at or prior to the Subscription Expiration Date.

67.     The Debtors submit that the foregoing procedures and the other procedures set forth in Section 6.3 of the Plan will enable the Debtors to efficiently transmit the materials necessary to conduct the Rights Offering contemplated by the Plan and described in the Disclosure Statement. In addition, the Debtors request that this Court adopt, as necessary, any additional detailed procedures for the Rights Offering that are consistent with the provisions described in the Plan and the Disclosure Statement and acceptable to the Required Backstop Purchasers. The Debtors also seek authority, subject to the consent of the Backstop Purchasers, to make nonsubstantive modifications to the Rights Offering procedures described in this Motion and in the Plan to the extent necessary to efficiently implement the Rights Offering.

C.      **Basis for Relief**

68.     The relief requested herein is authorized under this Court's general equitable powers, which are codified in § 105(a). Under § 105(a), "the Court may issue any order,

process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of § 105(a) is "to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 *Collier on Bankruptcy* ¶ 105.01 (15th ed. rev. 2004). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its § 105(a) power is proper. *See, e.g., In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graudate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D. N.Y. 2002). Pursuant to § 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that a bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

69.    Section 363(b)(1) provides that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court can authorize a debtor to use property of the estate pursuant to § 363(b)(1) when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991). The debtor has the burden to establish that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor articulates a valid

business justification, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the company. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D. N.Y. 1992). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Id.*, *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D. N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

70.     The Debtors have determined, in the exercise of their reasonable business judgment, that conducting the Rights Offering on the terms and procedures set forth herein and in the Plan is the most efficient means of seeking to implement the terms of the Plan, as agreed-upon under the terms of the Plan Support Agreement. In order to meet the proposed timetable for confirmation and consummation of the Plan, it is imperative that the Rights Offering commence on the timetable set forth herein. Section 12.2 conditions the occurrence of the Effective Date on, among other things, the occurrence and completion of the Rights Offering, and the receipt by the Debtors of the proceeds therefrom. Accordingly, if the Debtors are not permitted to proceed expeditiously with the Rights Offering, they will be unable to obtain the contemplated funding thereunder in a timely manner, which may jeopardize the Debtors' ability to timely consummate the Plan.

## VI.
## NOTICE

71.     A copy of this Motion has been served upon: (a) the U.S. Trustee; (b) counsel to the Committees; (c) the Securities and Exchange Commission; and (d) those parties that have requested service under Fed. R. Bankr. P. 2002. In addition, as noted above, notice of the

hearing on the adequacy of the Disclosure Statement, and the objection deadline thereto, was served upon all of the Debtors' creditors on the creditor matrix for these cases.

## VII.
## NO PRIOR REQUEST

72.     No prior motion for the relief requested herein has been made to this or any other court.

## VIII.
## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form submitted with the Motion, (a) approving the adequacy of the Disclosure Statement; (b) scheduling a hearing to confirm the Plan; (c) establishing the Plan Objection Deadline; (d) approving the form of Ballots, including voting instructions thereto, the Voting Deadline and Solicitation Procedures; (e) approving the form and manner of service of the notice; (f) approving publication of the Confirmation Hearing Notice and the form and manner of publication thereof; (g) approving subscription form for purposes of the rights offering and related procedures in connection therewith; and (h) granting such other and further relief as the Court deems appropriate.

Dated: January 28, 2011

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
      dbertenthal@pszjlaw.com
      jfried@pszjlaw.com
      tcairns@pszjlaw.com

Counsel for the Debtors and Debtors in Possession