IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |

**ORDER (A) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (B) SCHEDULING A HEARING TO CONFIRM THE JOINT CHAPTER 11 PLAN OF REORGANIZATION; (C) ESTABLISHING DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; (D) APPROVING FORM OF BALLOTS, VOTING DEADLINE AND SOLICITATION PROCEDURES; (E) APPROVING SUBSCRIPTION FORM FOR PURPOSES OF THE RIGHTS OFFERING AND RELATED PROCEDURES IN CONNECTION THEREWITH AND (F) APPROVING FORM AND MANNER OF NOTICE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtor") seeking entry of an order: (a) approving the adequacy of the *Disclosure Statement Regarding Joint Chapter 11 Plan of Reorganization*, filed on January 11, 2011, as amended or modified (the "Disclosure Statement"); (b) scheduling a hearing to confirm the *Joint Chapter 11 Plan of Reorganization*, as amended or modified (the "Plan"); (c) establishing a Plan Objection Deadline; (d) approving the form of ballots, the voting deadline and solicitation procedures; (e) approving subscription form for purposes of the rights offering and related procedures in connection therewith; and (f) approving the form and manner of notice related thereto; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion or the Disclosure Statement.

U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and after due deliberation and it appearing that sufficient cause exists for granting the requested relief and that such relief is in the best interests of the Debtor's estate and creditors; it is hereby ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted as set forth herein.

2. The Disclosure Statement hereby approved for solicitation as provided for herein.

3. A hearing to confirm the Plan (the "Confirmation Hearing") will commence on _____, 2011, at __:__ _.m., prevailing Eastern Time.

4. The Confirmation Hearing may be continued from time to time by announcing such continuance in open court or otherwise, all without further notice to parties in interest.

5. The deadline to file and serve objections to the confirmation of the Plan (the "Plan Objection Deadline") shall be 4:00 p.m., prevailing Eastern Time, on _____, 2011.

6. All objections to the confirmation of the Plan, if any, must: (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Delaware; (iii) be filed with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801; and (iv) be served upon by the following parties: (1) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Laura Davis Jones, Esquire; (2) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy, Esquire; (3) counsel to the Official Committee of Unsecured Creditors, (a) Arent Fox LLP, 1675 Broadway, New York, NY 10019, Attn: Robert M. Hirsh, Esq. and

George Angelich, Esq., and (b) The Rosner Law Group LLC, 824 Market Street, Suite 810, Wilmington, DE 19801, Attn: Frederick B. Rosner, Esq.; (4) counsel to the Office Committee of Old Equity Holders, (a) Morrison Cohen LLP, 909 Third Avenue, New York, NY 10022, Attn: Michael R. Dal Lago, Esq., and (b) Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19899, Attn: Neil B. Glassman, Esq.; (5) Counsel to Privet Opportunity Fund I, LLC and Privet Fund Management LLC, (a) Edward J. Estrada, Esq., Reed Smith LLP, 599 Lexington Avenue, 22nd Floor, New York, NY 10022, and (b) Kurt F. Gwynne, Esq., Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE 19801; (6) Counsel to Prescott Group Capital Management, Ricardo Palacio, Esq., Ashby & Geddes, 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899; and (7) Counsel to Lonestar Capital Management, LLC, (a) David B. Stratton, Esq., Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899-1709, (b) David P. Simonds, Esq., Akin Gump Strauss Hauer & Feld LLP, 2029 Century Park East, Suite 2400, Los Angeles, CA 90067, and (c) Michael P. Cooley, Esq., Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100, Dallas, TX 75201-4675 (collectively, the "Notice Parties").

7. The Plan Proponents shall be allowed to file a brief in support of confirmation of the Plan and an omnibus reply to any objections to the Plan on or before _____, 2011.

8. The Court shall consider only written objections to the Plan that are timely filed by the Plan Objection Deadline and served upon the Notice Parties.

9. All objections to the Plan must (a) conform to the Bankruptcy Rules, the Local Rules and any orders of the Court in these Chapter 11 Cases, (b) state with particularity the legal and factual grounds for such objection, (c) provide, where applicable, the specific text that the

objecting party believes to be appropriate to insert into the Plan and (d) describe the nature and amount of the objector's Claim or Interest.

10. Objections to the Plan not timely filed and served in accordance with the provisions of this Order shall not be heard and shall be overruled.

11. The Voting Record Date is _____, 2011 and shall apply to (i) all holders of Claims and Interests and (ii) all nominees or third party financial institutions holding Interests for the benefit of shareholders.

12. The deadline for casting a Ballot or Master Ballot to accept or reject the Plan (the "Voting Deadline") shall be _____, 2011, at 4:00 p.m. prevailing Eastern Time.

13. All Ballots and Master Ballots accepting or rejecting the Plan must be received by Epiq Bankruptcy Solutions LLC (the "Claims Agent") by no later than 4:00 p.m., prevailing Eastern Time, on the Voting Deadline at the following addresses, as specified on each Ballot (except in the case of Beneficial Ballots to be returned to a Nominee, as further described below):

**If by first class mail or USPS Express Mail:**

**Point Blank Solutions Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5014
New York, NY 10150-5014**

**If by overnight courier or hand delivery:**

**Point Blank Solutions Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd floor
New York, NY 10017**

14. The Debtors or the Court may extend the period during which votes will be accepted by the Debtors, in which case the Voting Deadline for such solicitation shall mean the last time and date to which such solicitation is extended.

15. The forms of Ballots and Master Ballot and voting instructions thereto, substantially in the form attached hereto as **Exhibit A**, are hereby approved.

16. All votes to accept or reject the Plan must be cast by using the appropriate Ballot or Master Ballot.

17. The Solicitation Procedures are hereby approved; *provided, however*, the Debtors reserve the right, in consultation with the Backstop Purchasers, to modify, amend or supplement the Solicitation Procedures subject to Court approval.

18. No later than _____, 2011, the Debtors shall cause the following solicitation materials (the "Solicitation Package") to be distributed to (i) all known holders of Claims or Interests in Classes 1, 3, 4, 5, 6 and 7 as of the Voting Record Date who are entitled to vote on the Plan, (ii) the U.S. Trustee, and (iii) the Securities and Exchange Commission:

    a. Letter of Support from the Creditors' Committee;

    b. the Plan;

    c. the Disclosure Statement;

    d. the appropriate Ballot or Master Ballot and voting instructions;

    e. the Confirmation Hearing Notice;

    f. the Notice of Voting Status;

    g. any supplemental solicitation materials filed with the Court; and

    h. a pre-addressed return envelope.

19. No later than _____, 2011, the Debtors will cause the Subscription Agent[3] to distribute to each Eligible Creditor and Eligible Equity Holder (or such Eligible Equity Holder's Nominee), a package containing a copy of the Solicitation Order informing them of the court-ordered Subscription Record Date, Subscription Commencement Date and Subscription

---

[3] Epiq Bankruptcy Solutions, LLC, the Notice and Claims Agent, shall serve as Subscription Agent unless otherwise agreed by the Debtors and the Required Backstop Purchasers.

Expiration Date and the Subscription Form to (i) holders of Class 4 General Unsecured Claims, (ii) registered holders of Class 7 Old Equity Interests, and (iii) Nominees for distribution to the beneficial holders of the Class 7 Old Equity Interests.

20. The Debtors are required to serve members of Class 2 only with (i) the Plan, (ii) the Disclosure Statement, (iii) the Confirmation Hearing Notice, and (iv) the Notice of Non-Voting Status. Service of such documents under the procedures set forth in the Motion and this Order shall constitute adequate transmission of materials required under Bankruptcy Rule 3017(d).

21. The Debtors are required to serve members of Classes 8 and 9 only with the Confirmation Hearing Notice and the Notice of Non-Voting Status. Service of such documents under the procedures set forth in the Motion and this Order shall constitute adequate transmission of materials required under Bankruptcy Rule 3017(d).

22. The Debtors shall not be required to forward copies of the Solicitation Package to any Beneficial Owner of an Interest for which legal title to such interest is held by a Nominee. Service of the Solicitation Packages, including Beneficial Ballots, to Nominees for distribution to the Beneficial Owners shall constitute adequate transmission of the Solicitation Package to Old Equity Holders pursuant to Rule 3017(d) and (e).

23. Upon written request with supporting documentation, the Debtors shall reimburse each Nominee for its reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages.

24. Each Nominee is required to (i) forward the Solicitation Packages to Beneficial Owners, (ii) receive returned Beneficial Ballots from the Beneficial Owners, (iii) tabulate the results according to the instructions set forth in the Master Ballot, return such results in a Master

Ballot by the Voting Deadline, and (iv) retain the underlying Beneficial Ballots received from the Beneficial Owners for inspection for a period of one (1) year following the Voting Deadline.

25. Creditors who have more than one Claim shall receive only one Solicitation Package and one Ballot for each Claim.

26. Each holder of a Claim or Old Equity Interest shall be entitled to vote to accept or reject the Plan in the amount of such Claim or Old Equity Interest as is held on the Voting Record Date.

27. With respect to Claims, and solely for purposes of voting on the Plan:[4]

  a. If an objection has not been filed to a Claim, the amount of such Claim for voting purposes shall be the non-contingent, liquidated and undisputed Claim or Interest amount contained on a timely filed Proof of Claim or, if no Proof of Claim was timely filed, the non-contingent, liquidated and undisputed amount of such Claim listed in the Schedules;

  b. If a Claim for which no Proof of Claim has been timely filed is wholly contingent, unliquidated or disputed, undetermined or unknown in an amount such Claim shall be temporarily allowed in the amount of $1.00 for voting purposes only, and not for purposes of allowance or distribution;

  c. If a Claim is partially liquidated and partially unliquidated, such Claim shall be allowed for voting purposes only in the liquidated amount;

  d. If an objection to a timely filed Claim is filed, such Claim or Interest shall be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection;

  e. Proofs of Claim or Interest filed for $0.00 are not entitled to vote;

  f. Notwithstanding anything to the contrary contained herein, any Creditor who has filed or purchased one or more duplicate Claims within the same Voting Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

---

[4] In the procedures that follow, the use of the term "Ballot" refers to all ballots as appropriate.

g. If a Claim is the subject of an amended Proof of Claim, the originally filed Proof of Claim shall be deemed superseded by the later filed amended Proof of Claim, regardless of whether or not the Debtors have objected to such Claim, and only the amended Proof of Claim shall be used for the purpose of determining voting eligibility in accordance with the provisions herein;

h. For purposes of the numerosity requirement of § 1126(c), separate Claims held by a single Creditor in a particular Class shall be aggregated as if such Creditor held one Claim against the Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

i. If a Claim has been Disallowed by agreement of the applicable Creditor or order of the Court at any time before the Voting Deadline, such Claim shall also be Disallowed for voting purposes;

j. If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution; and

28. With respect to Old Equity Interests, and solely for the purpose of voting on the Plan:

a. Votes cast by Beneficial Owners through a Nominee will be applied against the positions held by such entities in the applicable securities as of the Voting Record Date, as evidenced by the record and depository listings. Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Ballots, will not be counted in excess of the Record Amount of such securities held by such Nominee.

b. To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Ballots, the Claims Agent will make a reasonable attempt to reconcile discrepancies with the Nominees.

c. To the extent that overvotes on a Master Ballot or pre-validated Beneficial Ballots are not reconcilable prior to the preparation of the vote certification, the Claims Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Ballots that contained the overvote, but only to the extent of the Nominee's position in the applicable security.

d.  A single Nominee may complete and deliver to the Claims Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest properly completed Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot.

29. Creditors seeking temporary allowance of their Claims for voting purposes must serve the Notice Parties and file with the Court a motion seeking temporary allowance for voting purposes. Any such motion, with evidence in support thereof, must be filed no later than such date that will enable a hearing thereon to be held on or prior to the Voting Deadline. It shall be the responsibility of each Creditor filing such a motion to schedule a hearing thereon to occur at or prior to the Voting Deadline.

30. The following general voting procedures and standard assumptions be used in tabulating Ballots and Master Ballots:

a.  Except to the extent the Debtors otherwise determine, or as permitted by the Court, Ballots and Master Ballots received after the Voting Deadline will not be accepted or counted by the Debtors in connection with the confirmation of the Plan;

b.  Claims and Old Equity Interests shall not be split for purposes of voting; thus, each Creditor and Old Equity Holder shall be deemed to have voted the full amount of its Claim or Old Equity Interest either to accept or reject the Plan;

c.  Any executed Ballot or Master Ballot which does not indicate an acceptance or rejection shall not be counted;

d.  Any executed Ballot or Master Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

e.  Votes cast pursuant to a Ballot or Master Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

f.  Parties holding Claims or Interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

g.     The method of delivery of Ballots and Master Ballots to be sent to the Claims Agent is at the election and risk of each holder of a Claim or Interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot or Master Ballot is actually received by the Claims Agent;

h.     Delivery of the original, executed Ballot or Master Ballot to the Claims Agent on or before the Voting Deadline is required. Delivery of a Ballot or Master Ballot by facsimile, email or any other electronic means will not be accepted;

i.     No Ballot or Master Ballot sent to the Debtors, or the Debtors' financial or legal advisors, shall be accepted or counted;

j.     The Debtors expressly reserve the right, subject to the consent of the Plan Proponents, to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtors make material changes in the terms of the Plan the Debtors will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

k.     If multiple Ballots or Master Ballots are received from or on behalf of an individual holder of a Claim or Interest with respect to the same Claims or Interests prior to the Voting Deadline, the last properly completed Ballot or Master Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot or Master Ballot;

l.     If a Ballot or Master Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtors, must submit proper evidence satisfactory to the Debtors to so act in such capacity;

m.     The Debtors, in their sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot or Master Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Debtors may, in their sole discretion, reject such defective Ballot or Master Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

n.     Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots or Master Ballots will be determined by the Debtors, in their sole discretion, which determination shall be final and binding;

o.  If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such Claim or Interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

p.  Any holder of an Impaired Claim or Interest who has delivered a valid Ballot or Master Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

q.  Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots or Master Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots or Master Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

r.  Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots or Master Ballots, nor will any of them incur any liability for failure to provide such notification;

s.  No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots or Master Ballots to accept the Plan;

t.  The Ballot or Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

u.  The Ballot or Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim or Interest.

31.  The following additional procedures shall apply to the tabulation of Master Ballots cast by Nominees:

a.  Votes cast by Beneficial Owners through a Nominee will be applied against the positions held by such entities in the securities as of the Voting Record Date as evidenced by the record and depository listings. Votes submitted by a Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, will not be counted in excess of the Record Amount of such securities held by such Nominee;

b.  To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, the Claims Agent will attempt and is authorized to reconcile discrepancies with the Nominees; and

c. To the extent that overvotes on a Master Ballot or prevalidated Ballots are not reconcilable prior to the preparation of the vote certification, the Claims Agent will apply the votes to accept and to reject the Proposed Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or prevalidated Ballots that contained the overvote, but only to the extent of the Nominee's position in the security; and it is further

32. The Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit B**, is hereby approved.

33. The Debtors shall serve the Confirmation Hearing Notice by no later than _____, 2011, on (i) the U.S. Trustee, (ii) counsel to the Creditors' Committee, (iv) counsel to the Equity Committee, (iv) counsel to Lonestar Capital Management LLC, (v) counsel to Prescott Group Capital Management, (vi) counsel to Privet Opportunity Fund I, LLC, (vii) the Securities and Exchange Commission, (viii) all creditors on the list of creditors and equity security holders maintained by the Claims Agent in these chapter 11 cases, and (ix) those parties who requested notice pursuant to Bankruptcy Rule 2002.

34. The Notice of Voting Status, substantially in the form attached hereto as **Exhibit C**, is hereby approved.

35. The Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit D**, is hereby approved.

36. The letter of support of the Creditors' Committee attached hereto as **Exhibit E** is hereby approved.

37. Consistent with § 1126 and Bankruptcy Rule 3017(d), Solicitation Packages shall not be distributed to holders of claims or interests in the Non-Voting Classes (i.e., Classes 2, 8 and 9), provided however, that (i) members of Class 2 shall receive the Plan, the Disclosure Statement and the Confirmation Hearing Notice and (iii) members of Classes 8 and 9 shall

receive the Confirmation Hearing Notice, which notice includes instructions on how to obtain copies of the Solicitation Package, if so desired.

38. To the extent that the Debtors, in their sole discretion, elect to publish the Confirmation Hearing Notice, such publication substantially in the form of Confirmation Hearing Notice attached hereto as Exhibit B, is approved and the Debtors, to the extent that they elect to publish the Confirmation Hearing Notice, shall publish the Confirmation Hearing Notice in the national edition of *USA Today* on or before _____, 2011 and may pay the costs of such publication.

39. The Debtors are excused from re-mailing Solicitation Packages or the Confirmation Hearing Notice, as the case may be, to those entities whose addresses differ from the addresses in the claims register or the Debtors' records as of the Voting Record Date.

40. The Rights Offering Procedures are hereby approved; *provided, however,* the Debtors reserve the right, subject to the consent of the Backstop Purchasers, to make nonsubstantive modifications to the Rights Offering Procedures described in the Plan to the extent necessary to efficiently implement the Rights Offering.

41. The Rights Offering shall commence on the first Business Day following the Subscription Record Date (the "Subscription Commencement Date") and shall end on _____, 2011, at 5:00 p.m. prevailing Eastern time (the "Subscription Expiration Date"), (or such later date as the Debtors, subject to the approval of the Required Backstop Purchasers, may specify in a notice provided to the Backstop Purchasers before 9:00 a.m. (prevailing Eastern time) on the Business Day before the then current Subscription Expiration Date) (such period of time, the "Subscription Exercise Period"). After the expiration of the Subscription Exercise Period, any exercise of Rights by any Person shall be null and void and the Subscription Agent

shall not honor any such exercise of Rights, regardless of when the documents relating to such exercise were sent.

42. The Subscription Forms attached hereto as **Exhibit G** are hereby approved.

43. The Eligible Holders will not be obligated to exercise their Rights, but in order to properly exercise the Rights, an Eligible Holder must return a duly completed Subscription Form to the Subscription Agent, which form must be received by the Subscription Agent on or prior to 5:00 pm (prevailing Eastern Time) on the Subscription Expiration Date. On the Subscription Form, the Eligible Holder shall, among other things, (i) confirm that such Eligible Holder is an "accredited investor" within the meaning of Regulation D of the Securities Act, (ii) indicate whether such Eligible Holder is an Eligible Equity Holder or an Eligible Creditor, as applicable, (iii) if such Eligible Holder is an Eligible Equity Holder, indicate the number of Equity Rights it is exercising, and (iv) if such Eligible Holder is an Eligible Creditor, indicate the number of Creditor Rights it is exercising.

44. In addition, on or prior to 5:00 p.m. (prevailing Eastern time) on the Subscription Expiration Date, the Eligible Holder shall pay in Cash, by wire transfer in immediately available funds, an amount equal to the full Subscription Price in respect of the number of shares of New Common Stock issuable pursuant to the exercise of such Eligible Holder's Rights assuming the Backstop Purchasers would elect to increase the Rights Offering Amount to the Rights Offering Maximum (the "Rights Exercise Payment"). If the Subscription Agent for any reason does not receive from a given Eligible Holder both a timely and duly completed Subscription Form and timely payment of such Eligible Holder's Rights Exercise Payment, such Eligible Holder shall be deemed to have relinquished and irrevocably waived its right to participate in the Rights Offering; *provided* that, the Rights Exercise Payment of any DIP Lender or its affiliate (in its

capacity as a holder of Allowed Class 7 Old Equity Interests or Allowed Class 4 General Unsecured Claims, as the case may be) may, at the election of such DIP Lender and its affiliate, be reduced by or credited against any outstanding DIP Claims that the Company owes to such DIP Lender under the DIP Loan Agreement.

45. The payments received by the Subscription Agent in connection with the Rights Offering shall be deposited and held by the Subscription Agent in a trust account or similarly segregated account or accounts separate and apart from the Subscription Agent's general operating funds and any other funds subject to any lien or similar encumbrance and which segregated account or accounts shall be maintained for the purpose of holding such money for administration of the Rights Offering until the Effective Date. The Subscription Agent shall not use such funds for any other purpose prior to such date and shall not encumber or permit such funds to be encumbered with any lien or encumbrance. Each Eligible Holder intending to participate in the Rights Offering must affirmatively elect to exercise all of its respective Rights and make proper payment for the New Common Stock on or prior to 5:00 p.m. (prevailing Eastern time) on the Subscription Expiration Date. The exercise of Rights by an Exercising Holder shall be irrevocable.

46. To the extent an Exercising Holder is ultimately awarded fewer shares of New Common Stock than those for which such Eligible Holder subscribed, the Subscription Agent shall return to such Exercising Holder Cash (without any interest thereon) in immediately available funds in an amount equal to the product of (i) the Subscription Purchase Price and (ii) the difference between the number of shares of New Common Stock for which such Exercising Holder subscribed and the actual number of shares of New Common Stock issued to such Exercising Holder under the Rights Offering. In the event the Rights Offering fails to close,

the Subscription Agent shall return to the Exercising Holders all Cash paid in connection with the exercise of Rights pursuant to the Rights Offering.

47. If an objection to a timely filed Claim is filed, such Claim shall be disallowed for purposes of participation in the Rights Offering only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection. Creditors seeking temporary allowance of their Claims for purposes of participating in the Rights Offering must serve on the Notice Parties and file with the Court a motion seeking temporary allowance for purposes of participating in the Rights Offering. Any such motion, with evidence in support thereof, must be filed no later than such date that will enable a hearing thereon to be held on or prior to the Subscription Expiration Date. It shall be the responsibility of each Creditor filing such a motion to schedule a hearing thereon to occur at or prior to the Subscription Expiration Date.

48. The Debtors are authorized and empowered to take all actions and execute such other documents as may be necessary to implement the relief granted herein.

49. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2011

                                              Honorable Peter J. Walsh
                                              United States Bankruptcy Judge