**Exhibit B**

**The Liquidation Analysis**

# Point Blank Solutions, Inc.
# Liquidation Analysis

In connection with the *Joint Chapter 11 Plan of Reorganization* (the "Plan") [1] filed by the Plan Proponents.

This Liquidation Analysis should be read in conjunction with the Plan and the Disclosure Statement. The Liquidation Analysis was prepared for the purpose of evaluating whether the Plan meets the so-called best interests test under Section 1129(a)(7) of the Bankruptcy Code (the "Best Interests Test"). The Liquidation Analysis has been prepared assuming that the Debtors' Chapter 11 Cases are converted to Chapter 7 cases under the Bankruptcy Code on April 16, 2011, their assets are liquidated in accordance with the priority scheme prescribed by Chapter 7 of the Bankruptcy Code, and that a Chapter 7 trustee is appointed or elected to administer the liquidation of all of the Debtors' assets.

UNDERLYING THE LIQUIDATION ANALYSIS ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT LEGAL, ECONOMIC, COMPETITIVE, AND OPERATIONAL UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS' MANAGEMENT AND THEIR ADVISORS. NEITHER THE DEBTORS, ANY OF THE PLAN PROPONENTS, NOR THEIR RESPECTIVE ADVISORS AND ATTORNEYS MAKE ANY REPRESENTATION OR WARRANTY REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS OF A TRUSTEE'S ABILITY TO ACHIEVE FORECASTED RESULTS. ADDITIONALLY, VARIOUS LIQUIDATION DECISIONS UPON WHICH CERTAIN ASSUMPTIONS ARE BASED ARE SUBJECT TO CHANGE. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE ASSUMPTIONS AND ESTIMATES EMPLOYED IN DETERMINING THE LIQUIDATION VALUES OF THE DEBTORS' ASSETS WILL RESULT IN THE PROCEEDS WHICH WOULD BE REALIZED WERE THE DEBTORS TO UNDERGO AN ACTUAL LIQUIDATION AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE. THIS ANALYSIS HAS NOT BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.

NO REPRESENTATIONS CONCERNING THE DEBTORS' FINANCIAL CONDITION OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY THE PLAN PROPONENTS. THE FINANCIAL INFORMATION CONTAINED HEREIN, UNLESS OTHERWISE INDICATED, IS UNAUDITED. MOREOVER, AS SET FORTH IN SECTION III.B OF THE DISCLOSURE STATEMENT, BECAUSE OF THE DEBTORS' FINANCIAL DIFFICULTIES, AS WELL AS THE COMPLEXITY OF THE DEBTORS' FINANCIAL MATTERS, THE BOOKS AND RECORDS OF THE DEBTORS, UPON WHICH THIS LIQUIDATION ANALYSIS IN PART IS BASED, MAY BE INCOMPLETE OR INACCURATE. REASONABLE EFFORT HAS BEEN MADE, HOWEVER, TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

THE PLAN PROPONENTS, AS WELL AS THEIR COUNSEL AND ADVISORS, INCLUDING THE DEBTORS' COUNSEL AND ADVISORS, HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTORS IN CONNECTION WITH THIS LIQUIDATION ANALYSIS AND HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN. THE CONTENTS OF THIS LIQUIDATION ANALYSIS SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE. EACH CREDITOR OR INTEREST HOLDER SHOULD

---

[1] Capitalized terms used herein have the definitions ascribed in the Plan.

CONSULT HIS, HER OR ITS OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX, AND OTHER MATTERS CONCERNING ITS CLAIM AND/OR INTEREST.

*General Assumptions*

To illustrate compliance with the Best Interests Test described above, the Plan Proponents prepared a Liquidation Analysis for the Debtors on an enterprise basis. The results of the Liquidation Analysis and related assumptions are detailed in the subsequent pages.

The Plan Proponents first determined the net recovery proceeds that would be generated from a Chapter 7 orderly liquidation of all assets by a trustee appointed by the Bankruptcy Court. For preparation of the Liquidation Analysis, the Debtors used the estimated book value of assets as of April 16, 2011 was used. The Liquidation Analysis outlines a "Low Case," "Base Case" and "High Case" liquidation and recovery scenario. The Low Case and High Case provide an estimated range of recovery values based upon an orderly liquidation process. The recovery estimates represent a range based upon the Debtors' assumptions regarding the quality of the asset and current market dynamics in which to sell the asset.

The gross amount of cash available from liquidation of all assets and cash held by the Debtors is then applied to the wind-down costs incurred from the liquidation. In addition, prior to paying any Claims, the Debtors must pay wind-down costs, the Chapter 7 trustee, the trustee's professionals to assist in the wind-down, commissions on sale of equipment, and interest on the DIP Claims. Once all expenses related to the Chapter 7 process are paid, the net proceeds are applied to each class of Claims in order of absolute priority under the priority scheme prescribed under Chapter 7 of the Bankruptcy Code.

The Plan Proponents do not include estimates for additional Claims from the conversion to a Chapter 7 liquidation, including potential Claims from the rejection of executory contracts and/or unexpired leases pursuant to Section 365 of the Bankruptcy Code, potential Claims from the rejection of various management employment contracts, claims arising from the rejection of the Class Action Settlement Agreement or other causes of action or any possible claims from the Workers Adjustment and Retraining Notification Act ("WARN Act"). In addition, the Debtors have not estimated any proceeds from recovery of preference payments or fraudulent transfers.

THE ESTIMATED AMOUNT OF ALLOWED CLAIMS SET FORTH IN THE LIQUIDATION ANALYSIS SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE BEST INTERESTS TEST, INCLUDING, WITHOUT LIMITATION, ANY DETERMINATION OF THE VALUE OF ANY DISTRIBUTION TO BE MADE ON ACCOUNT OF ALLOWED CLAIMS UNDER THE CHAPTER 11 PLAN. THE LIQUIDATION ANALYSIS EXCLUDES ANY ESTIMATE OF RECOVERIES THAT MAY BE REALIZED FROM THE ESTATE CLAIMS DESCRIBED IN THE PLAN. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY AND SIGNIFICANTLY DIFFER FROM THE AMOUNT OF CLAIMS ESTIMATED IN THE LIQUIDATION ANALYSIS.

*Conclusion*

The Plan Proponents have determined that confirmation of the Plan will provide all holders of Allowed Claims a recovery that is equal to or greater than would be received pursuant to a Chapter 7 liquidation of the Debtors. Under the Base Case Liquidation Analysis for the Debtors on an enterprise basis, only the DIP Claims would receive a partial recovery with all other Claims and Equity Interests receiving no recovery.

A detailed summary of the Liquidation Analysis for the consolidated Debtors is illustrated on the following page.

# Point Blank Solutions Inc., et al.[1]
## Liquidation Analysis (as of 4/16/11)

| (US in 000's) | Notes | Book Value | Market Value | LOW CASE $ | LOW CASE % | BASE CASE $ | BASE CASE % | HIGH CASE $ | HIGH CASE % |
|---|---|---|---|---|---|---|---|---|---|
| Cash | (1) | 4,213.4 | 4,213.4 | 4,213.4 | 100.0% | 4,213.4 | 100.0% | 4,213.4 | 100.0% |
| **Accounts Receivable** | (2) | | | | | | | | |
| Total Trade AR | | 11,882.0 | 11,882.0 | 9,098.0 | 76.6% | 10,521.4 | 88.5% | 10,947.2 | 92.1% |
| Plus: Other AR | | 656.2 | 656.2 | 227.1 | 34.6% | 265.5 | 40.5% | 281.3 | 42.9% |
| Less: AR Adjustments | | (60.9) | (60.9) | (60.9) | | (60.9) | | (60.9) | |
| **Total Recoverable AR** | | 12,477.4 | 12,477.4 | 9,264.2 | 74.2% | 10,726.0 | 86.0% | 11,167.6 | 89.5% |
| **Inventory** | (3) | | | | | | | | |
| Finished Goods | | 3,117.1 | 3,117.1 | 2,337.8 | 75.0% | 2,649.5 | 85.0% | 2,961.2 | 95.0% |
| WIP Inventory | | 1,229.0 | 1,229.0 | 553.0 | 45.0% | 614.5 | 50.0% | 675.9 | 55.0% |
| Raw Ballistic Material | | 13,426.9 | 13,426.9 | 3,356.7 | 25.0% | 4,028.1 | 30.0% | 4,699.4 | 35.0% |
| Zylon Inventory | | 9,610.2 | 9,610.2 | 480.5 | 5.0% | 961.0 | 10.0% | 1,441.5 | 15.0% |
| **Total Recoverable Inventory** | | 27,383.2 | 27,383.2 | 6,728.1 | 24.6% | 8,253.1 | 30.1% | 9,778.1 | 35.7% |
| **Other Assets** | (4) | | | | | | | | |
| Prepaid Trade Show | | 18.4 | 18.4 | 9.2 | 50.0% | 12.0 | 65.0% | 14.7 | 80.0% |
| Prepaid Rent | | 108.0 | 108.0 | 86.4 | 80.0% | 91.8 | 85.0% | 97.2 | 90.0% |
| Other Prepaid Expenses | | 341.2 | 341.2 | 85.3 | 25.0% | 102.4 | 30.0% | 119.4 | 35.0% |
| Professional Retainers | | 122.5 | 122.5 | 98.0 | 80.0% | 104.2 | 85.0% | 110.3 | 90.0% |
| Prepaid Insurance | | 705.4 | 705.4 | 352.7 | 50.0% | 458.5 | 65.0% | 564.3 | 80.0% |
| Cash Collateralized Letter of Credit | | 377.0 | 377.0 | 188.5 | 50.0% | 245.1 | 65.0% | 301.6 | 80.0% |
| Prepaid Material | | 1,002.7 | 1,002.7 | 250.7 | 25.0% | 300.8 | 30.0% | 351.0 | 35.0% |
| **Total Recoverable Other Assets** | | 2,675.4 | 2,675.4 | 1,070.9 | 40.0% | 1,314.7 | 49.1% | 1,558.6 | 58.3% |
| **Fixed Assets** | (5) | | | | | | | | |
| Furniture & Fixtures | | 1,236.8 | 1,236.8 | 185.5 | 15.0% | 247.4 | 20.0% | 309.2 | 25.0% |
| Machinery & Equipment | | 3,530.2 | 3,530.2 | 529.5 | 15.0% | 706.0 | 20.0% | 882.5 | 25.0% |
| Computer Equipment | | 1,078.7 | 1,078.7 | 161.8 | 15.0% | 215.7 | 20.0% | 269.7 | 25.0% |
| Transportation Vehicles | | 58.0 | 58.0 | 8.7 | 15.0% | 11.6 | 20.0% | 14.5 | 25.0% |
| Computer Software | | 5,126.0 | 5,126.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Construction-in-Process | | 8.6 | 8.6 | - | 0.0% | - | 0.0% | - | 0.0% |
| Leasehold Improvements | | 1,157.8 | 1,157.8 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Recoverable Fixed Assets** | | 12,195.9 | 12,195.9 | 885.5 | 7.3% | 1,180.7 | 9.7% | 1,475.9 | 12.1% |
| **Gross Liquidation Proceeds before Intercompany Accounts & Liquidation Expenses** | | | | 22,162.1 | | 25,688.0 | | 28,193.6 | |
| **Non-Allocated Liquidation Expenses** | (6) | | | | | | | | |
| Wind Down Costs | | | | (1,558.2) | | (1,947.8) | | (2,337.4) | |
| Trustee & Receiver Fees | | | 3.0% | (539.3) | | (645.1) | | (720.2) | |
| Commission on Equipment Sale | | | 5.0% | (44.3) | | (59.0) | | (73.8) | |
| **Non-Allocated Total Liquidation Expenses** | | | | (2,141.8) | | (2,651.9) | | (3,131.4) | |
| **Net Liquidation Proceeds before Intercompany Accounts & Allocated Expenses** | | | | 20,020.3 | | 23,036.1 | | 25,062.2 | |
| **Allocated Liquidation Expenses** | (7) | | | | | | | | |
| Counsel for Trustee | | | | (269.6) | | (322.5) | | (360.1) | |
| DIP Interest Expense | | | | (560.0) | | (700.0) | | (840.0) | |
| Professional Fees | | | | (1,200.0) | | (1,500.0) | | (1,800.0) | |
| **Total Allocated Liquidation Expenses** | | | | (2,029.6) | | (2,522.5) | | (3,000.1) | |
| **Net Liquidation Proceeds before Intercompany Accounts** | | | | 17,990.7 | | 20,513.5 | | 22,062.1 | |
| **Intercompany Accounts** | (8) | | | | | | | | |
| Intercompany Assets | | 153,051.4 | 153,051.4 | - | 0.0% | - | 0.0% | - | 0.0% |
| Plus: Affiliate AR | | 2,950.0 | 2,950.0 | - | 0.0% | 88.5 | 3.0% | 147.5 | 5.0% |
| **Total Intercompany Accounts** | | 156,001.4 | 156,001.4 | - | 0.0% | 88.5 | 0.1% | 147.5 | 0.1% |
| **Proceeds Available for Distribution** | | | | 17,990.7 | | 20,602.0 | | 22,209.6 | |

| | Notes | Book Value | Market Value | $ | % | $ | % | $ | % |
|---|---|---|---|---|---|---|---|---|---|
| | | | | ESTIMATED RECOVERY ACCORDING TO ABSOLUTE PRIORITY | | | | | |
| Class 2 - DIP Claims[2] | (9) | 30,438.5 | | 17,990.7 | 59.1% | 20,602.0 | 67.7% | 22,209.6 | 73.0% |
| Unclassified - Administrative Expenses[2] | (10) | 8,038.2 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 1 - Other Priority Claims | (11) | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Unclassified - Priority Tax Claims | (12) | 1,522.2 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 3 - Miscellaneous Secured Claims | (13) | 51.8 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 4 - General Unsecured Claims | (14) | 200,007.6 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 5 - Subordinated Unsecured Claims | (15) | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 6 - Class Action/Derivative Claims | (16) | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 7 - Old Equity Interests | (17) | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 8 - Other Sub. Claims & Interests | (18) | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Class 9 - Unexercised Options | (19) | - | | - | 0.0% | - | 0.0% | - | 0.0% |

**Notes:**
(1) Any potential proceeds Estate Claims described in Article 8 of the Plan are not included in the recoveries above as they are currently unknown as to the amount and timing and may be significantly reduced in the event of a Chapter 7 liquidation.

(2) Each Debtor is jointly and severally liable on the DIP Claims.

(3) The forgoing does not estimate the amount payable to Professionals employed during the Debtors' Chapter 11 case with respect to the Carve-Out allocated to payment of Professional Fee Claims pursuant to the terms of the DIP Loan Agreement.

5

*Notes to the Liquidation Analysis*

1. **Cash**

   The cash balance for the Debtors consists of all estimated unrestricted cash in various deposit, disbursement and operating accounts as of April 16, 2011. The cash balances reflected in the Liquidation Analysis does not include amounts for outstanding checks (i.e., net of check float). The Liquidation Analysis assumes that cash will remain the same under each scenario and that all cash will be recovered. It is also assumed that the cash balances are not impacted by the effects of operations during the wind-down period. See Notes 6 and 7 for further detail regarding costs related to the liquidation and wind-down.

2. **Accounts Receivable**

   Accounts receivable primarily consist of trade accounts from customers in the US and other countries resulting from the sale of various protective apparel products. The estimated accounts receivable balances detailed in the Liquidation Analysis reflect the estimated book value as of April 16, 2011 and exclude any reserves for bad debt. Recovery on the trade accounts receivable are estimated to range from 0% to 98% and is dependent upon a number of factors, including age of the receivable, the existence of potential customer offsets, and the nature of the transaction and type of customer. It is assumed that a Chapter 7 trustee would collect on the existing accounts receivable using current resources of the Debtors. The Liquidation Analysis assumes that the majority of trade accounts receivable would be collected within 3 months. The recovery estimates are based upon the assessment of the age, customer, and quality of the accounts. It is assumed that intercompany accounts will be settled among all Debtor and non-debtor companies through a parallel liquidation, which is described further in Note 8. Only Point Blank Body Armor, Inc. ("PBBA") and Protective Apparel Corporation of America ("PACA") have trade accounts receivable to external third parties. PBSS, LLC is a non-operating entity that holds the 50% equity interest in Life Stone Materials, LLC.

   Other accounts receivable balances at PBBA consist of rebates earned from ballistic material purchased and are assumed to be paid to PBBA in cash with an estimated recovery of 85% to 98% depending on the scenario. Other accounts receivable at Point Blank Solutions Inc. ("PBSI") consist of an estimated recovery on outstanding accounts from an entity sold in December 2009. As part of the transaction in 2009, PBSI maintained certain outstanding accounts and continued to invoice for products shipped to one customer that maintains certain raw material inventory. Recoveries of these accounts are expected to be up to 3% on the outstanding book value of the receivables due to aging of these receivables and low probability of collection thereof in a Chapter 7 case.

   Adjustments to accounts receivable include cash amounts that have yet to be applied to the Debtors' account balances.

3. **Inventory**

   Inventories include raw materials (both ballistic and non-ballistic material), work-in-process inventory and finished product. The Plan Proponents assume the liquidation of finished goods inventory will occur through the sale of final products to existing customers with an estimated 75% to 95% recovery. The Plan Proponents believe finished inventory will be liquidated at a relatively high recovery value as existing customers will continue to receive product under existing contracts or PO's and continue to order product to minimize disruption to their respective supply chains. Work-in-process inventory is treated in the same manner as finished goods; however, a lower recovery of 45% to 55% is utilized to account for additional costs to produce a finished product.

The Liquidation Analysis assumes the trustee will sell all raw materials as-is for essentially scrap value at an estimated 25% to 35% recovery on estimated book value.

Inventory at PBSI consists of finished goods inventory at a subcontractor related to the entity sold in December 2009 in addition to Zylon ballistic fabric, which the Debtors can no longer utilize due to ballistic integrity issues. It is assumed that the Zylon fabric would be sold for scrap at an estimated 5% to 15% of book value and would not be used in any protective apparel.

### 4. *Other Assets*

Other assets primarily include prepaid expenses, professional retainers and deposits. Recovery estimates are based upon the nature of the asset, possible use of the asset during the liquidation process and an estimate of recovery value under a liquidation scenario. A description of each asset and certain recovery assumptions are illustrated below.

- **Prepaid Trade Show:** Certain trade shows the Debtors attend as a vendor require payment prior to the actual event. The Debtors assume an estimated 50% to 80% recovery of the amount sent as an advance payment.

- **Prepaid Rent:** Rent paid in advance for both the Pompano Beach, FL and Jacksboro, TN production facilities. The Debtors estimate a recovery of between 80% to 90% of these payment amounts (net of repair costs) as the projected wind-down costs include keeping current on rent expense through the two-month time period.

- **Other Prepaid Expenses:** Miscellaneous prepaid expenses, most of which is estimated to be non-recoverable under a liquidation are estimated at 25% to 35% recovery.

- **Professional Retainers:** Retainers related to various law firms and other professional retained by the Debtors to assist in the bankruptcy process. It is assumed the Debtors would recover unused and unapplied professional retainers to the extent that any amounts are due back to the Debtors.

- **Prepaid Insurance:** Prepaid insurance primarily related to the D&O liability policy and general liability policy. The Debtors' estimate recovery of an estimated 50% to 80% of the prepaid insurance as the policies allow for a pro-rata refund and the projected wind-down costs include the payment of insurance during the two-month period in a Chapter 7 case.

- **Cash Collateralized Letter of Credit:** The Debtors were previously required to fund the outstanding letters of credit in cash. Most of the cash collateral relate to payment of open workers' compensation claims and should remain in the deposit accounts. It is uncertain what the Debtors would recover based on the amounts held by the various holders of the cash collateral to secure outstanding obligations although there are few remaining open claims.

- **Prepaid Material:** Since the Petition Date, a majority of the Debtors' suppliers have required payment prior to delivery. The prepaid material amount reflects all payments to material vendors prior to shipment. Assuming the vendors have not shipped yet, the Plan Proponents estimate that they could recover the cash amount of the pre-paid payment. However, if the vendor has shipped the Debtors will most likely receive the raw material. The Base Case

7

recovery on the prepaid material is conservatively estimated at the raw material recovery rate of between 25% to 35%.

### 5. Fixed Assets

Fixed assets include furniture and fixtures, machinery and equipment, rolling stock, capitalized computer software, leasehold improvements, and the value of in-process construction projects. A recovery of 15% to 25% is assured on furniture and fixtures, machinery and equipment, computer equipment and rolling stock as the book value of the equipment as the re-sell market for this equipment is depressed due to the general economic climate.

The value of in-process construction primarily relates to various improvement projects at the facilities and is reflected at book value. In addition, computer software consists of costs related to the implementation of the Debtors' accounting software, including Oracle, Hyperion and Jesta. No recovery is assumed on each of the preceding fixed asset items as it is unlikely any re-sell value exists.

### 6. Non-Allocated Liquidation Expenses

The non-allocated liquidation expenses consist of the estimated direct costs to wind-down the business operations in order to complete the Chapter 7 liquidation of the Debtors. Detailed below are the primary items related to the liquidation.

- **Wind-Down Costs:** Under the Base Case liquidation scenario it is assumed the Chapter 7 liquidation process will take 2 months to complete. Assumed expenses are based upon recent historical averages and run-rates and do not include any expenses for capital expenditures.

- **Trustee & Receiver Fees:** The Chapter 7 trustee fee category consists of a 3% estimated payment rate of all proceeds (excluding cash) received from the liquidation and recovery of the Debtors' assets. Compensation for the Chapter 7 trustee will be limited to the fee guidelines in Section 326 of the Bankruptcy Code.

- **Commission on Equipment Sale:** In order to efficiently liquidate the Debtors' fixed assets, the Chapter 7 trustee must engage an equipment liquidator and auctioneer. Compensation for the auctioneer is estimated at 5% of all proceeds related to the sale of the Debtors fixed assets, including real estate, buildings, equipment and rolling stock.

### 7. Allocated Liquidation Expenses

Allocated liquidation expenses consist of the estimated costs to wind-down the business operations in order to complete the Chapter 7 liquidation of the Debtors. Detailed below are the primary items related to the liquidation.

- **Counsel for Trustee:** Compensation for trustee's counsel is estimated at 50% of the budgeted trustee fees.

- **DIP Interest Expense:** Interest on the DIP facility for the two months during the wind-down process at the default rate of Prime Rate plus 13.2%.

- **Professional Fees:** Professional fees represent the costs incurred during the Chapter 7 liquidation process for financial advisors, attorneys and other professionals. The Base Case assumes the payment of $1.5 million for two months, while the Low Case assumes a payment at 80% of the Base Case and the High Case assumes a payment at 120% of the Base Case.

### 8. Intercompany Accounts

The Debtors' intercompany accounts receivable balances are assumed to be recoverable *pari passu* with the General Unsecured Claims of each Debtor. To estimate recovery on intercompany receivables, each Debtor and non-debtor entity is liquidated, with the proceeds applied to the obligations of each entity according to the absolute priority rule. Excess proceeds after the payment of all liabilities are distributed to PBSI and included in the intercompany accounts line item.

### 9. Class 2 – DIP Claims

Each Debtor is jointly and severely liable on the DIP Claims. The DIP Claims include the DIP credit facility, which currently has $25 million outstanding and is expected to remain unchanged as of April 16, 2011. In addition, the Class estimates $5.4 million in post-petition professional fees, which are allowed the same treatment as the DIP facility in accordance with the Professional Fee carve-out described in the Final DIP Order filed on December 28, 2010. Under a Chapter 7 liquidation scenario, the DIP Claims would only expect to receive approximately 68% recovery under a Low Case and a 73% recovery under a High Case.

### 10. Unclassified – Administrative Claims

Administrative Claims include the following obligations that are entitled to priority status under the Bankruptcy Code: (i) Section 503(b)(9) claims related to the value of goods received by the Debtors within 30 days prior to the Petition Date; (ii) outstanding post-petition accounts payable as of April 16, 2011; (iii) post-petition accrued expenses that have been incurred and are currently outstanding, and (iv) Professional Fee Claims. The Liquidation Analysis illustrates that the holders of Administrative Claims would not receive a recovery under any Chapter 7 liquidation scenario, subject to payment of any Professional Fee Claims in accordance with the terms of the Final DIP Order and the carve out provisions set forth therein.

### 11. Class 1 – Other Priority Claims

Other Priority Claims include any employee-related claims, including unpaid pre-petition vacation, employee wages and commissions. Under the Chapter 7 liquidation analysis, the Other Priority Claims would receive no recovery under any case.

### 12. Unclassified – Priority Tax Claims

Priority Tax Claims include an estimate of settlements related to various unpaid tax claims. Under the Chapter 7 liquidation analysis, the Priority Tax Claims would receive no recovery under any case.

### *13. Class 3 – Miscellaneous Secured Claims*

Miscellaneous Secured Claims include any filed mechanics liens, insurance premium financing policies or any other Claim that has a lien on specific assets of the Debtors. Under the Chapter 7 liquidation analysis, the Miscellaneous Secured Claims would receive no recovery.

### *14. Class 4 - General Unsecured Claims*

The General Unsecured Claims in a Chapter 7 liquidation would include pre-petition accounts payable, severance payments outstanding, contract rejection claims related to executory and unexpired leases rejected prior to the Chapter 7 conversion and claims related to litigation. General Unsecured Claims include intercompany obligations, which are assumed to be settled among each Debtor and non-debtor company through a parallel liquidation of assets and payment of obligations at each Debtor or non-debtor. In a Chapter 7 liquidation, the General Unsecured Claims would not receive a recovery in any scenario.

### *15. Class 5 – Subordinated Unsecured Claims*

The Subordinated Unsecured Claims include all those Claims subordinated in priority and right of payment to the General Unsecured Claims. This Class is not expected to receive a recovery in a Chapter 7 liquidation.

### *16. Class 6 - Class Action/Derivative Claims*

The Class Action/Derivative Claims consist of any Claim arising out of or relating to *In re DHB Industries, Inc. Class Action Litigation* (No. CV 05-4296) in the United States District Court for the Eastern District of New York, including claims of attorneys and other professionals arising therefrom. This Class is not expected to receive a recovery in a Chapter 7 liquidation.

### *17. Class 7 - Old Equity Interests*

Old Equity Interests consist of all equity security interests in the Parent. This class is not expected to receive a recovery under a Chapter 7 liquidation scenario.

### *18. Class 8 - Other Subordinated Claims & Interests*

Other Subordinated Claims and Interests involve any Claims related to the Debtors' successful rejection of the Class Action Settlement Agreement that may be subordinated under Section 510 of the Bankruptcy Code. Under a Chapter 7 liquidation scenario, this Class would not receive a recovery.

### *19. Class 9 - Unexercised Options*

Unexercised Options include any options currently outstanding for the purchase of the Debtors' common stock. The Class is projected to receive no recovery under a Chapter 7 liquidation.