# Carl Wegerer, III

P.O. Box 850515
Mesquite, Texas 75185-0515
(972) 289-4026
(214) 455-2787 cell
wegerer@swbell.net

February 2, 2011

EXPRESS MAIL

The Honorable Peter J. Walsh
United States Bankruptcy Court – District of Delaware
824 North Market Street 6th Floor
Court 2
Wilmington, DE 19801

RE: in re Point Blank Solutions, Inc., et al (the "Debtors"), Case No. 10-11255 (PJW)

Dear Judge Walsh:

My wife, Tammy, and I are shareholders of Point Blank Solutions, Inc. and currently own 5,000 shares. We support the *Shareholder Objection to the Debtor's Disclosure Statement* filed by equity holder Rodney McFadden [Docket 1051].

The *Chapter 11 Plan of Reorganization* [Docket 1006] and *Disclosure Statement* [Docket 1007], filed on January 11, 2011, provides for disparate treatment for certain Holders of Old Equity Interests within Class 7 who are not "Accredited Investors". At the time, it neither defined the term "Accredited Investors" nor provided meaningful guidance as to the meaning of the term or its importance. The *Disclosure Statement* also did not provide any range or timing of any potential distributions to Holders of Class 6 (Class Action Claims) and Class 7 (Old Equity Interests) who are not "Accredited Investors" under the proposed Plan of Reorganization. A *Summary of Terms* (Exhibit F) was filed on January 28, 2011 [Docket 1067]. A copy is attached for convenience.

Plans like this one are often designed so a specific investor or group of investors gain control at the expense of Legacy Shareholders. Under the Direct Subscription component, Privet Fund Management LLC and Prescott Group Capital Management will subscribe to 42.29 percent of total shares of New Common Stock (21.79 percent to Privet and 20.50 percent to Prescott).

Prescott owned only 9.5 percent of the company on the Petition Date according to the *Disclosure Statement* (page 15).

Those deemed "Accredited Investors" will be allocated 17.71 percent of total shares of New Common Stock. The slots will be limited to 100 subscribers (determined according to the size of the subscription) with up to 200 slots from the Creditor Rights Offering may be reallocated to Equity Rights Offering if unused by Eligible Creditors. Total pro forma equity holders will be limited to 400 (excluding Lonestar Capital Management, LLC, Privet , Prescott and their respective affiliates).

In the event that all the initial subscriptions and oversubscription elections do not equal or exceed the Equity Rights Offering amount, Privet and Prescott (severally not jointly) will each purchase 50 percent of all unsubscribed shares in the Equity Rights Offering. Thus, an opportunity for those two investors to further enhance their respective stakes in the company.

The minimum for an "Accredited Investor" to participate is no a small amount - $35,000. Thus, many, if not most, shareholders would be precluded from participating in the rights offering without the

"Accredited Investor" requirement, which results in receiving less than others in Class 7, in violation of section 1123 (a) (4) of the Code.

Section 1123(a) (4) states that "a plan shall - ... (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. §1123(a) (4).

The Court should order that both the "Accredited Investor" requirement and $35,000 minimum investment be removed with the Plan being further modified to allow all Legacy Shareholders the opportunity to participate in the Rights Offering on equal terms. I have no issue with Privet and Prescott acting as Backstop Investors under the Equity Rights Offering.

As a private investor, I have been involved in several rights offerings. Most recently, I participated in the "open bank" restructuring of Pacific Capital Bancorp. An investment group injected $500 million in new capital in exchange for 91 percent of the equity. The United States Department of Treasury owned 7 percent after exchanging preferred stock and warrants issued under the TARP Capital Purchase Program. Legacy Shareholders were left holding only 2 percent. Most importantly, Legacy Shareholders were given rights to buy stock at the same price paid by investor group and conversion value used for the Treasury stake, which would have increase their stake to 20 percent. However, Legacy Shareholders subscribed for only 52 percent of the shares available for purchase. But, all Legacy Shareholders were given a chance.

Under such a modification, Privet and Prescott could still gain control, while those Legacy Shareholders who chose to subscribe could continue to have a stake in the reorganized company. Since it is rare for Chapter 11 cases to have equity intact upon confirmation, equity holders should be able to profit in the future prosperity of the company.

*In re Washington Mutual, Inc.*, on January 7, 2011, Judge Walrath wrote in her *Opinion Denying Confirmation of Sixth Amended Plan of Reorganization*, "The right to buy stock into a company does have some inherit value; it includes the "upside" if the company is successful." (pages 96-97) [Docket 6528].

I am hopeful you will take my comments as well as any from other concerned Legacy Shareholders under consideration. Thank you for your time.

Sincerely,

*[signature]*

Carl Wegerer, III

Counsel for the Debtors

Laura Davis Jones, Esq.
Timothy Cairns, Esq.
Pachulski Stang Ziehl & Jones, LLP					7009 3410 0000 4159 4975
919 North Market Street, 17th Floor
Wilmington, DE 19801

and

David M. Bertenthal, Esq.
Joshua M. Fried, Esq.
Pachulski Stang Ziehl &Jones LLP					7009 3410 0000 4159 4999
150 California Street, 15th Floor
San Francisco, CA 94111

Counsel for the Creditors' Committee

Frederick B. Rosner, Esq.
Brian L. Arban, Esq.
Messana Rosner & Stern, LLP						7010 1870 0000 4575 4252
1000 N. West Street, Ste. 1200
Wilmington, DE 19801

and

Robert M. Hirsh, Esq.
George Angelich, Esq.
Arent Fox LLP										7010 1870 0000 4575 4269
1675 Broadway
New York, New York 10019

Counsel for the Equity Committee

Michael R. Dal Lago, Esq.
Morrison Cohen LLP									7010 1870 0000 4575 4276
909 Third Avenue
New York, New York 10022

and

Neil B. Glassman, Esq
Bayard, P.A.
222 Delaware Avenue, Ste. 900						7010 1870 0000 4575 4283
Wilmington, DE 19899

Counsel to Privet Opportunity Fund I, LLC and Privet Fund Management LLC

Edward J. Estrada, Esq.
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, New York 10022

7010 1870 0000 4575 4344

and

Kurt F. Gwynne, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

7010 1870 0000 4575 4351

Counsel to Prescott Group Capital Management

Richard Palacio, Esq.
Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

7010 1870 0000 4575 4368

Counsel to Lonestar Capital Management, LLC

David B. Stratton, Esq.
Pepper Hamilton LLP
Hercules Plaza, Ste. 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801-1709

7010 1870 0000 4575 4375

and

David P. Simonds, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Ste. 2400
Los Angeles, CA 90067-3010

7010 1870 0000 4575 4405

and

Michael P. Cooley, Esq.
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Ste. 4100
Dallas, Texas 75201-4675

7010 1870 0000 4575 4412

United States Trustee

Jane M. Leamy, Esq.
United States Trustee
844 N. King St, Ste 2207
Lock Box 35
Wilmington, DE 19801

7010 1870 0000 4575 4337

# EXHIBIT F

# Summary of Terms
# Rights Offering and Direct Subscription

The following is a summary of the revised terms of the Rights Offering and related direct subscription, which will be reflected in an amended Plan to be filed prior to the hearing on the Disclosure Statement. This is intended as a summary of the principal economic terms only, and remains subject to final documentation and incorporation into the amended Plan. Capitalized terms used but not defined herein have the meanings assigned to them in the Plan.

## Creditor Rights Offering

| | |
|---|---|
| Eligibility | Each holder of an Allowed Class 4 General Unsecured Claim that is an Eligible Creditor. To participate, an Eligible Creditor must qualify as an "accredited investor" within the meaning of Regulation D of the Securities Act and meet certain other criteria as described in the Plan. |
| Share Allocation | 40% of total shares of New Common Stock. |
| | For a total equity offering of $15,000,000, the Creditor Rights Offering will be for $6,000,000. For a total equity offering of $25,000,000, the Creditor Rights Offering will be $10,000,000. |
| Slots Available | Limited to 300 subscribers (determined according to size of subscription). Up to 200 slots from Creditor Rights Offering may be reallocated to Equity Rights Offering if unused by Eligible Creditors. |
| | Total *pro forma* equity holders of Reorganized Parent as of the Effective Date will be limited to 400 (exclusive of Lonestar, Privet and Prescott and their respective affiliates). |
| Subscription | Each such Eligible Creditor shall receive Creditor Rights that will grant such holder the right, but not the obligation, to subscribe for and purchase, at the Subscription Price, a portion of the New Common Stock, up to such Eligible Creditor's Creditor Rights Offering Pro Rata Share of New Common Stock; *provided*, that (A) an Eligible Creditor must subscribe for at least $35,000 of New Common Stock, and (B) if an Eligible Creditor's pro rata share of the total Rights Participation Amount for Allowed Class 4 General Unsecured Claims entitles such Eligible Creditor to less than $35,000 of New Common Stock, then such Eligible Creditor must exercise all its Creditor Rights in order to subscribe for and purchase New Common Stock. |
| | Subscription amounts are calculated based on the maximum Creditor Rights Offering amount of $10,000,000, notwithstanding that the Creditor |

| | |
|---|---|
| | Rights Offering is assumed to be in the amount of $6,000,000, and will not be increased except with the consent of the Backstop Purchasers. If the Creditor Rights Offering is ultimately consummated in an amount less than the maximum, the different in purchase price will be refunded. |
| Oversubscription | n/a |
| Backstop | In the event that the sum of all subscriptions does not equal or exceed the Creditor Rights Offering amount, Lonestar will purchase all unsubscribed shares in the Creditor Rights Offering. |

## **Equity Rights Offering**

| | |
|---|---|
| Eligibility | Each holder of Class 7 Old Equity Interests that is an Eligible Equity Holder; *provided*, that Privet and Prescott will not participate in the Equity Rights Offering. To participate, an Eligible Equity Holder must qualify as an "accredited investor" within the meaning of Regulation D of the Securities Act and meet certain other criteria as described in the Plan. |
| Share Allocation | 17.71% of total shares of New Common Stock.<br><br>For a total equity offering of $15,000,000, the Equity Rights Offering will be for $2,656,500. For a total equity offering of $25,000,000, the Equity Rights Offering will be for $4,427,500. |
| Slots Available | Limited to 100 subscribers (determined according to size of subscription). Up to 200 slots from Creditor Rights Offering may be reallocated to Equity Rights Offering if unused by Eligible Creditors.<br><br>Total *pro forma* equity holders of Reorganized Parent as of the Effective Date will be limited to 400 (exclusive of Lonestar, Privet and Prescott and their respective affiliates). |
| Initial Subscription | Each such holder shall receive Equity Rights that will grant such holder the right, but not the obligation, to subscribe for and purchase, at the Subscription Price, a portion of the New Common Stock that is not less than the minimum amount and not more than the maximum amount set forth below:<br><br>Minimum Amount: $35,000<br><br>Maximum Amount: An amount equal to the lesser of (i) 2.0 times such Eligible Holder's pro rata share of New Common Stock being issued in the Equity Rights Offering and (ii) 20% of the aggregate Equity Rights Offering. For purposes of this calculation, an Eligible Holder's pro rata share is calculated as follows: |

$$\frac{\text{Such Eligible Equity Holder's Old Equity Interests}}{\text{Total Old Equity Interests held by all Eligible Equity Holders (excluding Privet and Prescott)}} \quad X \quad \$4,427,500$$

For illustrative purposes, the upper limit to the Maximum Amount in a $15,000,000 total equity offering would be $531,300. The upper limit to the Maximum Amount in a $25,000,000 total equity offering would be $885,500.

Subscription amounts are calculated based on the maximum Equity Rights Offering amount of $4,427,500, notwithstanding that the Equity Rights Offering is assumed to be in the amount of $2,656,500, and will not be increased except with the consent of the Backstop Purchasers. If the Equity Rights Offering is ultimately consummated in an amount less than the maximum, the difference in purchase price will be refunded.

Shares of affiliated entities will be aggregated for purposes of calculating the Minimum and Maximum Amounts.

If the Equity Rights Offering is oversubscribed, all initial subscriptions will be reduced on a pro rata basis.

| | |
|---|---|
| Oversubscription | Simultaneously with the initial subscription, Exercising Holders may elect to receive oversubscription rights (should the initial subscription not be fully subscribed) in an amount not less than $1.00 and not more than the amount of such holder's initial subscription. By way of example, an Exercising Holder that subscribes for $50,000 of New Common Stock in the Equity Rights Offering may elect to oversubscribe for an additional amount from $1.00 to $50,000. |

If the Equity Rights Offering is fully subscribed, no further action will be taken in connection with the oversubscription, and all amounts paid in connection therewith will be refunded.

If the Equity Rights Offering is undersubscribed as a result of the initial subscription, but oversubscribed as a result of the exercise of oversubscription rights, all initial subscriptions will be accepted for the full dollar amount subscribed, and all oversubscriptions will be reduced on a pro rata basis.

| | |
|---|---|
| Backstop | In the event that the sum of all initial subscriptions and oversubscription elections does not equal or exceed the Equity Rights Offering amount, Privet and Prescott (severally not jointly) will each purchase 50% of all unsubscribed shares in the Equity Rights Offering. |

## Direct Subscription

| | |
|---|---|
| Eligibility | Privet and Prescott shall subscribe for the Subscription Shares. |
| Share Allocation | 42.29% of total shares of New Common Stock: 21.79% to Privet and 20.50% to Prescott. |

For a total equity offering of $15,000,000, the direct subscription will be for $6,343.500. For a total equity offering of $25,000,000, the direct subscription will be for $10,572,500.