**FINAL**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------x
                                 :    OBJECTIONS TO
                                 :    JOINT CHAPTER 11
In re                           :    PLAN OF REORGANIZATION
                                 :
POINT BLANK SOLUTIONS, INC., ET AL[1] :
                                 :
                                 :
     Debtor.                   :    Case No. 10-11255-PWJ
---------------------------------------x

       D. David Cohen, the Objecting Party ("Objecting Party") is a shareholder of Point Blank Solutions, Inc. ("PBSO") (the publicly held parent Company of the Debtors), a Creditor of PBSO, and an interested party in these proceedings. The Objecting Party's individual conduct over a long period of time, including during the pendency of these proceedings, has been responsible for the creation and availability of the principal assets of the Recovery Trust, described in the Plan. The assets to be transferred to the Recovery Trust are not identified in Article 8 of the Plan, or Article 11 of the Disclosure Statement. They are partially separately described under the title "Significant Legal Proceedings" commencing on p.17 of the Disclosure Statement. See the provisions

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

specifically parts 2 and 3 thereof entitled "Class Actions and Derivative Lawsuits" and "Turnover Action."

Background and History

1.  In 2003-04-05, the publicly owned Debtor was looted and its publicly owned Shareholders criminally defrauded, as has been proven by jury verdict in the Eastern District of New York.  That happened because none of the fiduciaries of the entity, including counsel, stood up for the public interest of the public shareholders, despite my pleas that they do so.

2.  In late 2005-06, continuing to 2008, the publicly owned Debtor and its publicly-owned Shareholders were cheated and defrauded by a Class Action/derivative action Settlement, which excused David H. Brooks and others from responsibility for their wrongdoing, including by, but not limited to, an unlawful Section 304 Indemnification to Brooks and Dawn Schlegel.  That happened because none of the fiduciaries of the publicly-owned Company, including counsel would stand up for the public interest, despite my pleas that they do so.

3.  I appealed from the derivative Settlement and the executory nature of the appeal, including the Second Circuit's determination of September 30, 2010, created the litigation assets which uniquely belong to the benefit of the publicly-owned Debtors and its public Shareholders.  It is those assets which are proposed to be transferred to the Recovery Trust.

4.  In 2009, it became clear (to this Shareholder at least) that Steel Partners II, a New York Hedge Fund, was not

operating the publicly-owned Debtor in the best interests of the publicly-owned Shareholders, as the only <u>two</u> clearly independent directors quit the Board of Directors, complaining about the lack of independence, and were not replaced. I reported to the SEC Staff about this continuing abuse.

5. On January 15, 2010, my counsel argued before the Second Circuit Court of Appeals against the unlawful 304 <u>Indemnification</u>. Counsel for the publicly-owned Debtor argued <u>for</u> the Indemnification. No counsel acting for the public Shareholders could possibly have desired to give away $186 Million to Brooks, especially when PBSO stood at the brink of a bankruptcy filing.

6. On April 14, 2010, the publicly-owned Debtor filed the Petition for Reorganization in this case. The Petition omitted to disclose (a) the multi-million dollar litigation assets or contingent assets of the Debtors; (b) The multi-million dollar Indemnification of Brooks as a liability of the Debtors; and (c) The 2006 Settlement Agreements and their component parts as executory contracts. In addition, at the time of filing, the Steel directors of the publicly-owned Debtor stopped the audit of Debtor's financial statements and ceased all required public reporting required by the Securities & Exchange Act of 1934, while abusively increasing the compensation of a Steel executive of PBSO at the aggressive rate of $77,000 per month. None of this would have occurred if the fiduciaries for the publicly-owned Debtor were

C:\WPDATA\01223-98091\07323.006 PBSO Bankruptcy\Objections to Joint Chapter 11 Plan of Reorg 2-7-11.doc     3

mindful of their responsibilities to the public interest.

7. PBSO could have survived on its own operating assets, and responsible infusions (far less that the $15 to $25 Million now required) based upon the litigation <u>assets</u> if only the management of the publicly-owned Debtor had said "no" to the unlawful $186 Million Brooks Indemnification before the filing, or <u>even</u> if it thought <u>it required</u> cover of bankruptcy laws to reject the Settlement, had it <u>done so upon filing</u> on April 14, 2010. It did not.

8. From April to December, 2010, despite the fact that Debtor claimed it was seeking a Reorganization, in fact, it was seeking a liquidation, as demonstrated by its conduct throughout, including fighting the appointment of an Equity Committee, denying that there was equity in the entity, <u>staying</u> the derivative action, trying to stay and stop the Second Circuit from rendering its decision of September 30, 2010, and ultimately in December, a literal push for a 363 auction of the Debtor's assets. None of that would have happened if Debtor fairly and properly represented the <u>public ownership interest in</u> PBSO.

9. This Plan is the product of the emergency situation created by the aforesaid conduct. This Plan thereupon arose, a product of the Unsecured Creditors Committee, an entity which purchased claims and two then members of the Equity Committee. Again, the public shareholders have had no sustaining voice, no meaningful influence on the carving up of

the assets and opportunities presented herein.

General Statement.

The Objecting Party supports Reorganization of the Debtors, and seeks to support the Plan, except as set forth herein. The objections to the Plan, as stated, are major and significant. However, the objections can be cured by relatively minor modifications to the Plan, proposed hereinafter. See Proposed Modifications, paragraphs A through D hereinafter.

Objections to the Plan.

1. The Plan implicitly values the Old Equity Interests at <u>zero</u>, when, in fact, the Plan is dependent upon, and this Reorganization could not have been achieved, but for the existence of the "litigation assets" which, prior to the Plan, belong exclusively to the publicly-owned Company, because it is publicly-owned, and the existing PBSO shareholders. Multi-million dollar recoveries in respect of those assets are anticipated by the Plan and Plan Proponents. Indeed, those recoveries are anticipated to be <u>greater than the entirety of the Debtors indebtedness</u> to all of its creditors, the very substantial administrative expenses, interim management and DIP loan expenses incurred by the Debtors. The Plan could have, and should have, valued the Old Equity Interests fairly and equitably. The Plan fails to do so, and <u>transfers</u> the recoveries potentially available from those litigation assets to the Reorganized Parent <u>without granting the public</u>

shareholders of PBSO any interest at all in the Reorganized Parent or otherwise adequately and, without discrimination, compensating the public shareholders of the publicly-owned Debtor, except for the two Plan Proponents and a very small restricted number of other shareholders of the Debtor.

2. The Plan is deficient because the public Company, PBSO, and its public shareholders, including the Class damaged by Brooks' prior frauds on the Debtors, will lose either all or a substantial majority, of the financial benefits which otherwise accrued to the publicly-owned Company and its shareholders by virtue of the rejection of the Settlement Agreement and the opinion and decision of the Second Circuit Court of Appeals on September 30, 2010; and the Plan is deficient because, as structured, the holders of Class 7 claims will lose any and all possible claims against the officers, directors, and affiliates of the Debtors, including Steel Partners II, who backed and sought to enforce the unlawful, impermissible $186 Million Indemnification of the criminally convicted David H. Brooks, will be completely forgiven and released, will be completely exculpated, without the holders of such Class 7 claims receiving any measurable financial benefits from doing so. The exculpation provisions in the Plan must be omitted.

3. The Plan states that there will be a Rights Offering in which holders of the Allowed Old Equity Interest will be permitted to acquire 49.367% of the Rights Offering. The

rights purported to be granted to the "Allowed Old Equity Interest Holders" is largely pyrrhic. The Plan is deficient in the repeated references to Rights Offering without full and complete disclosure at each juncture that it is not available generally to public shareholders of the publicly-owned Debtor.

4. 42.29% (a percentage which itself is undisclosed) of the total New Common Stock of the Reorganized Parent are being sold <u>exclusively</u> and directly to two of the equity Proponents[2] of the Plan pursuant to "direct Subscription" Agreements, without either the Plan or the Disclosure Statement describing the consideration to be paid by such Plan Proponents in the aggregate, or the per share Subscription Price. The direct Subscription Agreements, or any other arrangement which discriminates against the PBSO public shareholders should be omitted, unless the Plan is modified to provide fair and equitable treatment for all of the holders of Allowed Old Equity Interests.

5. Substantially all of the Allowed Old Equity Interests will <u>not</u> qualify for participation as Equity holders of the Reorganized Parent. Such persons are investors in PBSO, a public Company. The Rights Offering makes clear that they are not intended to be participants in the Reorganized Parent. In any event, such persons may not qualify to

---

[2] Any suggestion tht the Plan Proponents "earned" the right to the direct subscriptions by first becoming the Replacement DIP lenders would be incorrect. They are being reqarded handsomely for their Replacement DIP loan participation. See Exhibit A. No suggestion was made on application for approval of the DIP financing

Parent. In any event, such persons may not qualify to exercise the rights (i) because that the private restricted securities being offered to them are not financially suitable for acquisition by them, or (ii) because these private restricted securities are not suitable for sale to <u>any passive investor</u> consistent with the provisions of the Securities Laws and regulations promulgated thereunder permitting private offerings. The Plan documents do not meet the qualifications of a Placement Memorandum for the general public, as the Plan is missing <u>inter alia</u> audited financial statements or PBSO for 2009 and 2010.

6. The Plan Proponents will "control" the entity and be able to elect <u>all</u> of the members of the Board of Directors, and, in turn, those directors will be entrusted to nominate and elect officers, and determine the compensation to be paid to the officers and employees of the Reorganized Parent, including persons affiliated with the Plan Proponents. The Plan is deficient because there is no provision for the Allowed Old Equity Holders to have any vote or voice in the election of initial directors or to have any meaningful say in the oversight of the Recovery Trust.

7. The Recovery Trust included in the Plan has been established with provisions for participation by all of the "interests" with entitlement to the Recovery Trust, but the public shareholders of PBSO have been, and are being, given less than an equitable participation in the Recovery Trust.

(a) The Plan fails to recognize and acknowledge that the overwhelming majority of the litigation assets are uniquely the property of the public Company qua a publicly-owned Company, and due to the existence of the public shareholders, specifically referencing the Class Action, the derivative action and the Sarbanes Oxley §304 claims. Neither the Reorganized Parent nor any of the Plan Proponents have any equitable claim to the Class Action recovery, the derivative action or any right whatsoever to the Sarbanes Oxley §304 recovery, and/or the derivative action recoveries, but for the existence of the publicly-owned Company and the injuries and damage suffered by the public shareholders;

(b) No portion of the initial (approximately $50,000,000) of recoveries from the Recovery Trust has been allocated to the Allowed Old Equity Holders, while 20% of such revenues will be allocated to the Reoranized Parent, mainly the three Plan Proponents and their selected highly-qualified investor friends. These provisions of the Recovery Trust are, for that reason, unfair and inequitable, and will also work against the best interests of maximizing the possible rewards in the Recovery Trust or entitling the public shareholders with any meaningful recovery from their claims; and

(c) The balance of the recoveries (residual interest) from the Recovery Trust are allocated 70% to the Reorganized Parent and 30% to Allowed Old Equity Holders. The PBSO shareholders and former shareholders have experienced

market losses aggregating hundreds of millions of dollars, while the maximum total equity interest in the Reorganized Parent by the Plan Proponents is $25,000,000. The 70/30 sharing arrangement is patently unfair. To cure the unfairness and inequity, and to maximize the possible recoveries in the Recovery Trust, the Recovery Trust percentage sharing arrangement should be significantly modified. In limiting the actual beneficial owners of the claims, public owners, to less than one-third of the residual claims (after full debt payment, legal fees and other expenses) is, simply stated, clearly inequitable, unfair and not mandated by any provision of the bankruptcy laws.

Proposed Modifications

A.  The Reorganized Parent be permitted to transfer to the Recovery Trust minority ownership of the New Common Stock of Reorganized Parent in exchange for the Reorganized Parent's percentage recovery from the Recovery Trust. This exchange should be made on terms which are fair and equitable to all parties participating in the Reorganization.

B.  If the 80/20 division of the initial recoveries is to be maintained, 80% be set aside for payment of (Class 4 and 5) creditors as proposed, the 20% should be allocated entirely to the Recovery Trust (with Reorganized Parent participation) and *none* to Reorganized Parent separately, and 100% of the excess be allocated to the Recovery Trust (with Reorganized parent participation).

C. The two Class 7 holders exercising rights to acquire ownership in Reorganized Parent have an interest in the Recovery Trust through their ownership of Reorganized Parent; only Class 7 holders unable or not permitted to have an interest in Reorganized Trust will share in the fraction of the recoveries, if any, divided among holders and a share in the minority ownership of the Reorganized Parent held through the Trustee.

D. The exculpation clause be entirely omitted, or substantially modified to meet the requirements of equity and fairness to all concerned.

Legal Principles. The undersigned relies upon three legal principles of the Code, including 11 U.S.C. §1129(3) requiring that the Plan be proposed in good faith (not in bad faith) and not by any means forbidden by law. The discrimination proposed to be effected against the public holders of PBSO expressly violates 11 U.S.C. §1173(a)(4) requiring the same treatment for each claim or interest of the same class. The time to stop the abuse of these public shareholders is now.

Respectfully Submitted,

D. David Cohen
Pro Se
500 No. Broadway
Suite 139
Jericho, N.Y. 11753
Tel: 516-933-1700
Fax: 516-933-8454

See Attached Service List.

EXHIBIT "A"

Assumed Average Amount Outstanding

|  | $12,500,000 | $19,000,000 | $25,000,000 |
|---|---|---|---|
| INTEREST | $519,531 | $789,687 | $1,039,062 |
| Arrangement Fee | 437,500 | 437,500 | 437,500 |
| Funding Fee | 437,500 | 437,500 | 437,500 |
| Termination Fee | 437,500 | 437,500 | 437,500 |
| Legal Fees | 550,000 | 550,000 | 550,000 |
| Total Interest Plus Direct Fees | $2,382,031 | $2,652,187 | $2,901,562 |
| % of AAO | 19.05% | 13.95% | 11.11% |
| Annualized | 65.31% | 47.83% | 38.09% |
| Indirect Fees |  |  |  |
| Break-Up Fee | 750,000 | 750,000 | 750,000 |
| Transaction Fees[1] | 400,000 | 400,000 | 400,000 |
| Total Interest Plus Direct Fees Plus Indirect Fees | $3,532,031 | $3,752,187 | $4,051,562 |
| % of AAO | 28.25% | 19.75% | 16.20% |
| Annualized | 96.85% | 67.71% | 55.54% |
| Lincoln Mills Claim[2] | 3,000,000 | 3,000,000 | 3,000,000 |
|  | 6,352,031 | 6,752,187 | 7,051,562 |
| % of AAO | 50.81% | 35.53% | 28.20% |
| Annualized | 174.08% | 121.81% | 96.68% |

---

[1] Based on two counsels for the three lenders in the DIP funding.
[2] On information and belief, Lonestar purchased the Lincoln Mills claim at less than face value. How much less?

C:\WPDATA\01223-98091\07323.006  PBSO Bankruptcy\Exhibit A 2-711.doc

SERVICE LIST

## Counsel for the Debtors

Laura Davis Jones, Esq.
Timothy Cairns, Esq.
Pachulski Stang Ziehl & Jones, LLP
919 North market Street 17th Floor
Wilmington, DE 19801

and

David M. Bertenthal, Esq.
Joshua M. Fried, Esq.
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111

## Counsel for the Creditors' Committee

Frederick B. Rosner, Esq.
Brian L. Arban, Esq.
Messane Rosner & Stern, LLP
1000 N. West Street, Ste 1200
Wilmington, DE 19801

and

Robert M. Hirsh, Esq.
George Angelich, Esq.
Arent Fox LLP
1675 Broadway
New York, New York 10019

## Counsel for the Equity Committee

Michael R. Dal Lago, Esq.
Morrison Cohen LLP
909 Third Avenue
New York, New York 10022

and

Neil B. Glassman, Esq.
Bayard, P.A.
222 Delaware Avenue, Ste. 900
Wilmington, DE 19899

Counsel to privet Opportunity Fund I, LLC and Privet Fund Management LLC

Edward J. Estrada, Esq.
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, New York 10022

and

Kurt F. Gwynne, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

Counsel to Prescott Group Capital Management

Richard Palacio, Esq.
Ashby & Geddes
500 Delaware Avenue
P.O Box 1709
Wilmington, DE 19801-1709

Counsel to Lonestar Capital Management, LLC

David B. Stratton, Esq.
Pepper Hamilton LLP
Hercules Plaza, Ste. 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801-1709

and

David P. Simonds, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Ste. 2400
Los Angeles, CA 90067-3010

and

Michael P. Cooley, Esq.
Akin Grump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Ste. 4100
Dallas, Texas 75201-4675

## Securities and Exchange Commission

Patricia Schrage, Esq.
Senior Trial Counsel
Securities & Exchange Commission
New York Regional Office
3 World Financial Center, Room 437
New York, N.Y. 10281

## United States Trustee

Jane M. Leamy, Esq.
Attorney for United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19899