| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE | Hearing Date: Feb. 14, 2011<br>adjourned to March 3, 2011<br>Hearing Time: 2:00 p.m. |
| In re:<br><br>POINT BLANK SOLUTIONS, INC.,<br>et al.,<br>  Debtors. | Case No. 10-11255 (PJW)<br>Chapter 11<br><br>Jointly Administered<br><br>Re: Docket Nos. 1006, 1007, 1067 |

**OBJECTION OF THE U.S. SECURITIES AND EXCHANGE COMMISSION TO THE ADEQUACY OF THE DISCLOSURE STATEMENT, CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF REORGANIZATION, AND MOTION FOR ENTRY OF AN ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND RELATED RELIEF**

The U.S. Securities and Exchange Commission (the "Commission")[1] respectfully files this objection to the adequacy of the Disclosure Statement Describing Joint Chapter 11 Plan (the "Disclosure Statement"), confirmation of the Joint Chapter 11 Plan of Reorganization (the "Plan"), and approval of the Motion for Entry of an Order Approving the Adequacy of the Disclosure Statement, et al., (the "Motion"). The Commission objects to the approval of the Disclosure Statement, Plan and Motion because these documents are premised upon the issuance of new securities to raise fresh capital to fund the reorganization without meeting the requirements of Section 5 of the Securities Act of 1933 ("Securities Act") by demonstrating the availability of an exemption from registration. In support of its objection, the Commission respectfully represents as follows:

## PRELIMINARY STATEMENT

Point Blank Solutions, Inc. ("PBSI"), or PBSI and its three related entities (collectively the "Debtors") are seeking to raise millions of dollars from its current public shareholders and

---

[1] The Commission has standing to participate in these proceedings pursuant to Bankruptcy Code Section 1109(a) and (b).

general unsecured creditors through a rights offering of the reorganized Company's new common stock in violation of the registration requirements of the Securities Act of 1933 ("Securities Act"). PBSI filed bankruptcy due in part to a massive fraud committed by its former management. Now the current management of PBSI through the proposed rights offering is seeking to sell speculative, illiquid and restricted stock to its public shareholders and general unsecured creditors without compliance with Section 5 of the Securities Act, which requires that every offering be covered by a registration statement or qualify for an exemption from registration.

## RELEVANT FACTS

Point Blank Solutions, Inc. is a publicly traded Delaware corporation. The company's common stock is currently registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934. During 2006 and 2007 the Commission filed civil injunctive actions against PBSI's former management alleging violations of the antifraud, reporting, books and records, and certification provisions and illegal insider trading (the "SEC Actions"). The SEC Actions are currently stayed until the conclusion of the criminal action against PBSI's former management. The former CEO, David Brooks and former COO, Sandra Hatfield were convicted by a jury in September 2010, and are awaiting sentencing. The former CFO, Dawn Schlegel pleaded guilty in the criminal action. The Debtors, subject to Bankruptcy Court approval, have agreed to a settlement with the Commission with respect to possible violations of the securities laws. The Debtors filed for Chapter 11 relief on April 14, 2010.

On January 11, 2011, the Debtors and the Plan Proponents filed the Disclosure Statement and Plan seeking to reorganize the Debtors. According to the Disclosure Statement a key component to the reorganization is raising a minimum of $15 million and a maximum of $25

million through a rights offering to the company's general unsecured creditors and public shareholders, backstopped by the PBSI's existing secured lenders and through a direct subscription. The funds raised pursuant to the rights offering and direct subscription would be used to pay creditors, primarily the existing secured lenders, under the Plan, reorganization costs, and purportedly would provide liquidity to the Debtors going forward.

On January 29, 2010, the Debtors filed the Motion, which includes the subscription form and certain procedures for the rights offering. Pursuant to the Motion the subscription price for the general unsecured creditors and public shareholders is $5.00 per share, with a minimum purchase of $35,000. The rights offering is to commence within five days of the approval by the bankruptcy court of the Motion and Disclosure Statement and expires in thirty days. The general unsecured creditors and public shareholders must affirm by checking a box on the subscription form that they are accredited investors when subscribing for shares in the rights offering. Payment is due prior to the expiration of the thirty days and payment will be held in trust by the subscription agent pending confirmation of the Plan.

According to the Disclosure Statement and Plan, the rights offering is exempt from registration under the Securities Act pursuant to Section 1145 of the Bankruptcy Code and Section 4(2) of the Securities Act. The Disclosure Statement does not contain any legal or factual basis to support any exemption from registration. The Disclosure Statement is also void of any detailed information concerning the value of the company and the new common stock as well as any risks factors.

PBSI has not shown that it can meet the requirements of Section 5 of the Securities Act by demonstrating the availability of an exemption from registration pursuant to Section 1145 of the Bankruptcy Code, Section 4(2) of the Securities Act, or Regulation D of the Securities Act or

any other exemption from registration contained in the Securities Act. These requirements are to protect the public, and cannot be ignored. If there is not an available exemption, registration is necessary to protect the public. In this case, many of the public shareholders have already been defrauded by this company.

## OBJECTION

### A. The Section 1145(a) Exemption is Not Available for the Rights Offering

Every offer and sale of a security in interstate commerce must either be registered under Section 5 of the Securities Act or be exempt from registration. In bankruptcy proceedings, Section 1145(a)(1) of the Bankruptcy Code provides a limited exemption for securities issued in exchange for a claim against, or interest in, or a claim for an administrative expense in the case concerning, the debtor, 11 U.S.C. § 1145(a)(1)(A), or "principally" in exchange for such claims and interests and only "partly" for cash or property. 11 U.S.C. § 1145(a)(1)(B). Section 1145 is designed to ensure that debtors use the provision first and foremost as an exemption from registration to satisfy existing obligations and interest, and not as a means for avoiding the registration requirements when raising fresh capital.[2] Here, the "principally/partly" test cannot be satisfied because the creditor or equity holder is not receiving any value in exchange for their claim or interest's rather, they are solely being asked to give up money. *See Jet Florida Systems, Inc.*, 1987 SEC No-Act LEXIS 1490 (Jan. 12, 1987); *Barry's Jewelers, Inc.*, 1998 SEC No-Act LEXIS 735 (July 20, 1998).

In this case, PBSI's rights offering is not aimed at providing the Debtors' equity holders and unsecured creditors with securities in exchange for their interests and claims or principally in

---

[2] *See Collier on Bankruptcy*, ¶ 1145.02[1][a][iii] (16th ed. 2010)(*citing Jennings, Coffee, and Marsh*, Securities Regulation 442 (7th ed. 1992) (Section 1145 does "not exempt securities offered to the public to provide fresh capital to finance a Chapter 11 plan")).

- 4 -

exchange for the holders' and creditors' interests and claims and partly for cash; rather the purpose is to raise fresh capital from its public shareholder base and unsecured creditors. While the general unsecured creditors and shareholders are to receive interests in a recovery trust, the Debtors have not valued the recovery trust in the Disclosure Statement and Plan and based on the information provided in the Disclosure Statement the current value of the recovery trust is zero.[3] In addition, PBSI has not valued the new common stock. Therefore, Section 1145 of the Bankruptcy Code is not available to the Company as an exemption from registration.

### B. The Section 4(2) Exemption is Not Available for the Rights Offering

Section 4(2) of the Securities Act exempts "transactions by an issuer not involving a public offering." The applicability of this exemption turns on whether the particular class of persons affected needs the protection of the Securities Act. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125 (1953). Courts have cited the following factors to determine whether an offering is public: (1) the number of offerees; (2) the sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship of the offerees to the issuer. *SEC v. Murphy*, 626 F.2d 633, 644 (9th Cir. 1980); *Doran v. Petroleum Mgmt. Corp.*, 545 F.2d 893, 899 (5th Cir. 1977); *Securities Act Release No.* 4552 (Nov. 6, 1962). Here, PBSI will distribute the rights offering for its new common stock to all of its general unsecured creditors and public shareholders, which includes several thousand people and/or entities,[4] many of whom were victims of the conduct by the Debtors' former management. PBSI does not plan to make any attempt to determine who is in the affected class, their level of sophistication or level of access to the kind of information that would be disclosed in a registration statement. While the rights offering will be accompanied by

---

[3] The recovery trust is comprised of the Debtors' interests in certain litigation matters; which are too speculative.

[4] According to PBSI's bankruptcy petition and the List of Equity Holders filed in the bankruptcy case, PBSI has over 6,000 holders of its stock.

a disclosure statement, these materials will not include the level of detail that would be included in a registration statement, and the Disclosure Statement in this case does not include a detailed description of the reorganized company's financial condition, corporate structure, business plan or risk factors. As was the case in *SEC v. Ralston Purina Co.*, 346 U.S. at 126 -7 the affected class here will include people of various levels of sophistication, many whom are in need of protection, and many of whom were victims of the prior fraud. Moreover, the party claiming the exemption carries the burden of proving that the exemption applies. *Id.* at 126.

### C. Rule 506 of Reg. D Safe Harbor from Securities Act Registration is Not Available for the Rights Offering

Rule 506 of Reg. D provides a "safe harbor" from Securities Act registration.[5] Under Rule 506, which is a Section 4(2) "safe harbor," issuers may raise an unlimited amount of capital from "accredited investors"[6] provided, among other things, there is no "general solicitation" for the offering.[7] Here, however, PBSI plans to offer the common stock in the rights offering by delivering the Disclosure Statement along with a subscription form to all of its general unsecured creditors and public shareholders, which amounts to thousands of unaccredited people and/or entities, and asks them to determine themselves whether they meet the requirements of an "accredited investor." Any offer to such a group is extremely inconsistent with Reg. D's prohibition on "general solicitation" or Section 4(2)'s requirement that the transactions not involve a "public offering."[8] The group of offerees in this matter comprises a broad segment of the public who need protections afforded by a registered offering. This demonstrates that the

---

[5] Reg. D § 230.506.

[6] Id. at § 230.501(a).

[7] Id. at § 230.502(c).

[8] Furthermore, self-accreditation raises concerns that the offering is a general solicitation. *See Securities Act Release Nos.* 33-7856, 34-42728, 65 FR 25843 (May 4, 2000).

rights offering involves a "public offering" making Reg. D -- and Section 4(2) upon which the safe harbor is based – unavailable. *See SEC v. Ralston Purina Co.*, 346 U.S. at 125 (where court explained that Section 4(2)'s application "should turn on whether the particular class of persons affected needs the protection of the [Securities] Act. An offering to those who are shown to be able to fend for themselves is a transaction 'not involving a public offering.'").

## CONCLUSION

The rights offering here is designed to raise fresh capital from the public (creditors and shareholders) without compliance with Section 5 of the Securities Act.

WHEREFORE, for the reasons stated above, the Commission respectfully urges that the Court deny the approval of the Disclosure Statement, Plan and Motion unless the rights offering is deleted from the documents.[9]

Dated: February 11, 2011
    New York, New York

                                UNITED STATES SECURITIES AND
                                EXCHANGE COMMISSION


                By:    /s/ Patricia Schrage
                        Patricia Schrage (PS 1753)
                        New York Regional Office
                        3 World Financial Center
                        New York, NY 10281
                        (212) 336-1100

                        Alistaire Bambach, of Counsel

---

[9] The Commission is aware that some of the issues raised may appropriately constitute objections to confirmation. Because of a potential waste of resources, however, the Commission believes it is appropriate to raise these objections at the disclosure statement stage. *See, e.g. In re McCall*, 44 B.R. 242, 243 (Bankr. E.D. Pa. 1984).