IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS INC., *et al.*[1] | ) | Case No. 10-11255 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Requested Objection Deadline: March 7, 2011 at 4:00 p.m.**
**Requested Hearing Date: March 10. 2011 at 4:00 p.m.**

## DEBTORS' MOTION FOR: (I) APPROVAL OF A CONSENT AGREEMENT WITH THE SECURITIES AND EXCHANGE COMMISSION; (II) LIMITED RELIEF FROM THE AUTOMATIC STAY; AND (III) AUTHORITY TO DE-REGISTER AS A PUBLIC COMPANY

The above-captioned debtors and debtors in possession (the "Debtors") have filed this motion (the "Motion") to seek approval from the Bankruptcy Court of a Consent Agreement (defined below) between Debtor Point Blank Solutions, Inc. ("Point Blank") and the Securities and Exchange Commission (the "SEC"). A copy of the Consent Agreement is attached hereto as Exhibit A. If approved by the Bankruptcy Court, the Consent Agreement will enable a resolution of the causes of action that the SEC intends to assert against Point Blank in that certain *Complaint for Injunctive Relief and Other Relief* (the "Complaint"), a copy of which is attached hereto as Exhibit B. The SEC is going to file the Complaint in the District Court for the Southern District of Florida (the "District Court"). If this Court approves the Consent Agreement, then the SEC will file a proposed *Final Judgment as to Defendant DHB Industries, Inc. n/k/a Point Blank Solutions, Inc.* (the "Final Judgment"). A copy of the Final Judgment is attached hereto as Exhibit C. The entry of the Final Judgment by the District Court will

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

DOCS_DE:166802.8

completely resolve the SEC's claims against Point Blank.

The approval of the Consent Agreement is in the best interests of the Debtors, their estates, and their creditors for three primary reasons. First, the SEC has agreed to not seek any civil damages and penalties against Point Blank. This decision by the SEC is a major benefit to creditors. Second, it is important to the success of Point Blank's ongoing governmental contracting business that the Complaint be resolved as quickly as possible. Absent a prompt resolution, Point Blank could be disadvantaged in obtaining new government contracts while the Complaint is pending against it. If this Court approves the Consent Agreement, then the SEC will file the Final Judgment and Consent Agreement, which will allow this matter to be resolved as quickly as possible. Finally, approval of the Consent Agreement will save Point Blank and its creditors a significant amount of money, because Point Blank will not have to incur the legal fees and expenses that would arise from defending against the Complaint, to the extent not stayed.

In connection with the approval of the Consent Agreement, the Debtors seek authority to de-register Point Blank as a public company. Under the terms of the Consent Agreement and Final Order, Point Blank must file all financial disclosures that are required of a registered public company. Point Blank was not current on its filings at the time these cases were filed, is not currently filing public disclosures, and will not be filing them at the time that the Final Judgment is approved. In fact, Point Blank could not do so absent significant time and expense – which Point Blank estimates would exceed $1 million in accounting and legal fees. Accordingly, Point Blank plans to de-register in connection with approval of the Consent Agreement so that it does not immediately violate the terms of the Final Judgment after it is entered by the District Court.

Finally, the Debtors, out of an abundance of caution, seek limited relief from the

automatic stay to allow parties to effectuate the terms of the Consent Agreement in the District Court.[2] In further support of the Motion the Debtors respectfully state as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

2. On April 14, 2010 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

3. Point Blank is a leading manufacturer and provider of bullet, fragmentation and stab resistant apparel and related ballistic accessories, which are used domestically and internationally by military, law enforcement, security and corrections personnel, as well as government agencies. Since 1998, Point Blank has supplied over 80% of U.S. military soft body armor vest requirements to protect soldiers and law enforcement personnel around the world. Point Blank and its debtor subsidiaries Point Blank Body Armor,

---

[2] The Debtors seek this limited relief from the automatic stay out of an abundance of caution. As set forth in detail below, the SEC Staff has informed the Debtors that the filing of the Complaint and entry of the Final Judgment is excepted from the automatic stay pursuant to section 362(b)(4) of the Bankruptcy Code as an exercise of the SEC's police and regulatory powers.

Inc., and Protective Apparel Corporation of America are major suppliers in the domestic law enforcement market with broad brand recognition and "best value" reputation. The Debtors' products are sold through a variety of means, including a corporate sales force, sales agents and a network of distributors.

4. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of T. Scott Avila in Support of First Day Motions [Docket No. 3]* (the "Avila Declaration") filed on the Petition Date and incorporated herein by reference.

### The SEC's Investigation and Claims

5. The Debtors were subject to ongoing investigations by the Securities and Exchange Commission (the "SEC") and the U.S. Attorneys' Office for the Eastern District of New York regarding alleged violations of federal securities laws stemming from accounting irregularities and disclosure issues from 2003 through 2005. These alleged violations arose from the actions of the Debtors' former Chief Executive Officers, David Brooks ("Brooks"), the former Chief Operating Officer, Sandra Hatfield ("Hatfield") and the former Chief Financial Officer, Dawn Schlegel ("Schlegel"), all of whom were no longer employed by the Debtor by July 2006. The U.S. Attorney's Office indicted Hatfield and Schlegel in 2006 and Brooks in 2007. Schlegel pled guilty in 2007 and Brooks and Hatfield were found guilty by a jury in 2010. The SEC also filed civil complaints against Hatfield and Schlegel in 2006 and against Brooks in 2007. The SEC's actions against Brooks, Hatfield and Schlegel remain stayed until the complete resolution of the criminal proceedings. In August 2009, the Debtors received a notice from the SEC informing them that the SEC's regional staff conducting the investigation had made a preliminary decision to recommend that the SEC bring a civil injunctive action against the

Debtors arising from the actions of Brooks, Hatfield and Schlegel. Venable LLP, the Debtors' special government contracting, litigation and government investigation counsel, represents the Debtors in matters related to the SEC investigation.

6. The SEC has prepared the Complaint against Point Blank Solutions, Inc. for filing in the United States District Court for the Southern District of Florida (the "Complaint"). The Complaint seeks (i) a declaratory judgment that Point Blank, through the actions of Brooks, Hatfield, Schlegel and others, violated certain sections of the Securities Exchange Act of 1934 (the "Act") and (ii) a permanent injunction enjoining such actions. See, Complaint, ¶ 20. More specifically, the Complaint asserts as follows:

    a. From at least 2003 through 2005, DHB[3], in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce or the mails, directly or indirectly, knowingly, willfully, or recklessly (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon other persons. See, Complaint, Count I, ¶ 52;

---

[3] Point Blank was formerly known as DHB Industries, Inc. ("DHB").

b. DHB failed to file timely accurate periodic and other reports with the SEC and failed to add additional material information necessary to make the required periodic reports not misleading. See, Complaint, Count II, ¶ 55;

c. DHB failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets, and failed to devise and maintain a system of internal controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with U.S. GAAP or any other criteria applicable to such statements. See, Complaint, Count III, ¶ 58; and

d. DHB directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or of the facility of a national securities exchange, knowingly, recklessly or negligently solicited proxies by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, or which omitted to state material facts which were necessary in order to make the statements made not false or misleading or which were necessary to correct statements in earlier false or misleading communications with respect to the solicitation of proxies for the same meeting or subject matter. See, Complaint, Count IX, ¶ 61.

7. The SEC has not yet filed the Complaint or commenced any other formal action against the Debtors.

b. DHB failed to file timely accurate periodic and other reports with the SEC and failed to add additional material information necessary to make the required periodic reports not misleading. See, Complaint, Count II, ¶ 55;

c. DHB failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets, and failed to devise and maintain a system of internal controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with U.S. GAAP or any other criteria applicable to such statements. See, Complaint, Count III, ¶ 58; and

d. DHB directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or of the facility of a national securities exchange, knowingly, recklessly or negligently solicited proxies by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, or which omitted to state material facts which were necessary in order to make the statements made not false or misleading or which were necessary to correct statements in earlier false or misleading communications with respect to the solicitation of proxies for the same meeting or subject matter. See, Complaint, Count IX, ¶ 61.

7. The SEC has not yet filed the Complaint or commenced any other formal action against the Debtors.

## The Consent Agreement and Final Judgment[4]

8.     On May 17, 2010, Point Blank entered into the Consent Agreement with the SEC and agreed upon the form of the Final Judgment.[5] Point Blank's entry into the Consent Agreement is expressly subject to the approval of this Court. Among other things, the Consent Agreement provides for the following:[6]

   a.     Point Blank's voluntary consent to the entry of the Final Judgment which, among other things, permanently enjoins Point Blank from further violations of the Act asserted in the Complaint;

   b.     Point Blank's waiver of certain procedural rights related to the enforcement action including, among other rights, the right to a jury trial and the right to appeal from entry of the Final Judgment;

   c.     a resolution of the civil claims asserted against Point Blank by the SEC (through the approval of the Consent Agreement and the entry of the Final Judgment); and

   d.     Point Blank's agreement to provide counsel for the SEC, within thirty days after the Final Judgment is filed, with an affidavit or declaration stating that the Debtors have received and read a copy of the Final Judgment.

---

[4] This summary of material terms of the Consent Agreement and Final Judgment has been included for the convenience of the parties receiving this Motion. It in no way alters, changes or amends the actual terms set forth in the Consent Agreement and Final Judgment. In the event that there are any inconsistencies between this summary and those documents, the language set forth in the Consent Agreement and Final Judgment controls.

[5] The delay between the entry into the Consent Agreement and the filing of the Motion was due to the parties ongoing negotiations over the form of the Complaint.

[6] Nothing in the Consent Agreement should be construed as a waiver or release of the claims against Brooks under section 304 of the Sarbanes-Oxley Act of 2002.

9. The Consent Agreement and Final Judgment impose no damages or monetary penalties upon Point Blank.

## Relief Requested

10. By this Motion, the Debtors seek: (a) approval of the Consent Agreement pursuant to Bankruptcy Rule 9019, including, out of an abundance of caution, approval of Point Blank's proposed de-registration as a public company; (b) limited relief from the automatic stay; and (c) authorization for Point Blank and the SEC to take all actions necessary to effectuate the foregoing relief without the need of further order by this Court.

## Basis for Relief

A. **The Consent Agreement Should be Approved Because it Readily Satisfies Each of the Applicable Criteria Set forth by the Third Circuit in In re Martin for Approving Consent Agreements Under Bankruptcy Rule 9019**

11. Federal Rule of Bankruptcy Procedure 9019 states in relevant part that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the U.S. trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

*Fed. R. Bankr. P. 9019(a).* Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Rule 9019 implements section 363 of the Bankruptcy Code, pursuant to which a debtor may use or sell property other than in the ordinary course of business after notice and hearing. *Id.* at 394 n.2.

12. A bankruptcy court should approve a settlement if it is fair and equitable, and in the best interests of the estate. *In re Degenaars*, 261 B.R. 316, 319 (Bankr. M.D. Fla., Apr 12, 2001). In determining whether to approve a settlement pursuant to section 363 of the

Bankruptcy Code and Rule 9019, the Third Circuit has stated that a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin*, 91 F.3d at 393 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). In making this determination, a court should consider four criteria: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved and related expense and inconvenience, and (4) the interests of the creditors. *Id.*; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (citing *Anderson* factors as controlling whether settlement should be approved). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

13. When applying the above-noted criteria to the facts of a particular case, a bankruptcy court does not have to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. *In re Cajun Elec. Power Coop., Inc*, 119 F.3d 349, 356 (5th. Cir 1997). Likewise, a bankruptcy court does not need to conduct an evidentiary hearing as a prerequisite to approving the settlement. *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 586 (7th Cir. 1994). Instead, it is the responsibility of the bankruptcy court to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Spielfogel*, 211 B.R. 133, 143-44 (Bankr. S.D.N.Y. 1997); *In re Carla Leathers, Inc.* 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985).

14. Approval of a compromise is within the "sound discretion" of the bankruptcy court. *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). The bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview*

*Hospital-Osteopathic Medical Center*, 221 B.R. 603, 610 (Bankr. N.D. Ohio 1996) (citing *In re Bell and Beckwith*, 87 B.R. 476, 478-479 (Bankr. N.D. Ohio 1988).

15. To the extent applicable, approval of a settlement that involves property of the estate should also constitute a reasonable exercise of the Debtor's business judgment under Bankruptcy Code section 363(b), which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In interpreting section 363, courts have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

16. The terms of the Consent Agreement readily satisfy the applicable criteria set forth by the Third Circuit in *Martin* for the approval of settlements in bankruptcy. First, the approval of the Consent Agreement is in the best interest of the creditors because (i) the SEC is not seeking to impose any monetary damages or penalties against Point Blank, and (ii) the approval of the Consent Agreement will allow the Complaint to be resolved as quickly as possible, which is necessary to the success of Point Blank's ongoing government contracting business.

17. Second, complex litigation issues are raised in the Complaint. If there were no Consent Agreement, Point Blank would face difficult, time-consuming and expensive litigation. Such litigation involves inherent risk with little or no certainty that Point Blank would prevail. In addition, litigating the Complaint would require substantial time and attention of the Debtors' officers away from these bankruptcy cases. Moreover, Point Blank's probability of

success on litigating the merits of the Complaint also favors settlement pursuant to the terms of the Consent Agreement, especially in light of the criminal convictions of Brooks and Hatfield, and Schlegel's guilty plea. Accordingly, the Consent Agreement constitutes an appropriate resolution in light of the contingencies of success in litigation and the costs and delays attendant thereto.

18. Finally, absent a settlement, the contested litigation that would be necessary to adjudicate the causes of action raised in the Complaint could result in the expenditure of substantial legal fees and expenses in discovery and trial. It is in the best interest of the Debtors and their estates to minimize such fees and expenses.

19. In connection with the approval of the Consent Agreement, the Debtors also request authority to de-register Point Blank as a public company so that the Debtors will not violate the terms of the Final Order when it becomes effective.

20. Under the terms of the Consent Agreement and Final Order, Point Blank must file all financial disclosures that are required of a registered public company. Point Blank was not current on its filings at the time these cases were filed, is not currently filing public disclosures, and will not be filing them at the time that the Final Judgment is approved. In fact, Point Blank could not do so absent significant time and enormous expense – which Point Blank estimates would exceed $1 million in accounting and legal fees. Accordingly, Point Blank seeks to de-register in connection with approval of the Consent Agreement so that it does not immediately violate the terms of the Final Judgment after it is entered by the District Court.

21. Absent such de-registration, Point Blank will not be able to comply with the directives in the Final Judgment that enjoin Point Blank from failing to file all public disclosures that are necessary under the Act.

22. Accordingly, the Debtors, in connection with the approval of the Consent Agreement under Bankruptcy Rule 9019 and section 105 of the Bankruptcy Code, respectfully request that the Court authorize Point Blank to immediately commence the de-registration process so that it does not violate the terms of the Final Judgment after it is approved by the District Court.[7]

23. In order to de-register, Point Blank will need to file a Form 15 with the SEC, which form is a "Certification and Notice of Termination of Registration Under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports Under Sections 13 and 15(d) of the Securities Exchange Act of 1934." A copy of a blank Form 15 is attached hereto as Exhibit D. In light of the foregoing, Debtors believe that such relief as contemplated in the Consent Agreement is fair and reasonable and in the best interests of Debtor, its estate, and its creditors.

B. **Limited Relief From the Automatic Stay**

24. Section 362(d)(1) of the Bankruptcy Code states, in pertinent part, that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

S.C. § 362(d). What constitutes "cause" for relief from the automatic stay is not defined in the Bankruptcy Code. Consequently, a bankruptcy court must decide what constitutes "cause" on a

---

[7] The Debtors also, out of an abundance of caution, seek such relief pursuant to sections 363(b) and 105 of the Bankruptcy Code. Section 363(b)(1) authorizes a debtor to take actions outside of the ordinary course of business after notice and a hearing. The text of section 363(b)(1) states, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..." 11 U.S.C. § 363(b)(1). In turn, section 105(a) of the Bankruptcy Code empowers a Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

case-by-case basis. *In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111 (Bankr. D. N.J. 2003); *In re Rexene Products Company*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) ("*Rexene Products*") (*citing In re Fernstrom Storage and Van Co.*, 938 F.2d, 731, 735 (7th Cir. 1991)). The legislative history of section 362(d)(1) provides:

> The lack of adequate protection of an interest in the property of the party requesting relief from the automatic stay is one cause for relief, but it is not the only cause. As noted above, <u>a desire to permit an action to proceed to completion in another tribunal may provide another cause</u>. Other causes might include any lack of any connection with or interference with the pending bankruptcy case.

H.R. Rep. No. 950595, 95th Cong., 1st Sess. 343-4 S.R. Rep. No. 95-989, 95th Cong., 2d Sess. 52-3 (1976) (emphasis added); *Rexene Products*, 141 B.R. at 576.

25. The Debtors, out of an abundance of caution, expressly seek limited relief from the automatic stay requested herein so that there is no question as to the authority of the parties to take the actions set forth herein and provided for in the Consent Agreement in the District Court.

26. Although the Debtors expressly seek limited relief from the automatic stay as set forth in the Motion out of an abundance of caution, the SEC Staff has informed the Debtors that the filing of the Complaint and entry of the Final Judgment is excepted from the automatic stay pursuant to section 362(b)(4) of the Bankruptcy Code as an exercise of the SEC's police and regulatory powers. *See SEC v. Towers Fin. Corp.*, 205 B.R. 27, 29-31 (S.D.N.Y. 1997) (holding that a civil enforcement action by the SEC against the debtor-defendant fit within the "governmental unit" exception of section 362(b)(4); *Bilzerian v. SEC*, 146 B.R. 871, 872-73 (M.D.Fla. 1992) (same); *3 COLLIER ON BANKRUPTCY* § 362-63 (5th ed. 2000) ("The police or regulatory exception has ... been applied to enforcement actions by the Securities and Exchange Commission, including actions seeking disgorgement of illicit profits.")

27. In this case, if the Court approves the Consent Agreement, cause will exist to grant limited relief from the automatic stay (to the extent applicable) to allow the parties to effectuate the terms of the Consent Agreement.

### Notice

28. Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the DIP Lenders: (a) Lonestar Partners L.P., (b) Privet Opportunity Fund I, LLC, and Privet Fund Management LLC, and (c) Prescott Group Capital Management; (iii) counsel to the Official Committee of Unsecured Creditors; (iv) counsel to the Official Committee of Equity Holders; (v) the SEC; and (vi) parties who have requested notice pursuant to Bankruptcy Rule 2002. Pursuant to Del. Bankr. LR 2002-1(e), and in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29. No prior request for the particular relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto: (a) granting the Motion; (b) approving the Consent Agreement pursuant to Bankruptcy Rule 9019; (c) authorizing the de-registration of Point Blank; (d) granting limited relief from the automatic stay as set forth in the Motion; (e) authorizing Point Blank and the SEC to take all actions necessary to effectuate the foregoing relief without the need for further order by this Court; and (f) for such other and further relief as is just and proper.

Dated: February 24, 2011

PACHULSKI STANG ZIEHL & JONES LLP

_/s/ Curtis A. Hehn_
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Curtis A. Hehn (Bar No. 4264)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:    ljones@pszjlaw.com
           dbertenthal@pszjlaw.com
           tcairns@pszjlaw.com

Counsel to Debtors and Debtors in Possession