# D. DAVID COHEN

ATTORNEY AT LAW
JERICHO ATRIUM
SUITE ~~133~~ *139*
500 NO. BROADWAY
JERICHO, NEW YORK 11753

(516) 933-1700
(516) 933-7285
FAX: (516) 933-8454
E-MAIL: DDCLAWFM@AOL.COM

February 23, 2011

**VIA FEDERAL EXPRESS**

Honorable Judge Peter Walsh
824 North Market Square
6th Floor, Courtroom No. 2
Wilmington, DE 19801

                Shareholder Objection
              Point Blank Solutions, Inc.
                Plan of Reorganization
              Case No. 10-11255 (PJW)
              Our File No. 07323.008

Honorable Judge Walsh:

    Enclosed herewith please find the undersigned's statement, <u>pro se</u>, of additional objections to the Proposed Plan of Reorganization and Request for Relief under 11 U.S.C. 1129 (A)(3).

                              Respectfully submitted,

                                D. David Cohen
                                Pro Se
                                500 North Broadway
                                Suite 139
                                Jericho, New York 11753
                                Tel: 516-933-1700
                                Fax: 516-933-8454

DDC/ea

See attached Service List.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

---------------------------------------x
:
: CHAPTER 11
In re: :
: Case No. 10-11255 (PWJ)
POINT BLANK SOLUTIONS, INC., ET AL[1] : (Jointly Administered)
:
: STATEMENT OF
Debtors : ADDITIONAL OBJECTIONS
: AND REQUEST FOR
: RELIEF UNDER
: 11 U.S.C. 1129(a)(3)
---------------------------------------x

Introduction:

1. This is the case of a publicly owned Corporation, Point Blank Solutions, Inc. (herein sometimes "PBSO" or the "Company" and together with its subsidiaries, the "Debtors") and its long aggrieved, cheated and defrauded public shareholders. See Exhibit A (Joint Statement of Law Enforcement Authorities 9/14/2011).

2. There is an opportunity for the Debtors to be

---

1 The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

Reorganized. I, and other public Shareholders support that goal. The three Plan Proponents will be presenting a Plan, which while stating it is a Reorganization, is effectively a total liquidation of the public interest in the entity. They – the three Plan Proponents – will end up with 100% of the equity of the Reorganized Parent (all "rights" to public shareholders are being eliminated), and a schematic for "sharing" the proceeds of a "Recovery Trust" of certain litigation assets, which is misaligned in favor of the Plan Proponents and against the public shareholders.

3. It is the "litigation assets" which are the fulcrum of the entire proposed Plan of Reorganization. They are assets "unique" to this publicly owned corporation and its publicly-owned shareholders. They arise because both the Shareholders and the publicly-owned entity were previously defrauded. A fraction of the Shareholders and former Shareholders gained entitlement to some of the sums at issue via a Class Action Settlement[2] in the Eastern District of New York (Judge Johanna Seybert). There was a 2006 Settlement of both the Class Action and a related derivative action. I, a former (prior to June 26, 2002) counsel to the Debtors, as well as a Shareholder individually, objected to the Settlement, including an Indemnification for the former CEO, David H. Brooks ("Brooks"). Brooks has since been convicted of a wide range of fraud crimes, as has the Company's COO, and

---

[2] The Class Action Settlement was reduced to a Judgment in 2008. The Judgment has not been appealed.

the former CFO took a guilty plea.

4. I opted out of the Class, and appealed to the Second Circuit Court of Appeals from the derivative Settlement with the unlawful Indemnification. The appeal succeeded, (<u>against the Debtor</u>) which sought as late as immediately prior to the Bankruptcy filing to maintain the Settlement with the unlawful Indemnification. See Exhibit B (Decision of Court of Appeals, 9/30/2011). The assets saved for the public Company and its public Shareholders **over the objection of the Debtor** by that appeal include: (a) $186 Million sought by the SEC from Brooks in a pending Sarbanes Oxley §304 proceeding in the Southern District of Florida, for which Brooks now has no known defense; (b) $200 Million or more available from claims and cross-claims (to be asserted) in the remanded derivative action in the Eastern District of New York; (c) approximately $100 Million by pursuing the race horse assets Brooks fraudulently transferred to his brother, ex-wife and children at the eve of his criminal indictment in October of 2007; (d) millions more in potential other claims against Debtors current management for its grossly inappropriate adherence to the unlawful Brooks indemnification, mismanagement and breaches of fiduciary duty to the Shareholders with respect to the operation of PBSO, including by this filing; and (e) a potential rearrangement of the $39 Million (originally $35.2

C:\WPDATA\01223-98091\07323.008 PBSO Plan of Reorganization\modified Statement of Additional Objections 2-23-11.doc    3

Million) set aside by Judge Seybert for the Class Action victims.³

5. All of the identified litigation assets and litigation claims belong to the publicly-owned entity and the public Shareholders of PBSO. None of them would exist if I had not challenged the initial derivative Settlement and had not taken a timely appeal from the derivative Settlement Judgment. The SEC *per se* did not appear in the Second Circuit case. The DOJ did appear, but did not timely appeal. The DOJ, arguing for itself and the SEC, appeared *amicus* in the Second Circuit.

6. The modified Plan proposes, in essence, to transfer the litigation claims and assets from the publicly-owned entity and the public Shareholders which were won in the Second Circuit through the device of the Debtor (which lost in the Second Circuit) to the three Plan Proponents and their wholly-owned Reorganized Parent. These Objections make the case that the "impermissible" grab of the litigation assets by the Plan Proponents violates the good faith requirements of 11 U.S.C. 1129(a)(3), and that affirmative relief is required in order to give the public shareholders immediate control of the entity they own, *and* to preclude the Plan Proponents from using and abusing the Bankruptcy laws as a pretense for yet another theft from the public shareholders.

7. This is a real life David and Goliath struggle. The

---

3 Debtors counsel has initiated a Turnover Action seeking to require the Class Action victims to give up the money set aside by Judge Seybert's final judgment, and to do so without collateral or any other secure or sound mechanism for eventual payment of the Class claims.

public Shareholders, owners of 100% of the capital stock of the Debtors,[4] and yet without paid representation for their separate cause are decidedly the underdog. Meanwhile, the modified Joint Plan is supported by Debtors counsel, the Creditors Committee and Creditors counsel and the Equity Committee and Equity counse, and all counsel and other experts are highly respected professionals in the bankruptcy field. One of the Plan Proponents is a Hedge Fund which controls over $24 Billion of assets. The other two Plan Proponents are also well endowed money management entities. <u>Who</u> do these parties propose "to take from"? Mostly ordinary investors, plain people who put their money in publicly traded securities, risking (as stock market investors concededly do) that this provider of body armor for the U.S. troops in combat and domestic law enforcement authorities would succeed financially, only to be burdened instead by repeated instances of dishonesty, outright fraud and overreaching. They have been left largely on their own to try to correct the situation. In the prior innings of this extended set of happenings, the S.E.C. and the criminal authorities have entered the fray, but, as they must often do because of circumstances, after the deed has been done and the public victims victimized.

---

4 Two Plan Proponents together own approximately 10%. If they are excluded, the rest of the public Shareholders own 90%.

8. The challengers to the Plan admittedly face a difficult hurdle in showing lack of good faith. However, while the Joint Plan[5] <u>purports</u> to be consensual, there has been no consent by the ownership of the Debtor. The only consent is by a <u>former owner</u> with no continuing stake in the enterprise. That is a reference to Steel Partners II ("Steel"), a New York Hedge Fund. Steel owns no shares of the Debtor. The current Board of Directors of PBSO consists of only four persons, two principals of Steel and two additional appointees of Steel. The public Shareholders - with 90%/100% of the share ownership of PBSO - have had no representation on the Board, and no independent representation in the proceeding. No counsel currently employed by the Steel elected PBSO Board <u>in fact</u> represents the public ownership or the public Shareholders of the Debtors, and none have done so throughout the course of this case. Any representation to the contrary would be false or plainly provably inaccurate. The failure of corporate governance at PBSO started before this case began. See Exhibit C hereto (8-k filings re: resignation of directors Bernard C. Bailey and Maurice Hannigan, June 2009.) Before this Objection has been filed, efforts have been made to bring these matters to the attention of the Plan Proponents, and avoid this confrontation, those efforts have been met with a deaf ear.

---

4 As of the above date hereof, there is no Modified Plan.

9. I am a public shareholder of PBSO owning in excess of 50,000 Shares, a long-involved interested party, and a *pro se* Objector to the Joint Plan of Reorganization. I submitted my initial Objections to the Plan by letter dated February 7, 2011, together with separate sets of Objections to the Plan (doc #1105) and to the Disclosure Statement (doc # 1106). After the initial Objections were stated by various public Shareholders, me and the Securities & Exchange Commission (doc. #1124), the Plan Proponents set about to develop a modified Plan. Upon information and belief,[6] it is anticipated that when the yet-to-be officially published modified Plan is published, it will, if anything, further suppress the values available to the public shareholders of PBSO.

10. This Court will understandably commence this inquiry with the premise that equity owners always have the lowest priority and often "lose" when an entity goes through a Bankruptcy proceeding. The Objectors appreciate that general principle. But, the Objections here are derived from Plan Proponents clear "misuse" of the bankruptcy rules to achieve an unjust, unfair, inequitable result which denies the public Shareholders what they already own. PBSO, because it is a

---

[6] It is necessary to proceed on information and belief as to the Modified Plan because the Debtors counsel fixed February 24th as the last date to file Objections but as of this date, February 23rd, have yet to file the Modified Plan and Modified Disclosure Statement or extend the objection deadline. The February 10 public notice to Shareholders fixing the filing deadline for Objections as February 24th invites Shareholders to call a Notice and Balloting Agent to secure the Amended Disclosure Statement and Amended Plan, or to view the Agent's website, but neither mechanism as of this date will yield any such documents. Having become accustomed to denying Public Shareholders any say at all, the Plan Proponents now seek to demand exacting timely Objections to documents not even available.

C:\WPDATA\01223-98091\07323.008 PBSO Plan of Reorganization\modified Statement of Additional Objections 2-23-11.doc     7

publicly owned Company, and the public holders of PBSO, hold valuable rights and remedies as to assets worth, or potentially worth, well in excess of total debt, as the Plan Proponents essentially concede. The Plan Proponents are not merely seeking the litigation money to pay debt and fund the operating businesses. They are seeking to make themselves the principal owners of the business plus all of those valuable litigation rights and remedies, and to displace the publicly owned entity and its public Shareholders, from the fulcrum litigation assets and opportunities. In effect, they are seeking to make themselves "richer" on the backs of the previously defrauded victims. It is a plainly abusive overreach. An overreach in a situation which, if anything, called for the opposite result: decency and honesty, at least, to the public shareholders.

11. I believe the current Plan, unless properly Modified, must fail. The current Plan, if it succeeds, will achieve a result which defies fairness, equity and balance. I further believe that the Petition was not filed in good faith as defined by the Statute; the case has not been prosecuted in good faith; and that this specific Plan has not developed in "good faith" as required by 11 U.S.C. 1129 (a) (3). I have shared my beliefs in a detailed statement provided to Debtors counsel, Equity Committee counsel and one of the Plan Proponents. One of those counsel has affirmatively denied that my beliefs are factually accurate and expressed in the

strongest possible terms opposition and intense reaction to the assertions. I do not wish to sow discord with or among the Plan Proponents or to see this proceeding derailed. Since the constituent parties now have my Objections, and have yet to publish a Modified Plan, let this Objection serve as a place saver that they will or may, hopefully, in fact, modify the Plan to provide fair and equitable treatment for the Public Shareholders. I would be less than candid if I did not admit, approaching age 71, that I readily do not have the courage, capacity or wherewithal to personally challenge alone a joint plan which meets, if it meets, the scrutiny of the U.S. Trustee and the staff representative of the Securities & Exchange Commission assigned to this case.

The Good Faith Requirements.

12. <u>Good Faith and Proposal by Means Not Forbidden by Law; §1129(a)(3)</u>. There are two basic requirements of section 1129(a)(3), one positive and the other negative. The positive requirement is that the plan "has been proposed in good faith." The negative requirement is that the plan not have been proposed "by any means forbidden by law." Good faith has served many functions in American bankruptcy law. Its placement in the list of confirmation requirements signifies Congress's intent that there be <u>some check</u> on the mechanical requirements found in other subsections of section 1129. . . the changing nature of business and reorganizations generally required that courts have some leeway to see if the plan

proffered squares with the general intent of the Code. With respect to chapter 11 confirmations, section 1129(a)(3) serves that goal. See Colier on Bankruptcy ¶1129 02(3)(a) at 1129-21 to 1129-27 (16th Ed.).

13. <u>Current Judicial Interpretations</u>. Against this background, courts have given meaning to the section 1129(a)(3) requirement of good faith. Most of these interpretations focus on the nexus between the plan's intent (as derived from the proponent's intent) <u>and</u> the goals of chapter 11. The further the two are from each other, the more likely a court will find that section 1129(a)(3) has not been satisfied. Collier at 1129.02(3)(a)(11) at 1129-22.

<u>Formulation of a Standard</u>. In re <u>Madison Hotel Associates</u>[7] contains one of the earliest and best statements regarding the requirements of section 1129(a)(3). In that case, the debtor had filed to avoid foreclosure, and had sought to cure and reinstate the lender's claim under section 1124(2). The lender claimed that filing a case solely for the purpose of stalling a state law foreclosure was not good faith; the Seventh Circuit disagreed. It stated:

> "Though the term "good faith," as used in section 1129(a)(3), is not defined in the Bankruptcy Code, . . . the term is generally interpreted to mean that there exists "a reasonable likelihood that the plan will achieve a result consistent with the

---

[5] 749 F.2d 410, 11 C.B.C. 2d771 (7th Cir. 1984)

objectives and purposes of the Bankruptcy Code." Thus, for purposes of determining good faith under section 1129(a)(3), . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. . ."

"According to the good faith requirement of section 1129(a)(3), the court looks to the debtor's plan and determines, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Bankruptcy Code. The plan "must be 'viewed in light of the totality of the circumstances surrounding confection' of the plan [and] . . . the bankruptcy judge is in the best position to assess the good faith of the parties' proposals."[8] Collier at 1129.02(3)(a)(ii)(iii) at 1122-23.

14. At this time and pending the filing of a Modified Plan, this Objector respectfully prays that the component constituent parties to the Plan have heard the "good faith" arguments I have made; and the Plan Proponents will use their own heightened concerns for the public Shareholders sufficient to cause them to provide a Modified Plan and Modified Disclosure Statement consistent <u>with good faith to the public</u>

---

[8] In re Madison Hotel Assocs., 749 F.2d 410, 424-425, 11 C.B.C. 2d 771 (7th Cir. 1984).

interest ownership of PBSO. 11 U.S.C. 1129(a)(3), or that this Court will deny confirmation entirely. The public Shareholders of PBSO are among the weakest of our citizens: public shareholders in a publicly-owned Company which had twice before been defrauded. Enough is enough. This Plan either should be properly modifed or stopped here. Your Objector respectfully requests the right to further supplement these Objections when the Modified Plan is filed.

Relief Requested. For all of the foregoing reasons, the Objector respectfully requests that this Court enter an Order:

(i) Rejecting approval of the Plan, as proposed, unless modified by the Plan Proponents to the satisfaction of this Court to meet the legitimate concerns of the public Shareholders of the Debtor; and if the Plan is rejected,

(ii) Requiring the existing directors of PBSO be replaced by an independent Shareholder Board selected by this Court, to which your Objector recommends General Larry Ellis (U.S. Army Retired), a former President and Director of PBSO and current Chair of the Creditors Committee and/or John Siemer, another retired Army Officer and former chief operating officer of PBSO, plus up to four (4) other individuals who are Shareholders of the publicly-owned entity and/or representatives of Shareholders, but not including any of the Plan Proponents;

(iii) Directing the newly-constituted Board of Directors of PBSO and Class counsel to promptly enter into negotiations

and/or mediation with a view towards seeking to resolve, if possible, without further litigation, the issues presented by the Turnover Action, and to report back to the Court within thirty (30) days as to the results of such mediation;

(iv) Allowing the newly re-constituted Board of Directors of PBSO up to sixty (60) days to submit a new Debtor ownership Plan of Reorganization before the Court will enter any motion for liquidation; and

(v) Granting such other and further relief as this Court may deem to be just and proper under all of the circumstances.

Respectfully Submitted,

*/s/ D. David Cohen*

D. David Cohen
Pro Se
500 No. Broadway
Suite 139
Jericho, N.Y. 11753
Tel: 516-933-1700
Fax: 516-933-8454

Cc: See Attached Service List.