*A*

**For Immediate Release**
September 14, 2010

**United States Attorney's Office**
**Eastern District of New York**
**Contact: (718) 254-7000**

David H. Brooks, Founder and Former Chief Executive Officer of DHB Industries, Inc. and Sandra Hatfield, Former Chief Operating Officer, Convicted of Insider Trading, Fraud, and Obstruction of Justice

*Defendants Reaped Nearly $200 Million Through Their Schemes*

After an eight-month trial a federal jury in Central Islip, New York, today found David H. Brooks and Sandra Hatfield, respectively the former Chief Executive Officer and former Chief Operating Officer of DHB Industries, Inc., a supplier of body armor to the U.S. military and law enforcement agencies, guilty of insider trading, fraud, and obstruction of justice. Brooks was also found guilty of lying to auditors. Brooks has been in custody since his January 2010, bail revocation for concealing millions of dollars in San Marino and London, England.

The convictions were announced by Loretta E. Lynch, United States Attorney for the Eastern District of New York, Janice K. Fedarcyk, Assistant Director-in-Charge, Federal Bureau of Investigation, New York Field Office, and Charles R. Pine, Special Agent-in-Charge, Internal Revenue Service Criminal Investigation, New York.

As detailed below, the government's evidence at trial established that the defendants and others conspired to loot DHB for personal gain, concealed Brooks' control of a related company used to funnel money to support the former CEO's thoroughbred horse-racing business, falsely inflated inventory at a DHB subsidiary to artificially

boost reported profits, and then lied to auditors in an effort to cover-up the schemes.

## Unauthorized and Undisclosed Compensation

The defendants conspired to unlawfully enrich themselves and their family members through a variety of means. Brooks used corporate money not only to finance a horse-racing business that had no relationship to DHB's business, but also used unreported corporate funds to finance a lavish lifestyle that included corporate-paid trips to exotic locations, the purchase of a luxury car and an armor-plated vehicle, personal jewelry, cosmetic surgery, country club bills, and $40,000 leather bound invitations for his son's Bar Mitzvah.

## The Related Party Scheme

The defendants engaged in a scheme to conceal the related party status of Tactical Armor Products (TAP), a company supposedly run independently of DHB by Brooks' wife, but in fact wholly controlled by Brooks. Through this scheme, more than $10 million was siphoned out of DHB at Brooks' direction to pay for obsolete body armor plates. The profits from these related party transactions were used to pay for more than $16 million in Brooks' personal horse racing business, jewelry, and cash investments. To conceal the scheme and deceive auditors and investors, Brooks created fraudulent multi-million dollar transactions and doctored internal DHB documents.

## The Accounting Frauds

The defendants engaged in accounting fraud schemes designed to increase the net income and profits that DHB reported in its press releases and filings with the SEC by falsely inflating the value of DHB's existing inventory, adding non-existent inventory to the company's books and records, and fraudulently reclassifying expenses. In one instance, Hatfield falsely boosted DHB's inventory by $7 million in 2004, and both defendants fraudulently added more than $7 million of non-existent inventory to DHB's books and records in the first quarter of 2005. The defendants also caused the inventory of DHB's main body armor product line sold to the U.S. military to be overvalued by more than $7 million in 2003 and by more than $7 million in 2004.

## Lying to Auditors and Obstruction of Justice

Brooks and Hatfield attempted to cover up several of the schemes by obstructing the Securities and Exchange Commission's investigation into wrongdoing at DHB. The defendants submitted false reports to the SEC during an investigation of DHB's executive compensation and related party schemes that began in March 2003; Brooks lied to DHB's independent auditors about the inventory inflation fraud; and when auditors tried to look at the phony inventory, Brooks falsely

claimed that it had been destroyed in a hurricane. Brooks later admitted that the supposed inventory never actually existed.

## Insider Trading

In November 2004, several days after DHB filed a financial report with the SEC and sent shareholders a statement containing many of the same misrepresentations and omissions described above, the defendants sold more than $72 million of their DHB stock. In December 2004, they sold approximately $118 million of their DHB stock. These sales occurred when DHB's stock price rose to over $20 per share in late 2004. In total, Brooks realized more than $185 million and Hatfield more than $5 million from the insider trading. Since these insider sales, DHB stock price fell to pennies on the dollar and the stock was de-listed from the American Stock Exchange.

Brooks was removed as DHB's CEO in July 2006 and Hatfield resigned from DHB in November 2005. In July 2006, DHB relocated its headquarters from Westbury, New York, to Pompano Beach, Florida, and on October 1, 2007, DHB changed its name to Point Blank Solutions, Inc. DHB stock was traded on the American Stock Exchange until trading was suspended on May 26, 2006, as the defendants' schemes came to light.

"Corporate executives who lie to and steal from their employers—the shareholders—put the investing public at grave financial risk," stated United States Attorney Lynch. "We stand committed to ensuring that our markets operate fairly and honestly, and we will tirelessly investigate and prosecute insiders who fraudulently enrich themselves." Ms. Lynch thanked the Defense Criminal Investigative Service for its assistance in this case.

FBI Assistant Director-in-Charge Fedarcyk stated, "This case was fundamentally about stealing and lying. If someone robs a bank, it's a crime regardless of how he spends the money. Likewise, it's immaterial how Brooks spent the millions he misappropriated. To commit the theft and reap the insider trading windfall, and to conceal it all, Brooks and Hatfield lied to shareholders, lied to auditors, lied to regulators. The FBI is committed to policing and preventing this sort of brazen corporate misconduct."

"DHB shareholders invested their money for the production of body armor for the American military and law enforcement, not to finance the lavish lifestyles of corporate insiders through their theft and deception," stated IRS Special Agent-in-Charge Pine. "The defendants' acts were not only illegal, but they also create doubt in the minds of the investing public in the integrity of America's financial markets. The guilty verdicts today will send a strong signal to the



public that the law enforcement community continues to devote resources to combat and curb this kind of behavior."

When sentenced by United States District Judge Joanna Seybert, both defendants face a maximum term of imprisonment of 25 years for securities fraud, conspiracy to commit securities fraud, and insider trading; and 20 years for conspiracy to commit wire and mail fraud, obstruction of justice, conspiracy to obstruct justice, and lying to auditors. The defendants face a fine equal to twice the pecuniary gain or loss resulting from their fraud schemes, and the government is seeking forfeiture of approximately $200 million from the defendants for securities fraud violations and for their unauthorized and undisclosed compensation. The government is also seeking forfeiture of more than $150 million of identifiable assets held by Brooks and $3 million held by Hatfield.

The government's case was prosecuted by Assistant United States Attorneys Richard T. Lunger, Christopher A. Ott, and Christopher C. Caffarone.

The Defendants:
DAVID H. BROOKS
Age: 55
SANDRA HATFIELD
Age: 56