_____

|  |  |  |
|---|---|---|
| In Re: | ) | Chapter 11 |
|  | ) |  |
| POINT BLANK SOLUTIONS INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
|  | ) | Jointly Administered |
| Debtors. | ) | Re: Docket# 1140,1141,1149 and 1167 |
|  | ) |  |
|  | ) | **Hearing Date: March 10, 2011 at 4:00 P.M.** |
|  | ) | **Obj. Deadline: March 7, 2011 at 4:00 P.M.** |

_____

## JOINDER OF RODNEY MCFADDEN TO D.DAVID COHEN'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY TO DE-REGISTER AS A PUBLIC COMPANY

1.      Rodney McFadden "The Objector," a public shareholder of Point Blank Solutions Inc., hereby joins D. David Cohen in his "*Objection to Debtors Motion for Authority to De-Register as a Public Company*" [Docket # 1167].

2.      For the reasons set forth in Cohen's *Objection to Debtor's Motion for Authority to De-Register as a Public Company,* and for the other reasons set forth herein, The Objector respectfully requests that the Court deny the portion of the Debtors Motion that seeks to de-register the Company as a public company. The Debtor's Motion is stylized as *Motion to Approve Compromise under Rule 9019 for (I) Approval of a Consent Agreement with the Securities and Exchange Commission; (II) Limited Relief from the Automatic Stay; and (III) Authority to De-Register as a Public Company* [Docket # 1140].

_____

[1] The Debtors in the above-captioned cases, along with the last four digits of each Debtor's federal tax identification number and their respective addresses, are: Point Blank Solutions Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2' Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America *(9051),* 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

3.       As will be shown herein, the only contested part of the Debtors' motion is the motion to de-register as a reporting company.  That particular portion of the Debtor's Motion seeks non-consensual de-registration before there is a vote on any Plan of Reorganization by the Shareholders.  The Debtors have not shown that they have the consent of the SEC to de-register and have only packaged de-registration along with the SEC consent judgment to provide the appearance that the Commission has authorized it, and in the process secure for themselves cover from this Court to the unauthorized taking from the public Shareholders not only their absolute statutory right to publicly filed reports but also their right to elect - in the forthcoming vote on a proposed Plan of Reorganization -  to disapprove of any Plan which denies them the ability to continue as owners of the entity they presently *do* own.  It is especially important to note that the management group pursuing this end was put in office by a former shareholder/hedgefund which has divested all of its shares and no longer has any continuing equity interest in the Company and whose interests are no longer aligned with that of the public shareholders.  The motion is not only unauthorized by shareholders it is also undemocratic in that it circumvents the proper due process afforded to parties in interest under the Bankruptcy Code given to us by the United States Congress.

## DISCUSSION

4.       The Debtors have motioned this Court for approval of a Consent Agreement with the Securities & Exchange Commission [Docket # 1140, Exhibit A] wherein the Debtors propose to accept a complaint filed by the SEC (Exhibit B to the Debtor's Motion) that DHB (n/k/a Point Blank) violated important Securities & Exchange Act rules and regulations from 2003-2005 (without admitting or denying the allegations of the Complaint) and enter into a

Final Judgment (Exhibit C to the Debtors Motion) which imposes no penalty or fine on the Debtor, but enjoins and restrains DHB (n/k/a Point Blank) to adhere to specific provisions of the Securities & Exchange Act of 1934.

5.      Within their Motion, the Debtors suggest that they need to immediately de-register as a public company so that they "*will not violate the terms of the Final Order when it becomes effective*". The only data point they use, tenuous as it may be, to support their assertion is that the costs to regain compliance with SEC requirements "*would exceed $1 million in accounting and legal fees*." The portion of the Motion that seeks Court approval to de-register as a public company is devoid of substance or is otherwise lacking in adequate disclosure; notably the $1 million "excuse" given in support of the Motion directly results from the Debtor's own negligence in failing to keep up with SEC reporting requirements on a timely basis. It should be noted that the SEC reporting requirements under the Consent Agreement and Final Judgment were *always* incumbent upon the Debtors by virtue of their status as a public company, not merely as a result of the Consent Agreement and Final Judgment.

6.      Within the Debtor's Motion they disclose that "*on May 17, 2010, Point Blank entered into the Consent Agreement with the SEC and agreed upon the form of the Final Judgment*". Thus, at the time of the filing of their Motion, the Debtors effectively admit that they had known for more than 9 months, the import and details of the Consent Agreement and Final Judgment. For the Debtors to now come before this Court and act as if there is some pressing need to *immediately* de-register as a public company is incredible.

7.      Management of the Debtors apparently chose at the end of 2009/beginning of 2010 not to continue with the required audit of the Debtors 2009 financial statements.  Then,

3

in March of 2010, management made a conscious choice not to abide by the Securities Law requirement of providing an annual report, with audited financial statements, to its public shareholders. On April 14, 2010, they filed for Bankruptcy protection with the automatic stay preventing shareholders and/or the SEC from suing for compliance. They have had 10 months within which to regain compliance. They have chosen non-complaince. Now, they seek "limited" waiver of the automatic stay to enter into an agreement which on its face would require compliance but simultaneously seek to <u>impose</u> de-registration on shareholders to evade the very explicit term of the Final Judgment that requires compliance. Management's non-compliance over the past 15 months is not an excuse or a reason to mandate non-compliance forever. Management's non-compliance over the past 15 months does not provide proper basis to forever dispatch and disenfranchise the public shareholders, before a Plan of Reorganization is voted upon and rejected or accepted.

8.      Within their Motion [Docket #1140, page 2], the Debtors give the following as a reason for immediate de-registration:

> "*First, the SEC has agreed to not seek any civil damages and penalties against Point Blank. This decision by the SEC is a major benefit to creditors. Second, it is important to the success of Point Blank's ongoing governmental contracting business that the Complaint be resolved as quickly as possible. <u>Absent a prompt resolution, Point Blank could be disadvantaged in obtaining new government contracts while the Complaint is pending against it</u>.*"

9.      According to their own pleadings, the Debtors knew as far back as May 17, 2010 that they would need to make the requisite financial disclosures and filings with the SEC in order to satisfy the terms of the Consent Agreement and Final Judgment, when entered. As

such, it is quite disingenuous that *only now*, do they seek relief of the Court to attempt to comply with the salient terms of the Consent Agreement and Final Judgment that were known to the Debtors for <u>more than 9 months.</u> To state the obvious, the relief Debtors now seek is not designed to promote more awareness and disclosure through the required SEC filings (as the SEC intended by virtue of the Final Judgment) but is instead designed to forever disenfranchise public shareholders from participating in the Reorganized Parent -- thereby rendering the remainder of the Debtors' still undisclosed, highly controversial, and heavily opposed Plan effectively a *fait accomplis*.

10.     The Motion also claims that the Debtors "*could be disadvantaged in obtaining new governmental contracts while the (SEC) complaint is pending against it*."  This is beyond absurd and should strain the sensibilities of the Court.  There would be no SEC Complaint but for the Consent Judgment. The Debtors are electing to allow the SEC to sue it now, and then running to the Court post-haste proclaiming "we need de-registration to save us form the consequences of the suit."  The biggest negative preventing the Debtors getting governmental contracts has been the uncertainties created by this Bankruptcy filing, and the inordinate amount of administration expenses which challenge the viability of the entity by straining the limits of what the entity can bear.  The best way to surmount that negative is to get a proper Plan of Reorganization approved by the Shareholders.  Instead of doing that, The Debtors seek to circumvent an unbiased vote by shareholders by using this Court to de-register the Debtor as a publicly reporting entity in advance of the vote, thereby crushing the equity (currently valued at $20 Million by the capital markets) in order to give public shareholders no option other than to allow the Plan Proponents to take over all of the assets and businesses of the Debtor and run them as a private business.  This is not a motion in the ordinary sense, it

is essentially the Debtors, already divorced from its public shareholders, asking the Court to pre-ordain the death of a publicly reporting company. The Debtors have an enormous burden to meet for such a motion. They have not come close to meeting it and it is a burden they cannot meet.

11.      If, as the Debtors now claim, it is true that the Debtors "*could be disadvantaged in obtaining new government contracts while the Complaint is pending against it"* was the same not also true 9 months ago? Accordingly, could it not also be contended that the Debtors have failed to exercise reasonable business judgment during that 9-month pendency in failing to seek relief from the Court to retain the services of the requisite professionals to regain compliance with SEC filing requirements in order to comply with the terms of the Consent Agreement and Final Judgment that the Debtors knew were forthcoming?

12.      With more than $20 million (37% of pre-petition assets) having been spent on administrative expenses during the 10-month pendency of this bankruptcy proceeding it cannot be seriously contended that the Debtors are truly balking at the idea of spending $1 million to protect shareholder interests and to protect their ability to obtain new government contracts by virtue of becoming compliant with SEC reporting requirements. It should be noted that the 10-month pendency of this Chapter 11 proceeding runs concurrently with the 9-months that the Debtors have known that their SEC filings were going to be required to be made current and compliant. So all during the time that they knew they would be required to become compliant they also knew they risked running afoul of their ability to continue to procure additional government contracts because of their SEC filing deficiencies. This information is <u>not</u> new to the Debtors and as such, this Court should view this sudden urgency to 'de-register" with great skepticism.

13.     The Court should ask itself "which parties stand to benefit from *immediate* de-registration?" and "which constituency is harmed the most?" before deciding on the Motion.

14.     According to Part II of the Final Judgment (attached as Exhibit C to the Debtor's Motion [Docket # 1140]), one of the relevant stipulations is as follows:

> "*IT IS FURTHER ORDERED AND ADJUDGED that …among other things, require the filing with the Commission of accurate Forms 10-K, Forms 8-K, and Forms 10-Q by registered public companies.*"

There is nothing within this passage or any other passage within the Consent Agreement or Final Judgment that the Debtors can point to that suggests that the SEC has required the Debtors to de-register as a public company. In fact, a plain reading of the Final Judgment would suggest that there is no alternative other than to comply with the <u>explicit</u> terms which call for the filing of accurate forms that are required of registered public companies.

15.     Against the backdrop of the more than $20 million (a breath-taking amount given the pre-petition assets of the Debtors) in reorganization expenses that have been incurred, just through January 2011 (a mere 10 months), the $1 million in costs to regain SEC reporting compliance pale by comparison. The $1 million to regain compliance with SEC reporting requirements also pales in comparison to both the $39 million in rejected Settlement funds that may come back to the Estate and the $186 million that is subject to disgorgement from former management under the SEC's SOX §304 Action that may also return to the Estate.

16.     While there is no doubt that all parties in interest can appreciate the introduction of some modicum of fiscal discipline into this Chapter 11 proceeding; the institution of fiscal discipline appears to be subjectively applied. Notably, $20 million of shareholder money (37% of pre-petition assets) have been spent on administrative expenses (and the Debtors

don't even bat an eyelash). On the other hand, $1 million (less than 2% of pre-petition assets) is a price that is considered too steep to pay in order to keep the shareholder's securities registered. This is an example of selective application of fiscal discipline, if ever there was one. If the Debtor's had *maintained* compliance with SEC requirements all along, the costs to *maintain* compliance with those reporting requirements at present would be nowhere near the $1 million that the Debtors claim it will now cost. To fall out of compliance was an overt and conscious choice the Debtors made long ago; that decision and the resultant loss of economic value falls squarely at the feet of the Debtors who constantly remind the court how they have fully exercised reasonable business judgment.

17.     If after the proper disclosures have been made and proper Solicitation of the Plan has occurred, this Court ultimately approves a Plan that purports to de-register and emerge as a private, non-reporting company, then it shall be so. However, to date, the Debtors do not have a Court approved Disclosure Statement and they have not even entered the Solicitation period for parties in interest to vote on their Plan. As such, to de-register the Company now is "putting the cart before the horse" and effectively gives the Debtors and Plan Proponents exactly what they want before any parties in interest have been afforded a chance to vote on the Plan. This is a rather brazen attempt at circumventing the protections, processes and notice periods that are afforded to parties in interest, <u>by mandate of Congress</u>, under the relevant sections of the Bankruptcy Code. Therefore, I beg the Court to at least postpone the decision to approve de-registration until the Plan has been voted on and is before the Court for Confirmation, <u>but not before</u>.

18.     For the avoidance of doubt, the Objector does not object to the Debtors entering into the Consent Agreement and Final Judgment. What the Objector specifically objects to is

the notion that the Debtors could somehow use their own SEC filing deficiencies as a *shield* against further public disclosure and as a *sword* to impale shareholders in bringing about the outcome the Debtors and Plan Proponents have so long desired. This overarching desire includes taking the company private and permanently severing the shareholders (the fulcrum security holders in these Chapter 11 cases) from their interests in the Company and the related assets now in existence or recoverable under SOX §304 actions or other derivative actions without even having a confirmable Plan up for consideration and without having secured the requisite votes to confirm a Plan.

19.     This is not a just and equitable outcome for these Chapter 11 cases and de-registration is not a reasonable exercise of the Debtors business judgment such that it requires an emergency motion, all of a sudden. For if this proposal amounts to a reasonable exercise of business judgment, then the Debtors' fiduciary duty to protect the value of their estate and to preserve their ability to procure additional government contracts should have been exercised 9 months ago, when they entered into the Consent Agreement on May 17, 2010.


## CONCLUSION

20.     Wherefore the Debtors have not shown any valid reason for *immediately* de-registering as a public company; Wherefore the only excuse offered in support of de-registration arises due to the Debtor's own negligence in failing to previously remain compliant with SEC reporting requirements; Wherefore it has not been shown that the SEC required the Debtors to de-register as a public company as a condition of the Consent Agreement and Final Judgment; Wherefore the Debtors have not provided any basis for suggesting and otherwise have not shown that de-registration will absolve them of their duties

to make the required filings under the Final Judgment notwithstanding immediate de-registration; Wherefore the Debtors knew at least 9 months in advance of their Motion that they would be required to regain compliance with SEC reporting requirements, yet they took no such action; Wherefore the Debtors do not have a Disclosure Statement that has met with Court approval; Wherefore the Debtors do not have a Plan that has been approved for solicitation; and Wherefore neither the public shareholders of the Company nor any other parties in interest have voted in favor of any Plan that purports to reorganize as a private, non-reporting company;

21.     Therefore, it is neither appropriate for the Debtors to de-register as a public company at this time nor is the matter ripe for consideration. As such the Objector respectfully requests that this Court either (1) enter an Order Denying the Debtor's Motion to De-Register as a Public Company or (2) adjourn the hearing with respect to the "de-registration" matter until a time that is at least contemporaneous with a Confirmation proceeding, but not before;

22.     Finally, the Objector requests that the Court order such additional and other relief which the Court may determine to be just and proper under all of the facts and circumstances shown.

[The remainder of this page has been intentionally left blank.]

Respectfully submitted,

Dated: Woodway, TX

March 7, 2011

Rodney D. McFadden

By: /s/ Rodney D. McFadden

7833 Fairway Rd.

Woodway, TX 76712

Telephone: (979) 324-4363

Email:rdmcfadden@gmail.com

## CERTIFICATE OF SERVICE

I, Rodney McFadden, hereby certify that on the 7th day of March, 2011, I served the Joinder of Rodney McFadden to D. David Cohen's Objection to Debtor's Motion for Authority to De-Register as a Public Company, upon the parties in the attached service list:

_/s/ Rodney McFadden_____
RODNEY McFADDEN

## Counsel for the Debtors

Laura Davis Jones  -Pachulski Stang Ziehl & Jones LLP
 ljones@pszjlaw.com,

Timothy P. Cairns - Pachulski Stang Ziehl & Jones LLP
tcairns@pszjlaw.com

David Bertenthal - Pachulski Stang Ziehl & Jones LLP
dbertenthal@pszjlaw.com

Joshua Fried - Pachulski Stang Ziehl & Jones LLP
jfried@pszjlaw.com

**Counsel for the Creditors' Committee**

Robert M. Hirsh – Arent Fox
hirsh.robert@arentfox.com

George P. Angelich – Arent Fox
angelich.george@arentfox.com

Brian Arban – Rosner Law Group
arban@teamrosner.com ,

Frederick Rosner – Rosner Law Group
rosner@teamrosner.com

**Counsel for the Equity Committee**

Joseph T. Moldovan – Morrison Cohen
jmoldovan@morrisoncohen.com

Neil B. Glassman – Bayard Law
nglassman@bayardlaw.com
tmatthews@bayardlaw.com;
sbreckenridge@bayardlaw.com
jalberto@bayardlaw.com
bankserve@bayardlaw.com

**Counsel to Privet Opportunity Fund I, LLC and Privet Fund Management LLC**
Edward Estrada – Reed Smith
eestrada@reedsmith.com

Kurt Gwynne – Reed Smith
kgwynne@reedsmith.com

**Counsel to Prescott Group Capital Management**
Richard Palacio – Ashby & Geddes
rpalacio@ashby-geddes.com

**Counsel to Lonestar Capital Management, LLC**

James C. Carignan  - Pepper Law Group
carignaj@pepperlaw.com

David Stratton – Pepper Law Group
strattond@pepperlaw.com
wlbank@pepperlaw.com ,
lanoc@pepperlaw.com

Michael Cooley
Akin Gump Strauss Hauer & Feld
mcooley@akingump.com

David Simonds
Akin Gump Strauss Hauer & Feld
dsimonds@akingump.com

Securities and Exchange Commission
Alistaire Bambach – of Counsel
Bambacha@sec.gov

Patricia Schrage
schragep@sec.gov,
hancurs@sec.gov

Office of the United States Trustee
Jane Leamy
jane.m.leamy@usdoj.gov