**EXHIBIT B**

718 F.Supp.2d 1070, Fed. Sec. L. Rep. P 95,763
(Cite as: 718 F.Supp.2d 1070)

**H**
United States District Court,
D. Arizona.
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
Maynard L. JENKINS, Defendant.

No. CV-09-1510-PHX-GMS.
June 9, 2010.

**Background:** Securities and Exchange Commission (SEC) brought action against corporation's former chief executive officer (CEO), seeking an order compelling CEO to reimburse corporation, pursuant to the Sarbanes-Oxley Act, for bonuses, incentive-based compensation, and equity-based compensation following corporation's issuance of accounting restatements resulting from noncompliance with financial-reporting securities laws. CEO moved to dismiss. SEC moved for a ruling regarding request for judicial notice, for leave to file a response to CEO's notice of supplemental authority, and for leave to file a reply to CEO's response to its submission regarding CEO's notice of supplemental authority.

**Holdings:** The District Court, G. Murray Snow, J., held that:
(1) the Sarbanes-Oxley Act did not require personal misconduct of the CEO to trigger his reimbursement obligation;
(2) issue of whether reimbursement would result in a severe and unjustified deprivation in violation of CEO's due process rights could not be resolved at motion to dismiss stage;
(3) Delaware law would not render imposition of reimbursement obligation under the Sarbanes-Oxley Act absurd;
(4) corporation remained an "issuer" after merger in which it became a wholly-owned subsidiary of acquiring corporation; and
(5) CEO waived his claim seeking dismissal based on the innocent owner provisions of the Civil Asset Forfeiture Reform Act (CAFRA).

Motions denied.

West Headnotes

[1] Securities Regulation 349B ⇐150.1

349B Securities Regulation
    349BI Federal Regulation
        349BI(E) Remedies
            349BI(E)1 In General
                349Bk150 Insiders' Profits, Recovery of
                    349Bk150.1 k. In general. Most Cited Cases

Section of the Sarbanes-Oxley Act requiring chief executive officers (CEO) and chief financial officers (CFO) to reimburse issuers for specified bonuses and profits realized in the event of an accounting restatement caused by misconduct requires only misconduct of the issuer, and does not require the specific misconduct, or even personal awareness of financial misconduct, of the issuer's CEO or CFO, who, having received additional compensation during the period of misconduct after having failed in their responsibility to ensure accuracy of issuer's financial statements, unfairly benefit from that misconduct. Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a).

[2] Corporations and Business Organizations 101 ⇐2303

101 Corporations and Business Organizations
    101IX Corporate Powers and Liabilities
        101IX(B) Representation of Corporation by Corporate Principals
            101k2301 Application of Principle of Agency to Corporations
                101k2303 k. Corporation acts through officers or agents. Most Cited Cases
    (Formerly 101k423, 101k397)

Corporations and Business Organizations 101 ⇐2304

101 Corporations and Business Organizations
    101IX Corporate Powers and Liabilities
        101IX(B) Representation of Corporation by Corporate Principals

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

718 F.Supp.2d 1070, Fed. Sec. L. Rep. P 95,763
(Cite as: 718 F.Supp.2d 1070)

101k2301 Application of Principle of Agency to Corporations
      101k2304 k. Acting within scope of employment or authority. Most Cited Cases
(Formerly 101k423, 101k397)

In general, a corporation acts through its officers, agents, or employees and is liable for the actions of such persons acting within the scope of their agency.

[3] Securities Regulation 349B ⇐150.1

349B Securities Regulation
    349BI Federal Regulation
        349BI(E) Remedies
            349BI(E)1 In General
                349Bk150 Insiders' Profits, Recovery of
                    349Bk150.1 k. In general. Most Cited Cases

The misconduct of corporate officers, agents, or employees acting within the scope of their agency or employment is sufficient misconduct to trigger the reimbursement obligation under section of the Sarbanes-Oxley Act requiring chief executive officers (CEO) and chief financial officers (CFO) to reimburse issuers for specified bonuses and profits realized in the event of an accounting restatement caused by misconduct. Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a).

[4] Securities Regulation 349B ⇐150.1

349B Securities Regulation
    349BI Federal Regulation
        349BI(E) Remedies
            349BI(E)1 In General
                349Bk150 Insiders' Profits, Recovery of
                    349Bk150.1 k. In general. Most Cited Cases

Before reimbursement can be required under section of the Sarbanes-Oxley Act requiring chief executive officers (CEO) and chief financial officers (CFO) to reimburse issuers for specified bonuses and profits realized in the event of an accounting restatement caused by misconduct, the issuer's misconduct must be sufficiently serious to result in material noncompliance with a financial reporting requirement under the securities laws, and must require the issuer to file an accounting restatement. Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a).

[5] Federal Civil Procedure 170A ⇐1831

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1831 k. Fact issues. Most Cited Cases

Issue of whether section of the Sarbanes-Oxley Act requiring chief executive officers (CEO) and chief financial officers (CFO) to reimburse issuers for specified bonuses and profits realized in the event of an accounting restatement caused by misconduct, or the remedy sought under it, would result in a severe and unjustified deprivation to corporation's CEO, in violation of his due process rights, could not be resolved at motion to dismiss stage, because of dispute as to whether the statute's purpose was remedial and not punitive. U.S.C.A. Const.Amend. 5; Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a).

[6] Statutes 361 ⇐223.1

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k223 Construction with Reference to Other Statutes
                361k223.1 k. In general. Most Cited Cases

In ascertaining the purposes to be served by a statute, it is appropriate to look at the larger statutory scheme of which the particular statute is a part.

[7] Securities Regulation 349B ⇐150.1

349B Securities Regulation
    349BI Federal Regulation
        349BI(E) Remedies
            349BI(E)1 In General
                349Bk150 Insiders' Profits, Recovery of
                    349Bk150.1 k. In general. Most Cited Cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Legislative history of section of the Sarbanes-Oxley Act requiring chief executive officers (CEO) and chief financial officers (CFO) to reimburse issuers for specified bonuses and profits realized in the event of an accounting restatement caused by misconduct supported interpretation of the section as not requiring personal misconduct by the issuer's CEO or CFO, where the Senate had opportunity to consider an amendment that would have added a personal misconduct element, but it signed the Act into law without including the amendment. Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a).

[8] Corporations and Business Organizations 101 ☞1827

101 Corporations and Business Organizations
    101VII Directors, Officers, and Agents
        101VII(D) Rights, Duties, and Liabilities as to Corporation and Its Shareholders or Members
            101k1826 Indemnification
                101k1827 k. In general. Most Cited Cases
    (Formerly 101k308(1))

Securities Regulation 349B ☞150.1

349B Securities Regulation
    349BI Federal Regulation
        349BI(E) Remedies
            349BI(E)1 In General
                349Bk150 Insiders' Profits, Recovery of
                    349Bk150.1 k. In general. Most Cited Cases

That Delaware law would allow Delaware corporation's chief executive officer (CEO) to be indemnified by the corporation if he acted in good faith and in a manner that he reasonably believed to be in or not opposed to best interests of the corporation did not render absurd Securities and Exchange Commission's (SEC) interpretation of section of the Sarbanes-Oxley Act requiring chief executive officers (CEO) and chief financial officers (CFO) to reimburse issuers for specified bonuses and profits realized in the event of an accounting restatement caused by misconduct as not requiring personal misconduct of the issuer's officers. Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a); 8 West's Del.C. § 145(a).

[9] Corporations and Business Organizations 101 ☞2678

101 Corporations and Business Organizations
    101X Mergers, Acquisitions, and Reorganizations
        101X(B) Mergers and Consolidations
            101k2673 Operation and Effect of Merger or Consolidation
                101k2678 k. Succession to rights of original corporations. Most Cited Cases
    (Formerly 101k589)

Securities Regulation 349B ☞150.1

349B Securities Regulation
    349BI Federal Regulation
        349BI(E) Remedies
            349BI(E)1 In General
                349Bk150 Insiders' Profits, Recovery of
                    349Bk150.1 k. In general. Most Cited Cases

Corporation remained an "issuer" after merger in which it became a wholly-owned subsidiary of acquiring corporation and its common stock was delisted and deregistered, and, thus, its chief executive officer's (CEO) reimbursement obligation, under section of the Sarbanes-Oxley Act requiring CEOs and chief financial officers (CFO) to reimburse issuers for specified bonuses and profits realized in the event of an accounting restatement caused by misconduct, survived corporation's merger, where it issued securities at time it filed its misstated or restated financials, and at time that CEO received the compensation subject to reimbursement. Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a).

[10] Federal Civil Procedure 170A ☞1825

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1825 k. Motion and proceedings thereon. Most Cited Cases

In Securities and Exchange Commission's (SEC) action against corporation's former chief executive officer (CEO), seeking an order compelling CEO to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

reimburse corporation, pursuant to the Sarbanes-Oxley Act, for bonuses, incentive-based compensation, and equity-based compensation following corporation's issuance of accounting restatements resulting from noncompliance with financial-reporting securities laws, CEO waived his claim seeking dismissal based on the innocent owner provisions of the Civil Asset Forfeiture Reform Act (CAFRA), where he did not seek dismissal on that basis in his initial motion to dismiss, even though the argument was available at the time, but, rather, he raised the argument for the first time in his notice of supplemental authority. Sarbanes-Oxley Act of 2002, § 304(a), 15 U.S.C.A. § 7243(a); 18 U.S.C.A. § 983(d).

*1072 Catherine Oriordan, Donald Werner Searles, Lorraine B. Echavarria, Robert Conrrad, Securities & Exchange Commission, Los Angeles, CA, for Plaintiff.

Gregory J. Weingart, Jenny Jiang, John W. Spiegel, Melinda E. Lemoine, Munger Tolles & Olson LLP, Los Angeles, CA, for Defendant.

**ORDER**
G. MURRAY SNOW, District Judge.

Four motions are pending before the Court:(1) Defendant Maynard L. Jenkins's ("Jenkins" or "Defendant") Motion to Dismiss (Dkt. # 17), (2) Plaintiff Securities and Exchange Commission's ("SEC" or "Plaintiff") Motion for Ruling Regarding Request for Judicial Notice (Dkt. # 24), (3) the SEC's Motion for Leave to File a Response to Defendant's Notice of Supplemental Authority (Dkt. # 33), and (4) the SEC's Motion for Leave to File [a] Reply to Defendant's Response to the SEC's Submission Regarding Defendant's Notice of Supplemental Authority (Dkt. # 37). For the following reasons, the Court denies the Motion to Dismiss, denies the SEC's Motion for Ruling Regarding Judicial Notice, and denies as moot both parties' Motions regarding supplemental authority, except to the extent otherwise explained in this Order.

**BACKGROUND**
During the time relevant to this action, CSK Auto Corporation ("CSK") was a publicly-traded retail company of automotive parts and accessories, operating under three brand names: Checker Auto Parts, Schucks Auto Supply, and Kragen Auto Parts. From January 1997 through August 2007, Jenkins was CSK's CEO and the chairman of its board of directors, receiving a base salary, bonuses, and stock option grants.

While Jenkins worked for CSK, the company engaged in a vendor allowance program called "Let's Work Together." The Complaint alleges that, by intentionally failing to properly account for receivables under this program, CSK reported greater pretax income than the company actually earned during fiscal years 2002, 2003, and 2004. Although the SEC does not allege that Jenkins personally was aware of the fraudulent concealment perpetrated by various CSK officers, Jenkins did certify the company's inaccurate financial statements for those years.

Eventually, to correct these overstatements, CSK filed two accounting restatements as required by federal securities *1073 laws, which Jenkins also certified. In 2004, CSK released its first restatement. That restatement, however, failed to write-off all known uncollectible vendor allowance receivables and incorrectly indicated that the errors were mistakes rather than fraudulent misstatements by CSK. In 2007, CSK filed a second restatement, which restated the financial statements for fiscal years 2002-2004. The Complaint does not allege that Jenkins played any role in perpetuating the scheme. In fact, the SEC has filed both civil complaints and criminal indictments against other CSK officers, alleging that those officers concealed the scheme from Jenkins.[FN1]

> FN1. Both parties have requested that the Court take judicial notice of various exhibits. For the purposes of this Order only, all such requests are denied.

From May 2003 through May 2005, Jenkins received over $2 million in compensation in the form of bonuses and other incentive-based and equity-based compensation. During the same period, Jenkins realized over $2 million from the sale of CSK securities. Jenkins has not reimbursed CSK for any portion of these bonuses, incentive-based compensation, equity-based compensation, or stock sale profits.

The SEC now seeks an order compelling Jenkins to reimburse CSK for this income pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley" or the "Act"), 15 U.S.C. § 7243 (2006). Section 304 of the Act requires that, if an issuer, such as

CSK, must prepare an accounting restatement because of its material noncompliance with financial-reporting securities laws, and if that noncompliance was caused by CSK's misconduct, then the CEO or CFO must provide certain reimbursement to the issuer. 15 U.S.C. § 7243(a). Under the Act, such reimbursement includes any bonuses, incentive-based, and equity-based compensation received during the twelve-month period following the first improper public issuance or filing. *Id.* Because the Complaint does not allege that Jenkins was personally responsible for either the Let's Work Together scheme or the incorrect SEC filings, except to the extent that Jenkins certified the SEC filings, Jenkins's liability depends on whether Section 304 requires a CEO to reimburse an issuer even where the CEO committed no personal wrongdoing. The Court is unaware of any cases discussing this issue, but the Court concludes that the Complaint properly states a claim under the statute.

## STANDARD OF REVIEW

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The task in a motion to dismiss "is to evaluate whether the claims alleged can be [plausibly] asserted as a matter of law." See *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004); *see also Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). When analyzing a Rule 12(b)(6) motion, all plausible "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996). However, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.1998).

## DISCUSSION

Section 304 of Sarbanes-Oxley provides:

*1074 **(a) Additional compensation prior to noncompliance with Commission financial reporting requirements**

If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for-

(1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

(2) any profits realized from the sale of securities of the issuer during that 12-month period.

**(b) Commission exemption authority**

The Commission may exempt any person from the application of subsection (a) of this section, as it deems necessary and appropriate.

15 U.S.C. § 7243.

## I. Section 304 Does Not Require Personal Misconduct.

The overarching issue is whether the Complaint alleges facts sufficient to raise a plausible claim under Section 304. Because a motion to dismiss turns not on what facts ultimately may be proven, but rather on what the complaint plausibly alleges, the Court need not reach issues that depend on factual disputes. Accordingly, based on traditional rules of statutory interpretation, the Court concludes that the Complaint has alleged facts sufficient to state a claim under Section 304.

"The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir.1999). "The starting point for the interpretation of a statute is always its language," and "[a]ny inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1268 (9th Cir.2009) (citation omitted). Applying these steps of statutory interpretation, the Court holds that the text and structure of Section 304 require only the misconduct of the issuer, but do not necessarily require the specific misconduct of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

issuer's CEO or CFO. Moreover, Section 304's legislative history supports this textual reading. Because Congress's intent is evident from these main methods of statutory interpretation, the Court need not resort to the additional canons raised by Defendant.

### A. The Text of the Statute Requires Misconduct Only by the Issuer.

[1] When discerning Congress's intent from a statute's text, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there[.]" *Alvarado,* 588 F.3d at 1268 (citation omitted). When possible, a statute's plain meaning is determined according to its terms' "ordinary, contemporary, common meaning[,]" *Cooper v. F.A.A.,* 596 F.3d 538, 544 (9th Cir.2010), and by "look[ing] to the entire statutory scheme [,]" *Daas,* 198 F.3d at 1174.

[2][3][4] The relevant statutory phrase specifies that the reimbursement obligation is triggered if an issuer has to prepare an accounting restatement "due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws." 15 U.S.C. § 7243(a). The ordinary, contemporary and common meaning of that language is that the misconduct of the issuer is the misconduct *1075 that triggers the reimbursement obligation of the CEO and the CFO. In this case, the issuer is a corporation. In general, a corporation acts through its officers, agents or employees and is liable for the actions of such persons acting within the scope of their agency. *In re Am. Int'l Group, Inc.,* 965 A.2d 763, 802, 823 (Del.Ch.2009). Thus, the plain language of the statute indicates that the misconduct of corporate officers, agents or employees acting within the scope of their agency or employment is sufficient misconduct to meet this element of the statute. *See* 15 U.S.C. § 7243(a). Before reimbursement can be required, however, the issuer's misconduct must also be sufficiently serious to result in material noncompliance with a financial reporting requirement under the securities laws, and must require the issuer to file an accounting restatement. *See id.*

Defendant relies heavily on *In re Digimarc Corp. Derivative Litig.* for the proposition that Section 304 does not impose liability, but instead is merely a remedy to be applied to "wrongdoers." 549 F.3d 1223, 1231-33 (9th Cir.2008). The issue in *Digimarc,* however, was whether Section 304 created a private right of action; *Digimarc* held neither that Section 304 lacks a stand-alone basis for imposing liability nor that the statute applies only to "wrongdoers." *See id.* While *Digimarc* noted in passing that Section 304 "[is] equitable (in the sense that [it] require[s] wrongdoers to reimburse the issuer for illgotten gains)," the holding of the case was silent as to whether Section 304 *also* requires reimbursement from CEOs and CFOs who are unaware of their companies' noncompliance with securities laws. *See id.* at 1232-33. Based on the plain language of the statute, therefore, *Digimarc* does not control the Court's result here.

In addition to the plain text of the relevant statutory language, Congress entitled this subsection of Sarbanes-Oxley as "Additional Compensation Prior to Noncompliance with Commission Financial Reporting Requirements." 15 U.S.C. § 7243(a). "Although statutory titles are not part of the legislation, they may be instructive in putting the statute in context." *Singh v. Gonzales,* 499 F.3d 969, 977 (9th Cir.2007). As the title of the subsection makes plain, it was Congress's purpose to recapture the additional compensation paid to a CEO during any period in which the corporate issuer was not in compliance with financial reporting requirements. A CEO need not be personally aware of financial misconduct to have received additional compensation during the period of that misconduct, and to have unfairly benefitted therefrom. When a CEO either sells stock or receives a bonus in the period of financial noncompliance, the CEO may unfairly benefit from a misperception of the financial position of the issuer that results from those misstated financials, even if the CEO was unaware of the misconduct leading to misstated financials. It is not irrational for Congress to require that such additional compensation amounts be repaid to the issuer.

Jenkins asserts, however, that the SEC must specify in the Complaint the specific amount of the reimbursement it seeks from him. Otherwise, he argues, the SEC may be interpreting the reimbursement provisions of the statute too broadly and depriving him of that part of his stock value and bonus payments that are not, in any way, traceable to any misstatement of CSK's financial positions. In the absence of seeking specific reimbursement of the additional compensation attributable only to CSK's misstate-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ment, he argues that the statute's purpose is punitive and not remedial. To the extent that the statute is punitive and not remedial, Jenkins further argues that it is not in harmony with other statutes enforced by the SEC and poses due process problems of constitutional dimension.*1076 These problems could and should be avoided, he asserts, by simply interpreting the statute to require the personal misconduct of the CEO as a precondition of seeking reimbursement. Alternatively, Jenkins argues that the SEC should be required to specify in the Complaint the amount of Jenkins's additional compensation that it asserts is attributable to the misstatement of CSK's financials.

In this context, the Court disagrees. The question presented by this Motion to Dismiss is whether the SEC has stated a claim against Jenkins. The issue, at this point, is not whether the SEC is seeking the appropriate measure of reimbursement specified by the statute. Arguments based on the appropriate measure of reimbursement sought by the SEC are not dispositive with respect to whether the SEC has stated a claim for reimbursement against Mr. Jenkins.

[5] Second, it is not clear at this stage of the proceeding that the statute's purpose must be remedial. Nor is it yet clear, even assuming such a distinction is relevant, that the statute has punitive aspects. Such matters, if relevant, can only be ascertained through development of the nature of the recovery sought by the SEC against Jenkins in light of the facts of this case. To be sure, to the extent that the statute or the remedy sought under it result in a severe and unjustified deprivation to the Defendant, constitutional issues may arise in particular cases. *See, e.g., BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (holding that grossly excessive punitive damage awards violate the Due Process Clause); *see also United States v. Bajakajian,* 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (holding that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense); *S.W. Tel. & Tel. Co. v. Danaher,* 238 U.S. 482, 490-91, 35 S.Ct. 886, 59 L.Ed. 1419 (1915) (striking down a penalty imposed on a telephone company for refusing to refusing to provide service where such refusal had never been declared unlawful and was applied impartially). But again, even if these constitutional concerns have merit, the facts necessary to decide these constitutional issues cannot be decided on a motion to dismiss. And the allegation of potential constitutional problems depending on the amount of recovery sought is not dispositive in deciding whether the SEC has even stated a claim, particularly given that the text of the statute allows the SEC to seek reimbursement from a CEO who is unaware of the issuer's misconduct. *See Boumediene v. Bush,* 553 U.S. 723, 128 S.Ct. 2229, 2271, 171 L.Ed.2d 41 (2008) ("The canon of constitutional avoidance does not supplant traditional modes of statutory interpretation ... 'The canon ... comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a *means of choosing between them[.]*' We cannot ignore the text and purpose of a statute in order to save it."); *see also Burgess v. United States,* 553 U.S. 124, 135, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008) (noting that the rule of lenity "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute") (internal quotations omitted).

[6] Further, in ascertaining the purposes to be served by a statute, it is appropriate to look at the larger statutory scheme of which the particular statute is a part. *See Daas,* 198 F.3d at 1174 ("To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme."); *see also SEC v. Nat'l Sec., Inc.,* 393 U.S. 453, 466, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (noting that the "interdependence of the various sections of *1077 the securities laws is certainly a relevant factor in any interpretation of the language Congress has chosen"). Pursuant to the immediately preceding sections of the Sarbanes-Oxley Act, particularly Section 302, an issuer's CEO and CFO are required to certify each annual or quarterly report of the issuer. 15 U.S.C. § 7241. In so doing, the CEO and the CFO also certify that they are responsible for the existence, design, and operation of effective internal controls that provide assurances as to the accuracy of the issuer's financial statements. *Id.* Section 304 provides an incentive for CEOs and CFOs to be rigorous in their creation and certification of internal controls by requiring that they reimburse additional compensation received during periods of corporate non-compliance regardless of whether or not they were aware of the misconduct giving rise to the misstated financials.[FN2]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN2. To the extent that a CEO is actually aware of misconduct that results in misstated financial statements, the CEO may be responsible for additional civil and criminal penalties. *See, e.g.,* 15 U.S.C. 78u(d), 18 U.S.C. § 1350; 17 C.F.R. § 240.10b-5; *id.* § 240.13a-14. This additional potential liability in cases in of the CEO's actual awareness of the misconduct, however, provides no support for an argument that Section 304 only permits the reimbursement of additional compensation paid to the CEO in cases of such actual awareness. The statute's plain meaning is to the contrary. In fact, because other securities laws already provide other civil and criminal penalties for a CEO's or CFO's knowing misconduct, interpreting Section 304 as covering situations where CEOs and CFOs were unaware of any misconduct avoids redundancy with existing securities laws.

To the extent that the statute is designed to promote vigilance in such officers, it would appear that it might have aspects that could be described as either remedial or punitive, or both. It is not presently clear, however, even if an application of the statute might be punitive, that, under the facts pleaded here, the plain meaning of the statute is incapable of a constitutional application either on its face, or as applied.

**B. Legislative History Affirms the Court's Textual Reading.**

[7] Because the Court has determined that the text of the statute warrants only one interpretation, the Court "need not resort to legislative history" or other canons of statutory interpretation. *Alvarado,* 588 F.3d at 1268. In any event, legislative history actually "confirms" and "supports" the Court's holding that Section 304 requires no personal misconduct by the CEO or CFO. *See Rutti v. Lojack Corp., Inc.,* 596 F.3d 1046, 1052 (9th Cir.2010) (holding that the "legislative history confirms the plain language" of the statute); *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.,* 531 F.3d 767, 779 n. 14 (9th Cir.2008) (noting that "legislative history ... remains a frequently-relied-upon additional tool of statutory interpretation" and that even plain-language interpretations of statutes may also be "supported by legislative history") (internal quotations omitted). Contrary to Defendant's assertion, it is inapposite that the legislative history does not include a statement that Congress intended to create a "vicarious strict liability statute." (Dkt. # 27 at 15.)

The House and Senate passed different versions of Sarbanes-Oxley, but only the House's version, which did not become law, included language regarding the CEO or CFO's scienter in the context of disgorgement. Section 12 of H.R. 3763 (the "House Bill") directed the SEC to "conduct an analysis of whether, and under what conditions, any officer or director of an issuer should be required to disgorge profits gained, or losses avoided, in the sale of the securities of such issuer during the six month period immediately preceding the filing of a restated financial statement*1078 on the part of such issuer." H.R.Rep. No. 107-414, at 12 (2002). If the SEC determined that disgorgement regulations were appropriate, then the House Bill required the SEC to "identify the scienter requirement that should be used in order to determine to impose the requirement to disgorge." *Id.* The House Committee on Financial Services extrapolated that the SEC should require reimbursement "only in cases where the Commission can prove extreme misconduct on the part of [the] officer or director." *Id.* at 44.

On the other hand, the Senate version of the bill, S. 2673 (the "Senate Bill"), included no similar discussion of scienter. *See* S. 2673, 107th Cong. § 304 (2002). In contrast to the House Bill, the Senate Bill was passed after additional news of corporate misconduct arose, such as Adelphia's massive restatement to account for previously undisclosed loans, Tyco's former CEO's indictment for tax evasion, Worldcom's accounting scheme, and Imclone's CEO's insider trading charges. *See* John Patrick Kelsh, *Section 304 of the Sarbanes-Oxley Act of 2002: The Case for a Personal Culpability Requirement,* 59 Bus. Law. 1005, 1018 (2004). As it relates to Section 304 of the Act, the language in the Senate Bill ultimately became the version signed into law, without mentioning scienter or requiring misconduct on behalf of the officers in order to trigger reimbursement. *Compare* S. 2673 *with* 15 U.S.C. § 7243.

Additionally, the Senate had the opportunity to consider an amendment that would have limited Section 304 to the officers and directors "with knowledge, at the time of the misconduct, of the material noncompliance of the issuer." *See Arnold & Porter*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Legislative History: Sarbanes-Oxley Act of 2002, P.L. 107-204, 116 Stat. 745,* History 40-C, 2002 WL 32054475 (July 10, 2002). This amendment arguably would have created a personal misconduct element, but it was tabled.

Jenkins further contends that the Senate report on Section 304 implies a personal wrongdoing element because it states that CEOs and CFOs must "disgorge" certain compensation, a term that Defendants contend means relief designed to deprive a *wrongdoer* of ill-gotten gains. *See* Sen. Rep. No. 107-205, at 23 (2002); *SEC v. First Pac. Bancorp.,* 142 F.3d 1186, 1191 (9th Cir.1998); *SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978). Regardless of the fact that the Senate report uses the term "disgorged," Section 304's *text* utilizes the term "reimburse" rather than "disgorge." Thus, while "disgorge" may have a specialized meaning in the context of a court's preexisting common law authority to order *equitable* disgorgement, *see, e.g., First Pac. Bancorp.,* 142 F.3d at 1191, *Blatt,* 583 F.2d at 1335, it has no application to the text of the statute here.

### C. Delaware's Indemnification Statute Is Irrelevant.

[8] The parties agree that " 'statutory interpretations which would produce absurd results are to be avoided.' " *See Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.,* 464 F.3d 1003, 1008 (9th Cir.2006) (quoting *Ma v. Ashcroft,* 361 F.3d 553, 558 (9th Cir.2004)). As a preliminary matter, the absurd results canon of statutory interpretation "has no application" where, as here, "a statute is clear" as to what Congress "plainly and intentionally provided." *Peabody Coal Co. v. Navajo Nation,* 75 F.3d 457, 468 (9th Cir.1996) (internal quotations omitted).

Even if congressional intent was unclear, however, Defendant's argument would fail. Defendant contends that the SEC's interpretation of Section 304 would create absurd results because Delaware law, which governs CSK as a Delaware *1079 corporation, would allow Jenkins to be indemnified by CSK if Jenkins acted "in good faith" and in a manner that Jenkins "reasonably believed to be in or not opposed to the best interests of the corporation." 8 Del. C. § 145(a). While such a result may disrupt Congress's apparent purpose in having a CEO reimburse the issuer, Defendant cites no authority that a federal statute's interpretation must conform to state statutes. Rather, the Supremacy Clause suggests the analysis cuts the opposite way. *See* U.S. Const. art. IV, cl. 2. Although, at this point, the Court need not determine the efficacy of Delaware's statutory scheme or the extent to which Delaware's statute conflicts with Section 304, the existence of a state statute does not alter the meaning of the federal statute.

### II. Defendant's Reimbursement Obligation Survives the CSK-O'Reilly Merger.

[9] On July 11, 2008, CSK became a wholly-owned subsidiary of O'Reilly Automotive, Inc. ("O'Reilly"), and on July 15, 2008, the NYSE filed a Form 25 delisting and deregistering CSK's common stock. (Dkt. # 18, Ex. 5 at 2.) Defendant contends that because Section 304 requires the CEO or CFO to reimburse "the issuer," reimbursement is no longer proper after CSK became O'Reilly's subsidiary and delisted and deregistered its common stock. This reading of Section 304 is incorrect.

Under Sarbanes-Oxley, an "issuer" means "an issuer (as defined in [15 U.S.C. § 78c] ), the securities of which are registered under [15 U.S.C. § 78l], or that is required to file reports under [15 U.S.C. § 78o(d)] ], or that files or has filed a registration statement that has not yet become effective under the Securities Act of 1933 ... and that it has not withdrawn." 15 U.S.C. § 7201(a)(7). 15 U.S.C. § 78c(a)(8), to which Sarbanes-Oxley refers, further defines an issuer as "any person who issues or proposes to issue any security." According to Defendant, CSK is not an issuer because it is not currently issuing or proposing to issue any securities.

Defendant, however, makes no argument that CSK was not an issuer at the time that it filed its misstated or restated financials, or at the time that Jenkins received his additional compensation that is the subject of the reimbursement action here. Because Section 304 refers to a specific time and action-filing restatements as a result of financial-reporting misconduct-the statutory term "issuer" refers to the entity that issued stock at that time. Once this liability-triggering event has been established by reference to the "issuer" at the relevant time, then the SEC may bring an enforcement action under Section 304. Merely because CSK does not now have any registered securities does not mean that CSK was not an issuer as it relates to the legal rights and responsibilities accruing to CSK during the time period that it

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

718 F.Supp.2d 1070, Fed. Sec. L. Rep. P 95,763
(Cite as: 718 F.Supp.2d 1070)

was subject to such regulation. There is no dispute that all of the events giving rise to Jenkins's liability to reimburse CSK occurred during the time period that CSK was an issuer as identified by the statute. Even though CSK is now a wholly-owned subsidiary of O'Reilly, the SEC may bring this action to recover Jenkins's bonuses and profits. Defendant does not appear to dispute that Delaware law applies, meaning that O'Reilly would assume any ability that CSK had as the original issuer to receive reimbursement on behalf of an SEC enforcement action. *See* (Dkt. # 23 at 33); *see also, e.g., Lewis v. Anderson,* 477 A.2d 1040, 1049-50 (Del.1984); *Heit v. Tenneco, Inc.,* 319 F.Supp. 884, 887-88 (D.Del.1970). The Court thus rejects Jenkins argument that he is released from liability because CSK would not now be subject to regulation as an issuer.

**\*1080 III. Defendant's Supplemental Authority Does Not Warrant Dismissal.**

[10] Defendant filed a Notice of Supplemental Authority, seeking dismissal based on the Civil Asset Forfeiture Reform Act ("CAFRA"), specifically the "innocent owner" provisions of 18 U.S.C. § 983(d). (Dkt. # 32.) The Court, however, need not consider this argument because Defendant did not raise this argument in its initial motion, even though the argument was available at the time.[FN3] *See Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir.2007) (explaining that a district court need not consider arguments that were not raised in the initial motion).

> FN3. Defendant also makes another new argument in his Reply, contending that the SEC's Complaint fails to specify which financial document first triggered Section 304's twelve-month period as explained in *SEC v. Mercury Interactive, LLC,* 2009 WL 2984769 (N.D.Cal. Sept. 15, 2009). The Complaint, however, specifies the first public filing, which was the 10k form filed in May 2003. (Dkt. # 1 at 8.)

Even so, the Court notes, without deciding, that Defendant's CAFRA argument appears to lack merit.[FN4] Defendant asserts that because he committed no wrongdoing, CAFRA bars the SEC's enforcement action. CAFRA provides, "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). A "civil forfeiture statute" is an in rem proceeding against a property that is sought to be forfeited to the government.[FN5] *See United States v. Ursery,* 518 U.S. 267, 275, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *United States v. Dubose,* 146 F.3d 1141, 1145 (9th Cir.1998); *United States v. Daccarett,* 6 F.3d 37, 45-46 (2d Cir.1993). This case, on the other hand, is an in personam action that seeks reimbursement to CSK rather than a forfeiture to the government. Defendant cites no authority holding that an SEC enforcement action of a corporate officer's reimbursement obligations may be interpreted as a civil forfeiture action under CAFRA.

> FN4. To the extent the Court discusses the CAFRA argument on the merits, the Court has also considered both parties' additional briefing on this issue. (Dkt. 33, 35, 37.)

> FN5. CAFRA defines a civil forfeiture action as "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense." *Id.* § 983(I). The key question, however, is whether Jenkins is required to "forfeit" any property to the SEC.

Defendant's arguments to the contrary are unavailing. First, Defendant cites *Bennis v. Michigan* for the proposition that a civil forfeiture action may be an in personam action. 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996). *Bennis,* however, was decided prior to CAFRA and did not discuss the distinction between in rem and in personam actions. *See generally id.*

Nor did *Bennis* hold that a forfeiture occurs when the property at issue is forfeited to a nongovernmental entity. *See generally id.* As the reimbursement sought here is owed to CSK, and not to the SEC, this does not appear to be a forfeiture action. While CAFRA provides that property forfeited to the government may be "retain[ed] ... or ... transfer[red] ... as restoration to any victim of the offense giving rise to the forfeiture," 18 U.S.C. § 981(e)(6), an SEC enforcement action requiring the reimbursement on behalf of a corporate issuer is factually distinct from a situation in which the government initiates a forfeiture action on its own behalf and then retains the discretion to transfer the forfeited property to victims.

**\*1081 CONCLUSION**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

718 F.Supp.2d 1070, Fed. Sec. L. Rep. P 95,763
(Cite as: 718 F.Supp.2d 1070)

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Dkt. # 17) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Ruling Regarding Request for Judicial Notice (Dkt. # 24) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Response to Defendant's Notice of Supplemental Authority (Dkt. # 33) is **DENIED** as moot, except as explained in this Order.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File [a] Reply to Defendant's Response (Dkt. # 37) is **DENIED** as moot, except as explained in this Order.

D.Ariz.,2010.
S.E.C. v. Jenkins
718 F.Supp.2d 1070, Fed. Sec. L. Rep. P 95,763

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.