UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

---------------------------------------x
                                       :
In re:                                 :   CHAPTER 11
                                       :
                                       :   Case No. 10-11255 (PWJ)
POINT BLANK SOLUTIONS, INC., ET AL[1]  :   (Jointly Administered)
                                       :
                                       :   STATEMENT TO SUPPLEMENT
           Debtors                     :   TO DEBTORS' MOTION FOR
                                       :   IMMEDIATE AUTHORITY TO
                                       :   DE-REGISTER AS A PUBLIC
                                       :   COMPANY
---------------------------------------x

    1.    The undersigned, D. David Cohen, an Interested Party herein, submits this statement in response to the Supplement to Debtors' Motion for Immediate Authority to de-register as a public company.

    2.    At the end of the hearing on March 10, 2011, (the "Hearing") the Court requested Debtors counsel to provide certification that Debtor had addressed the "risks" to the 304 action created by de-registration which had been raised at oral argument. The specific risks raised by the Objection and prior Objections to the Proposed Plan of Reorganization are that the SEC (solely charged, under Section 304 of the Sarbanes Oxley Act of 2002 ("SOX"), with responsibility for

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

prosecution of §304 cases) would not proceed on behalf of Point Blank Solutions, Inc. ("PBSO") because (i) PBSO would be no longer a registered Company, and (ii) the Reorganization Parent was in the Proposed Plan of Reorganization establishing itself as the successor to all of the assets of PBSO.

3. As to what specific assurance I sought as to that issue, in a conversation with the SEC's representative in the Courthouse, Ms. Patricia Schrage, in the presence of counsel for the Debtor, I requested a simple statement from the Staff that de-registration of PBSO would not prejudice the Staff's determinations in regard to future prosecution of the 304 action for PBSO (and implicitly its public shareholders). See infra ¶10 and quote from SEC submission. See also ¶ 16.

4. As far as appears, no such statement has been forthcoming, nor will Debtors counsel certify that it can provide the public shareholders of PBSO with any such assurance. Instead, it provides two relevant contested Court decisions, in which the SEC has prosecuted 304 claims, and successfully defeated motions to dismiss by the Defendant, because the entity with which the Defendant was previously associated was no longer an issuer.

5. In SEC v. Jenkins, 718 F. Supp.2d 1070, (D. Ariz., June 9, 2010) subsequent to the events giving rise to a 304 action, the former issuer ("CSK") merged with another entity, O'Reilly Automotive, Inc. ("O'Reilly"), and CSK was de-registered. The District Court correctly, in my view, held:

Under Sarbanes-Oxley, an "issuer" means "an issuer (as defined in [15 U.S.C. §78c]), the securities of which are registered under [15 U.S.C. §78l], or that is required to file reports under [15 U.S.C. §75o(d)], or that files or has filed a registration statement that has not yet become effective under the Securities Act of 1933 ... and that it has not withdrawn." 15 U.S.C. §7201(a)(7). 15 U.S.C. §78c(a)(8), to which Sarbanes-Oxley refers, further defines an issuer as "any person who issues or proposes to issue any security." According to Defendant, CSK is not an issuer because it is not currently issuing or proposing to issue any securities.

Defendant, however, makes no argument that CSK was not an issuer at the time that it filed its misstated or restated financials, or at the time that Jenkins received his additional compensation that is the subject of the reimbursement action here. Because Section 304 refers to a specific time and action-filing restatements as a result of financial-reporting mis-conduct-the statutory term "issuer" refers to the entity that issued stock at that time. Once this liability-triggering event has been established by reference to the "issuer" at the relevant time, then the SEC <u>may</u> (emphasis added) bring an enforcement action under Section 304. Merely because CSK does not now have any registered securities does not mean that CSK was not an issuer as it relates to the legal rights and responsibilities accruing to CSK during the time period that it was subject to such regulation. There is no dispute that all of the events giving rise to Jenkins's liability to reimburse CSK occurred during the time period that CSK was an issuer as identified by the statute. Even though CSK is now a wholly-owned subsidiary of O'Reilly, the SEC may bring this action to recover Jenkins's bonuses and profits. Defendant does not appear to dispute that Delaware law applies, meaning that O'Reilly would assume any ability that CSK had as the original issuer to receive reimbursement on behalf of an SEC enforcement action. Citations omitted. (718 F.Supp.2d at 1081).

6. What does the <u>Jenkins</u> case mean for PBSO? That the <u>deregistration of PBSO</u> followed by a Plan of Reorganization in which the new Reorganization Parent acquires by operation of

law all of the assets of PBSO would per se under Delaware Law disenfranchise the public Company and the public shareholders of PBSO (who suffered the actual losses) and leave all of the 304 recoveries, if any, to the Reorganization Parent. Rather then being of solace to the Objectors, the Jenkins decision says that de-Registration will a fortiori mean death to the public shareholders public entity 304 claims as soon as the Plan of Reorganization is confirmed.

7. The second case cited by Debtors counsel, SEC v. Mercury Interactive, Inc. 2010 WL 3790811 (N.D. Cal. Sept. 27, 2010) is another merger fact situation in which the "issuer" was deregistered after merger with Hewlett Packard Company, and the critical part of the holding is as follows:

> Defendant Landan makes a new argument, pointing out that the remedy for a §304 violation is to repay the ill-gotten gains to the "issuer," and that an "issuer" no longer exists. Mercury Interactive, Inc. obviously was an issuer at the time of the events giving rise to potential application of §304. However, Hewlett Packard Company subsequently acquired all of the outstanding public shares of Mercury Interactive, Inc. and transformed the company into Mercury Interactive LLC, a non-trading subsidiary. Another district court recently addressed the viability of a §304 claim when the issuer is acquired and its stock is delisted and deregistered. See **SEC v. Jenkins, 718 F.Supp. 2d 1070, 2010 WL 2347020, at 1081**. That court concluded that as long as the company was an issuer at the time it filed its misstated financials, the SEC may bring an enforcement action under §304. **Id.** This Court agrees with the reasoning set forth in **Jenkins**. Moreover, to the extent that Landan argues that permitting a §304 claim might result in a "windfall" to Hewlett Packard, the Court concludes that in the event liability arises under §304 Hewlett Packard is a more appropriate recipient

C:\WPDATA\01223-98091\07323.008 PBSO Plan of Reorganization\Statement in Response to Supplement 3-13-11.doc     4

than a wrongdoer adjudged liable under the statute. 2010 WL 3790811, at p.4.

8. Again, the result, as applied to the PBSO situation would be, <u>death</u> to the claims of the injured public Company/public shareholders, even though it may result in a "windfall" to the Reorganization Parent. Indeed, as the Objections noted originally, the whole purpose of <u>de-registration</u> **now** is to create an inequitable "windfall" to the three Plan Proponents and the Proposed Reorganization Parent.[2] Both O'Reilly (<u>Jenkins</u> case) and Hewlett Packard (Mercury Interactive) had negotiated merger transactions in which the public shareholders who were giving up their 304 claims had an opportunity to vote on the transaction, and de-registration <u>followed</u> that vote, it did not precede the vote, as Debtors seek to do here.

9. As paragraphs 7 of my initial Objections said:

This Objection is simple. The Court does not need to decide this issue <u>now</u>. It can, and should, decide the issue as to the entire motion <u>after</u> there is a Modified Plan, a Modified Disclosure Statement, and a vote of the Shareholders. Debtors are pursuing a proposed (to-be-modified) Plan of Reorganization which will, if approved, defease the public Shareholders and create a new privately owned Reorganized Parent. Some public Shareholders hope to see the Debtor

---

[2] I had no objection to the Preliminary Plan of Reorganization which contemplated a rights offering in

continue as a publicly-owned entity. That decision ultimately will be made by this Court after vote by the Allowable Class 7 Interests. Putting the de-registration "ahead" of the decision by the Shareholders is a sleight-of-hand trick which defeats the purpose of there being an independent, fair, balanced vote by the Allowable Class 7 holders.

10. This Objector has sent many (too many) written communications to the Staff, and has received some guidance in response. I am aware of the Staff's carefully considered view that Staff will do only what "is deemed to be in the best interests of the Agency," which, as I understand it, includes the possibility of prosecution or non prosecution of the 304 case: "The Commission objects to the approval of the Final Order, Financing Agreement, Plan Support Agreement and annexed Term Sheet to the extent the Debtors, Official Committees, Lenders, Supporting Parties, and/or any other party in interest are seeking to limit in any way the Commission's discretion with respect to what claims to pursue or settle in the SEC Actions, or to limit in any way the Commission's ability to propose a distribution plan and its terms in the SEC Actions for the benefit of victims of the fraud." SEC Objections and Reservation of Rights, December 22, 2010. (Docket No. 948).

11. I urge this Court <u>not</u> to grant authority to de-register PBSO <u>currently</u>. I respectfully request <u>only</u> that the

---

which shareholders of PBSO would become shareholders of Reorganization Parent.
C:\WPDATA\01223-98091\07323.008 PBSO Plan of Reorganization\Statement in Response to Supplement 3-13-11.doc        6

Court defer that decision until <u>after</u> a final Plan of Reorganization and final Disclosure Document has been filed, and acted upon, but in time to complete Settlement of the Consent Judgment in the SEC action without a trial. Such a delay in de-registration is and would be simple to achieve by Debtor advising the SEC litigation attorneys in Florida that it has authority to enter into Consent Judgment but is awaiting completion of certain bankruptcy proceedings (thereby securing time in the SEC action which is of no moment since trial is not scheduled until December of 2011). This would in no way impede the Debtor or harm its business interests.

12. Your Objector should have known, but did not know, of the <u>Jenkins</u> and <u>Mercury Interactive</u> decisions on the date of the initial Hearing. Had I known of them, I would surely have cited the two cases for the very points made hereinbefore.

13. There is absolutely no cause or reason shown for an emergency de-registration of PBSO. Imposing de-registration on the public shareholders (Class 7 Interest Holders) <u>before</u> they receive and vote upon the Disclosure Statement would deny them a real vote on a "fair" and "equitable" Plan.

14. The Equity Committee representative of the March 20, 2011 Hearing requested the same relief – <u>delay</u> in de-registration.

15. All the public shareholders (Class 7 Interest Holders) seek is to be entitled to fair play and equitable

treatment, and not be closed out of their most important, most valuable litigation assets, before they even receive the Modified Plan and Modified Disclosure Statement and the right to vote on the Plan without being told ahead of the vote that the public entity is permanently dead, and the public shareholders rights to share in the 304 assets have been potentially put beyond their reach. After registration and the completion of these proceedings, the public entity will be rudderless, lawyerless and otherwise unrepresented. It and its shareholders will have no way to influence future SEC determinations or to contest Reorganization Parent's claims to the 304 assets.

**[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

16. Debtor contends that the SEC's decision to "prosecute" is independent of Point Blank's current status as a registered or de-registered Company. That may be true or may not be true. But, it is simply a risk which need not be taken now.

Dated: Jericho, New York
       March 13, 2011

Respectfully Submitted,

D. David Cohen
Pro Se
500 No. Broadway
Suite 139
Jericho, N.Y. 11753
Tel: 516-933-1700
Fax: 516-933-8454

To: Pachulski Stang Ziehl Jones
     Attn: Curtis A. Hehn, Esq., Fax no. 302-652-4400

     Patricia Schrage, Esq., Fax No. 212-336-1319