### 6.56.6 ~~Issuance of New Common Stock~~ ~~Purchased in the Rights Offering~~

(a) *Issuance of New Common Stock*

On the Effective Date, Reorganized Parent shall issue to the ~~Exercising Holders~~Purchasers the shares of New Common Stock ~~to the Exercising Holders~~ in accordance with the terms and conditions ~~of the Rights Offering~~ set forth in the Plan and the ~~Plan Supplement and to the Backstop Parties in accordance with the terms and conditions set forth in the~~ Subscription ~~and Backstop~~ Agreement and on the Effective Date immediately following such issuance, the Purchasers will own all of the outstanding New Common Stock of Reorganized Parent.

(b) *New Stockholders Agreement*

Reorganized Parent, Lonestar (or one or more of its affiliates), Privet (or one or more of its affiliates)~~,~~ and Prescott (or one or more of its affiliates) ~~and any other Person acquiring shares of New Common Stock who holds in the aggregate 10% or more of the New Common Stock outstanding immediately following the Effective Date~~ shall be parties to the New Stockholders Agreement.

### 6.6 ~~Additional Issuance of New Common Stock~~

~~Pursuant to the Subscription and Backstop Agreement, each of Prescott and Privet have agreed to subscribe for, and purchase from Reorganized Parent, shares of New Common Stock (the "Subscription Shares") at the Subscription Price having an aggregate value equal to the product of (a) 53.846% and (b) the aggregate amount of the Equity Rights Offering. On the Effective Date, and simultaneously with the issuance of the New Common Stock in accordance with the Rights Offering, Reorganized Parent shall issue to Prescott and Privet the shares of the Subscription Shares in accordance with the terms and conditions set forth in the Subscription and Backstop Agreement. For the avoidance of doubt, the issuance of Subscription Shares to Prescott and Privet is in addition to any other shares of New Common Stock issued to Prescott, Privet Fund Management or Privet Fund LP or any of their respective affiliates under the Rights Offering in their capacity as Eligible Equity Holders or as Backstop Parties.~~

### 6.7 *Cancellation/Conversion of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan (i) the obligations of the Debtors under the DIP Loan Agreement and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan or such Old Equity Interests that are surrendered to Reorganized Parent under the Plan), shall be canceled and the holders thereof shall have no rights by reason thereof, and such instruments shall evidence no rights, except the right to receive the Distributions, if any, to be made to holders of such instruments under the Plan, and (ii) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated or assumed pursuant to the Plan) shall be deemed extinguished (or, in the case of Old Equity Interests, surrendered to the Reorganized Parent), released, and discharged and the holders thereof shall have no rights by reason thereof, and such instruments shall evidence no rights, except the right to receive the Distributions, if any, to be made to holders of such instruments under this Plan. As a condition to receiving any Distribution under the Plan, each promissory note, certificate, or other instrument evidencing a Claim or Interest shall be deemed extinguished (or, in the case of Old Equity Interests, surrendered to the Reorganized ~~Debtors~~Parent or ~~their~~its designees).

27

### 6.8 Exemptions for Issuance of New Common Stock

The issuance of the ~~New Common Stock~~ Purchased Shares pursuant to the ~~Rights Offering and the~~ Subscription ~~and Backstop~~ Agreement shall be exempt from registration under § 1145, § 4(2) of the Securities Act and other applicable laws, in each case to the extent applicable, as of the Effective Date without further act or action by any person, unless required by provision of the relevant documents or applicable law, regulation, order or rule, and all documents evidencing the same shall be executed and delivered as provided for in the Plan, the Subscription Agreement or the Plan Supplement.

### 6.9 Corporate Existence

Each Debtor, as Reorganized, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed. The New Governance Documents shall be substantially in the form filed with the Plan Supplement or as otherwise approved in the Confirmation Order and acceptable to the ~~Backstop~~ Purchasers. As of the Effective Date, Reorganized Parent will not be a reporting company under the Securities Act; *provided, however*, that nothing contained in the Plan shall preclude Reorganized Parent from thereafter becoming a reporting company under the Securities Act.

### 6.10 New Certificate of Incorporation and New By-Laws

On or as soon as reasonably practicable after the Effective Date, each of the Reorganized Debtors will file their respective New Certificates of Incorporation with the applicable Secretaries of State and/or other applicable authorities in their respective states of organization in accordance with the laws of the respective states of organization. After the Effective Date, each of the Reorganized Debtors that is a corporation may amend and restate their respective New Certificates of Incorporation and New By-Laws and other constituent documents as permitted by the laws of their respective states of incorporation, the New Stockholders Agreement and their respective New Certificates of Incorporation and New By-Laws.

### 6.11 Reorganized Debtors' Boards of Directors

The initial members of the New Boards of each of the Reorganized Debtors shall be identified in the Plan Supplement. Such directors shall be deemed elected or appointed, pursuant to the Confirmation Order, but shall not take office and shall not be deemed to be elected or appointed until the occurrence of the Effective Date

### 6.12 Officers of Reorganized Debtors

To the extent known, officers of each of the other Reorganized Debtors shall be identified in the Plan Supplement. Such officers shall serve in accordance with applicable non-bankruptcy law and, to the extent applicable, the New Employment Agreements. The officers of each of the Reorganized Debtors will be determined by the New Boards of each of the Reorganized Debtors.

### 6.13 Employee Benefits

Except as otherwise provided herein, on and after the Effective Date, the Reorganized Debtors will (i) honor, in the ordinary course of business, any policies, programs and plans for, among other things, compensation (other than equity based compensation related to Interests), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance and accidental death and dismemberment insurance (collectively, "Employee Benefits") for the directors, officers and employees of any of the Debtors who served in such capacity at any time and (ii) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising before the Petition Date; *provided, however,* that the Debtors' or Reorganized Debtors' performance under any employment policy, program or plan will not entitle any person to any benefit or alleged entitlement under any policy, program or plan that has expired or been terminated before the Effective Date,

or restore, reinstate or revive any such benefit or alleged entitlement under any such policy, program or plan. Any contract or agreement for Employee Benefits that is an Executory Contract shall be assumed or rejected by the Debtors in accordance with Article 7. Nothing herein shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans.

### 6.14    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, and except to the extent that such property or Causes of Action are being transferred to the Recovery Trust and vesting in the Recovery Trustee pursuant to the terms of the Recovery Trust Agreement and Article 8, on the Effective Date any and all property in each Estate and all Causes of Action (except those released pursuant to the Releases by the Debtors) shall vest in each respective Reorganized Debtor free and clear of all Liens, Claims, charges or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action (excluding Estate Claims) without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 6.15    *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) entry into any New Employment Agreements; (ii) appointment of the directors and officers of the Reorganized Debtors; (iii) the Distribution of the New Common Stock as provided herein; and (iv) all other actions contemplated by the Plan (whether occurring before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate or other action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors, officers, managers or members of the Debtors or the Reorganized Debtors, pursuant to Section 303 of the Delaware General Corporations Law or other similar applicable law.

The appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including any and all agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 6.15 shall be effective notwithstanding any requirements under non-bankruptcy law.

### 6.16    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors and the managers, officers and members of the boards of directors thereof are authorized to issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan.

### 6.17    *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, as one element of, and in consideration for, an overall negotiated settlement of disputed Claims and issues embodied in the Plan, pursuant to Bankruptcy Rule 9019 and § 1123, and in consideration for the classification, Distributions, releases and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including the Inter-Debtor Settlement. Pursuant to Rule 408 of the Federal Rules of Evidence, the Plan, the Disclosure Statement, the Plan Support Agreement, the Second Plan Support Agreement (and any exhibits or supplements relating to the foregoing) and all negotiations

29

relating thereto shall not be admissible into evidence in any proceeding unless and until the Plan in consummated, and then only in accordance with the Plan. In the event the Plan is not consummated, provisions of the Plan, and the Disclosure Statement, the Plan Support Agreement (and any exhibits or supplements relating to the foregoing) and all negotiations relating thereto shall not be binding or probative.

Subject to Article 9, all Distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final and indefeasible.

### 6.18    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to § 1146(a), any transfers of property in contemplation of, in connection with or pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies to, among other things, (i) the creation of any mortgage, deed of trust, lien or other security interest; (ii) the making or assignment of any lease or sublease; or (iii) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any (a) merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under the Plan.

### 6.19    D&O Liability Insurance Policies and Indemnification Provisions

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the D&O Liability Insurance Policies in full force) all D&O Liability Insurance Policies that are Executory Contracts pursuant to § 365(a). Any D&O Liability Insurance Policies that are not Executory Contracts, but under which any Debtor has enforceable rights, shall vest in the corresponding Reorganized Debtor on the Effective Date pursuant to Section 6.14. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption of, or the revesting of, each of the D&O Liability Insurance Policies. As of the Effective Date, the directors, officers, members, attorneys, employees and other agents of the Debtors who served the Debtors immediately prior to (but not on or after) the Effective Date shall retain any rights or recourse to insurance coverage, including with respect to the D&O Liability Insurance Policies, as existed immediately prior to the Effective Date.

In addition, the New Governance Documents of the Reorganized Debtors shall contain provisions that (i) eliminate the personal liability of the Debtors' and the Reorganized Debtors' then-present and future directors and officers for post-Effective Date monetary damages resulting from post-Effective Date breaches of their fiduciary duties to the fullest extent permitted by applicable law in the jurisdiction in which the subject Reorganized Debtor is organized; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify the Debtors' and the Reorganized Debtors' directors, officers, and other key employees (as such key employees are identified by the New Board) serving after the Effective Date for all post-Effective Date claims and actions to the fullest extent permitted by applicable law in the jurisdiction in which the subject Reorganized Debtor is incorporated or organized.

### 6.20    Preservation of Rights and Causes of Action

In accordance with § 1123(b), and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Releases by the Debtors provided by Section 11.2), (i) the Recovery Trustee shall retain and, as the representative of the Debtors' Estates appointed for such purpose, may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims, whether arising before or after the Petition Date, and (ii) the Reorganized Debtors shall retain and, as the representatives of the Debtors' Estates appointed for such purpose, may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action other than Estate Claims, whether arising before or after the Petition Date. The Recovery Trustee's and the Reorganized Debtors' respective rights to retain, enforce, commence, prosecute and settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. No Entity may rely on the absence of a specific reference to any Cause of Action against them in the Plan, the Disclosure Statement or any other Plan

Document as any indication that the Recovery Trustee or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such retained Causes of Action upon, after or as a consequence of the Confirmation, the Effective Date or consummation of the Plan.

### 6.21 *Payment of Fees and Expenses of the DIP Lenders*

In accordance with, and subject to the terms of, the Final DIP Order, the fees and expenses of the DIP Lenders shall be finally allowed. On the Effective Date (and thereafter with respect to fees and expenses, if any, relating to post-Effective Date services under the Plan) or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors shall pay in Cash all reasonable and documented unpaid fees and expenses of the DIP Lenders.

### 6.22 *Non-Participation of Other Subordinated Claims and Interests*

Holders of Other Subordinated Claims and Interests shall not receive any recovery under the Plan or Recovery Trust ~~and shall not be entitled to participate in the Rights Offering~~. The right of the Debtors and their successors or assigns to request subordination of any Claim or Interest, including the Other Subordinated Claims and Interests pursuant to § 510, is fully reserved, and the treatment afforded any Claim or Interest that becomes an Other Subordinated Claim and Interest, at any time, shall be modified to reflect such subordination. ~~For the avoidance of doubt, Parent shall not distribute to holders of Other Subordinated Claims and Interests any Rights to participate in the Rights Offering or otherwise subscribe for the purchase of New Common Stock at the Subscription Price.~~

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1 *Assumption and Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease (i) was assumed or rejected previously by the Debtors; (ii) expired or terminated pursuant to its own terms before the Effective Date; (iii) is the subject of a motion to assume filed on or before the Effective Date; or (iv) is identified on the Schedule of Rejected Contracts.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court, effective as of the Effective Date, (i) approving the assumption and assignment, or rejection, as the case may be, of Executory Contracts and Unexpired Leases, as described above, pursuant to §§ 365(a) and 1123(b)(2) and as set forth in the Plan, (ii) finding that the Reorganized Debtors had properly provided for the cure of any defaults that might have existed, (iii) finding that each assumption and assignment was in the best interest of the Reorganized Debtors, their estates and all parties in interest in the Chapter 11 Cases and (iv) finding the requirements for assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding anything to the contrary in the Plan, the Debtors (with the consent of the Required ~~Backstop~~ Purchasers) or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify or supplement the Schedule of Proposed Cure Claims or the Schedule of Rejected Contracts at any time before the Effective Date; *provided, however,* that to the extent that, as of the Effective Date, there is any pending dispute between one or more Debtors and a counterparty to an Executory Contract or Unexpired Lease regarding such counterparty's Cure Claim, the Debtors and Reorganized Debtors shall reserve the right to add the applicable Executory Contract or Unexpired Lease to the Schedule of Rejected Contracts following the resolution of such dispute, in which event such Executory Contract or Unexpired Lease shall be deemed rejected and such

31

counterparty shall have the right to file a Rejection Claim as provided in Section 7.3. After the Effective Date, the Reorganized Debtors shall have the right to terminate, amend or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

Each Executory Contract and Unexpired Lease assumed under this Section 7.1 shall be assumed only to the extent, if any, that it constitutes an executory contract or unexpired lease as contemplated by § 365, and nothing contained herein shall constitute an admission by any Debtor or Reorganized Debtor that such contract or lease is an executory contract or unexpired lease or that any Debtor or Reorganized Debtor has any liability thereunder. Further, such assumption is subject to the same rights that any Debtor or Reorganized Debtor held or holds at, on, or after the Petition Date to modify or terminate such agreements under applicable non-bankruptcy law. To the extent the Bankruptcy Court or any other court of competent jurisdiction, determines, either before, on, or after the Effective Date, that any agreement in the form of a lease of real or personal property identified for assumption pursuant to this Article 7 is, in fact, a secured transaction, the resulting secured indebtedness arising from such determination shall be treated in accordance with the applicable section of the Plan. Each Executory Contract and Unexpired Lease assumed pursuant to this Article 7 shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

### 7.2    *Objections to Assumption; Determination of Cure Claims*

Not less than twenty (20) days prior to the Confirmation Hearing, the Debtors shall file the Schedule of Proposed Cure Claims and serve it on all parties to the contracts and leases listed therein. Among other things, the Schedule of Proposed Cure Claims shall set forth the proposed Cure Claim, if any, to be paid in connection with the assumption by the Debtors of the Executory Contracts and Unexpired Leases identified in the Schedule of Proposed Cure Claims. The proposed Cure Claim, if any, identified for any Executory Contract or Unexpired Leases in the Schedule of Proposed Cure Claims is the only amount necessary to cure any and all outstanding defaults under such contract or lease, and no other defaults exist under said contract or lease. The Debtors believe that any Executory Contract or Unexpired Lease that is listed on the Schedule of Proposed Cure Claims and does not list a corresponding proposed Cure Claim, or lists a proposed Cure Claim of $0.00, may be assumed by the Debtor without the payment of any monetary cure amount.

Any Entity objecting to the proposed assumption of an Executory Contract or Unexpired Lease based on any ground, including the adequacy of the proposed Cure Claim, if any, associated with such contract or lease, must file and serve a written objection to the proposed assumption of such contract or lease within the same deadline and in the same manner established for filing objections to Confirmation. Failure to timely object to the proposed assumption of any Executory Contract or Unexpired Lease and the associated proposed Cure Claim, if any, shall constitute consent to the assumption of such contract or lease and the amount of such Cure Claim, including an acknowledgment that the Debtors are providing adequate assurance of future performance to the extent required by § 365(b)(1).

To the extent that any objections to the amounts set forth in the Schedule of Proposed Cure Claims are timely filed and served and such objections are not resolved between the Debtor and the objecting Entities, the Bankruptcy Court shall resolve such disputes at the Confirmation Hearing. The resolution of such disputes shall not affect the Debtor's assumption of the contracts or leases that are the subject of such a dispute, but rather shall affect only the "cure" amount the Debtor must pay in order to assume such contract or lease. Notwithstanding the immediately preceding sentence, if at any time the Debtors in their discretion determine that the amount asserted to cure outstanding defaults in connection with the assumption of any Executory Contract or Unexpired Lease proposed to be assumed under the Plan would, if ordered by the Bankruptcy Court, make the assumption of such contract or lease imprudent, then the Debtors may, at or prior to the Confirmation Hearing, elect to reject such contract or lease pursuant to Section 7.3.

If not the subject of a timely filed objection pursuant to this Section 7.2, any and all monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied by the Debtors, pursuant to § 365(b)(1), by payment in Cash of the Cure Claim amount set forth in the Schedule of Proposed Cure Claims or such other amount as ordered by the Bankruptcy Court or agreed upon by the Debtors or Reorganized Debtors, as applicable, on or as soon as reasonably practicable after the Effective Date or on such other date as

agreed to by the parties to such contract or lease. In the event of a dispute pursuant to Section 9.4, payment of the amount otherwise payable hereunder shall be made on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date on which such Cure Claim is determined by Final Order of the Bankruptcy Court, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Assumption of any Executory Contract or Unexpired Lease and payment of the associated cure obligation, if any, pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

If the Bankruptcy Court ultimately determines that the Debtors cannot assume an Executory Contract or Unexpired Lease or cannot provide adequate assurance of future performance as proposed or in any modified proposal submitted by the Debtors or the Reorganized Debtors, then such contract or lease shall automatically thereupon be deemed to have been rejected pursuant to Section 7.3.

### 7.3 *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Subject to the occurrence of the Effective Date, on the Effective Date, all executory contracts and unexpired leases listed on the Schedule of Rejected Contracts shall be rejected by the Reorganized Debtors. Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court, approving, effective as of the Effective Date, the rejection of all Executory Contracts and Unexpired Leases identified on the Schedule of Rejected Contracts.

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of Executory Contracts and Unexpired Leases not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Rejection Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases that are Rejection Claims shall be classified as Class 4 General Unsecured Claims against the applicable Debtor and shall be treated in accordance with Section 4.4. The deadline to object to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, shall be the later of (a) 180 days following the date on which such Claim was filed and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections as of the Effective Date, pursuant to § 365, effective as of the Petition Date. Unless otherwise ordered by the Bankruptcy Court, any party to an Executory Contract or Unexpired Lease identified for rejection as provided herein may, within the same deadline and in the same manner established for filing objections to Confirmation, file any objection thereto. Failure to file any such objection within the time period set forth above shall constitute consent and agreement to the rejection.

### 7.4 *Insurance Policies*

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to § 365(a) to the extent such Insurance Policies are Executory Contracts. Any Insurance Policy that is not an Executory Contract, but under which any Debtor has enforceable rights, shall vest in the corresponding Reorganized Debtor on the Effective Date pursuant to Section 6.14. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the foregoing assumption of each of the Insurance Policies.

### 7.5 Modifications, Amendments, Supplements, Restatements or Other Agreements.

Unless otherwise provided, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other fully-integrated agreements that affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed (unless otherwise agreed by the contract counterparty) to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

### 7.6 Reservation of Rights.

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### 7.7 Contracts and Leases Entered Into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order, unless the parties thereto agree to any modifications, amendments, supplements or restatements.

## ARTICLE 8
## RECOVERY TRUST

### 8.1 Purpose of Trust

The Recovery Trust shall be established for the sole purpose of liquidating its assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Recovery Trust. From and after the Effective Date, the Recovery Trust shall, in accordance with the terms of the Recovery Trust Agreement, among other things: (a) liquidate, by conversion to Cash or other methods, or distribute directly to holders of Trust Interests and Reorganized Parent, as applicable, the Trust Assets, as expeditiously as reasonably possible in order to maximize the recovery for the holders of Trust Interests and for Reorganized Parent subject to the terms hereof; (b) enforce and prosecute all Estate Claims; and (c) object to, settle, compromise and prosecute Disputed Claims.

### 8.2 Governing Document; Funding

The Recovery Trust shall be governed by the Recovery Trust Agreement. The Recovery Trust Reserve shall be funded with an initiala Distribution of $1,000,000500,000 on the Effective Date to be used for trust expenses and administration (including legal fees and expenses). An additional Distribution of $500,000 shall be funded to Reorganized Parent on the Effective Date, which Reorganized Parent shall fund to the Recovery Trust on the date that is ninety (90) days after the Effective Date.

34

The Recovery Trust shall be ~~authorized~~entitled to borrow, on terms and conditions acceptable to the Recovery Trustee and ~~the~~ Reorganized ~~Debtors~~Parent in its sole discretion, up to ~~an additional~~ $500,000 per year from Reorganized Debtors; *provided, however,* that the aggregate amount of all such borrowings (including all accrued interest thereon and other fees, charges or obligations) shall not exceed $1,000,000 outstanding at any time. The loans described in the foregoing sentence shall be repaid *pari passu* with Trust Litigation Expenses pursuant to Section 8.3(c)(i) and the Recovery Trust Agreement, and shall accrue interest at a rate equal to the Prime Rate plus 11.00% per annum, payable quarterly in arrears; *provided, however,* that such interest may be paid in kind (PIK) to the extent there is insufficient Cash to make such payments. In addition, the Recovery Trust shall reimburse the Reorganized Parent for any sums paid to Replacement EC Professionals on account of their Allowed Professional Fee Claims, if any, pursuant to Section 8.3(e) and the corresponding provisions of the Recovery Trust Agreement. The reimbursement obligations described in the foregoing sentence shall be paid pursuant to Section 8.3(c)(iii) and the Recovery Trust Agreement, and shall accrue interest at a rate equal to the Prime Rate plus 6.00% per annum, payable quarterly in arrears; *provided, however,* that such interest may be paid in kind (PIK) to the extent there is insufficient Cash to make such payments. To the extent the Recovery Trust borrows funds from Reorganized Parent, the Recovery Trust is expressly prohibited from making any Distributions contemplated in Section 8.5(b) or the Recovery Trust Agreement (other than distributions to Reorganized Parent) so long as any obligations under such borrowings remain outstanding.

### 8.3     *Vesting of Assets; Allocation*

#### (a)      *Trust Assets*

Unless otherwise dealt with under the Plan, (i) the ~~GUC~~Additional Cash Contribution (subject to Section 6.4), (ii) the Recovery Trust Reserve, (iii) the Estate Claims, and (iv) any other assets, recoveries or properties identified on Schedule 8.3 to the Plan shall vest in the Recovery Trust on the Effective Date (such property when vested in the Recovery Trust, the "**Trust Assets**"). Notwithstanding the foregoing, if the Debtors or Reorganized Debtors and the Recovery Trustee determine in mutual consultation that the assignment of an Estate Claim to the Recovery Trust may materially impair the enforcement or collectability of such Estate Claim by the Debtors, Reorganized Debtors or Recovery Trustee, such Estate Claim shall remain in the name of the Debtors or Reorganized Debtors, as applicable, for the sole purpose of preserving the ability to enforce and collect on such Estate Claim; provided, however, that such Estate Claim shall be treated for all other purposes under the Plan and the Trust Agreement as though it had fully vested in the Recovery Trustee, including for purposes of authorizing the Recovery Trustee to prosecute or settle such Estate Claim and collect the proceeds thereof for Distribution in accordance with this Article 8 and the Trust Agreement.

#### (b)      *Allocation of Additional Cash Contribution*

The Additional Cash Contribution that is transferred to or vests in the Recovery Trust, if any, shall be allocated and promptly distributed by the Recovery Trustee in the following manner:

(i)      the first $500,000 of such funds shall be allocated for distributed to the holders of Allowed General Unsecured Claims pro rata based on the Class 4 Trust Interests held by each such holder relative to all Class 4 Trust Interests distributed or reserved at such time;

(ii)     if the Additional Cash Contribution exceeds $500,000, the second $500,000 of such funds shall be allocated for distribution to the holders of Allowed Excess Fee Claims pro rata based on the amount of Excess Fee Claims held by each affected Professional relative to the amount of all Excess Fee Claims outstanding at such time; and

(iii)    if the Additional Cash Contribution exceeds $1,000,000, any such excess amount shall be allocated for distribution fifty percent (50%) to the holders of Allowed General Unsecured Claims pro rata based on the Class 4 Trust Interests held by each such holder relative to all Class 4 Trust Interests distributed or reserved at such time and fifty percent (50%) to the holders of Allowed Excess Fee Claims pro rata based on the amount of Excess Fee Claims held by each affected Professional relative to the amount of all Excess Fee Claims outstanding at such time.

35

For the avoidance of doubt, the Recovery Trustee shall distribute any portion of the Additional Cash Consideration allocable to Allowed Excess Fee Claims as soon as practicable after the occurrence of the Effective Date, and shall not reserve or use any part of the Additional Cash Consideration for payment of expenses of the Recovery Trust or otherwise. Any Additional Cash Contribution remaining in the Recovery Trust after payment in full of all Allowed Excess Fee Claims and Allowed General Unsecured Claims in accordance with this Section 8.3(b) (including such amounts as required to be reserved for the holders of any Disputed Excess Fee Claims and any Disputed General Unsecured Claims in accordance with the Plan and the Recovery Trust Agreement), shall be allocated and distributed in accordance with Section 8.3(c) and 8.5(b). So long as any Allowed Excess Fee Claims have not been paid in full, the Recovery Trustee is expressly prohibited from making any Distributions contemplated in Section 8.5(b) or the corresponding section of the Recovery Trust Agreement or from making any reimbursement to Reorganized Parent on account of any payment with respect to Replacement EC Professionals' Allowed Professional Fee Claims.

        (c)     *Allocation of other Trust Assets*

All Cash or other proceeds received by or vested in the Recovery Trust (other than any portion of the Additional Cash Contribution, if vested with the Recovery Trust) shall be allocated and distributed in the following manner:

        (i)     first, to pay [or reserve in good faith reasonable amounts payable in respect of] any and all litigation costs and expenses of the Recovery Trust that directly relate to efforts to recover proceeds from the applicable Estate Claims being distributed pursuant to this Section 8.3(c) ("Trust Litigation Expenses") and to pay any and all obligations outstanding at such time under any borrowings from the Recognized Parent described in Section 8.2(b);

        (ii)     second, to the extent any proceeds remain, and as soon as practicable after the receipt of Cash or other proceeds by the Recovery Trust, excluding the Recovery Trust Reserve (after establishment of reasonable reserves for the payment Trust Litigation Expenses), to the holders of Allowed Excess Fee Claims, if any, pro rata based on the amount of Excess Fee Claims held by each affected Professional relative to the amount of all Excess Fee Claims outstanding at such time until such holders have been paid (after taking into account all amounts paid to such holders pursuant to Section 8.3(b)) an amount equal to 100% of such Allowed Claims (without interest) (including such amounts as required to be reserved for the holders of any Disputed Excess Fee Claims in accordance with the Plan and Recovery Trust Agreement);

        (iii)     third, to the extent any proceeds remain, to reimburse Reorganized Parent for [or reserve in good faith, and in consultation with the Reorganized Debtors, reasonable amounts payable in respect of] the payment of the Replacement EC Professionals' Allowed Professional Fee Claims, if any;

        (iv)     fourth, to the extent any proceeds remain,

        (A)     20% of such proceeds shall be allocated and distributed to the Reorganized Parent until the occurrence of a Class 4/Class 5 Satisfaction; and

        (B)     80% of such proceeds shall be retained by the Recovery Trust as Trust Assets and applied, reserved or distributed as set forth in Section 8.3(c)(v) – (vi) below and Section 8.5(b) and the Recovery Trust Agreement until the occurrence of a Class 4/Class 5 Satisfaction;

*provided, however*, that from and after the occurrence of a Class 4/Class 5 Satisfaction, to the extent any proceeds remain,

        (C)     70% of such proceeds shall thereafter be allocated and distributed to the Reorganized Parent; and

36

(D)     30% of such proceeds shall thereafter be retained by the Recovery Trust as Trust Assets and applied, reserved or distributed as set forth in Section 8.3(c)(v) – (vi) below and Section 8.5(b) and the Recovery Trust Agreement;

*provided, further,* that if Class 7 votes to accept the Plan, then from and after the occurrence of a Class 4/Class 5 Satisfaction, to the extent any proceeds remain.

(E)     60% of such proceeds shall thereafter be allocated and distributed to the Reorganized Parent; and

(F)     40% of such proceeds shall thereafter be retained by the Recovery Trust as Trust Assets and applied, reserved or distributed as set forth in Section 8.3(c)(v) – (vi) below and Section 8.5(b) and the Recovery Trust Agreement;

(v)     fifth, to pay [or reserve in good faith reasonable amounts payable in respect of] all other liabilities, costs and expenses of the Recovery Trust that are not Trust Litigation Expenses, including the compensation then due and payable to the Recovery Trustee pursuant to the Recovery Trust Agreement, the amounts, if any, payable to the Recovery Trustee and his agents, representatives, professional advisors and employees pursuant to the indemnification provisions specified therein, and the reimbursement for any and all costs, expenses and liabilities incurred by the Recovery Trustee in connection with the administration of the Recovery Trust, including any costs and expenses incurred in objecting to the allowance of any Claim or Interest or seeking to subordinate or recharacterize any Claim or Interest (the "Trust Administration Expenses");

(vi)     sixth, to the extent any proceeds remain, to pay [or reserve in good faith reasonable amounts payable in respect of] all the compensation to, and the liabilities, costs and expenses of, the members of the Recovery Trust Committee, including the amounts then due and payable to the members of the Recovery Trust Committee pursuant to the indemnification provisions specified in the Recovery Trust Agreement, and the reimbursement for any and all costs, expenses and liabilities incurred by the members of the Recovery Trust Committee in connection with the performance of their duties thereunder (excluding for the avoidance of doubt, any Trust Litigation Expenses).

~~Initially, from and after the Effective Date, the proceeds of Estate Claims received by the Recovery Trust (net of fees and costs directly attributable to the recovery of such proceeds) shall be allocated as follows: (i) eighty percent (80%) to the Recovery Trust and (ii) twenty percent (20%) to Reorganized Parent.~~  At "*Class 4/Class 5 Satisfaction*" shall mean such time as the holders of Allowed Class 4 General Unsecured Claims have received Distributions in an amount equal to the Allowed amount of their Class 4 Claims plus interest at a rate of eight percent (8.0%) per annum from the Petition Date until the date of such payment in full to the holders of such Allowed Claims (including such amounts as are required to be reserved for the holders of any Disputed Class 4 Claims pursuant to the Plan and the Recovery Trust Agreement) and the holders of Allowed Class 5 Subordinated Unsecured Claims have been paid an amount equal to the Allowed amount of their Class 5 Claims (without interest) (including such amounts as required to be reserved for the holders of any Disputed Class 5 Claims pursuant to the terms of the Plan and the Recovery Trust Agreement~~) (the "Class 4 and Class 5 Satisfaction"), any additional proceeds of Estate Claims received by the Recovery Trust (net of fees and costs directly attributable to the recovery of such proceeds) shall be allocated as follows: (i) thirty percent (30%) to the Recovery Trust and (ii) seventy percent (70%) to Reorganized Parent.~~

## 8.4     *Tax Treatment*

The Debtors, the Recovery Trustee, and the holders of Trust Interests will treat the Recovery Trust as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and any comparable provision of state or local law. The Recovery Trust shall be considered a "grantor" trust and is intended to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684. For all United States federal income tax purposes, all parties (including the Debtors, the Recovery Trustee, the Beneficiaries, Reorganized Parent and the Recovery Trust Committee) shall treat the transfer of the Trust Assets to the Recovery Trust as (1) a transfer of the Trust Assets (subject to the liabilities and Allowed Claims indicated

37

herein, whether such Claims are Allowed Claims on or after the Effective Date of the Plan) directly to the Beneficiaries (except to the extent retained by Reorganized Parent) and, to the extent Trust Assets are allocable to Disputed Claims, to the Disputed Claims Reserve Account, followed by (2) the transfer by such Beneficiaries and Reorganized Parent to the Recovery Trust of the Trust Assets (other than the portion of the Trust Assets allocable to the Disputed Claims Reserve Account) in exchange for Trust Interests in accordance with the Plan. The Recovery Trustee will then distribute, through the book-entry thereof on the books and records of the Recovery Trust, the Trust Interests to the Beneficiaries, in exchange for such Beneficiaries' Claims. Accordingly, the Beneficiaries and Reorganized Parent shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Trust Assets (other than such portion of the Trust Assets as is allocable to reserves as provided in the Recovery Trust Agreement). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. The Recovery Trustee shall be authorized to take any action necessary to maintain compliance with this Treasury Regulation or its successor that does not contradict the terms of this Plan, the Recovery Trust Agreement, or the Confirmation Order. The Recovery Trustee, in consultation with the Recovery Trust Committee, will in good faith value all Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Recovery Trust (including the Debtors, the Recovery Trustee, Reorganized Parent, and the Beneficiaries) for all United States federal income tax purposes.

### 8.5    Trust Interests

#### (a)    Issuance of Trust Interests

Holders of Allowed Claims and Allowed Interests in Classes 4, 5, 6 and 7 shall be issued Trust Interests in the Recovery Trust as follows:

(i)    each holder of an Allowed Class 4 General Unsecured Claim shall be issued a Class 4 Trust Interest for every $1.00 of such holder's Allowed Class 4 Claim;

(ii)    each holder of an Allowed Class 5 Subordinated Unsecured Claim shall be issued one Class 5 Trust Interest for every $1.00 of such holder's Allowed Class 5 Claim;

(iii)    each holder of an Allowed Class 6 Class Action Claim shall be issued one Class 6 Trust Interest for each share of common stock in Parent associated with such holder's Allowed Class 6 Claim; and

(iv)    each holder of an Allowed Class 7 Old Equity Interest shall be issued one Class 7 Trust Interest for each share of Old Equity Interest held by such holder in Parent.

No fractional Trust Interests shall be issued. The number of Trust Interests issued to any holder pursuant to this Section 8.5 and the Recovery Trust Agreement shall be rounded down to the nearest whole Trust Interest. The Trust Interests shall not be transferable, except by will, intestate succession or operation of law, and shall not be certificated.

#### (b)    Distributions on Trust Interests

Each holder of a Trust Interest shall entitle the holder to proceeds from the Recovery Trust, after subject to and after payment of all amounts required to be paid pursuant to the allocation set forth in Section 8.3(c), based on the priorities below, which shall be distributed in the following manner:

(i)    first, to the extent any proceeds remain, to the holders of Allowed Class 4 General Unsecured Claims pro rata based on the number of Class 4 Trust Interests held by each such holder relative to all Class 4 Trust Interests distributed or reserved at such time, until such holders have been paid (after taking into account all payments made to such holders pursuant to Section 8.3) an amount equal to 100% of such Allowed Claims plus interest at a rate of eight percent (8.0%) per annum from the Petition Date until the date of such payment in full to the holders of such Allowed Claims (including such amounts as are

38

required to be reserved for the holders of any Disputed Class 4 General Unsecured Claims pursuant to the terms of the Plan and the Recovery Trust Agreement);

(ii) second, to the extent any proceeds remain, to holders of Allowed Class 5 Subordinated Unsecured Claims pro rata based on the number of Class 5 Trust Interests held by each such holder relative to all Class 5 Trust Interests distributed or reserved at such time until such holders have been paid 100% of such Allowed Claims (without interest) (including such amounts as are required to be reserved for the holders of any Disputed Class 5 Subordinated Unsecured Claims pursuant to the terms of the Plan and the Recovery Trust Agreement);

(iii) third, to the extent any proceeds remain, to holders of Allowed Class 6 Class Action Claims and Allowed Class 7 Old Equity Interests pro rata based on the aggregate number of Trust Interests held by each such holder relative to the sum of all Class 6 and Class 7 Trust Interests distributed or reserved at such time until holders of Allowed Class 6 Claims have been paid 100% of such Allowed Claims (without interest and as capped under Section 4.6) (including such amounts as are required to be reserved for the holders of any Disputed Class 6 Claims pursuant to the terms of the Plan and the Recovery Trust Agreement); and

(iv) fourth, to the extent any proceeds remain, to the holders of Allowed Class 7 Old Equity Interests pro rata based on the number of Class 7 Trust Interests held by each such holder relative to all Class 7 Trust Interests distributed.

~~Notwithstanding anything to the contrary herein, the portion of the Trust Assets constituting the GUC Cash shall be distributed to holders of Class 4 Trust Interests on or as soon as reasonably practicable after the Effective Date, subject to reservation on account of Disputed Class 4 Claims pursuant to the terms of the Recovery Trust.~~ The Recovery Trustee shall establish and maintain reserves and reserve accounts pursuant to the terms of the Recovery Trust Agreement.

### 8.6    *Administration of the Recovery Trust*

The Recovery Trust will be administered and controlled initially by a five-member oversight committee comprising four members plus the Recovery Trustee (the "Recovery Trust Committee"). On and after the Effective Date of the Plan, the Recovery Trust Committee shall comprise five voting board members selected as follows: (i) two members shall be chosen by the Creditors' Committee, in consultation with Lonestar and Parent or Reorganized Parent, as applicable; (ii) one member shall be chosen by Reorganized Parent; (iii) one member shall be chosen by Lonestar; and (iv) the Recovery Trustee. Upon the occurrence of the Class 4 ~~and~~/Class 5 Satisfaction, the two board members appointed by the Creditors' Committee shall resign promptly. Thereafter, the Recovery Trust Committee shall be reconstituted to comprise ~~four~~three voting board members ~~selected as follows~~: (i) two members, who shall be chosen by Reorganized Parent; ~~(ii) one member shall be the individual, and any alternates thereto, chosen by the Equity Committee and named in the Plan Supplement;~~ and (~~iii~~ii) the Recovery Trustee.

The Recovery Trust Committee shall have the right to replace the Recovery Trustee in accordance with the terms of the Recovery Trust Agreement, and vacancies shall be filled in accordance with the terms of the Recovery Trust Agreement. The Recovery Trustee shall be recused from any such vote and the Recovery Trustee's vote shall not be counted for such purposes. The Recovery Trustee may also be replaced by Final Order entered by the Bankruptcy Court.

The Recovery Trustee may retain such law firms, accounting firms, experts, advisors, financial advisors, consultants, investigators, appraisers, auctioneers or other professionals as it may deem necessary (collectively, the "Trustee Professionals"), in its sole discretion, to aid in the performance of its responsibilities pursuant to the terms of the Plan including the liquidation and distribution of Trust Assets. Trustee Professionals shall prepare monthly statements in the same manner and in the same detail as required pursuant to the Compensation Procedures Order, and shall serve such statements on the Recovery Trustee and each member of the Recovery Trust Committee. In the event two or more members of the Recovery Trust Committee object to the reasonableness of such fees and expenses, the matter shall be submitted to the Bankruptcy Court for approval of the reasonableness of such fees and expenses.

Notwithstanding the foregoing, the following law firms that were representing the Debtors prior to the Effective Date of the Plan shall serve as counsel to the Recovery Trustee in connection with the litigation identified below:

| Law Firm | Lawsuits or categories of litigation |
|---|---|
| Pachulski Stang Ziehl & Jones LLP | Matters relating to David Brooks, including D&O litigation, SEC-related litigation, SOX 304 litigation, class action/derivative litigation and any fraudulent conveyance litigation. |
| Venable LLP | Matters relating to "Zylon" claims, including the Toyobo litigation and DOJ litigation. |
| Carr & Palmer LLP | Matters relating to "Zylon" claims, including the Toyobo litigation and DOJ litigation. |

The Recovery Trustee may, with the consent of a majority of the members of the Recovery Trust Committee (including the Recovery Trustee), replace any of the foregoing law firms or employ additional counsel in any matter if such replacement or employment is in the best interests of the Recovery Trust.

### 8.7    Rights and Responsibilities of Recovery Trustee

The Recovery Trustee will maintain a record of each Beneficiary's Trust Interests. The Recovery Trustee shall, upon written request of a Beneficiary, provide reasonably adequate documentary evidence of such Beneficiary's Trust Interest, as indicated in the books and records of the Recovery Trust. The expense of providing such documentation shall be borne by the requesting Beneficiary.

As set forth in the Plan and the Recovery Trust Agreement, the Recovery Trustee shall be authorized to retain, enforce, pursue and prosecute all Estate Claims on behalf of and for the benefit of Reorganized Parent and the Recovery Trust, and distribute the proceeds thereof to the Trust Beneficiaries.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1    Record Date for Distributions

As of the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests. Neither the Debtors nor the Recovery Trustee shall have any obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

### 9.2    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on the applicable date or dates, each holder of an Allowed Claim or Allowed Interest against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article 10. Except as otherwise provided herein, holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

40

### 9.3 Disbursing Agent

Except as otherwise provided herein, all Distributions under the Plan shall be made by the Disbursing Agent except for the issuance of Trust Interests, which shall be made by the Recovery Trustee in accordance with the terms of the Plan and the Recovery Trust Agreement. The Disbursing Agent shall not be required to obtain a bond or surety for the performance of its duties unless ordered otherwise by the Bankruptcy Court, in which case all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors or the Recovery Trust, as the case may be.

### 9.4 Delivery of Distributions and Undeliverable or Unclaimed Distributions

(a)  Delivery of Distributions in General

Except as otherwise provided in the Plan and subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date by the Disbursing Agent (a) to the signatory set forth on any of the Proofs of Claim filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is filed or if the Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf. Distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the Distributions in the manner set forth in the Plan. None of the Debtors, the Reorganized Debtors and the applicable Disbursing Agent shall incur any liability whatsoever on account of any Distributions under the Plan except for gross negligence, willful misconduct or fraud.

All Distributions on account of Allowed Old Equity Interests shall be made through the facilities of DTC (if applicable and to the extent permitted). Distributions made to the record holders of Old Equity Interests and in turn by the record holders of Old Equity Interests to the beneficial holders thereof, shall not be made as of the Distribution Record Date but rather shall be accomplished in accordance with the applicable policies and procedures of DTC.

(b)  Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any holder is returned as undeliverable, no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable or has been claimed to such holder without interest; *provided, however,* that such Distributions shall be deemed unclaimed property under § 347(b) and forfeited at the expiration of six months from the date such Distribution was first attempted. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtors (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

### 9.5 Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 9.6 Setoffs

Except with respect to the Lonestar Pre-Petition Claims, the Debtors, the Reorganized Debtors and the Recovery Trustee may withhold (but not set off, except as set forth below) from the Distributions called for under

41

the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtors, the Reorganized Debtors or the Recovery Trustee, as applicable, may hold against the holder of any such Allowed Claim. In the event that any such claim, equity interest, right or Cause of Action of any nature that the Debtors, the Reorganized Debtors or the Recovery Trustee may hold against the holder of any such Allowed Claim is adjudicated by Final Order or otherwise resolved, the Reorganized Debtors or the Recovery Trustee, as applicable, may, pursuant to the Bankruptcy Code or applicable non-bankruptcy law, set off against such Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim) the amount of any such adjudicated or resolved claim, equity interest, right or Cause of Action, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors or the Recovery Trustee of any such claims, equity interests, rights and Causes of Action that the Debtors, the Reorganized Debtors or the Recovery Trustee may possess against any such holder, except as specifically provided herein.

### 9.7 *Claims Paid or Payable by Third Parties*

The Debtors, the Reorganized Debtors and the Recovery Trustee, as applicable, shall reduce in part or in full an Allowed Claim to the extent that the holder of such Allowed Claim receives payment in part or in full on account of such Allowed Claim from a party that is not a Debtor or Reorganized Debtor or the Recovery Trustee. To the extent a holder of an Allowed Claim receives a Distribution on account of such Allowed Claim and receives payment from a party that is not a Debtor, a Reorganized Debtor or the Recovery Trustee on account of such Allowed Claim, such holder shall, within two weeks of receipt thereof, repay or return the Distribution to the Reorganized Debtors or the Recovery Trustee, as applicable, to the extent the holder's total recovery on account of such Allowed Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

### 9.8 *Postpetition Interest*

UnlessExcept as expressly provided hereinin Section 8.5(b)(ii), the Confirmation Order, the DIP Loan Agreement and Final DIP Order, or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or required by the Bankruptcy Code (including §§ 506(b) and 1129(b)), interest shall not accrue on or after the Petition Date on account of any Claim.

### 9.9 *Section 506(c) Reservation*

The Except to the extent that such rights were waived pursuant to the Final DIP Order with respect to the DIP Claims, the Debtors and the Reorganized Debtors reserve all rights under § 506(c) with respect to any and all other Secured Claims, except to the extent waived pursuant to the Final DIP Order.

### 9.10 *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim, plus interest to the extent authorized under the Plan.

### ARTICLE 10
### PROCEDURES FOR RESOLVING CONTINGENT,
### UNLIQUIDATED AND DISPUTED CLAIMS

### 10.1 *Prosecution of Objections to Claims*

TheOn and after the Effective Date, the Recovery Trustee shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to General Unsecured Claims, Subordinated

42

Unsecured Claims, Class Action Claims and Other Subordinated Claims and Interests as permitted under the Plan. The Reorganized Debtors shall have the authority to file, settle, compromise, withdraw or litigate to judgment any objections to Administrative Claims (including Professional Fee Claims), Priority Tax Claims, Other Priority Claims and Miscellaneous Secured Claims. The Recovery Trustee reserves all rights to resolve Disputed Claims outside the Bankruptcy Court under applicable governing law and subject to the terms of the Recovery Trust Agreement.

### 10.2    Allowance of Claims

Except as expressly provided herein or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), on and after the Effective Date the Reorganized Debtors and, to the extent applicable, the Recovery Trustee, will have and retain any and all rights and defenses held by the Debtors with respect to any Claim as of the Petition Date; *provided*, that the retention of defenses with respect to the Lonestar Pre-Petition Claims shall be governed by the Final DIP Order. All Claims of any Entity against any Debtor shall be Disallowed unless and until such Entity pays, in full, the amount it owes each such Debtor.

### 10.3    Disputed Claims Reserve

Reorganized Parent, in its capacity as Disbursing Agent, shall reserve for the account of each holder of a Disputed Administrative Claim, Disputed Priority Tax Claim, Disputed Other Priority Claim or Disputed Miscellaneous Claim (i) the property that would otherwise be distributable to such holder under the Plan as of such date if such Disputed Claim or Disputed Interest were an Allowed Claim or (ii) such other property as the holder of such Disputed Claim or Disputed Interest and the Disbursing Agent may agree.

Property reserved under this Section 10.3 shall be set aside and, to the extent practicable, held in one or more interest bearing accounts (each, a "Disputed Claims Reserve Account") to be established and maintained pending resolution of such Disputed Claims; *provided, however*, that Cash shall be invested in a manner consistent with the requirements of § 345; and *provided, further*, that such property may be held in the same account so long as appropriate accounting controls are maintained to ensure the separateness of property reserved on account of any Disputed Claim.

### 10.4    Distributions After Allowance

After a Disputed Claim becomes an Allowed Claim, the property, if any, reserved for the holder of such Claim shall be distributed by the Disbursing Agent to such holder pursuant to, and to the extent provided for in, the Plan or the Recovery Trust Agreement, as applicable, without any interest to be paid on account of such Claim (except as provided in Section 4.4). To the extent an objection to a Disputed Claim is sustained or a Claim is withdrawn or reduced, the reserves held on account of such Claim shall be reallocated and distributed among the holders of Allowed Claims in accordance with the applicable provisions of the Plan.

### 10.5    Distribution of Excess Amounts in the Disputed Claims Reserve

Any Cash held in a Disputed Claims Reserve Account after all Disputed Claims have been Allowed or Disallowed shall be reallocated and distributed in accordance with the applicable provisions of the Plan.

### 10.6    Property Held in Reserve for Disputed Claims

Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the undistributed property or Trust Assets, as applicable, reserved on account of such Disputed Claim and the property available for further Distribution to holders of Allowed Claims in the same Class as such Claim, and not to any Reorganized Debtor, any other property or the Reorganized Debtors or any assets previously distributed on account of any other Allowed Claim.

DOCS_DE:166862.1

### 10.7 Estimation of Claims

The Debtors or Reorganized Debtors, as applicable, and the Recovery Trustee may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors, as applicable, or the Recovery Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 10.8 Deadline to File Objections to Claims

Any objections to Claims shall be filed on or before the date that is the later of (a) 180 days after the Effective Date and (b) the last day of such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to certain Claims.

## ARTICLE 11
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### 11.1 Compromise and Settlement of Claims, Interests and Controversies

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to § 363 and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of Claims and Interests and is fair, equitable and reasonable and the product of good faith arms' length negotiations. In accordance with the provisions of the Plan, the Reorganized Debtors may compromise and settle Claims against them (excluding Claims converted to Trust Interests under the Plan) and Causes of Action (excluding Estate Claims) against other Entities after the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court.

### 11.2 Releases by the Debtors

**Pursuant to § 1123(b), for good and valuable consideration, including the contributions of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors and the Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized Debtors, the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Released Parties, the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreement, the Second Plan Support Agreement, the Recovery Trust Agreement the ~~Rights Offering, the~~ Subscription**

44

and Backstop Agreement or related agreements, instruments or other documents, the DIP Loan Agreement, and other related agreements, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud or willful misconduct, as determined by a Final Order.

### 11.3    *Releases by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, each holder of a Claim or an Interest that votes to accept the Plan but does not select the "release opt out" provided in the Ballot shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors, the Reorganized Debtors and the Released Parties from any and all Claims, Interests, claims obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative Claims or claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Released Parties, the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreement, the Second Plan Support Agreement, the Recovery Trust Agreement the Rights Offering, the Subscription and Backstop Agreement or related agreements, instruments or other documents, the DIP Loan Agreement, and other related agreements, other than Claims, claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud or willful misconduct, as determined by a Final Order; *provided, however,* that nothing herein shall be deemed a waiver or release of a Releasing Party's right to receive a Distribution pursuant to the terms of the Plan. For the avoidance of doubt, notwithstanding anything to the contrary herein, this Release by Holders of Claims and Interests is not and shall not be deemed a waiver of the Debtors' rights or claims against the holders of General Unsecured Claims, including to the Debtors' rights to assert setoffs, recoupments or counterclaims, or to object or assert defenses to any General Unsecured Claim, and all such rights and claims are expressly reserved except with respect to the Lonestar Pre-Petition Claims.

### 11.4    *Exculpation*

No Exculpated Party shall have or incur any liability to any Entity for any act taken or omission made in connection with, relating to or arising out of the Debtors' restructuring efforts, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, Plan, the DIP Loan Agreement, the Plan Support Agreement, the Rights Offering Second Plan Support Agreement, the Subscription and Backstop Agreement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of Plan securities, or the Distribution of property under the Plan or any other related agreement; *provided, however,* that the foregoing shall not apply to the extent of any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distribution of the Plan securities pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

45

### 11.5 Discharge of Claims and Termination of Interests

Pursuant to § 1141(d), and except as otherwise specifically provided in the Plan, the Distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Interests and causes of action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h) or 502(i), in each case whether or not: (i) a Proof of Claim or Interest based upon such Claim, debt, right or Interest is filed or deemed filed pursuant to § 501; (ii) a Claim or Interest based upon such Claim, debt, right or Interest is Allowed pursuant to § 502; or (iii) the holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

### 11.6 Injunction

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE 11, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE 11.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTIONS 11.2 OR 11.3, DISCHARGED PURSUANT TO SECTION 11.5 OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 11.4, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED

46

ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL SUCH CLAIMS AND INTERESTS SHALL BE DEEMED SURRENDERED AND EXTINGUISHED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE DEEMED SURRENDERED OR EXTINGUISHED, AS THE CASE MAY BE, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER § 502(G).

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

### 11.7    Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to §§ 105 or 362 or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### 11.8    Injunction Against Interference With Plan

Upon the entry of the Confirmation Order, all of the Releasing Parties shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### 11.9    Injunction Related to Releases and Exculpation

The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released in Sections 11.3 and 11.4.

### 11.10    Protection Against Discriminatory Treatment

Consistent with § 525 and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or another Entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### 11.11    No Consent to Change of Control Required

To the fullest extent permitted by applicable law, except as otherwise expressly provided by order of the Bankruptcy Court, none of (a) the facts or circumstances giving rise to the commencement of, or occurring in connection with, the Chapter 11 Cases, (b) the issuance of the New Common Stock pursuant to the Plan or

47

(c) consummation of any other transaction pursuant to the Plan shall constitute a "change in ownership" or "change of control" (or a change in working control) of, or in connection with, any Debtor requiring the consent of any person other than the Debtors or the Bankruptcy Court.

### 11.12    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.  For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## ARTICLE 12
## CONDITIONS TO THE CONFIRMATION DATE AND EFFECTIVE DATE

### 12.1    Conditions Precedent to Confirmation

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Section 12.3.

(a)    The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Plan Proponents, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of § 1125.

### 12.2    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Section 12.3 hereof.

(a)    The Confirmation Order shall have been entered and become a Final Order in form and substance satisfactory to the Plan Proponents no later than ~~April 14~~June 17, 2011, except as extended by the Debtors with the prior written consent of the ~~Backstop~~ Purchasers.

(b)    The transactions contemplated by the ~~Rights Offering~~Subscription Agreement and any Exit Facility shall have closed, or shall close simultaneously, upon the Effective Date, and the Reorganized Debtors shall have sufficient Cash, including the proceeds ~~of the Rights Offering, the issuance of Subscription~~from the sale of the Purchased Shares and the funding of the Purchaser Loans, if any, and from any Exit Facility, to satisfy all Cash obligations under the Plan due on or as of the Effective Date, including the payment of (i) ~~Backstop Fee and Backstop~~Subscription Expenses and (ii) the DIP Claims to the extent not credited against the ~~Backstop~~ Purchasers' Commitments under the Subscription ~~and Backstop~~ Agreement.

(c)    All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance acceptable to the Debtors and the Plan Proponents, the ~~Backstop~~ Purchasers or the Required ~~Backstop~~ Purchasers, as provided herein.

(d)    All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(e)    No order of a court shall have been entered and remain in effect restraining the Debtors from consummating the Plan and the transactions contemplated therein.

48

(f)    All actions, documents, certificates and agreements necessary to implement the Plan, including the New By-Laws, the New Certificate of Incorporation and any other formation documents, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

(g)    Each of the Plan Documents shall have been executed and delivered in accordance with their terms.

(h)    The Effective Date shall have occurred on or prior to ~~April 14~~June 17, 2011, except as extended by the Debtors with the prior written consent of the ~~Backstop~~ Purchasers.

(i)    All conditions to the effectiveness of the Second Plan Support Agreement shall have occurred on or prior to April 25, 2011.

(~~i~~j)    No Termination Event (as defined in the Second Plan Support Agreement) shall have occurred that resulted in the termination of the Plan Support Agreement.

(~~j~~k)    The Subscription ~~and Backstop~~ Agreement shall not have been terminated in accordance with Section 10 thereof.

(l)    The Required Purchasers shall have approved of the proposed allocation of the Additional Cash Contribution as between the Recovery Trust and such other uses as permitted in accordance with Section 6.4.

(k~~m~~)    Based upon evidence properly presented to the Bankruptcy Court at the Confirmation hearing, the total amount of Allowed Administrative Claims payable in accordance with Section 3.1, including Ordinary Course Claims but excluding Professional Fee Claims, is not expected to exceed $[∗_____].[2]

(l~~n~~)    ~~Based upon evidence properly presented to the Bankruptcy Court at the Confirmation hearing, the~~The total amount of Allowed ~~Administrative~~Professional Fee Claims payable in Cash from the sources of consideration set forth in Section 6.5 in accordance with Section 3.1 ~~for~~(other than the Allowed Professional Fee Claims ~~is not expected to exceed $[∗].~~[3]of Replacement EC Professionals) shall not exceed the sum of (i) $6,000,000 and (ii) any portion of an Allowed Professional Fee Claims (other than the Allowed Professional Fee Claim of a Replacement EC Professional) that is payable pursuant to the Compensation Procedures Order or other order of the Bankruptcy Court and otherwise authorized under the Approved Budget (as defined in the Final DIP Order) and is deferred until after the Effective Date ("Deferred Fees"), which Deferred Fees shall be paid by Reorganized Parent thirty days following the Effective Date.

(m~~o~~)    Based upon evidence properly presented to the Bankruptcy Court at the Confirmation hearing, the total amount of Allowed Priority Tax Claims payable in accordance with Section 3.2 is not expected to exceed $[∗_____].[4]

(n~~p~~)    Based upon evidence properly presented to the Bankruptcy Court at the Confirmation hearing, the total amount of Allowed Other Priority Claims payable in accordance with Section 4.1 is not expected to exceed $[∗_____].[5]

(q)    Based upon evidence properly presented to the Bankruptcy Court at the Confirmation Hearing, the Debtors' total net working capital shall total not less than $[_____].

---

[2] ~~NOTE:  The Plan Proponents expect to provide this amount prior to the hearing on the Disclosure Statement or, in the alternative, replace this Section 12.2(k) with an alternate condition based on certain working capital minimums.~~

[3] ~~NOTE:  The Plan Proponents expect to provide this amount prior to the hearing on the Disclosure Statement.~~

[4] ~~NOTE:  The Plan Proponents expect to provide this amount prior to the hearing on the Disclosure Statement.~~

[5] ~~NOTE:  The Plan Proponents expect to provide this amount prior to the hearing on the Disclosure Statement.~~

DOCS_DE:166862.1

### 12.3    Waiver of Conditions

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article 12 may be waived at any time by the Debtors; provided they have obtained the prior written consent of the Plan Proponents; *provided, however,* that the Plan Proponents may not waive entry of the Confirmation Order.

### 12.4    Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Creditors or Interest Holders or any other Entity in any respect.

## ARTICLE 13
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### 13.1    Modification and Amendments

Except as otherwise specifically provided herein, the Debtors reserve the right, subject to the consent of the Plan Proponents, to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in § 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights, subject to the consent of the Plan Proponents, to alter, amend or modify materially the Plan with respect to any or all Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article 13.

In addition, prior to the Effective Date, the Debtors (with the consent of the Plan Proponents) may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; *provided, however,* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests.

### 13.2    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to § 1127(a) and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 13.3    Revocation or Withdrawal of the Plan

The Debtors, subject to the terms of the Second Plan Support Agreement, reserve the right to revoke or withdraw the Plan before the Effective Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan (other than the surviving provisions of the Second Plan Support Agreement) shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or Claims by any Debtor against any other Entity; (b) prejudice in any manner the rights of such Debtor, the holder of any Claim or Interest or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor or any other Entity.

**ARTICLE 14**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of or related to, the Chapter 11 Cases and the Plan including jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or Unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount or allowance of Claims;

(b) decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c) resolve any matters related to (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Rejection Claims and Cure Claims pursuant to § 365 or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtors' amending, modifying or supplementing, after the Effective Date, pursuant to Section 7.5, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired.

(d) ensure that Distributions to holders of Allowed Claims and Allowed Old Equity Interests are accomplished pursuant to the provisions of the Plan and the Recovery Trust Agreement;

(e) adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f) adjudicate, decide or resolve any and all matters related to any Cause of Action;

(g) adjudicate, decide or resolve any and all matters related to § 1141;

(h) enter and enforce any order for the sale of property pursuant to §§ 363, 1123 or 1146(a);

(i) resolve any Avoidance Action or dispute regarding the subordination of any Claim or Interest;

(j) resolve any cases, claims, controversies, suits, disputes or causes of action that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(k) resolve any cases, controversies, suits, disputes or causes of action that may arise in connection with or under the DIP Loan Agreement;

(l) issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(m) resolve any cases, controversies, suits, disputes or causes of action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in Article 11 and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

51

(n)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(o)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

(p)     adjudicate any and all disputes arising from or relating to Distributions made under the Plan or the Recovery Trust Agreement;

(q)     consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in the Plan or any Bankruptcy Court order, including the Confirmation Order;

(r)     determine requests for the payment of Claims and Interests entitled to priority pursuant to § 507;

(s)     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(t)     hear and determine disputes arising in connection with the Recovery Trust, including in connection with the interpretation, implementation and enforcement of the Recovery Trust Agreement;

(u)     hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 or 1146;

(v)     hear and determine disputes concerning the application or enforcement of any exemption provided under § 1145;

(w)     hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

(x)     enforce all orders previously entered by the Bankruptcy Court;

(y)     hear any other matter not inconsistent with the Bankruptcy Code; and

(z)     enter an order dismissing or closing the Chapter 11 Cases.

### ARTICLE 15
### MISCELLANEOUS PROVISIONS

### *15.1    Immediate Binding Effect*

Subject to Section 12.2, and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

52

### 15.2 Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 15.3 Dissolution of Statutory Committees

On the Effective Date, the Creditors' Committee and the Equity Committee shall dissolve and the respective members thereof shall be released and discharged from all rights, duties, responsibilities and obligations from or related to the Chapter 11 Cases, except with respect to (i) filing, settling, compromising, withdrawing or litigating to Final Order any objection to Professional Fee Claims and (ii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof. In addition, except as otherwise specified in this Section, the retention and employment of the attorneys, accountants and other agents of each of the Creditors' Committee and the Equity Committee shall terminate on the Effective Date.

### 15.4 Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of such Entity.

### 15.5 Service of Documents

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors or the Reorganized Debtors shall be served on:

Point Blank Solutions, Inc.
2101 S.W. 2nd Street
Pompano Beach, FL 33069
Facsimile: [_____]
Attn: [_____]

with copies to:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Facsimile: (302) 652-4400
Attn: Laura Davis Jones

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Recovery Trustee shall be served on:

[_____]
[_____]
[_____], Recovery Trustee

with copies to:

**[Counsel to Recovery Trustee]**
[_____]

[_____]

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Creditors' Committee shall be served on:

Arent Fox LLP
1675 Broadway
New York, NY 10019
Facsimile: (212) 484-3990
Attn: Robert M. Hirsh
Attn: George Angelich

After the Effective Date, the Debtors may, in their sole discretion, notify Entities that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

### 15.6     Entire Agreement

Except as otherwise indicated, the Plan, the Subscription Agreement and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

### 15.7     Severability of Plan Provisions

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Plan Proponents. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) nonseverable and mutually dependent.

### 15.8     Exhibits

AllThe Subscription Agreement and all exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Debtors' counsel, by contacting Laura Davis Jones, Esq., and Timothy Cairns, Esq., Pachulski Stang Ziehl & Jones LLP, 919 Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, Telephone: (302) 652-4100, email: ljones@pzsjlaw.com, tcairns@pzsjlaw.com, at the Bankruptcy Court's web site at ecf.deb.uscourts.gov or at the website of the Notice and Claims Agent, at dm.epiq11.com/PBS/project/Default.aspx.

### 15.9     Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to § 1125(e), the Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in

54

compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Plan securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the New Common Stock offered and sold under the Plan.

### 15.10    Closing of Chapter 11 Cases

Promptly after the full administration of the Chapter 11 Cases, the Reorganized Debtors shall, in consultation with the Recovery Trustee, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases. Nothing contained herein shall preclude the Recovery Trustee from appearing and being heard on any request by the Reorganized Debtors to close the Chapter 11 Cases.

### 15.11    Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibit, schedule, appendix, supplement or amendment to any of the foregoing), conflicts or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided, however, that if* If there is a conflict between the Plan and a Plan Supplement document or the Subscription Agreement, the Plan Supplement document or Subscription Agreement, as applicable, shall govern and control; *and provided further*, however, that to*in* the extent that*case of the Recovery Trust Agreement, the Plan shall control. If* any provision of the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

Dated: ~~January~~April        , 2011

Respectfully submitted,

~~PACHULSKI STANG ZIEHL & JONES LLP~~
~~/s/ Laura Davis Jones~~
~~Laura Davis Jones (DE Bar No. 2436)~~
~~David M. Bertenthal (CA Bar No. 167624)~~
~~Joshua Fried (CA Bar No. 181541)~~
~~919 N. Market Street, 17th Floor~~
~~P.O. Box 8705~~
~~Wilmington, DE 19899-8705~~
~~Telephone: 302-652-4100~~
~~Facsimile: 302-652-4400~~
~~Email: ljones@pszjlaw.com~~
~~dbertenthal@pszjlaw.com~~
~~jfried@pszjlaw.com~~
~~OFFICIAL COMMITTEE OF UNSECURED~~
~~CREDITORS~~
~~By: /s/ Larry R. Ellis~~
~~Name: Larry R. Ellis~~
~~Title: Committee Chair~~

OFFICIAL COMMITTEE OF ~~EQUITY SECURITY~~
~~HOLDERS~~UNSECURED CREDITORS


By: ~~/s/ Neil Glassman~~                                    
                                    
Name: ~~Neil Glassman, Esquire~~Larry R. Ellis
Title: ~~Counsel to Official Committee~~ Chair
~~of Equity Security Holders~~

POINT BLANK SOLUTIONS, INC.
POINT BLANK BODY ARMOR, INC.
PROTECTIVE APPAREL CORPORATION OF AMERICA
PBSS, LLC



By: ~~/s/ T. Scott Avila~~                                    
                                    
Name: T. Scott Avila
Title: Chief Restructuring Officer

PRESCOTT GROUP CAPITAL MANAGEMENT, LLC

LONESTAR CAPITAL MANAGEMENT, LLC, as investment advisor to LONESTAR PARTNERS, LP and manager to PB FUNDING, LLC


By: ~~/s/ Ricardo Palacio~~                        

Name: Ricardo Palacio, Esquire
Title: Counsel to Prescott Group
        Capital Management, LLC

By: ~~/s/ Yedi Wong~~                                    

Name: Yedi Wong
Title: Chief Financial Officer

PRIVET OPPORTUNITY FUND I, LLC

PRIVET FUND MANAGEMENT LLC


By: ~~/s/ Privet Fund Management Advisor~~        
By:                                    
Privet Fund Management, LLC
Its Investment Advisor

By: ~~/s/ Ryan Levenson~~                        

Name: Ryan Levenson
Title: Managing Director


**Signature Page to *Joint Chapter 11 Plan of Reorganization***

2

| Summary Report: Litera Change-Pro ML WIX 6.5.0.303 Document Comparison done on 4/8/2011 1:12:56 PM | |
|---|---|
| **Style Name:** Default Style | |
| **Original Filename:** | |
| **Original DMS:** iw://WESTDMS/WEST/200393853/1 | |
| **Modified Filename:** | |
| **Modified DMS:** iw://WESTDMS/WEST/200393853/14 | |
| **Changes:** | |
| Add | 341 |
| Delete | 415 |
| Move From | 29 |
| Move To | 29 |
| Table Insert | 2 |
| Table Delete | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| **Total Changes:** | 816 |