IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) | Case No. 10-11255 (PJW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**MOTION FOR ORDER APPROVING (A) SECOND PLAN SUPPORT AGREEMENT AND (B) AMENDMENT TO DEBTOR IN POSSESSION FINANCING AGREEMENT**

The debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases hereby move this Court (the "Motion"), pursuant to §§ 105, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code")[2], Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules for the United States Bankruptcy Court of the District of Delaware (the "Local Rules") for entry of an order substantially in the form annexed hereto as **Exhibit A** (the "Order") approving (A) that certain *Second Plan Support Agreement*, (the "Second Plan Support Agreement") by and between (i) the Debtors, (ii) the Official Committee of Unsecured Creditors (the "Creditors' Committee"), (iii) Lonestar Capital Management, LLC, as investment advisor to Lonestar Partners, LP, or one or more of its affiliates, designees or assignees ("Lonestar"), (iv) Privet Opportunity Fund I, LLC ("Privet"), (v) Privet Fund Management LLC ("Privet Fund Management") and (vi) Prescott Group Capital Management ("Prescott", and together with

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions Inc (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2] Unless otherwise noted, section (§) references herein are to the Bankruptcy Code.

70934-001\DOCS_SF:76369.2

Lonestar, Privet and Privet Fund Management, the "Support Parties") substantially in the form annexed hereto as **Exhibit B**, and (B) that certain *Amendment No. 1 to Plan Support Agreement* (the "DIP Amendment") by and between the Debtors, PB Funding, LLC, Privet and Prescott, substantially in the form annexed hereto as **Exhibit C**.

## BACKGROUND

1. On April 14, 2010 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee, has been appointed in the Debtors' Chapter 11 Cases. On April 26, 2010, the Office of the United States Trustee formed the Official Committee of Unsecured Creditors (the "Creditors' Committee") and appointed five initial members thereto. On July 27, 2010, the Office of the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") and appointed seven initial members thereto.

2. On May 12, 2010, the Bankruptcy Court entered its *Final Order (1) Authorizing Incurrence by the Debtors of Postpetition Secured Indebtedness With Priority Over All Over Secured Indebtedness and With Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral and Providing Adequate Protection and, (4) Modifying the Automatic Stay* [Docket No. 120] (the "Original Final DIP Order"). Pursuant to the Original Final DIP Order, the Debtors obtained authority to borrow from their previous postpetition lender, Steel Partners L.P. (the "Original DIP Lender"), up to the lesser of $20,000,000, or the borrowing base amount described in the agreement that was the subject of the Original Final DIP Order, pursuant to a senior secured, first priority debtor in possession revolving credit facility.

3.     In December 2010, the Debtors engaged in discussions with the Creditors' Committee, the Equity Committee, Lonestar, Privet, Privet Fund Management, and Prescott with respect to the transactions that would eventually form the basis of both that certain *Plan Support Agreement*, dated as of December 10, 2011 (the "First Plan Support Agreement") and that certain *Debtor in Possession Financing Agreement* (the "DIP Loan Agreement") dated as of December 10, 2010, between and among the Debtors on the one hand, as borrowers, and PB Funding, Inc., Prescott and Privet, on the other hand, as lenders (together, the "DIP Lenders").[3] The DIP Loan Agreement provided for a $25,000,000 post-petition secured credit facility with an initial expiration date of June 15, 2011 (the "DIP Termination Date"), which funds would be used to pay off the amounts owed to the Original DIP Lender and to fund the Debtors' working capital requirements.

4.     The First Plan Support Agreement contained a series of deadlines to achieve certain milestones, including deadlines to obtain the approval by the Bankruptcy Court of a disclosure statement, confirmation of a plan and consummation of a plan, as such deadlines may have been extended by the parties to the First Plan Support Agreement. The First Plan Support Agreement also provided for payment of (i) a break-up fee of $750,000 divided among Privet and Privet Fund Management, Prescott, and Lonestar pursuant to the terms of the First Plan Support Agreement (the "Break Up Fee"), and (ii) up to a maximum of $200,000 to Privet and Privet Fund Management, and each of Prescott and Lonestar in expense reimbursement, payable solely in the event that Privet, Privet Fund Management, Prescott and Lonestar were not in material breach of the First Plan Support Agreement (the "Expense Reimbursement") and the

---

[3] Privet Fund Management and Prescott Group Capital, either directly or through their investors or affiliates, are existing shareholders in PBSI. Lonestar Partners, L.P., an affiliate of Lonestar, holds general unsecured claims (i) against PACA in the amount of $373,572.10 as reflected in PACA's schedules of assets and liabilities, (ii) against PBBA (as defined below) in the amount of $8,126,774.32 as reflected in PBBA's schedules of assets and liabilities, and (iii) against PBSI in the amount $8,512,858.34 as reflected in Proof of Claim No. 284.

Debtors either (a) consummated a sale of all or a substantial portion of their assets, (b) confirmed a plan of reorganization other than the Plan, or (c) obtained approval of another financing arrangement (other than any exit financing in connection with the Plan) the proceeds of which were used to repay the Debtors obligations under the DIP Loan Agreement.

5. The First Plan Support Agreement was approved on December 10, 2010 as was the DIP Loan Agreement, on an interim basis [Docket No. 912]. The DIP Loan Agreement was approved on a final basis on December 29, 2010 [Docket No. 968] (the "Final DIP Order"). The proceeds from the DIP Loan Agreement were used to repay the Debtors' outstanding obligations owed to the Original DIP Lender in their entirety and to fund the Debtors' working capital needs.

6. In accordance with provisions of the First Plan Support Agreement, both the *Disclosure Statement Describing Joint Chapter 11 Plan of Reorganization* [Docket 1007] (the "Prior Disclosure Statement") and the *Joint Chapter 11 Plan of Reorganization* [Docket 1006] (the "Prior Plan") were filed on January 11, 2011. The proponents of the Prior Plan were the Debtors, the Creditors Committee, the Equity Committee, Prescott, Privet, Privet Fund Management, and Lonestar (collectively, the "Plan Proponents").[4]

7. The Plan Proponents scheduled a hearing to consider approval of the Disclosure Statement for February 14, 2011, which hearing was subsequently continued from time to time. In response to certain objections and other informal responses received to the Prior Disclosure Statement, including the objection filed by the Staff of the Securities and Exchange Commission on the grounds that the proposed rights offering to creditors and certain equity holders set forth

---

[4] The Equity Committee was reformed on March 25, 2011 by the Office of the United States Trustee through the appointment of three (3) new members thereto pursuant to that certain *Second Amended Notice of Appointment of Committee of Equity Security Holders* [Docket No. 1242] (the "New Equity Members Appointment"). Subsequent to the New Equity Members Appointment, the Debtors were informed that the Equity Committee terminated the employment of its counsel. As a result of these events, it is unclear as to whether the newly-reformed Equity Committee continues to support the Plan. To the extent that the Equity Committee elects to withdraw as a Plan Proponent, the Disclosure Statement, Plan and other related documents will need to be revised to reflect such withdrawal.

in the Prior Disclosure Statement would not meet the requirements of the Securities Act of 1933, the Plan Proponents modified the Prior Disclosure Statement and Prior Plan, which modifications are reflected in the *Disclosure Statement Describing Amended Joint Chapter 11 Plan of Reorganization*, dated as of April 8, 2011 (the "<u>Amended Disclosure Statement</u>") and the *Amended Joint Chapter 11 Plan of Reorganization*, dated as of April 8, 2011 (the "<u>Amended Plan</u>"). A hearing to consider approval of the Amended Disclosure Statement is scheduled for April 21, 2011 at 9:30 a.m. prevailing Eastern time.

8. Among other modifications, the Amended Plan now provides that the New Common Stock (as defined in the Amended Plan) will be sold to PB Funding, Prescott and Privet through the direct subscription procedures described in the Amended Disclosure Statement and Amended Plan. Accordingly, the New Common Stock will not be sold through a rights offering to creditors or existing equity holders, as previously provided in the Prior Plan.

9. Structurally similar to the First Plan Support Agreement in most material respects, the Second Plan Support Agreement provides a series of new milestones and dates and deadlines with respect to approval of the Amended Disclosure Statement and confirmation and consummation of the Amended Plan. The DIP Amendment extends the DIP Termination Date from June 15, 2011 through and including July 31, 2011 in order to complete the milestones required under the Second Plan Support Agreement and ensure that the Debtors are in compliance with the DIP Loan Agreement to enable them to continue their operations in order to confirm and consummate the Amended Plan.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for proceedings on this Motion is proper in this district pursuant to 28 U.S.C. § 1409.

11. The statutory predicates for the relief requested herein are §§ 105, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002 and 9014, and Local Rule 2002-1.

## BASIS FOR RELIEF REQUESTED

12. The Debtors request approval of the Second Plan Support Agreement and the DIP Amendment substantially in the forms annexed hereto as **Exhibit B** and **Exhibit C**, respectively. As noted above, the Second Plan Support Agreement is structurally similar and analogous to the terms of the First Plan Support Agreement, including the scheduling of a series of milestones and deadlines with respect to the plan confirmation process, the obligations of the parties to the Second Plan Support Agreement, and the provision to the Support Parties of the same Breakup Fee and Expense Reimbursement under the same terms and conditions as provided in the First Plan Support Agreement.

13. The Second Plan Support Agreement contains a series of deadlines necessary to confirm the Amended Plan, as follows:

- April 25, 2011 – Deadline to obtain an order approving the Amended Disclosure Statement;

- June 3, 2011 – Deadline to obtain order confirming the Amended Plan; and

- June 17, 2011 – Deadline to consummate the Amended Plan.

14. The Second Plan Support Agreement also contains a provision paying the Support Parties the same Break Up Fee and Expense Reimbursement and under the same conditions as

provided in the First Plan Support Agreement and summarized above. That is, the Second Plan Support Agreement provides for (i) the same Break-Up Fee set forth in the First Plan Support Agreement of $750,000 divided among the Support Parties pursuant to the terms of the Second Plan Support Agreement, and (ii) the same Expense Reimbursement provided in the First Plan Support Agreement up to a maximum of $200,000 to the Support Parties, payable solely in the event that the Support Parties are not in material breach of the Second Plan Support Agreement and the Debtors either (a) consummate a sale of all or a substantial portion of their assets, (b) confirm a plan of reorganization other than the Plan, or (c) obtain approval of another financing arrangement (other than any exit financing in connection with the Plan) the proceeds of which are used to repay the Debtors obligations under the DIP Loan Agreement.

15. The Second Plan Support Agreement provides that neither entry into the Second Plan Support Agreement nor the termination of the First Plan Support Agreement shall trigger any obligation to pay the Break Up Fee and the Expense Reimbursement and that the Second Plan Support Agreement, once effective, shall be the sole source of recovery of any Break Up Fee or Expense Reimbursement. Thus, there will be no "double recovery" on the Break Up Fee and the Expense Reimbursement by the Support Parties by virtue of the terminated First Plan Support Agreement and approval of the Second Plan Support Agreement. In addition, the Second Plan Support Agreement provides for the waiver by the Support Parties of any default under the DIP Loan Agreement arising out of, or predicated upon, the termination of the First Plan Support Agreement.

16. The DIP Amendment is also necessary to enable the confirmation and consummation of the Amended Plan. The current DIP Termination Date is June 15, 2011 and, as such, will not provide sufficient funding in order to obtain approval of the Amended Disclosure

Statement and to solicit acceptances of, obtain confirmation of, and consummate the Amended Plan. Extension of the DIP Termination Date to July 31, 2011 will enable the Plan Proponents to continue to operate in accordance with the DIP Loan Agreement in order to fulfill the milestones set forth in the Second Plan Support Agreement and allow for confirmation of the Amended Plan. In addition to the extension of the DIP Termination Date, the DIP Amendment adds an additional covenant to the DIP Loan Agreement that requires the Debtors to notify the DIP Lenders at the end of each month as to the balance of the Debtors' prepetition secured financing facility, and within five (5) business days following, any release of collateral with respect to the letters of credit outstanding thereunder. The DIP Amendment also provides an acknowledgement that the Debtors do not have any offsets, defenses, claims, or counterclaims against any DIP Lender, or any of their respective officers, directors, employees, attorneys, or representatives (in their capacity as a DIP Lenders under the DIP Loan Agreement), with respect to the obligations owed under the DIP Loan Agreement, and for a waiver of any claims arising therefrom and a release of the DIP Lenders and their respective agent parties identified in the DIP Amendment, from any liability in connection therewith.

17. Approval of the Second Plan Support Agreement and DIP Amendment are in the best interests of the estates. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Approval of a debtor's actions under section 363(b)(1) of the Bankruptcy Code requires the debtor to show that its decision was based on its business judgment. *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re*

*Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "good business reason"). To determine whether the business judgment test is met, "the court 'is required to examine whether a reasonable business person would make a similar decision under similar circumstances.'" *In re Dura Auto. Sys. Inc.*, No. 06-11202, 2007 Bankr. LEXIS 2764, at *272 (Bankr. D. Del. Aug. 15, 2007) (*quoting In re Exide Techs., Inc.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006)).

18. Once the debtor articulates a valid business justification, the business judgment rule creates "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted). The debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" *In re Aerovox, Inc.*, 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting *In re Interco, Inc.*, 128 B.R. 229, 234) (Bankr. E.D. Mo. 1991). "Courts are loathe to interfere with corporate decisions absent a showing of bad faith, self interest or gross negligence." *Integrated Res.*, 147 B.R. at 656.

19. For the reasons set forth above, the transactions contemplated by the Second Plan Support Agreement and the DIP Amendment are necessary to confirm the Amended Plan. As noted above, the Second Plan Support Agreement provides for the same Break Up Fee and Expense Reimbursement previously approved by the Court pursuant to the order approving the First Plan Support Agreement and, therefore, will not result in any double recovery for the Support Parties to the extent the events requiring payment of the Break Up Fee and Expense Reimbursement are triggered under the terms of the Second Plan Support Agreement. Also,

approval of the DIP Amendment is in the best interests of the estates because the continued DIP Termination Date will enable the Debtors to continue operations and consummate the terms of the Second Plan Support Agreement and to confirm the Amended Plan.

## NOTICE

20. A copy of this Motion has been served upon: (a) the Office of the United States Trustee; (b) counsel to the Creditors Committee; (c) proposed counsel to the Equity Committee; (d) the DIP Lenders; and (e) those parties that have requested service under Fed. R. Bankr. P. 2002. The Debtors submit that such notice is proper and that no other or further notice is required.

## NO PRIOR REQUEST

21. No previous application for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Order attached hereto as **Exhibit A** approving the Second Plan Support Agreement and the DIP Amendment, substantially in the forms attached hereto as **Exhibit B** and **Exhibit C** respectively, and granting such further relief as is just and proper.

Dated: April 8, 2011

PACHULSKI STANG ZIEHL & JONES LLP

/s/ N

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
 dbertenthal@pszjlaw.com
 jfried@pszjlaw.com
 tcairns@pszjlaw.com

Counsel for the Debtors and Debtors in Possession