# **EXHIBIT C**

# AMENDMENT TO DEBTOR-IN-POSSESSION FINANCING AGREEMENT

April 8, 2011

THIS AMENDMENT (this "**Amendment**") is made to the Debtor-in-Possession Financing Agreement (the "**DIP Credit Agreement**"), dated December 10, 2010, among the lenders thereto (collectively, the "**Lenders**") and Point Blank Solutions, Inc., Protective Apparel Corporation of America, Point Blank Body Armor Inc. and PBSS, LLC, as borrowers (collectively, the "**Borrower**") and as debtors and debtors in possession in that certain chapter 11 case styled *In re Point Blank Solutions, Inc., et al.*, Case No. 10-11255, and pending in the United States Bankruptcy Court for the District of Delaware, in consideration of the mutual covenants contained herein and benefits to be derived herefrom.

The Borrower and certain Lenders entered into the DIP Credit Agreement on December 10, 2010. The Required Lenders now seek to amend the DIP Credit Agreement to reflect the release of certain liens and the clarification of certain other matters. Accordingly, the Borrower and Lenders hereby agree as follows:

1. **Additional Covenant.** The following new paragraph (l) shall be added to the end of the "Covenants" section of the DIP Credit Agreement:

    "(l) The Borrower will notify the Lenders at the end of each month as to the balance of, and within five (5) Business Days following, any release of collateral with respect to the letters of credit outstanding under the Amended and Restated Loan and Security Agreement, dated as of April 3, 2007, by and among the Borrower, Bank of America, N.A., as successor by merger to LaSalle Business Credit, LLC, as administrative agent and collateral agent, and the lenders party thereto or any successor letter of credit thereto."

2. **Termination Date.** The "Termination Date" section of the DIP Credit Agreement shall be deleted in its entirety and replaced with the following:

    "All obligations under this Agreement, accrued or otherwise, shall be due and payable in cash and in full, on the earliest of (such date, the "Termination Date") (a) July 31, 2011; (b) the occurrence of an Event of Default and the acceleration of the time for payment of the Obligations by the Required Lenders; (c) the closing date of a sale of all or substantially all of the Borrower's assets under Section 363 of the Bankruptcy Code or otherwise; or (d) the effective date of a confirmed Plan of Reorganization."

3. **Amendment to Schedule 3.** Schedule 3 of the DIP Credit Agreement is hereby deleted in its entirety and replaced with a new Schedule 3 in the form attached as Exhibit A hereto.

4. **Amendment to "Remedies on Default" section.** The term "Lenders" in clause (i) of the "Remedies on Default" section is hereby deleted and replaced with the term "Borrower."

5. **Amendment to "Certain Definitions" section.** The term "Plan Support Agreement" is hereby deleted and replaced with the following:

"Plan Support Agreement" means that certain Second Plan Support Agreement, dated as of April [ ], 2011, by and among the Borrowers, the Creditors Committee, Lonestar Capital Management, LLC, as investment advisor to Lonestar Partners, LP, or one or more of its affiliates, designees or assignees, Privet Opportunity Fund I, LLC, Privet Fund Management LLC and Prescott Group Capital Management, as amended, restated, supplemented or otherwise modified from time to time pursuant to the terms of the Plan Support Agreement.

6. **Ratification; Waiver of Claims.**

(a) Except as provided herein, all terms and conditions of the DIP Credit Agreement and of the other Loan Documents shall remain in full force and effect. The Borrower hereby ratifies, confirms, and re-affirms all terms and provisions of the Loan Documents.

(b) The Borrower hereby acknowledges and agrees that there is no basis nor set of facts on which any amount (or any portion thereof) owed by the Borrower under the DIP Credit Agreement could be reduced, offset, waived, or forgiven, by rescission or otherwise; nor is there any claim, counterclaim, offset, or defense (or other right, remedy, or basis having a similar effect) available to the Borrower with regard thereto; nor is there any basis on which the terms and conditions of any of the Obligations could be claimed to be other than as stated on the written instruments which evidence such Obligations.

(c) The Borrower hereby acknowledges and agrees that it has no offsets, defenses, claims, or counterclaims against any Lender, or its officers, directors, employees, attorneys, or representatives (in their capacity as a Lender under the DIP Credit Agreement), with respect to the Obligations, and that if the Borrower now has, or ever did have, any offsets, defenses, claims, or counterclaims against any Lender, or its officers, directors, employees, attorneys, or representatives (in their capacity as a Lender under the DIP Credit Agreement), whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Amendment, all of them are hereby expressly WAIVED, and the Borrower hereby RELEASES the Lenders and their officers, directors, employees, attorneys, and representatives (in their capacity as a Lender under the DIP Credit Agreement) from any liability therefor. The foregoing release and waiver is binding upon all parties in interest in the Case, including the Official Committee of Unsecured Creditors and the Official Committee of Equity Security Holders.

(d) Upon the effectiveness of this Amendment and the Plan Support Agreement, the Lenders waive any default under the DIP Credit Agreement or the Final DIP Order arising from any termination of that certain Plan Support Agreement, dated as of December 10, 2010 (the "*First Plan Support Agreement*"). For the avoidance of doubt, neither the entry into this Amendment nor the occurrence of any Termination Event under the First Plan Support Agreement, in and of itself, is intended to nor shall trigger any obligation for payment of the Break-Up Fee and Transaction Expenses pursuant to Section 9 of the First Plan Support Agreement. The waiver provided in this Section 6(d) is expressly limited as set forth herein. In the event that the Conditions to Effectiveness in Section 8 below are not met, the waiver provided in this Section 6(d) shall be deemed null and void and of no further force or effect and the rights of the Lenders under Section 9 of the First Plan Support Agreement and the DIP Credit

Agreement (without giving effect to this Amendment) shall thereupon be preserved in all respects to the extent provided in the First Plan Support Agreement. For the avoidance of doubt, in no event shall the Lenders be entitled to collect a Breakup Fee and Transaction Expenses under both Section 9 of the First Plan Support Agreement and Section 9 of the Plan Support Agreement.

7. **Representation and Warranty.** The Borrower hereby represents and warrants to the Lenders that no Event of Default exists as of this date.

8. **Conditions to Effectiveness.** The amendments set forth in Sections 1, 2, 3, 4 and 5 of this Amendment and the waiver set forth in Section 6 shall become effective upon the satisfaction of the following conditions precedent (unless waived by the Parties in their respective sole discretion):

(a) each Party hereto shall have duly executed and delivered a counterpart to this Amendment to each other Party hereto;

(b) on or prior to April 25, 2011, the Bankruptcy Court shall have entered an order approving the terms of this Amendment; and

(c) on or prior to April 25, 2011, the Bankruptcy Court shall have entered an order approving the terms of that certain Second Plan Support Agreement, dated April ____, 2011, which agreement shall have become effective and shall not have been terminated.

9. **Miscellaneous.**

(a) Capitalized terms used in this Amendment which are defined in the DIP Credit Agreement are used as so defined.

(b) This Amendment may be executed in counterparts and by each party on a separate counterpart, each of which when so executed and delivered shall be an original, and all of which together shall constitute one agreement.

(c) This Amendment expresses the entire understanding of the parties with respect to the matters contemplated hereby. No prior negotiations or discussions shall limit, modify, or otherwise affect the provisions hereof.

(d) Any determination that any provision of this Amendment or any application hereof is invalid, illegal, or unenforceable in any respect and in any instance shall not affect the validity, legality, or enforceability of such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Amendment.

(e) The Borrower shall execute and deliver to the Lenders whatever additional documents, instruments, and agreements that the Lenders may reasonably require in order to give effect to, and implement the terms and conditions of this Amendment.

*[this space intentionally left blank]*

**POINT BLANK SOLUTIONS, INC.**, as Borrower

By: _/s/ T. Scott Avila_
Name: T. Scott Avila
Title: CRO

**POINT BLANK BODY ARMOR INC.**, as Borrower

By: _/s/ T. Scott Avila_
Name: T. Scott Avila
Title: CRO

**PROTECTIVE APPAREL CORPORATION OF AMERICA**, as Borrower

By: _/s/ T. Scott Avila_
Name: T. Scott Avila
Title: CRO

**PBSS, LLC**, as Borrower

By: _/s/ T. Scott Avila_
Name: T. Scott Avila
Title: CRO

**PB FUNDING, LLC**

By: /s/
Name: YEDI WONG
Title: CFO


**PRIVET OPPORTUNITY FUND I, LLC**

By: _____
Name: _____
Title: _____


**PRESCOTT GROUP CAPITAL MANAGEMENT**

By: _____
Name: _____
Title: _____

200375164 v8

**PB FUNDING, LLC**

By:_____
Name:_____
Title:_____

**PRIVET OPPORTUNITY FUND I, LLC**

By:_____
Name:_____
Title:_____

**PRESCOTT GROUP CAPITAL MANAGEMENT**

By: */s/ Ricardo Palacio*
Name: Ricardo Palacio, Esquire
Title: Counsel for Prescott Group Capital Management

**PB FUNDING, LLC**

By: _____
Name: _____
Title: _____


**PRIVET OPPORTUNITY FUND I, LLC**

By: /s/ Ryan L. _____
Name: _Ryan Levenson_____
Title: _Managing Member, Privet Fund Management LLC_


**PRESCOTT GROUP CAPITAL MANAGEMENT**

By: _____
Name: _____
Title: _____

EXHIBIT A

Schedule 3

**Additional Liens**

1.  CIT Communications Finance Corporation (limited to finance lease equipment sold to Point Blank Solutions, Inc. pursuant to Lease No. X551452 prior to the Closing Date)

2.  Toyota Motor Credit Corporation (limited to (1) 1997 BT PRIME MOVER Reach Truck Model RRX45, Serial No. RRX45-27259001 (NLT# 10408) (equipped with: (a) Industrial Battery Model 18-125-13, S/N 040072671 and (b) Charger Model AE36-483, S/N 117590), (2) 2002 TOYOTA Forklift Truck Model 7FBCU25, Serial No. 7FBCU25-61760 (NLT# 14153) (equipped with: (a) Industrial Battery Model 18-85-23, S/N 080002805 and (b) Charger Model E36-240, S/N 117583), (3) 2003 TOYOTA Industrial Forklift Truck 7FBCU25, Serial No. 7FBCU25-62623 (NLT# 14465) (equipped with: (a) Industrial Battery Model 18-85-23, S/N 080019097 and (b) Charger Model E36-240, S/N 118372) and (4) 2006 TOYOTA Industrial Forklift Truck Model 7FBCU25, Serial No. 7FBCU25-67877 (NLT# 17355) (equipped with: (a) Industrial Battery Model 18-85-23, S/N 060033275 and (b) Charger Model E36-240, S/N 117584)

3.  GreatAmerica Leasing Corporation (limited to (1) one KM-5035 Copier Mainframe (S/N M3009124), (2) one 1000 Sheet Finisher, (3) one Attachment Kit, (4) one KM-4035 Copier Mainframe (S/N L3030823), (5) two SRDF-2 Reverse Doc Feeders, (6) two Job Separators, (7) two Print Systems, (8) two Fax Systems, (9) two 1+D-4 Hardrives, (10) two 8 meg Fax memory, (11) two surge protectors, (12) two PF-75 3000 Sheet Drawers, (13) one 1000 Sheet Finisher and (14) one Attachment Kit)

4.  Bank of America, N.A. (limited to the cash collateral in the amount of $393,598.71 as of January 19, 2011 (including all investments, earnings, increases and proceeds thereof) for the letters of credit issued and expenses incurred pursuant to that Amended and Restated Loan and Security Agreement dated as of April 3, 2007, as amended, among certain lenders, Bank of America, N.A., as agent for such lenders, Protective Apparel Corporation of America, Point Blank Body Armor Inc., and Point Blank Solutions, Inc., as a guarantor)

NOTE: Nothing contained in this Schedule 3 shall be construed as an acknowledgment or admission as to the existence, validity, enforceability, priority or proper perfection of any of the liens or security interests identified herein.