# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> POINT BLANK SOLUTIONS, INC., et al., <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 10-11255 (PJW) <br> Jointly Administered <br><br> **Objection Deadline: April 18, 2011** <br> **Hearing Date: April 21, 2011** <br><br> **Re: Docket No. 1279** |

## LEAD PLAINTIFFS' SUPPLEMENTAL OBJECTION TO DISCLOSURE STATEMENT DESCRIBING AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

Lead Plaintiffs[2], by and through their undersigned counsel, hereby submit this Supplemental Objection to the Disclosure Statement Describing Amended Joint Chapter 11 Plan of Reorganization filed on April 8, 2011 [Docket No. 1279] (the "Amended Disclosure Statement"). In support of the Supplemental Objection, Lead Plaintiffs respectfully state as follows:

### INTRODUCTION

1. On January 11, 2011, the Debtors filed their initial Disclosure Statement describing Joint Chapter 11 Plan of Reorganization [Docket No. 1007]. In response, Lead Plaintiffs filed their Objections to Disclosure Statement Describing Joint Chapter 11 Plan of Reorganization dated February 9, 2011 [Docket No. 1115] (the "Original Objection"). The Amended Disclosure Statement contains various material modifications which, upon information

---

[1] The debtors in these chapter 11 cases are: (i) Point Blank Solutions, Inc., (ii) Point Blank Body Armor, Inc., (iii) Protective Apparel Corporation of America, and (iv) PBSS, LLC (collectively, the "Debtors").

[2] As defined in the Original Objection defined below.

99999/1
04/18/2011 17251795.1

and belief, are designed to address certain objections raised by parties in interest and changed circumstances such as the objection filed by the SEC concerning the proposed rights offering under the original Plan and the apparent withdrawal by the Equity Committee as a plan supporter and a proponent of the Amended Joint Chapter 11 Plan of Reorganization (the "Amended Plan"). Unfortunately, the Plan Proponents[3] have decided to make minimal (if any) changes to the original Disclosure Statement to address Lead Plaintiffs' previous objections. Specifically, the Plan Proponents have failed to address, among others, the following deficiencies:

- Failure to quantify or estimate claims in Classes 5 and 6;
- Inaccurate descriptions of the Class Action, Derivative Lawsuits and Turnover Action;
- Insufficient detail concerning substantive consolidation;
- Basis for the participation in the Recovery Trust by the Reorganized Parent;
- Basis for payment of eight (8%) percent interest on General Unsecured Claims;
- Basis for lack of participation by a holder of Class 6 Claims and Class 7 Interests on the Recovery Trust Committee;
- Mechanism for delivery of distributions to Class 6;
- Basis for release, exculpation and injunctive relief provisions.

Rather than restate these unresolved objections in their entirety, Lead Plaintiffs' fully incorporate the Original Objection herein, including but not limited to all reservations of rights contained therein. In addition to the matters raised in the Original Objection, Lead Plaintiffs submit the following supplemental objections to the Amended Disclosure Statement.

## SUPPLEMENTAL OBJECTIONS

*Recovery Trust Agreement*

2. The Amended Disclosure Statement does not provide impaired creditor classes with perhaps the most important document intended to set forth their rights to receive

---

[3] Capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Amended Disclosure Statement and Amended Plan.

distributions under the Amended Plan, the Recovery Trust Agreement. The Amended Disclosure Statement states that the Recovery Trust Agreement will be filed as part of the Plan Supplement but does not say when the Plan Supplement is going to be filed. In describing the treatment of Classes 5, 6 and 7, the Amended Disclosure Statement makes specific reference to the Recovery Trust Agreement, a document that has yet to be produced. This document will purport to govern the administration of the Recovery Trust and the rights of creditor beneficiaries, including the terms and conditions under which distributions will be made to all impaired classes under the Amended Plan. It must be produced prior to the hearing on the Amended Disclosure Statement and be attached to the Amended Disclosure Statement as an exhibit.

*Lack of Detail Concerning Class 5 Claims*

3. The Amended Disclosure Statement does not contain adequate detail with respect to the holders of claims in Class 5 (Subordinated Unsecured Claims). The Amended Disclosure Statement describes the estimated dollar amount of these claims as "unknown" (Table 1, p. 4) and suggests that such claims may exist against each of the four Debtors (p. 39). No further description is provided. The Disclosure Statement should not only estimate the amount of the claims but also identify the holders of such claims and the basis for classifying the claims in Class 5 under the Plan. The Amended Disclosure Statement should also explain why Class 5 is separately classified with priority over Classes 6 and 7.

*Additional Inaccuracies with Descriptions of Significant Legal Proceedings*

4. At pages 17 through 22 of the Amended Disclosure Statement, the Plan Proponents make several inaccurate or materially incomplete statements in describing the significant legal proceedings. At page 19, the Amended Disclosure Statement says that in order to fund the Stipulation of Settlement, "the Debtors deposited into escrow $22.3 million in cash."

This is obviously untrue as acknowledged in the following sentences of the Amended Disclosure Statement which plainly state that these funds were contributed to the escrow by Mr. Brooks. Additionally, in the same section, the Plan Proponents state that the insurance proceeds were contributed to the escrow "pursuant to buyouts of the policies". Again, this is inaccurate. These funds were paid by the insurance carrier for the benefit of the parties covered by the policies, specifically, the Debtors' former officers and directors. Even if the triggering events were to occur so as to terminate the Stipulation of Settlement and cause the Escrow Agent to release the insurance proceeds (events which Lead Plaintiffs do not believe will occur), the insurance proceeds are to be placed in trust pursuant to the Agreement of Insureds dated July 27, 2006. Thus, to suggest that the Debtors' estate has any control over the use of this money for its general benefit is disingenuous. In addition, and at the very least, the Plan Proponents should discuss the potential claims of Brooks to the $22.3 million that he paid in connection with the Stipulation of Settlement.

5. Finally, while the Plan Proponents have added a sentence at page 21 of the Amended Disclosure Statement which notes that the Rejection Order has been appealed by Lead Plaintiffs, this sentence should be modified to reflect that Mr. Brooks has also appealed the Rejection Order. Also, at page 21 (footnote 9), it should be noted that the denial of the Stay Relief Motion was "without prejudice".

***The Opt Out Release Provision Should be Featured Prominently***

6. The voting procedures described at pages 8 through 10 of the Amended Disclosure Statement make no mention of the fact that the Amended Plan provides an opt out release mechanism. Although this extraordinary feature of the Amended Plan is discussed much later in the document, it also should be featured and highlighted in the section of the Amended

Disclosure Statement which purports to tell holders of Claims and Interests how to vote. Generally, a description of the opt out release similar to the one set forth in the releases by holders of Claims and Interest section (p. 69) should be set forth in the "How to Vote" section at page 9.

*Additional Inadequacies Concerning Class 6*

7.  To the extent that the Stipulation of Settlement is terminated and the holders of Class 6 claims are forced to participate in distributions under the Amended Plan, the Amended Disclosure Statement and Amended Plan improperly treat Class 6 as a group of individuals as opposed to a class pursuant to the protective Class Proof of Claim filed by Lead Plaintiffs. The Plan Proponents should be directed to consult with Lead Plaintiffs to determine the procedure by which the Class will be voting as a class. Moreover, the distribution of trust shares based on the number of shares in the Parent associated with a holder's Class 6 Claim (see page 60 of Amended Disclosure Statement) is improper. The distribution of the Class 6 Trust Interests should be based on the total damages suffered by the Class absent the settlement. Of course, if the Stipulation of Settlement becomes effective, the protective Class Proof of Claim will be rendered moot. The number of shares purchased by a particular class member, while relevant to their claim, is not determinative of the claim which is measured in dollars based upon the price paid for those shares.

8.  The Amended Disclosure Statement and Amended Plan state that the Class Claim of Class 6 is capped at $35.2 million, the cash amount provided in the Stipulation of Settlement that the Debtor has now breached and that the Plan Proponents seek to terminate. There is absolutely no basis for the Plan Proponents to cap the Class 6 Claim at the cash amount, or any amount, that Lead Plaintiffs <u>settled for</u> under the terms of the Stipulation of Settlement when the

Amended Plan presumes that the Stipulation of Settlement is not going forward and cannot be enforced. The Debtor cannot in good faith make the presumption that the amount of the Class 6 Claim can be capped at $35.2 million. As set forth in the Original Objection (and pursuant to the terms of the Stipulation of Settlement if it is somehow terminated), the claims in Class 6 will comfortably exceed $400 million. This is a material fact that holders of Old Equity Interests (Class 7) deserve to know when contemplating the Amended Plan terms since it will be fundamentally and materially dilute their recovery. To suggest that the Class 6 Claim will be no more than $35.2 million is a material misrepresentation.

9. A further example of discriminatory treatment of Class 6 Claims can be found in the section concerning allocation of Trust Assets located at page 58 of the Amended Disclosure Statement. There, it states that Classes 6 and 7 will receive 30% of the proceeds (with 70% going to the Reorganized Parent for some reason), but if the holders of Claims in Class 7 vote to accept the Amended Plan, the share allocated to Classes 6 and 7 increases to 40%. Leaving aside the disproportionate share of the Reorganized Parent which is raised in Lead Plaintiffs' Original Objection, it is arbitrary and discriminatory for the return to holders of Claims in Class 6 to be impacted by the voting results of another Class (especially a Class that is not senior to Class 6). There should at least be some disclosure of the basis for this improper treatment.

***Objection to Solicitation Procedures Motion and Proposed Solicitation Order***

10. Aside from the problems described in paragraph 7 above, it should also be made clear that if any holder of a Class 6 Claim, either individually or as a class member in the Class Action, also holds a Claim in another class, any vote, opt out or non-opt out with respect to that other (non-Class 6) Claim shall not be binding with respect to their Class 6 Claim.

11. There is also a material inconsistency between the Solicitation Procedures Motion and the Proposed Solicitation Order. [Docket No. 1283]. At paragraph 52(b) of the Solicitation Procedures Motion, contingent, unliquidated or disputed claims are temporarily allowed in the amount of $1.00 for voting purposes only if a timely proof of claim was filed. Paragraph 26(b) of the Proposed Solicitation Order provides the same temporary allowance for voting purposes only, but with respect to a ". . . claim for which no proof of claim has been timely filed . . ." This appears to be a mistake and the language in the Proposed Solicitation Order should be changed to reflect the proper procedure described in the Solicitation Procedures Motion.

12. Lastly, Lead Plaintiffs reserve their right to challenge the opt in/opt out mechanism provided in the ballots as not resulting in a consensual third party release, a matter more appropriately left for confirmation. However, Lead Plaintiffs do object to the fact that the ballots provide for an opt out as opposed to an opt in with respect to a release. The ballot should not be a trap for the unwary and should require affirmative consent to the third party release by a holder of a claim or interest.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs object to approval of the Amended Disclosure Statement unless the modifications contained herein are made.

**CROSS & SIMON LLC**

*/s/ Kevin S. Mann*
_____
Christopher P. Simon (DE Bar No. 3697)
Kevin S. Mann, Esq. (DE Bar No. 4576)
P.O. Box 1380
913 North Market Street, 11th Floor
Wilmington, Delaware 19899-1380
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
kmann@crosslaw.com

- and –

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq. (ME 0570)
John K. Sherwood, Esq. (JS 2453)
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2481

*Bankruptcy Counsel to Lead Plaintiffs and the Class*