IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POINT BLANK SOLUTIONS INC., *et al.*[1] | ) | Case No. 10-11255 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Requested Objection Deadline: July 21, 2011 at 4:00 p.m.
Requested Hearing Date: July 27. 2011 at 2:00 p.m.

## DEBTORS' MOTION FOR APPROVAL OF A SETTLEMENT AGREEMENT WITH TOYOBO AMERICA, INC. AND TOYOBO CO., LTD.

The above-captioned debtors and debtors in possession (the "Debtors") have filed this

motion (the "Motion") to seek approval of a proposed settlement (the "Settlement") among

Debtors Point Blank Solutions, Inc. and Point Blank Body Armor, Inc. (collectively, "Point

Blank"), and Toyobo America, Inc., and Toyobo Co., Ltd (collectively, "Toyobo"). The terms of

the proposed Settlement are set forth in the settlement agreement (the "Settlement Agreement")

attached hereto as Exhibit A. The Settlement Agreement, among other things: (i) provides for

the gross payment of $6 million to Point Blank's estate;[2] (ii) globally resolves Point Blank's

prepetition claims against Toyobo; and (iii) includes mutual releases between Point Blank and

Toyobo.

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2] In these bankruptcy proceedings, the Debtors retained the law firm of Carr & Palmer, LLP ("Carr & Palmer"), on a contingent fee basis, as their special litigation counsel in order to continue the prosecution of Point Blank's claims against Toyobo. *See Docket Nos. 6 & 109.* Carr & Palmer has calculated their contingency fee at $1,250,000 (the "Contingency Fee"), which is subject to the approval of the Bankruptcy Court.

As set forth in greater detail below, the approval of the Settlement Agreement is in the best interests of Point Blank, its estate, and its creditors for four primary reasons. First, there are litigation risks for Point Blank in proceeding to trial. Point Blank has already lost on its contractual claims against Toyobo in summary judgment litigation before the District Court (defined below), and faces several challenges in prevailing upon its remaining claims against Toyobo. Approval of the Settlement Agreement eliminates these litigation risks, and provides assurance that Point Blank's estate and creditors will obtain a significant recovery on the claims against Toyobo.

Second, the paramount interests of creditors favors approval of the Settlement Agreement. If the Settlement Agreement is approved, Point Blank will receive $4,750,000 in net proceeds (the "Net Proceeds") after the payment of the Contingency Fee. The payment of the Net Proceeds will aid Point Blank's reorganization efforts. In addition, approval of the Settlement Agreement will obviate the need for trial. This will free the Debtors' management and professionals from the distraction of what was anticipated to be a lengthy, time-consuming process, as well as the additional costs through completion of trial.

Third, it is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal. If Point Blank prevailed at trial, Toyobo would almost certainly file an appeal. The Settlement provides certainty of payment to the estate now and obviates the risks of appeal. Substantial judgments awarded by trial courts have been reversed on appeal. *See, e.g., In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *4 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict in favor of plaintiff

overturned and j.n.o.v. entered in favor of defendant); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). "[A]ny victory that the Plaintiffs may obtain at trial could be tied up in the appellate process for years, effectively delaying or even eliminating any possible recovery." In re *Motorsports Merchandise Anti-Trust Litigation*, 112 F. Supp. 2d 1328, 1334; *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs= verdict obtained after two decades of litigation).

Finally, the Debtors note that the DIP Lenders (defined below) support approval of the Settlement Agreement.

In further support of the Motion, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

2.     Point Blank is a leading manufacturer and provider of bullet, fragmentation and stab resistant apparel and related ballistic accessories, which are used domestically and internationally by military, law enforcement, security and corrections

personnel, as well as government agencies. Since 1998, Point Blank has supplied over 80% of

U.S. military soft body armor vest requirements to protect soldiers and law enforcement

personnel around the world. Point Blank and its debtor subsidiaries Point Blank Body Armor,

Inc., and Protective Apparel Corporation of America, are major suppliers in the domestic law

enforcement market with broad brand recognition and "best value" reputation.

3.      On April 14, 2010 (the "Petition Date"), the Debtors commenced these

cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The

Debtors have continued in the possession of their property and have continued to operate and

manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

## The Toyobo Litigation

4.      In or about the mid-1990s, Dow Chemical Company licensed its rights in

synthetic PBO (Poly p-phenylene-2 6-benzobisoxazole) to Toyobo. Thereafter, Toyobo set

about commercializing PBO fiber under the name Zylon. Zylon is manufactured as a continuous

filament yarn which is converted into fabric by weaving or into resin by layering.

5.      In or about June, 1998, Toyobo began direct discussions with Point Blank

about the manufacture and marketing of a Zylon vest. Point Blank first began purchasing Zylon

from Toyobo in approximately 1999 and continued to purchase Zylon until 2005.

6.      On August 25, 2005, the United States Department of Justice, National

Institute of Justice ("NIJ"), released substantial scientific data, information and test results on

Zylon and Zylon-containing vests, demonstrating the failures of Zylon and bullet resistant vests

containing Zylon. All Zylon-containing vests in the United States and its territories were immediately decertified by the NIJ. Furthermore, the NIJ issued NIJ Body Armor Standard Advisory Notice #01-2005 stating, "The National Institute of Justice hereby advises that it has identified poly-phenyl benzobisoxazole (commonly known as PBO or Zylon®) as a material that appears to create a risk of death or serious injury as a result of degraded ballistic performance when used in body armor."

7.      Point Plank immediately ceased using Zylon, was forced to recall and replace thousands of ballistic resistant vests containing Zylon, and lost the benefit of millions of dollars worth of Zylon material in inventory and work-in-process. Moreover, Point Blank was subjected to an industry-wide investigation into the use of Zylon by the United States Department of Justice (the "DOJ"). Furthermore, the United States recently filed suit against Point Blank and several other manufacturers seeking, amount other things, recovery of federal funds expended on Zylon-containing vests.[3]

8.      On July 31, 2009, the Debtors filed a complaint, as amended (the "Complaint") against Toyobo in that certain action entitled *Point Blank Solutions, Inc., et al., vs. Toyobo America, Inc. and Toyobo Co., Ltd.*, Case No. 09-61166-Seitz/O'Sullivan (the "Toyobo

---

[3] The DOJ commenced suit against Point Blank in the United States District Court for the District of Columbia in that certain action entitled *United States of America v. Point Blank Solutions, Inc., Point Blank Body Armor, Inc., and Protective Apparel Corporation of America*, Case No. 10-cv-0716-RWR. The DOJ also filed similar actions against other companies or manufacturers using Zylon in their products. These related cases, to date, consist of: *United States v. Second Chance Body Armor, Inc., et al.* (D.D.C. No. 04-0280); *United States v. Toyobo Co. Ltd., et al.* (D.D.C. No. 07-1144 RWR); *United States v. Honeywell Int'l., Inc.* (D.D.C,. No. 08-961 (RWR); and *United States v. First Choice Armor & Equipment, Inc., et al.* (D.D.C. No. 09-01458 RWR). Additionally, the United States entered into settlement agreements with other companies and manufacturers using Zylon in their products, including: Lincoln Fabrics, Ltd., Hexcel Corp., Armor Holdings Products, LLC, Itochu, Gator Hawk Armor, Inc. and Protective Products International, Inc.

Litigation") in the United States District Court for the Southern District of Florida (the "District

Court"). Pursuant to the Complaint, Point Blank asserted claims against Toyobo in excess of

$20 million for deceptive and unfair trade practices under Florida law, fraudulent inducement,

false and misleading advertising, breach of express warranty, breach of implied warranty of

merchantability.

9.      After engaging in extensive pre-answer litigation, Toyobo, among other

things, filed an answer (the "Answer") in response to the Complaint, pursuant to which Toyobo

denied all liability, and asserted multiple affirmative defenses against Point Blank. These

affirmative defenses consisted of: (i) waiver and estoppel arguments based upon Point Blank's

own internal testing of its Zylon vests, and Point Blank's decision to continue to use Zylon,

(ii) statute of limitations arguments; (iii) alleged failures to mitigate damages; (iv) assumption of

the risk; and (v) the reduction of any recovery by Point Blank from collateral sources.

10.     The trial (the "Trial") of the Toyobo Litigation was scheduled to

commence on July 5, 2011. On July 4, 2011, Point Blank and Toyobo (collectively, the

"Parties") agreed – subject to the approval of the Bankruptcy Court – upon the material terms of

the Settlement.

11.     At the request of the Parties, the District Court agreed to temporarily stay

the Trial, and entered an order (the "Order Staying Trial") that, among other things: (i) directed

the Debtors to file a motion for the approval of the Settlement Agreement with the Bankruptcy

Court by no later than July 8, 2011; and (ii) rescheduled the Trial for August 15, 2011, in the

event that the Bankruptcy Court does not approve the Settlement Agreement. A copy of the Order Staying Trial is attached hereto as Exhibit B.

## The Settlement[4]

12.     On July 8, 2011, the Parties – subject to approval by the Bankruptcy Court – executed the Settlement Agreement. The Settlement Agreement, among other things, provides for:

  a. Toyobo's payment of $6 million to Point Blank upon the entry of a final order by the Bankruptcy Court approving the Settlement Agreement (Settlement Agreement, Article D);

  b. the exchange of mutual releases amongst the Parties (Settlement Agreement, Article D);

  c. the dismissal of the Complaint with prejudice (Settlement Agreement, Article D)

  d. no admission of fault or liability (Settlement Agreement, Article G); and

  e. each of the Parties to bear its own attorneys' fees, costs and expenses (Settlement Agreement, Article H).

13.     The effectiveness of the Settlement Agreement is expressly conditioned upon Bankruptcy Court approval. (Settlement Agreement, Article E).

---

[4] This summary of material terms of the Settlement Agreement has been included for the convenience of the parties receiving this Motion. This summary in no way alters, changes or amends the actual terms set forth in the Settlement Agreement. In the event that there are any inconsistencies between this summary and the actual terms of the Settlement Agreement, the language set forth in the Settlement Agreement controls.

## Relief Requested

14.     By this Motion, the Debtors seek the entry of an order approving the

Settlement Agreement, and authorizing the Parties to take all actions necessary to effectuate the

Settlement Agreement without the need of further order by this Court.

## Basis for Relief

15.     Settlements in bankruptcy are favored as a means of minimizing litigation,

expediting the administration of the bankruptcy estate, and providing for the efficient resolution

of bankruptcy cases. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). To achieve these results,

Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve settlements between debtors-

in-possession and creditors on motion after a hearing. *Bankruptcy Rule 9019*. Bankruptcy Rule

9019 states in relevant part that:

> On motion by the trustee and after notice and a hearing, the court may
> approve a compromise or settlement. Notice shall be given to
> creditors, the U.S. trustee, the debtor, and indenture trustees as
> provided in Rule 2002 and to any other entity as the court may direct.

*Fed. R. Bankr. P. 9019(a)*. Bankruptcy Rule 9019 implements section 363 of the Bankruptcy

Code, pursuant to which a debtor may use or sell property other than in the ordinary course of

business after notice and hearing. *Martin*, 91 F.3d at 394 n.2.

16.     In applying Bankruptcy Rule 9019, a bankruptcy court should approve a

settlement if it is fair and equitable, and in the best interests of the estate. *In re Cajun Elec.*

*Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997). To properly make this determination, a

bankruptcy judge "must assess and balance the value of the claim that is being settled against the

value to the estate of the compromise proposal." *Id.* at 356; *Martin*, 91 F.3d at 393 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

17.     The United States Court of Appeals for the Third Circuit (the "Third Circuit") has provided four (4) criteria that a bankruptcy court must consider in making this determination. Specifically, the bankruptcy court must examine: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F.3d at 393. The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

18.     In addition to these criteria, courts have scrutinized additional factors, such as the competency and experience of counsel who support the settlement; the relative benefits to be received by individuals or groups within the class; the nature and breadth of releases to be obtained by the parties to the settlement; and the extent to which settlement is the product of arm's length bargaining. *See In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re 47-49 Charles Street, Inc.*, 209 B.R. 618 (S.D.N.Y. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

19.     When applying the above-noted criteria to the facts of a particular case, a bankruptcy court does not have to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. *Cajun Elec.*, 119 F.3d at 356. Likewise, a bankruptcy court

does not need to conduct an evidentiary hearing as a prerequisite to approving the settlement. *In re Depositer*, 36 F.3d 582, 586 (7th Cir. 1994). Instead, it is the responsibility of the bankruptcy court to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Spielfogel*, 211 B.R. at 143-44; *In re Telesphere Communications, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994); *In re Carla Leathers, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

20. Approval of a compromise is within the "sound discretion" of the bankruptcy court. *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). The bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hospital-Osteopathic Medical Center*, 221 B.R. 603, 610 (Bankr. N.D. Ohio 1996) (citing *In re Bell and Beckwith*, 87 B.R. 476, 478-479 (Bankr. N.D. Ohio 1988). Approval of a settlement that involves property of the estate should also constitute a reasonable exercise of the Debtor's business judgment under Bankruptcy Code section 363(b), which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In interpreting section 363, courts have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

21. The terms of the Settlement Agreement readily satisfy the criteria established by the Third Circuit in *Martin* for the approval of settlements in bankruptcy.

22. The Probability of Success on the Toyobo Litigation Favors Settlement.

There are multiple considerations over Point Blank's probability of success on the Toyobo

Litigation that favor settlement. First, Point Blank lost on its contractual claims against Toyobo

in summary judgment litigation before the District Court.[5] Second, Point Blank faces several

challenges in prevailing upon its remaining claims against Toyobo, including issues related to:

(i) the suitability of Zylon for certain uses; (ii) potential negative testimony; and (iii) reper-

cussions from the NIJ's report.

23. Point Blank's loss on its contractual claims before the District Court due

to lack of privity, the above-noted issues that Point Blank must successfully address at Trial, the

uncertainty over the probability of success on Point Blank's remaining claims, and the likelihood

of continued litigation (including appeals), all favor approval of the Settlement Agreement.

There are no guarantees in litigation. This is especially true in complex litigation like this with

Toyobo, which among other things, involves extensive factual testimony spanning multiple

years, and complicated, dueling expert witness testimony over polymer efficacy and ballistic

testing. *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp.2d 418, 427. *See,*

*e.g., United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir. 1972) ("The jury . . . is

under no obligation to accept as completely true the testimony of any expert witness. It may

adopt as much of the testimony as appears sound, reject all of it, or adopt all of it").

---

[5] The Debtors did not directly purchase their Zylon from Toyobo. Instead, the Debtors purchased it from various weavers. When Point Blank had issues with fabric, it sent it back to the weavers, not Toyobo. Given these facts, the District Court previously granted summary judgment in favor of Toyobo on Point Blank's claims for breach of contract due to lack of privity, as well as to issues relating to modification of the Zylon in the weaving process.

24.    The Likely Difficulties in Collection Favors Approval of the Settlement Agreement. As set forth above, after the NIJ issued its report and decertified Zylon, the DOJ continued its industry wide investigation and filed additional litigation against the Toyobo entities. Years later the DOJ also filed suit against Point Blank, Honeywell International, Inc., and First Choice Armor & Equipment, Inc. The United States also entered into settlement agreements with other companies that used Zylon in their products, including Lincoln Fabrics, Ltd., Hexcel Corp., Armor Holdings Products, LLC, and Protective Products International, Inc. Toyobo is a potential target for each of the above-noted companies. The DOJ action against Toyobo seeks hundreds of millions of dollars in damages.

25.    Toyobo's potential exposure to the above-noted entities, and potential other unknown entities, strongly favors approval of the Settlement Agreement. This aspect of the Settlement is of critical importance to the Debtors, given the potential for an appeal, and the time that it would take to adjudicate such an appeal.

26.    The Complexity, Expense, Inconvenience and Delay Attending the Toyobo Litigation Favors Approval of the Settlement Agreement. The size and complexity of the Toyobo Litigation is readily demonstrated by the fact that Point Blank named twenty-four witnesses for Trial, while Toyobo named eighteen. Even though the Toyobo Litigation is at the Trial stage, the Debtors anticipate that either side to an adverse verdict will file an appeal. Any such appeal could take two to three years to resolve before the Court of Appeals for the Eleventh Circuit, given the expected size of the record that will be produced during the Trial, and the complexity of the anticipated expert testimony. The complexity, expense, inconvenience, and

delay that any such appeal would entail strongly favors the approval of the Settlement Agreement.

27.    The Paramount Interest of the Creditors Favors Approval of the Settlement Agreement. The paramount interests of creditors strongly favor the approval of the Settlement Agreement. The Settlement Agreement (i) liquidates Point Blank's claims against Toyobo, (ii) maximizes Point Blank's ability to recover against Toyobo on account of its claim, and (iii) ensures that Point Blank will not be tied up in potentially costly and time-consuming appeals.

28.    Other Factors Support Approval of the Settlement Agreement. In addition to satisfying the Third Circuit's criteria in *Martin*, four other factors support approval of the Settlement Agreement. First, the Debtors' post-petition lenders (Lonestar Partners L.P, Privet Opportunity Fund I, LLC, and Privet Fund Management LLC, and Prescott Group Capital Management – collectively, the "DIP Lenders"), support the approval of the Settlement Agreement. The DIP Lenders are a key constituency in these cases, and are all well represented by experienced counsel. The Debtors submit that their support evidences the reasonableness of the Settlement Agreement in light of the facts and circumstances surrounding the Debtors' bankruptcy cases and the Toyobo Litigation.

29.    Second, the Settlement Agreement is the product of hard-fought, arm's length bargaining between the Parties that continued until the eve of Trial.

30.    Third, the Debtors note that since the Settlement Agreement resolves the Debtors' claims against Toyobo – which are property of Point Blank's estate – Point Blank's

execution of the Settlement Agreement constitutes a reasonable exercise of its business judgment. That exercise of business judgment should be approved because the Settlement Agreement is fair and reasonable, does not fall below the lowest point in a range of reasonableness, and is in the best interest of Point Blank and its estate and creditors.

31.     Finally, the Debtors' special litigation counsel – Carr & Palmer – recommends the approval of the Settlement Agreement. Carr & Palmer are highly competent, well-established trial attorneys that have significant experience litigating complex cases before juries, including years of experience litigating numerous cases involving Zylon and Zylon containing body armor. In addition to all of the above-noted reasons, the Debtors are proceeding with the approval of the Settlement Agreement based upon Carr & Palmer's recommendation.[6]

## Notice

32.     Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to the Official Committee of Equity Holders; (iv) counsel to the DIP Lenders; (v) counsel to Toyobo; and (vi) parties who have requested notice pursuant to Bankruptcy Rule 2002. Pursuant to Del. Bankr. LR 2002-1(e), and in light of the nature of the relief requested, no other or further notice need be given.

---

[6] Additionally, Venable LLP, the Debtors' special government contracting, litigation, and government investigation counsel, were approved to provide their assistance in the Toyobo Litigation (*see Docket Item* 175) and recommend approval of the Settlement Agreement.

## No Prior Request

33.     No prior request for the particular relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto:  (a) granting the Motion; (b) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (c) authorizing the Parties to take all actions necessary to effectuate the foregoing relief without the need for further order by this Court; and (d) for such other and further relief as is just and proper.


Dated:  July _8_, 2011

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Curtis A. Hehn (Bar No. 4264)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:        ljones@pszjlaw.com
                   dbertenthal@pszjlaw.com
                   tcairns@pszjlaw.com

Counsel to Debtors and Debtors in Possession