## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) Case No. 10-11255 (PJW) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105 & 363 AND BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES AND POINT BLANK SOLUTIONS, INC., POINT BLANK BODY ARMOR, INC., AND PROTECTIVE APPAREL CORPORATION OF AMERICA

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this Court (the "Motion") to enter an order, pursuant to sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the terms of that certain *Settlement Agreement* (the "Settlement Agreement") entered into by the United States of America, acting through the United States Department of Justice (the "United States"), and Point Blank Solutions, Inc. ("PBSI"), Point Blank Body Armor, Inc. ("PBBA"), and Protective Apparel Corporation of America ("PACA" and together with PBSI and PBBA, the "Point Blank Debtors" and together with the United States, the "Parties"), in substantially the form attached hereto as Exhibit A.[2]  In support of this Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are:  Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2]  The United States has advised the Debtors that execution of the Settlement Agreement by the United States is subject to certain final, internal approvals of the Settlement Agreement and that such approvals of the Settlement Agreement in the form attached hereto as Exhibit A have been sought.

## Preliminary Statement

By this Motion, the Debtors seek the Court's approval of a settlement on the terms set forth in the Settlement Agreement of claims asserted by the United States against PBSI, PBBA and PACA totaling in the tens of millions of dollars for damages and penalties under the False Claims Act and damages for breach of contract and other theories of liability relating to alleged false statements in connection with the sale of Zylon fabric to the United States. The Debtors seek approval of the Settlement Agreement because it resolves complex litigation with the United States, relieves the estate of significant potential liabilities and eliminates the United States' objection to the sale of assets of the Debtors to Barrier Acquisition, LLC or to an entity that submits a higher or otherwise better offer at auction free and clear of the United States' claims. For the foregoing reasons, and as set forth in the pending motion with respect to the proposed asset sale,[3] approval of the Settlement Agreement is in the best interests of the estate and its stakeholders, and should be approved.

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The legal predicates for the relief requested hereby are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

---

[3] *See Debtors' Amended Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) AND 363(m); (C) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365* [Docket No. 1705].

DOCS_LA:245969.6 70934-001

2.      On April 14, 2010 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under the Bankruptcy Code.  The Debtors have continued in the possession of

their property and have continued to operate and manage their businesses as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been

appointed in the Debtors' Chapter 11 Cases.

3.      On April 26, 2010, the Office of the United States Trustee formed the

Official Committee of Unsecured Creditors (the "Creditors' Committee").  On July 27, 2010, the

Office of the United States Trustee appointed an Official Committee of Equity Security Holders

(as reconstituted, the "Equity Committee" – and collectively with the Creditors' Committee, the

"Committees").

4.      On August 26, 2011, the Debtors filed (1) a motion to approve bidding

procedures and expense reimbursement and break-up fee and (2) a motion to approve the sale of

assets related to operation of their bullet, fragmentation and stab resistant apparel and related

ballistics accessories manufacturing business (the "Assets") free and clear of liens, claims and

interests pursuant to section 363(f) of the Bankruptcy Code to Barrier Acquisition, LLC ("Barrier

Acquisition" or the "Stalking Horse Purchaser") or other party submitting a higher or otherwise

better bid.

5.      On September 27, 2011, the Debtors filed an amended motion to approve

bidding procedures, expense reimbursement and a break-up fee (the "Amended Bid Procedures

Motion") and an amended motion to approve the sale of the Assets free and clear of liens, claims

and interests pursuant to section 363(f) of the Bankruptcy Code to Barrier Acquisition or other

party submitting a higher or otherwise better bid (the "Amended Sale Motion").  On October 5,

2011, the Court entered an order approving the Amended Bid Procedures Motion (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, a hearing to approve the sale of the Assets to the Stalking Horse Purchaser or other party submitting a higher or otherwise better bid (the "Proposed Section 363 Sale") is scheduled for October 28, 2011 at 12:00 Noon (EST).

### The DOJ Matters

6.     The Debtors are subject to an industry-wide investigation by the Civil Division of the U.S. Department of Justice (the "DOJ") into the manufacture and sale of body armor products containing Zylon, a ballistic yarn manufactured and marketed by Toyobo Co., Ltd. and Toyobo America, Inc (together, "Toyobo").

7.     On October 7, 2010, the United States filed a complaint in the United States District Court for the District of Columbia against the Point Blank Debtors (the "Civil Action") asserting claims (i) for damages and civil penalties for violations of the False Claims Act, 31 U.S.C. §§ 3729-33, and (ii) for damages arising from breach of contract, payment by mistake and unjust enrichment, due to the Point Blank Debtors' alleged conduct, occurring prior to the Petition Date, in submitting, or causing to be submitted, false claims for payment and making, or causing to be made, false statements in connection with the contractual sale of defective Zylon body armor to the United States and state, local and tribal law enforcement agencies funded in part by federal funds.

8.     In the Civil Action, the United States alleges, *inter alia*, that:

    (i)     From 1999 to August 2005, the Point Blank Debtors manufactured and sold bullet proof vests which incorporated woven Zylon fabric or which contained Zylon fiber that was manufactured by Toyobo;

  (ii)  The bullet proof vests manufactured by the Point Blank Debtors containing Zylon were sold to the United States under direct contracts and the General Services Administration's Master Supply Schedule, and to various state, local and/or tribal law enforcement agencies which were then partially reimbursed under the Bullet Proof Vest Grant Partnership Act, 42 U.S.C. § 379611 *et seq.*, a federally funded program and that the Point Blank Debtors made, or caused to be made, false statements to the United States directly or indirectly in connection with the sale of bullet proof vests containing Zylon;

  (iii)  The Point Blank Debtors submitted, or caused to be submitted, false claims directly or indirectly in connection with the sale of bullet proof vests containing Zylon; and

  (iv)  The bullet proof vests containing Zylon sold by the Point Blank Debtors were defective in that they contained defective Zylon fiber manufactured and sold by Toyobo and that the Zylon fiber was defective in that it was not appropriate for use in ballistic applications and that the Point Blank Debtors either knew of, or recklessly disregarded, the defective nature of the Zylon fiber and the woven Zylon fabric.

The allegations described in the preceding paragraphs 7 and 8 are referred to in the Settlement Agreement as the "Covered Conduct."

9.    The United States filed three proofs of claim (Claim Nos. 514, 515 and

516) in the Bankruptcy Court for the claims and damages asserted in the Civil Action (the

"United States Proofs of Claim").  The Debtors are informed and believe that the United States

asserts that the damages alleged in the United States Proofs of Claim total tens of millions of

dollars.

10.    The United States has advised the Point Blank Debtors that it will object

to the sale of the Point Blank Assets free and clear of its claims and damages asserted in the Civil

Action and the United States' Proofs of Claim.[4]  Moreover, as discussed below, potential buyers

of the Assets require, as a condition of the Proposed Section 363 Sale that the Point Blank

Debtors, subject to the approval of the Court, approve the sale of the Assets free and clear of all

civil claims that the United States may have regarding the Point Blank Debtors, the Assets, and

the Covered Conduct.

## The Settlement Agreement

11.    The Debtors have negotiated the Settlement Agreement with the United

States to resolve complex and substantial claims pending against their estates and to facilitate the

Proposed Section 363 Sale.  The Settlement Agreement settles all civil monetary claims of the

United States related to the Covered Conduct (as defined below).  A copy of the proposed

Settlement Agreement in substantially final form is attached hereto and incorporated herein as

Exhibit A.

---

[4] For the avoidance of doubt, the Debtors do not believe that there are grounds upon which the United
States could sustain an objection to the Proposed Section 363 Sale.  Nevertheless, in the exercise of their
business judgment, the Debtors have determined that resolution of the need for litigation of any potential
objections is yet another benefit to the proposed settlement.

12.     The principal terms[5] of the proposed Settlement Agreement are as follows:

(1)     The Point Blank Debtors agree to pay to the United States, the sum of $1,000,000.00 (one million dollars) (the "Settlement Amount").  Payment of the Settlement Amount shall be made by the Point Blank Debtors after entry of an order from the Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving this Agreement (the "Approval Order"); (a) from the proceeds of the Proposed Section 363 Sale of the Point Blank Assets; and (b) at the closing or closings (the "Closing") of the Proposed Section 363 Sale of the Point Blank Assets.  The Point Blank Debtors shall pay the Settlement Amount on the date of the Closing by electronic funds transfer pursuant to written instructions provided by the United States Department of Justice.

(2)     Subject to the exceptions set forth in paragraph 6 of the Settlement Agreement, in consideration of the obligations of the Point Blank Debtors set forth in the Settlement Agreement, and conditioned upon the fulfillment by the Point Blank Debtors of their obligation to pay the Settlement Amount, the United States releases Point Blank and its predecessors, successors (including the buyer of the Point Blank Assets (the "Buyer")), current and former assigns, subsidiaries, parents, and divisions, as well as their current respective officers, directors, employees, agents, and representatives (collectively, the "Point Blank Released Parties"), from any civil monetary claim that the United States has or may have

---

[5] The terms of the Settlement Agreement set forth herein are a summary only. To the extent of any inconsistency between the summary herein and the Settlement Agreement, the terms of the Settlement Agreement (attached hereto as Exhibit A) shall govern.

DOCS_LA:245969.6 70934-001

under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Contract Disputes Act,
41 U.S.C. §§601-613; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-
3812;  and the common law theories of payment by mistake, unjust enrichment,
breach of warranty, negligence, breach of contract, and fraud, for the Point Blank
Covered Conduct.  This release shall in no way be construed as a release of any
individual or any other entity (excluding the Point Blank Released Parties).
Specifically exempted from this release, and not included among the Point Blank
Released Parties, are the following individuals: David H. Brooks; Terry Brooks;
Jeffrey Brooks; Sandra Hatfield; Patricia Lennex; and any other member of these
individuals' respective families.

(3)     The Settlement Agreement is intended to be solely for the benefit
of the United States and the Point Blank Released Parties, and no other person or
entity is intended to, or shall, be released or waive claims in connection therewith.
Specifically, the Settlement Agreement does not affect the rights and claims of
any other agency other than the Commercial Litigation Branch of the United
States Department of Justice.

(4)     Conditioned upon the fulfillment by the Point Blank Debtors of
their obligations to pay in full the Settlement Amount, the United States agrees to
(a) withdraw, with prejudice, the United States Proofs of Claim and (b) file a
notice of dismissal, with prejudice, of the Civil Action.

(5)     In addition, and in connection with the Proposed Section 363 Sale,
the United States has reviewed and does not object to entry of an order by the

DOCS_LA:245969.6 70934-001

Court authorizing the Proposed Section 363 Sale substantially in the form filed by the Point Blank Debtors with the Court as Exhibit B to the Amended Sale Motion, and providing for, among other things, (a) the Proposed Section 363 Sale of the Point Blank Assets free and clear of any and all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code; and (b) that the Buyer is a good faith Buyer and entitled to the protections of section 363(m) of the Bankruptcy Code.

(6)     Notwithstanding any term of the Settlement Agreement, and except as otherwise may be specifically provided therein, specifically reserved and excluded from the scope and terms of the Settlement Agreement, including the releases, as to any entity or person (including the Point Blank Debtors) are any and all of the following:

(i)     Any civil, criminal or administrative claims arising under Title 26, United States Code (Internal Revenue Code), and related regulations;

(ii)    Any criminal liability;

(iii)   Any administrative liability of the Point Blank Debtors, including the suspension or debarment rights of any federal agency;

(iv)    Any liability of the Point Blank Released Parties to the United States (or its agencies) for any conduct other than the Covered Conduct;

(v)     Any claims based upon such obligations as are created by this Agreement;

(vi)    Any liability for failure to deliver goods or services due;

(vii)   Any liability to non-Parties to this Agreement for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

(viii)   Any liability of individuals (other than the Point Blank Released Parties), including, but not limited to, David H. Brooks; Terry Brooks; Jeffrey Brooks; Sandra Hatfield; Patricia Lennex; and any other member of these individuals' respective families.

(7)     The Point Blank Debtors, on behalf of themselves and their estates, waive and will not assert any defenses they have, or may have, to any criminal prosecution or administrative action relating to the Point Blank Covered Conduct, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause of the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

(8)     The Point Blank Debtors, on behalf of themselves and their estates, (a) waive and forever release any claim, right, or entitlement to any unpaid refund that is, or may be, owed to them under Title 26 of the United States Code (Internal Revenue Code) or the regulations promulgated thereunder on account of any tax year, or any portion thereof, arising prior to the Petition Date and (b) expressly covenant and agree not to claim, assert a right to, or seek, directly or indirectly, any such refund.

(9)     (a) *Unallowable Costs*.  The Point Blank Debtors agree that all costs (as defined in the Federal Acquisition Regulations ("FAR") § 31.205-47 and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg (1999) and 1396-1396v (1999), and the regulations promulgated thereunder)

-10-

incurred by or on behalf of the Point Blank Debtors and/or their present or former

officers, directors, employees, and agents in connection with:

    (i)      the matters covered by the Settlement Agreement;

    (ii)     the United States' audit(s) and civil investigations of the matters covered by the Settlement Agreement;

    (iii)    the Point Blank Debtors' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with matters covered by the Settlement Agreement (including attorneys fees);

    (iv)    the negotiation and performance of the Settlement Agreement; and

    (v)     the payments the Point Blank Debtors make to the United States pursuant to the Settlement Agreement;

are unallowable costs for government contracting purposes ("Unallowable

Costs").

       (b) *Future Treatment of Unallowable Costs*: Unallowable Costs will be

separately determined and accounted for by the Point Blank Debtors. The Point

Blank Debtors shall not charge such Unallowable Costs directly or indirectly to

any contract with the United States.

       (c) *Treatment of Unallowable Costs Previously Submitted for Payment*:

Within 90 days of the entry of the Approval Order, the Point Blank Debtors shall

identify and repay by adjustment to future claims for payment or otherwise any

Unallowable Costs included in payments previously sought by the Point Blank

Debtors, and or any of its subsidiaries or affiliates, from the United States. The

United States, including the Department of Justice and/or the affected agencies,

reserves its rights to audit, examine, or re-examine the Point Blank Debtors' books

and records and to disagree with any calculations submitted by the Point Blank

Debtors or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by the Point Blank Debtors, or the effect of any such Unallowable Costs on the amount of such payments.

(10)    The Point Blank Debtors agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in the Settlement Agreement, consistent with the rights and privileges of those individuals or entities. Upon reasonable notice, the Point Blank Debtors shall make available, encourage, and agree not to impair, the cooperation of the Point Blank Debtors' directors, officers, and employees for depositions, interviews, and court testimony at the request of the United States at any reasonable location selected by the United States. Further, the Point Blank Debtors shall use reasonable efforts, without any obligation to institute litigation, to make available and encourage, and agree not to impair, the cooperation of the Point Blank Debtors' former directors, officers, consultants and employees for depositions, interviews and testimony, consistent with the rights and privileges of such individuals, at the request of the United States at any reasonable location selected by the United States. Subject to being at reasonable expense to the Company, the Point Blank Debtors further agree to give the United States, upon request, reasonable access, at their then current location, to copies of all non-privileged documents, reports, and records in their possession, custody, or control, relating to the Covered Conduct. In connection with the foregoing, the Point Blank Debtors agree to use reasonable efforts (including through the exercise of rights under an Asset Purchase Agreement executed with

-12-

the buyer of the Debtors' assets (the "Buyer")), without obligation to institute litigation or to incur unreasonable expense, to obtain information and/or copies of documents which are part of the Point Blank Assets from the Buyer to the extent reasonably requested to do so by the United States.

13.     The terms and conditions of the Settlement Agreement are expressly contingent upon approval by this Court.

14.     The Debtors and the United States have also negotiated terms of a side letter (the "Side Letter") to be furnished by the United States providing that:  (i) the inclusion of paragraph 11 in the Settlement Agreement pertaining to Unallowable Costs does not serve to create any new payment obligations or other liability of the Point Blank Debtors and/or the Buyer to the United States that did not exist prior to the Court's entry of an order approving the Settlement Agreement with respect to Unallowable Costs or otherwise; and (ii) with respect to any Unallowable Costs that the United States asserts to be owed by the Point Blank Debtors pursuant to paragraph 11 of the Settlement Agreement, (a) any such claim must be asserted through the filing of a proof of claim in the Point Blank Debtors' chapter 11 cases, (b) the Settlement Agreement does not provide that any such claim for Unallowable Costs primes the claims of any creditors of the Point Blank Debtors and does not otherwise affect applicable provisions of the Bankruptcy Code with respect to priority or treatment of such claims by the bankruptcy estates of the Point Blank Debtors and (c) the Settlement Agreement does not affect any rights and defenses of the Point Blank Debtors with respect to the allowance, priority and payment of any such claims filed on account of Unallowable Costs.  The Side Letter further

provides that it is for informational purposes only, and not as consideration for, nor should it be construed as forming any part of, the proposed settlement.

15.    The settlement reflected in the Settlement Agreement represents an important component of a successful sale process for the Debtors' assets as well as a favorable resolution of a very large claim against the Debtors' estates.  The Debtors believe that the Settlement Agreement is clearly fair and reasonable and in the best interest of their bankruptcy estates and their stakeholders and, therefore, this Court should authorize the Debtors to execute and deliver the Settlement Agreement.

## Requested Relief

16.    By and through the Motion, and as a result of the aforesaid negotiations, the Debtors seek entry of an order, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), approving the Settlement Agreement.

## Basis For Relief Requested

17.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement."

18.    Compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Martin v. Myers (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996).  The Supreme Court has recognized that "in administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (applying the former Bankruptcy Act).

19.     In determining the fairness of a proposed compromise, the court should:

> form an educated estimate of the complexity, expense and likely
> duration of such litigation, the possible difficulties of collecting on
> any judgment which might be obtained, and all other factors
> relevant to a full and fair assessment of the wisdom of the
> proposed compromise.  Basic to this process in every instance, of
> course, is the need to compare the terms of the compromise with
> the likely rewards of the litigation.

*Protective Comm.*, 390 U.S. at 414, 424-25.

20.     The Third Circuit, applying *Protective Committee* in the context of a

settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

(i)     the probability of success in litigation;

(ii)    the likely difficulties of collection;

(iii)   the complexity of the litigation involved and the expense,

inconvenience and delay necessarily attending it; and

(iv)    the paramount interest of the creditors.

*Martin*, 91 F. 3d at 393; *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D.

Del. 1998) (applying Bankruptcy Rule 9019(a), whether a court should approve a settlement

depends on several factors, including the probability of success in the litigation, the complexity

of the of the litigation, the attendant expense and delay, and the interests of the creditors); *In re

Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (generally, a settlement will be approved as

long as it clears a threshold of reasonableness); *Official Unsecured Creditors' Committee v.

Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D.

Pa. 1992), *aff'd without opinion*, 8 F. 3d 812 (3d Cir. 1993) (settlement must not fall below the

lowest level in the range of reasonableness).

21.     Approval of a compromise is within the "sound discretion" of the

bankruptcy court. *Jeffrey v. Desmond*, 70 F. 3d 183, 185 (1st Cir. 1995). The bankruptcy court

must determine whether the proposed compromise and the settlement are in the "best interests of

the estate." *See In the Matter of Energy Cooperative, Inc.*, 886 F. 2d 921, 927 (7th Cir. 1989).

The bankruptcy court should not substitute its judgment for that of a trustee or debtor in

possession. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985);

*In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). The bankruptcy court

is not to decide the numerous questions of law or fact raised in the litigation, but rather should

canvass the issues to see whether the settlement falls below the lowest point in the range of

reasonableness. *See In re Penn Trans. Co.*, 596 F. 2d 1102, 1114 (3d Cir. 1979); *Cosoff v.

Rodman (In re W.T. Grant Co.)*, 699 F. 2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822

(1983).

22.     To the extent applicable, approval of a settlement that involves property of

the estates should also constitute a reasonable exercise of the Debtors' business judgment under

Bankruptcy Code section 363(b). This provision states that "[t]he trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1). In interpreting this provision, courts have held that a transaction

involving property of the estate generally should be approved so long as the trustee can

demonstrate "some articulated business justification for using, selling, or leasing property

outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223,

1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983).

-16-

23.    Approval of the Motion should be further authorized pursuant to section 105 of the Bankruptcy Code, which authorizes the Court "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." *See* 11 U.S.C. § 105(a).

## Argument

**The Settlement Agreement Satisfies the *Martin* Factors and Should Be Approved**

24.    Approval of the Settlement Agreement with the United States is in the best interests of the estates because it resolves complex litigation, relieves the estate of certain potential liabilities and facilitates the sale of the Assets.

25.    Approval of the Settlement Stipulation will benefit the interests of the Debtors' creditors.  Potential buyers of the Assets, including the Stalking Horse Purchaser, have advised the Debtors that they would not purchase the Assets without some assurances that the United States will not attempt to pursue claims being addressed in the Settlement Agreement against them after closing.  The United States, in turn, has advised the Debtors that it will object to the sale of the Assets on the basis that the Assets cannot be assigned free and clear of the United States' claims.  Entering into the Settlement Agreement will avoid the need to litigate such objections and will ensure the sale of the Debtors' assets will be free and clear of claims based upon the matters which are the subject of the Settlement Agreement, thereby allowing the Debtors to satisfy a condition to closing of the Proposed Section 363 Sale.  As described in detail in the Amended Sale Motion, the Debtors submit that the orderly sale of the Debtors' assets through the Proposed Section 363 Sale is the highest and best alternative for the estates.

-17-

26.     The proposed Settlement Agreement is also justified under the remaining factors relevant to approving a compromise under Third Circuit law.  The litigation that would be involved in adjudicating the Civil Action and United States Proofs of Claim would be complex and lengthy.  Further, the outcome of litigation would be uncertain.  Litigation would require adjudication of complex issues concerning the United States' False Claims Act, breach of contract and other claims asserted in the Civil Action and United States Proofs of Claim.  There is no guaranty that the Debtors would successfully prevail on its defenses to the United States' claims and, as noted above, the Debtors are informed and believe that the United States asserts that its claims pursuant to the United States Proofs of Claim – which will be withdrawn pursuant to the Settlement Agreement – total tens of millions of dollars.  The Debtors would also incur substantial attorneys' fees in connection with any litigation, all of which would have administrative priority over the claims of the Debtors' other creditors.  If approved, the Settlement Agreement will fully resolve all pending claims and issues related to the Civil Action and United States Proofs of Claim (including in relation to the pending sale) and avoid the risks, delay and inconvenience associated with litigation.

27.     Based upon the foregoing, the Debtors believe that the Settlement Agreement is a fair and reasonable resolution of the Civil Action and United States Proofs of Claim.  Moreover, as a critical component of the Proposed Section 363 Sale and resolution of a substantial claim against the estates, approval of the Settlement Agreement is in the best interests of the estate and their stakeholders.  Accordingly, the Settlement Agreement should be approved by this Court under sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Notice

28.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the United States; (ii) the Office of the United States Trustee; (iii) the Committees; (iv) the secured postpetition lenders under the Debtors' postpetition financing facility; and (v) other parties requesting notice under Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that this Court enter the attached Order approving the Settlement Agreement, in substantially the form attached to the Motion as Exhibit A hereto, and grant such other and further relief as this Court deems just and proper.

Dated:  October 24, 2011

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried, (CA Bar No. 181541)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
         dbertenthal@pszjlaw.com
         jfried@pszjlaw.com
         tcairns@pszjlaw.com

Counsel for the Debtors and Debtors in Possession