## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| POINT BLANK SOLUTIONS, INC., et al.,[1] | ) Case No. 10-11255 (PJW) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) **Related to Docket Nos. 1705 & 1732** |

### ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), 363(f) AND 363(m); (C) AUTHORIZING THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365; AND (D) GRANTING RELATED RELIEF

Upon the amended motion (the "Amended Motion")[2] of the above-captioned joint debtors and debtors in possession (collectively, the "Debtors") for the entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules (i) authorizing the sale of substantially all of the Property (as defined in the Agreement) (the "Assets") to the highest or otherwise best bidder at auction; (ii) approving that certain asset purchase agreement attached as Exhibit A to the Amended Motion; (iii) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Purchaser; and (iv) granting related relief; and this Court having

---

[1]   The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are:  Point Blank Solutions, Inc. (9361), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Point Blank Body Armor, Inc. (4044), 2102 S.W. 2nd Street, Pompano Beach, FL 33069; Protective Apparel Corporation of America (9051), 179 Mine Lane, Jacksboro, TN 37757; and PBSS, LLC (8203), 2102 S.W. 2nd Street, Pompano Beach, FL 33069.

[2]   All capitalized terms used but not defined in this Order have the meaning ascribed to such terms in the Amended Motion or, if not defined in the Amended Motion, in the Agreement (as defined below).

entered an order dated October 5, 2011 (the "Bid Procedures Order" and, attached as Exhibit 1 thereto, the "Bid Procedures"), authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher or otherwise better offers for the Assets, establishing a date for the Auction, and approving, *inter alia,* (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Cure Notice; (iii) procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed cure amounts; and (iv) the Break-Up Fee; and the Debtors having determined that the highest and otherwise best offer for the Assets was made by Point Blank Enterprises, Inc., a Delaware corporation (together with its assignees, in accordance with the Agreement (as defined below), the "Purchaser") in the form of the Agreement among the Purchaser, on the one hand, and Point Blank Solutions, Inc. and the other sellers named therein, on the other hand, dated as of October [26], 2011 (the "Agreement"); and the Auction having been held on October 27, 2011 pursuant to which the Purchaser was selected as the winning bidder; and the Court having established the date of the Sale Hearing and having conducted the Sale Hearing on October 28, 2011; and the Court having jurisdiction to consider the Amended Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Amended Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and the appearance of all interested parties and all responses and objections, if any, to the Amended Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Amended Motion; and it appearing that the relief requested in the Amended Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; that

reasonable and adequate notice of the Amended Motion, the Bid Procedures Order and the transactions contemplated by the Agreement, this Order and the Sale Hearing have been provided to all persons required to be served in accordance with the Bankruptcy Code and the Bankruptcy Rules; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and of the Amended Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[3]    All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Amended Motion are hereby incorporated herein to the extent not inconsistent herewith.

E.      The statutory predicates for the relief sought in the Amended Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105, 363 and 365, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

F.      On April 14, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their business and properties as debtors in possession pursuant to Bankruptcy Code §§1107(a) and 1108.

G.      As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Amended Motion, the Auction, and the Sale Hearing have been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, as required by the Bid Procedures Order.  The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract proposed to be assumed and assigned pursuant to the Agreement (including the Pompano Lease, if the Pompano Lease is assumed and assigned to the Purchaser pursuant to the terms of the Agreement, the "Assumed Contracts") through the Cure Notices given in accordance with the Bid Procedures Order to each non-debtor party under each such Assumed Contract.  Such notice was good, sufficient and appropriate under the particular circumstances.  No other or further notice of the Amended Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, or of the entry of this Order is necessary or shall be required.

H.      Actual written notice of, and a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities as required by the Bid Procedures Order, including, without limitation, (a) the U.S. Trustee; (b) counsel to

the DIP Lender and each of the Committees; (c) all parties known to assert a lien on any of the Assets and who would appear as potentially holding a lien on any search conducted to determine who asserts a lien on the Debtors' assets; (d) all known counterparties to any Assumed Contracts; (e) all entities known to have expressed an interest in bidding on the Assets; (f) the United States Attorney's office; (g) all state attorney generals in states in which the Debtors do business; (h) state taxing authorities in the states in which the Debtors do business and the Internal Revenue Service; (i) environmental authorities in the states or smaller applicable jurisdictions in which the Debtors do business; (j) the Stalking Horse Purchaser and its counsel; (k) counsel to the Purchaser; (l) the General Services Administration; (m) the Department of Justice; and (n) all other parties that had filed a notice of appearance and demand for service of papers in these bankruptcy cases.   Other parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.

I.       The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Assets and assume and assign the Assumed Contracts under Bankruptcy Code §§ 363 and 365, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors and other parties in interest.   Such business reasons include, but are not limited to, the facts that (i) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the Debtors' value on a going concern basis; (ii) there is substantial risk of deterioration of the Assets' value if the sale is not consummated quickly; (iii) the Agreement constitutes the highest and best offer for the Assets; and (iv) any other transaction, including

pursuant to any currently viable plan of reorganization, would not have yielded as favorable an economic result.

J.    The Bid Procedures set forth in the Bid Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of good faith, arms' length negotiations between the Debtors and the Purchaser.

K.    The disclosures made by the Debtors concerning the Agreement, the Auction and the transactions contemplated by the Agreement and the Sale Hearing were good, complete and adequate.

L.    The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order.  As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Assets; (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets; and (iii) considered any bids submitted on or before the Bid Deadline.

M.    The Debtors conducted the Auction on [October 27, 2011] and selected the Purchaser as the winning bidder.  The Purchaser submitted the highest or otherwise best offer, and the Purchaser is the Successful Bidder for the Assets in accordance with the Bid Procedures Order.  Body Armor LLC was selected as the Back-Up Bidder at the Auction.  The Purchaser and its professionals have complied, in good faith, in all respects with the Bid Procedures Order. The Bid Procedures obtained the highest value for the Assets for the Debtors and their estates.

No other entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' estates than the Purchaser. The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

N.     The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest or otherwise best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' estates, creditors and other parties in interest; and (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets.

O.     The Purchaser is not an "insider" or an "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and therefore the Purchaser is entitled to all the protections of Bankruptcy Code §§ 363(m) and (n) with respect to all of the Assets.

P.     The Agreement was negotiated and entered into in good faith, based upon arms' length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Agreement or to the consummation of the sale transaction and transfer of the Assets and the Assumed Contracts to the Purchaser. Accordingly, the Purchaser is entitled to all the protections and immunities of Bankruptcy Code § 363(m).

Q.     The Debtors are authorized to execute the Agreement and all other documents contemplated thereby, and to promptly consummate the transactions contemplated by the

Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

R.    The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Assets, as more fully set forth in the Amended Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Assets to the Purchaser and the assumption and assignment of the Assumed Contracts is a legal, valid and effective transfer of the Assets and any Assumed Contracts.

S.    The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

T.    Except as otherwise provided in the Agreement and to the extent permitted by the Bankruptcy Code, the Assets shall be sold free and clear of any lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option or other interest in the subject property, including any right of recovery, tax (including foreign, federal, state and local tax), order of any Governmental Authority or other Claim thereagainst or therein, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that the Purchaser is a successor, transferee or continuation of the Debtors or the Assets, and (iv) any leasehold interest, license or other right, in favor of a person other than Purchaser, to use any

portion of the Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown (collectively, "Liens") with such Liens to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

U.    The Agreement is a valid and binding contract among the Debtors and the Purchaser, which is and shall be enforceable according to its terms.

V.    The transfer of the Assets to the Purchaser is a legal, valid and effective transfer of all the Assets, and, except as may otherwise be provided in the Agreement, shall vest the Purchaser with all right, title and interest of the Debtors in and to the Assets free and clear of any and all Liens.  Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens relating to the Assets.

W.    The Debtors, acting by and through their existing secretary, any assistant secretary, agents, representatives and officers, have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, including, without limitation authority to effect the name changes set forth in Section 8.5 of the Agreement and no further consents or approvals are required for the Debtors to consummate the transactions and any related actions contemplated by the Agreement, except as otherwise set forth in the Agreement.

X.    The Debtors may sell the Assets free and clear of all Liens of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied.  Those holders of Liens from which the Assets are to be sold free and clear (including, to the extent applicable, the non-debtor parties to Assumed Contracts) who did

not object, or who withdrew their objections, to the sale of the Assets and the Amended Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). All objections to the Amended Motion have been resolved or overruled. Those holders of Liens who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Liens.

Y.    Not selling the Assets free and clear of all Liens would adversely impact the Debtors' estates, and any sale of the Assets other than one free and clear of all Liens would be of substantially less value to the Debtors' estates.

Z.    If the sale of the Assets to the Purchaser were not free and clear of all Liens, or if the Purchaser would, or in the future could, be liable for any Liens, the Purchaser would not have entered into this Agreement and would not consummate the sale or the transactions contemplated by the Agreement, thus adversely affecting the Debtors, their estates and their creditors.

AA.    The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to all Assumed Contracts pursuant to Bankruptcy Code § 365(b)(1)(C). The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

BB.     The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of the Debtors' chapter 11 cases. The Purchaser, on behalf of the Debtors, has provided for appropriate cures and/or other payments or actions required for the Debtors to assume and assign the Assumed Contracts to the Purchaser. The Purchaser has provided adequate assurance of future performance under all Assumed Contracts.

CC.     In the absence of a stay pending appeal, the Purchaser is acting in good faith, pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

DD.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.

EE.     The sale of the Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute a *sub rosa* chapter 11 plan.

FF.     The Agreement was not entered into, and none of the Debtors or the Purchaser, have entered into the Agreement or proposed to consummate the transactions contemplated thereby, for the purpose of hindering, delaying or defrauding the Debtors' present or future

creditors.  The total consideration provided by the Purchaser for the Assets is the highest or

otherwise best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably

equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair

consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent

value, fair consideration and fair value under any other applicable laws of the United States, any

state, territory or possession, or the District of Columbia, for the Assets.

GG.    Time is of the essence in consummating the sale.  In order to maximize the value

of the Assets and preserve the viability of the Business as a going concern, it is essential that the

sale of the Assets occur within the time constraints set forth in the Agreement.  Accordingly,

there is cause to determine inapplicable the stays contemplated by Bankruptcy Rules 6004 and

6006.

HH.    The Purchaser has not agreed to assume and shall have no obligation with respect

to any liabilities of the Debtors or their subsidiaries or Affiliates other than as expressly set forth

in the Agreement.  Other than the Assumed Liabilities, and except as expressly provided for by

the terms of the Agreement the Purchaser (i) shall have no obligations with respect to any

Excluded Liabilities, (ii) shall acquire all the Assets free and clear of the Excluded Liabilities to

the extent they constitute a Lien and (iii) is released by the Debtors with respect to such

Excluded Liabilities.

II.    The Debtors, in connection with offering products or services, did not disclose

any policy prohibiting the transfer of personally identifiable information and, therefore, the sale

of the Assets may be approved pursuant to Bankruptcy Code § 363(b)(1)(A) without the

appointment of a consumer privacy ombudsman as defined in Bankruptcy Code § 363(b)(1).

JJ.     Other than claims arising under the Agreement, the Debtors agree and acknowledge that they have no claims against the Purchaser.

KK.     The consummation of the transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The relief requested in the Amended Motion is GRANTED in its entirety, subject to the terms and conditions contained herein.  The Amended Motion complies with all aspects of Local Rule 6004-1.

2.     All objections, responses, and requests for continuance concerning the Amended Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.     Notice of the Sale Hearing was fair, equitable, and proper under the circumstances and complied in all respects with Bankruptcy Code § 102(1) and Bankruptcy Rules 2002, 6004 and 6006 as required by the Bid Procedures Order.

*Approval of Sale*

4.     The sale of the Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto and all other ancillary documents), the bid by the Purchaser, and the transactions contemplated thereby and all of the terms and conditions thereof,

are the highest and best offer for the Assets and hereby are authorized and approved in all respects.

5.      The sale of the Assets and the consideration provided by the Purchaser under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.      The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code § 363(m), including with respect to the transfer of the Assumed Contracts as part of the sale of the Assets pursuant to Bankruptcy Code § 365 and this Order.

7.      Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

8.      The Debtors are hereby authorized to fully perform under, consummate and implement the terms of the Agreement, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may be reasonably necessary for the purpose of assigning, transferring,

granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, forthwith and without any further corporate action or orders of this Court. Neither the Purchaser nor the Debtors shall have any obligation to proceed with the Closing of the Agreement unless and until all conditions precedent to the Purchaser's and the Debtors' respective obligations thereunder have been met, satisfied or waived by the Purchaser and/or the Debtors, as the case may be.

9.       The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, forthwith and all without further application to, or order of, the Court.

10.      The secretary, any assistant secretary, agent, representative or officer of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but

no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and bylaws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, the State of Florida, the State of Tennessee and all other applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtors' corporate names, with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

11. Effective as of the Closing, (a) the sale of the Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtors in and to the Assets, free and clear of all Liens of any kind, pursuant to Bankruptcy Code § 363(f), and (b) the assumption of any Assumed Liabilities by the

Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to any Assumed Liabilities.

12.     The sale of the Assets is not subject to avoidance pursuant to Bankruptcy Code § 363(n) or otherwise.

*Transfer of Assets*

13.     Except to the extent specifically provided in the Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized and empowered, pursuant to Bankruptcy Code §§ 105, 363(b) and 363(f), to sell the Assets to the Purchaser.  The sale of the Assets vests Purchaser with all right, title and interest of the Debtors in and to the Assets free and clear of any and all Liens, with all such Liens to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Assets, subject to all claims and defenses the Debtors may possess with respect thereto.  The Amended Motion or notice thereof shall be deemed to provide sufficient notice as to the sale of the Assets free and clear of Liens.  Following the Closing Date, no holder of any Liens in the Assets shall have any basis to interfere with the Purchaser's use and enjoyment of the Assets based on or related to such Liens, or any actions that the Debtors may take in their chapter 11 cases, and no person may take any action to prevent, interfere with or otherwise impair consummation of the transactions contemplated in or by the Agreement or this Order.

14.     At or as soon as reasonably practicable after the Closing Date, the Debtors shall disburse the Purchase Price (subject to the terms of the Agreement relating thereto) and all other cash and cash equivalents of Debtors as of such disbursement date, including cash generated from operations, but in each case excluding the Retained Funds (as defined below), solely as follows: (i) first, for deposit to the Carve Out Account (as defined in the DIP Order) on account

of accrued but unpaid Professional Fees and Expenses (as defined in the DIP Credit Agreement) in an amount not to exceed (a) the Professional Fee Carve Out (as defined in the DIP Credit Agreement and modified by the forbearance agreement relating thereto) in accordance with the terms applicable to such Professional Fee Carve Out, plus (b) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and fees payable to the clerk of the Bankruptcy Court; (ii) second, for the Break-Up Fee and Expense Reimbursement to the Stalking Horse Purchaser; (iii) third, for amounts due pursuant to that certain settlement agreement with the United States Department of Justice as approved by this Court's *Order Granting Debtors' Motion for Order Approving Settlement Between the United States and Point Blank Solutions, Inc., Point Blank Body Armor, Inc., and Protective Apparel Corporation of America*; and (iv) fourth, to the DIP Lenders, pro rata in accordance with the amount of the Obligations (as such term is defined in the DIP Credit Agreement) owed to each DIP Lender, to reduce the outstanding amount of the Obligations due under the Loan Documents until indefeasibly paid in full in cash.  The "Retained Funds" shall mean the sum of: (w) $4.5 million less the amount, if any, by which the Purchase Price at the Closing Date has been reduced pursuant to Section 2.7.2 of the Agreement (the "Purchase Price Adjustment Reserve"), (x) funds (the "Post-Closing Expense Reserve") sufficient in the Debtors' reasonable judgment (subject to consultation with the DIP Lenders) to pay any accrued operating expenses set forth in the Approved Budget that were unpaid as of the Closing Date (the "Accrued Expenses"), (y) all proceeds of litigation (other than litigation relating to the Agreement) and (z) the sum of $1,000,000.

15.     The Purchase Price Adjustment Reserve shall be disbursed in the following priority:  (1) first, to the Purchaser, to cover such amounts, if any, that are payable to the Purchaser pursuant to Section 2.7 of the Agreement, and (2) second, to the DIP Lenders on

account of any remaining Obligations outstanding under the DIP Facility (or to the Debtors, if

such Obligations have been indefeasibly paid in full in cash), which payment shall be made not

later than two (2) business days after the final adjustment to the Purchase Price.    The

Post-Closing Expense Reserve and any proceeds of the Toyobo litigation, if not disbursed

pursuant to the Approved Budget, shall be disbursed:  (a) first, to the payment of the Accrued

Expenses and (b) second, to the extent of any remaining funds, to the DIP Lenders on the earlier

of the Commitment Termination Date (as defined in the DIP Order) and the date that is two (2)

weeks after the Closing Date on account of any remaining Obligations outstanding under the

DIP Facility.  For the avoidance of doubt, any Retained Funds remaining in the Debtors' estates

shall remain subject in all respects to the DIP Liens (as defined in the DIP Order), which shall be

subject to any applicable payment priorities set forth above, and no further action on the part of

the DIP Lenders shall be required for perfection as to such funds; provided, however, nothing in

this Order shall be deemed a finding or ruling as to the issues raised in the Equity Committee's

*Motion of the Official Committee of Equity Security Holders under FRCP 60(b) for Order*

*(a) Vacating Interim and Final DIP Financing Orders [Docket No. 912, 968] and (b) Granting*

*Related Relief* [Docket No. 1360], and all parties' rights in respect thereof are expressly

preserved.

16.    The provisions of this Order authorizing the sale of the Assets free and clear of

Liens, other than the Assumed Liabilities, shall be self-executing, and neither the Debtors nor the

Purchaser shall be required to execute or file releases, termination statements, assignments,

consents, or other instruments in order to effectuate, consummate and implement the provisions

of this Order.  However, the Debtors and the Purchaser, and each of their respective officers,

employees and agents are hereby authorized and empowered to take all actions and execute and

deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order.

17.    To the greatest extent available under applicable law and to the extent provided for under the Agreement, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets, and, the greatest extent available under applicable law and to the extent provided for under the Agreement, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date.

18.    All of the Debtors' interests in the Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Purchaser.

19.    Upon consummation of the transactions set forth in the Agreement, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens against or in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Liens that the person or entity has with respect to the Assets (unless otherwise assumed in the Agreement), or

otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Assets of any kind or nature.  For the avoidance of doubt, to the extent necessary, upon consummation of the transactions set forth in the Agreement, the Purchaser is authorized to file termination statements, lien terminations or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under Bankruptcy Code § 363 and the related provisions of the Bankruptcy Code.

20.     All entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Order.

21.     This Order is and shall be binding upon and govern the acts of all entities, persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of the Liens, including without limitation, federal, state and governmental agencies or departments, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing entities is

hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

22.     Except as expressly provided in or pursuant to the Agreement, the Purchaser is not assuming and is not deemed to assume, and the Purchaser shall not be, nor shall any affiliate of Purchaser be, in any way liable for or responsible for, as a successor or otherwise, for any liabilities, debts or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership, possession, control or use of the Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or to any or all of the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any of its affiliates.

23.     Notwithstanding anything to the contrary in this Order or the Agreement, to the extent any of the Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), and if such interest is purchased under the Agreement, the Purchaser shall remain subject to the claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as the Purchaser would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under Bankruptcy Code § 363, as provided for in Bankruptcy Code § 363(o).

*Assumed Contracts*

24.     Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of Assumed Contracts and the assignment of all such Assumed

Contracts to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to Bankruptcy Code §§ 363 and 365.

25.    The Assignment of Leases (as defined in the Agreement) is valid and binding, in full force and effect.

26.    The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to Bankruptcy Code §§ 363 and 365, subject only to the payment of all Cure Costs (as defined below) required to assume and assign the Assumed Contracts to the Purchaser, and, subject to the payment of the aforementioned Cure Costs, non-debtor parties to such Assumed Contracts are without basis to assert against the Purchaser, among other things, defaults, breaches, or claims of pecuniary losses existing as of the Closing or by reason of the Closing.  The Debtors are hereby authorized in accordance with Bankruptcy Code §§ 105(a), 363 and 365 to (a) assume and assign to the Purchaser, effective upon the Closing Date of the sale of the Assets (or as otherwise provided in the Agreement with respect to the Pompano Lease), the Assumed Contracts (or the Pompano Lease, if the Pompano Lease is assumed and assigned in accordance with the Agreement) free and clear of all Liens of any kind or nature whatsoever (unless otherwise assumed in the Agreement) and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser, including with respect to the Pompano Lease if the Pompano Lease is assumed and assigned to the Purchaser pursuant to the Agreement.

27.    Upon the Closing (or as otherwise provided in the Agreement with respect to the Pompano Lease), in accordance with Bankruptcy Code §§ 363 and 365, the Purchaser shall be

fully and irrevocably vested with all right, title and interest in and to each Assumed Contract. The Debtors are authorized to take all actions reasonably necessary to effectuate the foregoing.

28.    The provisions of the Agreement regarding or related to the Pompano Lease, including but not limited to Section 1.4 thereof, are approved and authorized.  The Debtors and the Purchaser are authorized to take all actions with respect to the Pompano Lease set forth in Section 1.4 of the Agreement or otherwise.

29.    The Purchaser shall have a license to use and possess the premises leased pursuant to the Pompano Lease.  Such license shall commence on the Closing Date and shall terminate on the earlier of (a) the date the Pompano Lease is rejected, (b) the date the Pompano Lease is assumed and assigned to the Purchaser and (c) the Pompano Decision Date.

30.    Pursuant to Bankruptcy Code §§ 365(b)(l)(A) and (B), and except as otherwise provided in this Order, the Purchaser, on behalf of the Debtors, shall promptly pay or cause to be paid to the parties to any Assumed Contracts the requisite cure amounts, if any, set forth in the Cure Notice served by the Debtors on each of the parties to the Assumed Contracts (the "Cure Costs"), with respect to the assumption and assignment thereof, other than those Cure Costs which are to be paid by the Debtors pursuant to the Agreement.  The Cure Costs are hereby fixed at the amounts set forth in the Cure Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, and all non-debtor parties to Assumed Contracts are forever bound by such Cure Costs and shall not take any action against the Purchaser or the Assets with respect to any claim for cure under any Assumed Contract.

31.    All defaults or other obligations under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall be deemed cured by payment of the Cure Costs

and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any additional amounts are due or other defaults exist.

32.     Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Cost, if any.   No sections or provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts shall have any force or effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any Assumed Contract pursuant to the terms of the Agreement in any respect constitutes a default under any Assumed Contract.  In the absence of objection, the non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.  Any party having the right to consent to the assumption or assignment of any Assumed Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by Bankruptcy Code § 365(c).

33.     The Purchaser has satisfied any and all requirements under Bankruptcy Code §§ 365(b)(1) and 365(f)(2) to provide adequate assurance of future performance under all Assumed Contracts.  The Purchaser shall not be required to provide any further evidence of any adequate assurance to any counterparty of an Assumed Contract.

34.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

35.     Non-debtor parties to Assumed Contracts shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to the Purchaser as a result of the assumption and assignment of any Assumed Contracts.

*Additional Provisions*

36.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

37.     To the maximum extent permitted by Bankruptcy Code § 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of the Debtors' chapter 11 cases or the consummation of the transaction contemplated by the Agreement.

38.     Within ten (10) Business Days after the Closing, the Debtors are authorized to and shall use commercially reasonable efforts to take all steps necessary to effect a change in their respective corporate names to remove the words "Point Blank" and "Protective Apparel" from such names.

39.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' obligations, debts (as defined in Bankruptcy Code § 101(12)), or liabilities (including, without limitation, the Excluded Liabilities and liabilities related to or arising under the False Claims Act) other than the Assumed Liabilities and as otherwise set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets. Consequently, except as expressly permitted or otherwise specifically provided by the Agreement or this Order, all persons and governmental units (as defined in Bankruptcy Code §§ 101(27) and 101(41)) all holders of Liens based upon, arising out of or related to liabilities retained by the Debtors shall not take any action against the Purchaser or the Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement.  All persons holding or asserting any Liens in the Excluded Assets shall not assert or prosecute such Liens or cause of action against the Purchaser or the Assets for any liability associated with the Excluded Assets.

40.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, be deemed to assume, or in any way be responsible for any liability (including, without limitation, any liabilities related to or arising under the False Claims Act), debt (as defined in Bankruptcy Code § 101(12)), or obligation of any of the Debtors and/or their estates including, without limitation, pursuant to any bulk sales law, successor liability, or other theory of liability or responsibility for any claim against the Debtors, against an insider of the Debtors, against the Assets, or similar liability except as otherwise expressly provided in the Agreement.  The Amended Motion contains sufficient notice of such limitations in accordance with Local Rule 6004-1.  Except to the extent the Purchaser expressly assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of

the Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates are using any of the Assets previously owned, used or operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor to, or be otherwise liable in any respect on account of the Debtors' business within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, regulatory, investigatory, safety, consumer protection, patent or intellectual property, business practices, environmental or other law, regulation, rule, guideline, or other doctrine (including, without limitation, filing requirements under any such laws, regulations, rules, guidelines, or other doctrines); (ii) under any products liability or product warranty law, regulation, rule, guideline, or other doctrine with respect to the Debtors' actual or potential liability under such law, regulation, rule, guideline, or doctrine; and (iii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Assets prior to Closing.

41.    Except to the extent expressly included in the Assumed Liabilities or to enforce the Agreement, pursuant to Bankruptcy Code §§ 105 and 363, all persons and entities, including, but not limited to, the Debtors, the Committees, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory or investigatory authorities of any sort (including, without limitation, environmental and product safety regulators or investigators), lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien or other claim of any kind or nature whatsoever against, in or with respect to any of the Debtors or all or any part of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, all or any part of the Assets, the operation of the Debtors' Business prior to the Closing Date or

the transfer of the Assets to the Purchaser, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien or other claim, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliate, successor or assign thereof, or against the Assets.

42.     Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

43.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

44.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

45.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

46.     This Order and the Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors and shareholders of any Debtor (whether known or

unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets.

47.     The provisions of this Order are non-severable and mutually dependent.

48.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or modify the provisions of the Agreement or the terms of this Order.

49.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Agreement: (a) shall constitute super-priority administrative expenses of the Debtors' estates under Bankruptcy Code §§ 503(b)(1), 507(a)(1) and 507(b) and (b) shall be paid by the Debtors in the time and manner provided for in the Agreement; provided, however, such obligations shall not have priority over the existing Professional Fee Carve Out in the case, the priority of which shall be unaffected hereby and shall remain in full force and effect.

50.     The Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code § 362 to enforce any of its remedies under the Agreement or any other sale-related document; provided, however, that none of the Purchaser's substantive rights under the Agreement and other sale-related documents are expanded or supplemented hereby. The automatic stay imposed by Bankruptcy Code § 362 is hereby modified to the extent necessary to implement the preceding sentence.

51.     Should the Purchaser fail to close on the sale pursuant to the Agreement, and without further order from this Court, the Debtors are authorized and empowered to sell the

Assets to the Back-Up Bidder and execute and deliver the agreements contemplated herein and to implement and consummate all of the transactions and perform all obligations contemplated by the Back-Up Bidder's Back-Up Bid at the Auction and this order as if the Back-Up Bidder were the Purchaser and the Back-Up Bidder shall be entitled to all of the findings and protections of this Order provided to the Purchaser.

52.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Amended Motion or notice thereof shall be deemed to provide sufficient notice of the Debtors' request for waiver of the otherwise applicable stay of the order. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. The Purchaser has acted in "good faith," and, in the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, then the Purchaser shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

53.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Assumed Contracts and all issues and disputes

arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens.

Dated: _Oct 28_, 2011

_____
The Honorable Peter J. Walsh
United States Bankruptcy Judge