## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SS Body Armor I, Inc., *et al.*,[1] | ) | Case No. 10-11255 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket Nos. 2735, 2785** |

Objection Deadline: **March 6, 2015 at 4:00 p.m. (prevailing Eastern time)**
Hearing Date: **April 1, 2015 at 11:00 a.m. (prevailing Eastern time)**

### DEBTORS' AMENDED MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT WITH CLASS PLAINTIFFS, PLAINTIFFS' COUNSEL AND DERIVATIVE COUNSEL

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this Court (the "Motion") for entry of an order, pursuant Fed. R. Bankr. P. 9019, approving a settlement agreement (the "Agreement") entered into by the following parties (the "Parties"): (a) Debtors SS Body Armor I, Inc. f/k/a Point Blank Solutions, Inc. ("Point Blank"), SS Body Armor II, Inc., SS Body Armor III, Inc. and PBSS, LLC; (b) the lead plaintiffs in the consolidated securities class action captioned *In re DHB Industries, Inc. Class Action Litigation*, Case No. 05-cv-04296 (E.D.N.Y.) (the "Class Action"), on behalf of themselves and, subject to the approval of the EDNY District Court as set forth in the Agreement, on behalf of all members of the class certified in the Class Action (the "Class Plaintiffs"); (c) Plaintiffs' counsel in the Class Action ("Plaintiffs' Counsel"); and (d) plaintiff's counsel in the consolidated derivative action ("Derivative Counsel") captioned *In re DHB Industries, Inc. Derivative Litigation*, Case

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  SS Body Armor I, Inc. (9361); SS Body Armor II, Inc. (4044); SS Body Armor III, Inc. (9051); and PBSS, LLC (8203).  All correspondence and pleadings for the Debtors must be sent to SS Body Armor I, Inc., *et al.*, c/o Pachulski Stang Ziehl & Jones LLP, 919 North Market St., 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

No. 05-cv-04345 (E.D.N.Y.) (the "Derivative Action"). A copy of the fully-executed Agreement is attached hereto as **Exhibit A**.[2] In support of this Motion, the Debtors state as follows:

## Preliminary Statement

1.      The Debtors, with the support of the Creditors' Committee, seek the Court's approval of a proposed settlement that will provide the Debtors with an immediate source of cash to fund a chapter 11 plan, in the form of a $20 million, interest-free, non-recourse loan from the Escrowed Funds, which funds are currently the subject of multiple litigation matters. The settlement also will substantially aid in the resolution of the Debtors' and the Class Plaintiffs' competing claims to approximately $180 million of funds restrained or forfeited in connection with the Criminal Action against David H. Brooks ("David Brooks"), the Debtors' former CEO. The EDNY District Court already has determined that Point Blank and the Class Plaintiffs were victims of David Brooks' criminal conduct, and are entitled to restitution. The Debtors have asserted a restitution claim in excess of $117 million, while the Class Plaintiffs have asserted a restitution claim of approximately $186 million. The proposed settlement provides for a 50/50 allocation of the ultimate awards, whether by restitution, forfeiture or otherwise, to the Debtors and the Class Plaintiffs, with the interest-free loan from the Escrowed Funds to be repaid from the Debtors' portion of the Shared Recovery Matters. By resolving the parties' competing claims to the restrained and forfeited assets, and establishing a framework for sharing the restitution/forfeiture awards, the settlement will allow the Debtors and Class Plaintiffs to pursue the recovery of the restrained/forfeited assets in a cooperative, non-adversarial fashion that will

---

[2] Capitalized terms not defined herein have the meanings ascribed to such terms in the Agreement.

-2-

maximize recoveries, and minimize costs, for the victims of David Brooks' criminal conduct, the Debtors and defrauded investors.

2.      The proposed settlement also will resolve a variety of complex litigation matters pending in this Court, the Delaware District Court and the EDNY District Court. The Agreement calls for the Debtors to release their claims to the Escrowed Funds, and for the Escrowed Funds to be distributed to the Class Plaintiffs as contemplated by the 2006 stipulation (the "EDNY Stipulation") to settle the Class and Derivative Actions. The Escrowed Funds and Point Blank's subsequent rejection of the EDNY Stipulation are the subject of (a) the Turnover Adversary Proceeding in this Court, with two motions to dismiss filed by the Class Plaintiffs and David Brooks, (b) two appeals from the Rejection Order filed in the Delaware District Court by the Class Plaintiffs and David Brooks, and (c) three "rejection damages" claims filed against Point Blank by David Brooks and Point Blank's former CFO, Dawn Schlegel ("Schlegel"). Moreover, with the status of the EDNY Stipulation still the subject of litigation, the proceedings underlying the EDNY Stipulation (*i.e.*, the Class and Derivative Actions) remain in the EDNY District Court. Once the Agreement is approved and all other conditions are satisfied, the Escrowed Funds will be released to the Class Plaintiffs in accordance with the EDNY Stipulation, the Turnover Adversary Proceeding will be dismissed, the Class Plaintiffs' appeal from the Rejection Order will be dismissed, and the Class and Derivative Actions against (among other parties) David Brooks, other members of the Brooks family, certain Brooks-related entities, and Point Blank's other former officers and directors will be dismissed with prejudice.

3.      With the resolution of the Class and Derivative Actions, and the litigation matters pending in this Court and the Delaware District Court, the only matters that would thereafter

need to be resolved would be the restitution and forfeiture proceedings in the EDNY District

Court, any future proceedings involving any of the restrained assets and the competing claims to

the cash and other assets currently under restraint in connection with the Criminal Action and

Civil Forfeiture Proceeding against David Brooks. As stated above, however, the Agreement

contemplates a 50/50 division of any and all restitution and forfeiture awards to the Debtors and

the Class Plaintiffs, and thus provides a framework under which the Debtors and the Class

Plaintiffs, the victims of David Brooks' criminal conduct for which he stands convicted, can pool

their efforts to maximize the recoveries for their respective constituencies. To date, those

recoveries have been tied up in litigation in multiple courts for over eight years, without the

victims having received a single penny. By resolving the litigation matters pending among the

Parties, the settlement will allow the Parties to avoid the attendant expense, delay, inconvenience

and uncertainty of such litigation, and to focus their collective efforts and resources on the

Shared Recovery Matters.

4.      Finally, the settlement is eminently fair to the other parties to the EDNY

Stipulation. In particular, the settlement will give David Brooks and the other defendants in the

Class and Derivative Actions the "benefit of the bargain" they expected to receive under the

EDNY Stipulation: as contemplated in the EDNY Stipulation, the Escrowed Funds will be

released to the Class Plaintiffs and, in exchange, the Class and Derivative Actions will be

dismissed with prejudice. Moreover, because the settlement will achieve the intended effect of the

EDNY Stipulation (*i.e.*, use of the Escrowed Funds to resolve the Class and Derivative Actions),

the settlement will either resolve or moot David Brooks' appeal from the Rejection Order and the

"rejection damages" claims asserted by David Brooks and Dawn Schlegel, all of which focus

primarily upon ownership of the Escrowed Funds in the event that the Escrowed Funds are **not**

distributed to the Class Plaintiffs in accordance with the EDNY Stipulation.

5.     Thus, the settlement is reasonable, fair to all interested parties, and in the best

interests of the Debtors' estates and their stakeholders, including the Class Plaintiffs.  While the

Parties would have preferred a global settlement, such as that reached several years ago and since

abandoned by David Brooks, it has become apparent that only David Brooks' victims are

interested in a resolution that will ease the way towards a meaningful recovery.  Accordingly, the

Debtors respectfully request that the Court grant the Motion and approve the Agreement.

### Jurisdiction and Venue

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.     Venue is proper in this district purusant to 28 U.S.C. §§ 1408 and 1409.

8.     The statutory predicate for the relief requested herein is Fed. R. Bankr. P. 9019.

### Background

**I.     The Class and Derivative Actions**

9.     On and after September 9, 2005, multiple class actions were filed in the EDNY

District Court against Point Blank (then known as DHB Industries, Inc.) and certain of its

officers and directors, including David Brooks.  The actions were filed on behalf of purchasers of

Point Blank's publicly traded securities.  The complaints alleged, among other things, that Point

Blank's public disclosures were false or misleading in violation of the Securities Exchange Act

of 1934.  The class actions were consolidated into the Class Action.

10.     On and after September 14, 2005, multiple derivative actions also were filed in the

EDNY District Court on behalf of Point Blank against certain of Point Blank's officers and

directors, including David Brooks.  The complaints alleged, among other things, causes of action

for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and

unjust enrichment.  The derivative actions were consolidated into the Derivative Action.

11.     On November 30, 2006, the parties to the Class and Derivative Actions entered

into the EDNY Stipulation.[3]  Under the EDNY Stipulation, the parties agreed to the following

resolution of the Class and Derivative Actions: (a) the Class Action would be settled for

$34,900,000 in cash, plus 3,184,713 shares of Point Blank common stock; and (b) the Derivative

Action would be settled through Point Blank's adoption of certain corporate governance policies

and its payment of attorneys' fees and expenses of Derivative Counsel.  EDNY Stipulation ¶¶

2.1, 2.4, 2.12.  The cash portion of the settlement (*i.e.*, the Escrowed Funds), in the total amount

of $35,200,000, was deposited with Plaintiffs' Counsel, as the escrow agent designated under a

related Escrow Agreement.  EDNY Stipulation ¶ 2.1.

12.     The EDNY Stipulation was expressly conditioned upon final court approval of the

settlement of both the Class and Derivative Actions, including the resolution of any appeals.

EDNY Stipulation ¶¶ 7.1, 7.2.  The EDNY Stipulation was approved by the EDNY District

Court pursuant to judgments entered in the Class and Derivative Actions on July 8, 2008.  D.

---

[3] A copy of the EDNY Stipulation is attached hereto as **Exhibit B**.  The parties to the EDNY Stipulation
were: (a) Point Blank; (b) the lead plaintiffs in the Class Action; (c) the derivative plaintiff in the Derivative
Action; (d) Point Blank's former officers and directors – David Brooks, Sandra Hatfield, Dawn M.
Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman and Larry R. Ellis; and (e) Jeffrey
Brooks (David Brooks' brother), Terry Brooks (David Brooks' ex-wife), David Brooks International, Inc.,
Andrew Brooks Industries Inc., Elizabeth Brooks Industries Inc. and Tactical Armor Products, Inc.

David Cohen, an alleged party in interest, timely filed an appeal with the Second Circuit from the judgment entered in the Derivative Action. On September 30, 2010, the Second Circuit issued a decision (the "Second Circuit Opinion") vacating and remanding the judgment in the Derivative Action on the grounds that certain indemnification and release provisions of the EDNY Stipulation violated section 304 of the Sarbanes-Oxley Act of 2002. David Brooks and Dawn Schlegel have since waived their rights under those provisions.[4]

13.    As discussed in further detail below, the EDNY District Court has not taken any further action with respect to EDNY Stipulation following the issuance of the Second Circuit Opinion because, among other reasons, Point Blank rejected the EDNY Stipulation and certain related agreements. Accordingly, the Escrowed Funds remain in the possession of Plaintiffs' Counsel and Derivative Counsel, as follows: (a) approximately $27,200,000 of the Escrowed Funds, plus accrued interest, is held in the escrow account maintained by Plaintiffs' Counsel as escrow agent; and (b) approximately $9,925,000 of the Escrowed Funds was provisionally distributed from the escrow account as attorneys' fees and expenses to Plaintiffs' Counsel and Derivative Counsel pursuant to the EDNY Stipulation. EDNY Stipulation ¶ 6.4. The approximate current value of the Escrowed Funds, including the amounts provisionally paid as attorneys' fees, is $37,000,000.

---

[4] Attached hereto as **Exhibit C** is a copy of a status report filed by David Brooks in the EDNY District Court setting forth his waiver regarding the indemnification and release provisions. Attached hereto as **Exhibit D** is a letter filed by Dawn Schlegel in the EDNY District Court setting forth her waiver regarding the indemnification and release provisions.

-7-

## II.    The Chapter 11 Cases

14.    On April 14, 2010 (the "Petition Date"), the Debtors commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

15.    On April 26, 2010, the Office of the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") in the Debtors' chapter 11 cases.  On July 27, 2010, the Office of the U.S. Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee").

16.    On September 17, 2010 (*i.e.*, prior to the issuance of the Second Circuit Opinion), Point Blank moved to reject the EDNY Stipulation and related agreements [D.I. 589].  On December 22, 2010, the Court entered the Rejection Order [D.I. 949] approving Point Blank's rejection of the EDNY Stipulation and related agreements as of the Petition Date.  The Class Plaintiffs and David Brooks filed notices of appeal from the Rejection Order.  Both appeals currently are stayed through March 4, 2015.

17.    On November 16, 2010, Point Blank commenced the Turnover Adversary Proceeding in this Court under the caption *Point Blank Soultions Inc. v. Robbins Geller Rudman & Dowd LLP, et al.*, Adv. No. 10-55361 (PJW).  In the Turnover Adversary Proceeding, Point Blank sought turnover of the Escrowed Funds from Plaintiffs' Counsel and Derivative Counsel.  Point Blank also sought a declaratory judgment that the Escrowed Funds are property of the bankruptcy estate, and that any adverse claims thereto are not interests in property but are, at

most, unsecured claims for rejection damages.  Point Blank asserted its claim for declaratory

relief against Plaintiffs' Counsel, Derivative Counsel, David Brooks, Sandra Hatfield, Dawn

Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman and Larry R. Ellis.

18.     On February 10, 2011, Brooks filed a motion to dismiss the Turnover Adversary

Proceeding [Bankr. Adv. D.I. 22-23].  Between February 17, 2011 and March 11, 2011,

Plaintiffs' Counsel and Derivative Counsel filed a motion to dismiss the Turnover Adversary

Proceeding [Bankr. Adv. D.I. 36-37], a motion for a determination that the Turnover Adversary

Proceeding is not a core proceeding [Bankr. Adv. D.I. 38-39] (the "Core Motion"), a motion to

stay the Turnover Adversary Proceeding [Bankr. Adv. D.I. 40] (the "Stay Motion") and a motion

to withdraw the reference of the Turnover Adversary Proceeding [Bankr. Adv. D.I. 58, 60].  The

Delaware District Court has stayed the motion to withdraw the reference through March 4, 2015,

and Point Blank has filed a motion in this Court [D.I. 2711] seeking a corresponding stay of the

motions to dismiss the Turnover Adversary Proceeding.

19.     On May 20, 2011, the Court entered an order in the Turnover Adversary

Proceeding denying the Core Motion [Bankr. Adv. D.I. 92] (the "Core Order"), and entered a

letter ruling denying the Stay Motion [Bankr. Adv. D.I. 93].  On June 3, 2011, Plaintiffs' Counsel

and Derivative Counsel filed a notice of appeal from the Core Order [Bankr. Adv. D.I. 97] and

also filed a motion requesting leave to appeal the Core Order [Bankr. Adv. D.I. 99-100].  The

appeal from the Core Order currently is stayed through March 4, 2015.

20.     The Class Plaintiffs have filed claims, individually and on behalf of the class,

against Point Blank based on the same purported violations of federal securities laws alleged in

the Class Action.  *See* Claim Nos. 458, 460, 461, 482, 484 and 485.

21.     David Brooks has filed two "rejection damages" claims in Point Blank's bankruptcy case. *See* Claim Nos. 428 and 541. Claim No. 428 asserts a prepetition claim for $22,325,000, plus interest, as "moneys due Brooks in the event civil settlement is not approved by court." Similarly, Claim No. 541 asserts a prepetition claim for $19,325,000, plus interest, as "rejection damages" based upon the Rejection Order.

22.     Finally, Point Blank's former Chief Financial Officer, Dawn Schlegel, filed a $13,725,000 (plus contingent damages) claim against the Debtors for "rejection damages" based upon the Rejection Order. *See* Claim No. 542. The addendum to Claim No. 542 contends that Schlegel is entitled to recover, among other things, a portion of the Escrowed Funds and an unspecified additional amount for Schlegel's "exposure to … claims … as a result of the rejection" of the EDNY Stipulation.

### III.    The Criminal Proceedings Against David Brooks, Sandra Hatfield and Dawn Schlegel

#### A.    David Brooks' Conviction and Guilty Pleas, and the Related Restitution and Forfeiture Proceedings

23.     In October 2007, David Brooks was indicted in the Eastern District of New York on multiple charges based on, among other things, the same misconduct alleged in the Class and Derivative Actions. On September 14, 2010, a jury convicted him of conspiracy to commit securities fraud (Count 1), securities fraud (Count 2), conspiracy to commit mail and wire fraud (Count 3), mail fraud (Count 4), wire fraud (Count 5), insider trading (Counts 6, 7, 8, 9, 10 and 11), conspiracy to obstruct justice (Count 15), obstruction of justice (Count 16) and material misstatements to auditors (Count 17). He also pled guilty to tax counts of conspiracy to defraud the United States (Count 18) and false filing of tax returns (Counts 19 and 20).

-10-

24.    Upon the filing of the indictment against David Brooks, the Government restrained

a significant amount of cash and non-cash assets that were the proceeds of his criminal conduct,

which included accounts at several financial institutions.  At the time of restraint, the value of

those seized accounts was $158,815,308.50.  *See United States v. Schlegel, et al.*, Case No. 06-cr-

00550 (JS) (E.D.N.Y.) at D.I. 1343.  In addition to those amounts, David Brooks forfeited

approximately $19 million in bail funds when he violated his bail conditions prior to trial.

25.    In November 2010 and December 2011, the EDNY District Court conducted

extensive non-jury forfeiture proceedings in the Criminal Action in order to determine the amount

of traceable assets that David Brooks obtained as a result of his criminal offenses.  Ultimately, the

EDNY District Court issued a preliminary order of forfeiture granting forfeiture of the assets that

David Brooks obtained through his unauthorized compensation scheme (valued at $5,564,681) and

$59,602,931 as a result of David Brooks' insider trading.  The EDNY District Court has continued

to restrain all of the seized assets pending restitution to David Brooks' victims.

26.    The Debtors submitted a letter to the Government on March 3, 2011 detailing Point

Blank's losses at that time of over $97 million resulting from David Brooks' criminal conduct, and

reserving rights to the seized assets as a victim.[5]  In April 2011, Point Blank submitted a claim for

the unauthorized compensation assets in the related Civil Forfeiture Proceeding, captioned *United

States v. All Assets Listed on Schedule 1*, Case No. 10-cv-4750 (JS) (E.D.N.Y.).[6]  The Civil

---

[5]  Pursuant to various statutes, the Attorney General of the United States may return forfeited property to victims as remission and/or restoration.  *See* http://www.justice.gov/ criminal/afmls/pubs/pdf/victms-faqs.pdf.

[6]  Point Blank submitted a claim in forfeiture limited to the unauthorized compensation scheme because forfeiture requires a showing of rightful ownership to particular property that can be specifically traced. *See United States v. Hatfield*, 795 F.Supp.2d 219, 245 (E.D.N.Y. 2011) ("Forfeiture also requires the Government to trace the proceeds of Defendants' crimes to specific assets.").

-11-

Forfeiture Proceeding, which was filed by the Government, concerns the very same assets that were seized in the Criminal Action.  In June 2011, Point Blank also submitted an affidavit of loss in the Criminal Action detailing its losses of over $97 million as of that date.  In September 2012, Point Blank filed a third-party claim in the forfeiture proceedings in the Criminal Action asserting its claim to the unauthorized compensation assets.  Just prior to David Brooks' sentencing, Point Blank submitted a letter to the EDNY District Court detailing its restitution claim, which amounted to over $117 million at that time, for the losses and costs expended by Point Blank as a result of David Brooks' criminal conduct.[7]  Point Blank's claim in restitution includes the following amounts of losses Point Blank suffered and expenses Point Blank incurred as a result of David Brooks' criminal conduct:

- <u>$8.644 Million in Unauthorized Compensation.</u>  This is the amount that David Brooks looted from Point Blank for his and his family's benefit.

- <u>$21.5 Million of Point Blank Funds Siphoned to TAP as TAP "Profits".</u>  This is the amount that David Brooks stole from Point Blank by siphoning Point Blank funds to Tactical Armor Products, Inc. ("<u>TAP</u>"), a Brooks family entity, in the form of TAP "profits" for his and his family's benefit.

- <u>$2.5 Million in IRS Taxes, Penalties and Interest.</u>  This is the amount Point Blank was forced to pay for the employee portion of the withholding tax and associated penalties and interest.  This amount was a direct result of David Brooks' tax scheme in which he conspired to issue bonus payments to Point Blank employees, not report such payments, and not pay any taxes on those payments.  David Brooks pled guilty to these tax charges.

- <u>$13.666 Million in Legal Fees Point Blank Advanced to Brooks, Schlegel, Hatfield and Its Directors.</u>  These are the legal fees Point Blank advanced to David Brooks and other officers and directors of Point Blank for legal fees.

- <u>$14.429 Million in Point Blank Legal Fees.</u>  Point Blank incurred these legal fees and expenses in responding to the criminal investigation and prosecution, the SEC investigation, and the Class and Derivative Actions.

---

[7]  Point Blank's letter to the E.D.N.Y. District Court, dated July 24, 2013, was not publicly filed.

- **$16.77 Million in Point Blank Remediation and Restatement Costs.** This includes the amount Point Blank spent on its auditors, other accountants and other personnel. Due to David Brooks' and his coconspirators' criminal conduct that included perpetrating sophisticated accounting frauds, Point Blank expended funds to engage auditors, forensic accountants and other professionals to restate its prior materially misstated financial statements. In addition to filing a restatement, Point Blank's records and ledgers required a complete rebuilding and required re-audits of prior year results.

- **$39.906 Million in Bankruptcy Expenses.** At David Brooks' sentencing hearing, Judge Seybert found that David Brooks' criminal conduct threatened Point Blank's solvency. Ultimately, David Brooks' criminal conduct in fact caused Point Blank's bankruptcy and thus all the costs stemming from the bankruptcy are recoverable as restitution.

27.    In addition to Point Blank's claim to restitution and in connection with their most recent letter to the EDNY District Court, Plaintiffs' Counsel, on behalf of the shareholder victims of David Brooks' insider trading and other criminal conduct (including the Class Plaintiffs) reiterated their claim in restitution of $186,362,631. *See United States v. Schlegel, et al.*, Case No. 06-cr-00550 (JS) (E.D.N.Y.) at D.I. 1835. On November 8, 2013, Plaintiffs' Counsel, at the EDNY District Court's direction, filed a letter brief requesting that the EDNY District Court recognize $186,362,631 as the appropriate amount of restitution owed to investor victims of David Brooks' crimes based upon the actual loss sustained by each victimized investor. *Id.* at D.I. 1750. In support of that request, Plaintiffs' Counsel also submitted the expert affidavit of Frank Torchio, president of Forensic Economics, Inc., which challenged the damage calculation and plan of allocation of both the Department of Justice and David Brooks.

28.    In August 2013, the EDNY District Court sentenced David Brooks to 17 years imprisonment for his criminal conduct. At sentencing, the EDNY District Court found that Point Blank and its shareholders (including the Class Plaintiffs) were victims of David Brooks' criminal conduct, and were entitled to restitution. The EDNY District Court, however, deferred a

-13-

determination of the amount of restitution until a later date.  The Government and David Brooks

filed briefs addressing the amount of restitution in late 2013.  *See United States v. Schlegel, et al.*,

Case No. 06-cr-00550 (JS) (E.D.N.Y.) at D.I. 1762, 1781.  The Government advocated and

supported the full amount of Point Blank's restitution claim of $117 million.  At a hearing on

November 5, 2014, the EDNY District Court stated that it intends to issue a restitution order in the

very near future.  On December 18, 2014, the EDNY District Court reserved judgment on the

amount of restitution due to any of Brooks' victims, and instructed the Government to file a

revised submission regarding the amount of shareholder losses.

###   B.    Sandra Hatfield's Conviction and Dawn Schlegel's Guilty Pleas

29.    Sandra Hatfield (Point Blank's former Chief Operating Officer) and Dawn Schlegel

(Point Blank's former Chief Financial Officer) also were indicted in the Eastern District of New

York based on, among other things, the same misconduct alleged in the Class and Derivative

Actions.  Hatfield was convicted on September 14, 2010 of:  conspiracy to commit securities

fraud; securities fraud; conspiracy to commit mail and wire fraud; three counts of insider trading;

conspiracy to obstruct justice; and obstruction of justice.  On May 9, 2014, Hatfield was sentenced

to seven years in federal prison.

30.    On or about October 23, 2007, Schlegel pled guilty to securities fraud conspiracy

and tax fraud conspiracy.  On November 5, 2014, the EDNY District Court sentenced Schlegel to

three years supervised release.

### IV.    The Global Settlement Negotiations

31.    In or around June 2011, the Parties entered into global settlement negotiations with

David Brooks, Jeffrey Brooks (David Brooks' brother) and various other members of the Brooks

family in an effort to resolve, among other things, the Turnover Adversary Proceeding, the appeals

pending in the Delaware District Court, the Class and Derivative Actions, and the parties'

competing claims to the Restrained Assets and Bail Funds. On December 22, 2011, the Parties

executed a global settlement term sheet with David Brooks, Jeffrey Brooks and the other members

of the Brooks family.

32.    The Parties then commenced the process of seeking approval of the global

settlement from the Government and the EDNY District Court. After the Parties had invested

years of time and effort, and substantial expense, into obtaining the necessary approvals of the

global settlement, which included participation in mediation ordered by the EDNY District Court,

David Brooks and his family members abandoned the global settlement in late 2013.

### The Term Sheet and Agreement

33.    After David Brooks and his family members abandoned the global settlement, the

Parties continued to engage in settlement negotiations amongst themselves, and executed the Term

Sheet on November 25, 2014. On the same date, the Debtors filed their *Motion Pursuant to Fed.*

*R. Bankr. P. 9019 for Order Approving Settlement with Class Plaintiffs, Plaintiffs' Counsel and*

*Derivative Counsel* [D.I. 2735], in which the Debtors sought the Court's approval of the proposed

settlement as summarized in the Term Sheet. On December 8, 2014, the Debtors filed a notice of

continuance [D.I. 2785] of the hearing on that motion pending execution of the Agreement.

34.    The Parties executed the Agreement on February 6, 2015. The Creditors'

Committee was involved in the negotiation and drafting of the Agreement, supports the Agreement,

and will be a co-proponent of the Chapter 11 Plan to be proposed pursuant to the Agreement.

DOCS_LA:285389.2 70934-001

35.    The principal terms of the proposed settlement, as embodied in the Agreement, are as follows:[8]

(a) $20,000,000 of the Escrowed Funds will be loaned to the Debtors' estates to fund a Chapter 11 Plan. The loan will be interest-free and non-recourse as to the Debtors' estates, except that the loan will be secured by, and payable solely from, 50% of the Recoveries/Proceeds realized by the Debtors from the Shared Recovery Matters. The Plaintiffs' Loan will be funded upon this Court's approval of the Agreement, the EDNY District Court's approval of the Agreement in the Class and Derivative Actions, and confirmation of the Debtors' Chapter 11 Plan. Agreement ¶¶ 1(a)-(c), 2(b)-(d).

(b) Except as set forth in the Agreement in connection with the Plaintiffs' Loan, the Debtors will release their claims to the Escrowed Funds, which have an approximate current value of $37,000,000. Agreement ¶ 5(c)(ii). The Escrowed Funds will be distributed to the Class Plaintiffs in accordance with the EDNY Stipulation, the award of attorneys' fees and expenses in the Class Action, and the Plan of Allocation approved in the Class Action. Agreement ¶ 2(a). The Class Plaintiffs also will be entitled to an additional distribution from Point Blank's bankruptcy estate equivalent to the value of the 3,184,713 shares of Point Blank common stock which were to be delivered to the Class Plaintiffs pursuant to the EDNY Stipulation (*i.e.*, the Plaintiffs' Stock Share). Agreement ¶ 4.

---

[8] While the description of the principal terms of the settlement set forth herein is intended to be accurate, if there is any discrepancy between this description and the Agreement, the Agreement shall control.

(c) The Parties will take all appropriate actions, consistent with their respective fiduciary duties, to maximize their rights, claims and recoveries in connection with the following Shared Recovery Matters:

- All claims of the Parties against David Brooks, his family members (including his brother, Jeffrey Brooks, and his ex-wife, Terry Brooks), and entities in which the Brooks family has direct or indirect interests (Agreement ¶ 3(d)(i));

- All claims of the Parties to the Restrained Assets and the Bail Funds (Agreement ¶¶ 3(d)(ii)-(iv)); and

- All other claims of the Parties in the Civil Forfeiture Proceeding and the Criminal Action (Agreement ¶ 3(d)(v)).

(d) The Parties will use their best efforts, consistent with their respective fiduciary duties, to effectuate a 50/50 division of all Recoveries/Proceeds realized by any of the Parties such that 50% of the Recoveries/Proceeds is realized by the Debtors' bankruptcy estates and 50% of the Recoveries/Proceeds is realized by the Class Plaintiffs.  Agreement ¶ 3(a).  The term "Recoveries/Proceeds" means the recoveries or proceeds realized by any of the Parties arising out of the Shared Recovery Matters, the Escrowed Funds and the Plaintiffs' Stock Share. Agreement ¶ 3(c).

(e) The equalization of the Recoveries/Proceeds will take into account the distribution of the Escrowed Funds, the Plaintiffs' Stock Share, the Restrained Assets and the Bail Funds, and the Class Plaintiffs will forgive the Plaintiffs'

Loan to the extent necessary to equalize the Debtors' Share and the Plaintiffs'

Share.  Agreement ¶ 3(b)(i)-(ii) and Exhibit 1.

(f) The Plaintiffs' Share will be distributed to the Class Plaintiffs in accordance

with the EDNY Stipulation and Plan of Allocation as supplemented by the

inclusion of any additional investor victims identified in the Criminal Action,

provided that the Escrowed Funds and Plaintiffs' Stock Share will be

distributed exclusively to the Class Plaintiffs.  Agreement ¶ 3(f).  The amount

of the Plaintiffs' Share remaining, if any, after distribution to the Class

Plaintiffs and any other investor victims identified in the Criminal Action in

full satisfaction of the claims allowed by the EDNY District Court, and the

payment of associated costs and expenses, will revert to the Debtors.  *Id.*

(g) The Parties will enter into stipulations to dismiss with prejudice the Turnover

Adversary Proceeding, the Class Plaintiffs' appeal from the Rejection Order, the

Class Action and the Derivative Action.  Agreement ¶ 6(a).

(h) The Parties will exchange mutual releases, and the Class Plaintiffs will withdraw

with prejudice the proofs of claim filed in the Debtors' chapter 11 cases.

Agreement ¶¶ 5(a)(i), 5(b)(i), 5(c)(i), 6(c).

(i) The Parties will support, and use their best efforts to obtain confirmation of, a

Chapter 11 Plan, consistent in all material respects with the Agreement, to be

jointly proposed in the Debtors' bankruptcy cases by the Debtors and the

Creditors' Committee, upon consultation with Plaintiffs' Counsel and the Equity

Committee.  Agreement ¶ 7.  Upon confirmation of the Debtors' Chapter 11

Plan, the Class Plaintiffs' bankruptcy counsel and Plaintiffs' Counsel will have

-18-

an allowed $1,500,000 administrative claim in the Debtors' chapter 11 cases. Agreement ¶ 8.

(j) The Effective Date of the Agreement is contingent upon this Court's approval of the Agreement, the EDNY District Court's approval of the Agreement in the Class and Derivative Actions, and confirmation of the Debtors' Chapter 11 Plan. Agreement ¶ 1(a)-(c). In the event of an appeal from the orders approving the Agreement, or the order confirming the Chapter 11 Plan, the Debtors will maintain an escrow account, funded by any source other than the Plaintiffs' Loan, to replenish the Escrowed Funds in the event that the approval orders or confirmation order are reversed on appeal. Agreement ¶ 2(e)(i), (iii). The balance of the escrow account must meet or exceed the outstanding balance of the Plaintiffs' Loan. Agreement ¶ 2(e)(ii). The funds deposited in the escrow account will be released to the Debtors upon the approval orders and confirmation order becoming final and non-appealable, or the Plaintiffs' Loan being repaid in full, whichever is earlier. Agreement ¶ 2(e)(iv).

36.    Thus, the proposed settlement will provide the Debtors with an immediate source of cash to fund a Chapter 11 Plan, will allow the Debtors and Class Plaintiffs to cooperatively maximize their restitution/forfeiture recoveries as the victims of David Brooks' criminal conduct without further litigation between them, will resolve the litigation matters pending among the Parties – including the Parties' competing claims to the Escrowed Funds and the claims asserted against Point Blank in the Class Action – and, finally, will provide David Brooks and the other defendants in the Class and Derivative Actions with the "benefit of the bargain" they expected to receive in connection with the EDNY Stipulation. For each of these reasons, the Debtors believe

the Agreement is reasonable, fair and in the best interests of the Debtors' estates, and therefore should be approved.

## Relief Requested

37.     By this Motion, the Debtors seek the entry of an order, pursuant to Fed. R. Bankr. P. 9019(a), approving the Agreement and authorizing the Parties to take all actions necessary to effectuate and implement the Agreement without the need for further order by this Court.

## Basis for Relief Requested

38.     Fed. R. Bankr. P. 9019(a) provides that on "motion…and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). The approval of a settlement "is within the discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interest of the estate." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005).

39.     The Third Circuit has established four factors to guide the bankruptcy court's evaluation of a proposed settlement:  (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F.3d at 393. When applying these factors, a bankruptcy court does not need to conduct a "mini-trial" on the merits, and should not substitute its judgment for that of the trustee or debtor in possession. *Key3Media Grp., Inc.*, 336 B.R. at 93; *In re Neshaminy Office Bldg.*

*Associates*, 62 B.R. 798, 803 (E.D. Pa. 1986). Instead, the bankruptcy court should "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Key3Media Grp., Inc.*, 336 B.R. at 93. As discussed in further detail below, the Agreement entered into between the Debtors, the Class Plaintiffs, Plaintiffs' Counsel and Derivative Counsel is fair, reasonable and in the best interests of the Debtors' estates, and should be approved.

40.    With respect to the "paramount interests" of the Debtors' creditors, the proposed settlement – which is supported by the Creditors' Committee – will provide the Debtors with a clear exit strategy for their chapter 11 cases. In particular, the $20 million, interest-free, non-recourse loan from the Escrowed Funds will be used to fund a chapter 11 plan to be jointly proposed by the Debtors and the Creditors' Committee. Thus, the proposed settlement offers a means of distributing funds to the Debtors' stakeholders without the delay, expense and uncertainty involved in attempting to obtain litigation recoveries.

41.    In addition, by creating a framework for the resolution of the Parties' competing claims to the approximately $180 million of funds restrained or forfeited in connection with David Brooks' criminal conduct – with the Debtors having asserted a restitution claim in excess of $117 million and the Class Plaintiffs having asserted a restitution claim in excess of $186 million – and providing for the Parties' use of their respective best efforts, consistent with their fiduciary duties, to effectuate a 50/50 allocation of their collective recoveries, the proposed settlement will provide the Debtors with another potential source of funds for distribution to their stakeholders. Moreover, the Agreement contemplates a cooperative effort between the Debtors and the Class Plaintiffs, *i.e.*, the victims of David Brooks' criminal conduct, that will maximize their shared recoveries, minimize the cost of the recovery process, and eliminate the delay and uncertainty that would

-21-

otherwise be created if the Debtors and Class Plaintiffs remained embroiled in litigation and other disputes with each other.

42.    The proposed settlement also will resolve the claims asserted in the Class Action against Point Blank, and the claims filed by the Class Plaintiffs in Point Blank's bankruptcy case. The litigation that would be involved in adjudicating those claims would be complex, lengthy, and expensive. While the Debtors believe they have meritorious defenses to the claims, there is no guaranty that the Debtors would prevail on those defenses. If approved, the Agreement will fully resolve the claims asserted against Point Blank in the Class Action, and avoid the risks, delay, expense and inconvenience that necessarily would accompany litigation of the Class Action claims against Point Blank.

43.    In exchange for the interest-free, non-recourse $20 million loan to be used to fund the Debtors' chapter 11 plan, a 50% share of the Parties' collective recoveries and a release from the Class Action claims, the Agreement contemplates that the Debtors will release their claims to the Escrowed Funds and dismiss the Derivative Action with prejudice, and thereby give each of the parties to the Class and Derivative Actions the "benefit of their bargain" under the EDNY Stipulation. The Debtors' claims to the Escrowed Funds via the Turnover Adversary Proceeding and Point Blank's related rejection of the EDNY Stipulation have been vehemently opposed by the Class Plaintiffs, Plaintiffs' Counsel, Derivative Counsel, David Brooks and Point Blank's other former officers and directors. The Debtors also anticipate that David Brooks, Point Blank's other former officers and directors and the other defendants in the Derivative Action will vigorously contest the claims asserted in the Derivative Action. While the Debtors believe they ultimately would prevail if these matters were litigated to judgment, the consensual resolution of

-22-

these matters, in exchange for the benefits the Debtors, their bankruptcy estates and their

stakeholders will receive under the Agreement, undoubtedly satisfies the *Martin* factors, for each

of the following reasons: (a) the litigation matters are extremely complex, running the gamut

from the breach of fiduciary duty and other corporate governance claims asserted in the

Derivative Action to the "executory contract" and "property of the estate" claims at issue in

connection with the Turnover Adversary Proceeding and Rejection Order; (b) continued pursuit

of the litigation matters would be inconvenient and expensive, given that the litigation matters

are pending in three courts – this Court, the Delaware District Court and the EDNY District

Court – and include two motions to dismiss in the Turnover Adversary Proceeding, a motion to

withdraw the reference, an appeal from the Core Order and two appeals from the Rejection Order

in the Delaware District Court, and the Derivative Action in the EDNY District Court that has

been dormant for at least eight years; and (c) the Agreement contemplates a concerted effort by

the Debtors and Class Plaintiffs to recover assets currently within the control of the Government,

while collection on any judgment in the Derivative Action against David Brooks and other

defendants would require the Debtors to expend additional resources to, among other things,

identify additional assets, if any, not already restrained by the Government.

44.     Finally, the Agreement, which also will be presented to the EDNY District Court

for approval in the Class and Derivative Actions, will provide David Brooks and the other

defendants in the Class and Derivative Actions with the benefits they expected to receive under the

EDNY Stipulation. In particular, in exchange for the release of the Escrowed Funds to the Class

Plaintiffs pursuant to the EDNY Stipulation in accordance with the Agreement, the Class and

Derivative Actions will be dismissed with prejudice.  Furthermore, as an added benefit to the

Debtors and their estates, the proposed settlement will either resolve or moot David Brooks' appeal from the Rejection Order and the "rejection damages" claims asserted by David Brooks and Dawn Schlegel. The proposed settlement provides for the distribution of the Escrowed Funds to the Class Plaintiffs, while David Brooks' appeal from the Rejection Order and the "rejection damages" claims focus primarily upon ownership of the Escrowed Funds in the event that the Escrowed Funds are **not** distributed to the Class Plaintiffs pursuant to the EDNY Stipulation.

45.    Thus, the proposed settlement offers a "win-win" for all interested parties. The Debtors will receive an immediate cash infusion to fund a chapter 11 plan, along with a 50% allocation of the Recoveries/Proceeds (after repayment of the Plaintiffs Loan), and will avoid the expense and uncertainty involved in litigating the Rejection Order, Turnover Adversary Proceeding, the Derivative Action and the Class Action claims asserted against Point Blank. The Class Plaintiffs and other investor victims will receive their 50% allocation of the Recoveries/Proceeds, as well as the distribution of the Escrowed Funds contemplated under the EDNY Stipulation. Finally, David Brooks, Point Blank's other former officers and directors and the other defendants in the Class and Derivative Actions will receive the "benefit of their bargain" under the EDNY Stipulation, without impacting any of their rights in connection with the Criminal Action and Civil Forfeiture Proceeding. Therefore, the Debtors respectfully submit that the Agreement is fair, reasonable and in the best interests of the Debtors' estates, satisfies each of the *Martin* factors, and should be approved.

46.    In sum, the benefits of the Agreement to the victims of David Brooks' crimes are, it is submitted, clear. However, as one final note, the Debtors would be remiss if they did not point out that the proposed settlement also presents an opportunity for David Brooks and other

-24-

parties to get on board for a global resolution of the claims and positions that are not specifically resolved by the Agreement. While experience indicates that such a global resolution may be wishful thinking, the Parties certainly have not closed the door on that desired result.

### Notice

47.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Class Plaintiffs, Plaintiffs' Counsel and Derivative Counsel; (b) each of the defendants in the Turnover Adversary Proceeding; (c) each of the defendants in the Class and Derivative Actions; (d) the Office of the United States Trustee; (e) the Official Committee of Unsecured Creditors; (f) the Official Committee of Equity Security Holders; and (g) parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

### No Prior Request

48.     No prior request for the particular relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases except that, as set forth above, this Motion amends the Debtors' previously-filed motion to approve the Term Sheet.

[remainder of page intentionally blank]

DOCS_LA:285389.2 70934-001

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached hereto, (a) granting the Motion, (b) approving the Agreement, (c) authorizing the Parties to take all actions necessary to effectuate and implement the terms of the Agreement without the need for further order by this Court, and (d) granting such other and further relief as the Court deems just and proper.

Dated: February 6, 2015

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*

Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
James E. O'Neill (Bar No. 4042)
Elissa A. Wagner (CA Bar No. 213589)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
       akornfeld@pszjlaw.com
       joneill@pszjlaw.com
       ewagner@pszjlaw.com

Counsel for Debtors and Debtors in Possession