# Exhibit A

EXECUTION VERSION

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into by and among the following parties (referred to collectively as the "Parties" and each individually as a "Party"): (a) SS Body Armor I, Inc. ("SSBA I"), formerly known as Point Blank Solutions, Inc., on behalf of itself and its affiliated debtors and debtors in possession SS Body Armor II, Inc., SS Body Armor III, Inc. and PBSS, LLC (collectively, the "Debtors") in the chapter 11 proceeding pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") captioned *In re SS Body Armor I, Inc., et al.*, Case No. 10-11255 (CSS) (the "Bankruptcy Proceeding"); (b) the lead plaintiffs[1] in the consolidated securities class action ("Lead Plaintiffs") captioned *In re DHB Industries, Inc. Class Action Litigation*, Case No. 05-cv-04296 (E.D.N.Y.) (the "Class Action"), on behalf of themselves and all members of the class previously certified in the Class Action (collectively, the "Plaintiffs"); (c) Plaintiffs' counsel ("Plaintiffs' Counsel") in the Class Action, namely Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP; and (d) plaintiff's counsel in the consolidated derivative action captioned *In re DHB Industries, Inc. Derivative Litigation*, Case No. 05-cv-04345 (E.D.N.Y.) (the "Derivative Action"), namely the Law Offices of Thomas G. Amon and Robbins Arroyo LLP ("Derivative Counsel").

## RECITALS

WHEREAS, on and after September 9, 2005, multiple class actions were filed in the United States District Court for the Eastern District of New York (the "District Court") against SSBA I (then known as DHB Industries, Inc.), David H. Brooks ("David Brooks"), Terry Brooks, Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman, David Brooks International Inc., Andrew Brooks Industries Inc. and Elizabeth Brooks Industries, Inc.; and

WHEREAS, the class actions were consolidated into the Class Action; and

WHEREAS, on and after September 14, 2005, multiple derivative actions were filed in the District Court on behalf of SSBA I against David Brooks, Jeffrey R. Brooks ("Jeffrey Brooks"), Terry Brooks, Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman, Larry R. Ellis, David Brooks International Inc., Andrew Brooks Industries Inc., Elizabeth Brooks Industries, Inc. and Tactical Armor Products, Inc. ("TAP"); and

WHEREAS, the derivative actions were consolidated into the Derivative Action; and

WHEREAS, on November 30, 2006, the parties to the Class and Derivative Actions entered into a *Stipulation and Agreement of Settlement* (the "EDNY Stipulation"), pursuant to which the parties agreed, among other things, that (a) the Class Action would be settled for $34,900,000 in cash, plus 3,184,713 shares of SSBA I common stock, and (b) the Derivative Action would be settled for SSBA I's adoption of certain corporate governance policies and the payment of $300,000 for attorneys' fees and expenses to Derivative Counsel; and

---

[1] For purposes of this Agreement, Robino Stortini Holdings LLC will not be deemed a lead plaintiff since it has been cancelled of record as a Delaware LLC. Its status as a lead plaintiff will also be withdrawn in the District Court.

WHEREAS, pursuant to the EDNY Stipulation, the cash portion of the settlement, in the total amount of $35,200,000, was deposited in an escrow account maintained by Robbins Geller Rudman & Dowd LLP, then known as Lerach Coughlin Stoia Geller Rudman & Robbins LLP, as the escrow agent designated under a related Escrow Agreement; and

WHEREAS, the approximate current value of the cash held in the escrow account established pursuant to the EDNY Stipulation (the "Escrowed Funds"), including amounts provisionally paid as attorneys' fees, is $37,000,000; and

WHEREAS, on April 14, 2010 (the "Petition Date"), the Debtors commenced the Bankruptcy Proceeding by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on April 26, 2010, the Office of the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") in the Bankruptcy Proceeding; and

WHEREAS, on July 27, 2010, the Office of the U.S. Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") in the Bankruptcy Proceeding; and

WHEREAS, on September 17, 2010, SSBA I moved to reject the EDNY Stipulation and certain related agreements [D.I. 589]; and

WHEREAS, on December 22, 2010, the Bankruptcy Court entered an order [D.I. 949] in the Bankruptcy Proceeding (the "Rejection Order") approving SSBA I's rejection of the EDNY Stipulation and related agreements as of the Petition Date; and

WHEREAS, the Plaintiffs and David Brooks filed notices of appeal from the Rejection Order; and

WHEREAS, on November 16, 2010, SSBA I commenced an adversary proceeding in the Bankruptcy Court, captioned *Point Blank Solutions Inc. v. Robbins Geller Rudman & Dowd LLP, et al.*, Adv. No. 10-55361 (CSS) (the "Turnover Adversary Proceeding") against Plaintiffs' Counsel and Derivative Counsel, among other parties; and

WHEREAS, in the Turnover Adversary Proceeding, Plaintiffs' Counsel and Derivative Counsel have filed, among other things, a motion for a determination that the Turnover Adversary Proceeding is not a core proceeding [Bankr. Adv. D.I. 38-39] ("Core Motion") and a motion to withdraw the reference of the Turnover Adversary Proceeding [Bankr. Adv. D.I. 58, 60] ("Withdrawal Motion"); and

WHEREAS, on May 20, 2011, the Bankruptcy Court entered an order in the Turnover Adversary Proceeding denying the Core Motion [Bankr. Adv. D.I. 92] ("Core Order"); and

**EXECUTION VERSION**

WHEREAS, on June 3, 2011, Plaintiffs' Counsel and Derivative Counsel filed a notice of appeal from the Core Order [Bankr. Adv. D.I. 97] and also filed a motion requesting leave to appeal the Core Order [Bankr. Adv. D.I. 99-100]; and

WHEREAS, the Lead Plaintiffs, individually and on behalf of the class certified in the Class Action (the "Class"), have filed Claim Nos. 458, 460, 461, 482, 484 and 485 against SSBA I in the Bankruptcy Proceeding; and

WHEREAS, in a criminal action filed against David Brooks, Sandra Hatfield and Dawn M. Schlegel in the District Court, captioned *United States v. Schlegel, et al.*, Case No. 06-cr-00550 (JS) (E.D.N.Y.) (the "Criminal Action"), David Brooks has pled guilty to or been convicted by a jury of multiple counts including, among other things, securities fraud, wire fraud, insider trading and tax counts of conspiracy to defraud the United States; and

WHEREAS, upon the filing of the indictment against David Brooks in the Criminal Action in October 2007, and in connection with a related civil forfeiture proceeding in the District Court, captioned *U.S. v. All Assets Listed on Schedule I Attached Hereto and All Proceeds Traceable Thereto*, Case No. 10-cv-04750 (E.D.N.Y.) (the "Civil Forfeiture Proceeding"), the United States Government (the "Government") has restrained various cash and non-cash assets that were the proceeds of David Brooks' criminal conduct; and

WHEREAS, the cash, cash equivalents and securities held in certain accounts restrained by the Government in connection with the Civil Forfeiture Proceeding and/or the Criminal Action are identified as Asset Nos. 86-103 (collectively, "Restrained Cash Assets") on Schedule I to the complaint in the Civil Forfeiture Proceeding ("Schedule I"); and

WHEREAS, the non-cash assets restrained by the Government in connection with the Civil Forfeiture Proceeding and/or the Criminal Action are identified as Asset Nos. 1-85 and 104-113 on Schedule I ("Restrained Non-Cash Assets" and, with Restrained Cash Assets, "Restrained Assets"); and

WHEREAS, in addition to the Restrained Assets, David Brooks forfeited approximately $19 million in bail funds (the "Bail Funds") when he violated his bail conditions prior to trial in the Criminal Action; and

WHEREAS, the Debtors have submitted, among other things, a claim for restitution of more than $117 million in the Criminal Action; and

WHEREAS, the Plaintiffs, on behalf of the investors victimized by David Brooks' criminal conduct, have submitted, among other things, a claim for restitution of more than $186 million in the Criminal Action; and

WHEREAS, on or about November 25, 2014, the Parties executed a *Settlement Term Sheet* (the "Term Sheet") that reflects an agreement in principle among the Parties to resolve all pending litigation and claims that have been or may be asserted between and/or among the Parties, and to provide a means for the Parties to focus on a joint effort to maximize and accelerate a distribution to the Debtors and the Plaintiffs as victims of the fraud perpetrated by David Brooks.

EXECUTION VERSION

## AGREEMENT

NOW, THEREFORE, after good faith, arm's length negotiations without collusion, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

1.    <u>Effective Date</u>.  Except as set forth in sections 3(e) and 7 of this Agreement, the effective date of this Agreement for the specific purposes set forth herein (the "<u>Effective Date</u>") shall occur upon satisfaction of each of the following conditions (the "<u>Court Approvals</u>"):

(a) Entry of an order by the Bankruptcy Court in the Bankruptcy Proceeding approving the Agreement.

(b) Entry of an order(s) by the District Court in the Class Action and the Derivative Action approving the Agreement.

(c) Entry of an order by the Bankruptcy Court in the Bankruptcy Proceeding confirming the Chapter 11 Plan (defined below).

2.    <u>Distribution of Escrowed Funds – Plaintiffs' Loan</u>.

(a) Except as set forth in section 2(b) of this Agreement, as soon as reasonably practicable after the occurrence of the Effective Date, the Escrowed Funds will be distributed in accordance with section 5 of the EDNY Stipulation, section 6.5 of the EDNY Stipulation, the *Order Awarding Attorneys' Fees and Expenses* entered as D.E. 354 in the Class Action, and the plan of allocation approved by the District Court in the Class Action on July 21, 2008 (the "<u>Plan of Allocation</u>"), net of any unpaid costs of administration and noticing.

(b) On the Effective Date, the Plaintiffs will loan $20,000,000.00 from the Escrowed Funds to the Debtors (the "<u>Plaintiffs' Loan</u>") to fund the Chapter 11 Plan.  The Plaintiffs' Loan will be disbursed to the Debtors on the Effective Date by wire transfer pursuant to the wire instructions set forth in section 22 of this Agreement.  The Plaintiffs' Loan will be non-recourse as to the Debtors' bankruptcy estates, except that the Plaintiffs' Loan will be secured by, and repayable solely from, fifty percent (50%) of each dollar of any Recoveries/Proceeds (defined below) realized by the Debtors from any of the Shared Recovery Matters (defined below) (the "<u>Debtors' Recovery</u>"), up to $40,000,000.00, whether the Debtors' Recovery is obtained pursuant to this Agreement or otherwise.  Any repayments on the Plaintiffs' Loan will be made to the Plaintiffs by wire transfer pursuant to the wire instructions set forth in section 22 of this Agreement.

(c) The Plaintiffs will not have any claims against the Debtors, the Debtors' bankruptcy estates, the Debtors' Recovery or the Debtors' Share (defined below) on account of the Plaintiffs' Loan, except as set forth in section 2(b), 2(d) and 2(e) of this Agreement.

(d) The Plaintiffs' Loan will not incur interest, or any other fees or charges, and will have no maturity date except that, upon receipt by the Debtors of any portion of the Debtors' Recovery up to $40,000,000.00, fifty percent (50%) of each dollar of the Debtors' Recovery paid to the Debtors will become immediately due and payable to the Plaintiffs in repayment of the Plaintiffs' Loan.

(e) In the event that an appeal(s) is filed from any of the Court Approvals, and the Plaintiffs' Loan is funded prior to the issuance of a stay pending any such appeal(s):

  (i) The Debtors, or any post-confirmation fiduciary of the Debtors' bankruptcy estates appointed pursuant to the Chapter 11 Plan, shall create and maintain an escrow account (the "Post-Confirmation Escrow"). The funds in the Post-Confirmation Escrow shall be earmarked to replenish the Escrowed Funds in the event that any of the Court Approvals are reversed on appeal and the Plaintiffs' Loan is required to be returned to the Escrowed Funds. The Parties understand and agree that, as set forth in section 2(e)(iii) of this Agreement, the Plaintiffs' Loan will not be deposited in the Post-Confirmation Escrow.

  (ii) The balance of the Post-Confirmation Escrow must at all times meet or exceed the outstanding balance of the Plaintiffs' Loan.

  (iii) The Post-Confirmation Escrow shall be funded by any and all cash from any source, other than the Plaintiffs' Loan, received by the Debtors or any post-confirmation entity created pursuant to the Chapter 11 Plan.

  (iv) Upon each of the Court Approvals becoming final and non-appealable, or the Plaintiffs' Loan being repaid in full to the Plaintiffs, whichever is earlier, the Post-Confirmation Escrow shall be released to the Debtors, and shall be distributed in accordance with the Chapter 11 Plan.

3.    Shared Recovery Matters.

(a) The Parties will utilize their reasonable best efforts, consistent with their respective fiduciary duties, to effectuate a division (the "50/50 Division") of any and all Recoveries/Proceeds realized by any of the Parties such that the ultimate value of fifty percent (50%) of the Recoveries/Proceeds is realized by the Debtors' bankruptcy estates (the "Debtors' Share") and fifty percent (50%) of the Recoveries/Proceeds is realized by the Plaintiffs (the "Plaintiffs' Share") for the benefit of the investor victims identified in the Class Action and the Criminal Action, as set forth in section 3(f) of this Agreement.

(b) Subject to section 3(a) above, the Parties will employ the following mechanisms, in the following order, as necessary to equalize the Debtors' Share and the Plaintiffs' Share:

(i) The 50/50 Division of the Recoveries/Proceeds between the Debtors' bankruptcy estates and the Plaintiffs will take into account the distribution of the Escrowed Funds, the Plaintiffs' Stock Share, the Restrained Assets, and the Bail Funds; and

(ii) The Plaintiffs will forgive the Plaintiffs' Loan to the extent necessary to equalize the Debtors' Share and the Plaintiffs' Share.[2]

(c) As used herein, the term "Recoveries/Proceeds" means the recoveries or proceeds realized by any of the Parties arising out of the Shared Recovery Matters, the Escrowed Funds and the Plaintiffs' Stock Share.

(d) The matters covered by the sharing arrangement described in this section 3 of the Agreement (the "Shared Recovery Matters") consist of:

(i) Any and all rights or claims of the Parties against (A) David Brooks; (B) TAP; (C) any entities other than the Debtors or the Brooks Family Entities (defined below) in which David Brooks has a direct or indirect interest (collectively and with TAP, the "David Brooks Entities") that filed claims to assets restrained in the Civil Forfeiture Proceeding and/or filed claims in the Bankruptcy Proceeding, including without limitation David Brooks International Inc.; (D) Terry Brooks, Victoria Brooks, Andrew Brooks and Elizabeth Brooks (the "Brooks Family"); (E) any entities other than the Debtors in which the Brooks Family has a direct or indirect interest (collectively, the "Brooks Family Entities") that filed claims to assets restrained in the Civil Forfeiture Proceeding and/or filed claims in the Bankruptcy Proceeding, including without limitation any such entities of which Jeffrey Brooks is a trustee or manager; (F) Jeffrey Brooks; (G) the Jeffrey R. Brooks Individual Retirement Account (the "Brooks IRA"); and (H) any entities other than the Debtors or the Brooks Family Entities in which Jeffrey Brooks and/or the Brooks IRA have a direct or indirect interest or of which Jeffrey R. Brooks is a trustee or manager (collectively, the "Jeffrey Brooks Entities") that filed claims to assets restrained in the Civil Forfeiture Proceeding and/or filed claims in the Bankruptcy Proceeding; provided that the Class Action and the Derivative Action will be dismissed with prejudice as set forth in section 6(a) of this Agreement;

(ii) Any and all rights or claims of the Parties to the Restrained Cash Assets;

---

[2] The equalization of the Debtor's Share and the Plaintiffs' Share under various hypothetical recovery scenarios is depicted, solely for purposes of providing examples of the 50/50 Division, at **Exhibit 1** to this Agreement. For the avoidance of doubt, Exhibit 1 is intended to be for illustrative purposes only, and the terms of this Agreement shall govern the calculation of the 50/50 Division in all respects.

(iii) Any and all rights or claims of the Parties to the Restrained Non-Cash Assets;

(iv) Any and all rights or claims of the Parties to the Bail Funds; and

(v) Any and all other rights or claims of the Parties in the Civil Forfeiture Proceeding and/or the Criminal Action.

(e) To the extent that any Restrained Assets or Bail Funds are released by the Government and/or by virtue of any decisions or orders in the Criminal Action or Civil Forfeiture Proceeding to any of the Parties prior to the Effective Date, any such Restrained Assets or Bail Funds will be held in an escrow or trust account until the occurrence of the Effective Date. However, it is expressly understood that any payments to any of the Plaintiffs individually by virtue of any decision or order of the District Court in the Criminal Action shall not be subject to this section 3(e) of the Agreement, but shall be taken into account for purposes of sections 3(a)-(d) and 3(f) of this Agreement. All Escrowed Funds held in escrow as of the date of execution of this Agreement will remain in escrow until the occurrence of the Effective Date.

(f) The Plaintiffs' Share will be distributed to the Plaintiffs in accordance with the EDNY Stipulation and the Plan of Allocation, as supplemented by the inclusion of any additional investor victims identified by the Government in connection with the claims process completed by the Government in the Criminal Action (the "Additional Investor Victims"), provided that the Escrowed Funds, net of expenses and attorneys' fees paid to Plaintiffs' Counsel and Derivative Counsel, and the Plaintiffs' Stock Share (defined below) will be distributed exclusively to members of the class certified in the Class Action. To the extent necessary, the balance of the Plaintiffs' Share, other than the Escrowed Funds and the Plaintiffs' Stock Share, will be distributed among the Plaintiffs and the Additional Investor Victims in accordance with a distribution and allocation procedure to be established by the District Court in the Criminal Action with the advice and consent of the Office of the United States Attorney for the Eastern District of New York (the "Criminal Action Allocation Procedure"). To the extent any Plaintiff asserts a claim pursuant to the Criminal Action Allocation Procedure, the gross distribution to such Plaintiff, including without limitation the value of the Plaintiffs' Stock Share, calculated prior to the payment of attorneys' fees and expenses as previously awarded by the District Court in connection with the EDNY Stipulation (the "Class Action Distribution") shall serve to reduce the claim asserted by such Plaintiff against the balance of the Plaintiffs' Share unless such claim already takes the Class Action Distribution into account. The amount of the Plaintiffs' Share remaining, if any, after distribution of one hundred percent (100%) of the loss with respect to all claims allowed by the procedures referenced in this section 3(f) of the Agreement, and the payment of all costs and expenses incurred in connection with such procedures, will revert to the Debtors' bankruptcy estates and be distributed in accordance with the Chapter 11 Plan.

(g) The Parties will take any and all reasonable and appropriate actions, consistent with their respective fiduciary duties, to effectuate the terms of this Agreement in order to maximize their respective rights, claims and recoveries in connection with the Shared Recovery Matters and to cooperate and otherwise support each other regarding such efforts. All litigation on behalf of the Debtors and their bankruptcy estates with respect to the Shared Recovery Matters will be prosecuted by counsel for the Debtors. Counsel for the Debtors, Plaintiffs' Counsel and bankruptcy counsel to the Plaintiffs, consistent with their respective fiduciary duties, will cooperate with each other to maximize the Parties' respective rights, claims and recoveries as to the Shared Recovery Matters.

(h) Nothing in this Agreement shall affect or limit the Debtors' rights to prosecute: (i) the adversary proceeding in the Bankruptcy Court captioned *Point Blank Solutions Inc. v. Jeffrey R. Brooks Individual Retirement Account, et al.*, Adv. No. 11-51759 (the "Injunction Adversary Proceeding"); (ii) the action filed by the Brooks IRA in the Supreme Court of the State of New York captioned *Jeffrey R. Brooks Individual Retirement Account v. James R. Henderson*, Index No. 650781/2011 (the "State Court Action"); or (iii) any objections to any and all claims or equity security interests filed by, scheduled or listed for, or otherwise asserted by David Brooks, the David Brooks Entities, the Brooks Family, the Brooks Family Entities, Jeffrey Brooks, the Brooks IRA, the Jeffrey Brooks Entities, Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman, Larry R. Ellis and/or their current or former attorneys in the Bankruptcy Proceeding, whether as creditors, equity security holders or otherwise (collectively, the "Claim Objections").

4.    Plaintiffs' Stock Share. Upon the occurrence of the Effective Date, the Plaintiffs will be entitled to an additional distribution from SSBA I's bankruptcy estate equivalent to the value of 3,184,713 shares of SSBA I common stock that were to be delivered to the Plaintiffs pursuant to section 2.4 of the EDNY Stipulation (the "Plaintiffs' Stock Share"). The Plaintiffs' Stock Share shall be payable to the Plaintiffs at the same time as and on a pro rata basis with any payment made to the holders of SSBA I's common stock pursuant to the Chapter 11 Plan. The Plaintiffs' Stock Share shall be paid to the Plaintiffs by wire transfer pursuant to the wire instructions set forth in section 22 of this Agreement, to be distributed as set forth in section 3(f) of this Agreement.

5.    Releases.

(a) Effective as of the date on which each of the Court Approvals becomes final and non-appealable, the Plaintiffs, except as to the Shared Recovery Matters and as otherwise set forth in this Agreement:

(i) Unconditionally and irrevocably release, waive and discharge any and all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, liabilities, and causes of action, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, that the Plaintiffs have, may have or are entitled to assert against the Debtors, their

bankruptcy estates, and/or their current or former officers, directors, members, employees, agents, attorneys, consultants, insurers, representatives, predecessors, successors, parents and subsidiaries, provided that nothing herein shall be deemed to release any claims that the Plaintiffs have, may have or are entitled to assert as equity security holders in the Bankruptcy Proceeding, and nothing herein shall be deemed to release any claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, liabilities, and causes of action that the Plaintiffs have, may have or are entitled to assert against David Brooks, the David Brooks Entities, the Brooks Family, the Brooks Family Entities, Jeffrey Brooks, the Brooks IRA, the Jeffrey Brooks Entities, Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman, Larry R. Ellis and/or their current or former officers, directors, members, employees, agents, attorneys, consultants, insurers, representatives, predecessors, successors, parents and subsidiaries to the extent such release would in any way preclude or impact the Plaintiffs' receipt of any portion of the Shared Recovery Matters. For the avoidance of doubt, only claims asserted by the Plaintiffs in the Class Action or claims that could have been asserted by the Plaintiffs in the Class Action are being released under this paragraph 5(a)(i).

(b) Effective as of the date on which each of the Court Approvals becomes final and non-appealable, Plaintiffs' Counsel and Derivative Counsel, except as to the Shared Recovery Matters and as otherwise set forth in this Agreement:

(i) Unconditionally and irrevocably release, waive and discharge any and all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, liabilities, and causes of action, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, that Plaintiffs' Counsel and/or Derivative Counsel have, may have or are entitled to assert against the Debtors, their bankruptcy estates, and/or their current or former officers, directors, members, employees, agents, attorneys, consultants, insurers, representatives, predecessors, successors, parents and subsidiaries, provided that nothing herein shall be deemed to release any claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, liabilities, and causes of action that Plaintiffs' Counsel and/or Derivative Counsel have, may have or are entitled to assert against David Brooks, the David Brooks Entities, the Brooks Family, the Brooks Family Entities, Jeffrey Brooks, the Brooks IRA, the Jeffrey Brooks Entities, Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman, Larry R. Ellis and/or their current or former officers, directors, members, employees, agents, attorneys, consultants, insurers, representatives, predecessors, successors, parents and subsidiaries to the extent such release would in any way

preclude or impact Plaintiffs' Counsel's and/or Derivative Counsel's receipt of any portion of the Shared Recovery Matters.

(c) Effective as of the date on which each of the Court Approvals becomes final and non-appealable, the Debtors, except as to the Shared Recovery Matters and as otherwise set forth in this Agreement:

    (i) Unconditionally and irrevocably release, waive and discharge any and all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, liabilities, and causes of action, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, that the Debtors or their bankruptcy estates have, may have or are entitled to assert against the Plaintiffs, Plaintiffs' Counsel, Derivative Counsel and/or their current or former officers, directors, members, employees, agents, attorneys, consultants, insurers, representatives, predecessors, successors, parents and subsidiaries, provided that nothing herein shall release any claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, liabilities, and causes of action that the Debtors or their bankruptcy estates have, may have or are entitled to assert against David Brooks, the David Brooks Entities, the Brooks Family, the Brooks Family Entities, Jeffrey Brooks, the Brooks IRA, the Jeffrey Brooks Entities, Sandra Hatfield, Dawn M. Schlegel, Cary Chasin, Jerome Krantz, Gary Nadelman, Barry Berkman, Larry R. Ellis and/or their current or former officers, directors, members, employees, agents, attorneys, consultants, insurers, representatives, predecessors, successors, parents and subsidiaries to the extent such release would in any way preclude or impact the Debtors' receipt of any portion of the Shared Recovery Matters; and

    (ii) Unconditionally and irrevocably release, waive and discharge any and all claims, rights and interests that the Debtors or their bankruptcy estates have or may have in the Escrowed Funds.

(d) Nothing in this Agreement shall release, affect or limit: (i) the Parties' claims, rights, interests and arguments in connection with the Shared Recovery Matters, the Restrained Assets, the Bail Funds, the Civil Forfeiture Proceeding and/or the Criminal Action, all of which claims, rights, interests and arguments are expressly preserved; (ii) the Debtors' claims, rights, interests and arguments in connection with the Injunction Adversary Proceeding or the State Court Action, all of which claims, rights, interests and arguments are expressly preserved; or (iii) the Debtors' claims, rights, interests and arguments in connection with any Claim Objections, all of which claims, rights, interests and arguments are expressly preserved.

6.    <u>Dismissal of Pending Litigation and Withdrawal of Claims</u>.  Upon each of the Court Approvals becoming final and non-appealable:

    (a) The Parties will enter into any appropriate stipulations to dismiss with prejudice: (i) the Plaintiffs' appeal of the Rejection Order; (ii) the Turnover Adversary Proceeding; (iii) any pending motions filed by the Parties in connection with the Turnover Adversary Proceeding; (iv) the Class Action; and (v) the Derivative Action.

    (b) The Parties will, as necessary to effectuate the terms of this Agreement, take any and all reasonable and appropriate actions to obtain the reversal of the Rejection Order as it relates to the EDNY Stipulation, the dismissal of any other appeal(s) of the Rejection Order, or the affirmation of the Rejection Order on appeal.

    (c) The Lead Plaintiffs will withdraw with prejudice the proofs of claim they filed individually and on behalf of the Class in the Bankruptcy Proceeding based upon the allegations in the Class Action, including without limitation Claim Nos. 458, 460, 461, 482, 484 and 485 filed against SSBA I in the Bankruptcy Proceeding.

7.    <u>Chapter 11 Plan</u>.  The Parties will support, and use their best efforts to obtain confirmation of, a chapter 11 plan of reorganization or liquidation to be jointly proposed by the Debtors and the Creditors Committee in the Bankruptcy Proceeding, upon consultation with Plaintiffs' Counsel and the Equity Committee, that is consistent with the requirements of the Bankruptcy Code to the extent applicable and the terms of this Agreement (the "Chapter 11 Plan"). The Debtors and the Creditors Committee will provide Plaintiffs' Counsel and the Equity Committee with a reasonable opportunity to review and comment on the Chapter 11 Plan prior to filing the Chapter 11 Plan in the Bankruptcy Proceeding, provided that the ultimate decision on whether to incorporate any comments received from Plaintiffs' Counsel and/or the Equity Committee shall be made by the Debtors and the Creditors Committee so long as such decision is consistent with the terms of this Agreement. The effective date of the Chapter 11 Plan will not be contingent upon the finality of the Bankruptcy Court's order confirming the Chapter 11 Plan. The Chapter 11 Plan will incorporate reasonable and appropriate provisions necessary to implement this Agreement and the distributions to be made in accordance herewith. The Chapter 11 Plan will not release any claims that constitute or pertain to the Shared Recovery Matters.

8.    <u>Allowed Administrative Claim</u>.  Lowenstein Sandler LLP, as bankruptcy counsel to the Plaintiffs, and Plaintiffs' Counsel will have an allowed administrative claim in the Bankruptcy Proceeding in the amount of $1,500,000.00 as of the confirmation of the Chapter 11 Plan. The fees and expenses of Derivative Counsel in the Derivative Action, to the extent previously paid, will be retained by Derivative Counsel.

9.    <u>Cancellation of Agreement</u>.  In the event that the Effective Date does not occur, or any of the Court Approvals are reversed, modified or vacated on appeal or reconsideration, this Agreement will be null and void, and each of the Parties will revert to their respective positions that existed on the date immediately prior to execution of the Term Sheet, unless the Parties otherwise agree in writing.

10.    Release of Unknown Claims.  The Parties, and each of them, understand and acknowledge that there are laws that may invalidate releases of claims that are unknown to the releasing party.  The Parties, and each of them, expressly acknowledge and agree that the releases set forth in section 5 of this Agreement will waive and relinquish any and all rights that they have or might have (except those that are expressly reserved in section 5(d) of the Agreement) against the Parties they release pursuant to this Agreement, or any of them, under such laws, including but not limited to any and all rights afforded under California Civil Code § 1542 or any other similar federal or state statute or case law.  California Civil Code § 1542 reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OF OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED  HIS OR HER SETTLEMENT WITH THE DEBTOR.

In connection with such waiver and relinquishment, the Parties, and each of them, acknowledge that they are aware that they may later discover facts in addition to or different from those that they currently know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to fully, finally and forever release all of the matters and claims identified in the releases contained in this Agreement, which now exist, may exist, or previously existed between them and any of the Parties they release pursuant to this Agreement, whether known or unknown, suspected or unsuspected.  In furtherance of such intention, the releases contained in this Agreement shall be and remain in effect as full and complete releases, notwithstanding the discovery or existence of such additional or different facts by any of the Parties or by any person acting on their respective behalves.

11.    Representations by All Parties.  Each Party hereby represents and warrants, subject to the Court Approvals, that: (a) such Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed and delivered by such Party and constitutes the legal, valid, and binding obligations of such Party, enforceable against it in accordance with their respective terms; (d) such Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Party; and (e) such Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, has not relied upon any representations by any other Party or any other Party's attorneys, managers, agents, employees or representatives other than those that are set forth in this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are set forth in this Agreement.

12.    No Assignment.  Each of the Lead Plaintiffs, the Debtors, Plaintiffs' Counsel and Derivative Counsel warrants and represents that it has not assigned or transferred any released matter or any right to any consideration provided pursuant to this Agreement.  Lead Plaintiffs, the

Debtors, Plaintiffs' Counsel and Derivative Counsel each agree to defend, indemnify and hold the others harmless from any and all claims based on or arising out of any such assignment or transfer made or claimed.

13.    <u>Attorneys' Fees, Costs and Expenses</u>.  Each of the Parties agrees to bear its own costs and expenses, including attorneys' fees, arising out of the matters raised in the litigation, claims and appeals covered by this Agreement, or arising out of the drafting, filing or presentation of this Agreement and/or any documents or agreements to be executed, provided or filed pursuant to this Agreement; provided, however, that nothing herein shall preclude Plaintiffs' Counsel from seeking fees and/or expenses in the District Court on a common fund, common benefit, or substantial benefit theory based on additional recoveries or benefits obtained for the Plaintiffs in the Class Action and/or for investor victims generally, which fees and expenses shall be payable solely from the Plaintiffs' Share.

14.    <u>Voluntary Agreement</u>.  Each Party acknowledges that it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

15.    <u>Joint Drafting</u>.  This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Agreement, no provision shall be construed and interpreted for or against any Party because such provision or any other provision of the Agreement was purportedly prepared or requested by such Party.

16.    <u>Applicable Law</u>.  The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of New York.

17.    <u>No Waiver of Breach</u>.  A waiver of the breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same term or condition, or any other term or condition.

18.    <u>Non-Assignability</u>.  This Agreement shall not be assignable or transferable by the Parties except pursuant to the Chapter 11 Plan.

19.    <u>Binding Effect</u>.  This Agreement shall be binding on and shall inure to the benefit of each of the Parties and their respective agents, employees, attorneys, affiliates, successors and assigns.

20.    <u>No Admissions</u>.  This Agreement, including the releases and other terms provided for herein, is made, executed, given and accepted as part of a compromise and settlement of disputed claims.  No provision(s) of this Agreement, nor any acceptance of the benefits thereof by or on behalf of any of the Parties, shall be construed or deemed to be evidence of an admission of any fact, matter, thing or liability of any kind to any other Party.  Each of the Parties deny any liability of any kind to any other Party for any purpose, and this Agreement is made solely and entirely as a compromise and for the purpose of fully and finally resolving the disputed matters referenced herein.  Neither this Agreement nor any term(s) thereof shall be offered or received as evidence in any proceeding in any forum as an admission of any liability or wrongdoing on the part of any of the Parties; provided that nothing herein shall limit or affect the use or admissibility of this

Agreement or any term(s) thereof in any proceeding regarding the validity, interpretation or performance of this Agreement.

21.     <u>Notices</u>.     All notices, consents, waivers and other communications under this Agreement must be in writing and shall be delivered by email, with a copy by U.S. Mail, to the appropriate addresses set forth below, or to such other addresses as a Party may designate by notice to the other Parties in accordance with this paragraph:

> **If to the Debtors:**
> Laura Davis Jones, Esq.
> Alan J. Kornfeld, Esq.
> David M. Bertenthal, Esq.
> Pachulski Stang Ziehl & Jones LLP
> 919 N. Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE  19899-8705 (Courier 19801)
> Telephone:     (302) 652-4100
> Email:  ljones@pszjlaw.com
>        akornfeld@pszjlaw.com
>        dbertenthal@pszjlaw.com

> **If to the Plaintiffs, Plaintiffs' Counsel and/or Derivative Counsel:**
> Michael S. Etkin, Esq.
> Nicole Stefanelli, Esq.
> Lowenstein Sandler LLP
> 65 Livingston Avenue
> Roseland, NJ 07068
> Telephone:     (973) 597-2500
> Email:  metkin@lowenstein.com
>        nstefanelli@lowenstein.com

22.     <u>Wire Instructions</u>.

(a) All transfers of funds to the Debtors pursuant to this Agreement, including the disbursement of the Plaintiffs' Loan and any transfers relating to the Debtors' Share, shall be made by wire transfer to the Debtors pursuant to wire instructions to be provided.

(b) All transfers of funds to the Plaintiffs pursuant to this Agreement, including any repayments on the Plaintiffs' Loan, any distributions with respect to the Plaintiffs' Stock Share and any transfers relating to the Plaintiffs' Share, shall be made by wire transfer to the Plaintiffs pursuant to wire instructions to be provided.

**EXECUTION VERSION**

23.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement.  Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

24.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties, and may only be modified in writing signed by the Parties or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof, including without limitation the Term Sheet, are superseded by the terms of this Agreement.

DOCS_LA:284146.6 70934-001

EXECUTION VERSION

WHEREFORE, the Parties have executed this Agreement and/or have caused this Agreement to be executed by their duly authorized counsel on the dates shown below.

**ACCEPTED AND AGREED TO BY:**

Dated: February 6, 2015

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones
Alan J. Kornfeld
919 N. Market Street, 17th Floor
Wilmington, DE 19801

Counsel for Debtors and Debtors in Possession

Dated: February 6, 2015

SS BODY ARMOR I, INC.

_____
T. Scott Avila
Chief Restructuring Officer
c/o Deloitte Transactions and
Business Analytics LLP
350 S. Grand Ave.
Los Angeles, CA 90071

Debtors and Debtors in Possession

Dated: February __, 2015

LOWENSTEIN SANDLER LLP

_____
Michael S. Etkin
65 Livingston Avenue
Roseland, NJ 07068

Bankruptcy Counsel for Plaintiffs' Counsel,
Derivative Counsel and Plaintiffs, as defined
herein

Dated: February __, 2015

ROBBINS GELLER RUDMAN & DOWD LLP

_____
Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY 11747

Plaintiffs' Counsel and on behalf of Plaintiffs, as
defined herein

DOCS_LA:284146.6 70934-001

EXECUTION VERSION

WHEREFORE, the Parties have executed this Agreement and/or have caused this Agreement to be executed by their duly authorized counsel on the dates shown below.

**ACCEPTED AND AGREED TO BY:**

Dated: February __, 2015

PACHULSKI STANG ZIEHL & JONES LLP

_____

Laura Davis Jones
Alan J. Kornfeld
919 N. Market Street, 17th Floor
Wilmington, DE 19801

Counsel for Debtors and Debtors in Possession


Dated: February __, 2015

SS BODY ARMOR I, INC.

_____

T. Scott Avila
Chief Restructuring Officer
c/o Deloitte Transactions and
Business Analytics LLP
350 S. Grand Ave.
Los Angeles, CA 90071

Debtors and Debtors in Possession


Dated: February 5, 2015

LOWENSTEIN SANDLER LLP

_____

Michael S. Etkin
65 Livingston Avenue
Roseland, NJ 07068

Bankruptcy Counsel for Plaintiffs' Counsel,
Derivative Counsel and Plaintiffs, as defined
herein


Dated: February 5, 2015

ROBBINS GELLER RUDMAN & DOWD LLP

_____

Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY 11747

Plaintiffs' Counsel and on behalf of Plaintiffs, as
defined herein

DOCS_LA:284146.6 70934-001

EXECUTION VERSION

Dated: February __, 2015

LABATON SUCHAROW LLP

_____

Ira A. Schochet
140 Broadway
New York, NY 10005

Plaintiffs' Counsel and on behalf of Plaintiffs,
as defined herein

Dated: February 5, 2015

LAW OFFICES OF THOMAS G. AMON

_____ /w permission BJR

Thomas G. Amon
250 W. 57th Street, Suite 1316
New York, NY 10107

Derivative Counsel

Dated: February 5, 2015

ROBBINS ARROYO LLP

_____

Brian J. Robbins
600 B Street, Suite 1900
San Diego, CA 92101

Derivative Counsel

EXECUTION VERSION

Dated: February ___, 2015

LABATON SUCHAROW LLP

_____

Ira A. Schochet
140 Broadway
New York, NY 10005

Plaintiffs' Counsel and on behalf of Plaintiffs,
as defined herein

Dated: February ___, 2015

LAW OFFICES OF THOMAS G. AMON

_____

Thomas G. Amon
250 W. 57th Street, Suite 1316
New York, NY 10107

Derivative Counsel

Dated: February ___, 2015

ROBBINS ARROYO LLP

_____

Brian J. Robbins
600 B Street, Suite 1900
San Diego, CA 92101

Derivative Counsel

# EXHIBIT 1

## EXHIBIT 1

This Exhibit 1 is intended solely for purposes of providing examples of the potential calculation of the Debtors' Share and the Plaintiffs' Share under various hypothetical recovery scenarios. These examples are for descriptive purposes only, and any actual calculation and distribution of the Debtors' Share and Plaintiffs' Share will be governed in all respects by the specific terms of the Agreement.

**Hypothetical Recovery Scenario #1: $240 Million of Recoveries/Proceeds Available**
This hypothetical recovery scenario assumes that a total of $200,000,000 of Recoveries/Proceeds are realized by the Parties from the Shared Recovery Matters, and that the Plaintiffs' Stock Share is valued at $3,000,000. The remainder of the Recoveries/Proceeds ($37,000,000) are the Escrowed Funds.

| Source of Funds | Debtors' Share | Plaintiffs' Share |
|---|---|---|
| District Court Award of Shared Recovery Matters | $110,000,000 | $90,000,000 |
| Escrowed Funds | $0 | $37,000,000 |
| Plaintiffs' Stock Share | $0 | $3,000,000 |
| Plaintiffs' Loan | $20,000,000 | -$20,000,000 |
| Repayment of Plaintiffs' Loan | -$20,000,000 | $20,000,000 |
| Parties' Re-Allocation of Shared Recovery Matters | $10,000,000 | -$10,000,000 |
| **Total:** | $120,000,000 | $120,000,000 |

**Hypothetical Recovery Scenario #2: $160 Million of Recoveries/Proceeds Available**
This hypothetical recovery scenario assumes that a total of $120,000,000 of Recoveries/Proceeds are realized by the Parties from the Shared Recovery Matters, and that the Plaintiffs' Stock Share is valued at $3,000,000. The remainder of the Recoveries/Proceeds ($37,000,000) are the Escrowed Funds.

| Source of Funds | Debtors' Share | Plaintiffs' Share |
|---|---|---|
| District Court Award of Shared Recovery Matters | $50,000,000 | $70,000,000 |
| Escrowed Funds | $0 | $37,000,000 |
| Plaintiffs' Stock Share | $0 | $3,000,000 |
| Plaintiffs' Loan | $20,000,000 | -$20,000,000 |
| Repayment of Plaintiffs' Loan | -$20,000,000 | $20,000,000 |
| Parties' Re-Allocation of Shared Recovery Matters | $30,000,000 | -$30,000,000 |
| **Total:** | $80,000,000 | $80,000,000 |