# Exhibit C

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Jerome Gotkin
Chrysler Center
666 Third Avenue
New York, NY 10017
Telephone: (212) 935-3000
JGotkin@Mintz.com

Counsel for Defendant David H. Brooks

**UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: DHB INDUSTRIES, INC. CLASS ACTION LITIGATION | Civil Action No. 2:05-cv-4296-JS-ETB<br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS | |
| IN RE: DHB INDUSTRIES, INC. DERIVATIVE LITIGATION | Civil Action No. 2:05-cv-4345-JS-ETB<br>DERIVATIVE ACTION |
| This Document Relates To:<br><br>ALL ACTIONS | |

**DEFENDANT DAVID H. BROOKS' RESPONSE TO "STATUS REPORT"
OF DEFENDANT POINT BLANK SOLUTIONS INC., F/K/A
<u>DHB INDUSTRIES, INC., DATED OCTOBER 4, 2010</u>**

By submitting this Response, Defendant David H. Brooks ("Mr. Brooks") is not seeking to do anything that is prohibited by the automatic stay. Rather, he is merely seeking to clarify for the record certain statements made in the "Status Report" of Defendant Point Blank Solutions Inc., f/k/a DHB Industries, Inc. (the "Company"), dated October 4, 2010. Thus, Mr. Brooks is

not here advocating, seeking or asking that there be any ruling, action or further proceedings in this Court, while the Bankruptcy proceeding is pending.

The decision of the United States Court of Appeals for the Second Circuit (the "Second Circuit"), filed on September 30, 2010, ruling that this Court erred in approving the Settlement Agreement because "the Settlement Agreement impermissibly releases and indemnifies [the Company's] former Chief Executive Officer and Chief Financial Officer against all liability arising under §304 of the Sarbanes-Oxley Act, 15 U.S.E. §7243 ["Sox"]," would appear to have mooted the Company's pending Motion in the Bankruptcy Court, seeking authorization to reject the Settlement Agreement. The Settlement Agreement has already been rejected by the Second Circuit, albeit subject to remand to this Court. If the foregoing is correct, the parties herein would appear to be left with two alternative courses of action.

In the first instance, as essentially provided in Section 7.2 of the Settlement Agreement[1], and as suggested by the Second Circuit in its decision, that this Court may reexamine the issues raised on appeal "in the context of a revised settlement," the parties herein can agree to a modification of the Settlement Agreement that simply deletes the provision for the SOX 304 indemnity, but otherwise reaffirms the remainder of the Settlement Agreement. For his part, Mr. Brooks is agreeable to such a modification. The Company should be as well, given its agreement to the Settlement Agreement in the first place and its spirited and unwaivering endorsement and defense of the Settlement Agreement throughout, all for the benefit of its shareholders, at relatively little cost to it.[2]

---

[1] Section 7.2 provides in pertinent part that in the event of an appellate ruling modifying or reversing the Settlement Agreement, the parties affected thereby, including the Company, can agree to modify the Settlement Agreement accordingly and proceed with the Settlement, as so modified.

[2] Waiver of the SOX 304 indemnity should also be beneficial to the Company itself.

2

Alternatively, the parties could do nothing further, other than to acknowledge the Second Circuit's rejection of the Settlement Agreement, in which event the $35,200,000, plus interest, being held in Escrow would appear to have to be distributed in accordance with the terms and conditions of the Escrow Agreement, dated July 27, 2006. If so, $3,000,000, plus interest, would be payable to the Company, as property of the estate, and $19,325,000, which was paid or caused to be paid in the first place by Mr. Brooks, would be payable to him, with interest.[3] The remaining $12,875,000, which was paid by the Company's D&O Insurers for the benefit of the Insureds under the Insurers' D&O Policies, together with interest, would be placed in trust for the benefit of the Insureds, which includes the Company, and payable from the trust to the Insureds in accordance with its terms. If there is any dispute regarding the distribution of the Escrow, it would appear that that would have to be determined by a proceeding in an appropriate tribunal at the appropriate time.

[REMAINDER OF THE PAGE LEFT INTENTIONALLY BLANK]

---

[3] Mr. Brooks has already set out his right to this money in a Proof of Claim filed in the Bankruptcy Court on August 11, 2010. He stated in that Proof of Claim:
> Thus in the event the Settlement is not approved by the Court, the $4,500,000 premium, plus interest and the money paid by Brooks for the 3,007,099 shares, to the extent he opts to sell those shares back to the Debtor, plus interest, will be funds of Brooks, not funds of the Debtor, because it was Brooks alone, as a Settling Defendant, who paid or cause "the same to be paid in the first place," giving him the absolute right to the return of the same. Counsel to the Debtor, however, has claimed otherwise.
>
> Accordingly, while Brooks does not believe that this …Claim needs to be made, he is doing so under protest, given the position of counsel to the Debtor, but he is doing so without waiving his position that such funds, in the event the Settlement is not approved by the Court, would be his funds, not funds of the Debtor.

Dated: New York, New York
      October 7, 2010

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.

By: _____
    Jerome Gotkin
    Chrysler Center
    666 Third Avenue
    New York, NY 10017
    (212) 935-3000
    JGotkin@Mintz.com

*Attorneys for Defendant*
*David H. Brooks*

cc: All Counsel of Record (by email)