## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SS BODY ARMOR I, INC., et al., | : | Case No. 10-11255(CSS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

_____

### OPINION[1]

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones
David M. Bertenthal
James E. O'Neill
919 Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

Counsel to Debtors and Debtors in Possession

THE ROSNER LAW GROUP LLC
Scott J. Leonhardt
824 Market N. Street, Suite 810
Wilmington, DE  19801
      -and-
ARENT FOX LLP
Robert M. Hirsh
George P. Angelich
1675 Broadway
New York, NY  10019

Counsel for the Official Committee Unsecured Creditors

CONNOLLY GALLAGHER LLP

Jeffrey C. Wisler
1000 West Street, Suite 1400
Wilmington, DE  19801

Counsel for Jeffrey R. Brooks

BIFFERATO LLC
Ian Connor Bifferato
Thomas F. Driscoll III
800 N. King Street, First Floor
Wilmington, DE  19801
      -and-
BAKER & MCKENZIE LLP
John E.  Mitchell
Rosa A. Shirley
Jonathan Rosamond
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Counsel for the Official Committee of Equity Security Holders

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

CROSS & SIMON LLC
Christopher P. Simon
Kevin S. Mann
P.O. Box 1380
913 Market Street, 11th Floor
Wilmington, DE  19899-1380
        -and-
LOWENSTEIN SANDLER LLP
Michael S. Etkin
65 Livingston Avenue
Roseland, NJ  07068

Counsel to Lead Plaintiffs

Dated: April 1, 2015

Sontchi, J. _Clifford Shtc_

REED SMITH LLP
Kurt F. Gwynne
1201 Market Street, Suite 1500
Wilmington, DE  19801
        -and-
David Mason
599 Lexington Avenue
New York, NY  10022-7650

Counsel for Khashayar Eynalhori

D. David Cohen, Steven Wildstein
Prescott Group Capital
Management and Eric Lay

Appearing *Pro Se*

## INTRODUCTION

Before the Court is Jeffrey R. Brooks' (hereinafter "Jeffrey Brooks") *Motion for Relief from the Automatic Stay as Necessary to Enforce Delaware State Law Rights to Compel an Annual Meeting* (D.I. 2851) (the "Motion").[2]  Jeffrey Brooks seeks to file an action in the Delaware Court of Chancery to compel SS Body Armor I, Inc. to hold an annual shareholder meeting.  As set forth in detail below, the Court finds that such action to compel an annual meeting is not barred by the automatic stay.  The Court further finds that the oppositions to the motion, in effect, seek an injunction of any Chancery Court

---

[2] The Motion is supported by various shareholders: Khashayar Eynalhori (D.I. 2871), D. David Cohen (D.I. 2885), Steven Wildstein (D.I. 2886), Prescott Group Capital Management (D.I. 2887) and Eric Ley (D.I. 2890). The Motion is opposed by the above-captioned debtors and debtors in possession (D.I. 2866), the Official Committee of Equity Security Holders (the "Equity Committee"), the Official Committee of Unsecured Creditors ("Creditors Committee") (D.I. 2870), and Lead Plaintiffs (as defined below) (D.I. 2871).  The Equity Committee originally filed a response (D.I. 2867) that neither supported nor opposed the Motion. However, at the hearing on the Motion, the Equity Committee affirmatively opposed the Motion. Tr. 16:2-3; 67:7-17 (Mar. 19, 2015) (D.I. 2942).

action to compel a shareholder meeting and/or the shareholder meeting, which is procedurally deficient pursuant to Federal Rule of Bankruptcy Procedure 7001(7). As such, the Court will grant the Motion and overrule the objections.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are 11 U.S.C. §§ 105(a) and 362(d), as supplemented by Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. This is a core proceeding pursuant to 28 US.C. § 157(b)(2)(G) and this Court has the judicial power to enter a final order.

## FACTS

**A.  General Background**

On April 14, 2010, SS Body Armor I, Inc. ("SS Body Armor") and its debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Thereafter, the Office of the United States Trustee appointed the Creditors Committee and the Equity Committee.

In October 2011, Judge Walsh entered an order authorizing the Debtors to sell substantially all of their assets. The asset sale closed on October 31, 2011.

## B.  The Settlement Motion

Since prior to the petition date, the Debtors have been involved in litigation and other disputes with SS Body Armor's former CEO, David H. Brooks[3] ("David Brooks"), Jeffrey Brooks' brother, and with a class of shareholders ("Class Plaintiffs") that commenced a class action ("Class Action") in 2005 against SS Body Armor, among others, in the Eastern District of New York (the "EDNY District Court") alleging securities fraud.

After David Brooks' conviction but before his sentencing, in or around June 2011, the Debtors, the Class Plaintiffs and David Brooks, among other parties, commenced settlement negotiations to resolve the parties' competing claims to two pools of funds: (i) approximately $180 million of restrained assets (the "Restrained Funds"); and (ii) approximately $37 million (the "Escrowed Funds") held by counsel to the Class Plaintiffs and plaintiff's counsel in a related derivative action ("Derivative Action") in connection with a 2006 settlement of the Class Action and the Derivative Action.  The contemplated global settlement also would have resolved, in addition to the Class Action and the Derivative Action, a variety of other litigation matters involving the Escrowed Funds, including two appeals to the United States District Court for the District of

---

[3] In 2010, David Brooks was criminally convicted on fourteen counts including securities fraud, mail and wire fraud, insider trading, obstruction of justice and material misstatements to auditors.  David Brooks also pled guilty to tax counts of conspiracy to defraud the IRS and false filing of tax returns.  In 2013, the EDNY District Court sentenced David Brooks to 17 years in prison for his criminal conduct.

SS Body Armor's former Chief Operating Officer, Sandra Hatfield, and former Chief Financial Officer, Dawn M. Schlegel, were also indicted based on, among other things, the same misconduct alleged in the Class Action and the Derivative Action.  Hatfield was eventually convicted of conspiracy to commit securities fraud, securities fraud, conspiracy to commit mail and wire fraud, three counts of insider trading, conspiracy to obstruct justice, and obstruction of justice; and was sentenced to seven years in federal prison. Schlegel pled guilty to securities fraud conspiracy and tax fraud conspiracy and was sentenced to three years of supervised release.  David Brooks, Hatfield and Schlegel are referred to herein as the "EDNY Defendants."

4

Delaware (the "DE District Court") from Judge Walsh's order approving the Debtors'

rejection of the 2006 settlement, an adversary proceeding commenced by the Debtors in

this Court seeking turnover of the Escrowed Funds,[4] and a related appeal and motion to

withdraw the reference filed by plaintiffs in the Derivative Action and the Class Action.

At David Brooks' sentencing, the EDNY District Court found that SS Body Armor

and its shareholders (including the Class Plaintiffs) were victims of David Brooks'

criminal conduct and were entitled to restitution.  SS Body Armor has asserted, with the

Government's support, a restitution claim of $117 million, while the Class Plaintiffs have

asserted a restitution claim of approximately $186 million.[5]

---

[4] Adv. Case No. 10-55361 ("Turnover Action").  Debtors sought declaratory judgment that the Escrowed Funds are property of the Debtors' estate and that any adverse claims thereto are not interests in property but are at most, unsecured claims for rejection damages.  David Brooks has moved to dismiss the Turnover Action.  Plaintiff's counsel in the Derivative Action also filed a motion to dismiss the Turnover Action, a motion for determination that the Turnover Action is not a core proceeding ("Core Motion"), a motion to stay the Turnover Action ("Stay Motion"), and a motion to withdraw the reference.  In May 2011, Judge Walsh denied the Stay Motion and the Core Motion.  Plaintiffs in the Derivative Action filed a notice of appeal to the DE District Court from the order on the Core Motion.  The DE District Court stayed the appeal from the order denying the Core Motion and the motion to withdraw the reference through March 4, 2015, and this Court granted a corresponding stay of the Turnover Action. *See* Adv. Case No. 10-55361, D.I. 160.

Adv. Case No. 11-51759 ("Injunction Adversary Proceeding").  Debtors filed an action against Jeffrey Brooks and the Jeffrey R. Brooks Individual Retirement Account ("Brooks IRA").  The Debtors also filed a preliminary injunction motion, in which the Debtors requested that the Court stay an action filed in New York State Court by the Brooks IRA against some of the Debtors' former officers and directors.  In that New York State Court action, Jeffrey Brooks and the Brooks IRA asserted claims relating to the decision to de-register SS Body Armor as a publicly-traded company, which was authorized by Judge Walsh in an order approving a consent agreement between SS Body Armor and the SEC. D.I. 1259.  The order approving the consent agreement between SS Body Armor and the SEC was appealed by David Brooks to the DE District Court and later stayed through March 4, 2015.  The New York State Court action was also stayed through March 4, 2015.

[5] On March 27, 2015, the EDNY District Court ordered that, among other things: (a) the EDNY Defendants must pay restitution to SS Body Armor in the amount of approximately $53.9 million; and (b) the EDNY Defendants must pay restitution, in a total amount of approximately $37.6 million, to those individuals that have been identified as victims by virtue of holding their common stock in SS Body Armor during the relevant time.

Prior to David Brooks' sentencing, in December 2011, the Debtors, the Class Plaintiffs, the plaintiffs in the Derivative Action, and David Brooks, among other parties, executed a global settlement term sheet. The parties then commenced the process of seeking approval of the global settlement from the Government and EDNY District Court. In late 2013, however, David Brooks abandoned the global settlement.

Thereafter, the Debtors, the Class Plaintiffs and the plaintiffs in the Derivative Action continued to engage in settlement negotiations and eventually executed a term sheet in November 2014. The Debtors proceeded to file a motion to approve the settlement, pursuant to Bankruptcy Rule 9019 (D.I. 2735) (the "Settlement Motion"). The proposed settlement provides the Debtors with an exit strategy for these chapter 11 cases, resolves the litigation matters pending among the parties in this Court, the DE District Court and the EDNY District Court, and provides for a 50/50 allocation of the restitution/forfeiture awards to the Debtors and the Class Plaintiffs. More specifically, the proposed settlement term sheet (a) resolves competing claims to approximately $180 million restrained in connection with the criminal action against David Brooks, (b) provides for an interest-free $20 million loan to the Debtors to fund a chapter 11 plan that the Creditors' Committee has agreed to co-sponsor,[6] and (c) resolves claims asserted in the Class Action and a variety of other litigation matters pending in this Court, the DE District Court and the EDNY District Court.

---

[6] On March 17, 2015, the Debtors and the Creditors Committee filed a proposed plan (D.I. 2934) and related disclosure statement (D.I. 2935). A hearing on the disclosure statement is scheduled for June 4, 2015.

The settlement agreement has been executed and the Settlement Motion was scheduled to be heard on April 1, 2015. [7]  However, on March 30, 2015, the Debtors requested that the April 1 hearing go forward as a "case status conference."[8]  The Debtors made this request due to entry of a restitution order by the EDNY District Court, on March 27, 2015, in the criminal action against the EDNY Defendants.  As mentioned earlier, the EDNY District Court ordered that, among other things: (a) the EDNY Defendants must pay restitution to SS Body Armor in the amount of approximately $53.9 million; and (b) the EDNY Defendants must pay restitution, in a total amount of approximately $37.6 million, to those individuals that have been identified as victims by virtue of holding their common stock in SS Body Armor during the relevant time.  As this restitution award is a substantial component of the settlement agreement in the Settlement Motion and was less than the Debtors anticipated, the Debtors requested that the April 1 hearing on the Settlement Motion become a case status hearing; although, the Debtors have not withdrawn the Settlement Motion.  The Court has continued the hearing on the Settlement Motion until May 12, 2015.

## C.  Corporate Governance

SS Body Armor is a Delaware corporation.  Jeffrey Brooks is an owner of common stock in the company.  SS Body Armor's by-laws require an annual meeting of its shareholders; yet SS Body Armor has not held a meeting of its stockholders since

---

[7]  To date several parties have objected to the Settlement Motion: D. David Cohen, former general counsel of the Debtor and a current shareholder (D.I. 2921, 2923); Jon E. Jacks, a shareholder (D.I. 2938); David Brooks (D.I. 2941), the Equity Committee (D.I. 2945), and a group of former directors (D.I. 2946).

[8]  D.I. 2958.

September 9, 2009.  On November 28, 2014, pursuant to 8 Del. C. § 211, Jeffrey Brooks

issued a demand that a shareholder meeting be held (the "Demand").  To date, no

shareholder meeting has been scheduled or held, and, in fact, SS Body Armor opposes

any efforts to schedule or hold such meeting.

Through the pending Motion, Jeffrey Brooks seeks to enforce his shareholder

remedies under 8 Del. C. § 211 in the Delaware Court of Chancery.  In relevant part,

section 211(c) of the Delaware Code provides:

> If there be a failure to hold the annual meeting or to take
> action by written consent to elect directors in lieu of an annual
> meeting . . . for a period of 13 months after the latest to occur
> of the organization of the corporation, its last annual meeting
> or the last action by written consent to elect directors in lieu
> of an annual meeting, the Court of Chancery may summarily
> order a meeting to be held upon the application of any
> stockholder or director.[9]

In the pending Motion, Jeffrey Brooks asserts that he is entitled to commence a

proceeding in the Court of Chancery to compel SS Body Armor to hold a shareholder

meeting and requests a ruling that such a proceeding would not violate the automatic

stay, or, in the alternative, relief from the automatic stay in order to commence such a

proceeding in Chancery Court.

Jeffrey Brooks has not asserted any specific reasons for requesting a shareholder

meeting; however, the Debtors assert that Jeffrey Brooks is seeking the meeting to vote

the family's approximately 25% interest in the company to elect a new board of directors

that would then reevaluate/abandon the global settlement and the Settlement Motion.

---

[9] Del. Code Ann. tit. 8, § 211(c) (West).

The Motion is fully briefed and the Court held an evidentiary hearing on March 19, 2015 (the "Hearing"). This is the Court's decision thereon.

## D. Evidence Presented at the Hearing

At the Hearing, the Debtors presented evidence in support of their objection through the testimony of Scott Avila[10] of Deloitte Transactions and Business Analytics LLP, the current chief restructuring officer of the Debtors. Mr. Avila testified that the Debtors have no current operations and, in addition to $217,000 in cash, the only assets of the Debtors are claims against the Restricted Funds and the Escrowed Funds.[11] He further testified that the current board of directors ("Board"), which does not include any member of the Brooks family, has authorized the plan, as filed, as well as the disclosure statement both of which incorporate the global settlement approved by the Board.[12] Mr. Avila opined that the proposed settlement, as well as the plan and disclosure statement, are reasonable exercises of the Board's business judgment.[13] Mr. Avila continued that no other alternatives have been presented to him nor has he been able to research any other viable options for the Debtors' rehabilitation.[14] Mr. Avila testified that conversion to Chapter 7 would only increase costs and cause delay.[15] Mr. Avila also testified that he did not think there were any advantages to the stakeholders in replacing the Board at this

---

[10] *See* Tr. 11:9 -23:4 (The transcript lists the witness' name as "Scott Abila;" which is a typographical error.)

[11] Tr. 12:12-14; 12:23-13:11.

[12] Tr. 14:22-24. *See also* 2934 (liquidating plan) and 2935 (disclosure statement) (both filed on March 17, 2015).

[13] Tr. 14:25-15:14.

[14] Tr. 15:15-19.

[15] Tr. 18:2-15.

point in the bankruptcy case.[16]  Finally, Mr. Avila testified that he believes Jeffrey Brooks had an "inherent conflict of interest" as the Restrained Funds came from his brother, David Brooks.[17]

The Court also heard testimony in support of the Motion from D. David Cohen, former General Counsel and Executive Vice-President of SS Body Armor, and a current shareholder.[18]  Mr. Cohen testified that he believed corporate governance was very important and he encouraged the Court to grant the Motion.  Mr. Cohen testified that he has met with David Brooks and together they have presented an alternative to the Equity Committee.[19]  Mr. Cohen also testified that he did not believe the proposed plan was viable or that the EDNY District Court would release the Restricted Funds or the Escrowed Funds to the Debtors.[20]

Jeffrey Brooks did not present any evidence at the Hearing other than the uncontested facts that SS Body Armor has not held a shareholder meeting since 2009 and the Board opposes holding such a meeting at this time.

---

[16]  Tr. 19:21-20:3.

[17]  Tr. 20:4-13.

[18]  Tr. 23:16-44:14.

[19]  Tr. 31-20.  Mr. Cohen testified that David Brooks and a potential "Wall Street investor" would be willing to fund an alternative plan in these cases.  Tr. 38:21-39:12.  However, no further detail was provided at the hearing.

[20]  Tr. 40:12-41:9.

## ANALYSIS

### A.    Parties' Arguments

Jeffrey Brooks asserts that the automatic stay does not bar an action to compel a meeting of shareholders, as such the Court should allow him to commence his proposed action in Chancery Court.  He continues that *even if* the automatic stay is applicable, the Court should grant him relief from the automatic stay, for cause shown, in order to commence the Chancery Court action.  He asserts that the Debtors' estates will not suffer great prejudice if the Court grants relief from the stay because an action under 8 Del. C. § 211 is a summary proceeding.  Furthermore, a Chancery Court proceeding would be unnecessary if SS Body Armor recognizes and honors the Demand, its own by-laws, and Delaware corporate law.  Jeffrey Brooks continues that a shareholder meeting will not deplete the Debtors' assets nor cause undue hardship.  In contrast, he asserts that his fundamental, substantive corporate governance rights under Delaware law will be "severely" prejudiced if relief is not granted.  Lastly, Jeffrey Brooks argues that public policy favors holding an annual shareholders meeting – as SS Body Armor's failure to hold an annual shareholder meeting since 2009 is a violation of Delaware law and SS Body Armor's by-laws.

The Debtors agree that, as a general rule, shareholders have the right to compel a shareholder's meeting, *except* in the event of "clear abuse" where a board election might result in unsatisfactory management and would jeopardize a debtor's rehabilitation.  The Debtors argue that these bankruptcy cases have been marked by years of litigation in

which the interests of the Brooks family have been, and remain, directly opposed to the interests of the Debtors, their creditors and their shareholders.  The Debtors continue that a new board of directors would seriously threaten and not merely delay the Debtors' prospects of rehabilitation.

**B.      The Automatic Stay Is Not Applicable to an Action in the Chancery Court to Summarily Order a Shareholder Meeting**

The Second Circuit considered the issue of whether a court should issue an affirmative injunction to stop a disputed board election in the case of *In re Johns-Manville Corp.*[21]   The *Johns-Manville* court held that the right of shareholders to compel a shareholders' meeting for the purposes of election a new board of directors continues during reorganization proceedings.  In so ruling, the *Johns-Manville* court implicitly approved the Chancery Court's holding in *NKFW Partnes*[22] that "a proceeding in bankruptcy ordinarily will not impair the right of a shareholder to compel an annual meeting."

The *Johns-Manville* court continued that the right to call a meeting may be impaired *only if* the equity holder is guilty of "clear abuse" in attempting to call one.[23]  It was *not* "clear abuse," however, to call a shareholder meeting to obtain more bargaining power in the negotiation of a plan.[24]  But, if the shareholder seeking a meeting was bargaining

---

[21]  *Manville Corp. v. Equity Security Holders Committee (In re Johns-Manville Corp.)*, 801 F.2d 60, 63 (2d Cir. 1986) (hereinafter "*Johns-Manville*").

[22] *NKFW Partners v. Saxon Industries, Inc.*, Case No. 7468, 1984 WL 8234, at *2 (Del. Ch. Aug. 8, 1984).

[23] *Johns-Manville*, 801 F. 2d at 64.

[24]  *Id.* at 64-65.  The court cited *In re Bush Terminal Co.*, 78 F.2d 662, 664 (2d Cir. 1935), which expressly upheld the right of a majority shareholder to try to replace the board members for the purpose of advancing the reorganization plan more favorable to equity.

in bad faith, or in other words, demonstrated a willingness to risk rehabilitation altogether in order to win a larger share of equity, then such meeting could be prevented. The *Johns-Manville* court held that "clear abuse" hinged on whether "rehabilitation would be seriously threatened, rather than merely delayed."[25]

The *Johns-Manville* court distinguished the facts before it from that of *In re Potter Instrument Co.* In *Potter Instrument Co.*,[26] the appellant was a party to a consent decree with the Securities and Exchange Commission in which he agreed to limit his management in the debtor and not to vote against any action recommended by a majority of the board of directors. The appellant sought a shareholder meeting to circumvent his agreement with the SEC. The *Potter Instrument* court held that the appellant, Potter, was:

> a disgruntled stockholder who [was] frustrated in his efforts to smash the [c]ompanies which he brought into being because he ha[d] been ousted from management and control. To permit Potter to control the Debtors through the election of a majority of the Board of Directors would sound the death knell to the Debtors. His objection to the issuance of stock to secured and unsecured creditors would require an Amended Plan, new notice to creditors and new acceptances solicited. There is no showing that interested parties would approve a plan without the issuance of stock.[27]

---

[25] *Id.* at 66 (citations omitted).

[26] 593 F.2d 470 (2d Cir. 1979) (hereinafter, "*Potter Instrument*"). *Potter Instrument* is a case under the Bankruptcy Act and not the Bankruptcy Code. *Id.* at 472.

[27] *Id.*

The *Potter Instrument* court also noted that Potter had not complied with orders of the Court and it was "doubtful that this Court would approve control, directly or indirectly, of the Debtors by John AT. Potter."[28]

The Chancery Court has also held that a shareholder's right to a meeting is not unfettered when the corporation is in bankruptcy. In *U.S. Energy Systems*, the Chancery Court ordered that the corporation, schedule a shareholder meeting, however, before that meeting was scheduled the corporation filed bankruptcy petitions.[29] U.S. Energy Services then argued that the automatic stay barred the Chancery Court from scheduling a date for the shareholder meeting. The Chancery Court held that there was nothing in the record to show that the shareholder seeking the meeting was guilty of clear abuse, and, thus, scheduled a shareholder meeting. In so holding, however, the Chancery Court held: "If the primary purpose of Chapter 11 is the rehabilitation of debtor corporations, there is no reason to disenfranchise equity holders *so long as their exercise of voting rights does not impair such rehabilitation.*"[30]

Similarly, in the case of *In re Marvel Entertainment Group*, the Delaware District Court reviewed a complaint for declaratory and injunctive relief enjoining bondholders and an indenture trustee from voting pledged shares to replace the parent company's

---

[28] *Id.*

[29] *Fogel v. U.S. Energy Systems, Inc.*, Civil Act. No. 3271, 2008 WL 151857, *1 (Del. Ch. Jan. 15, 2008) (hereinafter "*U.S. Energy Systems*").

[30] *Id.* at *2 (footnote and citations omitted) (emphasis added).

14

board of directors.[31]   The *Marvel Entertainment* court held that the automatic stay provisions of the Bankruptcy Code were not implicated by the exercise of a shareholders' corporate governance rights.[32]   Relying, in part, on *Johns-Manville*, the court held:

> It is well settled that the right of shareholders to compel a shareholders' meeting for the purpose of electing a new board of directors subsists during reorganization proceedings.  The right of shareholders to be represented by directors of their choice and thus to control corporate policy is paramount. Shareholders, moreover, should have the right to be adequately represented in the conduct of a debtor's affairs, particularly in such an important matter as the reorganization of the debtor.  As a result, the election of a new board of directors may be enjoined only under circumstances demonstrating "clear abuse."  "Clear abuse" requires a showing that the shareholders' action in seeking to elect a new board of directors demonstrates a willingness to risk rehabilitation altogether in order to win a larger share for equity. The fact that the shareholders' action may be motivated by a desire to arrogate more bargaining power in the negotiation of a reorganization plan, without more, does not constitute clear abuse.[33]

Finally, in *Matter of Concrete Products, Inc.*, a case somewhat similar to the case *sub judice*, the bankruptcy court was faced with a dispute among certain shareholders and existing management of the company.[34]   The dispute resulted in a series of meetings of shareholders with the attempted ouster of the debtor's president.  Procedurally, the

---

[31]  *Official Bondholder Committee v. Chase Manhatten [sic] Bank (In re Marvel Entm't Grp., Inc.)*, 209 B.R. 832 (D. Del. 1997) (hereinafter "*Marvel Entertainment*").

[32]  *Id.* at 838.

[33]  *Id.* (citations and internal quotation marks omitted).

[34]   *Minter v. Directors of Concrete Products (Matter of Concrete Products, Inc.)*, 110 B.R. 997 (Bankr. S.D. Ga. 1989) (hereinafter "*Concrete Products*").

former president of the board brought an adversary action seeking to enjoin and to prohibit the board from dismissing him.

The backdrop to this dispute is somewhat involved. The board of the company decided to enter into a joint venture wherein the company purchased 55% of the joint venture. The joint venture became a cash drain on the company and, thus, the president sought purchasers of the company's share of the joint venture to relieve the company of the monthly cash outlay and long-term debt associated therewith. The president found a purchaser that was approved by the board, however, the terms of the sale changed prior to consummation of the transaction. Meanwhile, during the time of the sale negotiations, the son of the chairman of the board ("Zell") supported a slate of directors in opposition of the president. Zell made clear implications in his solicitation of votes for a "new" board that the president was guilty of mismanagement and/or self-dealing. Eventually, Zell had enough proxies to elect a new board and the president was not elected; although Zell was. The newly elected board held a board meeting that did not include the now former president, who formally retained his title as CEO. Although Zell had substantial business experience, he did not have any technical knowledge related to the debtor's business, where, the court held, specialized leadership was essential. Although the bankruptcy court recognized that the right of the board of directors to govern their corporation was a "prerogative ordinarily uncompromised by reorganization," the court

noted the "clear abuse" exception.[35]  The court noted that "clear abuse" was (i) delay

combined with a (ii) real jeopardy to the reorganization process.[36]  The court then held:

> The solicitation by a substantial shareholder of proxies which
> implied, if it did not affirmatively state, that management was
> guilty of self-dealing and financial irregularities and
> mismanagement was irregular if not abusive of the rights of
> management to make out a case for the proxies it was
> soliciting.  This raises the distinct possibility that proxies
> delivered by some shareholders to Harold Zell were given
> based upon incomplete or misleading information.  Once
> delivered, Mr. Zell used the proxies to oust the current board
> and replace it with his hand-picked candidates.  Predictably,
> the board proceeded to elect new officers including Mr. Zell
> as president, and he attempted to fire Bledsoe [the now
> former president]. . . . [T]here is enough evidence to find, as I
> do, that Plaintiffs have shown a substantial likelihood that his
> and the board's actions were abusive, or that they were so
> reckless as to constitute serious mismanagement which
> would seriously threaten the reorganization.[37]

Thus, the bankruptcy court issued a preliminary injunction enjoining the board from

taking any action to terminate the employment of the former president or diminishing

his duties.

   This Court adopts the holdings of *Johns-Manville* and *Marvel Entertainment*.  The

right of a shareholder to compel a shareholder's meeting for the purpose of election of a

new board of directors continues during bankruptcy and the automatic stay is

inapplicable to the exercise of that right, including the inception of state court

proceedings to compel a shareholder meeting.  The right to such a meeting, however, is

---

[35] *Id.* at 1000 (*citing Johns-Manville*, 801 F.2d at 64-66; *Potter Instrument Co., Inc.*, 593 F.2d at 475).

[36] *Id.*

[37] *Concrete Products, Inc.*, 110 B.R. at 1000-01 (citations omitted).

not unfettered.  As recognized by the courts in *Johns-Manville*, *U.S. Energy Systems*, *Marvel Entertainment* and *Concrete Products*, the bankruptcy court may enjoin the occurrence of a shareholder meeting as well as the implementation of the results of such a meeting when there is "clear abuse," in other words, a showing of delay and real jeopardy to a debtor's reorganization.

There is an argument to be made that clear abuse may be present in this case.  The Debtors' opposition to the Motion based on the clear abuse exception is, nonetheless, procedurally improper.  Rule 7001 of the Federal Rules of Bankruptcy Procedure states: "The following are adversary proceedings . . . (7) a proceeding to obtain an injunction or other equitable relief . . . ."  Based on the plain reading of Rule 7001(7), the Court may not prevent or enjoin an action to compel a shareholder meeting based on the Motion and responses before it.[38]  However, if the Debtors were to file and adversary action along with a motion for an injunction, this Court might enjoin the occurrence of the shareholder meeting and/or the implementation of the results of the meeting upon a showing of "clear abuse."[39]  The merits of any such action is for another day.

---

[38] *See also In re WorldCORP, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000).

[39] Alternatively, the Debtors could also make such "clear abuse" arguments before the Chancery Court in response to Jeffrey Brooks' motion to compel a shareholder meeting.  *See, supra*, discussion of *U.S. Energy Systems*, at p. 14.

## <u>CONCLUSION</u>

As set forth above, the Court will grant the Motion as the proposed action in the Chancery Court to compel an annual shareholders meeting is not barred by the automatic stay. [40]

An order will be issued.

---

[40] As the Court finds that the automatic stay is not applicable it need not address Jeffrey Brooks' request for relief from the automatic stay.