# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
--------------------------------------------------------------  x
                                              :
In re                                         :   Chapter 11
                                              :
SS Body Armor I, Inc., et al.,[1]             :   Case No. 10-11255 (CSS)
                                              :   Jointly Administered
              Debtors.                        :
                                              :
--------------------------------------------------------------  x
```

---

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones
Alan J. Kornfeld
James E. O'Neill
Elissa A. Wagner
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Counsel to the Debtors*

**ARENT FOX LLP**
Robert M. Hirsh
George P. Angelich
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

-and-

**THE ROSNER LAW GROUP LLC**
Scott J. Leonhardt
824 Market N. Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111

*Counsel to the Official Committee of Unsecured Creditors*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers, are: SS Body Armor I, Inc. (9361) (f/k/a Point Blank Solutions, Inc.); SS Body Armor II, Inc. (4044) (f/k/a Point Blank Body Armor, Inc.); SS Body Armor III, Inc. (9051) (f/k/a Protective Apparel Corporation of America); and PBSS, LLC (8203). All correspondence and pleadings for the Debtors must be sent to SS Body Armor I, Inc., *et al.*, c/o Pachulski Stang Ziehl & Jones LLP, 919 North Market St., 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

# TABLE OF CONTENTS

**Page**

ARTICLE 1 DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ...............................................1
1.1     Defined Terms. ....................................................................................1
1.2     Rules of Interpretation ......................................................................11
1.3     Computation of Time .........................................................................11
1.4     Governing Law....................................................................................11
1.5     Reference to Monetary Figures .........................................................11

ARTICLE 2 CLASSIFICATION OF CLAIMS AND INTERESTS .....................................12
2.1     General Rules of Classification..........................................................12
2.2     Administrative Claims and Priority Tax Claims ..............................12
2.3     Summary of Classification .................................................................12

ARTICLE 3 TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS.............................12
3.1     Administrative Claims.........................................................................12
3.2     U.S. Trustee Fees.................................................................................13
3.3     Priority Tax Claims .............................................................................13

ARTICLE 4 TREATMENT OF CLASSES OF CLAIMS AND INTERESTS .....................14
4.1     Treatment of Allowed Class 1 Claims (Other Priority Claims) ......14
4.2     Treatment of Allowed Class 2 Claims (Secured Claims) .................14
4.3     Treatment of Allowed Class 3 Claims (General Unsecured Claims) ..............14
4.4     Treatment of Allowed Class 4 Claims (Subordinated Unsecured Claims) ...........................................................................................15
4.5     Treatment of Allowed Class 5 Claims (Class Action Claims)..........15
4.6     Treatment of Allowed Class 6 Interests (Old Common Stock Interests)........16
4.7     Treatment of Allowed Class 7 Interests (Subordinated Common Stock Interests) ..........................................................................16
4.8     Treatment of Allowed Class 8 Interests (Other Old Equity Interests) ...........16
4.9     Treatment of Allowed Class 9 Claims (Other Subordinated Claims)............16

ARTICLE 5 ACCEPTANCE REQUIREMENTS........................................................................17
5.1     Acceptance or Rejection of the Plan..................................................17
5.2     Tabulation of Votes on a Consolidated Basis ...................................17
5.3     Nonconsensual Confirmation..............................................................17

ARTICLE 6 MEANS FOR IMPLEMENTATION OF THE PLAN .......................................17
6.1     Implementation of the Settlement; Plaintiffs' Loan ........................17
6.2     Post-Confirmation Debtor; Corporate Action; Winding-Up of Affairs .........18
6.3     Post-Confirmation Debtor Representative ........................................19
6.4     Recovery Trust ....................................................................................20
6.5     Post-Confirmation Debtor and Recovery Trustee Cooperation.....22

6.6     Vesting of Estate Assets, Free and Clear of Liens.................................................22
6.7     Causes of Action.................................................22
6.8     Substantive Consolidation.................................................22
6.9     Records.................................................23
6.10    Dissolution of Creditors' Committee and Equity Committee.................................................23
6.11    Final Decree.................................................23

**ARTICLE 7 PROVISIONS GOVERNING DISTRIBUTIONS.................................................23**
7.1     Distributions Under the Plan.................................................23
7.2     Estimation.................................................23
7.3     Distributions on Account of Disputed Claims and Interests.................................................24
7.4     No Distributions Pending Allowance.................................................24
7.5     Objection Deadline.................................................24
7.6     Disputed Claims Reserve.................................................24
7.7     Settling Disputed Claims (or Interests).................................................24
7.8     Distributions in Cash.................................................24
7.9     Unclaimed Distributions.................................................25
7.10    Setoff.................................................25
7.11    Taxes.................................................25
7.12    De Minimis Distributions.................................................25

**ARTICLE 8 EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................................................25**
8.1     Rejection of Executory Contracts and Unexpired Leases.................................................25
8.2     Bar Date for Rejection Damages.................................................26

**ARTICLE 9 SETTLEMENT, RELEASES, INJUNCTION AND RELATED PROVISIONS.................................................26**
9.1     Compromise and Settlement of Claims, Interests and Controversies.................................................26
9.2     Releases by the Debtors.................................................26
9.3     Releases by Holders of Claims and Interests.................................................27
9.4     Exculpation.................................................27
9.5     Injunction.................................................28
9.6     Term of Injunctions or Stays.................................................29
9.7     No Consent to Change of Control Required.................................................29
9.8     Release of Liens.................................................29
9.9     Releases Implemented by the Settlement.................................................29

**ARTICLE 10 CONDITIONS TO THE CONFIRMATION DATE AND EFFECTIVE DATE.................................................29**
10.1    Conditions Precedent to Confirmation.................................................29
10.2    Conditions Precedent to the Effective Date.................................................29
10.3    Waiver of Conditions.................................................30
10.4    Effect of Failure of Conditions.................................................30

**ARTICLE 11 MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN.................................................30**
11.1    Modification and Amendments.................................................30

**11.2**     **Effect of Confirmation on Modifications**............................................................**31**

**11.3**     **Revocation or Withdrawal of the Plan**............................................................**31**

**ARTICLE 12 RETENTION OF JURISDICTION**............................................................**31**

**ARTICLE 13 MISCELLANEOUS PROVISIONS** ............................................................**33**

**13.1**     **Immediate Binding Effect** ............................................................**33**

**13.2**     **Section 1146 Exemption** ............................................................**33**

**13.3**     **U.S. Trustee Fees and Post-Confirmation Reports**............................................................**33**

**13.4**     **Non-Voting Equity Securities** ............................................................**33**

**13.5**     **Additional Documents** ............................................................**33**

**13.6**     **Successors and Assigns**............................................................**33**

**13.7**     **Service of Documents**............................................................**34**

**13.8**     **Severability of Plan Provisions** ............................................................**34**

**13.9**     **Exhibits** ............................................................**34**

**13.10**     **Votes Solicited in Good Faith**............................................................**35**

**13.11**     **Conflicts** ............................................................**35**

**ARTICLE 14 CONFIRMATION REQUEST**............................................................**35**

DOCS_LA:290638.4 70934/001

## INTRODUCTION

The Debtors in the above-captioned cases and the Official Committee of Unsecured Creditors appointed in the Debtors' cases hereby respectfully propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code. The Debtors and the Creditors' Committee are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. As provided further herein, among other things, the Plan implements in part, or otherwise facilitates the continued implementation of, the Settlement Agreement by and among the Debtors and the other Settlement Parties, which settlement is subject to separate approval by the Bankruptcy Court and the United States District Court for the Eastern District of New York (the "*EDNY District Court*"). Nothing in the Plan is intended to modify or alter the terms and conditions of the Settlement Agreement and related Settlement Approval Order. Reference is made to the Disclosure Statement, distributed contemporaneously with the Plan, for a discussion of the Debtors' history, assets, financial information and chapter 11 cases and for a summary and analysis of the Plan. Other agreements and documents supplement the Plan and have been or will be Filed with the Bankruptcy Court. These supplemental agreements and documents are referenced in the Plan and the Disclosure Statement and will be available for review. All capitalized terms used herein have the meanings given to such terms in Article I, or if not defined herein, such capitalized terms have the meanings given to such terms in the Settlement Agreement and such meanings are incorporated herein by reference.

All Holders of Claims and Interests entitled to vote on the Plan should read the Disclosure Statement and the Plan carefully — and consult with their counsel and other applicable professionals — before voting to accept or reject the Plan.

## ARTICLE 1
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

### 1.1 *Defined Terms.*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form:

"*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the Debtors of the kind specified in § 503(b) and entitled to priority pursuant to §§ 507(a)(2) or 507(b), including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Professional Fee Claims; (iii) all fees and charges assessed against the Estates pursuant to 28 U.S.C. §§ 1911-1930 or the Bankruptcy Rules; and (iv) all obligations designated as Administrative Claims pursuant to an order of the Bankruptcy Court.

"*Administrative Claims Bar Date*" means, for any Administrative Claim, the date which is thirty (30) days after the Effective Date or such earlier deadline that has been or may be set by order of the Bankruptcy Court, including the Administrative Claims Bar Date Orders, for filing a request for allowance of such Administrative Claim. Professional Fee Claims shall not be subject to the Administrative Claims Bar Date.

"*Administrative Claims Bar Date Order(s)*" means the *Order (1) Fixing Bar Date for the Filing of Proofs of Claim, (2) Fixing Bar Date for the Filing of Proofs of Claim By Governmental Units, (3) Fixing Bar Date for the Filing of Requests for Allowance of Bankruptcy Code § 503(b)(9) Administrative Expense Claims, (4) Fixing Bar Date for the Filing of Requests for Allowance of WARN Act Claims, (5) Designating Form and Manner of Notice Thereof and (6) Granting Related Relief* [Docket No. 237], entered on June 10, 2010, and/or the *Order (1) Fixing Deadline for Filing Administrative Expense Requests, (2) Approving Form and Manner of Notice Thereof, and (3) Granting Related Relief* [Docket No. 1896], entered on December 8, 2011.

"*Administrative/Priority/Tax Claims Reserve*" means a segregated Cash reserve to be established by the Post-Confirmation Debtor Representative on the Effective Date, and maintained and controlled by the Post-Confirmation Debtor Representative, to be used to fund (i) Distributions made by the Post-Confirmation Debtor Representative to holders of Allowed Administrative Claims, Priority Tax Claims and Other Priority Claims, on

1

account of such Allowed Claims, and (ii) payments of any other valid tax obligations of the Debtors made by the Post-Confirmation Debtor Representative as part of the Post-Confirmation Debtor Functions. This reserve shall be funded with proceeds of the Plaintiffs' Loan on the Effective Date, and subject to consultation with the Recovery Trustee, the amount of said reserve shall be determined by the Post-Confirmation Debtor Representative, to be sufficient to cover all Administrative Claims, Priority Tax Claims, and Other Priority Claims that have been Allowed and all such Claims that have been Disputed, and estimates of any other potential tax obligations of the Debtors determined by the Post-Confirmation Debtor Representative.

"*Affiliate*" has the meaning set forth in § 101(2) of the Bankruptcy Code.

"*Allowed*" means, when used with respect to a Claim or Interest, (i) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated that has not been superseded by a filed Proof of Claim and as to which the Debtors or any other party in interest has not filed an objection on or before the 180th day after the Effective Date (unless such date is extended, for cause, by the Bankruptcy Court upon request of the Post-Confirmation Debtor or Recovery Trustee); (ii) any Claim (or portion thereof) that is set forth in a timely filed Proof of Claim or Interest as to which no action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court; or (iii) any Claim (or portion thereof) or Interest that is allowed (a) pursuant to the Settlement Agreement and Settlement Approval Orders, (b) pursuant to the terms of the Plan, (c) in any contract, instrument, indenture or other agreement entered into in connection with the Plan, (d) by Final Order of the Bankruptcy Court, or (e) with respect to an Administrative Claim only, (1) that was incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (2) that is not otherwise Disputed.

"*Avoidance Actions*" mean all claims and Causes of Action arising under chapter 5 of the Bankruptcy Code, including under §§ 506(d), 510(c), 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553, and any state law equivalents, whether or not such claims or causes of action seek an affirmative recovery or are raised as a defense to or offset against the allowance of a Claim.

"*Ballot*" means the ballot on which holders of Impaired Claims and Interests will, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan.

"*Bankruptcy Code*" means title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under § 2075 of title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as well as the general and local rules of the Bankruptcy Court, as they may be amended from time to time.

"*Business Day*" means any day other than a Saturday, Sunday or legal holiday, as that term is defined in Bankruptcy Rule 9006(a)(6).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any and all actions, proceedings, causes of action, obligations, suits, judgments, damages, demands, debts, accounts, controversies, agreements, promises, liabilities, legal remedies, equitable remedies, and claims (and any rights to any of the foregoing), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, known or unknown, foreseen or unforeseen, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured, whether asserted

2

or assertable directly or derivatively, in law, equity or otherwise including any recharacterization, subordination, avoidance or other claim arising under or pursuant to § 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law. In the case of the Debtors and Estates, the Causes of Action of the Debtors and Estates include, without limitation, any and all claims against former officers and directors of any of the Debtors, the Shared Recovery Matters, and the Estate Claims.

"*Chapter 11 Case*" or "*Chapter 11 Cases*" means (i) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (ii) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under Case No. 10-11255(CSS).

"*Claim*" means any claim, as defined in § 101(5) of the Bankruptcy Code, against a Debtor.

"*Claims Bar Date*" means that certain order entered on June 10, 2010 [Docket No. 237] which established August 12, 2010 as the deadline for filing proofs of claim (including WARN Act Claims but excluding claims of governmental agencies) for any Claims against the Debtors that arose prior to the Petition Date and October 12, 2010 as the deadline for filing proofs of claim for any Claims against the Debtors of governmental agencies.

"*Claims Objection Deadline*" means the first Business Day that is 180 days after the occurrence of the Effective Date, unless such date is extended by the Bankruptcy Court, pursuant to which the Recovery Trust and Post-Confirmation Debtor (as applicable) may object to Claims pursuant to the Plan.

"*Class*" means a class of Claims or Interests as set forth in Article 4.

"*Class 3 Satisfaction*" has the meaning ascribed to this term in Section 4.3 of the Plan.

"*Class 3 Trust Interest*" means a proportional beneficial interest in the Recovery Trust to be provided to each holder of an Allowed Class 3 Claim pursuant to Section 4.3 of the Plan and the Recovery Trust Agreement.

"*Class 4 Satisfaction*" has the meaning ascribed to this term in Section 4.4 of the Plan.

"*Class 4 Trust Interest*" means a proportional beneficial interest in the Recovery Trust to be provided to each holder of an Allowed Class 4 Claim pursuant to Section 4.4 of the Plan and the Recovery Trust Agreement.

"*Class 6 Trust Interest*" means a proportional beneficial interest in the Recovery Trust to be provided to each holder of an Allowed Class 6 Interest pursuant to Section 4.6 of the Plan and the Recovery Trust Agreement.

"*Class Action*" means the consolidated securities class action captioned *In re DHB Industries, Inc. Class Action Litigation*, Case No. 05-cv-4296, pending in the United States District Court for the Eastern District of New York.

"*Class Action Claims*" means any Claims arising out of or relating to the claims asserted in the Class Action.

"*Collateral*" means any property or interest in property of the Debtors subject to a Lien securing the payment or performance of a Claim.

"*Compensation Procedures Order*" means the *Administrative Order Establishing Procedures for Interim Compensation Pursuant to Section 331 of the Bankruptcy Code* [Docket No. 114], entered May 12, 2010.

"*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases of the Debtors in accordance with Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court concerning Confirmation of the Plan pursuant to §§ 1128 and 1129, as such hearing may be adjourned continued from time to time.

"*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

"*Creditor*" means any creditor, as defined in § 101(10) of the Bankruptcy Code.

"*Creditors' Committee*" means the statutory committee of unsecured creditors of the Debtors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to § 1102, as the same may be reconstituted from time to time.

"*Debtor*" or "*Debtors*" means SS Body Armor I, SS Body Armor II, SS Body Armor III and PBSS, as applicable, each in their respective capacities as debtors and debtors in possession in the Chapter 11 Cases.

"*Derivative Action*" means that certain consolidated derivative action captioned *In re DHB Industries, Inc. Derivative Litigation*, Case No. 05-cv-04345, pending in the United States District Court for the Eastern District of New York.

"*Derivative Counsel*" means plaintiffs' counsel in the Derivative Action, namely the Law Offices of Thomas G. Amon and Robbins Arroyo LLP.

"*Disallowed*" means, when used with respect to a Claim or an Interest, a Claim or an Interest that has been disallowed pursuant to a Final Order or by operation of the Bankruptcy Code and Bankruptcy Rules.

"*Disclosure Statement*" means the disclosure statement that relates to the Plan, as such disclosure statement may be amended, modified or supplemented (including all exhibits and schedules annexed thereto or referred to therein).

"*Disputed*" means, when used with respect to a Claim or Interest, that portion (or the whole) of a Claim or Interest that is not an Allowed Claim or Interest, and as to which (i) a Proof of Claim has been filed or deemed filed under applicable law or order of the Bankruptcy Court; (ii) an objection has been or may be timely filed (including for the subordination of any Claim or Interest); or (iii) such objection has not been (a) withdrawn, (b) overruled or denied pursuant to a Final Order or (c) granted pursuant to a Final Order. Before the time that an objection has been or may be filed, a Claim or Interest shall be considered to be Disputed (i) if the amount or classification of the Claim or Interest specified in any Proof of Claim or Interest exceeds or varies from the amount or classification of any corresponding Claim or Interest scheduled by the Debtor in its Schedules or reflected in its stock register, as applicable, to the extent of such excess or variance; (ii) in its entirety, if any corresponding Claim or Interest scheduled by the Debtor has been scheduled as contingent, unliquidated or disputed in its Schedules; or (iii) in its entirety, if no corresponding Claim or Interest has been scheduled by the Debtor in its Schedules or list of equity security holders or reflected in its stock register. It may also refer to a Disputed Claim in a specified class; for example, a Disputed General Unsecured Claim is a Disputed Claim in the Class of General Unsecured Claims.

"*Disputed Claims Reserve Account*" has the meaning set forth in Section 7.6.

"*Distribution*" means the distributions to be made pursuant to the Plan and/or the Recovery Trust Agreement.

"*Distribution Record Date*" means the date that the Confirmation Order is entered by the Bankruptcy Court.

"*Effective Date*" means the first Business Day after which all provisions, terms and conditions specified in Section 10.2 of the Plan have been satisfied or waived pursuant to Section 10.3 of the Plan.

"*Entity*" has the meaning set forth in § 101(15) of the Bankruptcy Code.

"*Equity Committee*" means the statutory committee of equity holders of the Debtors appointed in the Chapter 11 Cases by the U.S. Trustee pursuant to § 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time

"*Estate*" means, as to a Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to § 541 of the Bankruptcy Code.

"*Estate Claims*" means (i) any and all claims and causes of action arising under chapter 5 of the Bankruptcy Code, including under §§ 506(d), 510(c), 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553, and any state law equivalents, whether or not such claims or causes of action seek an affirmative recovery or are raised as a defense to or offset against the allowance of a claim; and (ii) any and all claims and proceeds under insurance policies of the Debtors and contracts related to such insurance policies; provided, however, that nothing in this definition of Estate Claims shall be construed to limit, modify or otherwise affect the definition of Shared Recovery Matters as that term is used herein and/or in the Settlement Agreement.

"*Exculpated Party*" means each of (i) the Debtors, (ii) the postpetition directors and officers of the Debtors (whether currently serving in such capacity or having previously served postpetition), (iii) the Creditors' Committee, the Equity Committee and their respective former and current members (in such capacity), (iii) the postpetition professionals, advisors, agents, accountants, investment bankers, consultants, attorneys, employees, and representatives (in each case solely in their capacity as such, and whether currently serving or having previously served postpetition) of the Debtors, the Creditors' Committee and the Equity Committee; (iv) Plaintiffs' Counsel (in its capacity as counsel for the Plaintiffs in the Class Action); (v) Derivative Counsel (in its capacity as plaintiffs' counsel in the Derivative Action); and (vi) Lowenstein Sandler LLP (in its capacity as bankruptcy counsel to the Plaintiffs, Plaintiffs' Counsel and Derivative Counsel).

"*Executory Contracts*" and "*Unexpired Leases*" means any executory contract or unexpired lease, as appropriate, as referenced in § 365, to which one or more of the Debtors is a party.

"*Federal Judgment Rate*" means the interest rate on federal judgments, in effect for the calendar week of the Petition Date, and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.

"*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek *certiorari* has expired and no appeal or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which *certiorari* could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice. Such order or judgment shall be a Final Order notwithstanding that it still may be subject to § 502(j) or § 1144 of the Bankruptcy Code or Bankruptcy Rules 9023 or 9024.

"*General Unsecured Claim*" means any Claim that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Secured Claim, Subordinated Unsecured Claim, Class Action Claim, or Other Subordinated Claim.

"*Impaired*" has the meaning set forth in § 1124 of the Bankruptcy Code.

"*Interest*" means any equity security in a Debtor as defined in § 101(16), including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

"*Lien*" has the meaning set forth in § 101(37) of the Bankruptcy Code.

DOCS_LA:290638.4 70934/001

"*Net Distributable Recovery Trust Proceeds*" means the Cash proceeds of the Recovery Trust Assets after payment of or reserve for all Recovery Trust expenses and any other expenses, costs, charges and claims provided for to be paid prior to distributions to Recovery Trust beneficiaries under the Recovery Trust Agreement, which proceeds shall be distributed to the holders of the Recovery Trust Interests pursuant to the Plan and Recovery Trust Agreement.

"*New Common Stock*" means the one (1) authorized share of common stock, par value $.01 per share, of the Post-Confirmation Debtor, to be issued as of the Effective Date and held by the Recovery Trustee on behalf of the beneficiaries of the Recovery Trust.  The share of New Common Stock issued pursuant to the Plan will be deemed upon such issuance, validly issued, fully paid and non-assessable, and shall be uncertificated and non-transferable, except by operation of law.

"*Notice and Claims Agent*" means Epiq Bankruptcy Solutions, LLC, 777 Third Avenue, 12th Floor, New York, New York 10017, which has been appointed as the Debtors' notice, claims and balloting agent, or such other Entity as the Bankruptcy Court may appoint as the Debtors' notice, claims and balloting agent.

"*Old Common Stock Interests*" means all of the authorized, issued and outstanding shares of the common stock of SS Body Armor I, Inc. (formerly known as Point Blank Solutions, Inc.) as of the Petition Date, which are not Subordinated Common Stock Interests.

"*Ordinary Course Claim*" means an Administrative Claim incurred by a Debtor in the ordinary course of business based on either (i) post-petition accounts payable; (ii) post-petition employee-related expenses and claims; or (iii) post-petition contracts (including capital leases), but specifically excluding Professional Fee Claims.

"*Other Old Equity Interests*" means any and all of the equity security interests in the Debtors other than the Old Common Stock Interests and Subordinated Common Stock Interests, including, without limitation, the Unexercised Options.

"*Other Priority Claim*" means any Claim accorded priority in right of payment under § 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"*Other Subordinated Claims*" means any Claims that have been subordinated in priority and/or right of payment to all other Claims against and Interests in the Debtors.

"*PBSS*" means PBSS, LLC, a Delaware limited liability company.

"*Person*" means a person, as defined in § 101(41) of the Bankruptcy Code.

"*Petition Date*" means April 14, 2010.

"*Plaintiffs*" means the lead plaintiffs in the Class Action, on behalf of themselves and all members of the class previously certified in the Class Action.

"*Plaintiffs' Counsel*" means Plaintiffs' counsel in the Class Action, namely Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP.

"*Plaintiffs' Loan*" means a non-recourse, interest free loan in the amount of $20,000,000, to be made to the Estates by Plaintiffs, as provided for in Section 6.1 of the Plan and the Settlement Agreement.

"*Plan*" means this *Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors* and all exhibits hereto, including the Plan Supplement, which is incorporated herein by reference, as the same may be amended, modified or supplemented from time to time, in each case, in form and substance acceptable to the Plan Proponents.

"*Plan Proponents*" means the Debtors and the Creditors' Committee.

"*Plan Supplement*" means Plan related documents, schedules and exhibits to be Filed with the Court by the Plan Supplement Filing Date, which may consist of one or multiple filings, including the Recovery Trust Agreement, identification of the Recovery Trustee and the members of the Recovery Trust Committee and the Post-Confirmation Debtor Oversight Committee, the by-laws governing the Post-Confirmation Debtor and disclosure of related pertinent information.

"*Plan Supplement Filing Date*" means the date on which the Plan Supplement shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court.

"*Post-Confirmation Debtor*" means SS Body Armor I, Inc., on and after the Effective Date, which entity shall continue and remain in existence on and after the Effective Date solely to carry out the Post-Confirmation Debtor Functions.

"*Post-Confirmation Debtor Functions*" means the following functions and duties to be carried out by the Post-Confirmation Debtor (through the Post-Confirmation Debtor Representative and subject to the Post-Confirmation Debtor Oversight Committee) on and after the Effective Date: (i) the prosecution, pursuit, collection, settlement and/or any other disposition of Settlement Recoveries; (ii) the distribution of any SOX Recoveries; (iii) other than as part of the Recovery Trust Functions, the effectuation of the Settlement Agreement and Plan including the prosecution and any other disposition of all litigation related to any appeals in respect to the approval and/or implementation of the Settlement Agreement and Plan; (iv) the prosecution and any other disposition of all litigation related to the matters captioned *Jeffrey R. Brooks Individual Retirement Account v. James R. Henderson*, Index No. 650781/2011 (N.Y. Sup. Ct., New York County), *Point Blank Solutions Inc. v. Jeffrey R. Brooks Individual Retirement Account, et al.*, Adv. No. 11-51759 (CSS) (Bankr. D. Del.), and *David H. Brooks v. Point Blank Solutions, Inc., et al.*, Civil Action No. 11-00391 (SLR) (D. Del.); (v) the winding up of the affairs of the Post-Confirmation Debtor and the other Debtors, if and to the extent necessary, including the taking of any steps to terminate the corporate existence of the Debtors; (vi) the payment of the reasonable fees and expenses of the Post-Confirmation Debtor Representative and his professionals and agents; (vii) the payment of all Allowed Administrative Claims (including Professional Fee Claims), Priority Tax Claims and Other Priority Claims, pursuant to the Plan (including, as provided in Section 6.3(a) of the Plan); (viii) the preparation and filing of tax returns of the Debtors to the extent required by law, and, upon consultation with the Post-Confirmation Debtor Oversight Committee and Recovery Trustee, the payment of any valid tax obligations of the Debtors (including, without limitation, any Allowed Administrative Claims and Allowed Priority Tax Claims asserted by taxing authorities), which payment(s) will be funded with cash out of the Administrative/Priority/Tax Claims Reserve or otherwise by the Recovery Trust with Recovery Trust Assets as set forth in Section 6.3(a) of the Plan; (ix) transferring to the Recovery Trust any Settlement Recoveries and SOX Recoveries (after the payment of or reserve for all of the Post-Confirmation Debtor's expenses, and excluding any funds required to be maintained in the Post-Confirmation Escrow); (x) the filing, prosecution, settlement and/or other disposition of any and all objections to asserted administrative and priority claims; (xi) the incurring of post-confirmation debt to fund replenishment of the Post-Confirmation Debtor Reserve to the extent the Post-Confirmation Reserve is insufficient, subject to the consent of the Post-Confirmation Debtor Oversight Committee and (xii) the taking of any other actions not inconsistent with the provisions hereof that the Post-Confirmation Debtor, after consultation with the Recovery Trustee, deems reasonably necessary or desirable in connection with the foregoing functions.

"*Post-Confirmation Debtor Oversight Committee*" means a three member oversight committee comprised of the Recovery Trustee, Mr. Rick Rosenbloom, and a representative selected by the Equity Committee that will oversee the functions and activities of the Post-Confirmation Debtor.

"*Post-Confirmation Debtor Reserve*" means the sum of $1,000,000, initially funded with proceeds of the Plaintiffs' Loan and/or the Debtors' available cash on hand as of the Effective Date (excluding any funds required to be maintained in the Post-Confirmation Escrow), to be used by the Post-Confirmation Debtor in carrying out the Post-Confirmation Debtor Functions which reserve may be later replenished pursuant to the Post-Confirmation Debtor Representative's authority as set forth herein.

DOCS_LA:290638.4 70934/001

"*Post-Confirmation Debtor Representative*" means Mr. T. Scott Avila, in his capacity as such, and any successor thereto, who, as the sole representative and officer of the Post-Confirmation Debtor, shall carry out the Post-Confirmation Debtor Functions pursuant to the Plan, and any successor thereto.

"*Post-Confirmation Service List*" means a service list comprised of the Post-Confirmation Debtor Representative and Recovery Trustee and their respective counsel, the Office of the United States Trustee, and any other party that specifically requests the Post-Confirmation Debtor Representative and Recovery Trustee in writing and filed with the Bankruptcy Court that such party be served with the Bankruptcy Court filings of the Post-Confirmation Debtor Representative and Recovery Trustee on and after the Effective Date.

"*Priority Tax Claim*" means any Claim of a governmental unit, as defined in § 101(27) of the Bankruptcy Code, of the kind specified in § 507(a)(8) of the Bankruptcy Code.

"*Professional*" means an Entity (i) retained pursuant to a Final Order in accordance with §§ 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to §§ 328, 329, 330, 331 and 363, or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to § 503(b)(4).

"*Professional Fee Claim*" means any Claim asserted by a Professional or other Entity for compensation for legal, financial advisory, accounting and other services and reimbursement of expenses Allowed pursuant to §§ 328, 330(a), 331, 363, 503(b) or 1103 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date.

"*Pro Rata*" means, with reference to any Distribution on account of a Claim against (or Interest in) a given Class, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Claim (or Interest) bears to the aggregate amount of all Claims (or Interests) in the identical Class that have not been Disallowed against each Debtor.

"*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

"*Recoveries/Proceeds*" means the recoveries or proceeds realized by any of the Settlement Parties arising out of the Shared Recovery Matters, the Escrowed Funds and the Plaintiffs' Stock Share.

"*Recovery Trust*" means that certain "Recovery Trust" established for the purpose of carrying out the Recovery Trust Functions, subject to the terms of the Recovery Trust Agreement.

"*Recovery Trust Agreement*" means the Recovery Trust Agreement substantially in the form to be filed as a Plan Supplement.

"*Recovery Trust Assets*" means the (i) the Recovery Trust Reserve, (ii) the Estate Claims, (iii) any Settlement Recoveries, (iv) any SOX Recoveries, (v) the share of the New Common Stock to be issued pursuant to the Plan, (vi) any remaining Cash in the Administrative/Priority/Tax Claims Reserve after the exercise of the Post-Confirmation Debtor Representative's distribution powers set forth in Section 6.3(a) of the Plan, and (vii) any other assets of the Debtors that have not been liquidated, abandoned or otherwise disposed of as of the Effective Date (including, without limitation, any actions involving the Debtors pending as of the Effective Date that are not resolved as part of the Settlement Agreement); provided, however, that the Recovery Trust Assets do not include any funds required to be maintained in the Post-Confirmation Escrow.

"*Recovery Trust Committee*" means that three-member oversight committee that will oversee the functions and activities of the Recovery Trustee in relation to the Recovery Trust.

"*Recovery Trust Functions*" means the following functions and duties to be carried out by the Recovery Trust (through the Recovery Trustee) on and after the Effective Date: (i) the filing, prosecution, settlement and/or other disposition of any and all objections to proofs of claim; (ii) the payment of the reasonable fees and expenses of the Recovery Trustee and his professionals and agents, without need of further Court approval or notice; (iii) the

incurring of post-confirmation debt to fund replenishment of the Recovery Trust Reserve to the extent the Recovery Trust Reserve is insufficient; (iv) the filing, prosecution, settlement and/or other disposition of any and all Estate Claims; (v) the distribution of the proceeds of the Recovery Trust Assets (after payment of or reserve for all Recovery Trust expenses) to the Recovery Trust beneficiaries pursuant to the Recovery Trust agreement; and (vi) the liquidation or other disposition of any other Recovery Trust Asset.

*"Recovery Trust Interests"* means the Class 3 Trust Interests, Class 4 Trust Interests and Class 6 Trust Interests. The Recovery Trust Interests shall be uncertificated and non-transferable, except by will, intestate succession, or operation of law, or as otherwise provided in the Recovery Trust Agreement.

*"Recovery Trust Reserve"* means the sum of $2,000,000, funded from any source other than the funds required to be maintained in the Post-Confirmation Escrow, to be placed into the Recovery Trust to be used by the Recovery Trustee in carrying out his duties and obligations which reserve may be later replenished pursuant to the Recovery Trustee's authority as set forth herein.

*"Recovery Trustee"* means the trustee for the Recovery Trust pursuant and subject to the terms of the Recovery Trust Agreement. The Recovery Trustee shall be selected by the Creditors' Committee, in consultation with the Equity Committee, and his or her identity, proposed compensation and other pertinent information will be provided in a Plan Supplement.

*"Rejection Claim"* means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

*"Released Party"* means each of (in each case solely in their respective capacities) (i) the postpetition directors and officers of the Debtors (whether currently serving in such capacity or having previously served postpetition); (ii) the Creditors' Committee and the former and current members thereof; (iii) the Equity Committee and the former and current members thereof; (iv) the postpetition professionals, advisors, agents, accountants, investment bankers, consultants, attorneys, employees, and representatives (in each case solely in their capacity as such, and whether currently serving or having previously served postpetition) of the Debtors, the Creditors' Committee and the Equity Committee; (v) Plaintiffs' Counsel (in its capacity as counsel for the Plaintiffs in the Class Action); (vi) Derivative Counsel (in its capacity as plaintiffs' counsel in the Derivative Action); and (vii) Lowenstein Sandler LLP (in its capacity as bankruptcy counsel to the Plaintiffs, Plaintiffs' Counsel and Derivative Counsel).

*"Releasing Parties"* has the meaning ascribed to this term in Section 9.3 of the Plan.

*"Schedules"* means, collectively, the *Schedules of Assets and Liabilities* and *Statements of Financial Affairs* filed by the Debtors pursuant to § 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as may be amended from time to time before entry of a final decree.

*"Secured"* means, when referring to a Claim, (i) secured by a Lien on property in which the Estate of the Debtor against which the Claim is asserted has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order and not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, to the extent of the value of the Creditor's interest in such Estate's interest in such property as determined pursuant to § 506(a) of the Bankruptcy Code; (ii) subject to setoff pursuant to § 553 of the Bankruptcy Code to the extent of the value of the property subject to setoff and solely to the extent such right of setoff is exercised prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court; or (iii) otherwise Allowed by Final Order of the Court (which order may be the Confirmation Order) as a Secured Claim.

*"Settlement Agreement"* means that certain *Amended Settlement Agreement* dated May 4, 2015 and the *Addendum to Amended Settlement Agreement* dated June 10, 2015, by and among the Settlement Parties, a true and correct copy of which is attached hereto as **Exhibit A**.

*"Settlement Approval Orders"* means any order of the Bankruptcy Court approving the Settlement Agreement in the Chapter 11 Cases, and any order of the EDNY District Court approving the Settlement Agreement

in the Class Action and/or Derivative Action.  Any references herein to the Settlement Agreement are subject to any modifications, conditions or other terms related thereto set forth in the Settlement Approval Orders.

"*Settlement Parties*" means the Debtors, the Plaintiffs, Plaintiffs' Counsel, and Derivative Counsel, who are all parties to the Settlement Agreement.

"*Settlement Recoveries*" means the Debtors' Share (as defined in the Settlement Agreement).

"*Shared Recovery Matters*" means the following Causes of Action:  (1) any and all rights or claims of the Settlement Parties against (a) David H. Brooks ("*David Brooks*"); (b) Tactical Armor Products, Inc. ("*TAP*"); (c) any entities other than the Debtors or the Brooks Family Entities (as defined below) in which David Brooks has a direct or indirect interest (collectively and with TAP, the "*David Brooks Entities*") that filed claims to assets restrained in the civil forfeiture proceeding captioned *U.S. v. All Assets Listed on Schedule I Attached Hereto and All Proceeds Traceable Thereto*, Case No. 10-cv-04750 (E.D.N.Y.) (the "*Civil Forfeiture Proceeding*") and/or filed claims in the Chapter 11 Cases, including without limitation David Brooks International Inc.; (d) Terry Brooks, Victoria Brooks, Andrew Brooks and Elizabeth Brooks (collectively, the "*Brooks Family*"); (e) any entities other than the Debtors in which the Brooks Family has a direct or indirect interest (collectively, the "*Brooks Family Entities*") that filed claims to assets restrained in the Civil Forfeiture Proceeding and/or filed claims in the Chapter 11 Cases, including without limitation any such entities of which Jeffrey R. Brooks ("*Jeffrey Brooks*") is a trustee or manager; (f) Jeffrey Brooks; (g) the Jeffrey R. Brooks Individual Retirement Account  (the "*Brooks IRA*"); and (h) any entities other than the Debtors or the Brooks Family Entities in which Jeffrey Brooks and/or the Brooks IRA have a direct or indirect interest or of which Jeffrey Brooks is a trustee or manager (collectively, the "*Jeffrey Brooks Entities*") that filed claims to assets restrained in the Civil Forfeiture Proceeding and/or filed claims in the Chapter 11 Cases (provided, however, that the Class Action and Derivative Action will be dismissed with prejudice as set forth in the Settlement Agreement); (2) any and all rights or claims of the Settlement Parties to all cash, all cash equivalents and all securities held in certain accounts (collectively, the "*Restrained Cash Assets*") restrained by the U.S. Government in connection with the Civil Forfeiture Proceeding and/or the criminal action captioned *U.S. v. Schlegel, et al.*, Case No. 06-cr-00550 (E.D.N.Y.) (the "*Criminal Action*"), which Restrained Cash Assets are identified as Asset Nos. 86-103 on Schedule I to the complaint in the Civil Forfeiture Proceeding ("*Schedule I*"); (3) any and all rights or claims of the Settlement Parties to the non-cash assets (the "*Restrained Non-Cash Assets*") restrained by the U.S. Government in connection with the Civil Forfeiture Proceeding and/or the Criminal Action, which Restrained Non-Cash Assets are identified as Asset Nos. 1-85 and 104-113 on Schedule I; (4) any and all rights or claims of the Settlement Parties to the cash portion of David Brooks' bail bond, which totals approximately $19 million; and (5) any and all other rights or claims of the Settlement Parties in the Civil Forfeiture Proceeding and/or the Criminal Action, including without limitation the Debtors' restitution award, the investor victims' restitution award, and any and all other rights or claims of the Settlement Parties in connection with the restitution order issued by the EDNY District Court in the Criminal Action against David Brooks, Sandra Hatfield and Dawn Schlegel.

"*SOX Recoveries*" means any recoveries obtained by the SEC pursuant to Section 304 of the Sarbanes Oxley Act of 2002 (15 U.S.C. § 7243) in *SEC v. David H. Brooks*, No. 07-61526 (S.D. Fla.), that are turned over to the Debtors or the Debtors' successors.  *SEC v. David H. Brooks*, is currently stayed until the conclusion of the criminal proceedings and any appeals filed in *United States v. Brooks*, No. 06-CR-550 (E.D.N.Y.).  In order for there to be any SOX Recoveries, *SEC v. David H. Brooks* will need to be reopened and when the case is reopened, the SEC will have to affirmatively decide to pursue a remedy under Section 304 of the Sarbanes-Oxley Act.

"*SS Body Armor I*" means SS Body Armor I, Inc. (f/k/a Point Blank Solutions Inc.).

"*SS Body Armor II*" means SS Body Armor II, Inc. (f/k/a Point Blank Body Armor, Inc.).

"*SS Body Armor III*" means SS Body Armor III, Inc. (f/k/a Protective Apparel Corporation of America).

"*Subordinated Common Stock Interest*" means authorized, issued and outstanding shares of the common stock of SS Body Armor I, Inc. as of the Petition Date, which shares have been subordinated in payment and/or rights to the Old Common Stock Interests.

"*Subordinated Unsecured Claim*" means any Claim that has been subordinated in priority and right to payment of General Unsecured Claims and includes, without limitation, any Claim for any fine, penalty, or forfeiture or for exemplary or punitive damages, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim.

"*Unexercised Options*" means any warrants, options or contractual rights to purchase or acquire Interests in SS Body Armor I that had not been exercised as of the Petition Date and all rights arising with respect thereto.

"*Unimpaired*" means any Class, or any Claim or Interest, that is not Impaired.

"*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

"*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717.

"*Voting Deadline*" means 5:00 p.m. (prevailing Eastern Time) on the date established by order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

## 1.2 *Rules of Interpretation*

For purposes of the Plan, (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Article __" and "Section __.__" are references to articles or sections hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (h) any immaterial effectuating provisions may be interpreted by the Liquidating Debtors in a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

## 1.3 *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## 1.4 *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that governance matters relating to the Debtors or the Post-Confirmation Debtor, as applicable, not incorporated or organized in Delaware shall be governed by the laws of the jurisdiction of incorporation or organization of the applicable Debtor or Post-Confirmation Debtor.

## 1.5 *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

# ARTICLE 2
# CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1**     *General Rules of Classification*

Pursuant to § 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

**2.2**     *Administrative Claims and Priority Tax Claims*

As provided in § 1123(a) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for voting or receiving Distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in Article 3 of the Plan.

**2.3**     *Summary of Classification*

The following chart represents the general classification of Claims and Interests against the Debtors pursuant to the Plan:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Not Impaired | No |
| 2 | Secured Claims | Not Impaired | No |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Subordinated Unsecured Claims | Impaired | Yes |
| 5 | Class Action Claims | Impaired | Yes |
| 6 | Old Common Stock Interests | Impaired | Yes |
| 7 | Subordinated Common Stock Interests | Impaired | No (deemed to reject) |
| 8 | Other Old Equity Interests | Impaired | No (deemed to reject) |
| 9 | Other Subordinated Claims | Impaired | No (deemed to reject) |

# ARTICLE 3
# TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

In accordance with § 1123(a)(1), Administrative Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article 4 and shall have the treatment set forth in this Article 3.

**3.1**     *Administrative Claims*

(a)     *Administrative Claims*

Except to the extent that an Allowed Administrative Claim is not yet due and owing or to the extent a holder of an Allowed Administrative Claim has been paid prior to the Effective Date or agrees to different treatment, in full satisfaction, settlement, and release of and in exchange for each Allowed Administrative Claim (excluding any Professional Fee Claim), the holder thereof shall receive Cash from the Post-Confirmation Debtor Representative equal to the amount of such Allowed Administrative Claim on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date on which such Administrative Claim becomes Allowed by Final Order.  Allowed Administrative Claims not yet due and owing as of the Effective Date shall be paid by the

Post-Confirmation Debtor Representative in the ordinary course of business. Cash in the Administrative/Priority/Tax Claims Reserve shall be used to pay all Allowed Administrative Claims.

Except as otherwise provided in this Article 3, requests for payment of Administrative Claims must be filed and served on the Recovery Trust and Post-Confirmation Debtor Representative no later than the applicable Administrative Claims Bar Date (unless previously properly filed and served in accordance with the applicable Administrative Claims Bar Date Order). Holders of Administrative Claims (other than Claims for Professionals' fees and expenses) that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Recovery Trust or the Post-Confirmation Debtor or their property, and such Administrative Claims shall be deemed satisfied as of the Effective Date. Objections to requests for payment of Administrative Claims filed after the Effective Date must be filed and served on the Recovery Trust and the requesting party by the later of (i) seventy-five (75) days after the Effective Date, and (ii) forty-five (45) days after the filing of the subject Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to (i) any Administrative Claim previously Allowed by a Final Order, including any Administrative Claim expressly Allowed under the Plan, and (ii) any Ordinary Course Claim.

(b)    *Professional Fee Claims*

Any Professional or other Entity asserting a Professional Fee Claim must file and serve on respective counsel for the Debtors, the Post-Confirmation Debtor Representative, and the Recovery Trust and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Claim no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

On and after the Effective Date, any requirement that a Professional comply with §§ 327 through 331 and 1103 and seek approval from the Bankruptcy Court in connection with such Professional's retention or compensation for services rendered after such date shall terminate, and the Post-Confirmation Debtor and the Recovery Trust may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action (including without the need to file a fee application), order or approval of the Bankruptcy Court, except as other expressly provided in the Plan.

Except as otherwise agreed by a holder of an Allowed Professional Fee Claim, the holder thereof shall receive Cash from the Post-Confirmation Debtor Representative equal to the amount of such Allowed Professional Fee Claim on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date on which such Professional Fee Claim becomes payable pursuant to the Compensation Procedures Order or other order of the Bankruptcy Court, in full satisfaction, settlement, and release of and in exchange for each Allowed Professional Fee Claim.

**3.2    *U.S. Trustee Fees***

On the Effective Date, the Debtors shall pay all U.S. Trustee Fees that are due and owing as of the Effective Date.

**3.3    *Priority Tax Claims***

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date, or agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, at the election of the Plan Proponents, (i) Cash on the Effective Date in an amount equal to such Allowed Priority Tax Claim (without interest), or (ii) regular installment payments in Cash of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim over a period ending not later than five years after the Petition Date. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

# ARTICLE 4
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**4.1**    ***Treatment of Allowed Class 1 Claims (Other Priority Claims)***

(a)     *Classification*:  Class 1 consists of Other Priority Claims against the Debtors.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim (i) has been paid by the Debtors prior to the Effective Date or (ii) agrees to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive from the Post-Confirmation Debtor Representative, in full satisfaction, settlement, and release of, and in exchange for such Other Priority Claim, Cash equal to the amount of such Allowed Other Priority Claim on the later of the date which is on or as soon as reasonably practicable after the Effective Date and the date such Other Priority Claim becomes an Allowed Claim.

(c)     *Voting*:  Class 1 is not Impaired.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.2**    ***Treatment of Allowed Class 2 Claims (Secured Claims)***

(a)     *Classification*:  Class 2 consists of Secured Claims against the Debtors.  Each Secured Claim, to the extent secured by a Lien on any property or interest in property of the Debtors different from that securing any other Secured Claim, shall be treated as being in a separate sub-Class for the purpose of receiving Distributions under the Plan.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Secured Claim has been paid by the Debtors, in whole or in part, prior to the Effective Date, on the Effective Date, at the option of the Plan Proponents, each holder of an Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Secured Claim, (y) return of the collateral securing such Claim or (z) such other treatment as may be agreed to by the holder. The Debtors shall inform each holder of a Secured Claim of the treatment of such Creditor's Secured Claim not less than ten (10) days prior to the Confirmation Hearing.

(c)     *Voting*: Class 2 is not Impaired.  Therefore, holders of Secured Claims not entitled to vote to accept or reject the Plan.

**4.3**    ***Treatment of Allowed Class 3 Claims (General Unsecured Claims)***

(a)     *Classification*:  Class 3 consists of General Unsecured Claims against the Debtors.

(b)     *Treatment*:  On the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such General Unsecured Claim, an allocated Class 3 Trust Interest, which shall entitle the holder its *pro rata* share of funds available to holders of Class 3 Trust Interests pursuant to the Recovery Trust Agreement.  The *pro rata* share of funds of a particular holder of a Class 3 Trust Interest shall be determined by multiplying (a) the total net funds available for distribution to holders of Allowed Class 3 Claims under the Recovery Trust Agreement and (b) the ratio of (x) the Allowed Class 3 Claim amount of the holder to (y) the aggregate amount of all Allowed Class 3 Claims.  In accordance with the Recovery Trust Agreement, each holder of a Class 3 Trust Interest shall receive distribution(s) in Cash from the Recovery Trust of said holder's *pro rata* share of the Net Distributable Recovery Trust Proceeds, up to the Allowed amount of said holder's Class 3 Claim plus postpetition interest at the Federal Judgment Rate.  Upon and in the event of the holders of Class 3 Trust Interests receiving payment from the Recovery Trust in an aggregate amount up to the Allowed amount of their Class 3 Claim plus such postpetition interest at the Federal Judgment Rate, the "**Class 3 Satisfaction**" shall be deemed to have occurred.  Notwithstanding any of the foregoing, in the event that substantive consolidation of the Debtors and Estates is approved by the Bankruptcy Court as provided in Section 6.8 of the Plan, any and all General Unsecured Claims held by a Debtor against another Debtor shall be waived, released and

expunged without further order of the Bankruptcy Court, and no distribution hereunder or under any other provision of the Plan shall be made on account of any inter-Debtor claim.

(c)     *Voting*:  General Unsecured Claims are Impaired.  Therefore, holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**4.4**     ***Treatment of Allowed Class 4 Claims (Subordinated Unsecured Claims)***

(a)     *Classification*:  Class 4 consists of Subordinated Unsecured Claims against the Debtors.

(b)     *Treatment*:  On the Effective Date, each holder of an Allowed Subordinated Unsecured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Subordinated Unsecured Claim, an allocated Class 4 Trust Interest, which shall entitle the holder its *pro rata* share of funds available to holders of Class 4 Trust Interests pursuant to the Recovery Trust Agreement.  The *pro rata* share of funds of a particular holder of a Class 4 Trust Interest shall be determined by multiplying (a) the total net funds available for distribution to holders of Allowed Class 4 Claims under the Recovery Trust Agreement and (b) the ratio of (x) the Allowed Class 4 Claim amount of the holder to (y) the aggregate amount of all Allowed Class 4 Claims.  The Class 4 Trust Interests shall be subordinated in right of payment to the Class 3 Trust Interests.  In accordance with the Recovery Trust Agreement, each holder of a Class 4 Trust Interest (if any) shall receive distribution(s) in Cash from the Recovery Trust of said holder's *pro rata* share of any Net Distributable Recovery Trust Proceeds (if any) remaining *after and subject to* Class 3 Satisfaction, up to the Allowed amount of said holder's Class 4 Claim plus postpetition interest at the Federal Judgment Rate.  Upon and in the event of the holders of Class 4 Trust Interests (if any) receiving payment from the Recovery Trust in an aggregate amount up to the Allowed amount of their Class 4 Claim plus such postpetition interest at the Federal Judgment Rate, the "**Class 4 Satisfaction**" shall be deemed to have occurred.  Notwithstanding any of the foregoing, in the event that substantive consolidation of the Debtors and Estates is approved by the Bankruptcy Court as provided in Section 6.8 of the Plan, any and all Subordinated Unsecured Claims (if any) held by a Debtor against another Debtor shall be waived, released and expunged without further order of the Bankruptcy Court, and no distribution hereunder or under any other provision of the Plan shall be made on account of any inter-Debtor claim.

(c)     *Voting*:  Class 4 is Impaired.  Therefore, holders of Subordinated Unsecured Claims are entitled to vote to accept or reject the Plan.

**4.5**     ***Treatment of Allowed Class 5 Claims (Class Action Claims)***

(a)     *Classification*:  Class 5 consists of Class Action Claims against any and all of the Debtors.

(b)     *Treatment*:  Pursuant to and consistent with the Settlement Agreement, the Lead Plaintiffs shall withdraw with prejudice the proofs of claim they filed in the Chapter 11 Cases based upon the allegations in the Class Action, including, without limitation, Claim Nos. 458, 460, 461, 482, 484, and 485.  Pursuant to and consistent with the Settlement Agreement, holders of Class 5 Claims will receive (i) their respective proportionate share (in cash) of the Shared Recovery Matters, (ii) cash distributions out of the Escrowed Funds (less the funding of the Plaintiffs' Loan) in accordance with the EDNY Stipulation, the award of attorneys' fees and expenses in the Class Action, and the Plan of Allocation approved in the Class Action, and (iii) under the Plan consistent with the treatment of allowed Class 6 Trust Interests, cash distributions equivalent, in the aggregate, to the value of the 3,184,713 shares of SS Body Armor I common stock that were to be delivered to the Plaintiffs pursuant to the EDNY Stipulation, with the foregoing items (i) to (iii) subject to the terms of the Settlement Agreement (including, without limitation, section 3 of the Settlement Agreement) and any other applicable orders, agreements and operative documents (including, without limitation, the Plan of Allocation approved in the Class Action).  Nothing herein is intended to modify any other or further distributions or other remedies that may be available to holders of Class 5 claims pursuant to the Settlement Agreement.

(c)     *Voting*:  Class 5 is Impaired.  The Lead Plaintiffs, as approved representatives of the certified Class, shall be entitled to vote to accept or reject the Plan on behalf of all holders of Class 5 Claims.

**4.6** **_Treatment of Allowed Class 6 Interests (Old Common Stock Interests)_**

      (a)     *Classification*: Class 6 consists of the Old Common Stock Interests in SS Body Armor I.

      (b)     *Treatment*: On the Effective Date, the Old Common Stock Interests shall be deemed cancelled, null and void, and of no force and effect. Each holder of an Allowed Old Common Stock Interest shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Old Common Stock Interest, an allocated Class 6 Trust Interest, which shall entitle the holder its *pro rata* share of funds available to holders of Class 6 Trust Interests pursuant to the Recovery Trust Agreement. The *pro rata* share of funds of a particular holder of a Class 6 Trust Interest shall be determined by multiplying (a) the total net funds available for distribution to holders of allowed Class 6 interests under the Recovery Trust Agreement and (b) the ratio of (x) the number of shares of Old Common Stock Interests held by the holder as of the distribution record date to (y) the aggregate number of all shares of Old Common Stock Interests outstanding as of the distribution record date. In accordance with the Recovery Trust Agreement, each holder of a Class 6 Trust Interest shall receive distribution(s) in Cash from the Recovery Trust of said holder's *pro rata* share of any Net Distributable Recovery Trust Proceeds (if any) remaining *after and subject to* Class 3 Satisfaction and Class 4 Satisfaction. Class 6 Trust Interests shall be subordinated in right of payment to the Class 3 Trust Interests and Class 4 Trust Interests.

      (c)     *Voting*: Class 6 is Impaired. Therefore, holders of Old Common Stock Interests are entitled to vote to accept or reject the Plan.

**4.7** **_Treatment of Allowed Class 7 Interests (Subordinated Common Stock Interests)_**

      (a)     *Classification*: Class 7 consists of all Subordinated Common Stock Interests in SS Body Armor I.

      (b)     *Treatment*: Subordinated Common Stock Interests shall be subordinated to Class 6 Interests and will receive no recovery under the Plan or otherwise from the Recovery Trust. On the Effective Date, all Subordinated Common Stock Interests shall be deemed cancelled, null and void, and of no force and effect.

      (c)     *Voting*: Class 7 is Impaired, and the holders of Subordinated Common Stock Interests are conclusively presumed to have rejected the Plan. Therefore, holders of Subordinated Common Stock Interests are not entitled to vote to accept or reject the Plan.

**4.8** **_Treatment of Allowed Class 8 Interests (Other Old Equity Interests)_**

      (a)     *Classification*: Class 8 consists of all Other Old Equity Interests in the Debtors.

      (b)     *Treatment*: On the Effective Date, all Other Old Equity Interests shall be deemed cancelled, null and void, and of no force and effect, and the holders thereof shall receive no recovery nor retain any property under the Plan on account of such Other Old Equity Interests.

      (c)     *Voting*: Class 8 is Impaired, and the holders of Other Old Equity Interests are conclusively presumed to have rejected the Plan. Therefore, holders of Other Old Equity Interests are not entitled to vote to accept or reject the Plan.

**4.9** **_Treatment of Allowed Class 9 Claims (Other Subordinated Claims)_**

      (a)     *Classification*: Class 9 consists of all Other Subordinated Claims against the Debtors.

      (b)     *Treatment*: Other Subordinated Claims are subordinated in right to payment to all other Claims and Interests, and the holders thereof shall receive no recovery under the Plan or otherwise from the Recovery Trust.

(c) *Voting*: Class 9 is Impaired, and the holders of Other Subordinated Claims are conclusively presumed to have rejected the Plan. Therefore, holders of Other Subordinated Claims are not entitled to vote to accept or reject the Plan.

# ARTICLE 5
## ACCEPTANCE REQUIREMENTS

### 5.1 *Acceptance or Rejection of the Plan*

(a) *Voting Class*

Classes 3, 4, 5, and 6 are Impaired under the Plan and are receiving property under the Plan. Therefore, such Classes are entitled to vote to accept or reject the Plan.

(b) *Presumed Acceptance of the Plan*

Classes 1 and 2 are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code.

(c) *Presumed Rejection of Plan*

Classes 7, 8 and 9 are Impaired under the Plan and are receiving no recovery under the Plan. Therefore, Classes 7, 8 and 9 are conclusively presumed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code.

### 5.2 *Tabulation of Votes on a Consolidated Basis*

The Debtors will tabulate all votes on the Plan on a consolidated basis by Class for the purpose of determining whether the Plan satisfies § 1129(a)(8) of the Bankruptcy Code.

### 5.3 *Nonconsensual Confirmation*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by an Impaired Class. The Plan Proponents request Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept this Plan pursuant to Section 1126 of the Bankruptcy Code. The Plan Proponents reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires any such modification.

# ARTICLE 6
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.1 *Implementation of the Settlement; Plaintiffs' Loan*

The Plan further implements and facilitates the continued implementation of the Settlement Agreement by and among the Debtors and the other Settlement Parties, which Settlement Agreement is subject to approval by the Bankruptcy Court and the EDNY District Court. Nothing in the Plan is intended to modify or alter the terms and conditions of the Settlement Agreement and related Settlement Approval Orders. If and to the extent of any inconsistency between the terms of the Plan and the Settlement Agreement, the terms of the Settlement Agreement, subject to the Settlement Approval Orders, shall control.

Consistent with the Settlement Agreement, on or as soon as practicable after the Effective Date, the following events shall occur:

(i) As soon as reasonably practicable after the occurrence of the Effective Date, except in respect to the Plaintiffs' Loan as described below, the Escrowed Funds shall be distributed in accordance with sections 5 and

6.5 of the EDNY Stipulation, the *Order Awarding Attorneys' Fees and Expenses* as Docket No. 354 in the Class Action, and the Plan of Allocation, net of any unpaid costs of administration and noticing.

(ii)    As soon as reasonably practicable after the occurrence of the Effective Date, $20,000,000 of the Escrowed Funds shall be loaned by the Plaintiffs to the Estates as the Plaintiffs' Loan, the proceeds of which will be used, together with any available cash of the Debtors as of the Effective Date (excluding any funds required to be maintained in the Post-Confirmation Escrow), to fund the Post-Confirmation Debtor Reserve and Recovery Trust Reserve and the distributions and other payments provided for under this Plan.  The Plaintiffs' Loan shall be (a) interest-free and non-recourse as to the Debtors and Estates, provided that the Plaintiffs' Loan shall be secured by, and repayable solely from, fifty percent (50%) of each dollar of the Debtors' Recovery (as defined in the Settlement Agreement), up to $40,000,000, whether the Debtors' Recovery is obtained pursuant to the Settlement Agreement or otherwise; and (b) shall have no maturity date except that, upon receipt by the Debtors of any portion of the Debtors' Recovery up to $40,000,000, 50% of each dollar of the Debtors' Recovery paid to the Debtors shall become immediately due and payable to the Plaintiffs in repayment of the Plaintiffs' Loan.

(iii)    In the event that an appeal(s) is filed from any of the Court Approvals, and the Plaintiffs' Loan is funded prior to the issuance of a stay pending any such appeal(s):

(a)    The Debtors, or the Post-Confirmation Debtor Representative, shall create, maintain and cause the funding of the Post-Confirmation Escrow.  Subject to paragraph (b) below, all funds in or recovered by the Debtors' bankruptcy estates from any source other than the Plaintiffs' Loan shall be deposited in the Post-Confirmation Escrow and shall be earmarked to replenish the Escrowed Funds in the event that any of the Court Approvals are reversed on appeal and the Plaintiffs' Loan is required to be returned to the Escrowed Funds.  Pursuant to the Settlement Agreement, the Plaintiffs' Loan will not be deposited in the Post-Confirmation Escrow.

(b)    Except to the extent that there are insufficient funds in or recovered by the Debtors' bankruptcy estates (excluding the Plaintiffs' Loan), the balance of the Post-Confirmation Escrow must at all times equal the outstanding balance of the Plaintiffs' Loan.

(c)    Upon each of the Court Approvals becoming final and non-appealable, or the Plaintiffs' Loan being repaid in full to the Plaintiffs, whichever is earlier, the Post-Confirmation Escrow shall be released to the Debtors (or their post-confirmation fiduciary), and shall be distributed in accordance with the Plan.

**6.2    Post-Confirmation Debtor; Corporate Action; Winding-Up of Affairs**

On the Effective Date and automatically and without further action, (i) each existing member of the board of directors, officer and manager (as applicable) of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (ii) the Post-Confirmation Debtor Representative shall be deemed the sole director, officer and representative of the Post-Confirmation Debtor to exercise the rights, power and authority of the Post-Confirmation Debtor under applicable provisions of this Plan and bankruptcy and non-bankruptcy law, and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.

All Debtors other than the Post-Confirmation Debtor shall be deemed dissolved for all purposes as of the Effective Date, without need of further Court order, notice or action; *provided, however*, without the need of any further approval, the Post-Confirmation Debtor Representative, in his discretion, may execute and file documents and take all other actions as he deems appropriate relating to the dissolution of the Debtors under applicable state laws, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the subject Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.

All existing Interests in the Debtors shall be deemed extinguished and cancelled as of the Effective Date, and as of such date, the New Common Stock of the Post-Confirmation Debtor shall be deemed issued and held by

the Recovery Trustee, for the benefit of the beneficiaries of the Recovery Trust. The Post-Confirmation Debtor Representative shall dissolve the Post-Confirmation Debtor pursuant to applicable nonbankruptcy law, at such time as he reasonably determines, after consultation with the Recovery Trustee, that the Post-Confirmation Debtor Functions have been completed or otherwise satisfied.

From and after the Effective Date, (i) all of the Debtors, for all purposes, shall be deemed to have withdrawn their respective business operations from any state in which they were previously conducting or are registered or licensed to conduct business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors other than the Post-Confirmation Debtor shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

The Post-Confirmation Debtor shall continue and remain in existence on and after the Effective Date solely for implementation of the Post-Confirmation Debtor Functions. The Plan Proponents shall draft the by-laws governing the Post-Confirmation Debtor which shall be filed as part of the Plan Supplement.

**6.3** *Post-Confirmation Debtor Representative*

(a) *Authority*

On and after the Effective Date, the Post-Confirmation Debtor Representative shall carry out the Post-Confirmation Debtor Functions on behalf of the Post-Confirmation Debtor, in his business discretion subject to the review of the Post-Confirmation Debtor Oversight Committee as provided below. Subject to the foregoing, on and after the Effective Date, the Post-Confirmation Debtor Representative may, in the name of the Post-Confirmation Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, Confirmation Order or Settlement Agreement.

On and after the Effective Date, the Post-Confirmation Debtor Representative shall begin acting for the Post-Confirmation Debtor in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The Post-Confirmation Debtor Representative shall serve in such capacity through the earlier of the date the Post-Confirmation Debtor is dissolved in accordance with this Plan and the date such Post-Confirmation Debtor Representative resigns, is terminated or otherwise unable to serve; provided, however, that, any successor Post-Confirmation Debtor Representative appointed pursuant to the Plan, shall serve in such capacities after the effective date of such person's appointment as the Post-Confirmation Debtor Representative.

The Post-Confirmation Debtor Representative shall report to the Post-Confirmation Debtor Oversight Committee, on a regular basis as may be requested by the Post-Confirmation Debtor Oversight Committee, not less than monthly during the first year following the Effective Date and thereafter no less than four times per year, which reports shall include such matters and information as reasonably requested by the Post-Confirmation Debtor Oversight Committee. The Post-Confirmation Debtor Oversight Committee shall keep all such information strictly confidential, except to the extent the Post-Confirmation Debtor Oversight Committee deems it reasonably necessary to disclose such information to the Bankruptcy Court (in which case, a good faith effort shall be made to file such information under seal).

Notwithstanding any other provision herein, the Post-Confirmation Debtor Representative shall be solely responsible for making Distributions to holders of Allowed Administrative Claims (including Professional Fee Claims), Priority Tax Claims and Other Priority Claims, on account of such Allowed Claims, pursuant to Articles 3 and 4 of the Plan, and payments of any other valid tax obligations of the Debtors as part of the Post-Confirmation Debtor Functions, using the funds in the Administrative/Priority/Tax Claims Reserve. After all asserted Administrative Claims, Priority Tax Claims and Other Priority Claims have been Allowed, Disallowed or otherwise resolved, and all other potential tax obligations of the Debtors and Estates have been resolved or otherwise addressed by the Post-Confirmation Debtor Representative, any Cash remaining in the Administrative/Priority/Tax Claims Reserve shall be transferred by the Post-Confirmation Debtor Representative to the Recovery Trust. If and to the extent the Administrative/Priority/Tax Claims Reserve may be insufficient, said reserve shall be replenished with Recovery Trust Assets, subject to the consent of the Recovery Trustee.

(b)     *Resignation or Removal*

The Post-Confirmation Debtor Representative may be removed (i) by majority vote of the Post-Confirmation Debtor Oversight Committee in the event such termination is for cause and (ii) by unanimous vote of the Post-Confirmation Debtor Oversight Committee in the event such termination is without cause.  In the event of the resignation, removal or death of the Post-Confirmation Debtor Representative, the Post-Confirmation Debtor Oversight Committee shall, by majority vote, designate a person to serve as the successor Post-Confirmation Debtor Representative.  A notice identifying any successor Post-Confirmation Debtor Representative shall be filed with the Bankruptcy Court and served on the Post-Confirmation Service List.  The successor Post-Confirmation Debtor Representative, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

(c)     *Fees/Expenses of Post-Confirmation Debtor Representative*

The reasonable fees and expenses of the Post-Confirmation Debtor Representative and his counsel and agents shall be paid out of the Post-Confirmation Debtor Reserve, without need of Court approval, provided that the Post-Confirmation Debtor shall provide five (5) business days' prior notice of any anticipated payment of such fees and expenses to the Post-Confirmation Debtor Oversight Committee, and any objection thereto that cannot be consensually resolved shall be submitted to the Bankruptcy Court.

**6.4     *Recovery Trust***

(a)     *Establishment of Recovery Trust*

On the Effective Date, the Recovery Trust shall become effective, in order to carry out the Recovery Trust Functions.  On the Effective Date, pursuant to the Plan and Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtors and Estates are authorized to transfer, grant, assign, convey, set over, and deliver to the Recovery Trustee, for the benefit of the Recovery Trust, all of the Debtors' and Estates' right, title and interest in and to the Recovery Trust Assets, free and clear of all Liens, Claims, encumbrances or interests of any kind in such property, except as otherwise provided for in the Plan and Settlement Agreement.  On the Effective Date and automatically and without further action, the Recovery Trustee shall have full power and authority as the trustee of the Recovery Trust in accordance with this Plan and the Recovery Trust Agreement.  On and after the Effective Date, the Recovery Trustee, on behalf of the Recovery Trust, shall take any and all actions as he believes may be necessary, desirable or appropriate in respect to the Recovery Trust, subject to the terms of the Plan and Recovery Trust Agreement.

The Recovery Trust is organized and established as a trust for the benefit of the beneficiaries and is intended to qualify as a Recovery Trust within the meaning of Treasury Regulation 301.7701-4(d).  In accordance with Treasury Regulation 301.7701-4(d), the initial sole beneficiaries of the Recovery Trust shall be the holders of Allowed Claims in Class 3 (General Unsecured Claims) and Class 4 (Subordinated Unsecured Claims) and Allowed Interests in Class 6 (Old Common Stock Interests).  Upon payment in full of all Allowed Class 3 Claims, the holders of Allowed Claims in Class 4 and Allowed Interests in Class 6 shall then constitute the sole beneficiaries of the Recovery Trust.  Upon payment in full of all Allowed Class 4 Claims, the holders of Allowed Interests in Class 6 shall then constitute the sole beneficiaries of the Recovery Trust.  The Recovery Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of the Estates for any purpose other than as specifically set forth herein and in the Recovery Trust Agreement.

(b)     *Governance of Recovery Trust*

The Recovery Trust shall be administered and controlled by the non-voting Recovery Trustee and the Recovery Trust Committee.  The functions and powers of the Recovery Trust Committee shall be set forth in the Recovery Trust Agreement.  The Recovery Trust Committee shall be comprised of three (3) voting members.  Two (2) members of the Recovery Trust Committee shall be selected by the Creditors' Committee and one member shall be selected by the Equity Committee.  The Equity Committee shall designate a list of individuals to replace the Creditors' Committee selected representatives upon Class 3 Satisfaction and Class 4 Satisfaction.  Upon the

DOCS_LA:290638.4 70934/001

occurrence of the Class 3 Satisfaction and Class 4 Satisfaction, the Creditors' Committee selected representatives shall resign and be replaced by the Equity Committee designees.

(c)     *Authority of Recovery Trustee*

The Recovery Trustee shall serve as a fiduciary to the beneficiaries of the Recovery Trust and shall be empowered to: (a) implement the Recovery Trust Functions; (b) effect all actions, execute and deliver all agreements, instruments and other documents, make the distributions contemplated, and perform all of the obligations and agreements of the Recovery Trust and/or of the Recovery Trustee necessary to implement the provisions of the Plan, the Recovery Trust Agreement and the Settlement Agreement; (c) other than in relation to the Post-Confirmation Debtor Functions, perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code as the Debtors' representative appointed for such purpose pursuant to section 1123(b)(3) of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling all Estate Claims, and enforcing contracts, asserting claims, defenses, offsets and privileges; (d) determine, satisfy, object to and estimate any and all claims or liabilities created, incurred or assumed by the Recovery Trust; (e) pay all expenses and make all other payments relating to the Recovery Trust; (f) other than in relation to the Post-Confirmation Debtor Functions, object to disputed claims, prosecute or settle such obligations; (g) establish, keep and maintain a reserve for the benefit of Disputed Claims and Disputed Interests; (h) engage and reasonably compensate professionals, including attorneys, accountants, experts, other professionals and others to assist the Recovery Trustee in carrying out his duties; (i) consult regularly with and provide information to the Recovery Trust Committee at such times and with respect to such issues relating to the conduct of the Recovery Trust as is appropriate; (j) prepare and deliver written statements or notices, quarterly or otherwise, required by law to be delivered to beneficiaries of the Recovery Trust and the Recovery Trust Committee; (k) prepare, or have prepared, and file with the appropriate taxing authority on behalf of the Recovery Trust any and all tax returns, information returns, and other required documents with respect to the Recovery Trust and pay taxes properly payable by the Recovery Trust, if any, and cause all taxes payable by the Recovery Trust, if any, to be paid exclusively out of the Recovery Trust; and (l) other than in relation to the Post-Confirmation Debtor Functions, waive or assert the attorney-client privilege or any other privilege of and on behalf of the Debtors and Estates.

(d)     *Expenses of Recovery Trust*

The Recovery Trust Assets shall be used to pay all liabilities, costs and expenses of the Recovery Trust, including compensation then due and payable to the Recovery Trustee, his agents, representatives, professionals and employees and all costs, expenses, and liabilities incurred by the Recovery Trustee in connection with the performance of his duties. Each member of the Recovery Trust Committee shall be entitled to compensation for its services in such capacity in an amount agreed to by the Creditors' Committee.

The reasonable fees and expenses of the Recovery Trustee and his counsel and agents shall be paid out of the Recovery Trust Reserve, without need of Court approval, provided that the Recovery Trustee shall provide five (5) business days' prior notice of any anticipated payment of such fees and expenses to the Recovery Trust Committee, and any objection thereto that cannot be consensually resolved shall be submitted to the Bankruptcy Court.

(e)     *Removal; Successor Recovery Trustee*

The Recovery Trustee may be removed (i) by majority vote of the Recovery Trust Committee in the event such termination is for cause and (ii) by unanimous vote of the Recovery Trust Committee in the event such termination is without cause. In the event of the resignation, removal or death of the Recovery Trustee, the Recovery Trust Committee shall, by majority vote, designate a person to serve as the successor Recovery Trustee. A notice identifying any successor Recovery Trustee shall be filed with the Bankruptcy Court and served on the Post-Confirmation Service List. The successor Recovery Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

DOCS_LA:290638.4 70934/001

### 6.5    Post-Confirmation Debtor and Recovery Trustee Cooperation

The Post-Confirmation Debtor Representative and the Recovery Trustee shall cooperate and coordinate their efforts to implement the Plan, including, among other things, addressing any circumstances where Post-Confirmation Debtor Functions and Recovery Trust Functions may overlap or omit actions or functions necessary to implement the Plan or Settlement Agreement.

### 6.6    Vesting of Estate Assets, Free and Clear of Liens

Upon the Effective Date, the Recovery Trust shall be vested with all right, title and interest in the Recovery Trust Assets, and such property shall become the property of the Recovery Trust free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as set forth in the Plan.  Further, as of the Effective Date, the Recovery Trust shall retain the New Common Stock and retain any rights to which such stock may be entitled under applicable law with respect to such shares, subject to any applicable conditions or restrictions set forth herein and in the Settlement Agreement.

### 6.7    Causes of Action

Unless any Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan, the Settlement Agreement, or any Final Order (including, without limitation, the Confirmation Order), the Debtors, Post-Confirmation Debtor, and Recovery Trust expressly reserve all such Causes of Action for later adjudication.  The reservation set forth in this Section shall include, without limitation, a reservation by the Debtors, Post-Confirmation Debtor, and Recovery Trust of any Causes of Action not specifically identified in the Plan or Disclosure Statement, or of which the Debtors may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan or Settlement Agreement or by Final Order.  Following the Effective Date, the Post-Confirmation Debtor and Recovery Trust (as applicable) may assert, compromise or dispose of the Causes of Action without further notice to Creditors  or Interest holders or authorization of the Bankruptcy Court, except as otherwise expressly provided herein or in the Recovery Trust Agreement in relation to the Recovery Trust.

### 6.8    Substantive Consolidation

The Plan shall serve as a motion seeking entry of an order substantively consolidating these Chapter 11 Cases for distribution and voting purposes.  Unless an objection to substantive consolidation is made in writing by any Creditor or Interest holder affected by the Plan on or before the applicable objection deadline set by the Court, an order substantively consolidating these Chapter 11 Cases for distribution and voting purposes (which order may be the Confirmation Order) may be entered by the Bankruptcy Court.

In effectuation of such substantive consolidation, on the Effective Date: (a) no Distributions will be made under the Plan on account of any debts, liabilities or obligations owed by a Debtor to another Debtor; (b) any guarantees of the Debtors will be deemed eliminated so that any Claim against the Debtors and any guarantee thereof executed by any Debtor and any joint and several liability of the Debtors with one another will be deemed to be one obligation of these Debtors; (c) each and every Claim against the Debtors will be deemed asserted as a single Claim against the Debtors as a whole, and will be treated in the same Class regardless of the Debtor; and (d) any and all cash of the Debtors shall be transferred to the Recovery Trust, to be used as a Recovery Trust Asset, for the purposes set forth herein and in the Recovery Trust Agreement.  Notwithstanding the substantive consolidation herein, substantive consolidation shall not affect the obligation of each and every one of the Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted, or dismissed.  If substantive consolidation is approved, it will have the effect of cancellation of intercompany claims.

DOCS_LA:290638.4 70934/001

The Plan Proponents reserve the right at any time up to the conclusion of the Confirmation Hearing to withdraw their request for substantive consolidation of all or some of the Chapter 11 Cases, to seek Confirmation of a modified Plan that is not premised upon substantive consolidation, and to seek Confirmation of the Plan with respect to one Debtor even if Confirmation with respect to the other Debtors is denied.

**6.9     Records**

The Post-Confirmation Debtor and Recovery Trust shall maintain reasonably good and sufficient books and records in respect to matters related to the Post-Confirmation Debtor Functions and Recovery Trust Functions, respectively.  The Post-Confirmation Debtor and Recovery Trustee may, upon notice to the Post-Effective Date Service List and without Bankruptcy Court approval, destroy any documents that each believes are no longer required to effectuate the terms and conditions of this Plan or the Settlement Agreement.  Upon the entry of a final decree closing the Chapter 11 Cases, unless otherwise ordered by the Court, the Post-Confirmation Debtor and Recovery Trustee may destroy or otherwise dispose of all records maintained by them.

**6.10     Dissolution of Creditors' Committee and Equity Committee**

On the Effective Date, the Creditors' Committee and Equity Committee shall be dissolved and the members of the Creditors' Committee and Equity Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases, except that the Creditors' Committee and Equity Committee shall continue in existence and have standing and capacity to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Creditors' Committee and Equity Committee or their respective Professionals.

**6.11     Final Decree**

At any time following the Effective Date, the Post-Confirmation Debtor Representative and Recovery Trustee shall be authorized to jointly file a motion for the entry of a final decree closing the Chapter 11 Cases pursuant to Section 350 of the Bankruptcy Code.

**ARTICLE 7**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**7.1     Distributions Under the Plan**

The Recovery Trust and Post-Confirmation Debtor shall administer Claims subject to the Recovery Trust Functions and Post-Confirmation Debtor Functions, respectively.  The Post-Confirmation Debtor Representative shall make Distributions to holders of Allowed Administrative Claims, Priority Tax Claims and Other Priority Claims, out of the Administrative/Priority/Tax Claims Reserve.  The Recovery Trust shall make Distributions in respect of all other Allowed Claims and, if applicable, Allowed Interests against the Estates, except as may otherwise be expressly provided in the Settlement Agreement.  Distributions to be made by the Post-Confirmation Debtor Representative and Recovery Trust may be made by any Person(s) designated or retained to serve as the disbursing agent(s) without the need for any further order of the Bankruptcy Court.

Subject to prior consultation with the Recovery Trust Committee and any applicable provisions of the Recovery Trust Agreement, the Recovery Trustee shall be authorized, in his or her discretion, to delay distributions to holders of Class 3 Trust Interests, Class 4 Trust Interests and/or Class 6 Trust Interests or otherwise determine reasonable distribution dates for such holders, including, without limitation, based upon the status and progress of the liquidation of Recovery Trust Assets, the total number of and/or asserted claim amounts of Disputed Claims, and any other relevant factors.

**7.2     Estimation**

In order to establish appropriate reserves under the Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Recovery Trust and Post-Confirmation Debtor (subject to the Recovery Trust Functions and

Post-Confirmation Debtor Functions, respectively) shall have the right to seek orders of the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, estimating the amounts of Claims.

### 7.3    *Distributions on Account of Disputed Claims and Interests*

Except as otherwise provided in a Final Order or as agreed by the relevant parties, Distributions on account of Disputed Claims and Interests that become Allowed after the Effective Date shall be made by the Recovery Trust and Post-Confirmation Debtor Representative (as applicable) at such periodic intervals as the Recovery Trust and Post-Confirmation Debtor Representative (as applicable) determine to be reasonably prudent.

### 7.4    *No Distributions Pending Allowance*

Notwithstanding anything herein to the contrary: (a) no Distribution shall be made with respect to any Disputed Claim or Interest until such Claim or Interest becomes an Allowed Claim or Interest (as applicable), and (b) unless determined otherwise by the Recovery Trust and Post-Confirmation Debtor Representative (as applicable), no Distribution shall be made to any Person that holds both an Allowed Claim or Interest and either a Disputed Claim or Interest until such Person's Disputed Claims or Interests have been resolved by settlement or Final Order.

### 7.5    *Objection Deadline*

The Recovery Trust and Post-Confirmation Debtor (subject to the Recovery Trust Functions and Post-Confirmation Debtor Functions, respectively) shall file all objections to Disputed Claims or Interests, and shall file all motions to estimate Claims under Section 502(c) of the Bankruptcy Code, on or before the Claims Objection Deadline, provided however that the Recovery Trustee or Post-Confirmation Debtor may request that the Bankruptcy Court extend the Claims Objection Deadline. Notwithstanding the foregoing, there shall be no deadline for the Recovery Trust to file objections to Disputed Interests.

### 7.6    *Disputed Claims Reserve*

On and after the Effective Date, the Recovery Trust shall maintain in reserve such Cash as the Recovery Trust estimates to be reasonably necessary to satisfy the Distributions that could be required to be made by the Recovery Trustee under the Plan and the Recovery Trust Agreement (the "***Disputed Claims Reserve***"). The Disputed Claims Reserve is separate from the Administrative/Priority/Tax Claims Reserve to be maintained by the Post-Confirmation Debtor Representative as set forth in Section 6.3(a) of the Plan.

For the avoidance of doubt, Distributions to any Person holding a Disputed Claim or Interest that becomes an Allowed Claim or Interest (as applicable) (including, without limitation, Administrative Claims, Priority Tax Claims and Other Priority Claims) after the Effective Date shall be made together with any payments or other distributions that would have been made to such Person had its Disputed Claim or Interest become an Allowed Claim or Interest on or prior to the Effective Date.

### 7.7    *Settling Disputed Claims (or Interests)*

The Recovery Trustee and Post-Confirmation Debtor (subject to the Recovery Trust Functions and Post-Confirmation Debtor Functions, respectively) shall be authorized to settle, or withdraw any objections to, any Disputed Claims (or Interests) following the Effective Date without need for approval of the Bankruptcy Court.

### 7.8    *Distributions in Cash*

The Recovery Trust and Post-Confirmation Debtor Representative (as applicable) shall make any required Cash payments to the holders of Allowed Claims or Interests: (X) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (Y) by first-class mail (or by other equivalent or superior means as determined by the Recovery Trust).

**7.9**    *Unclaimed Distributions*

Any entity which fails to claim any Cash within one hundred twenty (120) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any Distribution under the Plan, and the Recovery Trustee and Post-Confirmation Debtor Representative (as applicable) shall be authorized to cancel any Distribution that is not timely claimed.  Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the Recovery Trust free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, the claim of any Creditor or Interest holder with respect to such funds shall be discharged and forever barred against the Recovery Trust, the Post-Confirmation Debtor and the Estates, notwithstanding any federal or state escheat laws to the contrary, and such Creditor or Interest holder shall have no claim whatsoever against the Recovery Trust, the Post-Confirmation Debtor, the Estates, or any holder of an Allowed Claim or Interest to whom distributions are made by the Recovery Trust.

**7.10**    *Setoff*

Nothing contained in this Plan shall constitute a waiver or release by the Recovery Trust and Post-Confirmation Debtor of any right of setoff or recoupment the Estates, the Recovery Trust or Post-Confirmation Debtor may have against any Creditor or Interest holder.  To the extent permitted by applicable law, the Recovery Trustee and Post-Confirmation Debtor Representative (as applicable) may, but is not required to, set off or recoup against any Claim or Interest and the payments or other distributions to be made under the Plan in respect of such Claim or Interest, claims of any nature whatsoever that arose before the Petition Date that the Estates or the Recovery Trust may have against the holder of such Claim or Interest.

**7.11**    *Taxes*

Pursuant to Section 346(f) of the Bankruptcy Code, the Recovery Trustee and Post-Confirmation Debtor Representative (as applicable) shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims or Interests, as appropriate.  The Recovery Trust and Post-Confirmation Debtor Representative shall be authorized to take all actions necessary to comply with applicable withholding and recording requirements.  Notwithstanding any other provision of the Plan, each holder of an Allowed Claim or Interest that has received a Distribution of Cash under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution.  For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

**7.12**    *De Minimis Distributions*

If any interim Distribution under the Plan to the holder of an Allowed Claim or Interest would be less than $100.00, the Recovery Trustee and Post-Confirmation Debtor Representative (as applicable) may withhold such Distribution until a final Distribution is made to such holder.  If any final Distribution under the Plan to the holder of an Allowed Claim or Interest would be less than $25.00, the Recovery Trust and Post-Confirmation Debtor Representative (as applicable) may cancel such Distribution.  Any unclaimed Distributions pursuant to this Section 7.12 shall be treated as unclaimed property under Section 7.9 of the Plan.  To the extent that the Recovery Trust has assets remaining that do not exceed $25,000 in value, the Recovery Trustee, in his discretion, can donate such assets to a charitable organization of his choice.

## ARTICLE 8
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1**    *Rejection of Executory Contracts and Unexpired Leases*

Except for any executory contracts or unexpired leases of the Debtors:  (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to Section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to

DOCS_LA:290638.4 70934/001

Confirmation; or (iii) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. For the avoidance of doubt, any insurance policy acquired for the benefit of the Debtors (or any representatives thereof or successors thereto) before or after the Petition Date shall remain in full force and effect after the Effective Date according to its terms.

### 8.2 *Bar Date for Rejection Damages*

If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, Estates, Recovery Trust and Post-Confirmation Debtor unless a proof of Claim was filed with the Bankruptcy Court by the Claims Bar Date.

## ARTICLE 9
## SETTLEMENT, RELEASES, INJUNCTION AND RELATED PROVISIONS

### 9.1 *Compromise and Settlement of Claims, Interests and Controversies*

Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of Claims and Interests and is fair, equitable and reasonable and the product of good faith arms' length negotiations. In accordance with the provisions of the Plan, the Post-Confirmation Debtor and Recovery Trust (as applicable) may compromise and settle Claims and Interests and Causes of Action against other Entities after the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, except as otherwise expressly provided herein or in the Recovery Trust Agreement in relation to the Recovery Trust.

### 9.2 *Releases by the Debtors*

**Pursuant to § 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the contributions of the Released Parties in facilitating the administration of the Chapter 11 Cases and the formulation and implementation of the Settlement Agreement and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Settlement Agreement and Plan, the Released Parties are deemed released and discharged by the Debtors and Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement, the Settlement Agreement or related agreements, instruments or other documents, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud or willful misconduct, as determined by a Final Order.**

**9.3** *Releases by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, including the contributions of the Debtors and Released Parties in facilitating the administration of the Chapter 11 Cases and the formulation and implementation of the Settlement Agreement and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Settlement Agreement and Plan, each holder of a Claim against or an Interest in the Debtors that votes to accept the Plan but does **not** select the "release opt out" provided in the Ballot ("<u>Releasing Parties</u>") shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors, the Post-Confirmation Debtor, the Recovery Trust, and the Released Parties from any and all Claims, Interests, claims obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative Claims or claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement, the Settlement Agreement or related agreements, instruments or other documents, other than Claims, claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud or willful misconduct, as determined by a Final Order; *provided*, *however*, that nothing herein shall be deemed a waiver or release of any right of any such Releasing Parties to receive a Distribution pursuant to the terms of the Plan and Settlement Agreement.  For the avoidance of doubt, notwithstanding anything to the contrary herein, the foregoing release by the Releasing Parties is not and shall not be deemed to be in exchange for a waiver of the Debtors' rights or claims against the Releasing Parties, including to the Debtors' rights to assert setoffs, recoupments or counterclaims, or to object or assert defenses to any Claim or Interest, and all such rights and claims are expressly reserved.  Notwithstanding any of the foregoing, nothing in this Section is intended to expand, limit, or otherwise modify any releases or waivers that are separately provided for in the Settlement Agreement.

**9.4** *Exculpation*

No Exculpated Party shall have or incur any liability to any Entity for any act taken or omission made in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, Plan, the Settlement Agreement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of any Plan securities, or the Distribution of property under the Plan or any other related agreements; *provided, however*, that the foregoing shall not apply to the extent of any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding any of the foregoing, nothing in this Section is intended to expand, limit, or otherwise modify any releases or waivers that are separately provided for in the Settlement Agreement.

The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of any Plan securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**9.5** *Injunction*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN SECTIONS 9.3 AND 9.4, THE APPLICABLE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE 9.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT, RELATED DOCUMENTS, OR THE SETTLEMENT AGREEMENT, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 9.3 OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 9.4, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND ALL SUCH CLAIMS AND INTERESTS SHALL BE DEEMED SURRENDERED AND EXTINGUISHED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND ALL INTERESTS SHALL BE DEEMED SURRENDERED OR EXTINGUISHED, AS THE CASE MAY BE, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER § 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE DEBTORS' ESTATES, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

DOCS_LA:290638.4 70934/001

**9.6     Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to §§ 105 or 362 or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**9.7     No Consent to Change of Control Required**

To the fullest extent permitted by applicable law, except as otherwise expressly provided by order of the Bankruptcy Court, none of (a) the facts or circumstances giving rise to the commencement of, or occurring in connection with, the Chapter 11 Cases, (b) consummation of any other transaction pursuant to the Plan shall constitute a "change in ownership" or "change of control" (or a change in working control) of, or in connection with, any Debtor requiring the consent of any person other than the Debtors or the Bankruptcy Court.

**9.8     Release of Liens**

Except as otherwise provided herein (including with respect to the Plaintiffs' Loan), the Settlement Agreement, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Debtor and their successors and assigns.  For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

**9.9     Releases Implemented by the Settlement**

For the avoidance of doubt, nothing herein is intended to limit or otherwise modify any releases, waivers and/or limitations on liability set forth in and implemented by the Settlement Agreement.

**ARTICLE 10**
**CONDITIONS TO THE CONFIRMATION DATE AND EFFECTIVE DATE**

**10.1     Conditions Precedent to Confirmation**

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 10.3:

(a)     The Bankruptcy Court shall have entered an order, in form and substance acceptable to the Plan Proponents, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of § 1125 of the Bankruptcy Code.

(b)     The Bankruptcy Court shall have entered an order, in form and substance acceptable to the Plan Proponents, confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**10.2     Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 10.3:

(a)     The "Effective Date" of the Settlement Agreement (as defined in section 1 of the Settlement Agreement) shall have occurred.

(b)     All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance acceptable to the Plan Proponents.

(c)     All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(d)     No order of a court shall have been entered and remain in effect restraining the Plan Proponents from consummating the Plan and the transactions contemplated therein.

(e)     All actions, documents, certificates and agreements necessary to implement the Plan, including the Recovery Trust Agreement and any other documents, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

**10.3     *Waiver of Conditions***

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article 10 may be waived at any time by the Plan Proponents, except the occurrence of the "Effective Date" of the Settlement Agreement (as defined in section 1 of the Settlement Agreement) cannot be waived without the consent of the Class Plaintiffs.

**10.4     *Effect of Failure of Conditions***

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Creditors' Committee, any Creditors or Interest Holders or any other Entity in any respect.

# ARTICLE 11
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

**11.1     *Modification and Amendments***

Except as otherwise specifically provided herein, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend or modify materially the Plan with respect to any or all Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided, however,* that any alterations, amendments or modifications to the Plan, the Disclosure Statement and Confirmation Order must be consistent in all respects with the Settlement Agreement.  For the avoidance of doubt, no alteration, amendment or modification to the Plan may permit the waiver of the occurrence of the "Effective Date" of the Settlement Agreement (as defined in section 1 of the Settlement Agreement) as a condition precedent to the Effective Date of the Plan without the consent of the Class Plaintiffs.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article 11.

In addition, prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; *provided*, *however*, that

such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests.

### 11.2 *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3 *Revocation or Withdrawal of the Plan*

The Plan Proponents reserve the right to revoke or withdraw the Plan before the Effective Date. If the Plan Proponents revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of any Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or Claims by any Debtor against any other Entity; (b) prejudice in any manner the rights of such Debtor, the Creditors' Committee, the holder of any Claim or Interest or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, the Creditors' Committee or any other Entity.

## ARTICLE 12
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of or related to, the Chapter 11 Cases and the Plan including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)     resolve any matters related to (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Rejection Claims or any other matter related to such Executory Contract or Unexpired Lease (including the assumption thereof); (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired.

(d)     ensure that Distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and the Recovery Trust Agreement;

(e)     adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide or resolve any and all matters related to any Cause of Action, except as to those Shared Recovery Matters pending in the EDNY District Court as of the Effective Date;

(g)     adjudicate, decide or resolve any and all matters related to § 1141 of the Bankruptcy code;

(h)     enter and enforce any order for the sale of property pursuant to §§ 363, 1123 or 1146(a) of the Bankruptcy Code;

(i)     resolve any Avoidance Action or dispute regarding the subordination of any Claim or Interest;

(j)     resolve any cases, claims, controversies, suits, disputes or causes of action that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(k)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(l)     resolve any cases, controversies, suits, disputes or causes of action with respect to the releases, injunctions, exculpations, indemnifications and other provisions contained in Article 11 and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(m)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

(o)     adjudicate any and all disputes arising from or relating to Distributions made under the Plan or the Recovery Trust Agreement;

(p)     consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in the Plan or any Bankruptcy Court order, including the Confirmation Order;

(q)     determine requests for the payment of Claims and Interests entitled to priority pursuant to § 507 of the Bankruptcy Code;

(r)     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(s)     hear and determine disputes arising in connection with the Recovery Trust or Post-Confirmation Debtor, including in connection with the interpretation, implementation and enforcement of the Recovery Trust Agreement;

(t)     hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code;

(u)     hear and determine disputes concerning the application or enforcement of any exemption provided under § 1145 of the Bankruptcy Code;

(v)     hear and determine all disputes involving the existence, nature or scope of any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

(w)     enforce all orders previously entered by the Bankruptcy Court;

(x)      hear any other matter not inconsistent with the Bankruptcy Code; and

(y)      enter an order dismissing or closing the Chapter 11 Cases.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

**13.1**    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Confirmation Debtor, the Recovery Trust, any and all holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**13.2**    *Section 1146 Exemption*

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**13.3**    *U.S. Trustee Fees and Post-Confirmation Reports*

After the Effective Date, the Recovery Trust shall pay any statutory fees due for the post-Effective Date period pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the Chapter 11 Cases. After the Effective Date, the Post-Confirmation Debtor Representative and Recovery Trustee will file separate post-confirmation status reports on a quarterly basis up to the entry of a final decree closing the Chapter 11 Cases or as otherwise ordered by the Court.

**13.4**    *Non-Voting Equity Securities*

If and to the extent applicable, the Plan Proponents shall comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

**13.5**    *Additional Documents*

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Creditors' Committee, the Post-Confirmation Debtor, the Recovery Trust, and all holders of Claims or Interests receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**13.6**    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of such Entity.

### 13.7    *Service of Documents*

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the following parties shall be served on the applicable service parties listed:

Debtors and/or Post-Confirmation Debtor

Deloitte CRG
350 South Grand Ave Ste. 200
Los Angeles, CA  90071-3462
Attn:  T.  Scott Avila

with copies to:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE  19801
Facsimile:  (302) 652-4400
Attn:  Laura Davis Jones
          Alan J. Kornfeld
ljones@pszjlaw.com
akornfeld@pszjlaw.com

Recovery Trust[2]

### 13.8    *Severability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Debtors.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) nonseverable and mutually dependent.

### 13.9    *Exhibits*

The Recovery Trust Agreement and all exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Debtors' counsel, by contacting Laura Davis Jones, Esq., Pachulski Stang Ziehl & Jones LLP, 919 Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE  19899-8705, Telephone: (302) 652-4100, email: ljones@pzsjlaw.com, at the Bankruptcy Court's web site at ecf.deb.uscourts.gov or at the website of the Notice and Claims Agent, at http://dm.epiq11.com/PBS.

---

[2] The Recovery Trustee will be identified in the Plan Supplement and the service address will be determined when the Plan  Supplement is filed.

DOCS_LA:290638.4 70934/001

**13.10** *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to § 1125(e), the Debtors, the Creditors' Committee and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, including, if applicable, in the offer, issuance, sale and purchase of any Plan securities provided under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan.

**13.11** *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibit, schedule, appendix, supplement or amendment to any of the foregoing), conflicts or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. If there is a conflict between the Plan and a Plan Supplement document, the Plan Supplement document, as applicable, shall govern and control; *provided*, *however*, that in the case of the Recovery Trust Agreement, the Plan shall control. If any provision of the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

## ARTICLE 14
## CONFIRMATION REQUEST

The Debtors and Creditors' Committee request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

Dated: August 26, 2015

SS Body Armor I, Inc., SS Body Armor II, Inc., SS Body Armor III, Inc., and PBSS, LLC

By:  /s/ T. Scott Avila
     T. Scott Avila
     Chief Restructuring Officer

Arent Fox LLP

By:  /s/ Robert M. Hirsh
     Robert M. Hirsh
     George P. Angelich

Counsel to Official Committee of Unsecured Creditors for SS Body Armor I, Inc., SS Body Armor II, Inc., SS Body Armor III, Inc., and PBSS, LLC