# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------X
: Chapter 11
In re: :
: Case No. 10-11255 (CSS)
S.S. BODY ARMOR I, Inc. *et al.,* : Jointly Administered
:
Debtors. : Hearing Date: TBD
: Obj. Deadline: TBD
---------------------------------------------X

## MOTION TO STAY DISTRIBUTIONS PENDING DETERMINATION OF APPEAL

Carter Ledyard & Milburn LLP ("*CLM*") hereby moves this Court for a stay prohibiting distributions by the Post-Confirmation Debtor during the pendency of CLM's appeal of this Court's order dated February 23, 2018 denying in part CLM's motion to establish a reserve of $25 million from the proceeds of an anticipated settlement and instead establishing a reserve in the amount of $5 million (the "*Reserve*"). *See* Order Establishing Reserve (the "*Reserve Order*") [Dkt. No. 4049]. CLM hereby requests the stay to prevent the Post-Confirmation Debtor from distributing all of the proceeds of the anticipated settlement during the pendency of CLM's appeal and effectively rendering CLM's appeal moot.

## PRELIMINARY STATEMENT

1. There is no doubt that the Post-Confirmation Debtor will distribute any assets it receives from the anticipate settlement "as quickly as possible." 2/16/18 Bankr. Hearing Tr., 50:23-24. Once those distributions are made, it will be impossible for CLM to claw-back any funds to the extent CLM is awarded a fee in excess of the Reserve. Thus, unless the Post-Confirmation Debtor is prevented from making any distributions during the pendency of CLM's appeal, the Reserve will effectively act as a cap on CLM's fee award, and CLM's appeal will be rendered moot.

2. A stay is particularly warranted here where the Post-Confirmation Debtor's representations concerning the anticipated settlement have been discredited. Despite the Post-Confirmation Debtor's assertion that the anticipated settlement would involve no SOX 304 recovery, the SEC recently filed a status report expressly stating that the Brooks Estate has agreed to reimburse the Post-Confirmation Debtor **$142 million** on account of the SOX 304 claim. A copy of the SEC's status report dated March 19, 2018, is attached hereto as **Exhibit A.**

3. No creditor can reasonably contend that a brief stay would cause any meaningful prejudice particularly as CLM intends to seek an expedited briefing schedule and hearing on its appeal of the Reserve Order. For the reasons set forth below, the motion should be granted.

## FACTS

4. It is undisputed that Cohen's and CLM's objection and appeal to the United States District Court for the Second Circuit preserved the Post-Confirmation Debtor's Sarbanes-Oxley § 304 ("*SOX 304*") claim.[1] As a result, on December 3, 2015, this Court ruled that CLM and Cohen were entitled to a fee in an undetermined amount from any funds the Post-Confirmation Debtor may receive from the SOX 304 claim. *See* Order with Respect to Application of D. David Cohen and Carter Ledyard & Milburn LLP for Fees and Expenses dated December 3, 2015 [Dkt. No. 3624] (the "*Fee Order*").[2] This Court retained jurisdiction and "completely reserved" the question of the amount of fees to be awarded pending a SOX 304 recovery and renewed fee application. 11/10/15 Bankr. Hearing Tr., p. 200:2–5.

---

[1] *See, e.g.,* 11/10/15 Bankr. Hearing Tr., pp. 191:22–192:8, 199:18–200:3 (Cohen and CLM preserved the Sarbanes-Oxley claim of approximately $186 million and are entitled to a fee for their "terrific efforts" in the event there is a recovery from that claim).

[2] CLM has appealed the Fee Order because the order held that CLM is not entitled to a fee unless the Post-Confirmation Debtor receives a SOX 340 recovery, which is contrary to established precedent. This appeal has been fully briefed. CLM will seek to consolidate its appeal of the Fee Order with its appeal of the Reserve Order, and have both argued on an expedited basis.

2

5. Following the death of David H. Brooks in October 2016, the Securities and Exchange Commission ("*SEC*") resumed its prosecution of the SOX 304 claim against Brooks ("*Brooks*") in an action pending in the United States District Court of Florida captioned *SEC v. Estate of David H. Brooks*, S.D. Fl. Case No. 07-61526-CIV (the "*SEC Action*"). The SEC Action had been stayed pending the resolution of Brooks' criminal appeals.

6. Following a December 2017 mediation that was ordered in, and occurred under the auspices of, the SEC Action, the SEC and the Brooks Estate, along with certain other parties, including the Post-Confirmation Debtor, reached an agreement on the principal terms of a settlement (the "*Settlement*") resolving, among other things, the SOX 304 claim and the claims asserted in the civil forfeiture proceeding pending in the Eastern District of New York. After learning about the Settlement, CLM reached out to the Post-Confirmation Debtor on several occasions inquiring about the terms of the Settlement, including the amount the Post-Confirmation Debtor and Class would receive as a result of the Settlement (the "*Settlement Funds*"). CLM received little (and in some instances inconsistent) information.

7. On January 17, 2018, CLM moved to establish a temporary $25 million reserve to ensure there were ample assets to satisfy the fees ultimately awarded to CLM. *See* Dkt. No. 4019. Although they implicitly conceded there would be no prejudice in granting CLM's request, the Post-Confirmation Debtor and Recovery Trustee nevertheless opposed CLM's motion.

8. In their opposition, the Post-Confirmation Debtor asserted that it would receive $70 million as a result of the Settlement. *See* 2/16/18 Bankr. Hearing Tr., 16:6-7 ("Mr. Kornfeld:. . . The settlement will be about a net $70 million to the debtor"). The Post-Confirmation Debtor and Recovery Trustee also argued that the Settlement did not involve a

recovery on account of the SOX 304 claim. *Id.* ("The payments the Debtor and the Class Plaintiffs will receive . . . are attributable to the Civil Forfeiture Proceeding and the assets restrained in connection with that proceeding, **not** the SOX 304 claim.") (emphasis in the original).

9. These assertions are contradicted by the status report filed by the SEC on March 19, 2018. *See* ¶¶ 12-13, *infra*.

10. A hearing on CLM's motion took place on February 16, 2018. At the hearing, the Court recognized that a reserve was necessary because the Post-Confirmation Debtor would distribute whatever funds it received "as quickly as possible," and absent a reserve, there would be no money to satisfy CLM's fee claim. 2/16/18 Bankr. Hearing Tr., 50:20-24 ("COURT: I think it's rather obvious that a fee reserve has to be set here. I have full belief that whatever comes into the estate will be distributed to the appropriate parties as quickly as possible."). Nevertheless based on the Post-Confirmation Debtor's characterization of the terms of the Settlement – and assuming the recovery to the Post-Confirmation Debtor was $70 million – this Court limited the reserve to $5 million. *See, e.g., id.*, at 53:2-4.

11. On March 2, 2018, CLM filed a notice of appeal of the Reserve Order. Dkt. No. 4051 (the "*Appeal*"). While a briefing schedule has not yet been set, CLM will seek to have the Appeal briefed and argued on an expedited basis.

12. On March 19, 2018, the SEC filed a status report in the SEC Action in which it expressly stated that as a result of the settlement of the SEC Action the Brooks Estate "shall reimburse SS Body Armor I, Inc. . . . $142,000,000 for bonuses and profits David Brooks received from DHB stock sales, pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243(a)]." *See*, Ex. A, p. 2.

8243522.2

13. The SEC's status report also requests a brief 60-day extension of the stay issued in the SEC Action to allow the parties to obtain the necessary approvals from the Eastern District of New York and the Department of Justice. *Id.* at p. 3.

## ARGUMENT

14. This Court has authority to issue the requested stay. Pursuant to Article 12(e) of the Second Joint Amended Plan of Liquidation Proposed by the Debtors and Official Committee of Unsecured Creditors, this Court retained jurisdiction to "adjudicate, decide or resolve" issues concerning any contested matters pending on November 23, 2015, i.e., the Effective Date. The amount of CLM's fee award was pending as of the Effective Date. *See* Fee Order, pp. 2-3 (reserving jurisdiction to determine and award fees to CLM). In addition, pursuant to 11 U.S.C. § 105(a), a bankruptcy court is authorized to issue any order, process, or judgment necessary to carry out the provisions of the Bankruptcy Code.

15. Pursuant to Federal Rule of Bankruptcy Procedure 8007(a), this Court may issue a stay pending appeal. Factors favoring a stay include (1) the likelihood of success on the merits, (ii) whether the applicant will be irreparably injured absent a stay; (iii) whether the stay will substantially injure the other parties; and (iv) whether a stay is in the public interest. *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3rd Cir. 1991). No one factor is dispositive. *See, e.g., In re Calabria,* 407 B.R. 671, 679 (Bankr. W.D. Pa. 2009).

16. A stay is necessary to prevent irreparable harm to CLM by ensuring that the Reserve Order does not effectively cap CLM's fee award before CLM has an opportunity to litigate its appeal. Absent a stay, the Post-Confirmation Debtor will immediately distribute all-but $5 million of the Settlement Funds. Should CLM be successful its appeals, its victory will be a pyrrhic one as there will be insufficient funds to satisfy the fee award even before CLM has had a fair opportunity to argue the factual and legal basis for its fee award.

17. A stay is particularly appropriate here because there has been *no* discovery regarding the terms of the Settlement, and the information that is publicly available is flatly inconsistent with the characterization of the Settlement upon which the Reserve Order was premised. *Compare* SEC Status Report, p. 2 (the Brooks Estate "shall reimburse SS Body Armor I, Inc. . . . $142,000,000 . . . pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243(a)].") *and* Post-Confirmation Debtor's Opposition to Reserve Motion, ¶ 2 ("The payments the Debtor and the Class Plaintiffs will receive . . . are attributable to the Civil Forfeiture Proceeding and the assets restrained in connection with that proceeding, **not** the SOX 304 claim.") (emphasis in the original).

18. Moreover, the Post-Confirmation Debtor stated that it would only be receiving $70 million as a result of the Settlement. 2/16/18 Bankr. Hearing Tr., 16:6-7 ("Mr. Kornfeld: . . . The settlement will be about a net $70 million to the debtor"). The $5 million Reserve was calculated based on a $70 million recovery to the Post-Confirmation Debtor. *See id.* at 53:2-4. The SEC's status report makes clear, however, that the Post-Confirmation Debtor is entitled to receive a **$142 million** SOX 304 recovery, which will be split with the Class pursuant to the 50/50 sharing agreement the Post-Confirmation Debtor reached with the Class. This sharing agreement should have no effect on CLM's fee award. Thus, even assuming CLM's fee award is properly measured by the amount of the Post-Confirmation Debtor's SOX 304 recovery, the proper base upon which to measure CLM's fee claim is $142 million and not $70 million. This change alone would require a doubling of the Reserve to $10 million and makes CLM's appeal likely to succeed. Absent the requested stay, this issue will be rendered moot before it can be effectively litigated.

19. A stay is also warranted because neither the Post-Confirmation Debtor nor its constituents will be prejudiced by the requested temporary stay in distributions, particularly in light of the fact that CLM will seek to have the Appeal heard on an expedited basis.

20. Finally, a stay would be in the public interest. A stay would ensure funds are available to appropriately compensate CLM for its undisputed success in safeguarding the integrity of the financial markets. *See Cohen v. Viray,* 622 F.3d 188, 195 (2d Cir. 2010). This would incentivize other objectors to speak out to prevent collusive or unfair settlements of class or derivative actions by exposing any "cozy deals," and otherwise provide information and legal arguments that enable courts to properly assess and evaluate a settlement. *See In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, C.J.); *Eubank*, 753 F.3d at 720 (third parties "who smell a rat" can object to approval of the settlement).

## CONCLUSION

21. For the reasons set forth herein, CLM respectfully request that this Court (i) issue an order staying any distributions during the pendency of CLM's appeal, and (ii) grant any such further relief that it deems just and proper.

Dated: Wilmington, Delaware
March 27, 2018

        GELLERT SCALI BUSENKELL & BROWN, LLC
        By: */s/ Michael Busenkell*
        Michael Busenkell (DE 3933)
        1201 N. Orange Street, Suite 300
        Wilmington, DE 19801
        Tel.: (302) 425-5812
        Email: mbusenkell@gsbblaw.com

        And

CARTER LEDYARD & MILBURN LLP
Gary D. Sesser
William F. Sondericker
Leonardo Trivigno
2 Wall Street
New York, New York 10005
Tel. (212) 732-3200

*Attorneys for Movant Carter Ledyard & Milburn LLP*