# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SS Body Armor I, Inc., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11255 (CSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: Tuesday, April 17, 2018 at 4:00 p.m. (ET)**<br>**Hearing Date: Tuesday, April 24, 2018 at 1:00 p.m. (ET)**<br><br>**Re: D.I. 4059, 4075** |

## RESPONSE OF D. DAVID COHEN TO MOTION
## TO STAY DISTRIBUTIONS PENDING DETERMINATION OF APPEAL

D. David Cohen ("Cohen"), through his undersigned counsel, hereby files this response (the "Response") to the Motion to Stay Distributions Pending Determination of Appeal (the "Motion") filed by Carter Ledyard & Milburn LLP ("CLM"). In support of his Response, Cohen states as follows:

1.  Cohen is not a party to the CLM Motion, but he certainly understands why CLM filed it.

2.  Attached to the CLM Motion as Exhibit A is the SEC's Status Report and Unopposed Motion to Stay All Deadlines for an Additional 60 Days to Allow Approvals of the Global Settlement in Related Proceedings (the "Status Report"). See D.I. 4059, Ex. A. As CLM states in its Motion, the $142 Million proposed settlement amount is specifically attributable to the Sarbanes-Oxley § 304 ("SOX 304") claim.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SS Body Armor I, Inc. (9361); SS Body Armor II, Inc. (4044); SS Body Armor III, Inc. (9051); and PBSS, LLC (8203). All correspondence and pleadings for the Debtors must be sent to SS Body Armor I, Inc., et al., c/o Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

{12426-001 RESP A0504222.DOC 3}

3. In December of 2017, the SEC was on the verge of a total win of the SOX 304 case against the Brooks Estate. All affirmative defenses by the Brooks Estate to the SOX 304 action had been stricken. There was a very likely recovery of $186 Million, or substantially that much, for the Debtor from the SOX 304 claim. There was, and is, no other legal action against the Brooks Estate, no other way to secure a recovery for the creditors, the class action plaintiffs and the shareholders of the Debtor. All of the conditions were in place for a massive recovery under SOX 304 for all of those constituencies.

4. The judge presiding over the SEC action in the Southern District of Florida ordered a mediation. The SEC Staff turned the mediation into a global settlement conference and invited Debtor's Counsel and representatives of the EDNY prosecutors with control over the restrained assets to the conference.

5. What resulted from the settlement conference was a Global Settlement Term Sheet crafted by Debtor's Counsel which Cohen contends was nothing less than a plan, scheme, artifice and device to deprive Cohen and CLM of credit and compensation for the SOX 304 claim. Debtor's Counsel initially contended that the Debtor was getting nothing or near nothing for the SOX 304 claim - it was merely "the situs" for the Global Settlement and the money was coming from the Civil Forfeiture Action in the EDNY and from 13 or 14 other disgorgement actions by the SEC. The Status Report directly contradicts those contentions. See D.I. 4059, Ex. A.

6. The Global Settlement Term Sheet, dated December 8, 2017 was withheld from Cohen and CLM until February 14, 2018, and on February 16, 2018, Debtor's Counsel represented to this Court that settlement of the SOX 304 claim would be at most $70 Million. But, the SEC acknowledged in its Status Report that the $142 Million settlement was attributable

to the SOX 304 claim. There is, in fact, no other statutory provision, civil or penal action for which any liability in favor of the Debtor against the Brooks Estate can attach. Given the actual history of this matter in which Cohen (not the Debtors) saved the SOX 304 claim, and the specific language of the Status Report attributing the $142 Million settlement amount to the SOX 304 claim, it cannot be said that the Global Settlement is not a recovery based on SOX 304.

7. The price the Debtor's shareholders will pay for Debtor's Counsel's attempted mischaracterization that the Global Settlement was not directly attributable to the SOX 304 claim is enormous. The judgment proposed by the Global Settlement Terms is $117.5 Million plus $24.5 Million in prejudgment interest for a total of $142 Million. The correct judgment available under SOX 304 should be $228 Million consisting of $188.9 Million (basic amount due under SOX 304) and at least $39.3 Million of prejudgment interest. That is an $86 Million shortfall. No one explains the $86 Million forgiveness offered to the Brooks' Estate and Brooks' family.

8. Cohen has filed a motion to intervene (the "Intervention Motion") in the SEC's Florida action against the Brooks Estate. The memorandum of law and affidavit in support of the Intervention Motion are attached hereto as Exhibit I.

9. Cohen does not seek to delay resolution of the SOX 304 claim or delay any distributions to the victims. Cohen's whole purpose in seeking to intervene in the SOX 304 action is to maximize the result for the Debtor and the constituencies with fairness to all, including himself, to do so as quickly as humanly possible, and to assure that the judge presiding over the SEC action in the Southern District of Florida has an opportunity to approve any settlement, if there is to be a settlement, based on fairness and sufficiency to the Debtor constituencies and the interests of justice. The primary questions are the amount of the SOX 304

Settlement, if there is to be a settlement, and the division of that settlement amongst Debtor's constituencies.

10. Cohen agrees with CLM that relief is necessary to prevent Debtor's Counsel's continuing efforts to deny him and it the Court-ordered award for the SOX 304 victory but does not believe a stay on all distributions is necessary. What Cohen hopes that this Court will do instead is the following:

(a) Increase the amount of the reserve proportionally to the settlement amount of $142 Million. This Court set a $5,000,000 reserve when Debtor's Counsel asserted that $70 Million was the maximum amount of the settlement and that it was not attributable to the SOX 304 claim. The Status Report specifically states that the $142 Million is entirely attributable to the SOX 304 claim. Cohen contends that the correct recovery amount for the SOX 304 claim is more than $228 Million. That supports a doubling or trebling of the reserve amount; and

(b) A stay of any and all additional payments of professional fees only to any of the bankruptcy professionals employed by Debtor until there has also been a full and final determination of the Court-ordered award due to CLM and Cohen.

[*REMAINDER OF PAGE LEFT INTENTIONALLY BLANK*]

WHEREFORE, Cohen respectfully requests that, while the Intervention Motion in Florida remains outstanding and while there is no Global Settlement approved by any Court, appropriate and equitable relief be granted to CLM on the motion before the Court, and trusts and relies upon the discretion and judgment of this Court to craft such relief as proposed by Cohen hereinabove.

Dated: April 16, 2018            **SHAW FISHMAN GLANTZ &**
                                                 **TOWBIN LLC**

                                                 /s/ Johnna M. Darby
                                                 Johnna M. Darby (DE Bar No. 5153)
                                                 300 Delaware Ave., Suite 1370
                                                 Wilmington, DE 19801
                                                 Telephone: (302) 442-7627
                                                 E-mail: jdarby@shawfishman.com

                                                 *Co-Counsel for D. David Cohen*