# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SS BODY ARMOR I, INC., et al.,[1] | ) | Case No. 10-11255 (CSS) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Related Docket Nos. 4059 and 4083** |

Objection Deadline: April 17, 2018 at 4:00 p.m.
Hearing Date: April 24, 2018 at 1:00 p.m.

## OPPOSITION OF POST-CONFIRMATION DEBTOR AND RECOVERY TRUST TO MOTION OF CARTER LEDYARD & MILBURN LLP TO STAY ALL DISTRIBUTIONS OF GLOBAL SETTLEMENT PROCEEDS

SS Body Armor I, Inc. (the "Debtor"), the post-confirmation debtor in this chapter 11 case, and the Recovery Trustee ("Recovery Trustee") of the Recovery Trust established pursuant to the confirmed chapter 11 plan respectfully submit this opposition to the motion to stay distributions [D.I. 4059] ("Stay Motion") filed by Carter Ledyard & Milburn LLP ("CLM") and the related brief [D.I. 4083] ("Stay Joinder") filed by D. David Cohen ("Cohen"). In support of this opposition, the Debtor and the Recovery Trustee state as follows:

### Preliminary Statement

1. By the Stay Motion, CLM requests that the Court establish what will amount to an approximately $70 million reserve (or, if CLM is to be believed, a $142 million reserve) to fund a potential fee award to CLM and its client, D. David Cohen.[2] The exponential rate at which CLM/Cohen's fee-related demands have increased over the course of this chapter 11 case is astounding. In September 2015, CLM and Cohen informed the Court that approximately $550,000 of attorneys' fees had been incurred for the work CLM performed for Cohen in

---

[1] The debtors and the last four digits of each debtor's federal tax identification number were: SS Body Armor I, Inc. (9361); SS Body Armor II, Inc. (4044); SS Body Armor III, Inc. (9051); and PBSS, LLC (8203). All correspondence and pleadings must be sent to SS Body Armor I, Inc., c/o Pachulski Stang Ziehl & Jones LLP, 919 North Market St., 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

[2] Any capitalized terms used but not defined herein have the meanings ascribed to such terms in the opposition [D.I. 4030] ("Fee Reserve Opposition") to CLM's motion [D.I. 4019] ("Fee Reserve Motion") to establish a $25 million reserve to pay a potential fee award to CLM and Cohen.

connection with the SOX 304 claim. At that time, CLM and Cohen requested a fee award of $1,860,000 (CLM's lodestar with a 3.38 multiplier that CLM described as "entirely reasonable"). Approximately 2½ years later – but with no work performed in the interim that could arguably benefit the Debtor, and a significant amount of activity that was adverse to the Debtor and its constituencies – CLM requested that the Court require the Debtor to establish a $25 million reserve to fund a fee award to CLM and Cohen. After the Court ordered ("Fee Reserve Order") the Debtor to establish a $5 million reserve – an amount that represents approximately 7% of the Debtor's anticipated $70 million recovery under the global settlement, or CLM's lodestar with a 9.1 multiplier – CLM filed the Stay Motion, requesting that the Court stay **all** distributions of the Debtor's settlement proceeds pending resolution of CLM's appeal from the Fee Reserve Order.

2. According to the Stay Motion, the Debtor will receive approximately $142 million as a result of the global settlement. If CLM's view of the global settlement were correct, CLM would be requesting a $142 million reserve. While, in reality, the Debtor anticipates "only" an approximately $70 million recovery under the global settlement, the dramatic increase in CLM's fee-related demands is nonetheless astonishing:



3. CLM and Cohen have pursued their ever-increasing fee demands by resorting to various mischaracterizations, misstatements and omissions. As just a few examples:

**Per Cohen & CLM:** Cohen and CLM insist that, as a result of David Brooks' death, the Debtor no longer has a viable claim to the Restrained Assets. For instance, Cohen has argued that the funds to be distributed to the Debtor under the global settlement are derived from the SOX 304 claim and "no other judgment [is] possible" because Brooks' death abated the criminal restitution award.[3] Motion to Intervene at pg. 16. *See also* Fee Reserve Motion at ¶ 31 (SOX 304 claim is "the only viable claim for the Post-Confirmation Debtor and the victims to collect against the funds (in excess of $180 million) frozen" in the Eastern District of New York); Stay Joinder at ¶ 3 (aside from SOX 304 claim, there is "no other legal action against the Brooks Estate, no other way to secure a recovery for the creditors, the class action plaintiffs and the shareholders of the Debtor").

> **Reality:** The Brooks-related assets seized by the U.S. Government remain restrained in the Eastern District of New York, and are the *in rem* defendants in the Civil Forfeiture Proceeding. *See* Case No. 10-cv-04750 (EDNY) at D.I. 171.[4] Both the Debtor and the Class Plaintiffs submitted Petitions for Remission requesting that the DOJ use the Restrained Assets to compensate the Debtor and the Class Plaintiffs (respectively) for the devastating losses suffered as a result of David Brooks' misconduct. The funds to be distributed to the Debtor and the Class Plaintiffs under the global settlement will be distributions by the DOJ on account of the Petitions for Remission, pursuant to the Attorney General's authority to use assets forfeited in a civil forfeiture proceeding to compensate victims. *See* 18 U.S.C. § 981(d); 28 C.F.R. Part 9-121.100.

**Per CLM:** The Debtor's "representations concerning the anticipated settlement have been discredited" and "there has been *no* discovery regarding the terms" of the global settlement. Stay Motion at ¶¶ 2, 17 (emphasis in original).

> **Reality:** In response to CLM's subpoena, the Debtor provided CLM with a copy of the global term sheet on February 13, 2018. CLM has never claimed – and **cannot** truthfully claim – that the Debtor and the Recovery Trust's description of the payments to be made to the Debtor and the Class Plaintiffs is not consistent with the term sheet signed by all parties in December 2017.

**Per Cohen & CLM:** Based on a selective misreading of a status report filed by the SEC, Cohen and CLM claim that the Debtor will in fact receive a monetary recovery on the SOX 304 claim. For instance, CLM asserts that the SEC "filed a status report expressly stating that the Brooks Estate has agreed to reimburse the Post-Confirmation Debtor $142 million on account of the SOX 304 claim." Stay Motion at ¶ 2. *See also* Exhibit I to Stay Joinder at pg. 2 (the Debtor "is getting $142 million of reimbursement from the Brooks Estate … pursuant to SOX 304, and not to any other cause of action").

> **Reality:** CLM/Cohen's discussion of the SEC status report omits a key fact: the SEC's status report discloses that the monetary obligations of the Brooks Estate with respect to the SEC Action will be "deemed satisfied" by forfeiture of the Restrained Assets in the Civil Forfeiture Proceeding. *See* Exhibit A to Stay Motion at pgs. 1-2. In other words, as the Debtor and Recovery Trust consistently have stated, the payments to be made to the Debtor and Class Plaintiffs arise out of the Civil Forfeiture Proceeding, and no additional payments will be made on account of the SOX 304 claim.

---

[3] Attached as **Exhibit 1** to the appendix of exhibits ("Appendix") submitted concurrently herewith is a motion to intervene ("Motion to Intervene") filed by Cohen in the SEC Action. In connection with that motion, Cohen also filed a pro hac motion. The Florida District Court denied Cohen's pro hac motion on the grounds that Cohen had misrepresented, among other things, his status as an eligible member of the bar. The Florida District Court's order on Cohen's pro hac motion is attached as **Exhibit 3** to the Appendix.

[4] Attached as **Exhibit 4** to the Appendix is the amended complaint in the Civil Forfeiture Proceeding.

**Per CLM:** The Debtor will "receive a $142 million SOX 304 recovery, which will be split with the Class pursuant to the 50/50 sharing agreement" set forth in the Bankruptcy Settlement. Stay Motion at ¶ 18.

> **Reality:** Both the Debtor **and** the Class Plaintiffs will receive distributions under the global settlement on account of their respective Petitions for Remission. As discussed herein, the Debtor has revised its Petition for Remission following discussions with the DOJ, and submitted a revised Petition for Remission in February 2018 requesting remission of approximately $87.7 million. The Class Plaintiffs also submitted a revised Petition for Remission requesting remission of approximately $81.5 million. In other words, while the amounts ultimately received by the Debtor and the Class Plaintiffs under the global settlement will be subject to the sharing arrangement set forth in the Bankruptcy Settlement, it is by no means accurate to state that the Debtor will receive $142 million of proceeds from the global settlement, and then "share" those proceeds with the Class Plaintiffs. <u>The Debtor's anticipated recovery under the global settlement has been, and continues to be, approximately $70 million</u>.

**Per Cohen & CLM:** "No creditor can reasonably contend that a brief stay would cause any meaningful prejudice particularly as CLM intends to seek an expedited briefing schedule and hearing on its appeal" from the Fee Reserve Order. Stay Motion at ¶ 3. *See also* Stay Motion at ¶ 7 (the Debtor and Recovery Trust "implicitly conceded there would be no prejudice in granting CLM's request" for a $25 million fee reserve); Exhibit I to Stay Joinder at pg. 4 (Cohen purportedly seeks to challenge the global settlement in the Florida District Court to ensure payment to victims for the harm caused to them).

> **Reality:** In the Fee Reserve Opposition, the Debtor and the Recovery Trust argued that the $25 million fee reserve originally requested by CLM could prejudice the Debtor's constituencies by affecting the amounts that otherwise would be available for immediate distribution on unsecured claims or equity interests. Fee Reserve Opposition at ¶ 30. CLM's instant request for a stay of **all** distributions of the Debtor's proceeds from the global settlement will most certainly prejudice all of the Debtor's constituencies. This is particularly true given that – contrary to CLM's assertions in the Stay Motion – CLM has requested and obtained (over the Debtor and the Recovery Trust's objections) an order sending its appeal from the Fee Reserve Order to mediation. Moreover, notwithstanding Cohen's self-proclaimed status as an advocate for the Debtor's shareholders, the enormous fee-related demands asserted by Cohen and CLM would in all likelihood eliminate any distributions to equity in the Debtor's chapter 11 case.

4. As outlined above, the fee-related demands asserted by CLM and Cohen have been based on deliberate mischaracterizations (or, at best, fundamental misconceptions) of the global settlement. The Debtor's anticipated $70 million of proceeds from the global settlement will be derived from the Civil Forfeiture Proceeding, based on the Debtor's status as a victim of David Brooks' misconduct, and will be distributed to the Debtor's constituencies in accordance with the Bankruptcy Settlement and the Plan. It is not surprising – but still inexcusable – that CLM and Cohen have attempted to re-characterize the global settlement, given that neither CLM nor Cohen made any contribution to any of the mechanisms that will actually provide for payment to the Debtor's constituencies, i.e., the Petitions for Remission, the Bankruptcy

-4-

Settlement and the Plan. In fact, Cohen repeatedly has engaged in conduct **adverse** to the interests of the Debtor and its constituencies with respect to the Petitions for Remission, the Bankruptcy Settlement and the Plan, as set forth in the following chart:

| Date | Actions Adverse to the Debtor and Its Constituencies |
|---|---|
| January 2015 | Cohen works with David Brooks to try to develop a competing chapter 11 plan [03.19.15 Tr. at 30:11-32:8]. |
| 02.18.15 | Cohen supports and is "actively involved" with Brooks family's attempt to replace Debtor's board with Brooks-sponsored board [D.I. 2885 at ¶ 10]. |
| 03.06.15 | Cohen argues that Bankruptcy Settlement is too rich for Debtor, that Debtor has no right to Escrowed Funds, that Class Plaintiffs should not release claims against Debtor, and that Debtor's counsel will become counsel for Class Plaintiffs [D.I. 2923 at ¶¶ 3-4]. |
| 03.06.15 | Cohen argues that Debtor was not a victim of David Brooks' misconduct and is not entitled to restitution [D.I. 2923 at ¶ 19]. |
| 03.19.15 | Cohen testifies at length in support of the Brooks family's attempt to replace the Debtor's board [03.19.15 Tr. at pgs. 24-44]. |
| 05.26.15 | Cohen seeks leave to appeal $53.9 million restitution award to Debtor on grounds that award would be a "windfall" to Debtor and its constituencies [EDNY D.I. 1903 at pg. 3, attached as **Exhibit 5** to Appendix]. |
| 09.17.15 | Cohen appeals the EDNY District Court's order approving the Bankruptcy Settlement in the Class Action [EDNY D.I. 459]. |
| 10.13.15 | Cohen objects to Plan and argues that Debtor should not be allowed to borrow $20 million of Escrowed Funds to fund the Plan [D.I. 3353 at ¶ 4]. |
| 03.11.16 | Second Circuit issues mandate dismissing Cohen's Class Action appeal for lack of standing, because Cohen opted out of the class and failed to state a plausible interest [EDNY D.I. 460]. |
| 02.05.18 | Cohen writes to the SEC stating that global settlement is a "disgraceful artifice" and "completely contrary to the Commission's principled goals" [Motion to Intervene at pg. 6; Exhibit I to Stay Joinder at pg. 44 of 50]. |
| 02.08.18 | Cohen pays a "surprise" visit to SEC headquarters and is stopped by security [Motion to Intervene at pg. 7]. |
| 03.06.18 | Cohen files Motion to Intervene in the SEC Action, accusing the SEC staff of engaging in "foul" dealings with Debtor's counsel, and accusing the SEC, DOJ and other parties to the global term sheet of falsifying the date of the term sheet [Motion to Intervene at pgs. 7, 14]. |

5. In sum, the Stay Motion – and CLM's request for a $70 million reserve – is based on CLM's tortured interpretation of the SEC's status report. When the SEC's status report is read in its entirety (i.e., including the language conveniently omitted from the Stay Motion), it confirms the Debtor and the Recovery Trust's description of the global settlement: (a) approximately $142 million of Restrained Assets will be forfeited in the Civil Forfeiture Proceeding, and distributed to both the Debtor **and** the Class Plaintiffs on account of their respective Petitions for Remission, not on account of the SOX 304 claim; (b) the judgment entered in the SEC Action will be "deemed satisfied" by forfeiture of the Restrained Assets in the Civil Forfeiture Proceeding, but no funds will be paid to either the Debtor or the SEC on account of the judgment in the SEC Action; and (c) the Debtor expects to receive approximately $70 million as a result of the global settlement.

6. As neither CLM nor Cohen performed any work in connection with the Petitions for Remission or the Civil Forfeiture Proceeding – and, in fact, have tried to sabotage, among other things, the global settlement itself – it would be entirely appropriate to award no attorneys' fees to either CLM or Cohen. In the event, however, the Court determines that some fee award to Cohen/CLM is appropriate, the amount of any fee award should be calculated using the lodestar method based on CLM's actual fees of $549,472.61, with either no multiplier or a multiplier that does not exceed the 3.38 multiplier espoused in the Cohen/CLM fee application, resulting in a maximum fee of $1.86 million. *See, e.g.,* Fee Reserve Opposition at ¶¶ 24-34. The $5 million reserve already established by the Court is more than nine times CLM's lodestar, and approximately 7% of the Debtor's anticipated $70 million recovery under the global settlement, and thus is more than sufficient to cover any appropriate fee award to CLM or Cohen. Therefore, for the reasons set forth herein, CLM has failed to establish that a stay of all distributions by the Debtor (i.e., a $70 million reserve) is necessary or appropriate in this case.

-6-

## Statement of Relevant Facts

7. The Fee Reserve Opposition sets forth the relevant factual background regarding the Bankruptcy Settlement and the Civil Forfeiture Proceeding, the status of the Petitions for Remission submitted to the DOJ by the Debtor and the Class Plaintiffs as of January 2018, and the salient terms of the global settlement agreement between the Debtor, the Recovery Trust, the Class Plaintiffs, the DOJ (specifically, the USAO-EDNY), the Brooks Estate and the Brooks Family. *See, e.g.,* Fee Reserve Opposition at ¶¶ 8-17. Additional relevant facts, including facts concerning events that occurred after the filing of the Fee Reserve Opposition on January 31, 2018, are set forth below.

8. On February 13, 2018, counsel for the Debtor provided CLM with a copy of the term sheet (executed by all parties on December 8, 2017) that reflects the terms of the global settlement. As stated in the Fee Reserve Opposition, and as particularly relevant in connection with the Stay Motion, the parties to the global settlement agreed that:

- The U.S. Government, the Debtor, the Recovery Trust, the Class Plaintiffs, the Brooks estate and the Brooks family (individually and on behalf of related entities) will execute a final settlement agreement. The SEC will not be a party to that agreement.

- Pursuant to the final settlement agreement, the parties will agree to the forfeiture of approximately $143 million of the Restrained Assets. That amount will first be used to pay the costs and expenses incurred by the U.S. Government in connection with the prosecution of the Civil Forfeiture Proceeding and the criminal action against David Brooks. The remaining amount will be made available for remission to all persons who qualify as victims under 28 CFR §§ 9.2 and 9.8, including the Debtor and the Class Plaintiffs.

  […]

- Separately, the SEC and the Brooks estate will enter into a consensual final judgment, subject to approval by the SEC Commissioners and the Florida District Court, **which judgment will be deemed satisfied by the distributions under the final settlement agreement between the U.S. Government, the Debtor, the Recovery Trust, the Class Plaintiffs, the Brooks estate and the Brooks family**.

Fee Reserve Opposition at ¶ 16 (emphasis added). Significantly, while CLM now claims that the "representations concerning the anticipated settlement have been discredited" (Stay Motion at ¶ 2), CLM has never stated – and **cannot** state – to the Court that the Debtor and Recovery Trust's description of the payment terms of the global settlement is not true to the term sheet.

9. Consistent with both the term sheet and the description of the global settlement set forth in the Fee Reserve Opposition, the SEC filed a status report in the SEC Action on March 19, 2018 [attached as Exhibit A to the Stay Motion] ("SEC Status Report") which states in relevant part (including relevant parts omitted from the Stay Motion):

> The Commissioners have now considered and contingently approved the Estate's settlement offer, which provides, in pertinent part, for the following relief: (1) the Estate is held liable to the Commission for disgorgement of $117,500,000, representing profits gained as a result of the conduct alleged in the Amended Complaint, together with prejudgment interest in the amount of $24,500,000, for a total of $142,000,000; (2) the Estate shall reimburse SS Body Armor I, Inc. … $142,000,000 for bonuses and profits David Brooks received from DHB stock sales, pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 …; and **(3) the Estate's monetary obligations are deemed satisfied by the entry of the Consent Decree of Forfeiture and Order for Delivery in the Forfeiture Case, which provides for the forfeiture of approximately $142,000,000 of assets.**
>
> […]
>
> **1. In the Civil Forfeiture Case, of the approximately $167 million in restrained assets, $142 million would be forfeited and the remaining $25 million would go to the Brooks Family. Of the $142 million being forfeited, up to $132 million would be distributed to shareholder victims** [i.e., the Class Plaintiffs] **and the Company** [i.e., the Debtor]**, and approximately $10 million would go to the Brooks Family through DHB's bankruptcy.**

SEC Status Report at pgs. 1-2 (language omitted from the Stay Motion shown in bold).

10. As stated in the Fee Reserve Opposition, and also consistent with the SEC Status Report, the Restrained Assets will be distributed to the Class Plaintiffs and the Debtor on account of their respective Petitions for Remission, which have been submitted to the DOJ and currently

-8-

are pending approval by the DOJ. *See* Fee Reserve Opposition at ¶ 19. The Debtor's anticipated recovery under the global settlement has been, and continues to be, approximately $70 million.

11. With respect to the Debtor's Petitions for Remission, the Debtor submitted a Petition for Remission on May 27, 2015 and (at the DOJ's request) submitted a supplemental Petition for Remission on September 8, 2017. Following discussions with the DOJ, the Debtor submitted a revised supplemental Petition for Remission to the DOJ on February 27, 2018, by which the Debtor requested that the DOJ use the Restrained Assets to compensate the Debtor for $87,705,000 of the losses suffered by the Debtor as a result of David Brooks' misconduct.

12. The Class Plaintiffs submitted a Petition for Remission to the DOJ on January 5, 2018, and submitted a supplemental Petition for Remission to the DOJ on March 1, 2018 to respond to certain information requests and questions posed by the DOJ. The supplemental Petition for Remission submitted by the Class Plaintiffs identifies a total of $81,540,718 in recognized losses by class members who either filed claims in the Class Action or in the DOJ's claim process in connection with restitution.

13. CLM filed its appeal from the Fee Reserve Order on March 2, 2018. While CLM states in its Stay Motion (filed on March 27, 2018) that CLM "will seek to have the Appeal briefed and argued on an expedited basis" (Stay Motion at ¶ 11), CLM in fact requested on March 21, 2018 that the appeal be sent to mediation. The Debtor and the Recovery Trust opposed that request. On April 2, 2018, CLM's appeal from the Fee Reserve Order was referred to mediation.

14. Finally, Cohen filed his Motion to Intervene in the SEC Action on March 6, 2018. As described in that motion, Cohen has attempted to interfere with the global settlement by, among other things, paying a "surprise" visit to SEC headquarters in Washington, D.C. – where he was stopped by security – and by accusing the SEC, the DOJ, the Debtor and the Recovery

-9-
DOCS_LA:313500.4 70934/001

Trust of "mis-dating" the term sheet underlying the global settlement. *See, e.g.*, Motion to Intervene at pgs. 7-9. The SEC opposed Cohen's motion to intervene on March 20, 2018.[5] In its opposition brief, the SEC states, among other things:

> Cohen claims the true purpose behind his Motion is to protect the victims of Brooks' fraud. In reality, it is an attempt to forum shop to bolster his efforts to collect a $25 million windfall for himself and his legal counsel from the proceeds of a global settlement that includes the Commission's settlement with the Estate. In DHB's bankruptcy case, Cohen and his law firm initially sought attorney's fees of $1.86 million.
>
> After the global mediation, Cohen and CLM learned of the settlement and greatly increased their fee demand from $1.86 million to $25 million. On February 23, 2018, the Bankruptcy Court gave them 80% less than requested and entered an order setting a reserve of $5 million. Cohen is clearly unhappy with the Bankruptcy Court's ruling. CLM appealed the Bankruptcy Court's order to the District Court, and less than two weeks later, Cohen filed his Motion in this Court seeking another opportunity to litigate his fees through the backdoor: i.e., the higher the SOX 304 amount that he can get out of this action, the more fees Cohen thinks he can get from the Bankruptcy Court. Simply put, the Court should deny the Motion, because Cohen is forum shopping in an attempt to end run the Bankruptcy Court ruling and receive a huge windfall.

Opposition to Motion to Intervene at pg. 19. The United States District Court for the Southern District of Florida has not yet ruled on Cohen's Motion to Intervene in the SEC Action.

## **Argument**

15. As the moving party, CLM bears the burden of proof in demonstrating to this Court that a stay is appropriate. *Propp v. Swift Energy Co. (In re Swift Energy Co.)*, 2016 U.S. Dist. LEXIS 84106, *12 (D. Del. June 29, 2016). To meet this burden, CLM must: (a) make a "strong showing" that CLM is likely to prevail on the merits of its appeal; (b) establish that irreparable harm to CLM is "likely [not merely possible]" if the Stay Motion is denied; (c) establish that a stay will not "substantially injure" the Debtor, the Recovery Trust, their

---

[5] The SEC's opposition brief ("Opposition to Motion to Intervene") is attached as **Exhibit 2** to the Appendix.

constituencies or other interested parties; and (d) show that a stay is in the public interest. *Id*. at *12-13 (internal quotation marks and citations omitted). The first two factors are the most critical: if CLM "does not make the requisite showings on either of [the] first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis." *Id*. at *15 (quoting *Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 571 (3d Cir. 2015)). As discussed in detail below, CLM has not established either of the first two critical factors, or either of the two remaining factors. Therefore, the Stay Motion should be denied.

A. **CLM Has Failed to Make Any Showing of Likelihood of Success on the Merits**

16. In evaluating CLM's likelihood of success on the merits, the relevant question is: Has CLM made a "strong showing" that the Delaware District Court is likely to find that CLM is entitled to a $25 million reserve to fund a potential fee award to CLM and Cohen? The answer to that question is a categorical "No." CLM has offered no rational justification – either in connection with the Fee Reserve Motion itself or in the instant Stay Motion – for the $25 million reserve requested in the Fee Reserve Motion, much less the $70 million reserve now requested in the Stay Motion.

17. CLM's position has been, and continues to be, based on a mischaracterization of the global settlement. As described in the Fee Reserve Opposition, the only payments to be made to the Debtor and the Class Plaintiffs pursuant to the global settlement will be made by the DOJ on account of the respective Petitions for Remission submitted by the Debtor and the Class Plaintiffs. The settlement payments will be funded with the assets restrained by the DOJ in connection with the Civil Forfeiture Proceeding. The judgment to be entered in the SEC Action will be deemed satisfied by the forfeiture of the Restrained Assets, but no funds will be paid by the Brooks Estate (or any other party) under the judgment to be entered in the SEC Action.

-11-

18. The SEC Status Report confirms the description of the global settlement set forth above and in the Fee Reserve Opposition. In the Stay Motion and Stay Joinder, however, CLM and Cohen focus only on the language in the SEC Status Report stating that the Brooks Estate "shall reimburse SS Body Armor I, Inc. … $142,000,000 … pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002" (SEC Status Report at pg. 2), and have chosen to ignore the remainder of the SEC Status Report. In particular, CLM and Cohen have failed to inform the Court that the SEC Status Report also states that (a) the Brooks Estate also will be held liable to the SEC for $142,000,000 on account of the SEC's disgorgement claims, and (b) the entire amount of the judgment in the SEC Action ($284,000,000) will be deemed satisfied by the forfeiture of the Restrained Assets in the Civil Forfeiture Proceeding. SEC Status Report at pg. 2. Thus, as stated in the Fee Reserve Opposition, the Debtor and Class Plaintiffs will not receive a recovery in the SEC Action (indeed, the Class Plaintiffs are not parties to the SEC Action), but rather will receive recoveries from the Restrained Assets based on the Petitions for Remission in the Civil Forfeiture Proceeding. Fee Reserve Opposition at ¶ 23.

19. Finally, CLM continues to rely on a mischaracterization of the amount and nature of the settlement payments to be received by the Debtor and the Class Plaintiffs. According to CLM, the SEC Status Report "makes clear […] that the Post-Confirmation Debtor is entitled to receive a $142 million SOX 304 recovery, which will be split with the Class pursuant to the 50/50 sharing agreement the Post-Confirmation Debtor reached with the Class." Stay Motion at ¶ 18. In fact, the SEC Status Report states that "[i]n the Civil Forfeiture Case […] up to $132 million would be distributed to shareholder victims and the Company … ." SEC Status Report at pg. 2. In other words, the amount forfeited in the Civil Forfeiture Proceeding will be distributed to the Class Plaintiffs **and** the Debtor on account of their respective Petitions for Remission, with the Class Plaintiffs having submitted an approximately $81.5 million Petition for Remission and

the Debtor having submitted an approximately $87.7 million Petition for Remission. While the amounts received by the Class Plaintiffs and the Debtor will be subject to the sharing arrangement set forth in the Bankruptcy Settlement, CLM's assertion – that the Debtor alone will receive $142 million, and then split that amount with the Class Plaintiffs pursuant to the Bankruptcy Settlement – has no basis in reality.

20. In sum, CLM's argument regarding its likelihood of success on the merits is based on the erroneous assumption that the Debtor will receive $142 million under the judgment to be entered in the SEC Action. As described above and in the Fee Reserve Opposition, however, the only payments to be made to the Debtor under the global settlement agreement will be made by the DOJ from the Restrained Assets on account of the Debtor's Petition for Remission, and the Debtor's anticipated recovery under the global settlement is approximately $70 million. Thus, CLM has failed to establish the first factor relevant to the Court's evaluation of the Stay Motion.

**B.** **CLM Has Failed to Establish That CLM is Likely to Suffer Irreparable Harm**

21. CLM asserts that a stay is appropriate in this case because CLM's appeal "will be rendered moot" unless the Stay Motion is granted. Stay Motion at ¶ 1. That argument does not satisfy CLM's burden of establishing irreparable harm, because "it is well established that the possibility that an appeal may become moot does not constitute irreparable harm for purposes of obtaining a stay." *Swift Energy Co.*, 2016 U.S. Dist. LEXIS 84106 at *23 (citation omitted).

22. Moreover, CLM's argument regarding the likelihood of harm to CLM depends on the notion that the $5 million reserve established by the Fee Reserve Order will not be sufficient to fund a potential fee award to CLM and Cohen, and that some greater amount is necessary to prevent irreparable harm to CLM. As explained in detail in the Fee Reserve Opposition, in the event the Court determines that some fee award to Cohen/CLM is appropriate, the amount of any fee award should be calculated using the lodestar method based on CLM's actual fees of

-13-

$549,472.61, with either no multiplier or a multiplier that does not exceed the 3.38 multiplier espoused in the Cohen/CLM fee application, resulting in a maximum fee of $1.86 million.[6] *See, e.g.,* Fee Reserve Opposition at ¶¶ 24-34. The $5 million reserve established by the Court in the Fee Reserve Order is more than nine times CLM's lodestar – and approximately 7% of the Debtor's anticipated recovery under the global settlement – and thus is more than sufficient to cover any appropriate fee award to CLM or Cohen. Under these circumstances, CLM has failed to meet its burden of establishing the second factor relevant to the Court's analysis of the Stay Motion – that irreparable harm to CLM is "likely [not merely possible]" if the Stay Motion is denied. *Swift Energy Co.*, 2016 U.S. Dist. LEXIS 84106 at *13 (citation omitted).

C. **The Debtor, the Recovery Trust and Their Constituencies Will Suffer Substantial Harm If the Stay Motion Is Granted**

23. CLM asserts that a stay of all distributions by the Debtor – i.e., a $70 million reserve – "is also warranted because neither the Post-Confirmation Debtor nor its constituents will be prejudiced by the requested temporary stay in distributions, particularly in light of the fact that CLM will seek to have the Appeal heard on an expedited basis." Stay Motion at ¶ 19. This argument fails for several reasons. First, CLM has **not** requested that its appeal from the Fee Reserve Order be heard on an expedited basis. Instead, almost a week before CLM filed the

---

[6] As set forth in the Fee Reserve Opposition, where (as here) a party has at best made some type of unquantifiable, tangential contribution to a multi-faceted settlement that involved numerous other parties, courts calculate any fee award using the lodestar method, and must carefully consider whether the application of a multiplier is warranted. *See, e.g., Winston & Strawn LLP v. F.D.I.C.*, 894 F. Supp. 2d 115, 129 (D.D.C. 2012) (denying any percentage of recovery award, and refusing to apply lodestar multiplier, where consulting attorney failed to demonstrate that he was responsible for entire settlement amount, performed the least amount of work of all professionals involved, and court was unable to calculate what portion of settlement, if any, resulted from attorney's work); *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 926-27 (E.D. Pa. 1993) (where different actions had been filed by both shareholder plaintiffs and other parties, applying lodestar method with no multiplier to shareholder plaintiffs' request for fees and holding that "awarding a fee based on a percentage of the monetary fund would be inappropriate" because the court found "the benefit conferred by [plaintiffs] to be unquantifiable" and that plaintiffs could "only be partly credited with conferring the benefit achieved").

-14-

Stay Motion, CLM requested – and ultimately obtained over the objections of the Debtor and the Recovery Trust – an order referring its appeal from the Fee Reserve Order to mediation.

24. Second, CLM's assertion that a stay of all distributions by the Debtor will not prejudice the Debtor's constituencies is specious. This chapter 11 case was filed eight years ago, on April 14, 2010, and the Plan was confirmed over two years ago, on November 10, 2015. After years of contentious litigation in multiple forums, covering issues that extended far beyond the very limited area of CLM/Cohen's involvement, the Debtor and the Recovery Trust are now in a position to receive payments under the global settlement that will allow for substantial distributions to unsecured creditors and, in all likelihood, equity interest holders. The notion that the Debtor's constituencies will not be prejudiced by a stay of their long-awaited distributions, pending conclusion of CLM's appeal and/or a mediation with CLM and Cohen that – given the unrealistic and illogical positions asserted by CLM and Cohen – has long odds of success, is untenable. Accordingly, CLM has failed to establish the third factor to be considered by the Court in evaluating the Stay Motion.

**D.     A Stay Pending Final Resolution of CLM's Appeal Is Not In the Public Interest**

25. Finally, CLM has failed to establish that an order prohibiting the Debtor from making any distributions pending resolution of CLM's meritless appeal from the Fee Reserve Order is in the public interest. As with CLM's argument regarding prejudice to the Debtor's constituencies, CLM's argument regarding the public interest is untenable.

26. Here, the public interest lies with the successful implementation of the Debtor's confirmed chapter 11 plan, and the distribution of the Debtor's remission payments – i.e., the payments the Debtor will receive as partial compensation for the devastating financial harm inflicted on the Debtor by David Brooks – to its constituencies. The public has no interest in allowing CLM and Cohen to hold the Debtor's settlement payments hostage while CLM and

-15-

Cohen pursue their overblown claims for fees in this Court, the Delaware District Court and the Florida District Court. This is particularly true in light of the fact that CLM already has obtained a $5 million reserve (more than nine times CLM's lodestar of approximately $550,000) that provides a more than sufficient "cushion" for any appropriate fee award to CLM and Cohen. Therefore, CLM has failed to establish the fourth, and final, factor relevant to the Court's evaluation of the Stay Motion.

## **Conclusion**

WHEREFORE, the Debtor and the Recovery Trust respectfully request that the Court deny the Stay Motion in its entirety, deny the relief requested in the Stay Joinder, and grant such other relief as the Court deems just and proper.

Dated: April 17, 2018  PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
James E. O'Neill (Bar No. 4042)
Elissa A. Wagner (CA Bar No. 213589)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
   akornfeld@pszjlaw.com
   joneill@pszjlaw.com
   ewagner@pszjlaw.com

Counsel for SS Body Armor I, Inc.

[additional signature page follows]

| Dated: April 17, 2018 | THE ROSNER LAW GROUP LLC |
|---|---|
| | |
| | */s/ Scott J. Leonhardt* |
| | Frederick B. Rosner (Bar No. 3995) |
| | Scott J. Leonhardt (Bar No. 4885) |
| | Jason A. Gibson (Bar No. 6091) |
| | 824 N. Market Street, Suite 810 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 777-1111 |
| | Email: rosner@teamrosner.com |
| |        leonhardt@teamrosner.com |
| |        gibson@teamrosner.com |
| | |
| | -and- |
| | |
| | Robert M. Hirsh |
| | Beth M. Brownstein |
| | ARENT FOX LLP |
| | 1675 Broadway |
| | New York, NY 10019 |
| | Telephone: (212) 484-3900 |
| | Facsimile: (212) 484-3990 |
| | Email: robert.hirsh@arentfox.com |
| |        beth.brownstein@arentfox.com |
| | |
| | Counsel for the Recovery Trust |