# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------X
: Chapter 11
In re: :
: Case No. 10-11255 (CSS)
S.S. BODY ARMOR I, Inc. *et al.*, : Jointly Administered
:
Debtors. : Hearing Date: July 17, 2018 at 1:00 p.m. (ET)
: Objection Deadline: July 10, 2018 at 4:00 p.m. (ET)
---------------------------------------------X

## MOTION BY CARTER LEDYARD & MILBURN LLP TO STRIKE ITEMS DESIGNATED BY THE POST-CONFIRMATION DEBTOR AND RECOVERY TRUSTEE FOR INCLUSION IN THE APPELLATE RECORD

Carter Ledyard & Milburn LLP ("***CLM***") hereby moves to strike the items designated by the Post-Confirmation Debtor (the "***Debtor***") and the Recovery Trustee (collectively, the "***Appellees***") in connection with CLM's appeal of the order establishing a $5 million reserve pending the determination of fees to be awarded to CLM (the "***Reserve***"). *See* Order dated February 23, 2018 (the "***Reserve Order***") [Dkt. No. 4049]. Appellees' designations were not submitted to, or considered by, this Court in connection with the Reserve Order and are plainly improper. Appellees' designations include, for example, documents that were never filed in this Court and documents that post-date the issuance of the Reserve Order. Accordingly, and for the reasons sets forth below, Appellees' designations should be stricken.

## PRELIMINARY STATEMENT

1. It is beyond dispute that CLM performed "terrific work" in connection with its representation of D. David Cohen, a shareholder of the Debtor and a whistleblower, who objected a decade ago to the joint settlement of a class action and a shareholders' derivative action. Cohen objected on the grounds that the settlement illegally indemnified David H. Brooks, the Debtor's then-CEO, for his $186 million liability under Sarbanes-Oxley Act, § 304 ("***SOX***

1

*304*"), 15 U.S.C. § 7243(a). After Cohen's objection was overruled, CLM successfully appealed "novel issues of law" that ultimately preserved the $186 million SOX 304 claim for the Debtor and its constituencies. *See Cohen v. Viray*, 622 F.3d 188, 193, 195 (2d Cir. 2010). In its decision, the Second Circuit recognized that Cohen's objection and appeal vindicated "important public purposes" and ensured the "integrity of the financial markets." *Id.* at 195.

2. In 2015, this Court ruled that CLM is entitled to a fee award in an amount to be determined following the Debtor's receipt of funds "on account of" the SOX 304 claim that Cohen preserved. See Order dated December 3, 2015 (the "***Fee Order***") [Dkt. No. 3624], pp. 2-3. In January 2018, upon learning that the SEC had settled the SOX 304 claim for $132 million,[1] CLM moved to establish a reserve of $25 million to ensure that there remained sufficient assets to pay CLM's fee award.

3. This Court granted in part and denied in part CLM's motion, and established a reserve of $5 million (or 20% of the requested amount). *See* Reserve Order, p. 1. CLM thereafter appealed on the grounds that it was error to limit the Reserve to $5 million before CLM had any opportunity to take discovery on the negotiation and terms of the settlement, and prior to an evidentiary hearing before the Bankruptcy Court. *See* CLM's Statement of Issues on Appeal and Designation of Items for the Record dated March 16, 2018 ("***CLM's Issues on Appeal and Designations***")[Dkt. No. 4057], pp. 2-3.

4. Notwithstanding this straight-forward issue on appeal, Appellees have designated hundreds (and perhaps thousands) of pages of documents that were <u>not</u> submitted in connection with the Reserve Motion and that have no bearing on the issues on appeal. Among other things, Appellees designated documents that were filed over seven years ago, documents that were never

---

[1] It was later learned that the settlement amount was $142 million, including $10 million to settle the bankruptcy claims of the Brooks family.

2

filed in this Court and documents that were filed after the issuance of the Reserve Order. For the reasons set forth below, Appellees' designations should be stricken.

## FACTS

5. It is undisputed that Cohen preserved the $186 million SOX 304 claim. *See, e.g.*, 11/10/15 Bank. Hearing Tr., p. 169:22-24 ("KORNFELD: Cohen's contribution, and there is a contribution and we've acknowledged that contribution repeatedly, is that he preserved the SOX 304 claim"); *id.* at 199:18-20 ("THE COURT: [M]y finding is that Mr. Cohen and his counsel are entitled to a fee based on their preservation of the Sarbanes-Oxley claim of approximately $186 million."). It is similarly undisputed that CLM was awarded fees in an amount to be determined following the Debtor's receipt of funds "on account of" the SOX 304 claim. Fee Order, pp. 2-3.

6. In December 2017, CLM learned that following a court-imposed mediation in the action brought by the SEC against the Brooks estate in Florida (the "***SEC Action***"), the SEC and the Brooks Estate had reached a tentative agreement to settle the SOX 304 claim. During this time, CLM attempted to get information concerning the settlement from the Debtor, but the Debtor refused to provide any details. CLM eventually learned that the settlement funds totaled $142 million.

7. CLM also learned that it was the Debtor's position that there was no recovery on account of the SOX 304 claim. Instead, the Debtor asserted that the entire recovery was attributable to the civil asset forfeiture proceeding pending in the Eastern District of New York (the "***EDNY***").

8. On March 19, 2018, the SEC filed a status report in the SEC Action that confirmed that the Brooks estate offered, and the SEC contingently accepted (subject to approval

3

by the Commission), a settlement of the SOX 304 claim for $142 million. *See* SEC Status Report dated March 19, 2018 (S.D. Fla. Case No. 07-cv-61526-CIV) [Dkt. No. 144], pp. 1-2 (attached hereto as **Exhibit A**). In light of this public filing, it is clear that the $142 million settlement is "on account of" the SOX 304 claim. Thus, once the settlement is finalized, CLM will have a right to seek determination and payment of its legal fee award. *See* Fee Order, pp. 2-3.

9. Because the Debtor insisted that the $142 million recovery was not attributable to the SOX 304 claim, however, and to prevent the Debtor from disbursing all of the settlement proceeds prior to adjudication of CLM's fee claim, which would effectively strip CLM of its right to payment of its fee claim, CLM moved in January 2018 to establish a $25 million reserve (the "***Reserve Motion***") [Dkt. No. 4019].

10. In the Reserve Motion, CLM argued that in light of (i) its success in preserving the $186 million SOX 304 claim on an issue of first impression that was integral to the financial markets, and (ii) the settlement of the SOX 304 claim for $142 million, CLM was entitled to a substantial fee award. *See Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re Prudential Ins. Co. of Amer. Sales Practices Lit.*, 273 F. Supp. 2d 563, 567 (D.N.J. 2003) (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001); *see also* Reserve Motion, pp. 17-26. The Reserve Motion did not request adjudication of the amount of CLM's fee award. Instead, it only sought to establish a reserve to ensure sufficient assets remained to satisfy CLM's fee award.

11. Appellees opposed the Reserve Motion on the grounds that there was no SOX 304 recovery because the "source" of the funds that would be paid to the Debtor were frozen in the EDNY in connection with a pending civil asset forfeiture proceeding. *See* 2/16/18 Bank. Hearing Tr., p. 18:9-11 ("the source of the funding [ ] is the civil forfeiture restrained funds, not the SOX

304 funds"). In addition, Cohen and John Jack, a shareholder of the Debtor, filed statements in response to the Reserve Motion. *See* Dkt. Nos. 4032, 4041.

12. On February 16, 2018, this Court held a hearing on the Reserve Motion. At the hearing, CLM argued that the requested reserve was appropriate in light of the factors used to measure fee awards to objectors. CLM also argued the requested reserve was appropriate and necessary because it was "fundamental[ly] unfair" to accept the Debtor's characterization of the settlement without evidentiary support and because CLM had no ability to take discovery concerning the settlement's terms. Specifically, CLM argued:

> I want to talk about first the fundamental unfairness of the situation we are in. Mr. Kornfeld was at the mediation in Florida, we were not. We should have been there, but we were not. We've been asking for documents relating to the settlement. Finally we got the term sheet two days ago pursuant to subpoena. There are a lot of documents we're going to want to see, including the settlement offer that was made by Brooks to the SEC.

2/16/18 Bank. Hearing Tr. 22:13-19.

13. On February 23, 2018, this Court issued an order granting in part and denying in part the Reserve Motion, and established a reserve of $5 million – or 20% of the requested amount. *See* Reserve Order. *See* Reserve Order, p. 1.

14. On March 2, 2018, CLM appealed on the grounds that limiting the Reserve to $5 million before CLM had an opportunity to take discovery on the settlement was improper (the "***Reserve Appeal***"). *See* CLM's Notice of Appeal [Docket No. 4051].[2] On March 16, 2018, CLM designated all documents submitted in connection with the Reserve Motion for inclusion in the appellate record, namely: (i) the 2015 Fee Order; (ii) all moving papers, objections, statements

---

[2] On April 2, 2018, the appeal was ordered into mandatory mediation. The mediation took place on June 4, 2018 and is continuing.

and responses filed in connection with the Reserve Motion;[3] (iii) the transcript of the February 23 hearing; (iv) the Reserve Order; and (v) CLM's Notice of Appeal. *See* CLM's Issues on Appeal and Designations [Dkt. No. 4057], pp. 2-3 (attached hereto as **Exhibit B)**.

15. On March 30, 2018, Appellees filed their counter-designation of additional items for inclusion in the record. *See* Appellee's Designation of Additional Items for Inclusion in the Record of Appeal Filed by Carter Ledyard & Milburn LLP dated March 30, 2018 [Dkt. No. 4067] (attached hereto as **Exhibit C)**. Appellees designated approximately 165 additional documents, none of which were submitted in connection with the Reserve Motion. Among other things, Appellees' designations included documents that were filed in this Court as far back as 2010, documents that were filed in this Court after the issuance of the Reserve Order and documents that were never filed in this Court.

16. Specifically, Appellees' designation included the following categories of documents:

Documents filed in this case in 2010-2012:

- Documents related to the Debtor's 2010 motion to reject the 2007 settlement [Dkt. Nos. 589, 949]; and

- Proofs of claim filed in 2012 [Dkt Nos. 390, 402, 434, 568].

Documents filed in this case 2015:

- Documents relating to the approval of the 2015 settlement [Dkt. Nos. 2865, 2784, 2865, 2885, 2921, 2923, 2942, 2945, 2946, 2954, 2955, 2956, 2958, 2960, 2995, 3029, 3033, 3036, 3037, 3039, 3047, 3055, 3065, 3076, 3089, 3090, 3104; 3247; 3218-9, 3218-10, 3218-11, 3218-12, 3218-13, 3218-14, 3218-15, 3218-16, 3218-

---

[3] Specifically, these documents are: (i) the Reserve Motion [Dkt. No. 4019]; (ii) Opposition of Post-Confirmation Debtor and the Recovery Trustee to the Reserve Motion [Dkt. No. 4030]; (iii) Reservation of Rights and Statement of D. David Cohen in Response to Opposition of the Post-Confirmation Debtor and Recovery Trustee to the Reserve Motion [Dkt. No. 4032]; (iv) Reply of CLM in Response to Opposition of Post-Confirmation Debtor and Recovery Trustee and in Further Support of the Reserve Motion [Dkt. No. 4035]; and (v) Statement of Jon Jacks Regarding CLM/D. David Cohen Fee Reserve Application [Dkt. No. 4041].

17, 3218-19, 3246-5, 3218-20, 3246-6, 3218-21, 3218, 3246-7, 3246-8, 3246-10, 3246-11, 3246-12, 3246-13, 3246-14, 3246-14, 3246-16, 3246-17, 3246-18, 3246-19, 3246-20, 3246-21, 3246-24, 3246-25, 3246-26, 3246-22, 3246-23, 3246-24, 3246-25, 3246-26, 3246-27, 3246-28, 3246-29, 3246-30, 3246-31, 3246-32, 3246-33, 3246-34, 3246-35, 3246-36, 3246-37, 3246-38, 3246-39, 3246-40, 3218-29, 3218-30, 3218-31];

- Documents relating to CLM's 2015 fee application and/or objection to fees to derivative counsel [Dkt. Nos. 3300, 3367, 3368, 3370, 3371, 3381, 3384, 3386, 3390, 3394, 3424, 3425, 3561]; and

- Documents relating to the approval of the plan and disclosure statement [Dkt. Nos. 3107, 3109, 3169, 3171, 3204, 3230, 3243, 3259, 3261, 3262, 3275, 3347, 3351, 3487, 3490, 3491, 3492, 3512, 3519, 3520, 3526, 3560].

Documents filed in the main bankruptcy case **after** the issuance of the Reserve Order:

- Documents related to motion to stay distributions pending appeal of the Reserve Order [Dkt Nos. 4059, 4060].

Documents **never** filed in the main bankruptcy case (including documents filed after the issuance of the Reserve Order):

- Documents filed in the EDNY in connection with the approval of the 2015 settlement (*id*. at pp. 11-12);

- Documents filed in the Second Circuit in connection with the appeal of the EDNY's approval of the 2015 settlement (*id*. at p. 12);

- Documents filed in the criminal proceeding in the EDNY (*id.* at p. 13);

- Documents filed in adversary proceedings (*see* Debtor's Designation, pp. 10-11);

- Documents filed in the civil asset forfeiture proceeding in the EDNY (*id.*);

- Documents filed in the SEC civil proceeding against the Brooks estate pending in the Southern District of Florida, including documents that post-date the issuance of the Reserve Order (*id*. at pp. 13-14).

17. Because none of the documents were submitted or considered in connection with the Reserve Motion, the motion to strike should be granted.

7

## ARGUMENT

18. Rule 8009(e)(1) of the Federal Rules of Bankruptcy Procedure ("**Rule**") allows a party to move to strike "improperly designated items" from the record on appeal from an order of the Bankruptcy Court. The Bankruptcy Court is the proper forum for such motions. *Id.* ("If any difference arises about whether the record accurately discloses what occurred in the bankruptcy court, the difference must be submitted to and settled by the bankruptcy court and the record confirmed accordingly."); s*ee also, e.g.*, *In re Digerati Techs., Inc.*, 531 B.R. 654, 659 (Bankr. S. D. Tex. 2015) (Rule 8009(e)(1) "leaves no doubt that any dispute over designation of items must be adjudicated by the bankruptcy court, and not the district court to which the appeal has been assigned.").

19. The record on appeal may contain only those items considered by the Bankruptcy Court in reaching its decision. *See, e.g.*, *Paravue Corp. v. Heller Ehrman LLP,* C 14-3887 CRB, 2016 U.S. Dist. LEXIS 28080, *4 (N.D. Ca. March 4, 2016); *NWL Holdings, Inc. v. Eden Center, Inc. (In re Ames Dep't Stores, Inc.)*, 320 B.R. 518, 522 (Bankr. S.D.N.Y. 2005) ("the touchstone for the designation of matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the judgment appealed from"). If an item was not considered by the bankruptcy court, it should be stricken from the record. *See Zer-Ilan v. Frankford* (*In re CPDC, Inc.*), 337 F.3d 436, 443 (5th Cir. 2003) (holding it was error to include documents and testimony in the appellate record that were not offered and admitted in evidence before the bankruptcy court issued its decision); *see also In re Barrick Group, Inc.*, 100 B.R. 152 (Bankr. D. Conn. 1989) (granting motion to strike documents that were not considered by the bankruptcy court).

20. The issue on appeal is whether it was proper to limit the Reserve to $5 million in light of the factors used by courts in awarding fee claims to objectors and prior to discovery and an evidentiary hearing concerning the terms of the settlement. *See* CLM's Issues on Appeal and Designations [Dkt. No. 4057], pp. 2-3. The documents submitted in connection with the Reserve Motion, i.e., the moving papers, Appellees' opposition, and the statements in response, along with the Fee Order and the transcript of the hearing, comprise the <u>entire</u> record of documents submitted in connection with the Reserve Motion. These documents are properly part of the record and were properly designated by CLM. *See NWL Holdings, Inc.*, 320 B.R. at 522.

21. The 165 documents designated by Appellees were not submitted to, or considered by, the Court in connection with the Reserve Motion. Accordingly, they are not properly part of the appellate record and must be stricken. *Zer-Ilan*, 337 F.3d at 443. The hundreds (and perhaps thousands) of pages of documents relate to, among other things, the approval of the plan and disclosure statement, the 2010 motion to reject the 2007 settlement, Cohen's individual proofs of claims filed in 2012 and documents filed in an adversary proceeding against Jeffery Brooks.[4] These documents have no bearing on the questions on appeal and are simply irrelevant.

22. More egregiously, Appellees also designated documents that were never filed in this Court and/or that were filed after this Court decided the Reserve Motion. Such documents obviously could not have been considered in issuing the Reserve Order. *See Zer-Ilan*, 337 F.3d at 443 (holding it was error to include in the record documents that post-dated issuance of decision on appeal); *Paravue Corp.*, 2016 U.S. LEXIS 28080, *4 ("Papers submitted after the district court's ruling should be stricken from the record on appeal.").

23. Appellees' proposed designations serve only to confuse the issues on appeal by burying the District Court in a mountain of irrelevant and unnecessary documents. Because these

---

[4] Neither Cohen nor Jeffery Brooks is a party to the appeal.

documents were unquestionably not submitted to, or considered by, this Court in issuing the Reserve Order, they are not properly part of the record and must be stricken. *See, e.g., NWL Holdings, Inc.*, 320 B.R. at 521 (granting motion to strike because the subject documents were never "filed with this Court and this Court never saw or considered any of them.").

## CONCLUSION

24. For the reasons set forth herein, CLM respectfully request that this Court (i) strike Appellees counter-designations pursuant to Federal Rule of Bankruptcy Procedure 8009, and (ii) grant any such further relief that it deems just and proper.

Dated: Wilmington, Delaware
June 22, 2018

                GELLERT SCALI BUSENKELL & BROWN, LLC

                By: */s/ Michael Busenkell*
                Michael Busenkell (DE 3933)
                1201 N. Orange Street, Suite 300
                Wilmington, DE 19801
                Tel.: (302) 425-5800

                And

                CARTER LEDYARD & MILBURN LLP
                Gary D. Sesser
                William F. Sondericker
                Leonardo Trivigno
                2 Wall Street
                New York, New York 10005
                Tel. (212) 732-3200

                *Attorneys for Movant Carter Ledyard & Milburn LLP*