# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
In re

SS Body Armor I, Inc., *et al.*, *f/k/a* Point Blank Solutions, Inc., *et al.*[1]

               Debtors.

Chapter 11

Case No. 10-11255 (CSS)

Jointly Administered

**Hearing Date: August 13, 2019 @ 10:00 a.m. (ET)**
**Objection Deadline: July 26, 2019 @ 4:00 p.m. (ET)**

-----------------------------------------------------------x

## RECOVERY TRUST'S OBJECTION TO CLAIM NO. 372
## FILED BY MARCUM RACHLIN, A DIVISION OF MARCUM, LLP

The Recovery Trust for SS Body Armor I, Inc., et al., f/k/a Point Blank Solutions, Inc., *et al.* (the "Recovery Trust"), through Brian K. Ryniker, as Recovery Trustee (the "Recovery Trustee"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to Claim No. 372 (the "Marcum Rachlin Claim") filed by Marcum Rachlin, a Division of Marcum LLP ("Marcum Rachlin").[2] In support of this Objection, the Recovery Trustee, on behalf of the Recovery Trust, respectfully states as follows:

## PRELIMINARY STATEMENT

1.     By the Marcum Rachlin Claim, Marcum Rachlin seeks reimbursement of "professional fees, costs and attorneys' fees" on account of non-legal services it provided to Dawn M. Schlegel ("Schlegel"), Point Blank Solutions, Inc.'s ("Point Blank") former Chief Financial Officer, and David Brooks ("Brooks"), Point Blank's former Chief Executive Officer. As set forth

---

[1] The pre-confirmation debtors and the last four digits of each debtor's federal tax identification number were: SS Body Armor I, Inc. (9361); SS Body Armor II, Inc. (4044); SS Body Armor III, Inc. (9051); and PBSS, LLC (8203). All correspondence and pleadings must be sent to SS Body Armor I, Inc., c/o Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

[2] A copy of the Marcum Rachlin Claim is attached hereto as Exhibit 1.

below, Marcum Rachlin has no direct claim against the Debtors, and to the extent it seeks indemnification for services it provided to Schlegel and Brooks, the Debtors have no mandatory or permissible obligation to reimburse such asserted amounts, as Schlegel pled guilty to various criminal charges set forth below and Brooks' estate has waived the right to indemnification pursuant to the Global Settlement.

## JURISDICTION

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

3. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are Bankruptcy Code Sections 502(b) and 558, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1.

## FACTUAL BACKGROUND

**The Claims Process**

5. On April 14, 2010, Point Blank Solutions Inc. *n/k/a* SS Body Armor I, Point Blank Body Armor, Inc. *n/k/a* SS Body Armor II, Protective Apparel Corporation of America *n/k/a* SS Body Armor III, and PBSS (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No trustee or examiner was or has been appointed in any of the Debtors' chapter 11 cases.

6. On May 14, 2010, the Debtors filed their respective schedules of assets and liabilities and statements of financial affairs [Docket Nos. 150-157] (respectively, the "Schedules" and the "SOFAs"). On October 12, 2010, the Debtors filed amendments to their Schedules [Docket Nos. 668-70].

7. On June 10, 2010, the Court entered an order (the "Bar Date Order") [Docket No. 237] establishing: (i) August 13, 2010 (the "Bar Date") as the final date and time for all persons and entities, other than Governmental Units (as such term is defined in section 101(27) of the Bankruptcy Code) holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim ("Proofs of Claim") in these chapter 11 cases; and (ii) October 12, 2010 as the deadline for filing Proofs of Claim by Governmental Units.

8. Written notice of the Bar Date (the "Bar Date Notice") was mailed to, among others, all creditors and other known holders of claims as of the Petition Date, which holders include all persons or entitles listed in the Schedules, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. In addition to mailing such actual notice, the Debtors also published the Bar Date Notice in USA Today on or about June 16, 2010 [Docket No. 276].

9. The Proofs of Claim filed in these are recorded on the official claims register (the "Claims Register") maintained by Epiq Systems, Inc., the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

10. On September 1, 2015, the Plan Proponents[3] filed the *Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors* [Docket No. 3261] (the "Plan"). The Plan provides for liquidation and disposition of certain assets and is predicated on the Settlement Agreement, under which (1) the Debtors were provided with a $20 million, interest-free, non-recourse loan to fund certain claims, reserves, and Plan implementation, (2) various complex litigation matters pending

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan unless otherwise noted.

in the Bankruptcy Court, the Delaware District Court, and the EDNY District Court were settled, and (3) certain parties were authorized to pursue recoveries in the Shared Recovery Matters. On November 10, 2015, an order (the "Confirmation Order") was entered confirming the Plan and the Plan Supplement (including the Recovery Trust Agreement) dated October 2, 2015 (the "Plan Supplement"). The Plan was consummated on November 23, 2015 (the "Effective Date"). Section 6.8 of the Plan provides for the substantive consolidation of the Debtors' cases for distribution purposes.

11. The Plan sets forth the "Post-Confirmation Debtor Functions" and the "Recovery Trust Functions" and requires the Post-Confirmation Debtor Representative and Recovery Trustee to "cooperate and coordinate their efforts to implement the Plan." *See* Plan § 7.5. The Recovery Trust Functions include, (i) the filing, prosecution, settlement and/or other disposition of any and all objections to proofs of claim; (ii) the filing, prosecution, settlement and/or other disposition of any and all Estate Claims; (iii) the distribution of the proceeds of the Recovery Trust Assets to the Recovery Trust beneficiaries pursuant to the Recovery Trust agreement; and (iv) the liquidation or other disposition of any other Recovery Trust Asset.

12. On May 30, 2019, the Post-Confirmation Debtor Representative and the Recovery Trustee jointly filed the *Joint Motion of the Post-Confirmation Debtor and Recovery Trust for an Order Extending the Deadline to Object to Administrative Claims and Disputed Claims and to Estimate Claims* [Docket No. 4258] which was granted by an order of the Bankruptcy Court on June 18, 2019 [Docket No. 4272] extending the applicable deadlines to object to claims through and including November 29, 2019.

## RELEVANT BACKGROUND TO THIS OBJECTION

### I.     The Global Settlement

13.    On and after September 9, 2005, multiple class actions were filed in the United States District Court for the Eastern District of New York (the "EDNY District Court") against Point Blank and certain of its officers and directors, including David Brooks, Dawn Schlegel and Sandra Hatfield ("Hatfield").  The actions were filed on behalf of purchasers of Point Blank's publicly traded securities.  The complaints alleged, among other things, that Point Blank's public disclosures were false or misleading in violation of the Securities Exchange Act of 1934.  The class actions were consolidated into the Class Action.

14.    On and after September 14, 2005, multiple derivative actions also were filed in the EDNY District Court on behalf of Point Blank against certain of Point Blank's officers and directors, including Brooks, Schlegel and Hatfield.  The complaints alleged, among other things, causes of action for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment.  The derivative actions were consolidated into the Derivative Action.

15.    On November 30, 2006, the parties to the Class and Derivative Actions entered into the EDNY Stipulation.

16.    The EDNY Stipulation was approved by the EDNY District Court pursuant to judgments entered in the Class and Derivative Actions on July 8, 2008, but on September 30, 2010, the Second Circuit Court of Appeals issued a decision vacating and remanding the judgment in the Derivative Action.

17.    Subsequently, on November 5, 2018, the EDNY District Court entered a *Consent Final Decree of Forfeiture and Order for Delivery* [Case No. 10-cv-04750, D.I. 216] to effectuate

the terms of a global settlement (the "Global Settlement") entered into as of October 25, 2018 between Point Blank Solutions, Inc., the Recovery Trust, the Department of Justice ("DOJ"), the Class Plaintiffs, and the estate of David Brooks, Jeffrey Brooks, and other members of the Brooks family resolving, among other things, the Class and Derivate Actions. The Global Settlement provides for Point Blank and the Class Plaintiffs to each receive remission payments from the assets restrained by the DOJ in its civil forfeiture proceeding against various Brooks-related assets, and also provides for mutual releases between the Point Blank, the estate of David Brooks, Jeffrey Brooks, and other Brooks-related parties.

## II.    The Criminal Action Against David Brooks, Sandra Hatfield and Dawn Schlegel

### A.    David Brooks' Conviction and Guilty Pleas

18.    In October 2007, David Brooks was indicted in the Eastern District of New York on multiple charges based on, among other things, the same misconduct alleged in the Class and Derivative Actions. On September 14, 2010, a jury convicted him of conspiracy to commit securities fraud, securities fraud, conspiracy to commit mail and wire fraud, mail fraud, wire fraud, insider trading, conspiracy to obstruct justice, obstruction of justice and material misstatements to auditors. He also pled guilty to tax counts of conspiracy to defraud the United States and false filing of tax returns.

19.    In August 2013, the EDNY District Court sentenced David Brooks to 17 years imprisonment for his criminal conduct. At sentencing, the EDNY District Court found that Point Blank and its shareholders were victims of David Brooks' criminal conduct, and were entitled to restitution. As discussed below, the EDNY District Court entered its restitution order against Brooks and his co-defendants on March 27, 2015.

**B.     Dawn Schlegel's Guilty Pleas and Sandra Hatfield's Conviction**

20.     On August 16, 2006, Schlegel and Hatfield were indicted in the Eastern District of New York based on, among other things, the same misconduct alleged in the Class and Derivative Actions.  On or about October 23, 2007, Schlegel pled guilty to securities fraud conspiracy and tax fraud conspiracy.  *See U.S. v. Dawn Schlegel, et al.*, Case No. 06-CR-0550 (JS) at D.I. 82.  On November 5, 2014, the EDNY District Court sentenced Schlegel to three years supervised release.

21.     Hatfield was convicted on September 14, 2010 of: conspiracy to commit securities fraud; securities fraud; conspiracy to commit mail and wire fraud; three counts of insider trading; conspiracy to obstruct justice; and obstruction of justice.  On May 9, 2014, Hatfield was sentenced to seven years in federal prison.

22.     On March 27, 2015, the EDNY District Court issued its restitution order (the "Restitution Order") in the criminal action against Brooks, Schlegel and Hatfield.  In the Restitution Order, the EDNY District Court ordered that Brooks, Schlegel and Hatfield must pay restitution to the Debtors in an amount of $53,912,545.62, and must pay restitution, in a total amount of $37,584,301.31, to certain shareholder victims of the fraud and other criminal misconduct perpetrated by Schlegel and her co-defendants.[4]

23.     Of particular relevance to Schlegel and David Brooks' asserted right to indemnification, the EDNY District Court found that Point Blank is entitled to recover the indemnification advances it already made to Schlegel ($1,512,188) and Brooks ($8,012,000).  *See* Restitution Order at 34-35.

---

[4] A copy of the Restitution Order is attached as Exhibit 3.

### III. Point Blank's Duty to Indemnify

24. The ninth article of Point Blank's certificate of incorporation (the "Certificate of Incorporation") establishes the scope and limits of the company's indemnification obligations:

> The Corporation shall indemnify any person who was or is a party or witness, or is threatened to be made a party or witness, to any threatened, pending or completed action, suit or proceeding...whether civil, criminal, administrative or investigative (including a grand jury proceeding), by reason of the fact that he or she (a) is or was a director or officer of the Corporation or, (b) as a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, agent, partner or trustee (or in any similar position) of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, to the fullest extent authorized or permitted by the General Corporation Law of Delaware and any other applicable law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against expenses (including attorney's fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding, or in connection with any appeal thereof....

Certificate of Incorporation at Article Ninth (1).[5] The Certificate of Incorporation provides that the payment of expenses shall be made to an officer in advance of the final disposition of an action or proceeding only upon delivery of an undertaking "to repay all amounts so advanced if it should be determined ultimately that such director or officer is not entitled to be indemnified." *Id*. The Restitution Order includes the advances made to Schlegel and her co-defendants as part of the restitution award to Point Blank. To date, Schlegel has not repaid any expenses advanced by the Debtors.

25. Point Blank's by-laws (the "By-Laws") also describe the scope and limits of the company's indemnification obligations:

> Section 6.1 Mandatory Indemnification
>
> The Corporation shall indemnify, to the fullest extent permitted by Delaware law, any person who was or is a defendant or is threatened to be

---

[5] Relevant pages from the Certificate of Incorporation are attached as Exhibit 4.

> made a defendant to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person:
>
> (a)   Is or was a director, officer or employee of the Corporation; or
>
> (b)   Is or was a director, officer or employee of the Corporation and is or was serving at the request of the Corporation as a director, trustee, member, member representative, officer, employee or agent of another corporation, partnership, limited liability company, joint venture, trust or other enterprise; or
>
> (c)   Is or was serving at the request of the Corporation as a director, trustee, member, member representative, officer, employee or agent of another corporation, partnership, limited liability company, joint venture, trust or other enterprise
>
> against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually incurred by such person in connection with such action, suit or proceeding.

*See* By-Laws (May 24, 2005) at Article VI, Section 6.1.[6] As noted above, the Restitution Order includes the advances already made to Schlegel, Brooks and Hatfield as an item of damages that Schlegel and her co-defendants are ordered to pay Point Blank as restitution.

**RELIEF REQUESTED**

26.   By this Objection, the Recovery Trust requests entry of the proposed order (the "Proposed Order"), attached hereto as Exhibit 2, pursuant to section 502(b) of the Bankruptcy Code, and Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1, disallowing and expunging the Marcum Rachlin Claim, on the basis that (i) Marcum Rachlin cannot establish any direct right to recover from the Debtors pursuant to any of the documents attached to the Marcum Rachlin Claim, nor is the Recovery Trust aware of any such basis for a direct claim; and (ii) Schlegel is not entitled to either permissive or mandatory indemnification from the Debtors, and Brooks, through his estate, has waived any right to indemnification from the Debtors.

---

[6] Relevant pages from the By-Laws, amended as of May 24, 2005, are attached as Exhibit 5. Relevant pages from the By-Laws, amended as of August 17, 2007, are attached as Exhibit 6. For purposes of this Objection, the indemnification provisions of the 2005 and 2007 By-Laws are substantially the same, except that the 2007 By-Laws only provide for indemnification of expenses "actually and reasonably incurred." By-Laws (August 17, 2007) at Article VI, Section 6.1.

Accordingly, the Debtors have no liability for the Marcum Rachlin Claim and the claim should be disallowed and expunged.

**BASIS FOR OBJECTION**

27. Section 502(b) of the Bankruptcy Code provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

**I.    Marcum Rachlin Does Not Have a Direct Claim Against Point Blank**

28. Point Blank's Certificate of Incorporation and Bylaws are contractual in nature, and the indemnification rights provided to Point Blank's directors and officers through these documents are "right[s] conferred by contract, under statutory auspice." *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 559 (Del. 2002). When interpreting documents providing indemnification to officers and directors, standard terms of contract interpretation should apply. *See*, *e.g.*, *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 342-43 (Del. 1983) (interpreting directors request for indemnification pursuant to plain language of bylaws); *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 173 n.44 (Del. Ch. 2003) (warning that "courts should be reluctant to interpret § 145 and bylaws that implement it as displacing the more specific contractual arrangements that are typically drafted between corporations and outside contractors, such as attorneys, investment bankers, engineers, and information technology providers"). Where necessary, the intent of providing indemnification to directors of officers should also be considered. *Id.* at 172 (denying

claims of corporation's attorneys for indemnification and stating that indemnification statutes are "designed to protect person exercising corporate discretion and authority, not the attorneys those persons hire to give them legal advice") (citing *Western Fiberglass, Inc. v. Kirton, McConkie & Bushnell*, 789 P.2d 34, 38 (Utah Ct. App. 1990).

29. Neither the Certificate of Incorporation nor the Bylaws provide Marcum Rachlin a contractual right to pursue Point Blank for payment of Schlegel or Brooks' fees.

   a. The Certificate of Incorporation directs that mandatory indemnification is provided against expenses to "any person who was or is a party or witness, or is threatened to be made a party or witness, to any threatened, pending or completed action, suit or proceeding" because such person "is or was a director or officer of the Corporation…." No provision in the Certificate of Incorporation makes any allowance for the payment of a director's or officer's expenses directly to the firm who provided services to the director or officer.

   b. The Bylaws provide indemnification only to a person who "[i]s or was a director, officer or employee of the Corporation." No provision in the Bylaws addresses the payment of fees directly to counsel who provide services to a director or officer of the company.

30. Section 502(b) of the Bankruptcy Code provides in pertinent part that the Court shall determine the amount of a claim and allow claims except when such claim is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). As there is no law under which Marcum Rachlin has a direct right of indemnification against Point Blank, the Marcum Rachlin Claim should be disallowed.

## II. To the Extent the Marcum Rachlin Asserts the Marcum Rachlin Claim is Based on Indemnification, the Claim Must Be Disallowed and Expunged

### A. Pursuant to the Global Settlement, David Brooks Waived and Released All His Claims

31. Pursuant to the below provisions of the Global Settlement,[7] Brooks, through his estate, waived any claims against Point Blank and the Recovery Trust:[8]

> (c) The David Brooks Claimants, on behalf of themselves and their heirs, agents, assigns, representatives and successors, any entities in which they individually, collectively, directly or indirectly hold any ownership interest, and any entities they individually, collectively, directly or indirectly control or manage (collectively, the "David Brooks Releasors"), shall:
>
> (i) Release, waive and discharge any and all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, liabilities, and causes of action, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, in law, equity or otherwise, that the David Brooks Releasors have, may have or are entitled to assert against SSBA I, the Recovery Trust and/or their respective current or former officers, directors, members, employees, agents, attorneys, consultants, insurers, representatives, predecessors, successors, parents and subsidiaries;
>
> (v) Release, waive and discharge all rights, claims and interests in the Recovery Trust, whether such rights, claims and interests are held directly or indirectly, or are held as creditors or as equity interest holders;
>
> (vii) Agree that all creditor claims and claims based on equity interests filed by or scheduled for the David Brooks Releasors in the Bankruptcy Proceeding shall be deemed disallowed;

Global Settlement § 3(c).

32. Accordingly, to the extent the Marcum Rachlin Claim asserts amounts on account of representing Brooks, the Debtors and/or the Recovery Trust have no liability on account of such

---

[7] A copy of the Global Settlement is not attached as an exhibit to this Objection. Any party-in-interest who seeks a copy of the Global Settlement may contact the undersigned counsel to the Recovery Trust.

[8] Capitalized terms used in this section of the Objection have the meaning ascribed to them in the Global Settlement.

portion of the Marcum Rachlin Claim and such portion of the claim must be disallowed and expunged.

### B. Schlegel is Not Entitled to Mandatory Indemnification

33. Point Blank's Certificate of Incorporation and By-Laws provide for indemnification only to the extent permitted by Delaware law. Section 145 of the Delaware General Corporation Law governs indemnification and advancement of expenses, including attorneys' fees, to directors and officers for actions that name such directors and officers as defendants.

34. Section 145 includes provisions for both mandatory indemnification and permissive indemnification of directors and officers. Section 145(c) requires mandatory indemnification to the extent the director or officer "has been successful on the merits or otherwise in defense of any action." 8 Del. C. § 145(c). Because Schlegel has not been successful on the merits or otherwise in defense of any action, mandatory indemnification is inapplicable. As a general rule, convicted felons do not qualify for mandatory indemnification. *See, e.g., In re Adelphia Commc'ns Corp.*, 323 B.R. 345, 379 (Bankr. S.D.N.Y. 2005) ("Once judgments of conviction are entered on the guilty verdicts against them, and until and unless their convictions on those charges are reversed on appeal, John and Timothy Rigas will not be entitled to indemnification with respect to the counts for which they were convicted, as a consequence of the adverse outcome").

35. Indemnification requires a successful outcome, which Schlegel has not achieved. "[I]ndemnification refers to the ultimate obligation of the corporation ... to bear the costs of defense and any ultimate fines, settlement, or damages awards, imposed upon an officer or director after a final determination of the merits of the claims asserted against that officer or director." *In re Adelphia Commc'ns Corp.*, 323 B.R. at 375-76 (distinguishing indemnification from advancement

13

of defense costs, as "legally quite distinct types of legal rights"); *Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del.Ch. 1992) (same). "Whether a corporate officer has a right to indemnification is a decision that must necessarily await the outcome of the investigation or litigation." *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del.Ch. 2005). *See also Paolino v. Mace Sec. Intern., Inc.*, 985 A.2d 392, 397 (Del.Ch. 2009); *Sun-Times Media Group, Inc. v. Black*, 954 A.2d 380, 401-08 (Del.Ch. 2008).

36. Here, Schlegel pled guilty to securities fraud conspiracy and tax fraud conspiracy and was ordered to pay $53,912,545.62 in restitution to Point Blank. As a result, Schlegel has not achieved a successful outcome in the actions, and is not entitled to mandatory indemnification from the Debtors.

### C. Schlegel Does Not Meet Delaware's Good Faith Requirement for Permissive Indemnification

37. Permissive indemnification is also available to directors and officers under Delaware law. In order to be entitled to permissive indemnification, the person must have:

> acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful....

8 Del. C. § 145. *See Green v. Westcap Corp. of Delaware*, 492 A.2d 260, 264 (Del. Super. Ct. 1985) (finding that an officer or director is not entitled to indemnification unless he has proved absence of wrongdoing). Delaware corporations lack the power to indemnify an officer who did not act in good faith or in the best interests of the corporation. *See VonFeldt v. Stifel Fin. Corp.*, 1999 WL 413393, *2 (Del. Ch. June 11, 1999) (citing *Mayer v. Executive Telecard, Ltd.*, 705 A.2d 220, 225 n.6 (Del. Ch. 1997)) (finding that a Delaware corporation lacks the power to indemnify a party who did not act in good faith); *see also Waltuch v. Conticommodity Servs. Inc.*, 88 F.3d 87, 90-91 (2d Cir. 1996) (examining the parameters of 8 Del. C. § 145 and determining that Delaware

corporations lack the power to indemnify officers and directors who did not act in good faith). This "good faith" requirement applies both to indemnification sought directly pursuant to 8 Del. C. § 145, and to indemnification sought pursuant to agreements between the parties, such as the Certificate of Incorporation and By-Laws here. *VonFeldt*, 1999 WL 413393 at *2 ("as a matter of public policy it simply would not make sense for a corporation to have the power to indemnify agents who do not act in its best interests").

38. Delaware courts applying these "good faith" standards have held that indemnification is not permitted for the defense of criminal charges which result in a conviction or a plea of nolo contendere (no contest). *See McLean v. Alexander*, 449 F. Supp. 1251, 1267 (D. Del. 1978) (stating that a "finding or inference of wrongdoing by defendant has generally precluded indemnification"); *Merritt-Champan & Scott Corp. v. Wolfson*, 264 A.2d 358 (Del. Super. Ct. 1970) [Merritt-Chapman I] (indemnification not permitted for defense of criminal charges – securities fraud – of which the officer had been convicted); *Merritt-Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138 (Del. Super. Ct. 1974) [Merritt-Chapman II] (denying indemnification request of officer who pled no contest to charge of filing false annual reports).

39. Here, Schlegel cannot demonstrate that she acted in good faith and in a manner she reasonably believed to be in or not opposed to the best interests of the Debtors. She has pled guilty to securities fraud conspiracy and tax fraud conspiracy which the EDNY District Court has found caused at least $53,912,545.62 in damages to the Debtors. Accordingly, permissive indemnification is unavailable in the criminal action or in the Class and Derivative Actions, which are based on the same securities fraud and other misconduct as the criminal action.

### D. The Litigation Was Not Brought for Actions Taken as an Officer or Director

40. Delaware law allows a corporation to indemnify its officers, directors and employees only for litigation brought against a defendant for his or her actions as a director, officer, employee or agent of the corporation.  8 Del. C. § 145(a); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822-24 (Del. 1992) (interpreting by-laws to allow for indemnification unrelated to officers' actions on behalf of the corporation is unreasonable); *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, *4-5 (Del. Ch. Jan. 30, 2004) (corporate officer not entitled to indemnification for matters relating to his compensation for employment with the company, because his claim did not relate to "use (or abuse) ... of corporate authority"); *In re Miller*, 290 F.3d 263, 267 (5th Cir. 2002) (applying Delaware law, and holding that a corporate officer is not entitled to indemnification for acts unrelated to his performance as an officer and director of the corporation); *Bensen v. American Ultramar Ltd.*, 1996 WL 435039, *34 (S.D.N.Y. 1996) (applying Delaware law, and holding that a corporate officer was sued for actions that inured to his personal benefit, not by reason of conduct related to the management of the corporation).

41. An officer's criminal actions are not taken on behalf of the corporation.  *See, e.g., In re Adelphia Commc'ns Corp.*, 323 B.R. at 378 ("The wire fraud charges plainly were not against any of the Rigases in their official capacity as officers or directors of the Managed Entities, nor did the wire fraud charges even arise more tangentially from their roles, positions, or status as such. They had nothing to do with the Managed Entities at all."); *Happ v. Corning, Inc.*, 466 F.3d 41, 44 (1st Cir. Mass. 2006) (considering whether insider trading convictions cannot be related to duties as officer because "insider trading inherently damages a company by poisoning relations with current and prospective shareholders who supply the capital").  Indeed, any actions taken for personal benefit, criminal or otherwise, are not taken on behalf of the company. *IUE-CWA Pension Fund v. Piccirill (In re Pittsburgh Brewing Co.)*, 342 B.R. 208, 211 (Bankr. W.D.

Pa. 2006) (denying indemnification to officer who allegedly breached a contract to which he made himself a party, and was not related to his duties as an officer).

42. Accordingly, any portion of the Marcum Rachlin Claim premised on the notion that Schlegel is entitled to indemnification because her actions were taken as an officer of the Debtors at the time of the conduct that is the subject of the criminal action, the Class Action and the Derivative Action must be disallowed and expunged as Schlegel's securities fraud and misuse of corporate assets was not related to her duties as an officer. She has no right to be indemnified by the Debtors for the defense of the criminal action, the Class Action or the Derivative Action (or any other related litigation or investigation).

### E. Indemnification for Securities Law Violations is Barred by Federal Law

43. An agreement to indemnify an officer who is guilty of a knowing and willful violation of securities laws is unenforceable as against federal public policy. *See, e.g., Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 215-216 (3d Cir. Del. 2000) (stating that "federal courts disfavor indemnity for federal securities law violations, calling into question the enforceability of these obligations") (citing *Eichenholtz v. Brennan*, 52 F.3d 478, 484-486 (3d Cir. 1995)); *Gabriel Capitol, L.P. v. Natwest Finance*, 137 F. Supp. 2d 251, 267-69 (S.D.N.Y. 2000) (since indemnification shifts the responsibility of tortious conduct to another party, it will not be allowed where there was a knowing and willful violation); *Odette v. Shearson, Hamill & Co.*, 394 F. Supp. 946, 957 (S.D.N.Y. 1975) (denying indemnification for violations of securities laws); s*ee also* 17 C.F.R. §§ 229.510, 229.512 (stating SEC position that agreements to indemnify officers or directors for violations under the Securities Act of 1933 are against public policy and unenforceable). Here, Schlegel pled guilty to securities fraud conspiracy and tax fraud conspiracy. Accordingly, the Debtors have no obligation to indemnify Schlegel.

### F. The Marcum Rachlin Claim is Subject to Point Blank's Claims for Setoff

44. Section 558 of the Bankruptcy Code provides that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate ..." 11 U.S.C. § 558. A debtor's setoff right is a defense under state law which is preserved by section 558. *See, e.g., In re PSA, Inc.*, 277 B.R. 51, 54 (Bankr. D. Del. 2002) (holding that "a right to setoff must be established under state law so that the debtor then may assert the setoff as a defense reserved by § 558."); *In re Papercraft Corp.*, 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991) (holding that "Section 558 preserves to the Debtor its prepetition [non-bankruptcy] defenses to causes of action.").

45. With the entry of the Restitution Order, Schlegel has a liquidated, adjudicated obligation to Point Blank in the amount of $53,912,545.62. Any amounts asserted by Marcum Rachlin on account of services provided to Schlegel is subject to setoff against that judgment.

### RESERVATION OF RIGHTS

46. The Recovery Trust hereby reserves its right to object in the future to the Marcum Rachlin Claim on any ground, and to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended or newly-filed claims. Separate notice and hearing will be provided and scheduled, respectively, for any such objection.

47. Notwithstanding anything contained in this Objection, nothing herein shall be construed as a waiver of any rights that the Recovery Trust may have to: (i) bring avoidance actions under the applicable sections of the Bankruptcy Code against Marcum Rachlin; or (ii) exercise its rights of setoff against Marcum Rachlin.

## **NOTICE**

48. Notice of this Objection will be provided to: (i) the United States Trustee for the District of Delaware; (ii) Marcum Rachlin, at the notice address listed on the Marcum Rachlin Claim; and (iii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Recovery Trust submits that no other or further notice is necessary.

## **NO PRIOR REQUEST**

49. The Recovery Trust has not previously sought the relief requested herein from this Court or any other court.

WHEREFORE, for the reasons set forth herein, the Recovery Trust respectfully requests that the Court enter the Proposed Order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001 and 3007, and Local Rule 3007-1, (i) disallowing and expunging the Marcum Rachlin Claim; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: July 12, 2019
Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email:  rosner@teamrosner.com
           leonhardt@teamrosner.com

-and-

**ARENT FOX LLP**

Robert M. Hirsh (admitted *pro hac vice*)
Beth Brownstein (admitted *pro hac vice*)
1301 Avenue of the Americas, Floor 42
New York, New York 10019
Telephone: (212) 484-3900
Facsimile:  (212) 484-3990
Email:  robert.hirsh@arentfox.com
           beth.brownstein@arentfox.com

*Counsel to the Recovery Trust*