**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> SS Body Armor I, Inc., *et al.*, *f/k/a* Point Blank Solutions, Inc., *et al.*, <br><br>               Debtors. | Chapter 11 <br><br> Case No. 10-11255 (CSS) <br><br> Jointly Administered <br><br> Hearing Date: September 17, 2019 at 10:00 a.m. (ET) <br> Objection Deadline: September 4, 2019 at 4:00 p.m. (ET) |

**MARCUM RACHLIN, A DIVISION OF MARCUM LLP'S MOTION TO RECONSIDER AND VACATE THE COURT'S ORDER SUSTAINING THE RECOVERY TRUST'S OBJECTION TO THE MOVANT'S CLAIM**

      Marcum LLP, f/k/a Marcum Rachlin, a Division of Marcum LLP ("Marcum"), by and through its undersigned counsel, hereby moves (the "Motion") this Court to reconsider and vacate its Order Sustaining the Objection of Recovery Trust for SS Body Armor I, Inc., et al., f/k/a Point Blank Solutions, Inc., *et al.* ("Recovery Trust") to Marcum's Claim Number 372.  In support of the Motion, Marcum avers as follows:

**PRELIMNARY STATEMENT**

      1.      Marcum respectfully requests, pursuant Rules 3008 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that the Court reconsider its Order disallowing and expunging Marcum's bankruptcy claim (D.I. 4314), because Marcum did not receive notice of Recovery Trust's objection to Marcum's claim in the amount of $232,609.99, for the rendering of auditing services on behalf of its client, the Debtors, and Marcum is entitled to an extension to respond to the Recovery Trust's Objection, pursuant to Bankruptcy Rules 3008, 9006(b)(1) and *Pioneer Investment Services, Company v. Brunswick Associates L.P., et al.*, 507 U.S. 380, 395 (1993).

2. Marcum can satisfy each of the four (4) Pioneer factors because: (i) if the Court denies this Motion, Marcum will be severely and irreparably prejudiced in comparison to no prejudice or negative impact to the Recovery Trust; (ii) a delay of this matter by just a few weeks to allow Marcum to file a response to the Recovery Trust's Objection would not impact the efficient administration of this case; (iii) the cause of the delay was beyond Marcum's control because the Objection was sent to the wrong address; hence, Marcum did not receive the filing such that it knew that it must respond to protect its legal rights to a bankruptcy claim; and (iv) Marcum has, and continues to, act in good faith in an effort to preserve its legitimate and justified bankruptcy claim. For the reasons set forth below, the Court should exercise its discretion under Bankruptcy Rules 3008 and 9006(b)(1) and grant Marcum's Motion and permit Marcum fourteen (14) days to response to the Recovery Trust's Objection to Marcum's claim.

## JURISDICTION

3. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A. MARCUM'S ENGAGEMENT BY THE DEBTORS FOR AUDITING SERVICES**

4. Marcum LLP, then Rachlin (collectively referred to as "Marcum"), first started serving as Point Blank Solutions, Inc.'s registered, independent auditors in or around June of 2005. *See* Exhibit "1" attached hereto, Declaration of Kim A. Lamplough in Support of the Motion for Reconsideration of Marcum, LLP ("Lamplough Declaration"), at ¶ 16.

5. Marcum served as Point Blank's auditor from June 2005 to June 29, 2009. *See id.*

6. Consistent with Marcum's role as auditor, Marcum was engaged by Point Blank each year to audit consolidated financial statements. *See id.*, at ¶ 17.

7. In furtherance of its auditor relationship with Marcum, the Chairman of Point Blank's Audit Committee, Bernard C. Bailey, executed an engagement letter on November 4, 2008 (the "Engagement Letter"). *See id.*, at ¶ 12 and Ex. "A" to the Lamplough Declaration, the Engagement Letter.

8. The Engagement Letter confirms the parties' understanding "of the services [Rachlin was] to provide for Point Blank Solutions, Inc. (the "Company" or "Point Blank") for the year ended December 31, 2008" and review of the quarterly financial information for the year ending December 31, 2009. *See id., Lamplough Declaration,* Ex. A, Engagement Letter, at ¶¶ 1 and 12 (upon information and belief, handwritten paragraph numbers were in the original, executed document).

9. Marcum also was engaged to communicate any deficiencies identified in Point Blank's "internal control over financial reporting" by "communicate[ing] in writing to the Audit Committee and management any significant deficiencies and material weaknesses relating to internal control over financial reporting identified while performing our audit." *See id.*, at paragraphs 5 and 6.

10. It was during Marcum's audit of Point Blank, in or around August 2006, that Marcum discovered actions and/or conduct on the part of Point Blank's officers that were later found to constitute violations of the law. *See* Ex. 1, Lamplough Declaration, at ¶ 20.

11. Pursuant to its obligations to Point Blank, Marcum reported the conduct that it discovered to the Audit Committee and the Securities and Exchange Commission. *See id.*, at ¶ 21.

12. Paragraph 19 of the Engagement Letters sets forth the hourly rates that could be charged by Marcum for the "Audit of the Company's consolidated financial statements and internal control over financial reporting" and "review of each of the Company's consolidated financial statements for the quarters ending in the year ended December 31, 2009." *See* Lamplough Declaration, Ex. A, Engagement Letter, at ¶ 19.

13. Paragraph 20 makes clear that it was the "Company," meaning Point Blank, that was responsible for paying Marcum's costs, stating: "The Company will also be billed for travel and other out-of-pocket costs such as report production, word processing, postage, etc." *See id.*, at ¶ 20.

14. Paragraph 22 of the Engagement letter provides that the Company (meaning Point Blank) could be billed for costs incurred by Marcum to fulfill its legal obligations to report illegal acts. Specifically, Paragraph 22 states:

> To fulfill our responsibilities under these acts and/or to generally carry out our duties, we may need to consult with your counsel, or counsel of our choosing, about any such issues, including potential illegal acts of which we become aware. Additional fees, including *reasonable* legal fees incurred, if any, will be billed to you. You agree to fully cooperate with any procedures that we may deem necessary to perform.

*Id.* (upon information and belief, italics text was handwritten in the original document).

15. Paragraph 23 of the Engagement Letter contemplated additional costs associated with subpoenas that may be served upon Marcum and testimony that may be required of Marcum, and mandated that Point Blank pay such costs. Specifically, Paragraph 23 states:

> As a result of the fact that you have advised us that the Company continues to be involved in certain pending litigation, we may have to consult with our counsel, as well as yours. Further, should we be served with an SEC enforcement investigative subpoena, or another form of subpoena, requiring that we produce certain documents and/or provide future testimony in such an investigation, or otherwise, it is likely that we will be required to spend additional time, and incur additional

> legal fees and costs of our counsel. Those additional services, including *reasonable* legal fees and costs incurred by our counsel will be billed to the Company and you agree to pay. . . .

*Id.* (upon information and belief, italics text was handwritten in the original document).

16. In both Paragraphs 22 and 23, Bernard Bailey, or some other member of Point Blank's Audit Committee, edited the Engagement Letter, adding the word "reasonable" before the words "legal fees." *See* Lamplough Declaration, Ex. A, Engagement Letter, at ¶¶ 22 and 23.

17. Similarly, upon information and belief, Point Blank's representative also struck language at the end of the sentence in Paragraph 23, crossing out terms that appear to relate to the rates to be charged by Marcum's counsel. *See id.*

### B. MARCUM'S PERFORMANCE OF SERVICES ON BEHALF OF THE DEBTORS AND IN FURTHERANCE OF MARCUM'S ROLE AS THE DEBTORS'S AUDITOR.

18. Marcum performed services and incurred costs, on behalf of the Debtors, and in relation to auditing services provided to the Debtors, valued at $232,609.99, for which the Debtors has failed to compensate Marcum. *See generally* Ex. "1," Lamplough Declaration and Exhibit B thereto, Invoices.

19. True and correct copies of Marcum's invoices, which form the basis of Marcum's Bankruptcy Claim Number 372, are attached to the Lamplough Declaration, as Exhibit "B" thereto (the "<u>Invoices</u>").

20. Each of the billing entries set forth in the Invoices is accurate and properly subject to payment by Point Blank. *See* Lamplough Declaration, at ¶ 29.

21. Marcum performed services in connection with subpoena(s) served upon Marcum by the Securities and Exchange Commission and the United States Department of Justice, arising

from Marcum's role as Point Blank's auditor and discovery of unlawful conduct. *See id.*, at ¶ 30.

22.     Specifically, the costs referenced in Invoice Number 171953, dated August 27, 2009, relate to costs incurred by Marcum to respond to the Department of Justice's requests for the production of documents served upon Marcum. *See* Lamplough Declaration, at ¶ 31; Ex. B, Invoice Dated 8/27/09.

23.     Marcum also performed services in connection with its testimony at deposition(s), grand jury proceedings and at a criminal trial, services that were mandated by subpoenas served upon Marcum. *See id.*, Lamplough Declaration, at ¶ 32; Ex. B, Invoice Numbers: 176513, 178784, 176840, and 18034 and Summary of Fees dated June 3, 2010.

24.     Marcum incurred significant attorneys' fees in connection with its participation in judicial proceedings, fees which are reflected in invoices billed to Point Blank. *See id.*, Lamplough Declaration, at ¶ 33; Ex. B, Invoice Numbers: 171953, 176513, 178784, and 182832 and Summary of Fees dated June 3, 2010.

25.     Marcum further incurred out-of-pocket expenses for travel to and from judicial proceedings. *See id., Lamplough Declaration, at* ¶ 34; Ex. B, Invoice Numbers: 171953 and 176513.

26.     Marcum incurred $10,000 in fees associated with its transferring its responsibility as Point Blank's auditor to another auditing entity. *See id., Lamplough Declaration, at* ¶ 35; Ex. B, Invoice Number: 171953.

27.     None of the services billed to Point Blank in the Invoices relates to work performed, or costs incurred, by Marcum for the benefit of any of Point Blank's officers who were charged with crimes. *See id., Lamplough Declaration, at* ¶ 36.

28. Rather, all of the services and costs reflected in the Invoices, which are the subject of Marcum's Bankruptcy Claim Number 372, are services performed, or costs incurred, by Marcum for the benefit of Point Blank—the Debtors and/or services performed, or costs incurred, by Marcum in connection with its role as Point Blank's auditor. *See id., Lamplough Declaration, at* ¶ 37.

29. Each of the billing entries on the Invoices represent services performed, or costs incurred, by Marcum that are compensable pursuant to the express terms of the Engagement Letter, which was agreed to by Point Blank. *See id., Lamplough Declaration, at* ¶ 34; Exs. A and B.

### C.  DEBTORSS' BANKRUPTCY CASE & MARCUM'S BANKRUPTCY CLAIM

27. On or about April 14, 2010, Point Blank Solutions, Inc. n/k/a SS Body Armor I, Point Blank Body Armor, Inc. n/k/a SS Body Armor II, Protective Apparel Corporation of America n/k/a SS Body Armor III, and PBSS (collectively the "<u>Debtors</u>") filed for relief under Chapter 11 of the Bankruptcy Code (the "<u>Bankruptcy Cases</u>").

28. On or about August 5, 2010, Marcum filed a Proof of Claim in connection with the Bankruptcy Cases, Claim Number 372 (the "<u>Claim</u>" or "<u>Marcum's Claim</u>").

### D. THE RECOVERY TRUST'S OBJECTION TO MARCUM'S BANKRUPTCY CLAIM

29. On July 12, 2019, the Recovery Trust filed an Objection to Marcum's Claim (D.I. 4302) (the "<u>Objection</u>" or the "<u>Recovery Trust's Objection</u>").

30. However, the factual basis of the Objection is misplaced because the Debtors improperly assumes and avers that the services subject to Marcum's Claim were performed for the benefit of Point Blank's officers that were later convicted of crimes.

31. Pursuant to the Notice of Hearing filed on July 12, 2019 (D.I. 4302-7), the deadline

to file a response to the Objection was July 26, 2019, just a mere fourteen (14) days after the Objection was filed.

32. Marcum did not file a response to the Objection.

33. On July 29, 2019, the Recovery Trust filed a Certificate of No Objection, indicating that Marcum had not filed an "answer, objection or other responsible pleading" to the Objection (D.I. 4313).

34. On July 31, 2019, the Court issued an Order sustaining the Recovery Trust's Objection to Marcum's Claim (D.I. 4314).

35. Upon information and belief, the Recovery Trust did not serve Marcum at the correct address; hence, Marcum did not receive the Objection timely. *See generally* Exhibit "2" attached hereto, Affidavit of John Heller, Marcum's Director ("Heller Aff."); Exhibit "3" attached hereto, Affidavit of Juan Roche, Marcum's mail ("Roche Aff."); and Exhibit "4" attached hereto, Affidavit of Diana Jimenez, Marcum's Office Manager ("Jimenez Aff.").

**E. MARCUM WAS NOT TIMELY SERVED WITH, NOR DID IT TIMELY RECEIVE, THE RECOVERY TRUST'S OBJECTION**

36. Marcum never received a copy of the Objection; hence, it had no notice of the July 26, 2019 objection deadline.

37. Marcum did not discover that the Recovery Trust had filed an Objection to Marcum's Claim until Marcum received a copy of the Court's July 31, 2019 Order, via first-class, regular mail on August 5, 2019. True and correct copies of affidavits of three (3) Marcum employees supports Marcum's averment that it did timely receive a copy of the Objection. *See* Ex. 2, Heller Aff.; Ex. "3," Roche Aff; and Ex. 4, Jimenez Aff.

38. Since Marcum was not timely served the Objection, in sufficient time to file a responsive pleading, it had no way of knowing that it had to take legal action to preserve its Claim. *See id.*

39. The Recovery Trust did not file with the Court a Certificate of Service identifying what entities, and at what addresses, the Objection was served.

### RELIEF REQUESTED

40. Rule 3008 of the Bankruptcy Rules permits Marcum, as a party-in-interest, to file a motion for reconsideration of a disallowed claim.

41. Rule 9006 of the Bankruptcy Rules grants the Court authority to extend deadlines when there is excusable neglect, even if the motion to extend the deadline is filed after the expiration of the applicable time period.[1]  Fed. R. Bankr. P. 9006(b).

42. The Supreme Court of the United States has held that "with regard to determining whether a party's neglect of a deadline is excusable . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993).   Relevant circumstances include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the

---

[1] Federal Rule of Bankruptcy Procedure 9006(b)(1) states:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

person whose duty it was to perform; and (4) whether the movant acted in good faith. *Id; see also, Ethan Michael Inc. v. Union Tp.*, 392 Fed.Appx. 906, 909-10 (3d Cir. 2010) (recognizing that an analysis of excusable delay under *Pioneer* is an "equity test" that "take[s] into account the totality of the circumstances" of a case).

43. Here, Marcum's delay in not timely filing a responsive pleading to the Objection is excusable and reasonable after consideration of all of the surrounding circumstances causing the delay.

44. Therefore, in the interests of equity and in light of the circumstances, Marcum's time to file a responsive pleading to the Recovery Trust's Objection to Marcum's Claim should be extended fourteen (14) days from the date the Court enters an order granting reconsideration.

## LEGAL ARGUMENT

### A. THE RECOVERY TRUST WILL NOT BE PREJUDICED BY EXTENDING THE TIME FOR MARCUM TO FILE A RESPONSE TO THE OBJECTION.

45. First, the Recovery Trust will not be prejudiced if Marcum is granted additional time to file a response to the Objection to its Claim. Just a few days have past since the Court entered its Order sustaining the Objection; hence, the Recovery Trust/Debtors, nor any other entity or party, will be prejudiced if Marcum's best interests are considered and an extension of time is granted.

46. Second, the Recovery Trust's filing of the Objection and scheduling of a hearing, just fourteen (14) days later, contravened the Federal Rules of Bankruptcy Procedure. Hence, the Recovery Trust's improper filing procedures should not be allowed to prejudice Marcum.

47. Bankruptcy Rule 3007 provides, *inter alia*, that an objection to a claim and notice of objection "shall be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing."

48. The Recovery Trust filed the Objection on July 12, 2019, and the deadline for Marcum's response was the minimum days permitted under the Local Rules — fourteen (14) days.

49. Even if the Recovery Trust had a justification for scheduling a hearing so quickly after filing the Objection, the circumstances still mitigate in favor of finding that the Recovery Trust is not prejudiced in any way by the delay.

50. Just a few days have passed since the Court entered its Order sustaining the Objection. Hence, neither the Recovery Trust/Debtors, nor any other entity or party, will be prejudiced if Marcum's best interests are considered and an extension of time is granted.

51. In contrast, Marcum would be severely and irreparably prejudiced if its Motion for Reconsideration is not granted because its ability to recover on its $232,609.99 claim would be forever lost.

52. Therefore, Marcum's answer to the Objection should properly be considered by the Court before any prejudicial, final decision is rendered as to Marcum's ability to assert a bankruptcy claim.

### B. THE DELAY WILL NOT IMPACT THE EFFICIENT ADMINISTRATION OF THIS CASE.

53. Second, with respect to the length of delay, courts consider whether, under the circumstances, the delay "may disrupt the judicial administration of the case." *See, id*. (quoting *In re Infiltrator Sys., Inc.,* 241 B.R. 278, 281 (Bankr.D.Conn.1999)).

53. Upon information and belief, to date, no significant action on the part of the Court or any party has occurred in this matter in relation to the Court's July 31, 2019 Order expunging Marcum's Claim. As such, the Court can easily afford Marcum fourteen (14) days to prepare and file a response to the Objection, without negatively impacting the judicial administration of this case.

### C. THE DELAY WAS BEYOND MARCUM'S REASONABLE CONTROL.

54. Marcum never received the Objection and had no way of knowing that it was filed, let alone that Marcum was required to take legal action to preserve its legal rights to a bankruptcy claim.

55. Upon information and belief, the Recovery Trust served Marcum with the Objection at the wrong address.

56. However, the Recovery Trust served Marcum with the Order at the correct address.

57. Since the Recovery Trust properly served Marcum with the Order, the Recovery Trust should have been able to properly serve Marcum with the Objection. Therefore, while the delay was beyond Marcum's control, the Recovery Trust's failure and/or refusal to properly serve Marcum has directly caused the delay.

58. Since learning that the Objection and July 31, 2019 Order were filed, on August 5, 2019, Marcum has proceeded diligently to address the issue and preserve its rights.

### D. MARCUM HAS ACTED IN GOOD FAITH.

59. Through this Motion, Marcum seeks an extension of time to file a responsive pleading to the Recovery Trust's Objection to Marcum's Claim in order to preserve its legal right to recover monies for Marcum's significant services rendered to the Debtors.

60. Marcum has acted in good faith throughout the duration of this matter, acting diligently and expeditiously to file a bankruptcy claim and address this issue so that the inequity caused to Marcum is remedied.

61. Marcum has a good faith basis to challenge the Objection on its merits because, contrary to the Recovery Trust's assertions, Marcum rendered services to the Debtors and/or in relation to auditing services provided to the Debtors.

62. Marcum did not render services on behalf of certain officers of the Debtors who were later convicted of crimes.

63. Critically, the Debtors and Marcum entered into an Engagement Letter whereby the Debtors agreed to compensate Marcum for fees and costs incurred in connection with its auditing services and any government investigation of Point Blank's officers.

64. Hence, the Debtors is contractually and equitably responsible for paying Marcum for its services because the Debtors entered into a contractual document agreeing to compensate Marcum for the very services and costs that are the subject of Marcum's Claim.

65. In light of the four statements made under oath by Marcum's employees and the fact that Marcum never received proper and timely notice of the Objection, the Court should permit Marcum to develop its arguments refuting the Objection in the form of formal response to the Objection, so that the Court can consider and weigh all of the relevant facts pertinent to Marcum's Claim before depriving Marcum's of its legal right to assert a claim and recover monies it is legitimately owed by the Debtors.

[INTENTIONALLY BLANK]

**WHEREFORE**, Marcum Rachlin, a Division of Marcum LLP, respectfully requests that the Honorable Court grant the instant Motion for Reconsideration, vacate the Court's July 31, 2019 Order sustaining the Recovery Trust's Objection, and extend Marcum's deadline to file a responsive pleading to fourteen (14) days after this Motion is granted.

**BIELLI & KLAUDER, LLC**

Date: August 14, 2019

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
dklauder@bk-legal.com

and

Kathleen J. Seligman
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Phone: (215) 642-8271
Fax: (215) 754-4177
kseligman@bk-legal.com

*Counsel to Marcum Rachlin, a Division of Marcum LLP*