# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SS BODY ARMOR I, INC., *et al.*, | : | Case No. 10-11255(CSS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Related Docket No. 4285** |
| | : | |

## OPINION[1]

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones
Alan J. Kornfeld
James E. O'Neill
Elissa A. Wagner
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705

Counsel for SS Body Armor I, Inc.

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner
Scott J. Leonhardt
Jason A. Gibson
824 Market N. Street, Suite 810
Wilmington, DE 19801
    -and-
**ARENT FOX LLP**
Robert M. Hirsh
Beth M. Brownstein
1301 Avenue of the Americas, Floor 42
New York, NY 10019

Counsel for the Recovery Trust

**POTTER ANDERSON
& CORROON LLP**
Jeremy W. Ryan
R. Stephen McNeill
1313 North Market Street
P. O. Box 951
Wilmington, DE 19801

Counsel to the Equity Group

**CROSS & SIMON**
Christopher S. Simon
Kevin S. Mann
913 North Market Street
11th Floor
Wilmington, DE 19899-1380
    -and-
**LOWENSTEIN SANDLER LLP**
Michael S. Etkin
65 Livingston Avenue
Roseland, NJ 07068

Bankruptcy Counsel to Lead Plaintiff

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law.

Dated: April 15, 2020

Sontchi, C. J. _[signature]_

## INTRODUCTION

Before the Court is the *Motion to Enforce the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors Regarding Allocation of Remission Proceeds Among the Debtors and Class Plaintiffs*[2] (the "Motion to Enforce") filed by Jon Jacks and other asserted equity interest holders (the "Equity Group").[3] By the Motion to Enforce, the Equity Group seeks an order compelling the Debtor (i) to petition the U.S. District Court for the Eastern District of New York ("EDNY District Court") to alter the Department of Justice's ("DOJ") allocation of its remission payment to the class action victims ("Class Plaintiffs") of David Brooks' securities fraud, and (ii) to calculate the division of shared recoveries among the Debtor and Class Plaintiffs under the settlement agreement between the Debtor and Class Plaintiffs ("Bankruptcy Settlement").

---

[2] The Motion to Enforce is opposed by (i) the above captioned debtor, SS Body Armor I, Inc., the post-confirmation debtor in this chapter 11 case (D.I. 4293), (ii) the Recovery Trust established under the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and Official Committee of Unsecured Creditors (D.I. 4294), and (iii) the Lead Plaintiffs, NECA-IBEW Pension Fund and George Baciu, (collectively, the "Lead Plaintiffs") in the securities class action litigation entitled *In re DHB Industries, Inc. Class Action Litigation*, No. 05-cv-4296 (JS)(ETB) (the "Class Action"), filed in the United States District Court for the Eastern District of New York on behalf of a certified class of all persons or entities who purchased or otherwise acquired certain of the publicly traded shares of DHB Industries, Inc., predecessor in interest of debtor, SS Body Armor I, Inc. f/k/a Point Blank Solutions, Inc., on or after November 18, 2003, until and including November 20, 2006, and who were damaged thereby (collectively, with Lead Plaintiffs, the "Class Plaintiffs") (D.I. 4297).

[3] The other asserted equity interest holders include: Chong Sin, and Daniel Khaykis (all former members of the Equity Committee), John Malone, Rodney McFadden, Jeff Dardarian, and Mohawk Capital, LLC.

2

For the reasons set forth below, the Court will deny the request relating to DOJ's allocation of its remission award for lack of jurisdiction. However, the Court will require the parties to seek approval by the EDNY District Court of the amounts to be distributed under the Bankruptcy Settlement.

## JURISDICTION

This Court has jurisdiction over the Motion to Enforce pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core proceeding" under 28 U.S.C. § 157(b). Furthermore, the Equity Group has consented, pursuant to Local Bankruptcy Rule 9013(f), to entry of a final order by the Court in connection with the Motion to Enforce. Venue is proper in the Court, pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

On and after September 9, 2005, multiple securities class actions were filed against the Debtors' former officers and directors and certain of their related companies.[4] Those class actions were consolidated into the Class Action (defined in n. 2, *supra*). Shortly thereafter, on September 14, 2005, and afterwards, multiple derivative actions were filed against the same defendants. Those actions were consolidated into the "Derivative Action."[5] Both the Class Action and the Derivative Action were before the United States District Court for the Eastern District.

---

[4] *See* "Settlement Agreement" at 1. D.I. 3072. Also attached to the Motion to Enforce at Exh. 2, and as amended Exh. 1.

[5] *In re DHB Industries Inc.*, Case No. 05-cv-04345 (EDNY).

3

On November 30, 2006, the parties to the Class Action and the Derivative Action entered into a Stipulation and Agreement of Settlement (the "EDNY Stipulation") to resolve the plaintiffs' claims in those matters. Pursuant to the EDNY Stipulation, the Class Action was settled for $34.9 million in cash plus 3,184,713 shares of SSBA I common stock. The Derivative Action was settled for an additional $300,000 and the adoption of certain corporate governance policies. The $35.2 million in cash proceeds from the EDNY Stipulation was placed into an escrow account. As of 2011, the escrow account had an approximate value of $37 million (the "Escrowed Funds"). Ultimately, the EDNY Stipulation was rejected by the Debtors in these bankruptcy cases.

Following the Debtors' rejection of the EDNY Stipulation, the Debtors and the Class Plaintiffs, among others, subsequently agreed to a new settlement that adopted many of the terms of the EDNY Stipulation. This new settlement was reflected in the Settlement Agreement executed on February 6, 2015 (the "Original Settlement").[6] In the Original Settlement, the Debtors agreed to the release of the Escrowed Funds to the Class Plaintiffs for distribution in accordance with the provisions of the EDNY Stipulation and the EDNY District Court's July 21, 2008 "Plan of Allocation."[7] In return, the Class Plaintiffs agreed to provide the Debtors with a $20 million loan from the Escrowed Funds to fund the Plan.[8] The parties further agreed to use "reasonable best efforts consistent

---

[6] D.I. 2865.

[7] Original Settlement, at § 2(a).

[8] *Id*. at § 2(b).

4

with their respective fiduciary duties," to achieve a 50/50 split on "Shared Recovery Matters."[9]

The 50/50 split between the Debtors and Class Plaintiffs was not absolute. Section 3(f) of the Original Settlement provided in part:

> "To the extent necessary, the balance of the Plaintiffs' Share, other than the Escrowed Funds and the Plaintiffs' Stock Share [i.e., the portion already agreed to be paid pursuant to the EDNY Stipulation], will be distributed among the Plaintiffs and the Additional Investor Victims in accordance with a distribution and allocation procedure to be established by the District Court in the Criminal Action with the advice and consent of the Office of the United States Attorney for the Eastern District of New York."[10]

Moreover, the Original Settlement contemplated that, after application of this procedure, any portion of the Class Plaintiffs' Share in excess of their allocated amounts would revert to the Debtors' estates for distribution under the Plan.

At the time of the Original Settlement, the Debtor and the Class Plaintiffs anticipated receiving approximately $91.4 million in criminal restitution, as ordered by the EDNY District Court in connection with David Brooks' criminal conviction. Thereafter, the Original Settlement was modified by a June 10, 2015 addendum (as modified, the "Bankruptcy Settlement").[11] Under Bankruptcy Settlement, any restitution

---

[9] *Id.* at § 3(a).

[10] *Id.* at § 3(f).

[11] After the execution of the Original Settlement, on March 27, 2015, the EDNY District Court issued a restitution order in the criminal action. As a result of the restitution order, the parties amended the Original Settlement by entering into the Bankruptcy Settlement, which is incorporated into the Plan. The primary changes between the "Original Settlement" and the Bankruptcy Settlement were to note the entry of the restitution order and to amend section 3(f) to reflect the additional funds coming from it. Section 3(f), however, continued to provide for any portion of the Class Plaintiff's share in excess of the known amounts

5

awards ultimately received by the parties as well as any remission payments and any other recoveries realized from other Brooks-related litigation, were subject to the following sharing arrangement between the Debtor and Class Plaintiffs: the first $128.4 million of any net monetary recoveries would be divided 50-50 between the Debtors and the Class Plaintiffs; and any new monetary recoveries in excess of $128.4 million would be subject to a 63-37 division in favor of the Debtor.[12]

David Brook's death in October 2016, abated both his criminal conviction and the EDNY District Court's criminal restitution order.[13] As a result, "everything associated with the [criminal] case [was] extinguished, leaving the defendant as if he had never been indicted or convicted" and requiring that the EDNY District Court's criminal restitution order, which could only be based on a valid conviction, to be vacated.[14] As a result, the EDNY District Court's criminal restitution order and all loss calculations performed by the EDNY District Court with respect to the criminal restitution are null and void.

David Brooks' death did not, however, abate any of the other potential sources of recovery covered by the Bankruptcy Settlement. Most importantly, the DOJ's civil forfeiture proceeding ("Civil Forfeiture Proceeding") against approximately $168 million of Brooks-related assets did not abate upon Brooks' death. With all known Brooks-

---

to be distributed "in accordance with a distribution and allocation procedure to be established by the District Court." Bankruptcy Settlement at §3(f).

[12] *See* Amended Disclosure Statement with Respect to Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors, D.I. 3262 ("Amended Disclosure Statement) at pp. 24-27.

[13] *United States v. Brooks*, 872 F.3d 78, 82 (2d Cir. 2017).

[14] *Id.* at 87, 90.

related assets restrained in the Eastern District of New York in connection with the Civil Forfeiture Proceeding, and thus not available to satisfy any recoveries that might be obtained in other Brooks-related litigation, pursuing a successful resolution of the Civil Forfeiture Proceeding and related petitions for remission was the most – if not only – effective means by which the Debtor and Class Plaintiffs could satisfy their obligation to use their best efforts to maximize the "shared recoveries" to the Debtor and Class Plaintiffs.[15]  The Debtor and Class Plaintiffs fulfilled their obligations under the Bankruptcy Settlement by (among other things) negotiating with the DOJ and Brooks family to resolve the Brooks family's verified claims to at least approximately $85 million of the restrained assets, and by presenting, supporting and advocating for their respective petitions for remission while not denigrating each other's petitions for remission.

The DOJ's Money Laundering and Asset Recovery Section ("MLARS") – the division of the DOJ with exclusive authority over funds forfeited in civil or criminal proceedings and the adjudication of related petitions for remission – ultimately granted the Debtor's petition in an amount up to $78.8 million and granted the Class Plaintiffs' petition in an amount up to approximately $81.54 million, subject to a pro rata allocation of available forfeited funds.[16]  The Debtor received its pro rata remission payment on April 10, 2019, in the amount of $70,625,057.78.  The Class Plaintiffs received their pro rata remission payment on or about May 22, 2019 in the amount of $73,067,322.49.  The

---

[15] Bankruptcy Settlement at Section 3(g).

[16] Motion to Enforce at Exhibit C ("Global Settlement Agreement") (hereinafter referred to as the "DOJ Settlement").

Debtor's remission payment under the DOJ Settlement was almost $20 million more than the amount awarded by the EDNY District Court as restitution to the Debtor ($53.9 million), and the combined remission payments to the Debtor and Class Plaintiffs under the DOJ Settlement exceeded the total criminal restitution award by more than $52 million. The DOJ Settlement also provided for additional payments, including the remission award to Ms. Terry Brooks, which is discussed more fully below.[17]

The Equity Group seeks to challenge the distribution of the remission payments under the DOJ Settlement, arguing that the Class Plaintiffs should forfeit at least $37.1 million of their share because the allocation of the Class Plaintiffs' remission payment among individual class members was performed by the DOJ (through MLARS), and not by the EDNY District Court. The Equity Group seeks an order compelling the Debtor to petition the EDNY District Court to reallocate the DOJ's remission payment to the Class Plaintiffs; in response, the Debtor objects arguing that the EDNY District Court lacks jurisdiction to grant such relief. The Court held oral argument on the Motion on July 15, 2019,[18] and at the conclusion of the hearing took the matter under advisement. This is the Court's decision thereon.

---

[17] DOJ Settlement at 2(d)(vi).

[18] *See* Transcript of Oral Argument, July 15, 2019 (D.I. 4312).

## ANALYSIS

By the Motion, the Equity Group requests that the Court enter an order compelling the Debtor to petition the EDNY District Court to review and to reallocate the DOJ's remission payments to the Class Plaintiffs.

### A. Review and Amendment of the Payments from the DOJ is Outside of the EDNY's District Court's Jurisdiction

The remission payments to the Debtor and the Class Plaintiffs under the DOJ Settlement were funded with Brooks-related assets forfeited pursuant to 18 U.S.C. § 981(a) in connection with the Civil Forfeiture Proceeding. The Attorney General, here acting through MLARS, has the sole discretion and authority over the determination of the petitions for remission. However, nothing prevents the Bankruptcy Settlement from aggregating all sums "realized by any the Parties" and distributing them.[19]

The Court finds the SDNY District Court's opinion in *United States v Afriyie* persuasive.[20] The facts in *Afiryie* are somewhat involved but, for our purposes can be truncated. The defendant was convicted of securities and wire fraud based on an insider trading scheme that he carried out during his tenure as an analyst at MSD. After trial, the court ordered the forfeiture of Afriyie's interest in the two specific properties to the United States. Subsequently, MSD was awarded restitution for the necessary legal fees and expenses it had incurred in assisting in the investigation and prosecution of Afriyie's insider trading,

---

[19] Bankruptcy Settlement, §3(a).

[20] *United States v. Afriyie*, 16-CR-377 (PAE), 2017 WL 6375781 (S.D.N.Y. Dec. 11, 2017).

Thereafter, MSD filed a motion asking the Court to vacate the existing order of forfeiture to the United States and instead order that the specific property which the Court had ordered forfeited be directed, in the first instance, towards payment of Afriyie's restitution obligation to MSD. The United States Attorney's Office, after consulting with MLARS and DOJ, opposed the motion because the Government had determined that the types of costs covered in the restitution order—MSD's attorney's fees and costs associated with assisting the Government's investigation and prosecution of Afriyie—were not compensable under the applicable regulations.

The District Court refused to second guess the Government and denied the motion out of hand, finding that "judicial review would not be appropriate, as the DOJ's choice between 'restoration and retention' of forfeited funds is a 'matter of discretion.'"[21]

The holding in *Afriyie* is widely supported. In *United States v. Pescatore*, the Second Circuit held that the Attorney General is given the discretion to make decisions about forfeiture.[22] Furthermore, restitution and forfeiture are parallel and separate processes.[23] Put plainly:

> With respect to assets already forfeited, a court's authority must co-exist with the Attorney General's explicit authority to 'restore forfeited property to victims.' The Second Circuit has held that the authority is discretionary, and that DOJ's

---

[21] Id. at *4.

[22] *United States v. Pescatore*, 637 F.3d 128, 137-38 (2d Cir. 2011) (noting that the Attorney General has the discretion to choose between restoration and retention and holding that "the DOJ Manual dealing with forfeitures and with compensation for crime victims indicates that discretion may be exercised to transfer forfeited assets to victims ' where . . . other property is not available to satisfy the order of restitution.'" (citation omitted)).

[23] *United States v. Rubin*, 558 F.Supp.2d 411, 426-27 (E.D.N.Y. 2008).

policy of declining to transfer forfeited assets to victims when the defendant has the means to independently satisfy his restitution obligation is not an abuse of discretion.[24]

The Third Circuit issued the same holding in *United States v. Kravitz*:

> where Congress did provide for the remission or mitigation of the forfeiture order, it vested that decision-making authority with the Attorney General, not the federal courts. Section 1963(c) explicitly incorporates "[a]ll provisions of law relating to the ... remission or mitigation of forfeitures for violation of the customs laws ..."; it also imposes upon the Attorney General "[s]uch duties as are imposed upon the collector of customs . . . with respect to the disposition of property . . . ." Under the customs laws, it is the Attorney General who has the authority to grant remission or mitigation. *See, e.g., United States v. One 1970 Buick Riviera, Ser. 494870H910774*, 463 F.2d 1168, 1170 (5th Cir.), *cert. denied*, 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 244 (1972). Moreover, courts have uniformly held that the remission decision of the Attorney General is not open to judicial review. *Id.* at 1170. Therefore, since 1963(c) vests the Attorney General with the powers given him under the customs laws, we conclude that any petition for remission or mitigation must be brought before the Attorney General, and that the federal courts have no authority to modify or review that decision. *Cf. United States v. Huber*, 603 F.2d 387, 397 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (the Attorney General's power to seize the property upon the terms and conditions set by the court provides for limited judicial modification of the forfeiture order).[25]

As a result, this Court and the EDNY District Court are without authority to review what Congress put squarely in the discretion of the DOJ, and here, MLARS.[26]

---

[24] *United States v. Cohan*, 988 F.Supp.2d 323, 329 (E.D.N.Y. 2013) (quoting 21 U.S.C. § 853(i)(1))).

[25] *United States v. Kravitz*, 738 F.2d 102, 105 (3d Cir. 1984) (footnotes omitted).

[26] In making its decision on remission, MLARS evaluated the losses claimed by the individual class members, granted its remission award to the Class Plaintiffs in the total amount of approved losses, and allocated the Class Plaintiffs' remission award among individual class members based on the amount of the losses established for each class member. The Class Plaintiffs asserted claims in excess of $186 million in connection with the class action, the criminal action, and this chapter 11 case; and established losses of

11

### B. After Receipt of the Remission Payments, the Settlement Agreement Must be Applied.

Again, the courts lack jurisdiction over the DOJ Settlement. However, outside of the DOJ Settlement, the parties agreed to divide the assets, pursuant to the Bankruptcy Settlement, and nothing in the DOJ Settlement prevents review of the parties' agreement. In other words, the DOJ Settlement brings various sums to the parties and the Bankruptcy Settlement defines how to combine the amounts from the DOJ Settlement, as well as other amounts such as the Escrow Funds, and divides them between and among the parties.

The Bankruptcy Settlement, as approved by this Court states that "Shared Recovery Matters" include "any and all Recoveries/Proceeds *realized by any of the Parties* such that the ultimate value of fifty percent (50%) of the Recoveries/Proceeds is realized by the Debtors' bankruptcy estates (the "Debtors' Share") and fifty percent (50%) of the Recoveries/Proceeds is realized by the Plaintiffs (the "Plaintiffs' Share") for the benefit of the investor victims identified in the Class Action and the Criminal Action . . . ."[27] The Bankruptcy Settlement goes on to define "Recoveries/Proceeds" to be "the recoveries or proceeds *realized by any of the Parties* arising out of the Shared Recovery Matters, the Escrow Funds and the Plaintiffs' Stock Share."[28]

Thus, while the Court takes no issue with the amounts and distributions in the DOJ Settlement, it finds that as amounts are *realized* by any party to the Bankruptcy

---

$81.54 million. The Class Plaintiffs' share of net recoveries subject to the sharing arrangement under the Bankruptcy Settlement, however, is only $80.1 million. Therefore, the Class Plaintiffs will not receive a 100% recovery on their claims, and the Debtor has no reversionary interest in the Class Plaintiffs' remission award.

[27] Bankruptcy Settlement, § 3(a) (emphasis added).

[28] Bankruptcy Settlement, § 3(c) (emphasis added).

Settlement that such amounts must then go into the Bankruptcy Settlement's distribution of "realized" funds. Such amounts realized from the remission payments from the DOJ Settlement, must be put into the Bankruptcy Settlement "pot" and distributed under the agreement approved by this Court (and in the Plan voted upon by creditors).

The Bankruptcy Settlement approves a system to aggregate all the funds realized by the Debtor and the Class Plaintiffs, put them into a "pot" and then divide them in accordance with the Bankruptcy Settlement, as amended. The aggregation and division of the funds, pursuant to the explicit agreement of the parties, is to be overseen by the EDNY District Court.[29]

As a result, the Court will direct the Debtor to return to the EDNY District Court and to seek approval of distribution of "Recoveries/Proceeds realized by any of the Parties" in accordance with the Settlement Agreement. The EDNY District Court has jurisdiction to oversee the combination of funds "realized by any of the Parties" to distribute in accordance with the Bankruptcy Settlement.

### C. The Court will not require proposed recalculations of the Settlement Payment to Ms. Brooks.

Pursuant to the DOJ Settlement, the Debtor was required to pay approximately $9.5 million to Ms. Terry Brooks (David Brooks's former wife) upon receipt by the Debtor and the Class Plaintiffs of their respective remission payment from MLARS.[30] The

---

[29] *See* Bankruptcy Settlement at §3(f).

[30] Section 2(d)(vi) of the DOJ Settlement states:

> (vi) $9,545,531 shall be remitted by wire to Terry S. Brooks, on behalf of the Brooks Family, from SSBA 1, which amount shall be **payable solely** from the Payment that SSBA I received under Section 2(b)(ii) of this

payment to Ms. Brooks was "payable solely" from the funds received from MLARS.[31] As a result, the Bankruptcy Settlement requires that the payment to Ms. Brooks be taken into account to determine the net settlement proceeds to be divided between the Debtor and Class Plaintiffs, and the respective amounts of the Debtor's share and Class Plaintiffs' share.

First, and as detailed above, the MLARS distribution of remission payments is outside the Court's review; and the DOJ Settlement specifically enumerates the approximately $9.5 million remission award to Ms. Brooks (as well as amounts to the Debtor and the Class Plaintiffs). This award to Ms. Brooks must come from the remission payments from MLARS; these funds are not distributed pursuant to the Bankruptcy Settlement, but from the remission funds awarded by MLARS.

Second, such funds should be paid to Ms. Brooks prior to such MLARS awards being "realized by the Parties" and divided pursuant to the Bankruptcy Settlement. Pursuant to the Court's understanding, to date, and taking into account both the Bankruptcy Settlement and the DOJ Settlement, the Debtor and the Class Plaintiffs have received net proceeds of $171,234,064.21 as reflected in the following table:

---

Agreement, and shall be paid from the principal of such funds in satisfaction of the claim filed by Terry S. Brooks against SSBA I. Upon receipt by SSBA I and the Lead Plaintiffs of the Payments contemplated under Section 2(b)(ii) of this Agreement in immediately available funds, SSBA I shall initiate the payments or distributions to Terry S. Brooks pursuant to this Section 2(d)(vi) of this Agreement.

Motion to Enforce, Exhibit C (DOJ Settlement at § 2(b)(vi) (emphasis added)). Section 2(b)(ii) of the DOJ Settlement refers to the "Forfeited Assets" distributed pursuant to MLARS. *Id.* at §2(b)(ii).

[31] *Id.*

| Debtor's Remission Payment | $70,625,057.78 |
|---|---|
| Class Plaintiffs' Remission Payment | $73,067,322.49 |
| Escrow Funds | $37,087,214.94 |
| Payment to Ms. Brooks: | ($9,545,531.00) |
| **Net Recoveries/Proceeds:** | **$171,234,064.21** |

The payment to Ms. Brooks must be counted at the outset because the Court has no power to review the amount set by MLARS. The remaining approximately $171 million will be distributed pursuant to the Bankruptcy Settlement (re: 50-50 division of all Recoveries/Proceeds realized by the Debtor and Class Plaintiffs up to $128.4 million, and 63-37 division of all Recoveries/Proceeds in excess of $128.4 million) subject to supervision by the EDNY District Court.[32] The Amounts can be divided up as follows:

| | | Debtor's Share | Class Plaintiffs' Share |
|---|---|---|---|
| Amount Subject to 50-50 Division | $128,400,000.00 | $64,200,000.00 | $64,200,000.00 |
| Amount Subject to 63-37 Division | $42,834,064.21 | $26,985,460.45 | $15,848,603.75 |
| **Total** | **$171,234,064.21** | **$91,185,460.45** | **$80,048,603.76** |

The Equity Group asserts that the Debtor is not using the correct amount for the Escrowed Funds. However, this amount would be subject to discovery and ultimately, the amount in Escrowed Funds should be a relatively simple matter to determine. Thus, if the amount of Escrowed Funds is not the approximately $37 million, as calculated above, then all of such numbers will have to be adjusted to the proper amount of Escrowed Funds.

---

[32] *See* Bankruptcy Settlement at §3(a).

The Equity Group asserts that the amount for Ms. Brooks must be divided *after* the remission payments are "trued-up." However, the DOJ Settlement states that amounts to Ms. Brooks are to come from the MLARS remission amounts. The amount to Ms. Brooks does not need to be delayed while the parties seek approval of distributions under the Bankruptcy Settlement in the EDNY District Court; nor should the other sources of money be calculated before Ms. Brooks receives payment. The payment to Ms. Brooks should come directly from the MLARS distribution; the remaining MLARS funds should be divided pursuant between and among the parties, along with the other sources of money, pursuant to the Bankruptcy Settlement and approval should be sought before the EDNY District Court.

Lastly, section 3(b) of the Bankruptcy Settlement[33] provides that the Debtor and the Class Plaintiffs will apply various mechanisms in a particular order to achieve the appropriate division between the Debtor's share and the Class Plaintiff's share. As a result, and as the parties chose these calculations in the Bankruptcy Settlement and the Bankruptcy Settlement provides for calculations to be approved by the EDNY District

---

[33] The Bankruptcy Settlement states:

> (b) Subject to section 3(a) above, the Parties will employ the following mechanisms, in the following order, as necessary to equalize the Debtors' Share and the Plaintiff's Share:
>
> (i) The 50/50 Division of the Recoveries/Proceeds between the Debtors bankruptcy estates and the Plaintiffs will take into account the distribution of the Escrowed Funds, the Plaintiff's Stock Share, and Restrained Assets and the Bail Funds; and
>
> (ii) The Plaintiffs will forgive the Plaintiffs' Loan to the extent necessary to equalize the Debtors' Share and the Plaintiffs' Share.

Bankruptcy Settlement at § 3(b); including fn. 2 which refers to a hypothetical recovery scenario for illustrative purposes only. Bankruptcy Settlement at Exh. 1.

Court, this Court will not attempt to configure all of the numbers without evidentiary support. However, as MLARS provided for the payment to Ms. Brooks from the MLARS remission payment, such payment should be made at the outset at the amount provided for my MLARS in the DOJ Settlement.

### D. The Mandatory Injunction Requested by the Equity Group in the Motion is Denied without Prejudice.

The Equity Group seeks an order compelling the Debtor (i) to file a petition in the EDNY District Court to reallocate the DOJ's remission payments and (ii) to recalculate the Debtor's share of the settlement proceeds and the Class Plaintiffs' share of the settlement proceeds based on the Settlement Agreement. The Debtor argues that the Equity Group is seeking an injunction and such relief requires commencement of an adversary proceeding.

However, the Court is being asked to enforce a Settlement Agreement, which it approved; and not enter an injunction. To the extent that the Equity Group is seeking an injunction, it is improper absent an adversary proceeding and the Court will deny such relief, without prejudice.

## CONCLUSION

Although the Court is without power to review and revise the DOJ Settlement and the amounts set forth therein; the Court finds that once such amounts are received, that the amounts go into a collective pot and are distributed in accordance with the Settlement Agreement. Furthermore, the amount payable to Ms. Brooks should be paid at the outset, pursuant to the DOJ Settlement, before the sum to be distributed to either the Debtor or

the Class Plaintiffs is calculated. The Debtor and the Class Plaintiffs, pursuant to the Bankruptcy, should seek approval of the amounts to be calculated, including the amount in the escrow, from the EDNY District Court, as contemplated by the Bankruptcy Settlement. Lastly, the Court is interpreting its own order, which approved the Bankruptcy Settlement, and finds that an injunction, to the extent requested, is not necessary; however, such relief, if requested, is improper absent an adversary proceeding and will be denied without prejudice.

As the Motion to Enforce will be GRANTED, in part, and DENIED, in part. An order will be issued.