# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case No. 10-11255 (CSS) |
| SS BODY ARMOR I, INC., *et al.*, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## **MEMORANDUM ORDER**[1]

Before the court is the *Equity Group's Motion to Enforce the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors Regarding Class 3 and Class 4 Satisfaction* (D.I. 4377; filed on April 23, 2020) (the "Motion"), the *Joint Objection of Recovery Trust and Post-Confirmation Debtor to Motion to Enforce the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors Regarding Class 3 and Class 4 Satisfaction [Doc. 4377]* (D.I. 4380; filed on May 7, 2020) (the "Joint Objection" filed by the "Joint Objectors"), and the *Equity Group's Reply in Support of Motion to Enforce the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors Regarding Class 3 and Class 4 Satisfaction* (D.I. 3499; filed on May 28, 2020) (the "Reply"). This matter is properly before the Court: the Court has jurisdiction, pursuant to 28 U.S.C. §§ 157 and 1334; venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409; this is a "core" proceeding, pursuant to § 157(b)(2); and the Court has the

---

[1] Unless otherwise noted, capitalized terms herein shall have the meaning ascribed to them in the Plan.

judicial power to enter a final order. The Court, having heard arguments and statements by the Equity Group and the Joint Objectors (together, the "Parties") concerning the above at a hearing on July 9, 2020,[2] finds and orders as follows:

## BACKGROUND[3]

1.  On April 14, 2010, SS Body Armor I, *et al.* (f/k/a Point Blank Solutions, Inc., *et al.*) (the "Debtors") filed voluntary chapter 11 petitions under the Bankruptcy Code.

### A. Procedural History

2.  On April 26, 2010, the United States Trustee appointed an official committee of unsecured creditors (the "UCC"), and on July 27, 2010, the Trustee appointed an official committee of equity security holders (the "Equity Committee").

3.  On August 10, 2010, D. David Cohen ("Cohen"), a former attorney for, senior executive employee of, and shareholder in Point Blank Solutions, Inc., filed a claim on the Court's Claim Register against the Debtors in the amount of $1,886,850.00 ("Claim No. 402").

4.  On August 13, 2010, Carter Ledyard & Milburn LLP ("CLM"), personal counsel to Cohen, filed a claim on the Court's Claim Register against the Debtors for legal services provided to Cohen in the amount of $402,716.86 ("Claim No. 434").

5.  On January 13, 2012, Cohen filed another claim against the Debtors in the amount of $736,285.42 ("Claim No. 568") for certain attorneys' fees and expenses he incurred.

---

[2] *See* Transcript of Hearing held on July 9, 2020 (D.I. 4463).

[3] The Parties agreed to and jointly submitted to the Court a *Stipulation of Facts* (D.I. 4447; filed on July 7, 2020) upon which the Court relies.

6.  On June 10, 2015, the Debtors and the UCC proposed their *Second Amended Joint Chapter 11 Plan of Liquidation* (the "Plan").[4]

7.  On September 25, 2015, Cohen and CLM filed an *Application for Fees and Expenses, and Memorandum in Opposition to the Payment of Fees and Expenses to Derivative Counsel*, seeking an award of fees and expenses in the amount of $1,860,000.00 (the "Fee Claim").[5]

8.  On September 29, 2015, the Debtors filed Objections against each of Claim Nos. 402, 434, and 568,[6] and on October 19, 2015, the Debtors filed an Objection to the Fee Claim[7] to which the UCC joined.[8]

9.  On November 10, 2015, the Court entered the *Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and Official Committee of Unsecured Creditors* (the "Confirmation Order"),[9] and the Plan became effective on November 23, 2015.

10. On January 17, 2018, Cohen and CLM filed a *Motion to Establish Reserve to Pay Fee Award Pursuant to Order dated December 3, 2015*,[10] requesting the establishment of a reserve, and, on February 23, 2018, the Court entered an *Order Establishing Reserve*,[11]

---

[4] D.I. 3261.

[5] D.I. 3300.

[6] D.I. 3317, 3318, and 3320, respectively.

[7] D.I. 3367.

[8] D.I. 3370.

[9] D.I. 3526.

[10] D.I. 4019.

[11] D.I. 4049.

which required the Post-Confirmation Debtor to establish a reserve in the amount of $5 million to be held pending the determination of Cohen's and CLM's fee awards.

11.   On June 4, 2020, the Third Circuit issued an Opinion regarding the Fee Claim, which (1) reversed-in-part the Court's order granting Cohen fees on a contingent basis because "Cohen is entitled to attorneys' fees and expenses for his objection to the initial settlement of this case[]" and remanded such part to the Court for determination of the appropriate amount of the fee reward, (2) affirmed-in-part the Court's order regarding denial of Cohen's claims to attorneys' fees and expenses under the Code, (3) affirmed the Court's order awarding fees to counsel in one of the underlying lawsuits, and (4) affirmed the Court's 2015 approval of a settlement in this case.[12]

### B.  Factual History

12.   To date, each of Claim Nos. 402, 434, 568, and the Fee Claim (collectively, the "Outstanding Claims") remain unpaid and outstanding.  A reserve of $5 million is being maintained for potential payment of the Fee Claim and Claim No. 568, pursuant to the *Order Establishing Reserve*, and the Recovery Trust is reserving such cash as it estimates reasonably necessary to satisfy potentially required distributions on account of Claims Nos. 402 and 434 (together, the "Reserves").

13.   The Parties agree by their *Stipulation of Facts* that, to the best of their knowledge, payment in full has been rendered to the holders of all Class 3 Claims and Class 4 Claims under the confirmed Plan, except for the Outstanding Claims.

---

[12] *In re S.S. Body Armor I Inc*, 961 F.3d 216, 220 (3d Cir. 2020).

## ANALYSIS

14. At issue before the Court is whether Class 3 and Class 4 Satisfaction have occurred under the confirmed Plan.

15. Under the Plan, Class 3 consists of General Unsecured Claims against the Debtors.[13] Satisfaction of Class 3 is deemed to have occurred "[u]pon and in the event of the holders of Class 3 Trust Interests receiving payment from the Recovery Trust in an aggregate amount up to the Allowed amount of their Class 3 Claim plus such postpetition interest at the Federal Judgment Rate."[14]

16. Class 4 consists of Subordinated Unsecured Claims against the Debtors and the terms for Class 4 Satisfaction are substantially identical to that of Class 3 Satisfaction.[15]

17. In accordance with the Plan, after both Class 3 and Class 4 Satisfaction have occurred, (1) Class 6—Holders of Old Common Stock Interests—shall receive pro rata cash distributions, if any, from the Net Distributable Recovery Trust Proceeds (the "Class 6 Distributions"),[16] and (2) the two members of the Recovery Trust Committee appointed by the UCC shall resign and be replaced by the Equity Committee's designees (the "Change in Control").[17]

---

[13] Plan at § 4.3(a).

[14] *Id.* at § 4.3(b).

[15] *Id.* at § 4.4(b) ("Upon and in the event of the holders of Class 4 Trust Interest (if any) receiving payment from the Recovery Trust in an aggregate amount up to the Allowed amount of their Class 4 Claim plus such postpetition interest at the Federal Judgment Rate, the 'Class 4 Satisfaction' shall be deemed to have occurred.").

[16] *Id.* at § 4.6(b).

[17] *Id.* at § 6.4(b).

18. The Equity Group argues that both Class 3 and Class 4 Satisfaction have already occurred because (1) there are no Class 4 Claims and therefore Class 4 Satisfaction has occurred, (2) all Allowed Class 3 Claims have been paid by the Recovery Trust with interest, and (3) the occurrence of Class 3 Satisfaction does not concern itself with the repayment of Class 3 "Disputed Claims," such as the Outstanding Claims, which are independently governed by the Reserves.

19. The Joint Objectors argue that neither Class 3 nor Class 4 Satisfaction have occurred because (1) the Outstanding Claims are, although not currently Allowed Claims, "potential Allowed Claims" which remain unpaid and must be paid before Class 3 and Class 4 Satisfaction can been realized, (2) the Plan requires that holders of Class 3 Trust Interests must receive payment from the Recovery Trust for the occurrence of Class 3 Satisfaction, (3) the occurrence of Class 3 Satisfaction is not tied to the establishment of the Reserves, and (4) it is possible that the Fee Claim gives rise to a Class Claim 4, rather than a Class 3 Claim, and, therefore, Class 4 Satisfaction cannot be deemed to have occurred.

20. Because both Class 3 and Class 4 Satisfaction must occur in order for the Class 6 Distributions and the Change in Control to be effectuated, the non-occurrence of either Class 3 or Class 4 Satisfaction is sufficiently dispositive of the whole issue. As the Court explains below, Class 3 Satisfaction has not yet occurred. For that reason, the Court does

not engage in an analysis of Class 4 Satisfaction. The Court notes, however, that the Confirmation Order plainly provides that Class 4 consists of no members.[18]

**A. Class 3 Satisfaction has not occurred under the Plan.**

21. When a dispute arises concerning the language of a confirmed reorganization plan, the principles of contract interpretation serve as the Court's North Star in navigating the parties towards meaning.[19] Thus, the Court reads the confirmed Plan as a whole.[20]

22. As previewed, section 4.3(b) of the Plan provides in pertinent part:

> Upon and in the event of the holders of Class 3 Trust Interests receiving payment from the Recovery Trust in an aggregate amount up to the Allowed amount of their Class 3 Claims plus such postpetition interest at the Federal Judgment Rate, the "**Class 3 Satisfaction**" shall be deemed to have occurred.

---

[18] Confirmation Order at ¶ W.

[19] *See In re Trico Marine Services, Inc.*, 450 B.R. 474, 482 (Bankr. D. Del. 2011) ("When construing an agreed or negotiated form of order, such as the Sale Order in this case, the Court approaches the task as an exercise of contract interpretation rather than the routine enforcement of a prior court order.") (*citing City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) ("An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation."); *also citing Rifken v. CapitalSource Fin., LLC (In re Felt Mfg. Co., Inc.)*, 402 B.R. 502, 511 (Bankr. D.N.H. 2009) ("The Terms of court orders, plans of reorganizations, and stipulations between parties are typically examined under principles of contract interpretation.")). *See also O'Dell v. Carolina Internet, Ltd.*, No. 3:14-CV-190, 2015 WL 114255, at *7 (W.D.N.C. Jan. 8, 2015) ("When construing a plan of reorganization, courts apply contract principles.") (*citing In re Shenango Group Inc.*, 501 F.3d 338, 344 (3d Cir. 2007)); *In re 18th Ave. Realty, Inc.*, No. 03-14480(RDD), 2010 WL 1849403, at *5 (Bankr. S.D.N.Y. May 7, 2010) (same).

[20] *See In re CS Estate, Inc.*, No. 15-13766 (RDM), 2018 WL 297148, at *3 (Bankr. W.D. Wis. Jan. 4, 2018) ("The rule that a confirmed plan must be read as a whole has often been applied by courts."); *see also In re Kelley*, 488 B.R. 97 (B.A.P. 8th Cir.), *aff'd*, 536 F. App'x 675 (8th Cir. 2013) ("The court reads the Agreed Order and the Confirmed Plan as a whole, noting the thorough details and finding nothing ambiguous about the agreement of the parties.").

23. The Joint Objectors assert that reading the above with sections 7.3, and 7.6 vindicates its position,[21] and the Equity Group argues that reading section 4.3(b) with section 7.6 is dispositive of the issue in their favor.[22]

24. Section 7.3, "*Distributions on Account of Disputed Claims and Interests*," offers:

> Except as otherwise provided in a Final Order or as agreed by the relevant parties, Distributions on account of Disputed Claims and Interests that become Allowed after the Effective Date shall be made by the Recovery Trust . . . as such periodic intervals as the Recovery Trust . . . determine[s] to be reasonably prudent.

25. Section 7.6, "*Disputed Claims Reserve*," provides:

> On or after the effective Date, the Recovery Trust shall maintain in reserve such Cash as the Recovery Trust estimates to be reasonably necessary to satisfy the Distributions that could be required to be made by the Recovery Trustee under the Plan and the Recovery Trust Agreement (the "*Disputed Claims Reserve*").
>
> \*\*\*
>
> For the avoidance of doubt, Distributions to any Person holding a Disputed Claim or Interest that becomes an Allowed Claim or Interest (as applicable) (including, without limitation, Administrative Claims, Priority Tax Claims, and Other Priority Claims) after the Effective Date shall be made together with any payments or other distributions that would have been made to such Person had its Disputed Claim or Interest become an Allowed Claim or Interest on or prior to the Effective Date.

26. A scrupulous reading of section 4.3(b) along with the foregoing and the remainder of the Plan leads the Court to conclude (1) the occurrence of Class 3 Satisfaction is

---

[21] Joint Objection at ¶ 11.

[22] Reply at fn. 5.

triggered when the holders of Class 3 Claims in fact *receive* payment, and (2) such receipt must be obtained by *each holder* of a Class 3 Claim as they become Allowed, either now or later. The Court addresses each part of its conclusion in turn.

27. The Court reviews the Plan through the lens of Delaware law.[23] In Delaware, an undefined contract term is ascribed its common or ordinary meaning.[24] Unremarkably, "receiving a payment" is different from a "payment." On its own, a "payment" is "[a] sum of money (or equivalent) paid or payable."[25] Had the occurrence of Class 3 Satisfaction been contingent merely on the action of payment by the Recovery Trust to holders of Class 3 Claims, "receiving" would not have been included to precede "payment." Perhaps if section 4.3(b) provided that Class 3 Satisfaction occurs "upon and in the event *of payment* to the holders of Class 3 Trust Interests," the Equity Group's reading would be correct. But those are not the facts presently before the Court. Instead, the Plan expressly provides that Class 3 Satisfaction occurs upon and in the event of the holders of Class 3 Claims "receiving payment." To "receive" means "[t]o take into . . . one's possession (something offered or given by another)."[26] "Receiving payment" makes the verb "receive" transitive of the object "payment." Consequentially, the holders

---

[23] Plan at § 1.4.

[24] *See Sassano v. CIBC World Markets Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008).

[25] Oxford English Dictionary Online, https://www.oed.com/view/Entry/139189?rskey=mjzHPs&result=1&isAdvanced=false#eid (Last visited July 14, 2020).

[26] Oxford English Dictionary Online, https://www.oed.com/view/Entry/159411#eid26541765 (Last visited July 14, 2020) (definition III.9.a).

of Class 3 Claims must take into their respective possession payments made from the Recovery Trust. The Court now turns from the *what* to the *who*.

28. Class 3 Satisfaction under the Plan necessarily requires that holders of Allowed Class 3 Claims receive payment. That much is obvious. But what about Class 3 Claims that are currently Disputed, such as the Outstanding Claims, and thus not presently Allowed? Fortunately, sections 7.3 and 7.6 offers the Court an answer. Each section discusses what happens when a Disputed Claim "becomes" Allowed. Because Claims not presently Allowed can "become" Allowed, Disputed Class 3 Claims are effectively potential Allowed Class 3 Claims. Further, section 4.3(b) provides that Class 3 Satisfaction does not occur until the holders of Class 3 Claims receive payment from the Recovery Trust up to their Allowed amount. The Court understands this to include both presently Allowed and potential Allowed (currently "Disputed") Class 3 Claims, such as the Outstanding Claims.

29. Lastly, the establishment of the Reserves does not change the Court's analysis regarding Class 3 and Class 4 Satisfaction.

30. Because the Outstanding Claims remain currently unresolved and with the potential to become Allowed Class 3 Claims and the holders of the Outstanding Claims have not received payment from the Recovery Trust, the Court has no choice but to conclude that Class 3 Satisfaction has not occurred. As a result, neither the Class 6 Distributions nor the Change in Control may be effectuated.

31.

## CONCLUSION

For the reasons set forth above, the Motion is DENIED.

                                                     */s/ Christopher S. Sontchi*
                                                     _____
                                                      Christopher S. Sontchi
                                                      Chief United States Bankruptcy Judge

Dated: July 20, 2020