## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SS BODY ARMOR I, INC. *et al.*,[1] | Case No. 10-11255 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing date: Mar. 24, 2021, at 10:00 a.m. (ET)**<br>**Obj. Deadline: Mar. 10, 2021 at 4:00 p.m. (ET)** |

## MOTION OF RECOVERY TRUST FOR ORDERS (I) APPROVING SETTLEMENTS WITH CLASS PLAINTIFFS AND CARTER LEDYARD & MILBURN LLP; (II) AUTHORIZING DISSOLUTION PROTOCOL; (III) ENTERING FINAL DECREE; AND (IV) GRANTING RELATED RELIEF

---

[1] The pre-confirmation debtors in these cases, along with the last four digits of each debtor's federal tax identification numbers were: SS Body Armor I, Inc. (9361) (f/k/a Point Blank Solutions, Inc.); SS Body Armor II, Inc. (4044) (f/k/a Point Blank Body Armor, Inc.); SS Body Armor III, Inc. (9051) (f/k/a Protective Apparel Corporation of America); and PBSS, LLC (8203). All correspondence and pleadings for the Post-Confirmation Debtor must be sent to SS Body Armor I, Inc., et al., c/o Pachulski Stang Ziehl & Jones LLP, 919 North Market St., 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 5

RELEVANT BACKGROUND ........................................................................................... 5

    A.    General Background ................................................................................... 5

    B.    The Recovery Trust Will Pay 100% of Allowed Claims and Make
             Meaningful Distributions to Holders of Allowed Interests.................................. 6

    C.    Pending Matters For Consideration on March 24 ................................................ 10

             i.    CLM Fee Claim ............................................................................ 11

             ii.    Class Plaintiff Recovery Issues ................................................... 11

             iii.    Motion to Extend Trust ................................................................ 13

             iv.    Unclaimed Distributions Motion .............................................. 15

    D.    The Recovery Trust and Post-Confirmation Debtor Reached Separate
             Settlements with CLM and the Class Plaintiffs through Mediation ................... 16

RELIEF REQUESTED...................................................................................................... 17

BASIS FOR RELIEF ........................................................................................................ 18

    A.    The Proposed Settlements Are in the Best Interests of the Estate and
             Should be Approved ................................................................................... 18

    B.    The Dissolution Protocol Will Bring Finality to the Bankruptcy Case .............. 30

    C.    The Court Should Enter the Final Decree........................................................ 40

NOTICE............................................................................................................................ 43

CONCLUSION ................................................................................................................. 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Avaya Inc.*,
No. 19-cv-5987 (AJN), 2020 WL 5051580 (S.D.N.Y. Apr. 30, 2020) ..................................47

*In re Cable & Wireless USA, Inc.*, 338 B.R. 609,
No. 03-13711 (KJC) (Bankr. D. Del. 2006) ..........................................................................36

*In re DHB Industries, Inc. Class Action Litig.*,
No. 05-cv-04296-JS (E.D.N.Y.) ...........................................................................................17

*In re Equine Oxygen Therapy Resources, Inc.*,
2015 WL 1331540 (Bankr. E.D. Ky. 2015)...........................................................................29

*In re Federated Dep't Stores, Inc.*,
43 Fed. Appx. 820 (6th Cir. 2002).........................................................................................45

*S.E.C. v. Kaleta*,
No. CIV.A. H-09-3674, 2013 WL 2408017 (S.D. Tex. May 31, 2013).................................30

*S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*,
927 F.3d 763 (3d Cir. 2019)...................................................................................................26

*In re SS Body Armor I Inc*,
961 F.3d 216 (3rd Cir. 2020) .................................................................................................16

*In re Superior Homes & Investments, LLC*,
521 Fed. Appx. 895 (11th Cir. 2013).....................................................................................29

*In re Tri Valley Corp.*,
No. 12-12291-MFW (Bankr. D. Del. Oct. 15, 2015).............................................................29

*United States v. Brooks*,
872 F.3d 78 (2d Cir. 2017).....................................................................................................12

*United States v. Hartog, Trustee*,
597 B.R. 673 (S.D. Fla. 2019) ...............................................................................................29

*Walnut Assocs. v. Saidel*,
164 B.R. 487 (E.D. Pa. 1994) ................................................................................................45

*In re Washington Mutual Inc.*,
No. 08-12229 (MFW) (Bankr. D. Del. Dec. 20, 2019).........................................................36

**Rules & Statutes**

11 U.S.C. § 105 ..................................................................................1, 5, 24, 33

11 U.S.C. § 150(a) ......................................................................................5

11 U.S.C. § 347(b) .....................................................................................16

11 U.S.C. § 350 ........................................................................................1, 5

11 U.S.C. § 350(a) .....................................................................................40

11 U.S.C. § 350(b) .....................................................................................42

11 U.S.C. § 1101 .......................................................................................40

11 U.S.C. § 1101(2) ...................................................................................40

11 U.S.C. § 1127(b) ...................................................................................40

11 U.S.C. § 1142 ...................................................................................1, 5, 33

28 U.S.C. § 157 ..........................................................................................5

28 U.S.C. § 157(b) ......................................................................................5

28 U.S.C. § 1334 ........................................................................................5

28 U.S.C. § 1408 ........................................................................................5

28 U.S.C. § 1409 ........................................................................................5

Del. Bankr. L.R. 2002-1(f) .........................................................................34

Del. Bankr. L.R. 3022-1(c) .........................................................................42

Del. Bankr. L.R. 9013-1(f) ...........................................................................5

Fed. R. Bankr. P. 2002 ...............................................................................43

Fed. R. Bankr. P. 3022 ...........................................................................5, 40

Fed. R. Bankr. P. 9019 ...............................................................................24

Treas. Reg. § 1.671-4(a) .............................................................................44

United States Constitution Article III ...........................................................5

**Other Authorities**

Body armor maker Point Blank files for bankruptcy,
    https://www.reuters.com/article/pointblank-bankruptcy/update-1-body-armor-
    maker-point-blank-files-for-bankruptcy-idUSN1417317920100414........................................2

# EXHIBIT INDEX

| EXHIBIT | BRIEF DESCRIPTION | PAGE(S) |
|:---:|:---|:---:|
| **A** | **Declaration of Brian K. Ryniker** | *passim* |
| 1 | Recovery Trust Agreement | *passim* |
| 2 | Post-Confirmation Debtor By-Laws | 6, 19, 26, 28, 30, 34, 36, 37 |
| 3 | Amended Settlement Agreement and Addendum | 6, 7 |
| 4 | Global Settlement | 7, 8 |
| 5 | Stipulation and Order Approving Class Plaintiff Settlement, So Ordered by EDNY | *passim* |
| 6 | Class 3 Claims List | 32, 33 |
| 7 | Class 6 Trust Interests List | 32, 33 |
| **B** | **Proposed Class Plaintiff Settlement Order** | *passim* |
| 1 | Stipulation and Order Approving Class Plaintiff Settlement, So Ordered by EDNY | *passim* |
| **C** | **Proposed Case Conclusion Order** | 5, 18, 43 |
| **D** | **Settlement Agreement Resolving Carter Ledyard & Milburn LLP Fee Award Contested Matter** | *passim* |
| **E** | **Email chain with Jon E. Jacks** | 26, 36 |

Brian K. Ryniker (the "<u>Recovery Trustee</u>"), in his capacity as Recovery Trustee of the Recovery Trust of SS Body Armor I, Inc. (the "<u>Recovery Trust</u>") appointed pursuant to the *Second Amended Joint Chapter 11 Plan of Liquidation* [D.I. 3261] (the "<u>Plan</u>"), by and through undersigned counsel, hereby submits this Motion of the Recovery Trust (the "<u>Motion</u>"), pursuant to Sections 105, 350, and 1142 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") for entry of orders (i) approving the terms of settlements reached by and between: (a) the Recovery Trust, SS Body Armor I, Inc. (the "<u>Debtor</u>" or "<u>Post-Confirmation Debtor</u>"), and the class plaintiffs in a consolidated prepetition securities action filed in the United States District Court for the Eastern District of New York ("<u>EDNY</u>"), representing a certified class of all persons or entities who purchased or otherwise acquired certain of the publicly traded shares of the Debtor (the "<u>Class Plaintiffs</u>"), and (b) the Recovery Trust and Carter, Ledyard and Milburn LLP ("<u>CLM</u>"); (ii) authorizing a protocol for the orderly dissolution of the Post Confirmation Debtor and the Recovery Trust (the "<u>Dissolution Protocol</u>"); (iii) entering the final decree closing the above-captioned case (the "<u>Bankruptcy Case</u>"); and (iv) granting related relief.

In support of the Motion, the Recovery Trust relies on the Declaration of Brian K. Ryniker attached hereto as **<u>Exhibit A</u>** ("<u>Ryniker Declaration</u>"). The Recovery Trust makes this Motion with the support of the Post-Confirmation Debtor.

In further support of the Motion, the Recovery Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Recovery Trust and Post-Confirmation Debtor have resolved the remaining material disputes in the Bankruptcy Case through a challenging but successful mediation with CLM and the Class Plaintiffs before the Honorable Kevin Gross (Ret.), the former Chief Judge of

the United States Bankruptcy Court of the District of Delaware.[2] The Recovery Trust brings this Motion to obtain approval of the settlements with CLM and the Class Plaintiffs, bar further litigation related to the subject matter of those settlements, maximize final distributions for holders of equity interests, authorize a protocol for dissolving the Recovery Trust and Post-Confirmation Debtor, and obtain entry of the final decree closing the Bankruptcy Case.

2. The relief sought herein will facilitate and preserve an outcome for the estate's constituencies that was unimaginable when the Debtor entered chapter 11 more than ten years ago. The Debtor was embroiled in an investigation by the Securities & Exchange Commission ("SEC"), and its CEO, David Brooks, had been indicted for fraud and related crimes that resulted in a 17-year felony sentence and substantial legal bills for the Debtor. Investors experienced losses as stock prices fell to as low as ***5 cents per share***.[3] Trade vendors and other creditors were left unpaid as the Debtors entered chapter 11 initially electing a sale process that was unlikely to yield a distribution to creditors. At the time the Recovery Trust was formed, Mr. Brooks' appeals were pending, and the Recovery Trust's ability to make meaningful distributions to holders of allowed equity interests remained uncertain.

3. The Recovery Trust is now prepared to close the Bankruptcy Case with (a) holders of allowed general unsecured claims having been paid in full with interest, and (b) holders of allowed equity interests – who already received interim distributions of 15 cents per share – poised

---

[2] Judge Gross was the agreed-upon mediator of choice of all parties, including the Revised Equity Group, who also participated in the mediation represented at that time by Potter Anderson & Corroon LLP. The Revised Equity Group was led by Jon Jacks and included the equity interests owned or controlled by himself, his family members and associates. To facilitate the Revised Equity Group's participation, the Recovery Trustee agreed to pay $40,000 of the group's attorneys' fees incurred in connection with the mediation. Despite substantial cost and efforts to resolve Mr. Jacks' grievances – which, at bottom, amount to a dissatisfaction with distributions – it is anticipated that Mr. Jacks may object to this Motion. *See* ¶¶ 36-38, *infra*.

[3] *See generally* "Body armor maker Point Blank files for bankruptcy," at https://www.reuters.com/article/pointblank-bankruptcy/update-1-body-armor-maker-point-blank-files-for-bankruptcy-idUSN1417317920100414

to receive additional distributions as high as approximately 21 cents per share, for a total final distribution to equity holders as high as approximately ***36 cents per share***.

4.     As this Court is aware, achieving this extraordinary result has been challenging and required years of patient and painstaking effort.  The Recovery Trust seeks approval of the Recovery Trust's settlement of pending disputes with CLM and the Class Plaintiffs, which will pave the way for entry of the final decree closing the Bankruptcy Case and implementation of a Dissolution Protocol that will bring the affairs of the Recovery Trust and Post-Confirmation Debtor to an orderly completion.

5.     Approval of the proposed settlements, along with entry of a bar order designed to safeguard those settlements, will bring certainty, finality and closure to the Bankruptcy Case and protect the estate from the substantial costs of continued protracted and costly litigation with parties whose litigation agenda is evident from their prior filings in this case.[4]  As such, the proposed settlements represent a significant achievement and the final milestone in this challenging but ultimately highly successful chapter 11 case.  In essence, the proposed settlements contemplate that, subject to this Court's approval:

- Class Plaintiffs will turn over $750,000 in cash and their entitlement to 50% of the economic value of 3,184,713 Class 6 Interests (with an estimated value of $517,500) to the Recovery Trust – terms that were approved in the EDNY by a Stipulation and Order entered on February 23, 2021; and

- CLM's Fee Claim will be allowed and paid in the amount of $3,750,000, freeing up $1,250,000 of the $5,000,000 reserve ordered by this Court to be held for potential payment of the Fee Claim.

---

[4] *See, e.g.,* FNs 17, 18, 19, *infra*.  Mr. Jacks' litigation agenda continues to erode final distributions to Class 6 Beneficiaries (including Mr. Jacks himself) at the expense of the vast majority of Class 6 Beneficiaries who did not sign up for Mr. Jacks' misguided and costly litigation crusade (*see, e.g.,* ¶¶ 31, 58, 88-90, *infra*).

6.     In order to maximize distributions to Class 6 Trust Interests, the Recovery Trust requests that the Court enter an order barring further litigation against the Recovery Trust, Post-Confirmation Debtor, CLM, or Class Plaintiffs, and/or their respective representatives, relating to the subject matter of the settled claims or other final orders of this Court (discussed below).

7.     Upon the entry of orders approving the settlements and other relief requested herein, and such orders becoming final and not subject to appeal, the Recovery Trust will complete the Dissolution Protocol, including the termination of ongoing expenses through the shutdown of the case website, destruction of records, and disbandment of oversight committees; payment of remaining accrued expenses, if any; payment of final distributions to holders of Class 3 Claims and Class 6 Interests, if any; and ultimately, the dissolution of the Recovery Trust and Post-Confirmation Debtor.[5]   Each element of the Dissolution Protocol is authorized by the Plan, Confirmation Order, Recovery Trust Agreement, and/or By-Laws, and is incorporated into this Motion and the scope of relief requested herein, in order to provide interested parties who have been involved in this case over the course of more than ten years maximum notice and opportunity to be heard.

8.     Approval of the settlements, bar order, and Dissolution Protocol will collectively work to maximize final distributions to holders of Class 6 Trust Interests and complete the final chapter of this Bankruptcy Case.  The Recovery Trust submits that granting the Motion is in the best interests of the estate and its constituencies, and respectfully requests that the Court enter the proposed Order approving the Class Plaintiff Settlement (defined below) substantially in the form

---

[5] The Recovery Trust may be dissolved only by order of this Court or the issuance of final distributions, both of which the Recovery Trustee seeks authority for by this Motion.  RTA, § 11.1.  The Post-Confirmation Debtor, in contrast, may be dissolved without further order, provided that the Post-Confirmation Debtor Functions have been completed. RTA, § 4.1(a).  Allowance of this Motion will facilitate the dissolution of both entities.

attached hereto as **Exhibit B** ("Class Plaintiff Settlement Order") and the proposed Order and Final

Decree substantially in the form attached hereto as **Exhibit C** ("Case Conclusion Order").

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

9.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This

is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§

1408 and 1409.  The statutory predicates for the relief sought herein are sections 105(a), 350, and

1142 of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules").  Pursuant to Local Rule 9013-1(f) of the Local Rules of Bankruptcy Practice

and Procedure of the Bankruptcy Court, the Recovery Trust and Post-Confirmation Debtor consent

to the entry of a final order by this Court in connection with this Motion if it is later determined

that this Court, absent consent of the parties, cannot enter final orders or judgments in connection

therewith consistent with Article III of the United States Constitution.

<h2 style="text-align:center">RELEVANT BACKGROUND</h2>

**A.      General Background**

10.      On April 14, 2010, the Debtor and its affiliates filed voluntary petitions for relief

under chapter 11 of the Bankruptcy Code.  The Bankruptcy Case is currently pending before this

Court.

11.      On November 10, 2015, this Court entered an order confirming the Plan [D.I. 3526]

(the "Confirmation Order").  The Plan's effective date occurred on November 23, 2015 (the

"Effective Date").

12.      The Recovery Trust was created pursuant to Section 6.4 of the Plan.  Pursuant to

Section 6.4(b) of the Plan, the Recovery Trust is governed by the Recovery Trust Agreement dated

November 20, 2015 (the "Recovery Trust Agreement," or "RTA," attached as **Exhibit 1** to the

Ryniker Declaration). Pursuant to Section 2.1 of the Recovery Trust Agreement, Brian K. Ryniker was appointed as the Recovery Trustee and continues to serve in such role.

13. The Post-Confirmation Debtor remained in existence following the Effective Date in order to perform the Post-Confirmation Debtor Functions, which (as defined in the Plan) include the resolution of the pending dispute with the Class Plaintiffs. The Post-Confirmation Debtor is governed by the Third Amended and Restated By-Laws of SS Body Armor I, Inc. (the "By-Laws," attached as **Exhibit 2** to the Ryniker Declaration).

**B.** **The Recovery Trust Will Pay 100% of Allowed Claims and Make Meaningful Distributions to Holders of Allowed Interests.**

14. Over the course of a complex post-confirmation process from November 23, 2015 to the present, the Recovery Trust and Post-Confirmation Debtor pursued multiple sources of recovery and secured funds sufficient to pay allowed administrative, priority, and general unsecured claims in full (with interest), as well as a meaningful distribution to the holders of allowed interests.

15. As the Court is aware, the Plan incorporated a separately approved Amended Settlement Agreement and Addendum thereto entered into between the Debtor and Class Plaintiffs, which provided among other things for a $20 million interest-free loan to fund the Plan and an agreed-upon sharing of all proceeds realized by the parties relating to claims against David Brooks or his assets. The Amended Settlement Agreement and Addendum is attached as **Exhibit 3** to the Ryniker Declaration. When the parties executed the Addendum to the Amended Settlement Agreement, the EDNY had granted substantial restitution awards to both the Debtor and the Class Plaintiffs, which were pending on appeal when the Plan was confirmed. Following confirmation of the Plan (and while the restitution awards were still on appeal), Mr. Brooks died on October 27, 2016, resulting in the abatement of his criminal convictions and abatement of the restitution award.

6

In other words, by order of the Second Circuit, the restitution award was voided and of no further effect. *United States v. Brooks*, 872 F.3d 78, 96 (2d Cir. 2017).

16.     In light of these new realities resulting from Mr. Brooks' death and the abatement of restitution, the Post-Confirmation Debtor and Recovery Trust entered into new negotiations to maximize value. The parties engaged in a global mediation in late 2017 with the Class Plaintiffs, SEC, United States Department of Justice ("DOJ") (which had restrained approximately $168 million of Brooks-related assets in connection with the criminal prosecution against Brooks and the related civil forfeiture proceeding), and Mr. Brooks' estate and his surviving family members, which ultimately led to a further Settlement Agreement being negotiated as of early 2018, executed in October 2018, and approved by the EDNY (as to the forfeiture of the restrained assets) in November 2018 (the "Global Settlement"). The Global Settlement is attached as **Exhibit 4** to the Ryniker Declaration.

17.     The Global Settlement resulted in, among other things, (i) the EDNY-approved forfeiture of approximately $143 million of assets restrained from Mr. Brooks, his family members and/or related entities; (ii) a subsequent remission award of $70.6 million from the restrained assets to the Debtor by the Money Laundering and Recovery Section ("MLARS") of the DOJ, and a separate remission award to the Class Plaintiffs; (iii) forgiveness of the $20 million loan by the Class Plaintiffs; and (iv) a division of proceeds with the Class Plaintiffs, pursuant to the Amended Settlement Agreement and Addendum, that placed the Recovery Trust in a position to pay projected allowed general unsecured claims in full with interest. The remission award in particular was an extraordinary result grounded in the government's acceptance of the Debtor's position that it was a victim of Brooks' crimes—a position that was by no means a given.

18.     The Recovery Trust and Post-Confirmation Debtor also right-sized the claim and interest pools in order to maximize recoveries for the Recovery Trust's Beneficiaries. For example, the Recovery Trust successfully prosecuted objections to more than 150 claims and interests.[6] By virtue of the Global Settlement, the Recovery Trust and Post-Confirmation Debtor secured the expungement of claims and interests held by David Brooks and 40 related parties. *See Order Approving Equity Distribution Procedures and Granting Related Relief* [D.I. 4345] ("Equity Procedures Order"); *see also Order Sustaining Recovery Trust's Objection to Proof of Claim No. 542 Filed by Dawn M. Schlegel* [D.I. 4310]. These efforts also led to the Bankruptcy Court entering orders approving stipulations and/or settlements that consensually resolved claims of Lifestone Materials, LLC [D.I. 4079]; OTR/STR (Ohio Partnership) [D.I. 4222]; CIVF I FL2W01, LLC [D.I. 4238]; Cedar Glade LP [D.I. 4338]; Class 5 Class Action Claims [D.I. 4340]; Kobre & Kim LLP [D.I. 4362]; Sergeant Major Associates, Inc. [D.I. 4373]; and D. David Cohen [D.I. 4522]; and sustaining an objection to the claim of Marcum Rachlin [D.I. 4314].

19.     In sum, the Recovery Trust and Post-Confirmation Debtor reduced the general unsecured claims pool from approximately $205 million to approximately $35 million. The Recovery Trust has now issued full payment to holders of Allowed Class 3 Claims (General

---

[6] *See Recovery Trust's First Omnibus (Non-Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1* [D.I. 4068], and Order sustaining the same [D.I. 4140]; *Recovery Trust's Second Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1* [D.I. 4069], and Order sustaining the same [D.I. 4138]; *Recovery Trust's Third Omnibus (Non-Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1* [D.I. 4217], and Order sustaining the same [D.I. 4233]; *Recovery Trust's Fourth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1* [D.I. 4218], and Order sustaining the same [D.I. 4266]; *Recovery Trust's Fifth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1.* [D.I. 4265], and Order sustaining the same [D.I. 4300]; *Recovery Trust's First Omnibus Non-Substantive Objection to Proofs of Interest Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1* [D.I. 4382], and Order sustaining the same [D.I. 4461]; and *Recovery Trust's Second Omnibus Non-Substantive Objection to Proofs of Interest Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1* [D.I. 4384], and Order sustaining the same [D.I. 4462].

Unsecured Claims), with interest at the Federal Judgment Rate. *See* Ryniker Declaration, ¶ 24. The only remaining Disputed Class 3 Claim is held by CLM, which the Recovery Trust proposes to resolve through the settlement presented to this Court for approval by this Motion.

20.     The Recovery Trust also determined there are sufficient funds to make meaningful distributions to holders of Allowed Class 6 Interests (Old Common Stock Interests). Ryniker Declaration, ¶¶ 27-28, 53. This Court previously authorized the Recovery Trust to issue interim distributions on account of Allowed Class 6 Interests. *See Order Granting Recovery Trust's Motion for Order Authorizing Holdback from First Interim Distribution to Interest Holders and Related Relief* [D.I. 4460].

- **First Interim Distribution to Class 6**: In July 2020, the Recovery Trust issued its first interim distribution of 15 cents per share to holders of Allowed Class 6 Interests. Ryniker Declaration, ¶ 27.

- **Second Interim Distribution to Class 6**: The Recovery Trust is arranging a second interim distribution of approximately 3 cents per share to holders of Allowed Class 6 Interests. Ryniker Declaration, ¶ 28. Upon the issuance of the second interim distribution, the Recovery Trust will have exceeded the mid-estimate of $6.1 million in distributions to equity holders set forth in the *Amended Disclosure Statement with Respect to Second Amended Joint Chapter 11 Plan of Liquidation*, Exh. B. [D.I. 3262-2]. The second interim distribution will occur prior to the March 24 hearing scheduled in this matter.

- **Third and Final Distribution to Class 6**: The Recovery Trustee projects a third and final distribution as high as approximately 16-18 cents per share, for a total distribution of approximately 34-36 cents per share to holders of Allowed Class 6

9

Interests in full satisfaction of such interests, if the relief requested by the Recovery Trust is allowed. Ryniker Declaration, ¶¶ 53, 57.

**C.      Pending Matters For Consideration on March 24.**

21.      The Recovery Trust has the following remaining material matters pending before this Court,[7] with all the matters pending in this Court scheduled to be heard by or on March 24, 2021:

>    i.    The CLM Fee Claim (defined below), the settlement of which is the subject of this Motion, set for hearing before this Court on March 24, 2021;

>    ii.   The turnover of Global Settlement proceeds by the Class Plaintiffs, which was pending before the EDNY upon this Court's direction and was approved by the EDNY by Order entered on February 23, 2021, conditioned only upon the additional approval by this Court, which the Recovery Trust seeks by this Motion, set for hearing before this Court on March 24, 2021;

>    iii.  The Recovery Trust's *Motion to Extend Term of the Recovery Trust* [D.I. 4527] (the "<u>Motion to Extend Trust</u>"), set for hearing before this Court on March 24, 2021; and

>    iv.   The Recovery Trust's *Motion for an Order (I) Returning Unclaimed Distributions to the Recovery Trust, Expunging Related Proofs of Claim, and (III) Granting Related Relief* [D.I. 4546] (the "<u>Unclaimed Distributions Motion</u>"), set for hearing before this Court on March 24, 2021.

>    **i.  <u>CLM Fee Claim</u>**

22.      On September 25, 2015, CLM and D. David Cohen ("<u>Cohen</u>") filed the joint *Application of D. David Cohen and Carter Ledyard Milburn LLP for Fees and Expenses, and Memorandum in Opposition to the Payment of Fees and Expenses to Derivative Counsel* [D.I. 3300]. While the claims asserted by Cohen have been resolved per the *Stipulation and Order Resolving Claims of D. David Cohen*, entered November 4, 2020 [D.I. 4522], the amount of fees

---

[7] Also scheduled to be heard on March 24 are: (a) *Post-Confirmation Debtor's Motion for Order Further Extending the Period Within Which the Post-Confirmation Debtor May Remove Actions* [D.I. 4525]; and (b) *Joint Motion of the Post-Confirmation Debtor and Recovery Trust for an Order Extending the Deadline to Object to Administrative Claims and Disputed Claims, and to Estimate Claims* [D.I. 4526].

to be awarded to CLM (the "CLM Fee Claim") remains an active contested matter before this Court.[8] *See* Scheduling Order entered July 23, 2020 [D.I. 4471]. The Post-Confirmation Debtor is presently holding a $5 million reserve for the payment of the CLM Fee Claim, pursuant to this Court's *Order Establishing Reserve* dated February 23, 2019 [D.I. 4049].

### ii. Class Plaintiff Recovery Issues

23. On July 2, 2019, a group of beneficial holders of Class 6 Trust Interests led by Jon E. Jacks, under the moniker, the "Equity Group," filed a *Motion to Enforce the [Plan] Regarding Allocation of Remission Proceeds Among the Debtors and Class Plaintiffs* [D.I. 4285] (the "Allocation Motion"). In the Allocation Motion, the Equity Group sought to compel the Post-Confirmation Debtor to pursue (a) an alleged reversionary interest in the Class Plaintiffs' remission award under Section 3(f) of the Amended Settlement Agreement, premised on the voided restitution order (the "Reversion Issue"); and (b) a reallocation of settlement proceeds pursuant to the Amended Settlement Agreement and Global Settlement, with the Equity Group arguing that the "proper calculation" required a true-up payment of at least $14.97 million from the Class Plaintiffs (the "Allocation Issue").[9]

24. On April 15, 2020, this Court issued an Opinion and Order granting in part, and denying in part, the Allocation Motion. [D.I. 4374 and 4375] (together, the "April 2020 Decision"). On the Reversion Issue, the Court held that it (and the EDNY) lacked jurisdiction to reallocate the DOJ's remission payments to the Class Plaintiffs. The Court also explained that because "Class

---

[8] On June 4, 2020, the U.S. Court of Appeals for the Third Circuit ("Third Circuit") affirmed this Court's determination that CLM was not entitled to an administrative expense claim for substantial contribution but remanded the matter for a determination of the amount of CLM's general unsecured Fee Claim. *In re SS Body Armor I Inc*, 961 F.3d 216, 220 (3d Cir. 2020).

[9] The Class Plaintiffs made an initial true-up payment of approximately $5.3 million in June 2019. Furthermore, as set forth in *The Debtor Parties' Reply Memorandum in Further Support of the Motion to Enforce Settlement Agreement, Approve Final Allocation of Share Proceeds, and Compel Turnover of Funds* filed in the EDNY, the Post-Confirmation Debtor informed the EDNY that it made demand upon the Class Plaintiffs for a shortfall of approximately $4.8 million on June 26, 2019. EDNY ECF No. 487, p. 9.

Plaintiffs will not receive a 100% recovery on their claims . . . the Debtor has no reversionary interest in the Class Plaintiffs' remission award." *See* April 2020 Decision [D.I. 4374], at 11-12 & n. 26.

25.     On the Allocation Issue, the Court rejected the Equity Group's arguments and set forth the same allocation calculation advanced by the Post-Confirmation Debtor and Recovery Trust.  The Court then held that the Post-Confirmation Debtor and Class Plaintiffs should seek approval from the EDNY of the final allocation of proceeds from the Amended Settlement Agreement and Global Settlement.  The April 2020 Decision was not appealed and is a final order of this Court.

26.     In July 2020, following attempts at settlement discussions, the Post-Confirmation Debtor and Recovery Trust, on the one hand, and the Class Plaintiffs, on the other, filed competing motions in the EDNY in which each party adopted the calculation of amounts owed under the Amended Settlement Agreement, as set forth in the April 2020 Decision.  *See In re DHB Industries, Inc. Class Action Litig.*, No. 05-cv-04296-JS (E.D.N.Y.) [ECF Nos. 475, 477, 479, 485, 487] (collectively, the "EDNY Motions").

27.     Consistent with this Court's ruling on the Reversion Issue, the Post-Confirmation Debtor, Recovery Trust, and Class Plaintiffs agreed that the Additional Allocation Procedure contemplated by Section 3(f) of the Amended Settlement Agreement could not be invoked with respect to the alleged reversionary interest in the Class Plaintiffs' remission award.

28.     The parties disagreed, however, on the existence of a shortfall owed by the Class Plaintiffs (the "Shortfall Issue").  The Recovery Trust and Post-Confirmation Debtor contended that, consistent with the calculation set forth in the April 2020 Decision, the Class Plaintiffs owed the Recovery Trust a shortfall of $4.773 million under the Amended Settlement Agreement and

Global Settlement. The Class Plaintiffs disputed that position and argued that they had satisfied their obligations to the Post-Confirmation Debtor and Recovery Trust and were not required to make any further payment.[10]

29.     The various issues surrounding the sharing of proceeds pursuant to the Amended Settlement Agreement and Global Settlement, including the Reversion Issue, Allocation Issue, and the Shortfall Issue (collectively, the "Class Plaintiff Recovery Issues") were fully briefed in the EDNY as of August 2020. The parties submitted the proposed settlement that is the subject of this Motion to the EDNY for approval, and the EDNY approved the settlement with the Class Plaintiffs on February 23, 2021.

### iii.     Motion to Extend Trust

30.     The Recovery Trust and Post-Confirmation Debtor are executing the final steps necessary to complete the administrative closure of this case. In light of the proposed settlements, and the payment to date of substantially all Allowed Claims (as well as interim distributions to holders of Allowed Interest holders), the Post-Confirmation Debtor Functions are nearly completed, and the Recovery Trustee is prepared to dissolve the Post-Confirmation Debtor, complete the wind-down of the Recovery Trust, and seek closure of the Bankruptcy Case. While, Mr. Jacks argues the Recovery Trust is no longer *in vivos*, the Motion to Extend Trust makes clear that the trust continues to the extent necessary to complete the wind-down process.

31.     Although the Motion to Extend Trust is in accord with Mr. Jacks' professed concerns and interests, Mr. Jacks filed an *Objection to the Motion to Extend Trust* [D.I. 4544], leveling various meritless allegations at the Recovery Trustee, Recovery Trust Committee, and

---

[10] No other parties intervened in the EDNY to object to the EDNY Motions or to propose any other allocation or sharing calculation.

Recovery Trust counsel. The Recovery Trust will oppose Mr. Jacks' Objection and request it be overruled.

32. As explained in the Motion to Extend Trust, the Recovery Trust Agreement provides mechanisms for terminating the Recovery Trust Agreement and dissolving the Recovery Trust. Section 11.1 of the Recovery Trust Agreement contains three parts. The first part of Section 11.1 ("Part 1") states:

> This *Agreement . . . shall terminate* and the Recovery Trust shall *dissolve and terminate* and be of no further force or effect upon the *earlier to occur* of (i) the *final Distribution* of all monies and other Recovery Trust Assets in accordance with the terms of this Agreement, the Plan and Confirmation Order and (ii) *entry of a Final Order* of the Bankruptcy Court terminating and dissolving the Recovery Trust as provided under the Plan.

RTA. § 11.1, Part 1 (emphasis added). The second part of Section 11.1 ("Part 2") provides:

> The *Recovery Trust will* terminate no later than the third (3rd) anniversary of the Effective Date, provided, however, that, on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by the Recovery Trustee or a party in interest, *may extend* the term of the *Recovery Trust* for a fixed period if it is necessary to facilitate or complete the liquidation and distribution of the Recovery Trust Assets.

*Id.* § 11.1, Part 2 (emphasis added). And finally, "Part 3" of Section 11.1 states in relevant part:

> In the event the Recovery Trustee *elects to terminate* the Recovery Trust, subject to consultation with the Post-Confirmation Debtor Representatives, he shall provide twenty (20) day notice thereof to the Office of the United States Trustee and the Recovery Trust Committee, and file such notice with the Bankruptcy Court . . . .

*Id.* § 11.1, Part 3 (emphasis added). Thus, the Recovery Trust Agreement provides that only upon such election will the Recovery Trustee be relieved of his duties to administer the Recovery Trust. *Id.* (Upon election neither "Recovery Trustee nor the members of the Recovery Trust Committee shall have any further duties or responsibilities under the Agreement or otherwise").

33. **Termination** of the Recovery Trust Agreement and **dissolution** of the Recovery Trust has not occurred pursuant to Part 1; nor has the Recovery Trustee elected to terminate the

Recovery Trust pursuant to Part 3. *See id.* Further, even though the three-year term of the Recovery Trust ended on November 23, 2018,[11] the Recovery Trust has not dissolved and the Recovery Trust Agreement has not terminated under the express provisions of the Recovery Trust Agreement. The Recovery Trustee has all the powers provided under the Recovery Trust Agreement, Plan, and Confirmation Order and will continue to have those powers until the purpose of the Recovery Trust—final liquidation and distribution of trust assets—has been completely accomplished.

34. As set forth below, the Recovery Trust seeks to accomplish that purpose through the proposed settlements, followed by a streamlined protocol for the orderly dissolution of the Recovery Trust and Post-Confirmation Debtor and closure of the Bankruptcy Case. The Recovery Trustee will remain in place to oversee the completion of the Dissolution Protocol, subject only to (a) the power of this Court to remove him for cause by a Final Order; and (b) his ability to resign.

### iv. Unclaimed Distributions Motion

35. Certain holders of Allowed Class 3 Claims, as well as certain holders of Allowed Administrative or Priority Tax Claims, have not cashed their distribution checks or otherwise accepted payment within 120 days as required under the Plan and Recovery Trust Agreement. Ryniker Declaration, ¶ 24. Accordingly, pursuant to paragraph 43 of the Confirmation Order and section 7.9 of the Recovery Trust Agreement, and section 347(b) of the Bankruptcy Code, the Recovery Trust filed the Unclaimed Distributions Motion requesting that such distributions be deemed forfeited and that the claims associated therewith be expunged. Although the objection deadline to the Unclaimed Distributions Motion has not yet passed, the resolution of unclaimed

---

[11] Until February 2020, lead counsel for the Recovery Trust was Robert Hirsh. Mr. Hirsh departed Arent Fox LLP ("Arent Fox") in February 2020 to join Lowenstein Sandler LLP ("Lowenstein"). Lowenstein is counsel to the Class Plaintiffs. The Recovery Trust has been informed that since joining Lowenstein, Mr. Hirsh has at all times been ethically walled off.

distributions will not affect the fundamental relief sought in this Motion. Rather, resolution of the Unclaimed Distributions Motion will only affect the magnitude of final distributions (by about 1-2 cents per share) to be issued by the Recovery Trust following the determination of this Motion.

        **D.**     **The Recovery Trust and Post-Confirmation Debtor Reached Separate Settlements with CLM and the Class Plaintiffs through Mediation.**

36.     Over the course of several weeks in December 2020 and January 2021, the Recovery Trust, CLM, Post-Confirmation Debtor, Class Plaintiffs, and Revised Equity Group (led by Mr. Jacks) participated in various voluntary mediation sessions before the Honorable Kevin Gross (Ret.).

37.     There were 5 parties involved in the mediation. While the process was challenging, the results bear the hallmark of a successful mediation: no party was fully satisfied but nonetheless 4 of the 5 parties found consensus through agreements: (i) between the Recovery Trust and the Post-Confirmation Debtor on the one hand, and CLM on the other, that the CLM Fee Claim will be allowed and paid in the amount of $3,750,000, pursuant to the Settlement Agreement Resolving Carter Ledyard Milburn LLP Fee Award Contested Matter attached hereto as **Exhibit D** (the "CLM Settlement") and (ii) between the Recovery Trust and Post-Confirmation Debtor, on the one hand, and the Class Plaintiffs, on the other, that the Class Plaintiffs will provide $750,000 in cash to the Recovery Trust release their entitlement to 50% of the economic value of 3,184,713 Class 6 Interests (the "Stock Share"), pursuant the Joint Stipulation and Order Regarding Final Allocation of Shared Proceeds, "So Ordered" by the EDNY and appended as **Exhibit 1** (the "Class Plaintiff Settlement") to the proposed Order approving the Class Plaintiff Settlement by this Court attached hereto as **Exhibit B** (the CLM Settlement and Class Plaintiff Settlement together, the "Proposed Settlements") (the Recovery Trust, Post-Confirmation Debtor, CLM, and the Class Plaintiffs together, the "Settlement Parties"). The estimated value of the Stock Share set forth in

the Class Plaintiff Settlement was $517,500, although the final value of the Stock Share will ultimately depend on the total amount of distributions made to Class 6.   Ryniker Declaration, ¶ 39.

38.     The Revised Equity Group's positions, although not pending before any court at the time of the mediation, were heard, considered, and evaluated during the course of good-faith efforts to reach a mediated resolution.   Unfortunately, the Post-Confirmation Debtor and Recovery Trust were unable to reach a resolution with Mr. Jacks' Revised Equity Group.  As a result, it is anticipated that Mr. Jacks may object to this Motion or take other positions adverse to the Recovery Trust, as he has done in his Opposition to the Motion to Extend Trust and other prior filings.  The Recovery Trust has determined, however, that the positions asserted by Mr. Jacks  do not give rise to any meaningful claim for relief, and do not provide any basis for delaying final distributions, dissolution of the Recovery Trust and Post-Confirmation Debtor, or closure of the Bankruptcy Case. *See* Ryniker Declaration, ¶ 48.

## RELIEF REQUESTED

39.     By this Motion, the Recovery Trust seeks entry of an Order, substantially in the form attached hereto as **<u>Exhibit B</u>**, approving the Class Plaintiff Settlement.  Approval of the Class Plaintiff Settlement is critical to implementing the remaining relief sought through this Motion, including the Final Distribution and other aspects of the Dissolution Protocol, as resolution of the Class Plaintiff Recovery Issues will result in the collection of the remaining outstanding Recovery Trust Asset and fix the number of Class 6 Interests to receive distributions through the delivery of the Class Plaintiffs' Stock Share.

40.     In the event the Class Plaintiff Settlement is approved, the Recovery Trust also seeks entry of an order, substantially in the form attached hereto as **<u>Exhibit C</u>**, (i) approving the

terms of the CLM Settlement as the result of good faith, arm's length negotiation consistent with the terms of the Recovery Trust Agreement; (ii) entering the Bar Order; (iii) authorizing the Dissolution Protocol; (iv) entering the final decree; and (v) granting related relief.

## BASIS FOR RELIEF

**A.      The Proposed Settlements Are in the Best Interests of the Estate and Should be Approved.**

41.      Approval of the Proposed Settlements resolves the remaining material disputes pending before this Court and paves the way entry of a final decree closing the Bankruptcy Case; issuance of final distributions; and dissolution of the Recovery Trust and Post-Confirmation Debtor.

42.      Section 5.5(b) of the Recovery Trust Agreement provides the Recovery Trustee with the right and power, without further Bankruptcy Court approval to:

> Settle, resolve and object to Claims and to file, prosecute, compromise and settle Estate Claims assigned and delivered to the Recovery Trust, whether or not the Estate Claims or objections to Claims have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action or objection by or against the Debtors, the Creditors' Committee or the Equity Committee . . .

43.      Section 5.5(z) of the Recovery Trust Agreement provides the Recovery Trustee with the power to "[s]eek any relief from or resolution of any disputes concerning the Plan, the Recovery Trust, or the Recovery Trust Assets by the Bankruptcy Court or any other court with proper jurisdiction."

44. Section 5.6(a) of the Recovery Trust Agreement provides:

> Notwithstanding Section 5.5, the Recovery Trustee shall procure approval by majority vote of the members of the Recovery Trust Committee prior to (i) taking any action (including settling or selling) with respect to a Recovery Trust Asset . . . having a value of $300,000 or more . . . .

45. Section 5.6(a) of the Recovery Trust Agreement further provides:

> [N]otwithstanding Section 5.5, the Recovery Trustee shall procure approval by unanimous vote of the members of the Recovery Trust Committee prior to settling any Disputed Claim for an amount of $500,000 or more; provided however, in the event the Recovery Trust Committee fails to approve such settlement proposed by unanimous vote, but does obtain approval of a majority of the Recovery Trust Committee, then the Recovery Trustee may submit the matter to the Bankruptcy Court for approval of such action and the non-consenting member of the Recovery Trust Committee shall have standing to be heard in opposition to such request.

46. The Class Plaintiff Recovery Issues relate to a Recovery Trust Asset having a value in excess of $300,000, and the CLM Fee Claim is a Disputed Claim for an amount in excess of $500,000.[12] Accordingly, settlement of the Class Plaintiff Recovery Issues and CLM Fee Claim are subject to the approval of the Recovery Trust Committee. Further, settlement of the Class Plaintiff Recovery Issues is a Post-Confirmation Debtor Function pursuant to Section 1.1 of the Plan, and is therefore subject to the review of the Post-Confirmation Debtor Oversight Committee pursuant to Section 5.1 of the By-Laws.

47. The Recovery Trustee obtained unanimous consent and authority from the Recovery Trust Committee to settle with the Class Plaintiffs and CLM in accordance with the Proposed Settlements. Further, the Post-Confirmation Debtor Oversight Committee voted unanimously to approve the Class Plaintiff Settlement and support the CLM Settlement. *See* Ryniker Declaration, ¶¶ 43-44.

---

[12] The Plan defines "Recovery Trust Assets" to include "Settlement Recoveries," which include the "Debtors' Share (as defined in the Settlement Agreement)" that is the subject of the Class Plaintiff Settlement. *See* Plan, § 1.1; Amended Settlement Agreement, ¶ 3. Although settlement of the Class Plaintiff Recovery Issues is a Post-Confirmation Debtor Function, the disposition of any Recovery Trust Asset is a Recovery Trust Function. *See* Plan, §1.1. The Plan requires that the "Post-Confirmation Debtor Representative and Recovery Trustee shall cooperate and coordinate their effort to implement the Plan, including, among other things, addressing any circumstances where Post-Confirmation Debtor Functions and Recovery Trust Functions may overlap . . . ." Plan, § 6.5.

48.     Although the Recovery Trust believes that its positions vis-à-vis the Class Plaintiffs and CLM are meritorious, each issue has been the subject of expensive litigation in the Bankruptcy Court, EDNY, and multiple appellate courts.  The cost and time savings of a final resolution would be substantial for both the Post-Confirmation Debtor and the Recovery Trust.

49.     **Overview**.[13]  The Proposed Settlements include the following key terms:

   a.  CLM will receive a fee award of $3,750,000, in full and final satisfaction of its Fee Claim, which represents a savings of $1,250,000 of the $5 million reserved for such claim (and a $21,250,000 reduction from the amount previously sought).  CLM will, in turn, pay $139,406.30 of such award to D. David Cohen.

   b.  The Class Plaintiffs will pay $750,00 in cash to the Recovery Trust and release their entitlement to 50% of the economic value of 3,184,713 Class 6 Interests (which were valued at approximately $517,500 in the Class Plaintiff Settlement*, provided that* the final value will be depend on the total distributions to Class 6).

   c.  The Settlement Parties will exchange mutual releases of the other Settlement Parties, as applicable, and their respective representatives, attorneys, oversight committee members, and other professionals (collectively, and as further defined in the Proposed Settlements, the "Released Parties").

   d.  The Settlement Parties will support and/or not oppose, as applicable, the findings and relief requested in this Motion, including but not limited to, the entry of an order that (i) each of the Settlement Parties and (ii) all other persons that hold, have held, or may hold a claim, debt or liability, a right in law or equity, or other interest or right of an equity holder, against, in or relating to the Debtor, Post-Confirmation Debtor or Recovery Trust (together, (i) and (ii), the "Barred Persons") shall be barred, enjoined and restrained from commencing, prosecuting, continuing or asserting, either derivatively or directly, in any court, arbitration proceeding, administrative agency, or any other forum in the United States or elsewhere, any actions, causes of action, claims, counterclaims, cross-claims, suits, proceedings, damages, punitive damages, costs, expenses, attorneys' fees, demands or liabilities whatsoever of any kind or nature, whether known or unknown, accrued or unaccrued, in law, equity or otherwise that the Barred Persons ever had, now have or may have against any of the Released Parties, which arises from or is related to the CLM Fee Claim or the Class Plaintiff Recovery Issues, or which seeks relief contrary to any order of this Court in the Bankruptcy Case (the "Bar Order"); provided, however, that nothing in such Bar Order shall preclude Beneficiaries of the Recovery Trust from receiving distributions of the proceeds of the Proposed

---

[13] In the event of any actual or perceived differences between this Motion and the CLM Settlement, or between this Motion and the Stipulation and Order approved by the EDNY governing the Class Plaintiff Settlement, the terms of the respective settlements shall control.

Settlements in accordance with the terms of the Plan and Recovery Trust Agreement.

50. **CLM Settlement**. The settlement with CLM is in the best interest of the estate and should be approved. While the Recovery Trust has contended that CLM is entitled to a payment of fees and expenses totaling approximately $623,000, CLM initially filed a claim for $1,860,000, and then later requested a fee reserve of $25 million. *Compare Application of D. David Cohen and Carter Ledyard Milburn LLP for Fees and Expenses and Memorandum in Opposition to the Payment of Fees and Expenses of Derivative Counsel* [D.I. 3300], with *Motion of Carter Ledyard & Milburn LLP to Establish Reserve to Pay Fee Award Pursuant to Order Dated December 3, 2015* [D.I. 4019].

51. Although the Recovery Trust believes an award based on a high multiplier or a common fund theory is unlikely under applicable law if litigated to verdict (and likely, on appeal as well), the proposed payment of $3,750,000 will save the Recovery Trust (and the Post-Confirmation Debtor) the substantial delay and cost of litigating this issue, both before this Court and in connection with any appeal, and will mitigate the uncertainties attendant to the uncertain outcome of such litigation with CLM.[14] There are reasonable scenarios in which the total cost of litigating and payment of the CLM Fee Claim will exceed the proposed payment. The CLM Fee Claim is already the subject of two decisions by the Third Circuit Court of Appeals and the Recovery Trust anticipates that, after completion of discovery, motion practice, the retention of

---

[14] Although the Third Circuit indicated that the use of the lodestar method in this case would be appropriate, it left open the possibility that the Bankruptcy Court could apply a fee multiplier. *See S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019) ("Although the lodestar method yields a fee that is presumptively sufficient, courts may, in rare and exceptional circumstances, use a multiplier to adjust the fee award upward or downward").

experts and a trial before this Court, an outcome that is unsatisfactory to CLM would likely result in a third trip to the Third Circuit.

52.     Continued litigation over the CLM Fee Claim would require the creation of substantial reserves for the Recovery Trust and Post-Confirmation Debtor to fund professional fees.  The CLM Settlement eliminates the need to establish additional professional fee reserves, and also frees up $1,250,000 from the Fee Claim reserve currently held by the Post-Confirmation Debtor so that holders of Class 6 Trust Interests may receive distributions faster and in larger denominations.  Accordingly, the Recovery Trust submits that this settlement is a sound exercise of business judgment and is well within the range of reasonableness, and respectfully requests its approval by this Court.  *See* Ryniker Declaration, ¶ 46.

53.     **Class Plaintiff Settlement**.  The primary roadblock to a full recovery from the Class Plaintiffs is that, even if the Debtor and Recovery Trust were to prevail in litigation, the Class Plaintiffs lack sufficient funds to satisfy any such full recovery.  The Debtor and the Recovery Trust seek turnover of approximately $4,773,000 from the Class Plaintiffs but understand that the Class Plaintiffs do not have such funds.  In keeping with MLARS' practice of compensating victims according to their individual losses, MLARS required remission distributions to be made directly to members of the class and required that the funds were "not [to be] used to satisfy any other Class obligations."  Global Settlement, Exh. C, p. 1.  Accordingly, the Recovery Trust understands that the Class Plaintiffs hold only approximately $1,500,000 in cash on hand that is itself subject to outstanding expense obligations with competing claims to the funds, and additional expenses anticipated by the Class Plaintiffs. Ryniker Declaration, ¶ 41. Moreover, the Amended Settlement Agreement contemplates that the parties use their "reasonable best efforts, consistent with their respective fiduciary duties" to achieve the agreed to allocation;

there is no absolute or unequivocal allocation. Thus, the Class Plaintiffs may not be required to satisfy the shortfall in full. There is also the potential for a lengthy and costly appeals process which might negate materially the benefit of the additional proceeds from the Class Plaintiffs. The Class Plaintiff Settlement resolves these issues and uncertainties by requiring the Class Plaintiffs to contribute in excess of $1,250,000 in value to the Recovery Trust through a combination of cash and the Stock Share that will be surrendered by the Class Plaintiffs as part of the settlement.

54.     In accordance with this Court's April 2020 Decision, the Class Plaintiffs, Post-Confirmation Debtor, and Recovery Trust submitted the Class Plaintiff Settlement to the EDNY, requesting in the EDNY's approval of the final allocation of settlement on February 23, 20201. However, the Class Plaintiff Settlement will not become effective unless this Court approve the Class Plaintiff Settlement, and both approval orders become final. *See* **Exhibit B**, Exh. 1 (Class Plaintiff Settlement).[15]

55.     The Recovery Trust submits that the Class Plaintiff Settlement is a sound exercise of business judgment of the Recovery Trust and the Post-Confirmation Debtor and is well within the range of reasonableness. Accordingly, the Recovery Trust, supported and joined by the Post-Confirmation Debtor, respectfully requests that the Court approve the Class Plaintiff Settlement.

56.     **Bar Order**. The Bar Order is a critical and central feature of the Recovery Trust's efforts to ensure that the funds secured pursuant to the Proposed Settlements are effectively preserved for the benefit of the Recovery Trust's Beneficiaries rather than being used to fund further litigation surrounding issues that are the subject of final orders of this Court, including the CLM Fee Claim and Class Plaintiff Recovery Issues covered by the Proposed Settlements. For

---

[15] To the extent necessary, the Post-Confirmation Debtor or Recovery Trust will notify the EDNY of this Court's approval of the Stipulation and Order entered by the EDNY.

instance, Mr. Jacks, a holder of Class 6 Trust Interests, has been a prolific litigator in this case, and there is no indication that his litigation efforts will abate.[16]  The cost of these repeated and unsuccessful litigation efforts by Mr. Jacks and his associates has been borne by all of Class 6 and will continue to be so borne unless the majority of Class 6 who have not signed onto Mr. Jacks' litigation agenda are given a relief valve forged in equity.  The Bar Order is such a relief valve.

57.     Courts have held that bar orders are authorized pursuant to section 105 of the Bankruptcy Code (as well as Bankruptcy Rule 9019), and in determining whether to approve a bar order in connection with a settlement, courts consider the following factors: (i) whether any third-party claims to be barred are interrelated with estate claims; (ii) the likelihood any non-settling parties would prevail on barred claims; (iii) the complexity of any estate litigation with the beneficiaries of the bar order; and (iv) whether continued litigation by the estate and other parties against the beneficiary of the bar order would deplete estate resources.  *See, e.g., United States v. Hartog, Trustee*, 597 B.R. 673, 680–81 (S.D. Fla. 2019); *In re Equine Oxygen Therapy Resources, Inc.*, 2015 WL 1331540, at *6 (Bankr. E.D. Ky. 2015); *see also In re Tri Valley Corp.*, No. 12-12291-MFW (Bankr. D. Del. Oct. 15, 2015) [Doc. 985] (approving settlement involving allocation of class action settlement proceeds and entry of bar order against further litigation); *In re Superior Homes & Investments, LLC*, 521 Fed. Appx. 895, 897 (11th Cir. 2013) (bankruptcy court did not abuse discretion in approving "compromise that would result in the Non–Debtor Defendants paying $800,000 to the Estate in exchange for the entry of an order barring further litigation against the Debtor and the Non–Debtor Defendants"); *Cf. S.E.C. v. Kaleta*, No. CIV.A. H-09-3674, 2013 WL 2408017, at *6 (S.D. Tex. May 31, 2013) (entering bar order in context of settlement was fair,

---

[16] *See Recovery Trust's Omnibus Reply to (I) Responses to First and Second Omnibus Non-Substantive Objections to Proofs of Interest and (II) Recovery Trust's Motion for Holdback from First Interim Distribution to Interest Holders*, pp. 7-8 [D.I. 4446] (explaining that Mr. Jacks previously sued a liquidating trustee where his scheme to obtain double-payment in a chapter 11 case was foiled).

equitable, and in best interest of receivership estate where litigation costs would have drained estate assets).

58.     Here, the claims subject to the Bar Order either relate directly to the CLM Fee Claim and Class Plaintiff Recovery Issues, or prevent parties in the Bankruptcy Case from re-litigating other issues previously determined by a final order of this Court.[17]   Although the Recovery Trust is unaware of any *valid* claims that would be extinguished by the Bar Order, Mr. Jacks and other members of his Equity Group and Revised Equity Group have asserted baseless and frivolous claims against the Settlement Parties and their respective professionals regarding matters subject to the Bar Order, including those previously determined in favor of the Post-Confirmation Debtor and Recovery Trust in the April 2020 Decision, such as the division of funds pursuant to the Amended Settlement Agreement and Global Settlement.  *See* Ryniker Declaration, ¶ 48; *see also* FN 17, *supra* & ¶ 89, *infra*.  Absent the finality and closure afforded by a Bar Order, the Recovery Trust and Post-Confirmation Debtor will be targeted for further litigation by Mr. Jacks that will result in substantial delay,[18] placing the substantial achievements for Class 6 at risk and causing material reductions in distributions to the holders of Class 6 Trust Interests (of which Mr. Jacks and his Equity Groups are members).  *Id.*, ¶ 54.

---

[17] Mr. Jacks has shown a penchant for re-litigating and attempting to circumvent this Court's Final Orders in order to extract perceived value for himself.  For example, Mr. Jacks did not object to the Recovery Trust's *Motion for an Order Approving Equity Distribution Procedures and Granting Related Relief* [D.I. 4430].  Nonetheless, he and his associates filed individual Proofs of Interests duplicative of the Proofs of Interest filed by their Brokers and Banks, in violation of the Equity Procedures Order.  Mr. Jacks and his associates refused to withdraw the Proofs of Interest, forcing the Recovery Trust to engage in litigation to expunge the duplicative Proofs of Interest and create a holdback mechanism to facilitate interim distributions to the remainder of Class 6, which Mr. Jacks and his associates also opposed.  Similarly, Mr. Jacks did not appeal this Court's finding in the April 2020 Decision that the Debtor lacked a reversionary interest in the Class Plaintiff remission award.  Yet, Mr. Jacks continues to threaten the Post-Confirmation Debtor and Recovery Trustee with litigation for not pursuing that non-existent reversionary interest.

[18] In early 2015, while back-channeling with David Brooks' family to formulate a competing plan, Mr. Jacks explained his savvy for manipulating the judicial process as a *pro se* litigant: "I intentionally drug out a civil case 5 years just to beat down a lawyer on the other side. . . . [I]t didn't cost me anything."  *See* **Exhibit E**.

59.     The Recovery Trust Agreement requires the indemnification of the Recovery Trustee and his professionals with certain exceptions for gross negligence, fraud, or willful misconduct.  RTA, § 5.12.  Similarly, the By-Laws provide for the indemnification of the Post-Confirmation Debtor Representative and his professionals to the fullest extent permitted under Delaware law.  *See* By-Laws, Art. VII. In addition, as set forth below, the Recovery Trust Agreement and By-Laws authorize the creation of indemnification reserves to fund such liabilities where, as here, a party has threatened the indemnified parties.[19]

60.     Consistent with these rights and obligations, the Recovery Trust and Post-Confirmation Debtor are funding indemnification reserves and professional retainers. *See* Ryniker Declaration, ¶ 31.  In the absence of the Bar Order, the entirety of those indemnification reserves and retainers will continue to be held for the foreseeable future to protect against the risk of litigation.  *Id.*, ¶ 54.  In contrast, entry of the Bar Order will permit the Recovery Trust and Post-Confirmation Debtor to substantially reduce their respective reserves and retainers, freeing up such funds to *increase* the distributions to the holders of equity interests subject to the Bar Order by approximately 9 cents per share.  *Id.*  In other words, rather than total distributions of 27 cents (or less) per share without the Bar Order, holders of Class 6 Interests are likely to receive as high as 36 cents per share with the Bar Order. *Id.*, ¶¶ 53-54.  For these reasons, and in light of the unique circumstances of this case, the Bar Order is fair and equitable, and should be approved in connection with the Proposed Settlements.

---

[19] In his *Motion for an Order Re-Establishing a Recovery Trust, Removing Certain Estate Fiduciaries for Cause, Requiring Disgorgement of Fees and Related Relief* [D.I. 4492] ("Motion to Re-Establish"), Jacks made numerous inflammatory allegations against the Recovery Trust, Post-Confirmation Debtor and professionals.  Although the Motion to Re-Establish was stricken by the Court, *see* Order [D.I. 4516], because Jacks misrepresented himself as a *pro se* litigant while utilizing the assistance of a non-Delaware attorney, John Malone (also a member of the Equity Groups), to file pleadings, Jacks' intentions are clear.  Jacks' position about the CLM Fee Claim is likewise clear from his statements that CLM has, *inter alia*, "not done anything for the estate." *Statement of Jon Jacks* [D.I. 4041].

61. **Compliance with Standard of Care**.  Pursuant to section 5.3 of the Recovery Trust Agreement:

> [T]he Recovery Trustee shall not be liable to the Recovery Trust or any Beneficiary for any act he may do or omit to do as a Recovery Trustee while acting in good faith and in the exercise of his reasonable business judgment.  The foregoing limitation on liability will apply equally to the agents, professionals, accountants, attorneys, and/or employees of the Recovery Trustee acting on behalf of the Recovery Trustee in the fulfillment of the Recovery Trustee's duties hereunder.

62.     The Recovery Trustee, Recovery Trust Committee members, and Recovery Trust professionals, have engaged in good faith, arms' length discussions to resolve the pending litigation and to wind-down the Bankruptcy Case.  The Recovery Trust submits that the Proposed Settlements represent a comprehensive and fair resolution.  Accordingly, the Recovery Trust requests entry of an order pursuant to section 5.3 of the Recovery Trust Agreement, finding that the Recovery Trustee, oversight committee members, and professionals have acted in good faith and in the best interests of the Recovery Trust's Beneficiaries in negotiating and entering the Proposed Settlements and in winding down and dissolving the Recovery Trust in the manner set forth herein.

63.     **Exculpation and Release**.  In addition, the Recovery Trust seeks approval for the exculpation and release provisions covering the Released Parties, as set forth in the Proposed Settlements, which provide for full releases of claims against the Released Parties.

64.     Section 5.12 of the Recovery Trust Agreement provides that the Recovery Trustee, Recovery Trust Committee members, and professionals of the Recovery Trust will not be held liable for any acts or omissions under the Plan, Recovery Trust Agreement, or Confirmation Order, with exceptions for gross negligence, willful misconduct, fraud, or a criminal act.

65.     Further, Sections 9.3 and 9.4 of the Plan provides for the release and exculpation of the Recovery Trust, Recovery Trustee, Post-Confirmation Debtor, Post-Confirmation Debtor

Representative, counsel to the Recovery Trust and Post-Confirmation Debtor, and counsel to the Class Plaintiffs.

66.     Finally, section 5.5(z) of the Recovery Trust Agreement authorizes the Recovery Trustee to "[s]eek any relief from or resolution of any disputes concerning the Plan, the Recovery Trust, or the Recovery Trust Assets by the Bankruptcy Court," provided that he obtains any necessary approvals of the Recovery Trust Committee pursuant section 5.6(a), which he has done here.

67.     Thus, the Recovery Trust requests that this Court approve the release and exculpation provisions for the Released Parties to the fullest extent allowed under the Plan, Recovery Trust Agreement, and applicable law.

68.     **Recovery Trust Authority**.  Pursuant to Section 1.1 of the Plan, the Post-Confirmation Debtor Functions include the "settlement and/or any disposition of Settlement Recoveries" (*i.e.*, the Debtor's share of the recoveries under the Amended Settlement Agreement). The Settlement Recoveries are an asset of the Recovery Trust.  *Id*. ("Recovery Trust Assets"). Under such circumstances, the Plan requires the Recovery Trustee and Post-Confirmation Debtor Representative to cooperate and coordinate their efforts.  *Id*. § 6.5. *See* RTA, § 4.4; By-Laws, § 5.3.  The Recovery Trust has coordinated with the Post-Confirmation Debtor, which is a party to the Proposed Settlement with the Class Plaintiffs and cooperated in the filing of the proposed stipulation and order in the EDNY.  *See* Ryniker Declaration, ¶ 19.

69.     The Recovery Trust is also authorized under the Plan to settle the CLM Fee Claim, which is a general unsecured claim.  *See id. § 1.1* ("Recovery Trust Functions"); Memorandum Order dated July 21, 2020 [D.I. 4469], p. 10. (CLM Fee Claim is a general unsecured claim).

70.     As noted above, the Recovery Trust Committee has unanimously authorized the Recovery Trust to enter into the Proposed Settlements pursuant to Section 5.6(a) of the Recovery Trust Agreement.  *See* Ryniker Declaration, ¶ 43.

71.     Further, the Recovery Trust has authority under the Recovery Trust Agreement to enter into the Proposed Settlements because, pursuant to Section 11.1 of the Recovery Trust Agreement, the Recovery Trust Agreement has not terminated and the Recovery Trust continues to operate under applicable law.

72.     Part 1 of Section 11.1 of the Recovery Trust Agreement provides that the Recovery Trust is to be dissolved and of no further force and effect, and the Recovery Trust Agreement is to terminate, upon the earlier to occur of (i) final distributions having been made pursuant to the Recovery Trust Agreement, and (ii) the entry of a final order of this Court terminating and dissolving the Recovery Trust.  *See* RTA, § 11.1.  In the alternative, Part 3 allows the Recovery Trustee to elect to terminate the Recovery Trust, at which point the Recovery Trustee will be absolved of his duties to the Recovery Trust.  *Id.*  Because none of these events have occurred, the Recovery Trust has not dissolved.  Rather, the Recovery Trust is in wind-down mode, tasked with resolving the few remaining issues before final distributions are to be made, at which point, the Recovery Trust will be dissolved.

73.     Although the Recovery Trust has, in an abundance of caution, requested an extension of the *term* of the Recovery Trust,[20] the resolution of that request does not bear upon the

---

[20] *Motion to Extend Trust* [D.I. 4527].  Granting the Motion to Extend Trust would confirm the continued income tax treatment of the Recovery Trust as a grantor trust, consistent with PLR 2020044002 (IRS agreed liquidating trust should continue to be treated as a grantor trust for federal income tax purposes where bankruptcy court allowed motion to extend term *nunc pro tunc*).  The Recovery Trust is not obligated to seek a private letter ruling from the IRS and does not currently plan to do so, but it desires to be in the same factual situation as the liquidating trust that received the favorable ruling in PLR 2020044002.

extent of the Recovery Trustee's authority to date; his authority to enter into the Proposed Settlements; or his authority to implement the Dissolution Protocol set forth below.

74.     Nonetheless, in light of the statements made in Mr. Jacks' Objection to the Motion to Extend Trust, his stricken Motion to Re-Establish, and otherwise, it is critical to all Settlement Parties that the Proposed Settlements achieve certainty and finality, which necessitates a finding from this Court that the Recovery Trust remains authorized to enter the Proposed Settlements. For the reasons stated herein, the Recovery Trust requests that the Court make such a finding in approving the Proposed Settlements.

**B.     The Dissolution Protocol Will Bring Finality to the Bankruptcy Case.**

75.     Subject to the Court's final approval of the Proposed Settlements, Bar Order, and other findings and rulings requested herein, the Recovery Trust has completed the claims reconciliation process and is prepared to make a final distribution to the holders of Class 3 (*i.e.*, CLM) and Class 6 Interests. *See* Ryniker Declaration, ¶¶ 51-54. Accordingly, the Recovery Trust, in coordination with the Post-Confirmation Debtor, has taken steps to implement the Dissolution Protocol in accordance with the Plan, Disclosure Statement, Recovery Trust Agreement, and By-Laws, and will complete such implementation upon the entry of the Orders requested herein, and the occurrence of (i) the expiration of time to appeal such Orders, provided that such Orders are not stayed and no appeals have been taken from such Orders, or (ii) resolution of any appeals from such Orders, provided that such Orders are not reversed, stayed, modified or amended on appeal (the satisfaction of conditions (i) or (ii) rendering any order described herein a "Final Order"). The Dissolution Protocol entails the following:

     a.   Issuance of Final Distributions;

     b.   Deemed Satisfaction of Claims and Interests;

c.   Payment of Quarterly Fees to Office of United States Trustee ("UST Fees");

d.   Termination of Certain Expenses;

e.   Payment of Accrued Wind-Down Expenses;

f.   Funding of Prepaid Indemnification Reserves;

g.   Donation of De Minimis Residue, if any, to Charity;

h.   Dissolution of Post-Confirmation Debtor;

i.   Dissolution of Recovery Trust; and

j.   Filing of Final Tax Returns

76.     Courts have entered similar omnibus procedural relief in connection with case-closing motions. *See, e.g., In re Washington Mutual Inc.*, No. 08-12229 (MFW) (Bankr. D. Del. Dec. 20, 2019) [D.I. 12707] (Final Decree and Order granting omnibus relief sought by liquidating trust, including trust dissolution protocol, survival of trust indemnity provisions, and forfeiture of unclaimed distributions); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, No. 03-13711 (KJC) (Bankr. D. Del. Mar. 25, 2009) [D.I. 3896] (Order Granting Motion of the Liquidating Trustee of the Omega Liquidating Trust for an Order Approving (I) Final Distribution and Maximum Creditor Reserve, (II) Entry of Final Decree and Procedures in Connection Therewith, and (III) Related Relief).

77.     **Final Distributions**. Pursuant to sections 3.1, 3.5, 5.2, 5.5, and 7.1 of the Recovery Trust Agreement, the Recovery Trust is authorized and empowered to make distributions to the Beneficiaries of the Recovery Trust in accordance with the terms of the Plan, Confirmation Order, and Recovery Trust Agreement. The Beneficiaries of the Recovery Trust are: (i) holders of Allowed Class 3 Claims (general unsecured claims), set forth in **Exhibit 6** to the Ryniker

Declaration; and (ii) holders of Allowed 6 Interests (old common stock interests), set forth in **Exhibit 7** to the Ryniker Declaration.[21]

78.     Section 4.6 of the Plan provides that the issuance of final distributions to holders of allowed equity interests is subject to the satisfaction of allowed unsecured claims. This Court's approval of the Proposed Settlements, satisfaction of the CLM Fee Claim in accordance therewith, the EDNY's approval of the final allocation in respect of the Class Plaintiff Recovery Issues (granted on February 23, 2021), and the approval of the other relief requested in this Motion, will clear the remaining impediments to making final distributions.

79.     After making and receiving payments under the Proposed Settlements, payment of expenses, and release of surplus indemnification reserves in connection with entry of the Bar Order, the Recovery Trust projects that the disbursement agent, KCC, will hold approximately $5.3 million in distributable cash, which – together with allowance of the Unclaimed Distributions Motion – will allow for a final distribution as high as approximately 16-18 cents per share (the "Final Distribution"), increasing the total distributions to holders of Class 6 Interests to as high as approximately 35-36 cents per share. *See* Ryniker Declaration, ¶ 53.[22]  Accordingly, upon the entry of the order approving this Motion, and such order becoming a Final Order, the Recovery Trust will issue the Final Distribution as set forth herein.

80.     **Deemed Satisfaction of Claims and Interests**. Pursuant to sections 105 and 1142 of the Bankruptcy Code, the Recovery Trust seeks an order that, upon the issuance of the Final Distribution described in this Motion, the allowed claims and interests of all Beneficiaries of the

---

[21] The Recovery Trust Agreement also identifies the holders of any Allowed Class 4 Claims as Beneficiaries. The Court previously found that there are no holders of Allowed Class 4 Claims. *See* Confirmation Order, p. 11.

[22] The projected 35-36 cent per share total distribution is comprised of: (i) first interim distribution of 15 cents; (ii) second interim distribution of 3 cents; and (iii) Final Distribution of 18 cents, of which (a) 9 cents are dependent on entry of the Bar Order, and (b) 1-2 cents are dependent on allowance of the Unclaimed Distributions Motion.

Recovery Trust, as identified in **Exhibits 6 & 7** to the Ryniker Declaration, will be deemed paid or otherwise satisfied in full. In the event of a residue from any indemnification reserves, expense reserves, or retainers, such residue will be transferred to the distribution agent pursuant to the applicable professional undertaking, to be distributed to Class 6, to the extent practicable after the payment of any further expenses, or if impracticable, donated to charity. *See* RTA, §5.5(s); 5.12, 5.17, 5.18, 11.1, and 12.15.

81. **UST Reporting.** The Recovery Trust will pay all fees owed to the United States Trustee until a final decree is entered, in accordance with Section 12.5 of the Recovery Trust Agreement.

82. **Termination of Certain Expenses.** The Recovery Trust seeks to eliminate any ongoing expenses in furtherance of completing the wind-down of the Recovery Trust, Post-Confirmation Debtor, and Bankruptcy Case. These include the ongoing costs of the storage of records, and payment of Epiq Bankruptcy Solutions ("Epiq") as Noticing, Claims and Balloting Agent pursuant to the Court's Order authorizing Epiq's retention dated April 16, 2020 [D.I. 40]. Epiq has maintained the claims register and a case website, as well as provided noticing services, throughout the Bankruptcy Case. Upon the entry of the Final Orders approving the Proposed Settlements, the Recovery Trust will no longer be in need of such services. Nor will the Recovery Trust need to preserve the vast amount of material presently in storage. *See* Ryniker Declaration, ¶ 61. Accordingly, the Dissolution Protocol will include the following:

a. Destruction of Records. Pursuant to Section 6.9 of the Plan and Section 12.3(b) of the Recovery Trust Agreement, the Recovery Trust hereby provides notice that it and the Post-Confirmation Debtor intend to destroy all records that are no longer required to effectuate the terms of the Plan and Recovery Trust Agreement.

b. Disposal of Burdensome Materials. Pursuant to Section 3.4 of the Recovery Trust Agreement, the Post-Confirmation Debtor intend to abandon and dispose of any stock, materials or components in order to eliminate continuing storage costs.

c. <u>Disbandment of Oversight Committees</u>. Following approval of the Proposed Settlements by Final Orders and the issuance of the Final Distribution, the Recovery Trust Oversight Committee and Post-Confirmation Debtor Oversight Committees will be disbanded, as the purpose of the Recovery Trust will be fulfilled, the Post-Confirmation Debtor Functions will be completed, the interests of Beneficiaries will be satisfied and, therefore, the duties of the oversight committees will be complete. *See, e.g.*, RTA, §§ 3.1, 5.6; By-Laws, § 5.1.

d. <u>Termination of Epiq</u>. Upon the entry of a Final Order granting the Motion, the Recovery Trust will terminate the services of Epiq. The case website will be shut down and, in accordance with Local Rule 2002-1(f), Epiq will "(a) forward to the Clerk an electronic version of all imaged claims, (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register." Epiq will also "transport all original claims to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, Pennsylvania 19154 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims." *Id.*

83. **Wind-Down Expenses.** Pursuant to section 5.5(m) of the Recovery Trust Agreement, the Recovery Trust is authorized to pay all expenses and obligations of the Recovery Trust. Pursuant to Section 6.4(d) of the Plan and Sections 3.3, 3.7, and 5.5(f) of the Recovery Trust Agreement, the Recovery Trust is authorized to reserve sufficient funds to pay the Recovery Trust's expenses and obligations, including the payment of professional fees. Pursuant to section 5.5(cc) of the Recovery Trust Agreement, the Recovery Trust is authorized to take such "actions as shall be necessary to . . . wind down the affairs of the Recovery Trust and effect the closing of the Chapter 11 Cases . . . ." This includes the creation of wind-down reserves to close the Bankruptcy Case. *See* Recovery Trust Agreement, §5.5(s).

84. The Recovery Trust is establishing a reserve for the payment of the anticipated remaining expenses to wind down the affairs of the Recovery Trust and close the Bankruptcy Case. *See* Ryniker Declaration, ¶ 30(d).

85. In addition, pursuant to sections 4.1(a) (dissolution of Post-Confirmation Debtor) 4.4 (cooperation with Post-Confirmation Debtor), and 5.5(cc)*, supra*, of the Recovery Trust

Agreement, and section 6.3(c) (*Fees/Expenses of Post-Confirmation Debtor Representative*) of the Plan, the Recovery Trustee has worked with the Post-Confirmation Debtor Representative to identify the amounts needed to cover the anticipated wind-down expenses and fees of the Post-Confirmation Debtor, and a reserve is being established for such expenses and fees. *See* Ryniker Declaration, ¶¶ 30-32.

86.     **Prepaid Indemnification Reserves.**  Pursuant to section 5.12(a) of the Recovery Trust Agreement, "[t]he Recovery Trust shall indemnify the Recovery Trustee, the Trustee Professionals, the Recovery Trustee's agents and servants, and any members of the Recovery Trust Committee and hold them harmless from and against any and all liabilities, expenses, claims, damages and losses incurred by them as a direct result of actions taken omissions to act by them in such capacity or otherwise related to this Agreement or the Recovery Trust."[23]

87.     Further, the "Recovery Trust shall indemnify and hold harmless any Entity who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action. . . . The costs or expenses incurred by any Entity entitled to the benefit of the provisions of this Section 5.12 in defending any such action, suit or proceeding *may be paid by the Recovery Trust in advance of the institution or final disposition of such action*, suit or proceeding, if authorized by the Recovery Trustee, *subject to providing an undertaking to repay all such advanced amounts if it is subsequently determined that such entity is not entitled to indemnification* under this Section 5.12." RTA, § 5.12(a) (emphasis added).

88.     Similarly, Article 7 of the By-Laws provides for indemnification by the Post-Confirmation Debtor, to the fullest extent permitted by Delaware law, of the Post-Confirmation

---

[23] Pursuant to section 5.9 of the Recovery Trust Agreement, the Trustee Professionals include "any professionals, including accountants, financial advisors, legal advisors, brokers, consultants, custodians, investment advisors, asset services, auditors, and other agents, as the Recovery Trustee deems necessary . . . to carrying out his duties . . . ."

Debtor Representative, any members of the Post-Confirmation Debtor Oversight Committee, and professionals of the Post-Confirmation Debtor or Post-Confirmation Debtor Representative who have been threatened or made a party to a proceeding by reason of its services in connection with such role. *See* By-Laws, §§ 7.1-7.2. Article 7 also permits certain prepayments in connection with threatened litigation, subject to the requirement that parties receiving such a prepayment agree to return any funds later determined to be unnecessary or unqualified for indemnification purposes. *See* By-Laws, §§ 7.3 ("Expenses Payable in Advance").

89. Here, the Recovery Trust is funding reserves for anticipated indemnification expenses of the Recovery Trustee and the Recovery Trust's counsel and oversight committee members, to facilitate the dissolution of the Recovery Trust and closure of the Bankruptcy Case. *See* Ryniker Declaration, ¶ 32. In addition, the Recovery Trust understands that the Post-Confirmation Debtor is funding similar reserves pursuant to the By-Laws. *Id.*. Although these professionals are not currently engaged in pending litigation, Mr. Jacks threatened such litigation, consistent with his prior statement about manipulating the judicial process as a *pro se* litigant:

> I intentionally drug out a civil case 5 years just to beat down a lawyer on the other side. . . . [I]t didn't cost me anything.

**Exhibit E**.[24]

90. The Recovery Trust believes Mr. Jacks' threats and allegations are meritless but, in the absence of the Bar Order requested herein, there is a need for funds to pay litigation expenses and fulfill indemnification obligations pursuant to Section 5.12(a) of the Recovery Trust Agreement and Article 7 of the By-Laws, as applicable. However, in the event the Court enters the Bar Order, the total required indemnification reserves and professional retainers for all parties

---

[24] Mr. Jacks made this statement in a 2015 email exchange in which he sought to align with convicted felon David Brooks and his family members to file a competing Plan. *See also* ¶ 58 & FN 18, *supra*.

will be reduced by approximately $2.98 million, resulting in a corresponding increase of approximately 9 cents to equity distributions. *See* Ryniker Declaration, ¶¶ 52-53. As set forth herein, the Recovery Trustee shall remain Recovery Trustee with respect to such reserves and retainers. *See* ¶ 80, *supra*.

91. The professionals holding indemnification reserves and retainers must transmit any unapplied indemnification funds or retainers to the appointed distribution agent. *Id., ¶* 59. The distribution agent will then disburse the residue (minus any costs) to holders of Class 6 Trust Interests *pro rata*, provided, however, that in the event the cost of making such disbursements is likely to exceed the value of the residue to be disbursed, the distribution agent will be permitted to donate the residue to a charity, consistent with section 5.5(s) of the Recovery Trust Agreement.

92. The Recovery Trust retained Kurtzman Carson Consultants ("KCC") to provide disbursement services in the event there is any indemnification, retainer or expense residue. *See* Ryniker Declaration, ¶ 60.

93. **Authority to Donate Remaining Assets to Charity**. Pursuant to Section 7.13 of the Recovery Trust Agreement, in the event the Recovery Trust "has assets remaining that do not exceed $25,000 in value, the Recovery Trustee, in his discretion can donate such assets to a charitable organization of his choice." In the event that after the payment of the Final Distribution, indemnification payments, and the Recovery Trust's expenses, the Recovery Trust is left with cash of $25,000 or less, the Recovery Trustee shall donate such funds to charity, *e.g.*, Her Justice; AIRA Grant Newton Educational Endowment Fund.

94. **Dissolution of the Post-Confirmation Debtor**. Pursuant to section 1.1 (*"Post Confirmation Debtor Functions"*) of the Plan, the Post-Confirmation Debtor Representative is or may be ("subject to the Post-Confirmation Debtor Oversight Committee") authorized to take such

actions as are necessary to terminate the Post-Confirmation Debtor's corporate existence. Accordingly, the Post-Confirmation Debtor will be dissolved, and the Post-Confirmation Debtor Oversight Committee will be disbanded, following the (a) approval by this Court of the Proposed Settlements, and the orders approving the Proposed Settlements becoming final and non-appealable; (b) the EDNY's approval of the final allocation in respect of the Class Plaintiff Recovery Issues, and the order becoming final and non-appealable; (c) the receipt by the Recovery Trust of all consideration to be paid by the Class Plaintiffs pursuant to the Class Plaintiff Settlement; and (d) receipt by the Recovery Trust of the $1,250,000 residue of the CLM Fee Claim reserve to be released by the Post-Confirmation Debtor pursuant to the CLM Settlement. *See* Ryniker Declaration, ¶ 62.

95. **Dissolution of the Recovery Trust**. Section 11.1 of the Recovery Trust Agreement provides that the Recovery Trust will dissolve and terminate:

> upon the earlier to occur of (i) the final Distribution of all monies and other Recovery Trust Assets in accordance with the terms of this Agreement, the Plan and Confirmation Order and (ii) entry of a final Order of the Bankruptcy Court terminating and dissolving the Recovery Trust as provided under the Plan.

Consistent with this provision, the Recovery Trust requests that the Court enter an Order *dissolving* the Recovery Trust and *terminating* the Recovery Trust Agreement, except as to Sections 5.12, 5.18, and related provisions, as of the date that the Final Distributions is made. All other provisions of the Recovery Trust Agreement unrelated to the administration of indemnification reserves, professional fees and expenses, and the limited administrative obligations surviving dissolution of the Recovery Trust (*e.g.*, the filing of the final tax return) will be deemed terminated and of no further force and effect. The Recovery Trustee will remain in place for the limited purpose of such surviving functions and, as the Recovery Trust Committee will be disbanded and Article VIII of the Recovery Trust Agreement will be terminated, the Recovery Trust requests entry of an order

that – consistent with Article VIII – the Recovery Trustee may only be removed by order of the Bankruptcy Court upon (i) a showing by clear and convincing evidence of willful misconduct, gross negligence, misappropriation, embezzlement, or inability to carry out his duties due to death, illness, or disability; or (ii) his resignation, subject to a final accounting of any accrued unpaid fees, expenses, or other disbursements, notwithstanding anything to the contrary in the Plan, Confirmation Order, or Recovery Trust Agreement.

96.     **Filing of Final Tax Returns**.  Pursuant to section 5.5(w) of the Recovery Trust Agreement, the Recovery Trust is authorized to "[f]ile, if necessary, any and all tax and information returns with respect to the Recovery Trust treating the Recovery Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations and pay taxes properly payable by the Recovery Trust, if any, and make distributions to Beneficiaries net of any such taxes."  Pursuant to section 1.1 (*"Post Confirmation Debtor Functions"*) of the Plan, the Post-Confirmation Debtor Representative is authorized to file tax returns for the Post-Confirmation Debtor.  The final tax return of the Recovery Trust is due (unless extended) 90 days after the Recovery Trust is dissolved, the final tax return for the Post-Confirmation Debtor is due on the 15th day of the fourth month following its dissolution (the period can be extended with a timely filed extension).  *See* Ryniker Declaration, ¶ 67.  The Recovery Trust anticipates that it will likely be necessary for the Recovery Trust and Post-Confirmation Debtor to file tax returns for tax years 2020 and 2021.  The anticipated costs associated with such filings are being reserved through the funding of retainers.  *Id*., ¶ 68.

### C.     The Court Should Enter the Final Decree.

97.     Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  11 U.S.C. §

350(a). Bankruptcy Rule 3022 further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022. Bankruptcy courts, including courts in the Third Circuit, will enter a final decree once a case has been fully administered and substantially consummated. *Walnut Assocs. v. Saidel*, 164 B.R. 487, 493 (E.D. Pa. 1994). The "substantial consummation" standard for entering a final decree has the same meaning ascribed to the term in section 1101(2) of the Bankruptcy Code. *Id.*

98.     Here, as of "Effective Date, the Plan [was] deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code." Confirmation Order, ¶ 40.

99.     Pursuant to Section 5.5(r) of the Recovery Trust Agreement, "[w]hen all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all of the Recovery Trust Assets have been liquidated and distributed in accordance with the Plan and this Agreement," the Recovery Trust may "seek authority, in consultation with the Post-Confirmation Debtor Representative, from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules."

100.    The Recovery Trust has consulted with the Post-Confirmation Debtor and, with the consent of the Recovery Trust Committee, seeks the entry of the final decree closing the Bankruptcy Case. *See* Ryniker Declaration, ¶ 69.

101.    "Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed." *In re Federated Dep't Stores, Inc.*, 43 Fed. Appx. 820 (6th Cir. 2002) (quoting Fed. R. Bankr. P. 3022 advisory committee's note (1991)). The Advisory Committee Notes to Bankruptcy Rule 3022 state that

courts should consider the following factors in determining whether the estate has been fully administered:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

*Id*. Satisfaction of all factors is not required. Nonetheless, here, each factor has either been satisfied or will be satisfied upon the allowance of this Motion, including:

> i. The Confirmation Order has become final.
>
> ii. The transactions contemplated by the Plan have all occurred and the only remaining property to be deposited or transferred under the Plan – the balance held by the Class Plaintiffs – will be transferred upon the allowance of this Motion.
>
> iii. The Post-Confirmation Debtor and Recovery Trust have assumed responsibility for all property addressed by the Plan.
>
> iv. Payments under the Plan have not only commenced, they are nearly completed. At present, all Allowed Class 3 Claims have been paid except for the CLM Fee Claim, which will be paid following the allowance of this Motion. In addition, the holders of Allowed Class 6 Interests have been paid, on an interim basis, nearly all of their distributions on account of such interests, with the remainder to be paid on a final basis following the entry of a Final Order allowing of this Motion. *See* Ryniker Declaration, ¶¶ 22, 27, 53-54.

102.    Entry of the final decree closing the Bankruptcy Case is in the best interests because it will reduce and minimize the remaining costs of administration, including continued incurrence of quarterly UST Fees and other expenses, including the cost of storing certain documents, preparing monthly operating reports, maintaining a case website, and monitoring the docket.[25] *See In re Avaya Inc.*, No. 19-cv-5987 (AJN), 2020 WL 5051580, *2-3 (S.D.N.Y. Apr. 30, 2020) (upholding entry of final decree where Advisory Committee factors were applied).

---

[25] However, the Bankruptcy Case may be opened, if necessary, "to administer assets, to accord relief to the debtor, or

103.　All accrued expenses arising from the administration of the Debtor's estate and the Chapter 11 Cases, including UST Fees, have been paid or will be paid as and when such expenses come due.　The Recovery Trust will pay the UST Fees for the first quarter of 2021 within thirty (30) days of the Court's entry of the final decree.　A verified final report, as required by Local Rule 3022-1(c), will be submitted within 14 days of the hearing on this Motion.

104.　To the extent there are further necessary expenses associated with the wind-down, the Recovery Trust and Post-Confirmation have reserved for the payment of such expenses in accordance with non-bankruptcy law and without the need for Court approval.　*See* RTA, §3.7; Plan, § 6.3(c).　Such amounts will either be (a) paid prior to the dissolution of the Recovery Trust or Post-Confirmation Debtor, as applicable; (b) paid pursuant to the Plan and/or surviving provisions of the Recovery Trust Agreement (RTA, §§ 5.12 & 5.18); or (c) to the extent such reserves are not exhausted, any remaining funds shall be transferred to the disbursement agent to be disbursed among the holders of Class 6 Interests, applied to remaining expenses as directed by the Recovery Trustee, or donated to charity without the need for Court oversight.　*See* Plan, § 6.3(a) (Post-Confirmation Debtors' remaining cash to be transferred to Recovery Trust); RTA, § 5.5(cc) & (m) (Recovery Trustee may arrange for payment of distributions and expenses "without further Bankruptcy Court approval").

105.　In view of the foregoing, the Recovery Trust respectfully requests entry of the final decree, substantially in the form attached hereto **Exhibit C** closing the Bankruptcy Case.

---

for other cause."　11 U.S.C. § 350(b).

## NOTICE

106.    This Motion has been served by U.S. mail upon: (a) the Debtor; (b) the Office of the United States Trustee; (c) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (d) counsel for CLM; (e) counsel for the Class Plaintiffs; (f) all Registered Holders of Class 6 Trust Interests who filed Proofs of Interest; and (g) all beneficial holders of Class 6 Trust Interests who filed Proofs of Interest.

107.    In addition, notice of this Motion has been provided by U.S. Mail to (h) all other holders of Class 3 Trust Interests; (i) all other known creditors of the Debtor; and (j) all other known former shareholders of the Debtor.

## CONCLUSION

For the reasons set forth above, the Recovery Trust requests that the Court (I) enter an Order, substantially in the form attached hereto as **Exhibit B**, approving the Class Plaintiff Settlement; (II) enter an Order, substantially in the form attached hereto as **Exhibit C**, (a) allowing this Motion, (b) approving the CLM Settlement, (c) barring litigation related to the CLM Fee Claim or Class Plaintiff Recovery Issues, or which seeks relief contrary to any order of this Court in the Bankruptcy Case, (d) approving the Dissolution Protocol, and (e) entering the final decree closing the Bankruptcy Case; (III) and granting such other and further relief as the Court deems just, equitable, and proper.

Respectfully Submitted,

Dated: February 24, 2021
       Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*           
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com
      leonhardt@teamrosner.com
      gibson@teamrosner.com

and

**ARENT FOX LLP**
George P. Angelich (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac vice*)
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: george.angelich@arentfox.com
      beth.brownstein@arentfox.com

Jackson D. Toof (admitted *pro hac vice*)
1717 K Street, N.W.
Washington, DC 20006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
Email: jackson.toof@arentfox.com

Justin A. Kesselman (admitted *pro hac vice*)
800 Boylston Street
Prudential Tower, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6102
Facsimile: (617) 722-4993
Email: justin.kesselman@arentfox.com

*Counsel to the Recovery Trust*