# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SS BODY ARMOR I, INC. *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11255 (CSS)<br><br>(Jointly Administered)<br><br>**Related to Docket No. 4550** |

### MOTION OF POST-CONFIRMATION DEBTOR AND RECOVERY TRUST FOR AN ORDER STRIKING JON JACKS' MOTION FOR ORDER REMOVING ESTATE FIDUCIARIES FOR CAUSE, REQUIRING DISGORGEMENT OF FEES AND RELATED RELIEF

T. Scott Avila, in his capacity as Post-Confirmation Debtor Representative of SS Body Armor I, Inc. (the "Debtor" or "Post-Confirmation Debtor") and Brian K. Ryniker, in his capacity as Recovery Trustee of the Recovery Trust of SS Body Armor I, Inc. (the "Recovery Trust," and together with the Post-Confirmation Debtor, the "Estate Fiduciaries") appointed pursuant to the *Second Amended Joint Chapter 11 Plan of Liquidation* [D.I. 3261] (the "Plan"), by and through their undersigned counsel, hereby move this Court for an Order, substantially in the form attached hereto as **Exhibit A**, striking Jon Jacks' *Motion for an Order Removing Estate Fiduciaries for Cause, Requiring Disgorgement of Fees and Related Relief* (the "Third Control Motion") [D.I. 4550] (the "Motion to Strike"). In support of the Motion to Strike, the Estate Fiduciaries state as follows:

---

[1] The pre-confirmation debtors and the last four digits of each debtor's federal tax identification number were: SS Body Armor I, Inc. (9361); SS Body Armor II, Inc. (4044); SS Body Armor III, Inc. (9051); and PBSS, LLC (8203). All correspondence and pleadings must be sent to SS Body Armor I, Inc., c/o Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

**Preliminary Statement**

1. Here we go again. Allegations of a "secret" criminal conspiracy based on information that has been readily, thoroughly, and repeatedly disclosed in open court and in public filings. That is the incredible yet unsurprising (given its source) foundation of Mr. Jacks' Third Control Motion. Fueled by an unfortunate cocktail of mistruth and misunderstanding of the law, Mr. Jacks levels accusations of a *criminal conspiracy* among estate fiduciaries and professionals who he was willing and eager to mediate with just weeks ago.[2] The irony of these baseless and inflammatory accusations is that they focus on the July 15, 2019 hearing on the Equity Group's Allocation Motion (defined below), at which the Court made the following prescient observations:

> We're in a bankruptcy case with too much money and the knives really come out when there's too much money in bankruptcy court. . . . It's kind of interesting that a case that started with unmitigated greed is going to collapse because of unmitigated greed.

Hr'g Tr. (Jul. 15, 2019) [D.I. 4312], at 15-16.

2. The knives have indeed come out. Mr. Jacks has for years sought to drag out, derail, and seize control of this case for personal advantage by advancing meritless positions, playing fast-and-loose with the Court's rules, and directing *ad hominen* attacks against the Post-Confirmation Debtor Representative, Recovery Trustee, oversight committee members, and estate professionals. Having failed to cause the collapse of the bankruptcy case through these

---

[2] Carter Ledyard & Milburn ("CLM") and the Class Plaintiffs also participated in the mediation, over which the Honorable Kevin Gross (Ret.) presided. As a result of the mediation, the Estate Fiduciaries reached agreements with both CLM and the Class Plaintiffs. The agreement with the Class Plaintiffs was approved by the EDNY on February 23, 2021 [EDNY ECF No. 494]. On February 24, 2021, the Recovery Trust filed the *Motion of Recovery Trust for Orders (I) Approving Settlements with Class Plaintiffs and Carter Ledyard & Milburn LLP; (II) Authorizing Dissolution Protocol; (III) Entering Final Decree; and (IV) Granting Related Relief* [D.I. 4547] (the "Case Closing Motion"), by which the Recovery Trustee (with the full support of the Post-Confirmation Debtor) seeks, among other things, this Court's approval of the settlements with both the Class Plaintiffs and CLM.

efforts, and on the heels of a mediation which did not settle his contentions, Mr. Jacks now seeks to initiate a *criminal prosecution* that has no basis in law or fact.

3. The Third Control Motion, among other things, uses the term "fraud" at least *30 times*; references the affirmative concealment of estate assets through supposed lies to this Court at least *12 times*; accuses fiduciaries and professionals of engaging in a criminal conspiracy at least *3 times*; and requests these fiduciaries and professionals be referred to the Office of the United States Attorney for criminal investigation. And yet, as explained below, the very records upon which Mr. Jacks relies demonstrate the falsity of his accusations.

4. It is Mr. Jacks who is misleading the Court, beneficiaries, and the public who may happen upon his libelous pleading; prejudicing the administration and wind-up of the Recovery Trust; and trying to tarnish the reputations of fiduciaries and professionals, including a Four-Star General (Ret.) in the United States Army, that have worked for more than a decade to achieve an outstanding result – payment in full (with interest) to allowed unsecured creditors, and distributions to equity – in this very challenging case.[3]

5. The Third Control Motion is Mr. Jacks' last-ditch effort to gain control over and weaponize the Recovery Trust to "go after" the Estate Fiduciaries before this case is closed. Third Control Motion, p. 24. However, the Bankruptcy Court is a forum for facilitating the orderly reorganization or liquidation of debtors. It should not become a soapbox for dangerous and defamatory conspiracy theories designed to try to embarrass, humiliate, and intimidate those from whom Mr. Jacks seeks to improperly wrest control or extract undue payment.

---

[3] The Recovery Trust Committee is comprised of (i) General Larry Ellis (Ret.), a former officer of the Debtors who is a creditor and holder of Class 6 Interests; (ii) Sanjay Nayar, the Equity Committee's designee under the Plan; and (iii) Rick Rosenbloom, the former independent board observer appointed early in this case as part of a consensual resolution to the Creditors' Committee's motion for a trustee. Mr. Rosenbloom also sits on the Post-Confirmation Debtor Oversight Committee with the Recovery Trustee and Equity Committee designee Jack Thurmon.

DOCS_LA:336343.1

6. The entirety of the Third Control Motion is infected by demonstrably false allegations and should be purged from the Court's docket. Further, the Estate Fiduciaries request a finding that Mr. Jacks filed the Third Control Motion in bad faith and for vexatious purposes. In the event the Court makes such a finding, the Estate Fiduciaries request leave to file a separate application for an award of attorneys' fees and expenses pursuant to the Court's inherent power to sanction Mr. Jacks for his repeated and escalating abuse of the judicial process.

**Relevant Background**

7. In early 2015, while back-channeling with the Brooks family to formulate a competing plan, Mr. Jacks boasted about his savvy for manipulating the judicial process as a *pro se* litigant:

> I intentionally drug out a civil case 5 years just to beat down a lawyer on the other side. . . . [I]t didn't cost me anything.

*See* Emails from Jon Jacks, attached hereto as **Exhibit B**.

8. Indeed, ever since, Mr. Jacks has showcased his willingness to try to "beat down" the lawyers and other professionals in this case with unfounded accusations and conspiracy theories aimed at furthering his own agenda. In 2015, Mr. Jacks filed (and later withdrew) his *Objections to Debtor's FRBP 9019 Motion for Settlement with Class Plaintiffs, Plaintiff's Counsel and Derivative Counsel Re: DKT 2865* [D.I. 2938], in which he (i) accused the Debtors of attempting "to dupe this honorable court" and (ii) alleged that "Debtor's counsel, Class counsel, and Class bankruptcy counsel have apparently *conspired* together to fund the payment of their fees . . . ." *Id*. at 2-3 (emphasis added). The Court approved the settlement, which became a key component of the confirmed Plan.

9. In February 2016, about three months after this Court confirmed the Plan, Mr. Jacks filed an *Objection to Final Application for Compensation and Reinmbursement [sic] of*

4

*Expenses of Pulchalski [sic] Stang Zeihl & Jones LLP, as Counsel for the Debtors and Debtors in Possession* [D.I. 3806] (the "PSZJ Fee Objection"). In the PSZJ Fee Objection, Mr. Jacks alleged: "Apparently PSZJ, Avila, and Arent Fox *misrepresented* the estimated total amount of administrative fees at confirmation by possibly 100% . . . ." *Id*. at ¶ 3 (emphasis added). The PSZJ Fee Objection repeatedly accused these professionals of misrepresentations up to and including the commission of fraud. *Id*. at ¶¶ 8-9, 14.

10. In his subsequent *Response* in support of the PSZJ Fee Objection filed June 24, 2016 [D.I. 3887], Mr. Jacks reverted to his thematic conspiracy allegations, stating: "PSZJ's diversionary tactics do not take away from the fact that they *conspired* with the majority of the professionals in this case to defer approximately $4 million in fee overages . . . ." *Id*. at ¶ 1 (emphasis added). This Court overruled the PSZJ Fee Objection and allowed the Debtors' professionals' request for compensation. *See Order Granting Final Application for Compensation* dated Sept. 11, 2018 [D.I. 4199]. At the hearing on the PSZJ Fee Objection, the Court specifically addressed Mr. Jacks' allegations regarding fee estimates:

> I understand and understood at the time [*i.e.*, plan confirmation] it was based on estimates. …
>
> … I am not overly concerned about the fact that administrative expenses are coming in at a higher number.
>
> … I don't find that in any way to be untoward. I don't find it to be problematic. I don't think there was a secret deal done here to the detriment of the equity or the creditors in this case.

06/28/16 Hrg. Tr. [D.I. 3890] at 15:9-10; 16:16-18; 17:1-4. And with respect to Mr. Jacks' criticisms of the Debtors' professionals' request for compensation, the Court stated: "To say that Debtors' counsel hasn't provided any value to get from a case that had the problems this case had six years ago to a case now where equity may be in the money, I think, is sort of ridiculous on its face." *Id.* at 17:13-17.

5

11. Mr. Jacks has, at various intervals, been represented by counsel and, in such instances, the tenor of his pleadings has been markedly different. For example, on July 2, 2019, Potter Anderson & Corroon ("Potter Anderson") filed, on behalf of the so-called "Equity Group" (of which Mr. Jacks was a member), the *Motion to Enforce the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and Official Committee of Unsecured Creditors Regarding Allocation of Remission Proceeds Among the Debtors and Class Plaintiffs* [D.I. 4285] ("Allocation Motion"). Through the Allocation Motion, the Equity Group sought an order from this Court requiring the Debtors to petition the United States District Court for the Eastern District of New York (the "EDNY") to, among other things, establish an Additional Allocation Procedure under section 3(f) of the Settlement Agreement. Although the Debtor, the Recovery Trust, and the Class Plaintiffs all disagreed with the relief sought in the Allocation Motion,[4] *see* D.I. 4293, 4294, and 4297, respectively, the substance of the Equity Group's briefing bore no trace of the venom characteristic of Mr. Jacks' historical filings.[5]

12. Nearly one year later, on April 23, 2020, Potter Anderson filed, on behalf of the Equity Group, the *Motion to Enforce the Second Amended Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors Regarding Class 3 and Class 4 Satisfaction* [D.I. 4377] (the "First Control Motion"). In the First Control Motion, the Equity Group sought a determination that the circumstances requiring a change of control of the Recovery Trust had been triggered under the Plan. Although the Debtor and the Recovery Trust

---

[4] The Debtor noted that a further true-up may be required. *See Opposition of Post-Confirmation Debtor to Motion Regarding Allocation of Remission Proceeds Among the Debtor and Class Plaintiffs* [D.I. 4293] (the "Opposition to Allocation Motion"), at 9 ("As set forth above, the Class Plaintiffs have already made a true-up payment of $5.3 million to the Debtor. If a further true-up payment is required once the liquidation value of the Class Plaintiffs' stock share is determined, the Debtor will make a supplemental demand on the Class Plaintiffs.").

[5] In its Opinion dated April 15, 2020 [D.I. 4374] (the "April 15 Opinion"), the Court denied the Equity Group's "request relating to DOJ's allocation of its remission award for lack of jurisdiction[,] [and] require[d] the parties to seek approval by the EDNY District Court of the amounts to be distributed under the Bankruptcy Settlement." *Id*. at 3.

disagreed with (and successfully opposed) the relief sought in First Control Motion, *see* D.I. 4380, the substance of the Equity Group's briefing again bore no trace of the venom characteristic of Mr. Jacks' historical filings.[6]

13.     Nonetheless, Mr. Jacks continued to file *pro se* pleadings featuring his signature invective detached from evidentiary constraints.  For example, in his *Objection of Jon Jacks to Recovery Trust's Motion for an Order Authorizing Holdback from Interim Distributions to Interest Holders* dated June 15, 2020 [D.I. 4430] (the "Interim Distribution Objection"), in which he disclosed FRE 408 settlement communications and simultaneously attempted to obstruct interim distributions to holders of Class 6 Trust Interests, Mr. Jacks (i) accused the "Estate Fiduciaries [of] fabricat[ing] a fact issue"; (ii) suggested that they had engaged in conduct that was not "legal"; (iii) revealed confidential settlement communications; and (iv) alleged that the "Estate Fiduciaries have a history of *misappropriating Trust Assets*."  *Id*. at pp. 1-3 & n.5 (emphasis added).

14.     Instead of relying on his counsel Potter Anderson, Mr. Jacks utilized a different, non-Delaware licensed attorney, John Malone (also a member of the Equity Group), to file the Interim Distribution Objection *pro se*, in violation of restrictions on the practice of law before this Court.  Mr. Malone has been filing pleadings on behalf of members of the Revised Equity Group[7] since 2011; in fact, the docket is populated with 23 filings.[8]

---

[6]  In its Memorandum Order dated July 21, 2020 [D.I. 4469], the Court denied the First Control Motion.

[7]  The Revised Equity Group was constituted by Jon Jacks, Richard Jacks, James Jacks, One-Up Investments, LLC (controlled by Jon Jacks), Rodney McFadden, Jeff Dardarian, and John Malone.  The Revised Equity Group was reformulated from its prior iteration, the "Equity Group," to participate in mediation with the Estate Fiduciaries, with Richard and James Jacks replacing prior members Chong Sin, Daniel Khaykis, and Mohawk Capital, LLC.

[8] Mr. Malone made the following ***11 filings*** on behalf of Jon Jacks: *Response*, *supra* [D.I. 4396]; *Interim Distribution Objection, supra* [D.I. 4430]; *Notice of Withdrawal of D.I. 4430* [D.I. 4432]; *Withdrawal, supra* [D.I. 4455]; *Notice of Appeal of Jon Jacks* [D.I. 4477]; *Appellate Designation of Items for Inclusion in the Record and Statement of Issues on Appeal* [D.I. 4484]; *Second Control Motion, infra* [D.I. 4492]; *Notice of Hearing* [D.I. 4493]; *Jon Jacks' Reply* [D.I. 4499]; *Jon Jacks' Limited Objection to Stipulation and Order Resolving Claims of D. David*

15.  Mr. Jacks' pleadings took on an even more extreme bent after the Recovery Trust overcame the Interim Distribution Objection and successfully unraveled Mr. Jacks' apparent attempt to obtain double distributions through Proofs of Interest filed separately by Mr. Jacks and his broker.  When Mr. Jacks refused to withdraw his individual Proof of Interest, the Recovery Trust filed an objection seeking to expunge it. *See Recovery Trust's First Omnibus Non-Substantive Objection to Proofs of Interest* dated May 11, 2020 [D.I. 4382].  Mr. Jacks (with the assistance of non-Delaware attorney Malone) filed a *Response* on May 26, 2020 [D.I. 4396], requesting that the objection be overruled.  Mr. Jacks (with the assistance of non-Delaware attorney Malone) ultimately withdrew his Response [D.I. 4455] and this Court entered an *Order* dated July 15, 2020 [D.I. 4461], expunging the duplicative Proofs of Interest filed by Mr. Jacks and his associates.

16.  On September 22, 2020, Mr. Jacks went on the offensive again—and again with the unauthorized assistance of non-Delaware attorney Malone—by filing his *Motion for an Order Re-Establishing a Recovery Trust, Removing Certain Estate Fiduciaries for Cause, Requiring Disgorgement of Fees and Related Relief* [D.I. 4492] (the "Second Control Motion"), purportedly as *pro se* litigant despite being represented by counsel at the time.  Freed from the ethical compass of counsel (other than Malone), Mr. Jacks accused the Recovery Trustee, Post-

---

Cohen [D.I. 4503]; *Jon Jacks' Objection to Recovery Trust's and Post-Confirmation Debtor's Motion for Status Conference* [D.I. 4512].

In addition, Mr. Malone made **12 filings** on behalf of Rodney McFadden: *Notice of Appearance* [D.I. 989], *Limited Objection of Rodney McFadden to the Debtors' Plan of Reorganization* [D.I. 1011 & 1016], *Shareholder Objection to the Debtors' Disclosure Statement* [D.I. 1051], *Limited Objection of Rodney McFadden to the Debtors' Motion for Entry of an Order (A) Approving the Adequacy of the Disclosure Statement; (B) Scheduling a Hearing to Confirm the Joint Chapter 11 Plan of Reorganization [and] Establishing a Deadline for Filing Objections to Confirmation of Plan* [D.I. 1067]; *Statement of Additional Objections to Confirmation of the Joint Chapter 11 Plan of Reorganization* [D.I. 1156]; *Joinder of Rodney McFadden to D. David Cohen's Objection to Debtor's Motion for Authority to De-Register as a Public Company* [D.I. 1179]; *Request for Relief Concerning the Tax Attributes of the Debtors' Estates* [D.I. 1340]; *Objection of Rodney McFadden to Disclosure Statement Describing Amended Joint Chapter 11 Plan of Reorganization* [D.I. 1340]; *Notice of Change of Address* [D.I. 2157]; *Response of Rodney McFadden to Recovery Trust's Second Omnibus Non-Substantive Objection to Proofs of Interest* [D.I. 4401]; *Withdrawal by Rodney McFadden of his Response* [D.I. 4456].

DOCS_LA:336343.1

Confirmation Debtor Representative, and their respective counsel of committing fraud. *Id*. at 6, 13. In his *Reply* in support of the Second Control Motion [D.I. 4499], Mr. Jacks went further, stating: "The Estate Fiduciaries would have this Court believe . . . they can lie, cheat, loot, commit fraud on the Court" and "do not have a problem lying to this Court." *Id*. at 2 & n.4. This Court struck the Second Control Motion due to Mr. Jacks filing *pro se* "without providing proper notice to the Court and to opposing parties," and Mr. Jacks' use of a non-Delaware attorney (Malone) in violation of the Local Rules. *See Order* dated November 2, 2020 [D.I. 4516]; Hr'g Tr. (Nov. 2, 2020) at 5:14-22.[9]

17.     The Third Control Motion is, in essence, a repackaged version of the stricken Second Control Motion, with more defamatory accusations against the Post-Confirmation Debtor Representative, Recovery Trustee, and their respective counsel and oversight committee members. The Third Control Motion is loaded with false allegations that these fiduciaries and professionals committed fraud (including bankruptcy fraud), lied to the Court, willfully concealed millions of dollars from beneficiaries, "gifted" tens of millions of dollars to the Class Plaintiffs, and engaged in a criminal conspiracy to mislead the Court. This is beyond the pale. As set forth below, Mr. Jacks has no basis for these reckless accusations, which are premised on conjecture and mischaracterizations of the proceedings before this Court.

## Jurisdiction and Venue

18.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue for this case and this Motion to Strike in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Local Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

---

[9] The Court also struck Mr. Jacks' *pro se* Limited Objection to Stipulation and Order Resolving Claims of D. David Cohen [D.I. 4503] for the same reasons. *See* Order dated Nov. 20, 2020 [D.I. 4529].

for the District of Delaware, the Estate Fiduciaries consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

19. The statutory predicates for the relief sought herein are sections 105(a) and 107(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9018.

## Relief Requested

20. The Estate Fiduciaries respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) striking the Third Control Motion from the docket or, in the alternative, striking those allegations that the Court deems are baseless and unsupported and founded on scandalous and inflammatory statements, (ii) finding that the Third Control motion was filed by Mr. Jacks in bad faith and for vexatious purposes, and (iii) granting the Estate Fiduciaries leave to file a separate application for an award of attorneys' fees and costs incurred in responding to the Third Control Motion pursuant to this Court's inherent power to sanction Mr. Jacks' bad faith and vexatious abuse of the judicial process.[10]

## Basis for Relief

### A. The Third Control Motion Is Defamatory, Scandalous, and Should Be Stricken.

21. Section 107(b)(2) of the Bankruptcy Code provides, "[o]n request of a party in interest, the bankruptcy court shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." The principle embodied in section 107(b)(2) is that a "person within the courts' jurisdiction should not be subjected to scandalous

---

[10] Given the harmful nature of Mr. Jacks' allegations, the Estate Fiduciaries seek to strike the Third Control Motion from the docket and only then pursue an award of monetary sanctions, as opposed to preparing a Rule 9011 motion and waiting 21 days after service to file it and correct the record. In light of Mr. Jacks' history of frivolous filings, the Estate Fiduciaries do not believe he would withdraw the Third Control Motion pursuant to Rule 9011.

or defamatory material submitted under the guise of a properly pleaded court document." *In re Phar-Mor, Inc.*, 191 B.R. 675, 678–79 (Bankr. N.D. Ohio 1995) (ordering withdrawal of defamatory and scandalous pleading). *See* Fed. R. Bankr. P. 9018 (authorizing court to protect entities against "scandalous or defamatory matter" contained in any paper filed with the court).

22.   Further, pursuant to Section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). This includes the issuance of orders striking pleadings containing scandalous or defamatory accusations. *See, e.g.*, *In re Johnson*, 236 B.R. 510, 522 (D.D.C. 1999) (section 105 codifies inherent power of bankruptcy court to strike pleadings that abuse the judicial process).

23.   The Court may strike any material "if it 'would cause a reasonable person to alter his opinion' of the affected party." *In re Moore*, No. 15-10174 VFP, 2015 WL 5674430, at *6 (Bankr. D.N.J. Sept. 25, 2015) (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 14 (1st Cir.2005)). "To meet that standard the party seeking protection is required to show either '(1) the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a bankruptcy filing for an improper end.'" *Id*. (quoting *In re Gitto Global*, 422 F.3d at 14).

24.   Courts have entered such orders when the filing at issue contains allegations of intentional fraud or criminal conduct against parties or their professionals, which directly and negatively bear upon the target's truthfulness and integrity. *See, e.g., In re Associated Cmty. Servs., Inc.*, 547 B.R. 236, 243 (Bankr. E.D. Mich. 2016) (striking and sealing pleadings containing allegations of intentional fraud and misrepresentations by law firm pursuant to section 107); *In re Moore*, 2015 WL 5674430, at *8–9 (suppressing allegations of "criminal fraud" and "co-conspirator"); *see also In re Johnson*, 236 B.R. at 522 (calling trustee a "liar" as part of an

11

"unprofessional diatribe in order to cast doubt on the credibility of the Trustee . . . [w]ith no evidence to back up such serious allegations" was "scandalous" and "highly insulting").

25.     Here, the Third Control Motion is dominated by accusations that are demonstrably untrue, interposed for an improper purpose, and would – if taken solely at face value – cause a reasonable person to alter his or her opinion of the Post-Confirmation Debtor Representative, Recovery Trustee, and their respective oversight committee members and professionals.  Mr. Jacks has no basis for alleging the existence of a criminal conspiracy, bankruptcy fraud, misrepresentations to the Court, or concealment of estate assets, which are, on their face, defamatory and scandalous charges.[11]

26.     For example, Mr. Jacks alleges that Debtor's counsel "lied to this Court" at the July 15, 2019 hearing about a $4.7 million shortfall from the Class Plaintiffs and, further, that all of the estate fiduciaries and professionals present at the hearing "all committed fraud" by not correcting the record.  Third Control Motion, p. 3.  **False**.  The issues surrounding the $4.7 million shortfall arising from the Terry Brooks payment (as well as the alleged reversionary interest in Class Plaintiff remission proceeds) were fully before the Bankruptcy Court[12] and discussed openly at the hearing, including Debtor's counsel's explanation of an ongoing dialogue with the Class Plaintiffs regarding the calculation.  *See, e.g.*, *id.* at 14, 32-33, 36.  At the hearing, Debtor's counsel stated:

> One point with respect to the Terry Brooks payment and the allocation with the class. We've already received an over $5 million true up payment from the class, *their [sic] [are] discussions about additional true up payments*. . . . The numbers the class was working at was *we had discussions with the class prior to the*

---

[11] In addition to the Bankruptcy Code standard of altering a reasonable person's opinion, these allegations meet the standard of a claim for defamation under Delaware law.  *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005) (elements of defamation include: (1) a defamatory statement; (2) concerning the plaintiff; (3) that was published; and (4) which a third party would understand to be defamatory).

[12] *See also supra*, at 5, fn. 3.

> ***hearing***. We provided as we did in connection with the settlement, the first iteration of the settlement agreement has hypothetical allocations so people could understand it. We also provided a hypothetical allocation to Equity Group members. They were doing their calculations off that hypothetical calculation. Will that be the final calculation? Not exactly. It's going to depend on the numbers. So I suggest that ***the issue about the true up continues to be an issue*** but it's not ripe for adjudication.

Hr'g Tr. (Jul. 15, 2019) [D.I. 4312], at 32:16-17; 33:3-13 (emphasis added).

27. Moreover, far from evidencing concealment, the Memorandum on which Mr. Jacks relies was specifically authorized to be shared among creditors and equity interest holders. *See* Third Control Motion, Exh. A, p. 14. The discussions that ensued among the Recovery Trustee, oversight committee members, and professionals regarding the appropriate allocation of funds and the course of action to recover any shortfall reflect the oversight process at work. *See* Third Control Motion, Exhs. B-C.

28. As Mr. Jacks acknowledges, the Debtor took action by demanding the Class Plaintiffs provide a further true-up for their portion of the Terry Brooks payment. Third Control Motion, p. 5 & Exh. G. Debtor's counsel disclosed the ongoing discussions with the Class Plaintiffs at the July 15, 2019 hearing. After discussions with counsel for the Class Plaintiffs stalled, counsel for the Recovery Trust sent a formal demand letter on October 9, 2019. Counsel for the Class Plaintiffs responded on October 18, 2019, and rejected the demand, although further discussions over this outstanding true-up ensued until this Court issued its ruling on April 15, 2020, directing the Debtor to obtain final approval of the allocation in the EDNY. *See supra* at 5, fn. 4. Acting upon direction from this Court, the Debtor and Recovery Trust responded by filing *The Debtor Parties' Motion to Enforce Settlement Agreement, Approve Final Allocation of Shared Proceeds, and Compel Turnover of Funds* on July 6, 2020 [EDNY ECF No. 478] (the "Turnover Motion"), which, among other things, demands that the Class Plaintiffs *turn over the*

*$4.7 million shortfall*. The Turnover Motion, as well as the Class Plaintiffs' opposition and other related papers, were publicly filed documents in the EDNY.[13] There was no "bankruptcy fraud" or "criminal conspiracy" to conceal anything, and Mr. Jacks has zero basis to make such inflammatory accusations.

29. Likewise, Mr. Jacks wildly alleges that the Post-Confirmation Debtor and Recovery Trustee "gifted the Debtor's $43 million reversionary asset to the Class Plaintiffs" and, in so doing, "thumbed their noses at this Court's April 15th Opinion and Order." Third Control Motion, at 4-6, 14. **False**. This Court held in its April 15 Opinion that "the Debtor has no reversionary interest in the Class Plaintiffs' remission award." *Id*. at 12 n. 26. Mr. Jacks is entitled to his own views of the merits of this Court's ruling, and if he had a problem with the Court's ruling, he could have appealed the Court's decision. Having chosen not to appeal, he is not entitled to mischaracterize that ruling or the Debtor and Recovery Trust's efforts in following the Court's April 15 Opinion just to gin up frivolous allegations of malfeasance and try to tarnish the reputations of fiduciaries and professionals that have worked for more than a decade to achieve a phenomenal result in this case – payment in full with interest to allowed unsecured creditors, with a recovery to equity. As the Court noted at the June 28, 2016 hearing, that is a very rare result in this type of case. 06/28/16 Hrg. Tr. at 17:9-12.

30. Although Mr. Jacks also makes various (incorrect) legal arguments about the termination of the Recovery Trust, these essentially repeat the substance of his *Objection* [D.I. 4544] to the Recovery Trust's *Motion to Extend the Term of the Recovery Trust* [D.I. 4527] (the "Extension Motion"). Mr. Jacks' incorrect legal arguments will be addressed in due course in

---

[13] The briefing had been *sub judice* before the EDNY since August 6, 2020. *See* EDNY Court Docket in *In re DHB Industries, Inc. Class Action Litigation*, Civil Action No. 05-cv-04296-JS-ETB; EDNY ECF Nos. 472-475, 477-481, 484-488. As noted above and in the pending Case Closing Motion, the Estate Fiduciaries have reached a settlement with the Class Plaintiffs that was approved by the EDNY on February 23, 2021 and is now pending before this Court in the Bankruptcy Case.

14

DOCS_LA:336343.1

the context of the Extension Motion. The Recovery Trust should not be forced to litigate this issue twice, particularly where the issue as presented in the Third Control Motion is intertwined with meritless and defamatory allegations that the Recovery Trustee was "an active participant in [a] fraud that concealed . . . $4.7 million." Third Control Motion, p. 22.

31. Indeed, anything resembling a legal argument in the Third Control Motion is inextricably intertwined with Mr. Jacks' wide-ranging and baseless accusations of "bankruptcy fraud"; "intentionally lying to this Court"; "[i]ntentionally concealing Debtor assets"; and "criminal conspiracy", which appear throughout and infect the entirety of the Third Control Motion. There is "no need to point out each ad hominem attack." *In re Johnson*, 236 B.R. at 519, as these examples are sufficient to showcase the blatant falsity, disparaging nature, and impropriety of Mr. Jack's allegations, which are contradicted by the rulings, transcripts, pleadings, and other documents upon which he relies. Accordingly, the Third Control Motion should be stricken from the docket in its entirety.

### B. The Third Control Motion Was Filed in Bad Faith and For Vexatious Purposes.

32. Fueled with rage over not extracting a settlement during mediation, Mr. Jacks pursues a no-holds barred litigation strategy. Mr. Jacks uses false and defamatory accusations of criminal conduct for the purpose of wresting control of the Recovery Trust to "go after" the Estate Fiduciaries for damages theories that either were rejected by this Court or are directly contradicted by the record. For example, as explained above, although this Court specifically rejected the Equity Group's argument that the Debtor had a reversionary interest in the remission payments paid to members of the Class, Mr. Jacks continues to level accusations that the Estate Fiduciaries gave away the purported $43 million reversionary interest and concealed it.

15

33. The Court should find that Mr. Jacks acted in bad faith and for vexatious and vindictive purposes in filing the Third Control Motion. If the Court finds that Mr. Jacks acted in bad faith and for such improper purposes, the Estate Fiduciaries request leave to file an application for an award of attorneys' fees and costs in responding to the Third Control Motion.

34. This Court has the inherent power to sanction parties who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Vaso Active Pharm., Inc.*, 514 B.R. 416, 422 (Bankr. D. Del. 2014) (citing *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995)). *See In re Truong*, No. 03-40283 (NLW), 2008 WL 442292, at *6 (Bankr. D.N.J. Feb. 14, 2008) (exercising inherent power to sanction and enjoin litigant whose "cavalier approach to both the facts and the law" included the filing of vexatious criminal charges); *In re Johnson*, 236 B.R. at 523 ("Abuse of the judicial process should not be tolerated. . . . Where a motion is filed by a litigant substantially motivated by 'vindictiveness, obduracy, or mala fides, [even] the assertion of a colorable claim will not bar the assessment of attorney's fees.'"). "The Court's inherent power to sanction does not require compliance with the provisions of Rule 9011." *In re Schemelia*, 607 B.R. 455, 462 (Bankr. D.N.J. 2019) (citing *In re Miller*, 730 F.3d 198, 206 (3d Cir. 2013)).

35. Bankruptcy courts, in the exercise of these inherent powers, have entered awards of attorneys' fees for "bringing matters of 'problematic and recurring practice(s)' . . . to the attention of the court." *In re Branch*, No. 14-02379-5-SWH, 2016 WL 4543770, at *13 (Bankr. E.D.N.C. Aug. 31, 2016) (quoting *In re Campbell*, No. 12-06400-8-SWH, 2013 WL 2443377, at *1 (Bankr. E.D.N.C. June 5, 2013)). *See In re 15375 Mem'l Corp.*, 430 B.R. 142, 152 (Bankr. D. Del. 2010) (exercising inherent authority to sanction party for abusing the bankruptcy process through vexatious conduct and pleadings throughout case).

36. Here, the Third Control Motion is far from the first time Mr. Jacks has publicized frivolous and inflammatory allegations in court filings. Mr. Jacks has not been deterred by the repeated denial of the relief he has sought or the striking of pleadings filed in violation of Court rules. To the contrary, with each allegedly *pro se* filing, Mr. Jacks' allegations become more extreme and offensive. The Third Control Motion, which is the most egregious example yet, highlights the need for an alternative form of deterrence against future bad-faith filings.

37. Accordingly, the Estate Fiduciaries request that the Court (i) find that Jacks has acted in bad faith and vexatiously by making spurious allegations of criminal conduct against the Estate Fiduciaries; and (ii) grant leave for the Estate Fiduciaries to file a separate application for an award of attorneys' fees and expenses incurred in responding to the Third Control Motion, and such other relief as may be warranted to curtail Mr. Jacks' conduct.

## NOTICE

38. The Recovery Trust, on behalf of the Estate Fiduciaries, served the Motion to Strike on (i) counsel to the Office of the United States Trustee; (ii) Mr. Jacks; (iii) all parties that have requested or are required to receive notice pursuant to Bankruptcy Rule 2002; and (iv) all other parties served with the Third Control Motion.

## CONCLUSION

39. The Third Control Motion crosses all lines of decency and decorum. Mr. Jacks accuses the Post-Confirmation Debtor Representative, Recovery Trustee, oversight committee members, and professionals, of a criminal conspiracy, including bankruptcy fraud, without a shred of evidence. And to make matters worse, Mr. Jacks attended the July 15, 2019 hearing so he knows that no "lie" concerning the $4.77 million ever occurred. These and the numerous

other accusations in the Third Control Motion are defamatory, scandalous, and a stain upon this Court's docket.

40. Thus, the Estate Fiduciaries respectfully request that the Court enter an Order, substantially in the form attached hereto as **Exhibit A**, (i) granting this Motion; (ii) striking the Third Control Motion or, in the alternative, striking those allegations that are baseless and unsupported and founded on scandalous and inflammatory statements; (iii) finding that Mr. Jacks filed the Third Control Motion in bad faith and for vexatious and vindictive purposes; (iv) granting the Estate Fiduciaries leave to file an application for an award of attorneys' fees and costs associated with responding to the Third Control Motion; and (v) granting such other and further relief that the Court deems just.

[remainder of page intentionally blank]

Dated: February 26, 2021
       Wilmington, Delaware

| **PACHULSKI STANG ZIEHL & JONES LLP** | **THE ROSNER LAW GROUP LLC** |
|---|---|
| */s/ James E. O'Neill* | */s/ Jason A. Gibson* |
| Laura Davis Jones (Bar No. 2436) | Frederick B. Rosner (DE 3995) |
| Alan J. Kornfeld (CA Bar No. 130063) | Scott J. Leonhardt (DE 4885) |
| James E. O'Neill (Bar No. 4042) | Jason A. Gibson (DE 6091 |
| Elissa A. Wagner (CA Bar No. 213589) | 824 N. Market Street, Suite 810 |
| 919 N. Market Street, 17th Floor | Wilmington, Delaware 19801 |
| P.O. Box 8705 | Telephone: (302) 777-1111 |
| Wilmington, DE 19899-8705 (Courier 19801) | Email: rosner@teamrosner.com |
| Telephone: (302) 652-4100 |        leonhardt@teamrosner.com |
| Facsimile: (302) 652-4400 |        gibson@teamrosner.com |
| Email: ljones@pszjlaw.com | |
|       akornfeld@pszjlaw.com | -and- |
|       joneill@pszjlaw.com | |
|       ewagner@pszjlaw.com | **ARENT FOX LLP** |
| | |
| *Counsel for SS Body Armor I, Inc.* | George P. Angelich (admitted *pro hac vice*) |
| | Beth M. Brownstein (admitted *pro hac vice*) |
| | 1301 Avenue of the Americas, Floor 42 |
| | New York, New York 10019 |
| | Telephone: (212) 484-3900 |
| | Facsimile: (212) 484-3990 |
| | Email: george.angelich@arentfox.com |
| |       beth.brownstein@arentfox.com |
| | |
| | Jackson D. Toof (admitted *pro hac vice*) |
| | 1717 K Street, N.W. |
| | Washington, DC 20006 |
| | Telephone: (202) 857-6000 |
| | Facsimile: (202) 857-6395 |
| | Email: jackson.toof@arentfox.com |
| | |
| | *Counsel to the Recovery Trust* |