**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SS BODY ARMOR I, INC., *et al.*, | : | Case No. 10-11255(CSS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Related Docket No.: 4547 and 4550** |
| | : | |

**OPINION**[1]

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones
Alan J. Kornfeld (Argued)
James E. O'Neill
Elissa A. Wagner
919 N. Market Street, 17th Floor
Wilmington, DE 19899-8705

Counsel for SS Body Armor I, Inc.

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner
Scott J. Leonhardt
Jason A. Gibson
824 Market N. Street, Suite 810
Wilmington, DE 19801
-and-
**ARENT FOX LLP**
George P. Angelich
Beth M. Brownstein
1301 Avenue of the Americas, Floor 42
New York, NY 10019

Jackson D. Toof
1717 K Street, N.W.
Washington, DC 20006

**Jon Jacks, Pro Se** (Argued)
1479 Ashford Avenue
#912
San Juan, PR 00907

**GELLERT SCALI BUSENKELL & BROWN, LLC**
Michael Busenkell
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
-and-
**CARTER LEDYARD & MILLBURN LLP**
Gary D. Sesser
Leonardo Trivigno
2 Wall Street
New York, New York, 10005

Counsel to Carter Ledyard & Millburn LLP

**CROSS & SIMON LLC**
Christopher P. Simon
Kevin S. Mann
1105 North Market St., Suite 901
Wilmington, DE 19801

[1] This Opinion constitutes the Court's findings of fact and conclusions of law.

Justin A. Kesselman
800 Boylston Street
Boston, MA 02199

Counsel for the Recovery Trust

LOWENSTEIN SANDLER LLP
Michael S. Etkin (Argued)
One Lowenstein Drive
Roseland, NJ 07068

Counsel for Class Plaintiffs and Class Plaintiffs' Counsel

**ROBBINS GELLER RUDMAN & DOWD LLP**
Samuel H. Rudman
Mark T. Millkey
58 South Service Road, Suite 200
Melville, NY 11747

**LABATON SUCHAROW LLP**
Ira A. Schochet
140 Broadway, 34th Floor
New York, NY 10005

Class Plaintiffs' Counsel

Dated: June 7, 2021

Sontchi, C. J.________________

**INTRODUCTION**[2]

The Recovery Trustee and Post-Confirmation Debtor (together, the "Estate Fiduciaries") are on the verge of resolving this decade-old case and request that this Court grant the Closure Motion, which will allow them to take the final steps necessary to close the case. The Trustee additionally requests that this Court grant the Extension Motion, which would retroactively extend the term of the Trust.

[2] Capitalized terms not defined in this section are defined *infra*.

Mr. Jon Jacks ("Jacks"), an equity interest holder, is the sole objector to both motions. Jacks has further filed his own motion to remove the Estate Fiduciaries, which the Debtor has moved to strike. The Court will overrule Jacks' objections and grant the Extension and Closure Motions. Because the Court will grant the Extension and Closure Motions, the Removal Motion and Motion to Strike will be denied as moot.

## JURISDICTION

This Court has jurisdiction over the motions, pursuant to 28 U.S.C. §§ 157 and 1334.[3] This is a "core proceeding" under 28 U.S.C. § 157(b). Furthermore, the parties have consented, pursuant to Local Bankruptcy Rule 9013(f), to entry of a final order by the Court in connection with the motions.[4] Venue is proper in the Court, pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

### *i. Factual Background*

Much of the factual history of this case is detailed in the District Court's *Joint Stipulation and Order Regarding Final Allocation of Shared Proceeds* entered in the United

---

[3] Confirmation Order, D.I. 3526 at p. 33 ¶ 42 ("Finally . . . , the Bankruptcy Court shall have original, but not exclusive, jurisdiction to hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code; provided, however, that nothing in this provision shall constitute a limitation on the jurisdiction of the Bankruptcy Court."). *See also* Extension Objection, D.I. 4527 at Exh. C (Recovery Trust Agreement (the "RTA")) at §§ 11.1 and 12.11. *See also* Plan art. 12. *See infra*. p. 7–8 and accompanying notes.

[4] The Trustee agreed to final order and judgment pursuant to Local Rule 9013-1(f) in each motion it filed. The Post Confirmation Debtor agreed to final order and judgment pursuant to Local Rule 9013-1(f) in the Motion to Strike. Jack consents to a final order by this Court in his Removal Motion at p. 6 ¶ 1. Jacks incorporates his Removal Motion in both the Closure and Extension Objections, which do not provide otherwise. Consequently, Jacks has consented to the entry of this Court's final order under Local Rule 9013-1(f).

States District Court for the Eastern District of New York (the "EDNY Decision" or "Stipulated Settlement"), as well as in this Court's April 15, 2020 opinion and order (the "April Decision").[5] Terms undefined in this opinion have the meaning set forth in the April Decision or Stipulated Settlement.

Following this Court's April Decision, the Post-Confirmation Debtor, Trustee, Class Plaintiffs and related parties filed competing motions in the United States District Court for the Eastern District of New York on several issues, including: (i) how to allocate the DOJ Settlement funds; (ii) the extent, if any, of the Post-Confirmation Debtor's reversionary interest in the DOJ Settlement funds; and (iii) whether the Class Plaintiffs owed the Post-Confirmation Debtor an additional true-up payment of $4.773 million (the "Shortfall") (together, the "EDNY Issues").[6] After fully briefing the EDNY issues, the parties voluntarily entered into mediation with former Judge Kevin Gross (ret.). The mediation resulted in two settlement agreements: the Stipulated Settlement and the CLM Settlement (together, the "Proposed Settlements").[7]

The disputes resolved by the Proposed Settlements have been subject to lengthy and costly litigation before this Court, the EDNY District Court, and related appellate courts. The Proposed Settlements provide the following (in general terms):

a. CLM will receive $3,750,000, for its claim;[8]

---

[5] Together, D.I. 4374 (the opinion) and D.I. 4375 (the order), the "April Decision."

[6] *See In re DHB Industries, Inc. Class Action Litig.*, No. 05-cv-04296-JS (E.D.N.Y.) (the "EDNY Action") (see related docket—referenced herein as "EDNY D.I.").

[7] Closure Motion, D.I. 4574 at Exh. D. Jacks' does not contend the CLM Settlement.

[8] *See* CLM Settlement; Stipulated Settlement; and Closure Motion at p. 20 ¶ 48.

b. Debtor will waive litigation against the Class Plaintiffs' $4.7 million Shortfall in exchange for Class Plaintiffs' $750,000 cash payment and $517,500 release of equity entitlement;[9]

c. Mutual releases between the Settlement Parties and their representatives; and

d. Lawsuits related to the settlements and related court orders will be barred.

Despite being on notice,[10] Jacks and the Equity Group failed to file a motion, offer competing methods of allocation, or otherwise appear before the EDNY District Court throughout the duration of the EDNY Action. Nevertheless, days after the EDNY Decision, Jacks, the sole party to object, filed objections to the Estate Fiduciaries' Extension and Closure Motions and filed his motion to remove the Estate Fiduciaries, asserting that they defied this Court's April 2020 decision, allowed the Trust to expire, and intentionally lied to conceal a $4.7 million asset from this Court.

***ii. Procedural History***

On April 14, 2010, SS Body Armor I, Inc. ("Debtor" or "Post-Confirmation Debtor") and its debtor affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The *Amended Chapter 11 Plan of Liquidation* (the "Plan") was

[9] *Id.* at ¶ 52.

[10] EDNY D.I. 458, 486 (reflecting service by email on July 22, 2020 on then-counsel to the Equity Group).

confirmed on November 10, 2015,[11] and became effective on November 23, 2015 (the "Effective Date").[12]

On November 11, 2020, the Trustee filed the *Motion to Extend Term of the Recovery Trust* (the "Extension Motion").[13] The Trustee filed his *Motion for Orders (I) Approving Settlements with Class Plaintiffs and Carter Ledyard & Milburn LLP; (II) Authorizing Dissolution Protocol; (III) Entering Final Decree; and (IV) Granting Related Relief* (the "Closure Motion") on February 24, 2021.[14] On February 25, 2021, Mr. Jon Jacks ("Jacks") filed his *Motion for an Order Removing Estate Fiduciaries for Cause, Requiring Disgorgement of Fees and Related Relief* (the "Removal Motion").[15] The Trustee filed his *Motion of Post-Confirmation Debtor and Recovery Trust for an Order Striking* [*the Removal Motion*] (the "Motion to Strike") on February 26, 2021.[16]

On March 3, 2021, the Post-Confirmation Debtor and Trustee filed their *Opposition to* [*the Removal Motion*] (the "Removal Objection").[17] Jacks filed his *Objection to* [*the Extension Motion*] (the "Extension Objection") on January 27, 2021,[18] his *Objection to* [*the*

---

[11] *Amended Chapter 11 Plan of Liquidation* (the "Plan"), D.I. 3261. *Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and Official Committee of Unsecured Creditors* (the "Confirmation Order"), D.I. 3526.

[12] *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates*, D.I. 3584.

[13] Extension Motion, D.I. 4527.

[14] Closure Motion, D.I. 4547.

[15] Removal Motion, D.I. 4550.

[16] Motion to Strike, D.I. 4552.

[17] Removal Objection, D.I. 4564.

[18] Extension Objection, D.I. 4544.

*Closure Motion*] (the "Closure Objection") on March 10, 2021,[19] and his *Objection to* [*the Strike Motion*] on March 12, 2021 (the "Strike Objection").[20]

Jacks filed his *Reply in Support of* [*the Removal Motion*] on March 10, 2021 (the "Removal Reply").[21] On March 19, 2021, The Trustee filed his *Omnibus Reply in Support of (A)* [*the Extension Motion*]; *(B) [the Closure Motion] and (C) the* [*Motion to Strike*] (the "Trustee's Reply"),[22] and the Post-Confirmation Debtor filed his *Reply in Support of* [*the Motion to Strike*] (the "Strike Reply").[23]

A combined hearing on the Motion to Strike and the Extension, Closure, and Removal Motions was held on March 24, 2021, and April 14–15, 2021.[24]

## ANALYSIS

### A. EXTENSION MOTION

Jacks requests the Court deny the Extension Motion because: (i) the Trust expired on November 23, 2018; (ii) the Extension Motion is an artful attempt to unlawfully modify the Plan; (iii) the Court is prohibited from granting the requested *nunc pro tunc* relief under the Supreme Court's *Acevedo* decision;[25] and (iv) the IRS has exclusive jurisdiction

---

[19] Closure Objection, D.I. 4560.

[20] Strike Objection, D.I. 4564.

[21] Removal Reply, D.I. 4559.

[22] Trustee's Reply, D.I. 4576.

[23] Strike Reply, D.I. 4578.

[24] *See* D.I. 4593, 4594, and 4598 (Agenda of Matters for Hearing).

[25] *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct 696, 700–01 (2020).

over whether to extend the term of the Trust as the Trustee failed to obtain an IRS Rev. Pro. 94–45[26] advance letter ruling.

The Court rejects Jacks' argument that the IRS has exclusive jurisdiction over the Extension Motion because this Court explicitly retained original jurisdiction over Plan-related tax issues.[27] Furthermore, IRS Rev. Pro. 94–45 governs only the issuance of an advance letter ruling—and does not represent the IRS's substantive finding on whether the Trust qualifies as a tax advantaged liquidating trust under the Internal Revenue Code—as failure to comply with it does not give rise to an action before the IRS, but rather serves to disqualify an entity from receiving the comfort of an advance letter ruling from the IRS.[28]

The *Acevedo* case prohibits courts from using *nunc pro tunc* orders to cure jurisdictional defects arising under 28 U.S.C. § 1445(d), which governs nonremovable actions.[29] *Acevedo* does not prohibit courts from entering *nunc pro tunc* orders where there

---

[26] IRS Rev. Pro. 94–45 constitutes an advance letter ruling. It does nothing more than provide some certainty for a particular liquidating trust that it qualifies as a grantor trust, i.e., qualifies for tax treatment advantageous to its beneficiaries. It does not grant the IRS jurisdiction over the mundane affairs of the trust.

[27] See supra note 3.

[28] *Id.*

[29] *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct 696, 700–01 (2020) (ruling that a Puerto Rico court's orders were voided because they were issued (i) after a notice of removal was filed and (ii) five months prior to the federal court's *nunc pro tunc* remand order).

are no jurisdictional defects.[30] As stated above, unlike in *Acevedo*, here 28 U.S.C. § 1445(d) is not at issue and there are no jurisdictional defects.[31] Thus, *Acevedo* does not apply.

Jacks contends that, on November 23, 2018, under section 11.1 of the RTA, the Trust "expired"—as no motion to extend the term of the Trust was filed by any party.[32] Section 11.1 of the RTA states:

> The Recovery Trust will terminate no later than the third (3rd) anniversary [November 23, 2018] of the Effective Date [November 23, 2015], provided, however, that, on or prior to the date six (6) months prior [May 23, 2018] to such termination, the Bankruptcy Court, upon motion by the Recovery Trustee or a party in interest, may extend the term of the Recovery Trust for a fixed period if it is necessary to facilitate or complete the liquidation and distribution of the Recovery Trust Assets . . . .[33]

Jacks asserts and the Trust agrees that the above language was added to comply with IRS Rev. Pro. 94–45. Jack further contends, and the Trustee concurs, that the Trust terminated on November 23, 2018, as no motion to extend its term was filed.

---

[30] *See, e.g.*, *In re Merriman*, 616 B.R. 381, 393 (B.A.P. 9th Cir. 2020) (rejecting *Acevedo's* application to *nunc pro tunc* relief from automatic stay).

[31] This is especially true where the interpretation of the confirmed plan is at issue as (i) courts have authority to interpret their own orders; (ii) a confirmed plan is an order; (iii) the RTA is part of the Plan; and (iv) the Court confirmed the Plan. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 (2009) (referring to a confirmed bankruptcy plan as an order and stating that "[t]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders . . . ."); *See also In re Shenango Grp. Inc.*, 501 F.3d 338, 345 (3d Cir. 2007) (affirming that "a confirmed plan of reorganization is an order of the bankruptcy court.").

[32] Jacks fails to sufficiently allege a claim for gross negligence under Fed. R. Civ. Pro. 8(a) and New York law as the Trustee's failure to extend the term of the Trust along with the Trustee's efforts to realize the litigation assets fall far short of "conduct [that] must smack of intentional wrongdoing or evince a reckless indifference to the rights of others." *Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc.*, 998 N.Y.S.2d 107, 109 (N.Y. App. Div. 2014) (cleaned up).

[33] RTA § 11.1 "Termination of the Agreement" (underline in original). The automatic termination of the Trust is not equivalent to its dissolution. RTA § 11.1 (extinguishing the rights and duties of the Trustee where (a) the RTA terminates and the Trust dissolves or (b) the Trustee elects, after notice, to terminate the Trust but failing to extinguish the rights and duties of the Trustee where the term of the Trust automatically expires).

Relying on *Goldin v. Bartholow*, Jacks argues that the termination of the Trust equates to its "dissolution."[34] The Court rejects this argument as it finds the *Goldin* case to be inapposite because: (i) it applies Texas trust law instead of New York trust law[35] and (ii) the trust instrument at issue here—the RTA—unlike the trust instrument in *Goldin*, (a) distinguishes between the "termination" of the Trust and the "dissolution" of the trust[36] and (b) distinguishes between the function of the Trust and the concept of winding down.[37] Thus, the Trustee was authorized, under the RTA to continue his duties post-termination.

Finally, Jacks contends that the Trustee is asking this Court, in contravention of section 1127(b) of the Bankruptcy Code, to modify the language of the confirmed Plan. Jacks argues that by requesting *nunc pro tunc* relief, the Trustee is effectively modifying the language of RTA § 11.1 by which the Trust was terminated.[38]

---

[34] *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999).

[35] *In re Klosinski*, 746 N.Y.S.2d 350, 358 (N.Y. Sur. 2002) ("When the time for the termination of the trust has arrived, the duties and powers of the trustee do not immediately cease; until the trust is actually wound up, he has such duties and powers as are appropriate for the winding up of the trust.") (citing to and quoting Restatement of Trusts 2d § 344; *Matter of Thomas,* 254 N.Y. 292 (N.Y. 1930); and IV Scott on Trusts [4th Ed.] § 344 at 543–544)). Thus, here, the although the term of the Trust has terminated, it is not "dissolved" as the Trustee still retains (a) the authority and obligation to wind up the trust and (b) the duty to take the necessary steps to "exercise reasonable care and skill in the preservation of the property until he has made distribution to the estate." Restatement (Second) of Trusts § 344 c'mt h (1959); Restatement (Third) of Trusts § 89 (2007) ("The powers of a trustee do not end on the trust's termination date but may be exercised as appropriate to the performance of the trustee's duties in winding up administration, including making distribution, in a manner consistent with the purposes of the trust and the interests of the beneficiaries.")

[36] RTA § 11.1; *supra* note 33.

[37] RTA § 5.5(cc) ("Otherwise take such other actions as shall be necessary to implement the Plan, Confirmation Order, the terms of this Agreement, wind down the affairs of the Recovery Trustee . . . .")).

[38] *In re Daewoo Motor Am., Inc.*, 488 B.R. 418, 425 (C.D. Cal. 2011) (finding (i) an attempted 1127(b) modification where the appellant sought to permanently change the language of the plan of reorganization

Section 1127 does not allow debtor entities to modify their plans after the plans are substantially consummated.[39] Because sections 101, 1101, and 1127 of the Bankruptcy Code do not define the term modification, "courts that have analyzed the issue of whether a subsequent change to a confirmed plan of reorganization constitutes a 'modification' distinguish between the courts' inability to 'modify' a plan and their ability to clarify a plan where it is silent or ambiguous, and/or interpret plan provisions to further equitable concerns."[40] Consequently, courts determine the meaning of "modification on a case-by-case basis"[41] and look "to the Plan for guidance"[42] as to what constitutes a modification.

The issue, then, for the Court to determine is whether the Trustee's requested relief constitutes a modification of the Plan or is consistent with the terms of the Plan.[43] As a general rule, courts have the authority to interpret their own orders—which include confirmed plans.[44] Courts apply principles of contract interpretation to

---

governing the term of the trust from "not later than six (6) months . . ." to "within six (6) months . . ." and (ii) the trust instrument did not allow for modifications).

[39] The Confirmation Order declared the Plan substantially consummated at confirmation. *See* Confirmation Order.

[40] *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 152–53 (Bankr. D. Del. 2002) (cleaned up).

[41] 7 Collier on Bankruptcy ¶ 1127.03 (16th ed. 2021) (cleaned up).

[42] *In re Johns-Manville Corp.*, 920 F.2d 121, 128 (2d Cir. 1990) (cleaned up).

[43] According to Black's Law Dictionary, a modification is "[a] change to something; an alteration or amendment . . . ." *Modification*, Black's Law Dictionary (11th ed. 2019).

[44] *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 (2009) (referring to a confirmed bankruptcy plan as an order and stating that "[t]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders . . . ."). *See also In re Shenango Grp. Inc.*, 501 F.3d 338, 345 (3d Cir. 2007) (affirming that "a confirmed plan of reorganization is an order of the bankruptcy court."). *See* RTA § 12.11. *See also* Plan art. 12.

determine the meaning of confirmed plans.[45] The Plan is governed by Delaware law and the RTA is governed by New York law.[46] Delaware and New York apply substantially similar principles of general contract interpretation.[47] These principles are described below:

> A court applying Delaware law to interpret a contract is to effectuate the intent of the parties. Accordingly, the Court must first determine whether a contract is unambiguous as a matter of law. If the language of the contract is unambiguous, the Court interprets the contract based on the plain meaning of the language contained on the face of the document. A contract is ambiguous only if it is fairly or reasonably susceptible to different interpretations . . . . Delaware principles of contract interpretation also require the Court to read a contract as a whole and give each provision and term effect, so as not to render any part of the contract mere surplusage.[48]

---

[45] *See In re Shenango Grp. Inc.*, 501 F.3d 338, 345 (3d Cir. 2007) ("In construing a confirmed plan of reorganization, we apply contract principles."). *Cf. id.* at 345–46 (noting that the standard of review for a court's interpretation of its own order, the plan, is different than the standard of review used in "the straightforward application of contract principles" and determining the correct standard of review to be used is "abuse for discretion.").

[46] *Compare* Plan art. 1 § 1.4 (providing that Delaware law governs the Plan and "agreements . . . entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.") *with* RTA § 12.8 "Governing Law" (providing that the RTA shall be governed by New York Law).

[47] *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 19-CV-06957 (AJN), 2021 WL 1198802, at *3 (S.D.N.Y. Mar. 30, 2021) ("New York and Delaware apply the same general principles of contract interpretation.") (cleaned up). *Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 90 (Del. Ch. 2009) (same).

[48] *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (cleaned up) (applying Delaware law). *Compare id. with Greenfield v. Philles Records, Inc*., 780 N.E.2d 166, 170 (N.Y. 2002) (holding that where an agreement is "complete, clear and unambiguous on its face," it should "be enforced according to the plain meaning of its terms" and that extrinsic evidence "may be considered only if the agreement is ambiguous.") *and Kass v. Kass,* 696 N.E.2d 174, 180–81 (N.Y. 1998) ("Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought. Where the document makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement.") (cleaned up).

The terms of the Confirmation Order, RTA, and the Plan are unambiguous. The Confirmation Order provides that:

> Without further order or authorization of this Court, the . . . **Recovery Trustee**, and [his] successors are authorized and empowered **to make all modifications** to all documents included as part of the **Plan Supplement** that are consistent with the Plan.[49]
>
> The terms of the Plan and the Plan Supplement and each of the documents comprising the Plan Supplement, **any amendments, modifications, or supplements thereto**, and all documents and agreements thereto are incorporated by reference into and are an integral part of the Plan, and such terms and their implementation are hereby approved and authorized.[50]

and

> [T]he Plan was proposed for the legitimate purpose of facilitating and maximizing the liquidation, recovery and distribution of the Debtors' remaining assets and the winding down of the Estates consistent with the Settlement Agreement. The Plan is the product of extensive negotiations at arms' length among the Debtors, Class Action Claimants, Creditors' Committee and Equity Committee, all of whom realized that a consensual Plan process was important, if not vital, to these cases. During the negotiations, all of those parties demonstrated the ability to compromise in order to obtain what ultimately was a reasonable, fair and equitable result for all stakeholders. The Plan provides the best recoveries possible for holders of Allowed Claims and Interests. The Plan represents a potentially highly successful outcome to a protracted case.[51]

Thus, the confirmed Plan both incorporates the Plan Supplement documents and distinguishes the Plan Supplement documents from the Plan itself. The RTA is one of the Plan Supplement documents[52] and the Confirmation Order expressly grants the Trustee the authority to modify the RTA if the modifications are consistent with the Plan.

---

[49] Confirmation Order, D.I. 3526 at p. 30 ¶ 33.

[50] Confirmation Order, D.I. 3526 at p. 15 ¶ 1.

[51] Confirmation Order p. 9 ¶ R.

[52] Plan art. 1 § 1.1 at p. 7 (defining "Plan Supplement" to include the RTA).

Whether the Trustee's requested relief is consistent with the Plan is determined by examining the Plan. The terms of the Plan, Confirmation Order, and RTA reveal that the Recovery Trust was created to maximize value to the beneficiaries by gathering the Debtor's assets, converting those assets to cash, and then distributing as much of that cash as possible to the appropriate beneficiaries.[53] In connection with the intent to maximize value to the beneficiaries, the terms of the Plan and RTA explicitly intended the Recovery Trust to qualify as a tax advantaged liquidating trust under section 301.7701–4(d) and as a grantor trust under Treasury Regulation section 1.671–4(a).[54] In accord with this intent, section 12.11 of the RTA provides that:

> This Agreement is not intended to create, and **<u>shall not be interpreted as creating</u>**, an association, partnership or joint venture of any kind. It is intended as a trust to be governed and construed in all respects as a trust.[55]

The IRS considers the requirements of Revenue Procedure 94–45 in determining whether to issue an advance letter rulings classifying a particular trust as a § 301.7701–

---

[53] *See generally* Plan (focus on Article 6 and § 1.1 (defining "Recovery Trust" and related terms)). *See also* Plan art. 4 § 4.3 (providing treatment of general unsecured claims through the Recovery Trust); *id.* at § 4.4 (same for subordinated unsecured claims); *id.* at § 4.6 (same for common stock equity interests).

[54] *Compare* Plan art. 6 § 6.4 ("The Recovery Trust is organized and established as a trust for the benefit of the beneficiaries and is intended to qualify as a Recovery Trust [sic] within the meaning of Treasury Regulation 301.7701-4(d).") *with* RTA Recitals ("WHEREAS, the Recovery Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701–4(d) that is treated as 'grantor trust' for federal and applicable state income tax purposes."); *and* RTA § 3.8 ("The Beneficiaries will be treated as grantors and owners of the Recovery Trust . . . [t]he Recovery Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes . . . ."). Thus, establishing an I.R.C. § 301.7701–4(d) liquidating trust maximizes the value of distributions.

RTA § 5.15 (providing that the Recovery Trust shall prepare and file taxes "consistent with treatment of the Recovery Trust as a liquidating trust within the meaning of [§ 301.8801–4(d)] that is a grantor trust pursuant to [§1.671–4(a)]."). I.R.C. § 1.671-4(a) (governing the filing requirements of a grantor trust).

[55] RTA § 12.11.

4(d) liquidating trust.[56] One IRS Rev. Pro. 94-45 requirement is that the trust must terminate, at a fixed or defined date, within 5 years of the trust's creation and that warranted term extensions must "be approved by the court within 6 months of the beginning of the extended term."[57] The parties clearly included the automatic Recovery Trust termination language to allow the Recovery Trust to comply with Rev. Pro. 94–45's advance ruling condition.[58]

Now, the Trustee requests relief to potentially obtain the comfort of just such an advance letter ruling through a retroactive order from this Court. The Court finds that the Trustee's requested relief is consistent with the Plan as the intent of the Plan in executing the RTA was to maximize distribution to the stakeholders by, in part, establishing a tax advantaged trust with the ability to receive the comfort provided by the IRS's advance letter ruling pursuant to Rev. Pro. 94–45; and the Trustee's requested relief harmonizes with this intent by allowing the Trust to potentially obtain the comfort of an advance letter ruling from the IRS and further retain the ability to seek additional (undesired, but potentially necessary) term extensions. Thus, the Court finds that granting the Trustee's requested relief is not a post-confirmation modification of the Plan and will grant the Extension Motion and issue an order in a form substantially similar to the order requested by the Trustee.

---

[56] Rev. Proc. 94-45, 1994-2 C.B. 684 (1994).

[57] *Id.*

[58] *See* Trustee's Reply and Extension Objection. *See also* RTA § 11.1, *supra* p. 9 and note 33.

**B. CASE CLOSURE**

Pursuant to section 350 of the Bankruptcy Code, the Trustee requests entry of the final decree closing these cases. To close the case, the Trustee requests this Court resolve the two issues pending before it by: (i) approving the Proposed Settlements including the bar order, and (ii) authorizing the protocols necessary to dissolve the Recovery Trust and the Post-Confirmation Debtor (the "Dissolution Protocols").

The Proposed Settlements resolving the open issues in this bankruptcy case are before this Court for approval, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. With the unanimous consent of the "Recovery Trust Committee" and the "Post-Confirmation Debtor Oversight Committee," the Trustee is authorized to enter the Proposed Settlements, pursuant to sections 5.5(b), 5.5(z), and 5.6(a) of the RTA and sections 1.1 and 6.5 of the Plan.[59] The CLM Settlement is, unlike the Stipulated Settlement, uncontested by Jacks.

***i. Standard for Approving Settlements***

Settlement agreements are favored in bankruptcy as they "minimize litigation and expedite the administration of a bankruptcy estate."[60] Settlements are approved when

---

[59] Closure Motion at Exh. 1 ¶¶43–44 (*Declaration of Brian K. Ryniker in Support of Motion Of Recovery Trust For Orders (I) Approving Settlements with Class Plaintiffs and Carter Ledyard & Milburn LLP; (II) Authorizing Dissolution Protocol; (III) Entering Final Decree; and (IV) Granting Related Relief* (the "Ryniker Decl."). *See supra* Section A (granting the Trustee's Extension Motion).

[60] *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

they are "both fair and equitable and in the best interests of the estate"[61] Courts make this determination, in part, by applying the four-factor *Martin* test[62] as follows:

> (1) the probability of success in litigation;
>
> (2) the likely difficulties in collection;
>
> (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> (4) the paramount interest of the creditors.

*In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

***ii. Discussion***

*a. Jacks' Arguments*

Rather than discuss the *Martin* factors, Jacks argues that this Court should not approve the Stipulated Settlement because it fails to allocate the $4.7 million Shortfall to the Trust. This failure, Jacks asserts, constitutes the breach of the Trustee's fiduciary duty to the beneficiaries of the RTA, pursuant to the terms of the Plan. Specifically, Jacks contends that the Trustee lied to this Court regarding the Shortfall and entered the Stipulated Settlement to avoid liability for his actions. Thus, Jacks argues, the Trustee was not eligible to enter the Stipulated Settlement. For the reasons below, the Court rejects Jacks' argument.

The evidence Jacks offers to support his argument is unpersuasive. Jacks relies on public statements and documents to conclude that the Trustee conspired to hide the Shortfall from this Court. The Court disagrees. The Trustee told this Court at a hearing

---

[61] 10 Collier on Bankruptcy ¶ 9019.02 (16th 2021) (cleaned up).

[62] *See e.g.*, *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 645 (3d Cir. 2006).

and in publicly filed documents that he was discussing the possibility of additional true-up payments with Class Plaintiffs.[63] Finally, the Trustee accurately interpreted this Court's April Decision to mean that the Debtor held no "reversionary interest" if Class Plaintiffs' failed to make a 100% recovery.[64]

*b. Martin Factors*

Essentially, there is one issue[65] before this Court—the Shortfall issue. Examining the *Martin* factors together, the Shortfall issue has been extensively litigated in federal district and appellate courts with no easy resolution. It is unlikely to be easily resolved through future litigation. The delay and cost of such litigation likely outweighs the potential benefits as the Class Plaintiffs' have only $1.5 million in cash (which is subject to competing claims and anticipated expenses) and provided more than $1.25 million in value to the Trust in consideration for the Shortfall. Finally, continued pursuit of the

---

[63] *See* Tr. of H'rg, D.I. 4312, at 32:15-25 and 33:1–13 ("[There are] discussions about additional true up payments."). *Opposition of Post-Confirmation Debtor to Motion Regarding Allocation of Remission Proceeds Among the Debtor and Class Plaintiffs*, D.I. 4293 at p. 9 ¶ 13 n.5.

[64] This Court concluded, based on the facts available, that there was no reversionary interest. Under the Stipulated Settlement, the Class Plaintiffs' net recovery remains less than 100% because they are allocated $81.34 million, which is $200,000 less than the $81.54 million Class Plaintiffs' need to obtain 100% recovery. Thus, the Debtor has no reversionary interest, and the Estate Fiduciaries did not misrepresent this Court's April Decision.'

Even assuming *arguendo* that 11 U.S.C. § 327 applies, Jacks has failed to provide evidence supporting the proposition that the Estate Fiduciaries had interests adverse to the beneficiaries. The Trustee's failure to timely extend the term of the Trust is correctable and does not constitute gross mismanagement or breach of fiduciary duty.

The Trustee highlights the fact that Jacks received notice of the issues in the EDNY Action yet failed to raise any of his arguments until after the EDNY District Court approved the Stipulated Settlement. The Court agrees that it is prejudicial and unreasonable for Jacks to delay.

[65] Under the doctrine of law of the case, Jacks' arguments concerning the reversionary interest are barred. Jacks does not contest the bar order.

Shortfall issue will drain the estate of resources. Accordingly, the second, third, and fourth *Martin* factors weigh against litigating the Shortfall issue while the first factor is neutral. The Court will approve the Stipulated Settlement as it finds it fair and equitable and in the best interests of the estate.[66]

***iii. Final Decree and Dissolution Protocol***

As the Court will approve the Proposed Settlements, the remaining issues before this Court are whether to approve the dissolution protocol (the "Dissolution Protocol")[67] and enter the final decree closing these cases. Under Rule 3022 of the Federal Rules of Bankruptcy Procedure, courts must enter final decrees after an estate has been fully administered. Courts consider the following factors when determining whether the estate has been fully administered:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed,
>
> (3) whether the property proposed by the plan to be transferred has been transferred,

---

[66] As the Proposed Settlements contain bar orders, this Court must first determine that it has subject matter jurisdiction over the barred claims. There are two types of claims subject to the bar order, which are: (i) claims directly related to the Proposed Settlements and (ii) attempts to relitigate this Court's final orders. *See* Ryniker Decl., p. 10–11. This Court undisputedly has jurisdiction to the second type of claim (and the CLM Settlement) and will enter the bar order pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. Pro. 7016 as: the bar order is critical to the settlement, fair and equitable, and is in the best interests of the estate. *Id.* at p. 12 ¶ 50 ("If the Bar Order is not entered, the total distributions to Class 6 will likely decrease by approximately 9 cents per share. As a result, the Bar Order is critical to enable maximum distributions to be made, prevent delays, and to obtain finality and closure.").

The EDNY District Court has sole jurisdiction over the claims underlying the Stipulated Settlement. Assuming, *arguendo*, that this Court has jurisdiction over the Stipulated Settlement's underlying claims due to "'some nexus' between [them] and the bankruptcy case" (*In re Land Res., LLC*, 505 B.R. 571, 578 (M.D. Fla. 2014)), the Court will enter the bar order for the same reasons stated above.

[67] The Dissolution Protocol is set forth in Closure Motion p. 30-31 ¶ 75.

> (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan,
>
> (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.[68]

The Court finds that: (i) the Confirmation Order is final, (ii) the Plan distributions are nearly complete, and the residual payments will be made pursuant to the Dissolution Protocol, (iii) the Estate Fiduciaries have assumed responsibility for all property addressed by the Plan, and (iv) the remaining issues in this case are resolved or will be resolved following entry of this decision.[69]

The Court will approve the Dissolution Protocol and will issue a final decree closing these cases as the estate has been fully administered and such relief is in the best interests of the estate as it will eliminate the expense of protracted administration.

**CONCLUSION**

The Court **GRANTS** the relief requested in the Extension and Closure Motions. The Removal Motion and Motion to Strike are, accordingly, moot. The Court directs the Post-Confirmation Debtor to submit appropriate orders under certification of counsel.

---

[68] Fed. R. Bankr. Pro. 3022 (West Annotated—Advisory Committee Notes).

[69] *See* Ryniker Decl., ¶¶ 22, 27, 53-54.